No. 23-55805

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
_____

VIRGINIA DUNCAN, ET AL.,

*Plaintiffs-Appellees*,

v.

ROB BONTA, IN HIS OFFICIAL CAPACITY AS
ATTORNEY GENERAL OF THE STATE OF CALIFORNIA,

*Defendant-Appellant.*
_____

## On Appeal from the United States District Court
## for the Southern District of California
No. 3:17-cv-01017-BEN-JLB
The Honorable Roger T. Benitez, Judge
_____

## EMERGENCY MOTION UNDER CIRCUIT RULE 27-3
## FOR A STAY PENDING APPEAL AND FOR AN INTERIM
## ADMINISTRATIVE STAY

## RELIEF REQUESTED BY OCTOBER 2, 2023
_____

ROB BONTA
*Attorney General of California*
MICHAEL J. MONGAN
*Solicitor General*
THOMAS S. PATTERSON
*Senior Assistant Attorney General*
HELEN H. HONG
MICA L. MOORE
*Deputy Solicitors General*

R. MATTHEW WISE
*Supervising Deputy Attorney General*
ROBERT L. MEYERHOFF
KEVIN J. KELLY
JOHN D. ECHEVERRIA
*Deputy Attorneys General*
    455 Golden Gate Avenue, Suite 11000
    San Francisco, CA  94102-7004
    (415) 510-3479
    John.Echeverria@doj.ca.gov
*Attorneys for Defendant-Appellant*

September 26, 2023

## CIRCUIT RULE 27-3 CERTIFICATE

The undersigned counsel certifies the following information, as required by

Ninth Circuit Rule 27-3(c):

**(1)     Names, Telephone Numbers, E-Mail Addresses, and Office Addresses
for the Attorneys for All Parties (9th Cir. R. 27-3(c)(i)):**

*Counsel for Defendant-Appellant:*
John D. Echeverria (john.echeverria@doj.ca.gov)
Helen H. Hong (helen.hong@doj.ca.gov)
Mica L. Moore (mica.moore@doj.ca.gov)
Matthew Wise (matthew.wise@doj.ca.gov)
Office of the California Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA  94102-7004
Telephone:  (415) 510-3479
Fax:  (415) 703-1234

*Counsel for Plaintiffs-Appellees:*
C.D. Michel (cmichel@michellawyers.com)
Sean Brady (sbrady@michellawyers.com)
Anna M. Barvir (abarvir@michellawyers.com)
Matthew D. Cubeiro (mcubeiro@michellawyers.com)
Michel & Associates, P.C.
180 E. Ocean Boulevard, Suite 200
Long Beach, CA  90802
Telephone:  (562) 216-4444

**(2)    Facts Showing the Existence and Nature of the Emergency (9th Cir.
R. 27-3(c)(ii)):**

The district court's order declares certain State restrictions on large-capacity

magazines, codified at California Penal Code section 32310 ("Section 32310"), to

be unconstitutional and permanently enjoins the State from enforcing those

restrictions.  Large-capacity magazines are defined as firearm magazines capable

1

of holding more than ten rounds of ammunition.  They allow mass shooters to fire numerous rounds at a rapid rate without having to stop to reload, posing a substantial threat to public safety.  Since 2010, they have been used in 86 percent of all mass shootings in the United States in which six or more individuals were killed; since 2020, every single mass shooting that resulted in six or more fatalities involved a large-capacity magazine.  The Attorney General requests an immediate stay of the injunction to preserve the status quo during this appeal; the stay would apply to all portions of the order except those regarding Sections 32310(c) and (d), which relate to large-capacity magazines that were acquired and possessed lawfully prior to the district court's order granting a permanent injunction.  A stay is necessary to prevent an influx of long-prohibited large-capacity magazines into California that threaten public and officer safety.

The Attorney General respectfully requests that the Court act on this motion as soon as possible and grant the request for a stay.  If the Court cannot rule on the motion by October 2, 2023—when the district court's temporary stay will expire—the Attorney General respectfully requests an administrative stay to preserve the status quo pending the resolution of this motion.  If the Court denies the motion, the Attorney General requests a 14-day administrative stay from the date of the denial to allow time for the State to consider whether to seek further relief, including from the United States Supreme Court.

2

**(3)  Why the Motion Could Not Have Been Filed Earlier (9th Cir. R. 27-3(c)(iii)):**

The district court issued its permanent injunction and a temporary 10-day stay of its order on September 22, 2023.  The Attorney General promptly filed a Notice of Appeal later that day, and filed this emergency motion as soon as practicable on September 26, 2023.  The undersigned counsel notified the Court's Emergency Motions Department by telephone and email on September 25, 2023.

**(4)  When and How Counsel Were Notified and Served and Plaintiffs' Position on the Emergency Motion (9th Cir. R. 27-3(c)(iv)):**

On September 26, 2023, undersigned counsel conferred with Plaintiffs' counsel by telephone to inform Plaintiffs of the Attorney General's intent to seek a stay pending appeal.  Plaintiffs oppose this emergency motion, though they agree with the State's election not to seek a stay with respect to the portions of the district court's injunction of Sections 32310(c) and (d) for large-capacity magazines that were lawfully acquired before the district court's order.  Service will be effected through the Court's CM/ECF system.

**(5)  The Requested Relief Was First Sought in the District Court (9th Cir. R. 27-3(c)(v)):**

The Attorney General repeatedly requested that the district court enter a stay if it enjoined Section 32310 in whole or in part.  *See* D. Ct. Dkt. 118 at 61-63; D. Ct. Dkt. 142 at 25 n.26; D. Ct. Dkt. 145 at 10 n.10.  The district court granted only a 10-day stay, which will expire on October 2, 2023, to allow the Attorney

General to seek a further stay pending appeal from this Court.  D. Ct. Dkt. 149 at 71.

