Case No. 23-55805

In the United States Court of Appeals
for the Ninth Circuit

VIRGINIA DUNCAN, ET AL.
*Plaintiffs-Appellees*,

V.

ROB BONTA,
in his official capacity as Attorney General of the State of California,
*Defendant-Appellant*.

On Appeal from the United States District Court
for the Central District of California
Case No. 3:17-cv-01017-BEN-JLB

# PLAINTIFFS-APPELLEES' OPPOSITION TO APPELLANT'S EMERGENCY MOTION FOR A STAY PENDING APPEAL

C.D. Michel
Anna M. Barvir
Sean A. Brady
MICHEL & ASSOCIATES, P.C.
180 E. Ocean Blvd., Suite 200
Long Beach, CA 90802
(562) 216-4444
abarvir@michellawyers.com

*Counsel for Plaintiffs-Appellees*

September 30, 2023

# TABLE OF CONTENTS

**Page**

Table of Contents ........ i

Table of Authorities ........ ii

Introduction ........ 1

Legal Standard ........ 2

Argument ........ 3

I. The State Has Not Shown a Likelihood of Success ........ 3

II. The Remaining Equitable Factors Do Not Favor Staying the District Court's Injunction ........ 10

A. There Is No Risk of Irreparable Harm to the State—Only to Appellants ........ 10

B. The Balance of Harms Counsels Against Staying the District Court's Injunction ........ 12

C. A Stay Does Not Serve the Public Interest ........ 13

Conclusion ........ 14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Atty. Gen. of N.J.*, 910 F.3d 106 (2018) ..... 4

*Boland v. Bonta*, No. 22-cv-01421, 2023 WL 2588565 (Mar. 20, 2023) ..... 13

*Caetano v. Massachusetts*, 577 U.S. 411 (2016) ..... 5

*Coalition for Economic Equity v. Wilson*, 122 F.3d 718 (9th Cir. 1997) ..... 11

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ..... 1, 3, 5, 8

*Duncan v. Becerra*, 742 Fed. Appx. 218 (9th Cir. 2018) ..... 10

*Duncan v. Becerra*, 970 F.3d 1133 (9th Cir. 2020) ..... 10

*Duncan v. Becerra*, No. 17-cv-1017, 366 F. Supp. 3d 1131 (S.D. Cal. Mar. 29, 2019) ..... 4

*Duncan v. Bonta*, 19 F.4th 1087 (9th Cir. 2021) ..... 10

*Duncan v. Bonta*, No. 17-cv-1017, 2023 WL 6180472 (S.D. Cal. Sept. 22, 2023) ..... 8

*Elrod v. Burns*, 427 U.S. 347 (1976) ..... 13

*Fyock v. City of Sunnyvale*, 25 F. Supp. 3d. 1267 (N.D. Cal. 2014) ..... 4

*Gordon v. Holder*, 721 F.3d 638 (D.C. Cir. 2013) ..... 13

*Indep. Living Ctr. of S. Cal. v. Maxwell-Jolly*, 572 F.3d 644 (9th Cir. 2009) ..... 12

*Latta v. Otter*,
771 F.3d 496 (9th Cir. 2014) ..................................................................... 12

*Leiva-Perez v. Holder*,
640 F.3d 962 (9th Cir. 2011) ..................................................................... 3, 10, 12

*Levine v. Fair Pol. Practices Comm'n*,
222 F. Supp. 2d 1182 (E.D. Cal. 2002) ..................................................................... 13

*N.Y. State Rifle & Pistol Ass'n v. Cuomo*,
804 F.3d 242 (2d Cir. 2015) ..................................................................... 4

*N.Y. State Rifle & Pistol Ass'n v. Bruen*,
597 U.S. __, 142 S. Ct. 2111 (2022) ..................................................................... passim

*Nken v. Holder*,
556 U.S. 418 (2009) ..................................................................... 2, 3

*Pac. Merch. Shipping Ass'n v. Cackette*,
No. CIV.S-06-2791WBSKJM 2007 WL 2914961 (E.D. Cal. 2007) .................... 10, 11

*Rodriguez v. Robbins*,
715 F3d 1127 (9th Cir. 2013) ..................................................................... 11

*Silvester v. Harris*,
No. 11-cv-2137, 2014 WL 661592 (Nov. 20, 2014) ..................................................................... 12

*Valle del Sol Inc. v. Whiting*,
732 F.3d 1006 (9th Cir. 2013) ..................................................................... 11

