No. 23-55805

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

───────────────

VIRGINIA DUNCAN, ET AL.,
    *Plaintiffs-Appellees*,

v.

ROB BONTA, IN HIS OFFICIAL CAPACITY AS
ATTORNEY GENERAL OF THE STATE OF CALIFORNIA,
    *Defendant-Appellant.*

───────────────

**On Appeal from the United States District Court
for the Southern District of California**
No. 3:17-cv-01017-BEN-JLB
The Honorable Roger T. Benitez, Judge

───────────────

**REPLY BRIEF IN SUPPORT OF
EMERGENCY MOTION UNDER CIRCUIT RULE 27-3
FOR A STAY PENDING APPEAL AND FOR AN INTERIM
ADMINISTRATIVE STAY**

───────────────

| | |
|---|---|
| ROB BONTA | R. MATTHEW WISE |
| *Attorney General of California* | *Supervising Deputy Attorney General* |
| MICHAEL J. MONGAN | ROBERT L. MEYERHOFF |
| *Solicitor General* | KEVIN J. KELLY |
| THOMAS S. PATTERSON | JOHN D. ECHEVERRIA |
| *Senior Assistant Attorney General* | *Deputy Attorneys General* |
| HELEN H. HONG |   455 Golden Gate Avenue, Suite 11000 |
| MICA L. MOORE |   San Francisco, CA 94102-7004 |
| *Deputy Solicitors General* |   (415) 510-3479 |
| |   John.Echeverria@doj.ca.gov |
| | *Attorneys for Defendant-Appellant* |

October 3, 2023

## TABLE OF CONTENTS

**Page**

Introduction ................................................................................................1
Argument....................................................................................................3
    I.    The Attorney General Is Likely to Succeed on the Merits........3
    II.   The Equitable Factors Weigh Strongly in Favor of a Stay........8
Conclusion................................................................................................11
Certificate of Compliance ........................................................................12

# TABLE OF AUTHORITIES

Page

**CASES**

*All. for the Wild Rockies v. Cottrell*
   632 F.3d 1127 (9th Cir. 2011) ................................................................2

*Antonyuk v. Hochul*
   No. 22-2908, Dkt. 75 (2d Cir. Dec. 7, 2022) ..........................................1

*Barnett v. Raoul*
   No. 23-1825, Dkt. 30 (7th Cir. May 12, 2023) .......................................1

*Bevis v. City of Naperville*
   2023 WL 2077392 (N.D. Ill. Feb. 17, 2023) ......................................3, 7

*Boland v. Bonta*
   No. 23-55276, Dkt. 7 (9th Cir. Mar. 31, 2023) .......................................1

*Brumback v. Ferguson*
   2023 WL 6221425 (E.D. Wash. Sept. 25, 2023) ....................................3

*Coal. for Econ. Equity v. Wilson*
   122 F.3d 718 (9th Cir. 1997) ..................................................................8

*Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.*
   2023 WL 2655150 (D. Del. Mar. 27, 2023) ...................................3, 6, 7

*Dist. of Columbia v. Heller*
   554 U.S. 570 (2008) ................................................................................7

*FTC v. Qualcomm Inc.*
   935 F.3d 752 (9th Cir. 2019) ..................................................................1

*Golden Gate Rest. Ass'n v. City & Cnty. of San Francisco*
   512 F.3d 1112 (9th Cir. 2008) ................................................................8

*Hanson v. District of Columbia*
   2023 WL 3019777 (D.D.C. Apr. 20, 2023) ............................................3

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Herrera v. Raoul*
  2023 WL 3074799 (N.D. Ill. Apr. 25, 2023) ....................................................... 3

*Indep. Living Ctr. of S. Cal., Inc. v. Maxwell-Jolly*
  572 F.3d 644 (9th Cir. 2009) ........................................................................... 8

*Koons v. Platkin*
  No. 23-1900, Dkt. 29 (3d Cir. June 20, 2023) ..................................................... 1

*Leiva-Perez v. Holder*
  640 F.3d 962 (9th Cir. 2011) ..................................................................... 2, 3

*Maryland v. King*
  567 U.S. 1301 (2012) ........................................................................................ 8

*Miller v. Bonta*
  No. 21-55608, Dkt. 13 (9th Cir. June 21, 2021) ................................................. 1

*Nat'l Ass'n of Gun Rights v. Lamont*
  2023 WL 4975979 (D. Conn. Aug. 3, 2023) ............................................. 3, 5, 6