I declare under penalty of perjury that the foregoing is true.

Dated:  September 26, 2023      Respectfully submitted,

ROB BONTA
*Attorney General of California*
MICHAEL J. MONGAN
*Solicitor General*
THOMAS S. PATTERSON
*Senior Assistant Attorney General*
HELEN H. HONG
MICA L. MOORE
*Deputy Solicitors General*
R. MATTHEW WISE
*Supervising Deputy Attorney General*
ROBERT L. MEYERHOFF
KEVIN J. KELLY
*Deputy Attorneys General*

s/ John D. Echeverria

JOHN D. ECHEVERRIA
*Deputy Attorney General*
*Attorneys for Defendant-Appellant*

4

# TABLE OF CONTENTS

**Page**

Introduction ........................................................................1

Background......................................................................4

      A.    California's Restrictions on Large-Capacity Magazines....................................................4

      B.    Pre-*Bruen* Litigation ....................................5

      C.    Post-*Bruen* Litigation ...................................6

Argument.........................................................................9

      I.    The Attorney General Is Likely to Succeed on the Merits......10

      II.    The Equitable Factors Weigh Strongly in Favor of a Stay......20

Conclusion.....................................................................23

Statement of Related Cases .............................................24

Certificate of Compliance ...............................................25

# TABLE OF AUTHORITIES

Page

CASES

*Barnett v. Raoul*
2023 WL 3160285 (S.D. Ill. Apr. 28, 2023) ........................................ 11, 13, 14

*Bevis v. City of Naperville, Ill.*
2023 WL 2077392 (N.D. Ill. Feb. 17, 2023) ............................................ 11, 14

*Brumback v. Ferguson*
2023 WL 6221425 (E.D. Wash. Sept. 25, 2023) ..................................... 11, 12

*Chiafalo v. Washington*
140 S. Ct. 2316 (2020) ...................................................................... 18

*Coal. for Econ. Equity v. Wilson*
122 F.3d 718 (9th Cir. 1997) ............................................................. 20

*Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.*
2023 WL 2655150 (D. Del. Mar. 27, 2023) ....................................... 11, 13, 14

*Dist. of Columbia v. Heller*
554 U.S. 570 (2008) ................................................................. 7, 13, 15, 18

*Duncan v. Becerra*
742 F. App'x 218 (9th Cir. 2018) ........................................................ 5

*Duncan v. Becerra*
970 F.3d 1133 (9th Cir. 2020) ............................................................ 6

*Duncan v. Becerra*
988 F.3d 1209 (9th Cir. 2021) ............................................................ 6

*Duncan v. Bonta*
19 F.4th 1087 (9th Cir. 2021) ............................................................ 6

*Duncan v. Bonta*
142 S. Ct. 2895 (2022) ..................................................................... 7

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Duncan v. Bonta*
   49 F.4th 1228 (9th Cir. 2022)..............................................................7

*FTC v. Qualcomm Inc.*
   935 F.3d 752 (9th Cir. 2019)..............................................................2

*Golden Gate Rest. Ass'n v. City & Cnty. of San Francisco*
   512 F.3d 1112 (9th Cir. 2008)...........................................................20

*Hanson v. Dist. of Columbia*
   2023 WL 3019777 (D.D.C. Apr. 20, 2023).........................................11, 13, 14

*Herrera v. Raoul*
   2023 WL 3074799 (N.D. Ill. Apr. 25, 2023)..........................................11, 14

*Hilton v. Braunskill*
   481 U.S. 770 (1987)...........................................................................9

*Humane Soc'y of U.S. v. Gutierrez*
   558 F.3d 896 (9th Cir. 2009)..............................................................9

*Leiva-Perez v. Holder*
   640 F.3d 962 (9th Cir. 2011)..............................................................9

*Maryland v. King*
   567 U.S. 1301 (2012).....................................................................2, 20

*Miller v. Bonta*
   2021 WL 2659807 (9th Cir. June 21, 2021).......................................2

*Nat'l Ass'n of Gun Rights v. Lamont*
   2023 WL 4975979 (D. Conn. Aug. 3, 2023)...........................................*passim*

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*
   142 S. Ct. 2111 (2022).......................................................................*passim*

*Nken v. Holder*
   556 U.S. 418 (2009)...........................................................................2

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Ocean State Tactical LLC v. Rhode Island*
    2022 WL 17721175 (D.R.I. Dec. 14, 2022) .........................................11, 13, 14

*Or. Firearms Fed'n, Inc. v. Brown*
    2022 WL 17454829 (D. Or. Dec. 6, 2022) ......................................................11

*Or. Firearms Fed'n v. Kotek*
    2023 WL 4541027 (D. Or. July 14, 2023)................................................*passim*

*Rocky Mountain Gun Owners v. Bd. of Cnty. Comm'rs of*
    *Boulder Cnty.*
    2022 WL 4098998 (D. Colo. Aug. 30, 2022) .................................................12

*Winter v. Nat'l Res. Def. Council, Inc.*
    555 U.S. 7 (2008)..............................................................................................9

**STATUTES**

1999 Cal. Stat. 1781, §§ 3, 3.5 (S.B. 23) ...............................................................4

California Penal Code
    § 16740....................................................................................................4
    § 32310............................................................................................*passim*
    § 32310(a).............................................................................................4, 6
    § 32310(b) ................................................................................................6
    § 32310(c)..............................................................................................4, 5
    § 32310(d) .............................................................................................4, 5
    § 32405....................................................................................................5