*Worman v. Healey*,
922 F.3d 26 (1st Cir. 2019) ..................................................................... 4

**Statutes**

Cal. Penal Code § 32310 ..................................................................... passim

## INTRODUCTION

On September 22, 2023, the district court granted Plaintiffs-Appellees' motion for summary judgment, declared California's total ban on magazines over ten rounds unconstitutional, and permanently enjoined its enforcement. The district court stayed its injunction for ten days, giving the State a chance to move this Court for a stay pending appeal. The State has done so, and Appellees oppose the request. For at least the third time since this litigation began, Appellees have shown that California's ban on magazines over ten rounds violates the Second Amendment and obtained an order enjoining its enforcement. The Second Amendment question at issue here is not a close call, and the district court's permanent injunction should take effect without any further delay.

Indeed, the district court correctly found, under *District of Columbia v. Heller,* 554 U.S. 570 (2008) and *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. __, 142 S. Ct. 2111 (2022), that Penal Code section 32310 is unconstitutional because it bans ammunition magazines over ten rounds—a type of firearm accessory that is in common use for many lawful purposes—and there is no direct or analogous historical tradition of such regulation. The district court's analysis is completely faithful to *Bruen*, and its findings are correct. To be certain, after the Supreme Court granted certiorari, and vacated and remanded this Court's 2021 en banc decision upholding section 32310, the parties developed a comprehensive factual record tailored to the *Bruen* analysis. That record plainly shows that the State failed to marshal evidence of a relevant historical tradition sufficient to save section 32310.

None of the State's arguments for why the district court's injunction should be stayed pending appeal have any merit. The district court's application of *Bruen* is anything but "deeply flawed," and it did not "distort" *Bruen*'s methodology at all. Mot at 2. Indeed, the district court was meticulously faithful to *Bruen*. So the likelihood that the State will achieve reversal on appeal is slim to none. Nor do the remaining equitable considerations favor a stay: There is no risk of irreparable harm to the State, and the balancing analysis favors the constitutional liberty interest that section 32310 destroys. What's more, because there is no public interest in staying an injunction of an unconstitutional law, the public interest clearly weighs against a stay.

The Court should deny the State's request to stay the district court's injunction pending appeal because the State cannot meet its burden to show a stay is warranted. If the Court is inclined to stay the district court's injunction, however, it should tailor its order to protect those who already possess magazines over ten rounds by preserving the district court's preliminary injunction of section 32310(c)-(d).

## LEGAL STANDARD

Rule 8 of the Federal Rules of Appellate Procedure allows this Court to suspend, modify, restore, or grant an injunction while an appeal is pending. "A stay is not a matter of right, even if irreparable injury might otherwise result." *Nken v. Holder*, 556 U.S. 418, 433 (2009). Rather, a stay is "an exercise of judicial discretion" and the "propriety of its issue is dependent upon the circumstances of the particular case." *Id.* "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Id.* at 433-34.

In determining whether to issue a stay pending appeal, courts consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken*, 556 U.S. at 434. The first two factors "are the most critical." *Id.*

## ARGUMENT

### I. THE STATE HAS NOT SHOWN A LIKELIHOOD OF SUCCESS

As for the first *Nken* factor, this Court has characterized a "strong showing" that the applicant is likely to succeed on the merits in various ways, including "reasonable probability," "fair prospect," "substantial case on the merits," and "serious legal questions ... raised." *Leiva-Perez v. Holder*, 640 F.3d 962, 967-68 (9th Cir. 2011). Under any of these standards, the State falls short. Indeed, the district court, relying on an unusually robust evidentiary record, held that section 32310 violates the Second Amendment under the now-settled analysis for deciding such claims. D. Ct. Dkt. 149 ("Order") at 44. The State cannot establish that it is reasonably likely to overturn the district court's well-reasoned judgment.