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*
  142 S. Ct. 2111 (2022) ........................................................................... 4, 6, 7

*Nken v. Holder*
  556 U.S. 418 (2009) ........................................................................................ 1

*Ocean State Tactical LLC v. Rhode Island*
  2022 WL 17721175 (D.R.I. Dec. 14, 2022) ....................................................... 3

*Or. Firearms Fed'n, Inc. v. Brown*
  2022 WL 17454829 (D. Or. Dec. 6, 2022) ....................................................... 4

*Or. Firearms Fed'n v. Kotek*
  2023 WL 4541027 (D. Or. July 14, 2023) ........................................... 3, 5, 6, 7

*Rhode v. Becerra*
  No. 20-55437, Dkt. 13-1 (9th Cir. May 14, 2020) ............................................. 1

## TABLE OF AUTHORITIES
## (continued)

**Page**

*United States v. Idaho*
No. 23-35440, Dkt. 49 (9th Cir. Sept. 28, 2023) .................................................9

**STATUTES**

California Penal Code
§ 32310 ............................................................................................................11

**CONSTITUTIONAL PROVISIONS**

United States Constitution
Second Amendment ................................................................................*passim*

## INTRODUCTION

A stay pending appeal "simply suspend[s] judicial alteration of the status quo." *FTC v. Qualcomm Inc.*, 935 F.3d 752, 757 (9th Cir. 2019) (quoting *Nken v. Holder*, 556 U.S. 418, 429 (2009)); *see* Mot. 1-2. While a stay is not awarded as "of right," *Nken*, 556 U.S. at 427 (citation omitted), it is surely appropriate where—as here—a district court invalidates a duly enacted statute, the case involves at least serious questions going to the merits, and the equitable factors support a stay. Applying that standard, this Court has issued stays pending appeal in several recent Second Amendment cases presenting serious and substantial merits questions. *See, e.g.*, *Boland v. Bonta*, No. 23-55276, Dkt. 7 (9th Cir. Mar. 31, 2023); *Miller v. Bonta*, No. 21-55608, Dkt. 13 (9th Cir. June 21, 2021); *Rhode v. Becerra*, No. 20-55437, Dkt. 13-1 (9th Cir. May 14, 2020). Other circuits have also issued stays, including in a recent case raising the same issue presented here.[1]

Plaintiffs do not seriously engage with the standard governing stays pending appeal. They assert that the "Second Amendment question at issue here is not a close call." Opp. 1. But they fail to respond to any of the nine federal district

---

[1] *See, e.g.*, *Barnett v. Raoul*, No. 23-1825, Dkt. 30 (7th Cir. May 12, 2023) (staying preliminary injunction of Illinois's large-capacity magazine law); *Antonyuk v. Hochul*, No. 22-2908, Dkt. 75 (2d Cir. Dec. 7, 2022) (staying injunction of certain aspects of New York's Concealed Carry Improvement Act); *Koons v. Platkin*, No. 23-1900, Dkt. 29 (3d Cir. June 20, 2023) (partially staying preliminary injunction of New Jersey's sensitive-place and private-property carriage restrictions).

court orders ruling *against* them on that same question (other than to dismiss them as "absurd" or lacking in "common sense," *id.* at 4). Plaintiffs instead rely on their own confident pronouncements about the "obvious" meaning of the Second Amendment. *E.g.*, *id.* The State disagrees with those arguments, and this Court will consider that dispute in due time, when it resolves the ultimate merits of this appeal. For now, the operative question is whether the State's arguments establish at least "serious questions going to the merits." *See, e.g.*, *Leiva-Perez v. Holder*, 640 F.3d 962, 966-967 (9th Cir. 2011) (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)). As indicated by the great weight of authority rejecting Second Amendment challenges to restrictions on large-capacity magazines, they plainly do.

The equitable factors also weigh heavily in favor of a stay. A State suffers irreparable injury whenever it is enjoined from enforcing a duly enacted statute, and here the threatened injury is especially grave because of the dangers that large-capacity magazines pose to public and officer safety. Plaintiffs acknowledge that the denial of this motion would prompt a sudden and immense flood of these magazines into California. A stay pending appeal would avoid that abrupt change in the status quo while this Court resolves the merits of this appeal. Meanwhile, law-abiding gun owners will remain able to purchase and possess a wide range of

firearms, as much ammunition as they want, and an unlimited number of magazines containing 10 rounds or fewer.