**CONSTITUTIONAL PROVISIONS**

United States Constitution
    Second Amendment................................................................................*passim*
    Fourteenth Amendment..........................................................................1, 15

**COURT RULES**

Ninth Circuit Rule 27-3...........................................................................................1

**EMERGENCY MOTION UNDER CIRCUIT RULE 27-3 FOR
A STAY PENDING APPEAL AND AN ADMINISTRATIVE STAY**

## INTRODUCTION

The Attorney General respectfully requests that the Court grant a stay pending appeal of the district court's permanent injunction and order. The district court enjoined the State's longstanding restrictions on large-capacity magazines, defined as firearm magazines capable of holding more than ten rounds of ammunition. As the district court acknowledged, large-capacity magazines were invented long after the Founding and the ratification of the Fourteenth Amendment. Order 37.[1] They did not become prevalent until the late twentieth century, following extensive marketing campaigns by the firearms industry. Since 2010, they have been used in 86 percent of all mass-shootings in the United States in which six or more individuals were killed; since 2020, every single mass shooting that resulted in six or more fatalities involved a large-capacity magazine. They pose an enormous threat to public and officer safety, by allowing mass-shooters to fire many rounds at a rapid rate without having to stop to reload. Absent a stay, these magazines will begin to flood into California on October 2, 2023.

---

[1] The district court's order granting a permanent injunction, D. Ct. Dkt. 149 ("Order"), is attached as Exhibit 1 to the accompanying Declaration of John D. Echeverria.

1

The purpose of a stay is to "simply suspend[] judicial alteration of the status quo," *FTC v. Qualcomm Inc.*, 935 F.3d 752, 757 (9th Cir. 2019), "ensuring that appellate courts can responsibly fulfill their role in the judicial process," *Nken v. Holder*, 556 U.S. 418, 427 (2009).  Because an injunction barring enforcement or application of a duly enacted statute poses a substantial risk of harming the public interest, courts routinely issue stays pending appeal when a lower court enjoins a statute.  *See, e.g.*, *Maryland v. King*, 567 U.S. 1301, 1302-1303 (2012) (Roberts, C.J., in chambers); *Miller v. Bonta*, 2021 WL 2659807 (9th Cir. June 21, 2021).  And the case for a stay pending appeal is especially compelling here.

The district court's application of the standard announced in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), is deeply flawed, and the Attorney General is likely to succeed on the merits of his appeal.  Since *Bruen*, ten other federal district courts have considered Second Amendment challenges to similar restrictions on large-capacity magazines.  All but one of those courts has rejected the challenge (or found it unlikely to succeed), concluding that the text of the Second Amendment does not protect the plaintiff's conduct, or that the challenged law is consistent with the Nation's historical tradition of firearm regulation, or both.  *See infra* pp. 10-12.  In reaching a different conclusion, the district court here distorted *Bruen*'s methodology, discounted or ignored relevant historical analogues, and relied on untenable and unsupported premises.  At a

2

minimum, this appeal raises serious and substantial legal questions justifying a stay pending appeal.

Equitable considerations also overwhelmingly favor a stay to preserve the status quo while this Court considers those merits questions. If the district court's order took effect, it would threaten grave, immediate, and irreparable harm to the State. Without a stay, long-prohibited large-capacity magazines will swiftly enter the State in large numbers, with no reasonable prospect for their recovery. That is no theoretical possibility: it is precisely what happened four years ago, when the same district court enjoined the same provisions and delayed for a week in granting a temporary stay. A stay pending appeal will avoid repeating that dangerous scenario. At the same time, law-abiding gun owners will remain able to purchase and possess a wide range of firearms, as much ammunition as they want, and an unlimited number of magazines containing 10 rounds or fewer.

In addition, the Attorney General has tailored this stay request to preserve the relative positions of the parties during the appeal. The Attorney General therefore does not request a stay with respect to the portions of the district court's injunction prohibiting the possession of large-capacity magazines that were lawfully acquired prior to the decision, or requiring the dispossession of such magazines. Those requirements were enjoined in 2017 prior to their effective date and have never taken effect.

If this Court is unable to rule on this motion before October 2, 2023, the Attorney General respectfully requests that the Court enter an administrative stay until the motion is resolved. If the Court denies the motion, the Attorney General requests a 14-day administrative stay from the date of the denial to allow time for the State to consider whether to seek further relief.

## BACKGROUND

### A. California's Restrictions on Large-Capacity Magazines

California adopted its restriction on the manufacture, importation, and sale of large-capacity magazines in 2000. *See* 1999 Cal. Stat. 1781, §§ 3, 3.5 (S.B. 23) (now codified at Cal. Penal Code § 32310(a)). The term "large-capacity magazine" is defined by statute to generally include "any ammunition feeding device with the capacity to accept more than 10 rounds." Cal. Penal Code § 16740; *see id.* (excluding certain devices).

In 2016, California voters enacted Proposition 63, which enhanced the State's restrictions on large-capacity magazines. Section 32310(a) now creates criminal liability for "any person . . . who manufactures or causes to be manufactured, imports into the state, keeps for sale, or offers or exposes for sale, or who gives, lends, buys or receives" a large-capacity magazine. Section 32310(c) provides that possession of a large-capacity magazine is an infraction or a misdemeanor. And Section 32310(d) requires individuals who possess a magazine that was lawfully

4

acquired in the past to "remove the large-capacity magazine from the state," "sell [it] to a licensed firearms dealer," or "surrender [it] to a law enforcement agency for destruction." Certain individuals are exempt from Section 32310's requirements, including sworn peace officers authorized to carry a firearm in the course and scope of their official duties. Cal. Penal Code § 32405.