In *Bruen*, the Supreme Court rejected the means-end interest-balancing test that took hold in the wake of its landmark Second Amendment decisions in *Heller* and *McDonald*. *Bruen*, 142 U.S. at 2127. The Court repeated *Heller*'s command to apply a text-and-history analysis to Second Amendment questions. *Id.* And it clarified that "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." 142 S. Ct. at 2125. To rebut that

presumption, "the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.* Analogical reasoning is a key component of *Bruen*'s methodology. *Id.*

But since *Bruen*, government defendants have routinely presented absurd arguments to exempt obvious Second Amendment questions from *Bruen*'s simple methodology or bend the meaning of *analogy* beyond what common sense will tolerate. California did just that in the district court below. And it does so again here, arguing that *even if* magazines over ten rounds are "arms,"[1] they are not in common use for lawful purposes like self-defense because some evidence suggests that "the number of rounds in prohibited magazines far exceeds the average number of shots fired in self-defense." Mot. at 14. On top of the purported evidence that magazines over ten rounds are not really necessary for typical defensive gun use, the State argues that the banned magazines allow for more bullets to be fired and thus makes firearms

[1] They clearly are. No pre-*Bruen* case law ever held otherwise. *See, e.g.*, *Worman v. Healey*, 922 F.3d 26, 36 (1st Cir. 2019) (assuming without deciding that a magazine restriction implicates the Second Amendment); *N.Y. State Rifle & Pistol Ass'n v. Cuomo*, 804 F.3d 242, 257 (2d Cir. 2015) ("we proceed on the assumption that these laws [bans on "assault weapons" and "large capacity magazines"] ban weapons protected by the Second Amendment"); *Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Atty Gen. of N.J.*, 910 F.3d 106 at 116 ("The law challenged here regulates magazines, and so the question is whether a magazine is an arm under the Second Amendment. The answer is yes.") *Fyock v. City of Sunnyvale*, 25 F. Supp. 3d. 1267, 1276 (N.D. Cal. 2014), *aff'd*, 779 F.3d 991 (9th Cir. 2015) ("[T]he court finds that the prohibited magazines are 'weapons of offence, or armour of defence,' as they are integral components to vast categories of guns.") Nor did the State itself even argue that magazines over ten rounds are not "arms" in this case before it returned to the district court after *Bruen*. *See* Defendant's Opposition to Plaintiffs' Motion for Summary Judgment, *Duncan v. Becerra*, No. 17-cv-1017, 366 F. Supp. 3d 1131 (S.D. Cal. Mar. 29, 2019) (ECF No. 53); *see* Appellant's Opening Br., July 15, 2019, ECF No. 7.

equipped with them "most suitable for *offensive* purposes" and more lethal when used homicidally. Mot. at 14.

These arguments, of course, are plainly irrelevant under *Bruen*'s methodology. No Supreme Court or even Ninth Circuit Second Amendment authority has ever held that *actual* usage of a type of arm in self-defense is necessary to establish its presumptive entitlement to Second Amendment protection. Actual *ownership* is the standard, not *usage*. *Heller*, 554 U.S. at 570 ("[T]he Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding."); *Caetano v. Massachusetts*, 577 U.S. 411, at 420 (2016) (Alito, J., concurring) ("[T]he pertinent Second Amendment inquiry is whether stun guns are commonly possessed by law-abiding citizens for lawful purposes *today*."). Indeed, just as "[n]othing in the Second Amendment's text draws a home/public distinction with respect to the right to keep and bear arms," nothing draws a possession/usage distinction either. *Bruen*, 142 S. Ct. at 2134. Nor has any binding authority ever held that the relative *dangerousness* or lethality of an arm when used illegally factors into whether a category of arms is presumptively protected. On the contrary, the binding Second Amendment authorities uniformly state that constitutional protection hinges on a straightforward analysis of a plaintiff's desired conduct and a review of the historical record—not on balancing the liberty interest against the government's police power. *Id.* at 2127.

The district court made no errors in concluding that Appellants' desired course of conduct (acquiring and possessing magazines over ten rounds) is presumptively protected under the Second Amendment. Order at 3. Magazines over ten rounds are a

type of arms accessory widely circulated in non-prohibited states, and they are possessed and carried in case of confrontation by many millions of Americans every day. *Id.* That fact is plain to any honest factfinder, and no number of incorrect district court opinions can change that. Indeed, just as courts throughout the nation profoundly misinterpreted *Heller* into nullification, they are trying to do the same to *Bruen*. The district court—faithfully executing its duty to apply the principles announced in *Heller* and *Bruen*—rightly bucked that unfortunate trend.

Nor is the State's argument that section 32310 "is consistent with the Nation's historical tradition of firearm regulation" in good contact with reality. Mot. at 14. This case does not involve any "unprecedented societal concern or dramatic technological change that may require a more nuanced approach." Mot. at 15. Even if it did, under *Bruen*, the only effect would be to allow the State slightly more latitude to analogize than it would have if the challenged law addressed a modern social problem that also existed at the time of the founding. *Bruen*, 142 S. Ct. at 2131. It would not allow the government to circumvent *Bruen*'s historical methodology altogether and replace it with a deferential interest-balancing standard.