## ARGUMENT

### I. THE ATTORNEY GENERAL IS LIKELY TO SUCCEED ON THE MERITS

1. As the Attorney General has explained, the State is likely to succeed on the merits. *See* Mot. 10-19. At an absolute minimum, this case raises "substantial" and "serious legal questions"—which plaintiffs begrudgingly acknowledge is the standard that governs this motion. Opp. 3 (quoting *Leiva-Perez*, 640 F.3d at 966-967). That much is established by the fact that nine other federal district court decisions have confronted Second Amendment challenges to restrictions on large-capacity magazines and have either upheld the challenged restriction or concluded that it is likely constitutional.[2]

---

[2] *See Or. Firearms Fed'n v. Kotek*, 2023 WL 4541027 (D. Or. July 14, 2023) (final judgment), *appeal docketed*, Nos. 23-35478 (9th Cir. July 17, 2023), 23-35479 (9th Cir. July 17, 2023), 23-35539 (9th Cir. Aug. 15, 2023), 23-35540 (9th Cir. Aug. 15, 2023); *Brumback v. Ferguson*, 2023 WL 6221425 (E.D. Wash. Sept. 25, 2023) (denying preliminary injunction); *Nat'l Ass'n of Gun Rights v. Lamont*, 2023 WL 4975979 (D. Conn. Aug. 3, 2023) (same), *appeal filed*, No. 22-cv-01118, Dkt. 86 (D. Conn. Aug. 16, 2023); *Herrera v. Raoul*, 2023 WL 3074799 (N.D. Ill. Apr. 25, 2023) (same), *appeal docketed*, No. 23-1793 (7th Cir. Apr. 26, 2023); *Hanson v. District of Columbia*, 2023 WL 3019777 (D.D.C. Apr. 20, 2023) (same), *appeal docketed*, No. 23-7061 (D.C. Cir. May 17, 2023); *Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.*, 2023 WL 2655150 (D. Del. Mar. 27, 2023) (same), *appeal docketed*, No. 23-1634 (3d Cir. Apr. 7, 2023); *Bevis v. City of Naperville*, 2023 WL 2077392 (N.D. Ill. Feb. 17, 2023) (same), *appeal docketed*, No. 23-1353 (7th Cir. Feb. 23, 2023); *Ocean State Tactical LLC v.*

3

Instead of engaging with the reasoning of those decisions, plaintiffs dismiss them out of hand—asserting that they were not only "incorrect" but were not "honest," were not "faithful[]" to the district courts' "duty," and were motivated by a desire to "misinterpret[]" Supreme Court precedent "into nullification." Opp. 6. That derisive language is as unsupported as it is unfair. District courts across the country have faithfully applied *Bruen* to a bevy of Second Amendment challenges to large-capacity magazine restrictions. Plaintiffs are entitled to disagree with the conclusions reached by those courts, and to press their own contrary merits arguments in this appeal. But the substantial body of decisions going against plaintiffs' position at the very least establishes a "serious legal question" on the merits of the appeal. *Id.* at 3.

2. While this is not the place for an exhaustive discussion of those merits issues, plaintiffs' merits arguments are not persuasive. Whether examined under the first or second part of the *Bruen* framework, California's restrictions on large-capacity magazine restrictions do not violate the Second Amendment: plaintiffs' desired course of conduct is not protected by the Second Amendment; and, in any

---

*Rhode Island*, 2022 WL 17721175 (D.R.I. Dec. 14, 2022) (same), *appeal docketed*, No. 23-1072 (1st Cir. Jan. 18, 2023); *Or. Firearms Fed'n, Inc. v. Brown*, 2022 WL 17454829 (D. Or. Dec. 6, 2022) (same), *appeal dismissed*, No. 22-36011, Dkt. 4 (9th Cir. Dec. 12, 2022).

4

event, restrictions on large-capacity magazines are consistent with the Nation's historical tradition of regulation. *See* Mot. 13-17.