### B. Pre-*Bruen* Litigation

Shortly after voters enacted Proposition 63, the plaintiffs in this case filed a complaint alleging that Section 32310 violates the Second Amendment. D. Ct. Dkt. 1. The district court preliminarily enjoined Sections 32310(c) and (d)—the possession restrictions—one month before they were set to take effect. D. Ct. Dkt. 28; *see Duncan v. Becerra*, 742 F. App'x 218, 221-22 (9th Cir. 2018) (affirming preliminary injunction). Since that time, the statute's possession restrictions have been enjoined "for all those who previously acquired and possessed magazines legally." D. Ct. Dkt. 111 at 2; Echeverria Decl. ¶ 14.

The district court later permanently enjoined enforcement of Section 32310 in its entirety. D. Ct. Dkt. 87. That injunction took effect immediately, D. Ct. Dkt. 88, and the district court did not enter a stay pending appeal for a full week. D. Ct. Dkt. 97. During that week, "high-capacity magazines flooded into California," and many remain in the State today. Echeverria Decl. ¶ 43, Ex. 21. The stay pending appeal was subject to two qualifications: First, the court directed

that Sections 32310(a) and (b) would remain enjoined as to those "who have manufactured, imported, sold, or bought" large-capacity magazines during that week-long period. D. Ct. Dkt. 97 at 6. Second, Section 32310's possession restrictions with respect to lawfully acquired magazines also remained enjoined. *Id.*

After a divided panel of this Court initially affirmed the district court, *Duncan v. Becerra*, 970 F.3d 1133, 1140 (9th Cir. 2020), the full Court granted rehearing en banc, *Duncan v. Becerra*, 988 F.3d 1209 (9th Cir. 2021). The en banc panel reversed. *Duncan v. Bonta*, 19 F.4th 1087, 1113 (9th Cir. 2021) (en banc). Plaintiffs then filed a petition for a writ of certiorari. *Duncan v. Bonta*, No. 21-1194 (Feb. 28, 2022).

### C. Post-*Bruen* Litigation

While that petition was pending, the Supreme Court decided *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). The Court announced a standard for evaluating Second Amendment claims that "centered on constitutional text and history." *Id.* at 2128-2129. Under that standard, courts must first determine whether "the Second Amendment's plain text covers an individual's conduct." *Id.* at 2129-2130. If so, "the Constitution presumptively protects that conduct," and "[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.*

6

at 2130. To satisfy its burden, a government must identify a "well-established and representative historical *analogue*" to the challenged law. *Id.* at 2133 (emphasis in original). The analogue must be "relevantly similar"—there is no requirement for the government to identify a "historical *twin*" or "dead ringer." *Id.* at 2132, 2133.

In adopting this standard, the Supreme Court emphasized that "analogical reasoning under the Second Amendment" is not a "regulatory straightjacket." *Bruen*, 142 S. Ct. at 2133. In particular, it observed that "cases implicating unprecedented societal concerns or dramatic technological changes may require a more nuanced approach." *Id.* at 2132. The Court also reiterated that the Second Amendment does not protect an unfettered right to "keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* at 2128 (quoting *Dist. of Columbia v. Heller*, 554 U.S. 570, 626 (2008)). Indeed, *Bruen* did not "decide anything about the kinds of weapons that people may possess." *Id.* at 2157 (Alito, J., concurring).

After the *Bruen* decision, the Supreme Court granted the certiorari petition filed by the plaintiffs in this case, vacated this Court's prior en banc opinion, and remanded the case for further proceedings in light of *Bruen*. *Duncan v. Bonta*, 142 S. Ct. 2895 (2022). The en banc panel in turn remanded the case to the district court. *Duncan v. Bonta*, 49 F.4th 1228 (9th Cir. 2022) (en banc). On remand, the parties submitted supplemental briefing that addressed the relevant historical

7

analogues and applied the *Bruen* standard to Section 32310. D. Ct. Dkt. 111 at 2; D. Ct. Dkt. 134; *see* Echeverria Decl., Ex. 16.

On September 22, 2023, the district court again permanently enjoined Section 32310 in its entirety. Order 71. As to *Bruen*'s threshold inquiry, the district court held that large-capacity magazines are "arms" within the meaning of the Second Amendment and that they are "in common use" because they enjoy "present popularity" and have been "subjectively chosen by citizens to keep in case of confrontation." *Id.* at 15-20, 23-24. Indeed, the court asserted that among firearms, "magazines that hold more than 10 rounds are possibly the most commonly owned thing in America," *id.* at 3, and compared their utility to a "seat belt," a "reserve canopy" in a parachute, and "[a] cell phone in one's pocket . . . when waiting for a telephone call," *id.* at 25.

Turning to *Bruen*'s historical inquiry, the district court rejected the State's evidence of historical analogues. Order 44-69. The court discounted all analogues from before 1791 or after 1868, *id.* at 44; disregarded all laws that it described as related to "*use*—not [to] possession or acquisition," *id.* at 45 (emphasis added); and rejected all laws restricting arms other than firearms, *id.* at 48. The court acknowledged that large-capacity magazines are a recent innovation, "invented in the late 19th Century," *id.* at 37, and intended to "solve[] a problem with historic firearms," *id.* at 3. But it asserted that a "historical twin" for Section 32310 "is not

8

unimaginable"—positing that early States or colonies could have prohibited "having large capacity gunpowder sacks" or "prohibited carrying more than 10 lead bullets," but did not, *id.* at 58. The court also asserted that because "early militia laws" required citizens to carry a minimum number of *bullets*, California's restrictions on *magazines* "could not have existed under the understanding of the right to bear arms that prevailed at the time." *Id.* at 67, 69.