Yet that is precisely what the State seeks to do. Pointing to evidence claiming a correlation between mass shootings and magazines over ten rounds, the State argues that the banned magazines pose the sort of novel public safety issue that *Bruen* contemplates. Mot. at 14-15. But even if so, none of the purportedly analogous regulatory lineages the State marshaled before the district court bear even a *passing* resemblance to section 32310. A slightly more forgiving analogical standard is still a

high standard, not an illusory one that will accept any public safety-oriented firearm law. And the State's evidence simply does not satisfy it.

Magazines, including magazines over ten rounds, are integral to semiautomatic firearm technology. They feed the ammunition into the firearm so the firearm can shoot. A semiautomatic firearm is nearly useless without one. It stretches the meaning of "analogue" beyond recognition to argue that (1) historical laws that prohibited the setting of "trap" guns (guns that are configured to fire remotely), (2) laws that prohibited carrying unusual "blunt objects and fighting knives," and (3) laws that prohibited public concealed carrying of handguns are in any way analogous to section 32310's prohibition on magazines over ten rounds. The *how* and the *why* of these regulations are not at all on point. Nor are "gunpower storage laws dating back to the 18th and 19th centuries" or "20th-century restrictions on the use and possession of fully-automatic and semi-automatic firearms and ammunition feeding devices" analogous—or even relevant—under *Bruen*'s clear directive to look to the Founding for potential analogues. Mot. at 16. Contrary to the State's claims, "these historical predecessors are [*not at all*] relevantly similar to Section 32310 in terms of both burden and justification." Mot. at 16. The district court's rejection of these purported analogues was rooted in common sense and sound legal reasoning, not "deeply flawed analysis." Mot. at 17. It is the State's proffered notion of how the "nuanced approach to the analogical analysis" works that is deeply flawed. *Id.*

Additionally, none of the purported analogues that the State claims the district court wrongly disregarded fare any better. The district court rightly discounted "laws" from before 1791. Order at 44-45. Although pre-ratification era regulations may shed

some light on the issues, they categorically shed no light on what early Americans thought about the Second Amendment if there was no Second Amendment in existence when those regulations existed. *Bruen*, 142 S.Ct. at 2136; *Heller*, 554 U.S. at 634. But even more important, the State cited no plausible analogues from that era. The only pre-1791 laws the State presented were a handful of medieval laws from England that *Bruen* itself rejected. 142 S. Ct. at 2140. Moreover, such laws differ greatly from section 32310, both in *how* they regulate protected arms and *why* they were enacted. Order at 44. So even if the district court's dismissal of pre-1791 laws was in error, it was a harmless error that would not change the result.

Similarly, the district court's rejection of laws enacted after 1868 was also correct. Order at 44. *Bruen* itself announced its reluctance to give laws of the late 19th century much value. 142 S. Ct. at 2150-52. But even if such laws were relevant to the analysis, not one of the State's cited laws from that era is an appropriate analogue. These laws include prohibitions on the carrying of specific bladed weapons, pistol carry restrictions, restrictions on minors, taxes, and miscellaneous criminal-usage prohibitions (brandishing, dueling, shooting at vehicles), and thus plainly do not analogize to section 32310. *See* Plaintiffs' Supplemental Brief Re: Charts of Historical Laws 14-21, *Duncan v. Bonta*, No. 17-cv-1017, 2023 WL 6180472 (S.D. Cal. Sept. 22, 2023) (ECF 141).

Furthermore, disregarding purported laws that were rarely (if ever) enforced, did not ban possession, or that regulated weapons other than firearms was sound reasoning. Mot. at 18; Order at 61, 45, 48. Indeed, the *Bruen* Court rejected many purported analogues because the scope of what historical laws bear on the historical

analysis is an exacting standard that is properly focused on the dawn of the *constitutional* republic era. 142 S. Ct. at 2136 [noting that "not all history is created equal" and that regulations long predating 1791 or 1868 "may not illuminate the scope of the right if linguistic or legal conventions changed in the intervening years"]. The district court's adept filtering of the State's 316 purported analogues is precisely the kind of filtering that the exacting *Bruen* standard requires.