Plaintiffs assert that large-capacity magazines are "clearly" protected arms. Opp. 4 & n.1. But they acknowledge that large-capacity magazines are a "type of arms accessory" and are not themselves "bearable arms." *Id.* at 5, 6. And while plaintiffs suggest that "[m]agazines" are "integral to semiautomatic firearm technology," *id.* at 7, they cite nothing to show that large-capacity magazines in particular are necessary for the operation of any semiautomatic firearm. Nor could they. *See* Echeverria Decl., Ex. 7 (Busse Decl.) ¶ 7 ("[A]ll firearms that can accept a large-capacity magazine can also accept a magazine that holds 10 or fewer rounds and function precisely as intended."). Plaintiffs also argue that "*actual usage of a type of arm in self-defense*" is "plainly irrelevant" to *Bruen*'s inquiry into whether the arm is in common use for self-defense, because "[a]ctual *ownership* is the standard." Opp. 5. But "the popularity of a firearm or firearm accessory" cannot be "dispositive" of the common use analysis, *Kotek*, 2023 WL 4541027, at *29; *see also Lamont*, 2023 WL 4975979, at *13-15, just as the subjective intent of people who own large-capacity magazines cannot control the constitutional status of those devices. *See Kotek*, 2023 WL 4541027, at *30-32; *Lamont*, 2023 WL 4974979, at *14 (concluding that "the Supreme Court d[id] not

5

indicate in the slightest that it intended" the common use inquiry "to be driven by nebulous subjective intentions"). *But see* Order 25.

As to *Bruen*'s historical analysis, plaintiffs seem to acknowledge (Opp. 6) the Supreme Court's observation that "cases implicating unprecedented societal concerns or dramatic technological changes may require a more nuanced approach." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2132 (2022). But they assert that "[t]his case does not involve any" such concerns or technical changes. Opp. 6. That is remarkable. Even the district court below agreed that "[d]etachable magazines were invented in the late 19th Century," Order 37; that they "solved a problem with historic firearms: running out of ammunition and having to slowly reload a gun," *id.* at 3; and that "it can be argued that removable magazines represent a dramatic change in technology and the State is attempting to address a modern societal concern," *id.* at 58; *see, e.g.*, *Kotek*, 2023 WL 4541027, at *13-14, *35-39; *Lamont*, 2023 WL 4975979, at *32; *Del. State Sportsmen's Ass'n, Inc.*, 2023 WL 2655150, at *10-11; Mot. 15-16 (discussing unprecedented societal concerns arising from use of large-capacity magazines in mass shootings).

Plaintiffs also contend that the district court's selective analysis of the historical evidence is "precisely the kind of filtering that the exacting *Bruen* standard requires." Opp. 9. They argue that pre-1791 laws "categorically shed *no*

6

light on what early Americans thought about the Second Amendment if there was no Second Amendment in existence when those regulations existed." *Id.* at 7-8 (emphasis added). But *Heller* held that the Second Amendment "codified a *pre-existing* right." 554 U.S. at 570, 592 (2008) (emphasis in original). So laws that existed immediately before the ratification of the Second Amendment undoubtedly inform the contours of that right. *See, e.g.*, *Bruen*, 142 S. Ct. at 2136 (courts may "reac[h] back" for evidence of "English practices that prevailed up to the period immediately before and after the framing of the Constitution" (internal quotation marks omitted)). Similarly, Plaintiffs assert that *Bruen* declined to give laws enacted after 1868 "much value." Opp. 8. But nothing in that decision endorses taking all post-1868 laws off the table, as the district court did—or any of the other unprecedented restrictions that the district court imposed on the historical inquiry. *See* Mot. 18; *see also Heller*, 554 U.S. at 605.

As other district courts have already held, *see, e.g.*, *Kotek*, 2023 WL 4541027, at *46; *Bevis*, 2023 WL 2077392, at *14; *Del. State Sportsmen's Ass'n, Inc.*, 2023 WL 2655150, at *13, the historical analogues identified by the State establish that large-capacity magazine restrictions are consistent with historical tradition. Historical regulations barring the use of "trap guns," the possession and carrying of certain weapons, and the concealed carry of pistols and revolvers, among others, are "relevantly similar" to modern restrictions on large-capacity magazines. *See*

7

Echeverria Decl., Ex. 16 (D. Ct. Dkt. 139). Plaintiffs will have the opportunity to present their critiques of those analogies in this appeal. For purposes of the stay inquiry, however, it is not plausible for plaintiffs to assert (Opp. 9) that the district court's blinkered historical inquiry leaves no "serious legal questions" to be debated between the parties.