## ARGUMENT

A movant seeking a stay pending appeal "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of relief, that the balance of equities tip in his favor, and that a stay is in the public interest." *Humane Soc'y of U.S. v. Gutierrez*, 558 F.3d 896, 896 (9th Cir. 2009) (citing *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). To obtain a stay, the Attorney General "need not demonstrate that it is more likely than not that [the State] will win on the merits" or that "ultimate success is probable." *Leiva-Perez v. Holder*, 640 F.3d 962, 966-967 (9th Cir. 2011). Rather, "a substantial case on the merits" or "serious legal questions" will suffice "so long as the other factors support the stay." *Id.* (quoting *Hilton v. Braunskill*, 481 U.S. 770, 778 (1987)).

The Attorney General satisfies that standard. Ten other federal district courts have considered Second Amendment challenges to similar restrictions on large-

capacity magazines. All but one of those courts has rejected the challenge or found it unlikely to succeed. In the only other case where a district court held that the plaintiffs were likely to succeed, the Seventh Circuit promptly entered a stay pending appeal. At a minimum, that body of decisions reflects that this case raises serious and substantial legal questions justifying a stay. And the equitable factors also weigh heavily in favor of preserving the status quo during this appeal. Absent a stay, the district court's permanent injunction will take effect on October 2, 2023, and large-capacity magazines that have been disproportionately used in high-fatality mass shooting events will flood into the State—at the same time this Court is weighing whether the Constitution authorizes the State to prohibit them.

## I.    THE ATTORNEY GENERAL IS LIKELY TO SUCCEED ON THE MERITS

The district court's decision misapplies the *Bruen* framework and is at odds with the great weight of lower-court authority applying that framework to statutes restricting large-capacity magazines. As that authority illustrates, the Attorney General is likely to succeed on the merits of this appeal, and the legal questions are surely of sufficient seriousness to justify a stay pending appeal.

1. Of the ten other federal district courts that have considered a Second Amendment challenge to a large-capacity magazine ban after *Bruen*, nine have upheld the challenged restriction or concluded that the law is likely constitutional—including two district courts in this Circuit. *See Or. Firearms*

10

*Fed'n v. Kotek*, 2023 WL 4541027 (D. Or. July 14, 2023) (final judgment), *appeal docketed*, Nos. 23-35478, 23-35479 (9th Cir. Aug. 15, 2023); *Brumback v. Ferguson*, 2023 WL 6221425 (E.D. Wash. Sept. 25, 2023) (denying preliminary injunction); *Nat'l Ass'n of Gun Rights v. Lamont*, 2023 WL 4975979 (D. Conn. Aug. 3, 2023) (same), *appeal filed*, No. 22-cv-01118, Dkt. 86 (D. Conn. Aug. 16, 2023); *Herrera v. Raoul*, 2023 WL 3074799 (N.D. Ill. Apr. 25, 2023) (same), *appeal docketed*, No. 23-1793 (7th Cir. Apr. 26, 2023); *Hanson v. Dist. of Columbia*, 2023 WL 3019777 (D.D.C. Apr. 20, 2023) (same), *appeal docketed*, No. 23-7061 (D.C. Cir. May 17, 2023); *Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.*, 2023 WL 2655150 (D. Del. Mar. 27, 2023) (same), *appeal docketed*, No. 23-1634 (3d Cir. Apr. 7, 2023); *Bevis v. City of Naperville, Ill.*, 2023 WL 2077392 (N.D. Ill. Feb. 17, 2023) (same), *appeal docketed*, No. 23-1353 (7th Cir. Feb. 23, 2023); *Ocean State Tactical LLC v. Rhode Island*, 2022 WL 17721175 (D.R.I. Dec. 14, 2022) (same), *appeal docketed*, No. 23-1072 (1st Cir. Jan. 13, 2023); *Or. Firearms Fed'n, Inc. v. Brown*, 2022 WL 17454829 (D. Or. Dec. 6, 2022) (same), *appeal dismissed*, No. 22-36011, Dkt. 4 (9th Cir. Dec. 12, 2022).

Only the Southern District of Illinois has held that a Second Amendment challenge to a large-capacity magazine law is likely to succeed under *Bruen*'s standards. *Barnett v. Raoul*, 2023 WL 3160285 (S.D. Ill. Apr. 28, 2023), *appeal*

*docketed*, No. 23-1825 (7th Cir. May 1, 2023).[2] But the Seventh Circuit promptly entered a stay of that order pending appeal. *Barnett v. Raoul*, No. 23-1825, Dkt. 30 (7th Cir. May 12, 2023); *see also id.*, Dkt. 9 (7th Cir. May 4, 2023) (administrative stay). In entering the stay, the Seventh Circuit emphasized that other "district judges" had reached "differing conclusions." *Id.*, Dkt. 30 at 2. Since then, three additional district courts have held that large-capacity magazine restrictions comply (or likely comply) with the Second Amendment. *See Brumback*, 2023 WL 6221425, at *8; *Lamont*, 2023 WL 4975979, at *19-43; *Kotek*, 2023 WL 4541027, at *26-46.