That filtering process was warranted not only because it is what *Bruen* demands, but for what it revealed. For example, the district court's meticulous parsing of the evidence revealed some 38 racially discriminatory regulations that prohibited only historically marginalized and oppressed peoples, including Black Americans and the Indigenous, from owning or possessing arms. Order at 45. In any other context, racially discriminatory laws would be a source of great shame. Any attempt to rely on them—especially by a government defendant—to justify a modern law would be abhorrent. But here the State exhumed them from the skeleton closet, dusted them off, and exploited them to justify encroachment into a constitutionally protected civil right.

Finally, contrary to the State's characterization, the district court's ruminations as to what a plausible historical analogue to section 32310 might look like is anything but "blinkered." Mot. at 18 (citing Order at 58). To the contrary, it shows that the district court genuinely dug into the analogical analysis and had a firm grasp on the technical issues before it. In short, the State grasped at straws and threw "Hail Marys" that did not survive the district court's *Bruen*-correct analysis.

Simply put, the district court correctly decided this case. The court's 71-page order is one of the most thorough analyses of the issue by any court since *Bruen* was decided. And not one, but two, three-judge panels of this Court have already held that Appellees—not the State—are correct on the merits here. *Duncan v. Becerra*, 742 Fed. Appx. 218 (9th Cir. 2018); *Duncan v. Becerra*, 970 F.3d 1133 (9th Cir. 2020). The only ruling here to find otherwise was vacated by the Supreme Court because it was out of step with the analytical framework that *Bruen* affirmed. *Duncan v. Bonta*, 19 F.4th 1087 (9th Cir. 2021) (en banc), *vacated and remanded* 142 S. Ct. 2895 (2022) (mem. op.).

## II. THE REMAINING EQUITABLE FACTORS DO NOT FAVOR STAYING THE DISTRICT COURT'S INJUNCTION

The equitable factors do not "overwhelmingly favor a stay." Mot. at 19. There is no risk of irreparable harm, the balance of the harm does not favor the State, and the public interest would not be served.

### A. There Is No Risk of Irreparable Harm to the State—Only to Appellants

There is simply no genuine threat of irreparable harm here, which must be shown when requesting a stay of a permanent injunction. *Leiva-Perez*, 640 F.3d at 965. The State's appeal to the purported threats that magazines over ten rounds pose to the status quo and to the State's public safety interests are entirely speculative and unsubstantiated. Mot. at 20-21. *See, e.g.*, *Pac. Merch. Shipping Ass'n v. Cackette*, No. CIV.S-06-2791WBSKJM 2007 WL 2914961 (E.D. Cal. 2007).

First, contrary to the State's assertion, "California's restrictions on large-capacity magazines have [not] been part of the status quo for decades." Mot. at 20. In 2019, when the district court first enjoined section 32310, decades of pent-up demand

unleashed and Californians bought millions of magazines over ten rounds, essentially buying the nation's entire stock of them in less than one week. Mot. at 21. The State itself acknowledges that. *Id*. So the reality is that magazines over ten rounds are very well circulated in California *right now*, notwithstanding two decades of near prohibition. And there is no evidence of any public safety consequence linked to the 2019 injunction. If there were, surely the State would have presented it. Indeed, the claim that magazines over ten rounds pose a danger to the public is dubious given that the State has shown no evidence that the millions of magazines that Californians imported to the state in April 2019 (when the district court first enjoined section 32310) caused any measurable public harm at all. This type of speculative harm is not irreparable injury. *See, e.g.*, *Pac. Merch. Shipping*, 2007 WL 2914961, at *2 (holding that defendant's claim that enjoined regulations would prevent 31 deaths and 830 asthma attacks is "nebulous at best" and insufficient to establish irreparable harm).

Second, a party "cannot suffer harm from an injunction that merely ends an unlawful practice or reads a statute as required to avoid constitutional concerns." *Rodriguez v. Robbins*, 715 F3d 1127, 1145 (9th Cir. 2013). "[I]t is clear that it would not be equitable ... to allow the state ... to violate the requirements of federal law." *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) (citations omitted). Yet the State relies on a passage from *Coalition for Economic Equity v. Wilson*, 122 F.3d 718, 719 (9th Cir. 1997), which in turn relies on a chambers order from former Justice Rehnquist, to argue that the government necessarily suffers irreparable injury anytime a court enjoins its laws. Mot. at 19 (quoting *Coal. for Econ. Equity*, 122 F.3d at 719).