## II. THE EQUITABLE FACTORS WEIGH STRONGLY IN FAVOR OF A STAY

Unless a statute is "obvious[ly] . . . unconstitutional," there is a strong "public interest" in its continued enforcement and application during the pendency of a challenge to the statute's validity. *Golden Gate Rest. Ass'n v. City & Cnty. of San Francisco*, 512 F.3d 1112, 1127 (9th Cir. 2008). And "[a]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers). Plaintiffs characterize that venerable principle as "dicta." Opp. 12.[3] But they ignore longstanding Ninth Circuit precedent applying the principle. *See* Mot. 20 (citing *Coal. for Econ. Equity v. Wilson*, 122 F.3d 718, 719 (9th Cir. 1997)). Indeed, just last week, a motions panel of this Court confirmed that a State "easily" establishes irreparable harm whenever

---

[3] As support for that characterization, plaintiffs cite a decision that was later vacated by the Supreme Court. *See* Opp. 12 (citing *Indep. Living Ctr. of S. Cal., Inc. v. Maxwell-Jolly*, 572 F.3d 644, 658 (9th Cir. 2009), *vacated and remanded sub. nom. Douglas v. Indep. Living Ctr. of S. Cal., Inc.*, 132 S. Ct. 1204 (2012)).

8

it has been "enjoined by a court from effectuating statutes enacted by representatives of its people." *United States v. Idaho*, No. 23-35440, Dkt. 49 at 14 (9th Cir. Sept. 28, 2023) (VanDyke, J.).

While Plaintiffs characterize the State's harms as "abstract" (Opp. 12), they do not dispute that denying a stay pending appeal would have dramatic practical effects: If the district court's permanent injunction takes effect, it will result in a sudden and massive influx of large-capacity magazines into California—just as in 2019, when the district court delayed for six days in entering a stay of its prior permanent injunction. *See id.* at 10-11. As plaintiffs acknowledge, "in less than one week," the firearms industry shipped "essentially . . . the nation's entire stock" of large-capacity magazines to California, with "millions of [such] magazines" flowing into the State. *Id.* at 11. Plaintiffs do not resist the idea that the same result would happen if the State's motion were denied. *See id.*; *see also* Echeverria Decl. ¶ 43; *id.*, Ex. 21. Indeed, they seem to embrace it. Opp. 11-13.

Plaintiffs posit that a flood of new large-capacity magazines would not cause any "measurable public harm" because the State has not linked the influx of magazines in 2019 to "any public safety consequence." Opp. 11. But plaintiffs do not dispute that, since 2020, every single mass shooting in which six or more persons were killed has involved the use of a large-capacity magazine—including in California. Mot. 15-16. Nor do they dispute the State's evidence that large-

9

capacity magazines pose significant threats to public and officer safety. *See id.*; Echeverria Decl., Ex. 3 (Koper Rpt.) at 4-11; *id.*, Ex. 5 (Suppl. Allen Decl.) at 18-23; *id.*, Ex. 10 (Suppl. Klarevas Decl.), Ex. D at 28-29. At the same time, even with a stay, plaintiffs and other law-abiding Californians will remain able to purchase and possess a wide range of firearms, as much ammunition as they want, and an unlimited number of magazines containing 10 rounds or fewer, for self-defense and other lawful purposes. The equitable considerations thus overwhelmingly support a stay pending appeal.

//

//

//

//

//

//

## CONCLUSION

The Court should stay the district court's order and permanent injunction pending appeal, except to the extent that Section 32310 prohibits possession of large-capacity magazines that were lawfully acquired and possessed prior to the district court's decision.

Dated:  October 3, 2023

Respectfully submitted,

ROB BONTA
*Attorney General of California*
MICHAEL J. MONGAN
*Solicitor General*
THOMAS S. PATTERSON
*Senior Assistant Attorney General*
HELEN H. HONG
MICA L. MOORE
*Deputy Solicitors General*
R. MATTHEW WISE
*Supervising Deputy Attorney General*
ROBERT L. MEYERHOFF
KEVIN J. KELLY
*Deputy Attorneys General*

s/ John D. Echeverria

JOHN D. ECHEVERRIA
*Deputy Attorney General*
*Attorneys for Defendant-Appellant*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing reply brief complies with the type-volume limitation of Ninth Circuit Rules 27-1 and 32-3(2) because it consists of 2,418 words, excluding the documents listed at Federal Rules of Appellate Procedure 27(a)(2)(B) and 32(f). This reply brief complies with the typeface and the type style requirements of Federal Rule of Appellate Procedure 27 because it has been prepared in a proportionally spaced typeface using 14-point font.

Dated: October 3, 2023                                                             s/ John D. Echeverria