2. As the great weight of district court authority indicates, the large-capacity magazine restrictions challenged here are consistent with the Second Amendment under the standards announced in *Bruen*. At *Bruen*'s threshold inquiry, plaintiffs must establish that the "textual elements" of the Second Amendment—the right to "keep and bear" protected "Arms"—cover their desired course of conduct. 142 S. Ct. at 2134; *see id.* at 2129-2130. That textual right "'is not unlimited.'" *Id.* at

---

[2] In *Rocky Mountain Gun Owners v. Board of County Commissioners of Boulder County*, 2022 WL 4098998 (D. Colo. Aug. 30, 2022), the court entered a 14-day temporary restraining order of a county restriction on large-capacity magazines. That order was issued without the benefit of briefing from the defendants, and it did not apply *Bruen*'s standards. The plaintiffs voluntarily dismissed their claims before the district court could address the merits. No. 22-cv-2113, Dkt. 14, 15, 30 (D. Colo. Oct. 12, 2022).

2128. It "extends only to certain types of weapons." *Heller*, 554 U.S. at 623; *see also id.* at 626 (no "right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose"). Specifically, the text protects only those weapons "in 'common use' today for self-defense." *Bruen*, 142 S. Ct. at 2134.

Applying those standards, most lower courts to decide the matter since *Bruen* have concluded that the possession of large-capacity magazines is not conduct protected by the Second Amendment. Even assuming that large-capacity magazines are "Arms," *but see, e.g.*, *Kotek*, 2023 WL 4541027, at *25-26, they are not "'in common use' . . . for lawful purposes like self-defense." *Id.* at *26. The fact that they may be "'commonly owned'" by gun owners in some parts of the Nation where large-capacity magazines are permissible does not by itself establish that they are "'in common use today *for self-defense*.'" *Id.* at *28 (emphasis added).[3] And most courts to examine the matter have found no evidence that

---

[3] *See also Lamont*, 2023 WL 4975979, at *22 ("In the absence of persuasive evidence that the assault weapons or LCMs listed in the statutes are commonly used or are particularly suitable for self-defense, Plaintiffs have failed to carry their burden."); *Hanson*, 2023 WL 3019777, at *12 ("the Court finds that the Second Amendment does not cover LCMs because they are not typically possessed for self-defense" and "are not in fact commonly used for self-defense"); *Ocean State Tactical*, 2022 WL 17721175, at *14 ("There is simply no credible evidence in the record to support the plaintiffs' assertion that LCMs are weapons of self-defense and there is ample evidence put forth by the State that they are not."). *But see Del. State Sportsmen's Ass'n*, 2023 WL 2655150, at *8; *Barnett*, 2023 WL 3160285, at *8.

large-capacity magazines "are commonly employed for self-defense"—and "credible evidence showing they are not." *Id.* at *33. In particular, the number of rounds in prohibited magazines far exceeds the average number of shots fired in self-defense. *Hanson*, 2023 WL 3019777, at *10; *see* Echeverria Decl., Ex. 5 (Allen Suppl. Decl.) ¶¶ 11, 18-20. Large-capacity magazines are instead most suitable for *offensive* purposes, because they allow far more bullets to be fired, "result[ing] in more gunshot wounds per victim, and increas[ing] the lethality of gunshot injuries." *Hanson*, 2023 WL 3019777, at *9; *see* Echeverria Decl., Ex. 3 (Koper Rpt.) at 4; *id.*, Ex. 10 (Suppl. Klaravas Decl.), Ex. D at 28; *id.*, Ex. 19 (Suppl. Tucker Decl.) ¶ 15.[4]

And even if the possession of large-capacity magazines were viewed as presumptively protected conduct, Section 32310 "is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2130.[5] The

---

[4] *See also Kotek*, 2023 WL 4541027, at *34 ("While the average number of shots fired in self-defense is around 2.2, in a mass shooting involving an LCM, the average number of shots fired is ninety-nine."); *Lamont*, 2023 WL 4975979, at *26 ("assault weapons and LCMs are more suitable for military use than civilian self-defense"); *Ocean State Tactical*, 2022 WL 17721175, at *14 (crediting expert's testimony that he is "unaware of any incident in which a civilian has ever fired as many as 10 rounds in self-defense").

[5] *See Kotek*, 2023 WL 4541027, at *35-46; *Lamont*, 2023 WL 4975979, at *26-33; *Herrera*, 2023 WL 3074799, at *7; *Hanson*, 2023 WL 3019777, at *12-15; *Del. State Sportsmen's Ass'n*, 2023 WL 2655150, at *13; *Bevis*, 2023 WL 2077392, at *14. *But see Barnett*, 2023 WL 3160285, at *11.

Supreme Court emphasized in *Bruen* that "[w]hile the historical analogies here and in *Heller* are relatively simple to draw, other cases implicating unprecedented societal concerns or dramatic technological changes may require a more nuanced approach." *Id.* at 2132. This is that case. *See, e.g.*, *Kotek*, 2023 WL 4541027, at *36. Large-capacity magazines are a "relatively recent phenomenon" that did not become popular with civilian gun owners until recent decades. *Id.* at *38; Echeverria Decl., Ex. 10 (Suppl. Klarevas Decl.) ¶16 & tbl. 2; *id.*, Ex. 12 (Suppl. Roth Decl.) ¶ 50. They allow shooters to unleash far more firepower in a compressed period of time than any firearms and accessories available at the Founding or at the ratification of the Fourteenth Amendment. *Kotek*, 2023 WL 4541027, at *38-39; Echeverria Decl., Ex. 13 (Suppl. Spitzer Decl.) ¶¶ 18-33; *id.*, Ex. 12 (Suppl. Roth Decl.) ¶¶ 40-55. That increased potency has wrought unprecedented societal concerns: an ever-increasing number of mass-shootings carried out by lone gunmen equipped with large-capacity magazines who can now murder dozens of people in minutes. *Kotek*, 2023 WL 4541027, at *36; Echeverria Decl., Ex. 3 (Koper Rpt.) at 5; *id.*, Ex. 10 (Suppl. Klarevas Decl.) ¶ 11 & tbl. 1. In 1990, 78 percent of all high-fatality mass shootings involved large-capacity magazines; by 2010, 86 percent of them did; and since 2020, "every single high-fatality mass shooting in which six or more individuals were killed involved" a

15

large-capacity magazine. *Kotek*, 2023 WL 4541027, at *37; *see* Echeverria Decl., Ex. 2 (Klarevas Rpt.) at 6-7 & App. B, fig. 3.