But "the Supreme Court has never adopted Justice Rehnquist's opinion that this form of harm is an irreparable injury" sufficient to justify a stay. *Silvester v. Harris*, No. 11-cv-2137, 2014 WL 661592, at *3 (Nov. 20, 2014) (citing *Latta v. Otter*, 771 F.3d 496, 501 n.1 (9th Cir. 2014)). Indeed, the Ninth Circuit considered this language merely "dicta." *See Indep. Living Ctr. of S. Cal. v. Maxwell-Jolly,* 572 F.3d 644, 658 (9th Cir. 2009). Consequently, the Ninth Circuit has held that "to the extent a state suffers an abstract form of harm whenever one of its acts is enjoined, that harm is not dispositive because such a rule would eviscerate the balancing of competing claims of injury." *Id.* (discussing *Indep. Living Ctr.*, 572 F.3d 644). In short, that "abstract harm" to the State may be "outweighed by other factors." *Id.*

Because a specific showing of irreparable injury to the applicant is a threshold requirement for every stay application, the State's failure to show irreparable harm means that "a stay may not issue, regardless of the petitioner's proof regarding the other stay factors." *Leiva-Perez,* 640 F.3d at 965.

### B. The Balance of Harms Counsels Against Staying the District Court's Injunction

The State cannot establish that the balance of harms tips sharply in its favor. The State has failed to establish that it will suffer any irreparable harm absent a stay. And any abstract and speculative harms it might suffer do not outweigh the constitutional and practical harms that will befall Appellants if the Court stays enforcement of its judgment.

First, each day judgment is delayed is another day Appellants are denied the exercise of their right to choose common magazines for the fundamentally important

purpose of self-defense. Denial of a fundamental right is irreparable injury—even if for a moment. *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (holding that deprivation of constitutional rights, "for even minimal periods of time, unquestionably constitutes irreparable injury"); *see also Boland v. Bonta*, No. 22-cv-01421, 2023 WL 2588565, at *9 (Mar. 20, 2023) (holding that the injury to plaintiffs' right to acquire handguns that California's Unsafe Handgun Act inflicts is irreparable if even for a minute). This ongoing constitutional harm is no less severe simply because, as the State argues, the exercise of that right has already been prohibited for two decades. Mot. at 20. In fact, it makes the continued denial of the right *worse*.

Because the State cannot identify any concrete irreparable harm and given that a stay would allow the State to continue violating the fundamental rights of millions of Californians, the balance of equities does not tip sharply in the State's favor—in fact, it doesn't tip in its favor at all. The State's motion should be denied.

### C. A Stay Does Not Serve the Public Interest

By enjoining an unconstitutional statute, the district court's order protects the rights of some 39 million law-abiding Americans. Staying this order, and thus suspending the free exercise of constitutional rights, does not serve the public interest. *See Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013) (holding that enforcing an unconstitutional law conflicts with public interest); *see also Levine v. Fair Pol. Practices Comm'n*, 222 F. Supp. 2d 1182, 1191 (E.D. Cal. 2002). This is particularly true here, given that the State has identified only speculative harms that the district court and a three-judge panel of this Court have already considered and rejected. And given that the State has marshaled no evidence of any public safety crisis linked to the district

court's 2019 injunction and subsequent influx of magazines over ten rounds into California.

What's more, if the district court's injunction is not stayed, California would not become some outlier but would join the vast majority of states and the federal government in not restricting these magazines at all.

## CONCLUSION

For the second time now, the district court has permanently enjoined Penal Code section 32310. The district court was right to do so the first time under the now-defunct interest-balancing standard, and it was right the second time under its faithful application of the *Bruen* history-and-tradition standard. In short, Appellants, like all law-abiding Americans, have a constitutionally protected right to acquire and possess magazines over ten rounds. That right has been denied to Californians for far too long. And the State provides no good justification for continuing to deny them that right now.

This Court should deny the State's request for a stay pending appeal.

Dated: September 30, 2023

Respectfully submitted,

**MICHEL & ASSOCIATES, P.C.**

s/ *Anna M. Barvir*
Anna M. Barvir
*Attorneys for Plaintiffs-Appellees*

## CERTIFICATE OF SERVICE

I hereby certify that on September 30, 2023, an electronic Plaintiffs-Appellees' Opposition to Appellant's Emergency Motion for a Stay Pending Appeal was uploaded to the Court's CM/ECF system, which will automatically generate and send by electronic mail a Notice of Docket Activity to all registered attorneys participating in the case. Such notice constitutes service on those registered attorneys.

Dated: September 30, 2023

Respectfully submitted,

**MICHEL & ASSOCIATES, P.C.**

s/ *Anna M. Barvir*
Anna M. Barvir
*Attorneys for Plaintiffs-Appellees*