Faithfully applying *Bruen*'s "more nuanced approach," 142 S. Ct. at 2132, to historical analogies in this context, district courts across the Nation have repeatedly held that restrictions on large-capacity magazines are consistent with a historical tradition of regulating particularly dangerous weapons technologies as they spread and cause harm. *See, e.g.*, *Kotek*, 2023 WL 4541027, at *46; Echeverria Decl., Ex. 13 (Suppl. Spitzer Decl.) ¶ 15. That tradition is reflected in a series of historical analogues that were presented to the district court below, *see* Echeverria Decl., Ex. 16 (D. Ct. Dkt. 139), including regulations enacted in the 18th and 19th centuries barring the use of "trap guns," the possession and carrying of certain blunt objects and fighting knives, and the concealed carry of pistols and revolvers, as well as 20th-century restrictions on the use and possession of fully-automatic and semi-automatic firearms and ammunition feeding devices. *Kotek*, 2023 WL 4541027, at *39-46; Echeverria Decl., Ex. 13 (Suppl. Spitzer Decl.) ¶¶ 3-14, 34-53. That tradition is also reflected in gunpowder storage laws dating back to the 18th and 19th centuries, which prohibited the practice of stockpiling large quantities of gunpowder in one place to avoid mass casualties caused by explosions or fires. *Kotek*, 2023 WL 4541027, at *40; Echeverria Decl., Ex. 8 (Cornell Decl.) ¶¶ 41, 45. These historical predecessors are relevantly similar to

16

Section 32310 in terms of both burden and justification. They imposed comparably minimal burdens by leaving available a wide range of weapons and accessories for lawful self-defense. *Bruen*, 142 S. Ct. at 2133. And they advanced comparable public-safety goals by protecting the public from particularly lethal arms and accessories. *See, e.g.*, *Kotek*, 2023 WL 4541027, at \*35-46; *Lamont*, 2023 WL 4975979, at \*32.

3. In reaching a different conclusion regarding the constitutionality of Section 32310, the district court in this case relied on a deeply flawed analysis. For example, the district court assigned great significance to the fact that some Americans possess large-capacity magazines "to meet a *subjective* need for self-defense." Order 25 (emphasis added). The court asserted that this subjective need, combined with the "popularity" of large-capacity magazines, "*alone* entitles such magazines to Second Amendment protection" under *Bruen*'s threshold inquiry. *Id.* at 24-25 (emphasis added). But the district court cited no other authority supporting its "subjective" standard, which would apparently extend presumptive Second Amendment protection to weapons regardless of whether they have ever been—or will ever be—used for lawful self-defense. As the district court in *Kotek* observed, if "popularity" and the subjective desire of some firearms enthusiasts to possess a weapon entitle that weapon to Second Amendment protection, it would "allow[] the firearms industry to control the bounds of the Second Amendment"

17

through savvy marketing and sales practices in pursuit of its "economic interest in the increased sale of" that weapon. 2023 WL 4541027, at *28.

The district court below also concluded that history offers "no support for the State's ban." Order 38. But it reached that conclusion only after ignoring most of the relevant historical laws that inform a nuanced approach to the analogical analysis. For instance, the district court discounted evidence of laws from before 1791, *id.* at 44-45—despite the Supreme Court's instruction that laws from that era may shed light on the "preexisting right" codified when the States ratified the Second Amendment, *Heller*, 554 U.S. at 603. It ignored laws enacted after 1868, despite the Supreme Court's guidance that post-ratification evidence can help "settle the meaning" of the Constitution. *Bruen*, 142 S. Ct. at 2137 (quoting *Chiafalo v. Washington*, 140 S. Ct. 2316, 2326 (2020)). It disregarded other duly enacted laws on the theory that they were not adequately "enforced" by local officials. Order 61. And it rejected analogies to historical laws that concerned "restrictions on *use*" rather than "possession or acquisition," *id.* at 45, and to laws regulating weapons other than firearms, *id.* at 48—even though *Bruen*'s central premise is that State may draw analogies to "relevantly similar" laws that arose in different contexts but imposed comparable burdens and were supported by comparable justifications. 142 S. Ct. at 2118, 2132. The district court's blinkered

18

analysis imposed exactly the kind of "regulatory straightjacket" on the State that *Bruen* disclaimed. *Id.* at 2133.

And while the district court recited *Bruen*'s guidance that regulations addressing "dramatic technological changes" or "unprecedented societal concerns" warrant a more nuanced analysis of historical precursors, *see* Order 40, nothing in the court's analysis meaningfully applied that guidance. To the contrary, the court appears to have relied largely on its own unfounded speculation. It asserted that "[a] historical twin is not unimaginable." *Id.* at 58. For instance, the court posited, early States "could have . . . prohibited having large capacity gunpowder sacks, or . . . carrying more than 10 lead bullets," but "[t]here were no such restrictions." *Id.* at 58. Later, the court speculated that because early "militia laws of the federal and state governments required citizens to keep and carry more ammunition supplies than 10 rounds," Section 32310 "could not have existed under the understanding of the Second Amendment at the time of the Founding." *Id.* at 69. That is a non sequitur. Section 32310 imposes *no* limits on the number of rounds of ammunition that a law-abiding citizen may keep and carry. It instead falls within the "longstanding tradition of the government exercising its power to regulate new and dangerous weapon technology," *Lamont*, 2023 WL 4975979, at *32, by restricting the possession of large-capacity magazines that pose a dire threat to public health and safety.

## II. THE EQUITABLE FACTORS WEIGH STRONGLY IN FAVOR OF A STAY

The equitable considerations also overwhelmingly favor a stay. As a general matter, the "public interest" is harmed where, as here, a lower court invalidates and enjoins a duly enacted statute. *See, e.g.*, *Maryland*, 567 U.S. at 1303; *Golden Gate Rest. Ass'n v. City & Cnty. of San Francisco*, 512 F.3d 1112, 1126 (9th Cir. 2008). And a State necessarily "suffers irreparable injury whenever an enactment of its people or their representatives is enjoined," as this Court has frequently recognized. *E.g.*, *Coal. for Econ. Equity v. Wilson*, 122 F.3d 718, 719 (9th Cir. 1997); *see also Maryland*, 567 U.S. at 1303 (same).

There is an especially grave threat of irreparable harm here. California's restrictions on large-capacity magazines have been part of the status quo for decades. *See supra* pp. 4-5. Large-capacity magazines pose particular threats to public safety. *See supra* pp. 15-16. They allow mass shooters to quickly fire many rounds without reloading, increasing the number of casualties and injuries. Echeverria Decl., Ex. 2 (Klarevas Rpt.) at 8; *id.*, Ex. 9 (Suppl. Donohue Decl.) ¶ 24, fig. 2. They also deprive individuals of opportunities to escape from a mass shooting or to intervene and disrupt a mass shooting in progress. *See id.*, Ex. 10 (Suppl. Klarevas Decl.), Ex. D at 28-29. When used in mass shootings, large-capacity magazines correlate with substantially more fatalities and injuries on average than when smaller magazines are used. *See id.*, Ex. 5 (Suppl. Allen Decl.)

¶¶ 27-29; *id.*, Ex. 12 (Suppl. Roth Decl.) ¶¶ 53-55. The recent mass shootings in Orlando, Southerland Springs, Parkland, Monterey Park, and Uvalde all involved the use of large-capacity magazines. *See id.*, Ex. 10 (Suppl. Klarevas Decl.) ¶ 11 & tbl. 1.

The district court dismissed those concerns out of hand. *See, e.g.*, Order 5 n.24 (speculating that "if all magazines over 10 rounds are somehow eliminated from California, the next mass shooting will be accomplished with guns holding only 10 rounds"). But the threatened disruption of these longstanding public safety requirements warrants significant consideration in this Court's balancing of the equities. Without relief, the district court's permanent injunction will allow a sudden surge of long-prohibited magazines into the State. Even if this Court were to reverse the district court on appeal, it would be impracticable if not impossible for the State to restore the status quo and remove those magazines from the State.

The State's prior experience at an earlier stage of this case underscores these risks. "[H]igh-capacity magazines flooded into California" after the district court halted enforcement of Section 32310 for a one-week period in 2019. Echeverria Decl. ¶ 43; *id.*, Ex. 21. Many remain in the State to this day. *Id.* ¶ 43. Any temporary inconvenience to plaintiffs from the stay would not outweigh these harms or interfere with plaintiffs' right to self-defense. Plaintiffs and other law-

abiding residents of California will remain able to purchase a wide array of authorized firearms, as much ammunition as they desire, and as many magazines containing 10 rounds or fewer as they want, while this Court considers the weighty issues presented by this appeal.

//

//

//

//

//

//

//

//

## CONCLUSION

The Court should stay the district court's order and permanent injunction pending appeal, except to the extent that Section 32310 prohibits possession of large-capacity magazines that were lawfully acquired and possessed prior to the judgment. If necessary, the Court should issue an administrative stay before October 2, 2023, to preserve the status quo until the Court resolves this motion.

Dated: September 26, 2023      Respectfully submitted,

ROB BONTA
*Attorney General of California*
MICHAEL J. MONGAN
*Solicitor General*
THOMAS S. PATTERSON
*Senior Assistant Attorney General*
HELEN H. HONG
MICA L. MOORE
*Deputy Solicitors General*
R. MATTHEW WISE
*Supervising Deputy Attorney General*
ROBERT L. MEYERHOFF
KEVIN J. KELLY
*Deputy Attorneys General*

s/ John D. Echeverria

JOHN D. ECHEVERRIA
*Deputy Attorney General*
*Attorneys for Defendant-Appellant*

## STATEMENT OF RELATED CASES

The Attorney General is aware of the following related cases:

- *Or. Firearms Fed'n v. Kotek*, 9th Cir. No. 23-35479:  Appeal from a final judgment upholding Oregon Ballot Measure 114, which prohibits the manufacture, importation, possession, use, purchase, sale, or transfer of any large-capacity magazines.


Dated:  September 26, 2023                                    s/ John D. Echeverria

# CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing emergency motion complies with the type-volume limitation of Ninth Circuit Rules 27-1 and 32-3(2) because it consists of 5,224 words, excluding the documents listed at Federal Rules of Appellate Procedure 27(a)(2)(B) and 32(f). This emergency motion complies with the typeface and the type style requirements of Federal Rule of Appellate Procedure 27 because it has been prepared in a proportionally spaced typeface using 14-point font.

Dated: September 26, 2023                                    s/ John D. Echeverria