No. 23-55805

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

———————————

VIRGINIA DUNCAN, ET AL.,

*Plaintiffs and Appellees*,

V.

ROB BONTA, IN HIS OFFICIAL CAPACITY AS
ATTORNEY GENERAL OF THE STATE OF CALIFORNIA,

*Defendant and Appellant*.

———————————

**On Appeal from the United States District Court
for the Southern District of California**
No. 3:17-cv-01017-BEN-JLB
The Honorable Roger T. Benitez, Judge

———————————

**APPELLANT'S EXCERPTS OF RECORD
VOLUME 3 of 17**

———————————

ROB BONTA
*Attorney General of California*
MICHAEL J. MONGAN
*Solicitor General*
HELEN H. HONG
*Principal Deputy Solicitor General*
THOMAS S. PATTERSON
*Senior Assistant Attorney General*

MICA L. MOORE
*Deputy Solicitor General*
R. MATTHEW WISE
*Supervising Deputy Attorney General*
ROBERT L. MEYERHOFF
KEVIN J. KELLY
JOHN D. ECHEVERRIA
*Deputy Attorneys General*

CALIFORNIA DEPARTMENT OF JUSTICE
300 South Spring Street, Suite 1702
Los Angeles, CA 90013
(213) 269-6138
Mica.Moore@doj.ca.gov
*Attorneys for Defendant and Appellant*

November 21, 2023

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Plaintiffs' Disagreements re Defendant's Survey of Relevant Statutes (Pre-Founding – 1930s)[1, 2]**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| **Defendant's Survey of Statutes (Pre-Founding – 1889)** | | | | | |
| 1 | 1383 | England | 7 Rich. 2, ch. 13 (1383) | Prohibited possession of launcegays. Punished by forfeiture of the weapon. | Objection to inclusion. "Historical evidence that long predates [the founding] may not illuminate the scope of the right if linguistic or legal conventions changed in the intervening years." *Bruen*, 142 S.Ct. at 2136. And English history is ambiguous at best, and the Court saw "little reason to think that the Framers would have thought it applicable in the New World." *Id.* at 2139. As this chart shows, bans on simply possessing weapons did not continue into the 18th and 19th centuries. Finally, the State has not provided the current status of this law indicating whether the law was ever repealed or reviewed by a court.[3] |

[1] In compliance with the Court's Order dated December 15, 2022 (Dkt. 134), Defendant created this survey of statutes, laws, and regulations that Defendant has determined are relevant to this action. Plaintiffs disagree that nearly all of those statutes, laws, and regulations are relevant to the historical analysis required in this case, and in compliance with the Court's December 15 Order, the chart reflects Plaintiffs' position regarding the relevance of each law.

[2] The surveys have been filed in compliance with the Court's Order directing the parties to identify all relevant laws, statutes, and regulations from the time of the Second Amendment to twenty years after adoption of the Fourteenth Amendment. In compliance with that Order and in recognition of the historical inquiry mandated by *Bruen*, the spreadsheets identify hundreds of relevant firearms laws, some of which were drafted well before the Thirteenth Amendment's abolition of slavery and the Fourteenth Amendment's Equal Protection Clause. While our subsequent briefing, as ordered by the Court, will explain in more detail the historical context and relevance of such laws, the Attorney General emphasizes his strong disagreement with racial and other improper discrimination that existed in some such laws, and which stand in stark contrast to California's commonsense firearm laws, which are designed to justly and equitably protect all Californians. The listing of such racist and discriminatory statutes should in no way be construed as an endorsement of such laws by the Attorney General or his counsel in this matter.

[3] Plaintiffs will not repeat this for each entry in the chart in which the State did not provide the current status of the law, because it applies to the vast majority of the entries in this survey. It is likely that many of the laws the State cites here have been repealed or replaced or are otherwise no longer enforced.

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|-------------------|--------------|----------|--------------------------|----------------------|
| 2 | 1396 | England | 20 Rich. 2, ch. 1 (1396) | Prohibited possession of launcegays. Punished by forfeiture of the weapon. | <u>Objection to inclusion.</u><br><br>"Historical evidence that long predates [the founding] may not illuminate the scope of the right if linguistic or legal conventions changed in the intervening years." *Bruen*, 142 S.Ct. at 2136.<br><br>And English history is ambiguous at best, and the Court saw "little reason to think that the Framers would have thought it applicable in the New World." *Id*. at 2139.<br><br>As this chart shows, bans on simply possessing weapons did not continue into the 18th and 19th centuries. |
| 3 | 1541 | England | 33 Hen. 8, ch. 6 §§ 1, 18 (1541) | Prohibited possession of any crossbow, handgun, hagbutt, or demy hake. Exempted subjects living within 12 miles of the Scottish border. Punishable by forfeiture or payment of 10 pounds. | <u>Objection to inclusion.</u><br><br>"Historical evidence that long predates [the founding] may not illuminate the scope of the right if linguistic or legal conventions changed in the intervening years." *Bruen*, 142 S.Ct. at 2136.<br><br>And English history is ambiguous at best, and the Court saw "little reason to think that the Framers would have thought it applicable in the New World." *Id*. at 2139.<br><br>As this chart shows, bans on simply possessing weapons did not continue into the 18th and 19th centuries. |
| 4 | 1606 | England | 4 Jac. I, ch. 1 (1606) | Repealed exemption for subjects living with 12 miles of the Scottish border for the keeping of crossbows, handguns, and demy hakes. | <u>Objection to inclusion.</u><br><br>"Historical evidence that long predates [the founding] may not illuminate the scope of the right if linguistic or legal conventions changed in the intervening years." *Bruen*, |

2

**ER_442**

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | | | 142 S.Ct. at 2136. |
| | | | | | And English history is ambiguous at best, and the Court saw "little reason to think that the Framers would have thought it applicable in the New World." *Id*. at 2139. |
| | | | | | As this chart shows, bans on simply possessing weapons did not continue into the 18th and 19th centuries in America. |
| 5 | 1664 | New York | The Colonial Laws of New York from the Year 1664 to the Revolution . . ., at 687 (1894) | Prohibited a slave from possessing or using a gun, pistol, sword, club, or other kind of weapon unless in the presence and at the direction of their Master or Mistress. | Objection to inclusion. The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen does not even consider* the many explicitly racist laws of the 18th and 19th centuries. The law predates the Founding by far too long to be afforded much weight. *Bruen*, 142 S.Ct. at 2136 (citing *Heller*, 554 U.S. at 634). The law is not "relevantly similar" to CA's magazine ban because it restricted *who* may use and possess arms, not *what* arms they may possess. *Id*. at 2133. Further, if a restriction that applied only to disfavored groups was a sufficient historical tradition, then neither *Heller* nor *Bruen* would have ruled in favor of the individual right to keep and bear arms. |
| 6 | 1686 | New Jersey | The Grants, Concessions, and Original Constitutions of The Province of New Jersey 289-90 (1881) (1686) | Prohibited the carrying "privately" of any pocket pistol, skeines, stilettos, daggers or dirks, or other unusual or unlawful weapons.  Punishable | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms and, |

3

**ER_443**

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|-------------------|--------------|----------|---------------------------|----------------------|
| | | | | by fine of 5 pounds for first conviction, and punishable by imprisonment for 6 months and a fine of 10 pounds. | even then, it only regulates *how* they are carried. *Bruen*, 142 S.Ct. at 2133.<br><br>Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 7 | 1689 | England | English Bill of Rights of 1689, 1 Wm. & Mary ch. 2, § 7 | Provided a right for Protestants to have "Arms for their Defense . . . as allowed by law." | <u>No objection to inclusion.</u><br><br>Though it is an English law that predates the founding by nearly 100 years, it evidences a general right to arms for self-defense that carried into the New World. *See Bruen*, 142 S.Ct. at 2136.<br><br>To the extent, however, the law limited its scope to "Protestant" subjects, it includes a restriction on the rights of disfavored populations (e.g., Catholics) that would not survive in America past the ratification of the 14th Amendment.<br><br>Further, such a restriction is not "relevantly similar" to CA's magazine ban because it restricts *who* (i.e., only disfavored groups) may use and possess arms, not *what* arms anyone may possess. *Id.* at 2133.<br><br>Further, if a restriction that applied only to disfavored groups was a sufficient historical tradition, then neither *Heller* nor *Bruen* would have ruled in favor of the individual right to keep and bear arms. |

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|-------------------|--------------|----------|---------------------------|----------------------|
| 8 | 1750 | Massachusetts | 1750 Mass. Acts 544, An Act for Preventing and Suppressing of Riots, Routs and Unlawful Assemblies, ch. 17, § 1 | Prohibited the carrying of a club or other weapon while unlawfully, riotously, or tumultuously assembling. Punishable by seizing the weapon and a hearing before the court. | Objection to inclusion. <br><br> This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms, and even then, only applies when one is engaged in unlawful, riotous, or tumultuous assembly. *Bruen*, 142 S.Ct. at 2133. |
| 9 | 1769 | England | 1 Blackstone ch. 1 (1769) | Recognized the "fifth and last auxiliary right," which provided that Protestant subjects had the right to "arms for their defence" "such as are allowed by law." | No objection to inclusion. <br><br> Though it is an English law that predates the founding by nearly 100 years, it evidences a general right to arms for self-defense that carried into the New World. *See Bruen*, 142 S.Ct. at 2136. <br><br> To the extent, however, the law limited its scope to "Protestant" subjects, it includes a restriction on the rights of disfavored populations (e.g., Catholics) that would not survive in America past the ratification of the 14th Amendment. <br><br> Further, such a restriction is not "relevantly similar" to CA's magazine ban because it restricts *who* (i.e., only disfavored groups) may use and possess arms, not *what* arms anyone may possess. *Id.* at 2133. <br><br> Further, if a restriction that applied only to disfavored groups was a sufficient historical tradition, then neither *Heller* nor *Bruen* would have ruled in favor of the individual right to keep and bear arms. |
| 10 | 1771 | New Jersey | 1763-1775 N.J. Laws 346, An Act for the | Prohibited the setting of any trap gun intended to discharge by any | Objection to inclusion. |

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | Preservation of Deer and Other Game, and to Prevent Trespassing with Guns, ch. 539, § 10 | string, rope, or other contrivance. Punishable by forfeiture of the firearm and fine of 6 pounds. | The law is not "relevantly similar" to CA's magazine ban. It does not regulate the possession of any arm. It regulates only how arms are used (i.e., the setting of "trap guns"). And it regulates for completely different reasons than CA's magazine ban (i.e., to prevent unintended discharges). *Bruen*, 142 S.Ct. at 2133. |
| 11 | 1783 | Massachusetts – City of Boston | 1783 Mass. Acts 37, § 2 | Prohibited the possession of any "fire arms," and among other devices, loaded with any gun powder. Punishable by forfeiture and sale at public auction. | Objection to inclusion.<br><br>This law is not "relevantly similar" to CA's magazine ban. It regulates possession entirely differently (by applying only to loaded firearms, not mere possession of common arms), and it does so for completely different reasons (i.e., prevention of fires and explosions) than CA's magazine ban. *Bruen*, 142 S.Ct. at 2133.<br><br>Further, this was not a state law, but a local law. *Bruen* rejected the notion that ordinances from a few cities are persuasive. *Id.* at 2156.<br><br>Finally, even if it were relevant, this law is an outlier insufficient to establish an American tradition of such regulation. *Id.* |
| 12 | 1784 | New York – City of New York City | 1784 Laws of N.Y. 627, ch. 28 | Prohibited any person to keep any quantity of gun powder exceeding 28 pounds and required storage in separate containers. Punishable by forfeiture and fine. | Objection to inclusion.<br><br>This law is not "relevantly similar" to CA's magazine ban. It regulates possession entirely differently (by only applying only to very large quantities of gunpowder, not to mere possession of common arms), and it does so for completely different reasons (i.e., prevention of fires and explosions) than |

6

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | | | CA's magazine ban. *Bruen*, 142 S.Ct. at 2133. |
| 13 | 1786 | Massachusetts | An Act to Prevent Routs, Riots, and Tumultuous assemblies, and the Evil Consequences Thereof, reprinted in Cumberland Gazette (Portland, MA), Nov. 17, 1786, at 1 | Prohibited being armed with a club or other weapon while rioting. | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms and, even then, only while participating in illegal activity (i.e., rioting). *Bruen*, 142 S.Ct. at 2133. |
| 14 | 1788 | Ohio [Territory] | 1788-1801 Ohio Laws 20, A Law Respecting Crimes and Punishments . . ., ch. 6 | Prohibited the carrying of any "dangerous weapon" that indicates a violent intention while committing a burglary. Punishable by imprisonment for up to 40 years. | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms and, even then, only while participating in or intending to engage in illegal activity (i.e., burglary w/ intent to commit violence). *Bruen*, 142 S.Ct. at 2133. |
| 15 | 1792 | Virginia | Collection of All Such Acts of the General Assembly of Virginia, of a Public and Permanent Nature, as Are Now in Force . . . ., at 187 (1803), §§ 8-9 | Prohibited any "negro or mulatto" from possessing or carrying a gun, powder, shot, club, or other weapon. | Objection to inclusion. The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen does not even consider* the many explicitly racist laws of the 18th and 19th centuries. The law is not "relevantly similar" to CA's magazine ban because it restricted *who* (i.e., only disfavored groups) may use and possess arms, not *what* arms anyone may possess. *Id.* at 2133. |

**Duncan v. Bonta**, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|-------------------|--------------|----------|--------------------------|----------------------|
| | | | | | Further, if a restriction that applied only to disfavored groups was a sufficient historical tradition, then neither *Heller* nor *Bruen* would have ruled in favor of the individual right to keep and bear arms. |
| 16 | 1797 | Delaware | Del. Laws 104, An Act for the Trial of Negroes, ch. 43, § 6 | Prohibited "any Negro or Mulatto slave" from carrying guns, swords, pistols, fowling pieces, clubs, or other arms and weapons without the master's special license. | Objection to inclusion.<br><br>The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen does not even consider* the many explicitly racist laws of the 18th and 19th centuries.<br><br>The law is not "relevantly similar" to CA's magazine ban because it restricted *who* (i.e., only disfavored groups) may use and possess arms, not *what* arms anyone may possess. *Id.* at 2133.<br><br>Further, if a restriction that applied only to disfavored groups was a sufficient historical tradition, then neither *Heller* nor *Bruen* would have ruled in favor of the individual right to keep and bear arms. |
| 17 | 1798 | Kentucky | 1798 Ky. Acts 106 | Prohibited "negro, mulatto, or Indian" from possessing or carrying a gun, powder, shot, club, or other weapon or ammunition. | Objection to inclusion.<br><br>The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen does not even consider* the many explicitly racist laws of the 18th and 19th centuries.<br><br>The law is not "relevantly similar" to CA's magazine ban because it restricted *who* may use and possess arms, not *what* arms they may possess. *Id.* at 2133. |

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | | | Further, if a restriction that applied only to disfavored groups was a sufficient historical tradition, then neither *Heller* nor *Bruen* would have ruled in favor of the individual right to keep and bear arms. |
| 18 | 1799 | Mississippi [Territory] | 1799 Miss. Laws 113, A Law for The Regulation of Slaves | Prohibited any "Negro or mulatto" from carrying gun, powder, shot, club, or other weapon. Also prohibits a "negro or mulatto" from possessing a gun, weapon, or ammunition. | Objection to inclusion. The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen does not even consider* the many explicitly racist laws of the 18th and 19th centuries. The law is not "relevantly similar" to CA's magazine ban because it restricted *who* (i.e., only disfavored groups) may use and possess arms, not *what* arms anyone may possess. *Id.* at 2133. Further, if a restriction that applied only to disfavored groups was a sufficient historical tradition, then neither *Heller* nor *Bruen* would have ruled in favor of the individual right to keep and bear arms. |
| 19 | 1799 | New Jersey | Charles Nettleton, Laws of the State of New-Jersey, at 474 (1821), [An Act to Describe, Apprehend and Punish Disorderly Persons (1799)], § 2 | Prohibited the carrying of any pistol, hanger, cutlass, bludgeon, or other offensive weapon, with intent to assault any person." | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms and, even then, only while participating in or intending to engage in illegal activity (i.e., assault). *Bruen*, 142 S.Ct. at 2133. |
| 20 | 1801 | Tennessee | 1801 Tenn. Act 260-61 | Prohibited the private carrying of "any dirk, large knife, pistol, or any other dangerous weapon, to | Objection to inclusion. |

**ER_449**

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|-------------------|--------------|----------|---------------------------|----------------------|
| | | | | the fear or terror of any person," unless a surety is posted. Punishable as for "breach of the peace, or riot at common law." | This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only the manner of carrying certain arms and, even then, only while participating in a riot or breaching the peace. *Bruen*, 142 S.Ct. at 2133. |
| 21 | 1804 | Indiana [Territory] | 1804 Ind. Acts 108, A Law Entitled a Law Respecting Slaves, § 4 | Prohibited a "slave or mulatto" from carrying or possessing a gun, powder, shot, club or other weapon and ammunition. | Objection to inclusion.<br><br>The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen does not even consider* the many explicitly racist laws of the 18th and 19th centuries.<br><br>The law is not "relevantly similar" to CA's magazine ban because it restricted *who* (i.e., only disfavored groups) may use and possess arms, not *what* arms anyone may possess. *Id.* at 2133.<br><br>Further, if a restriction that applied only to disfavored groups was a sufficient historical tradition, then neither *Heller* nor *Bruen* would have ruled in favor of the individual right to keep and bear arms. |
| 22 | 1804 | Mississippi [Territory] | 1804 Miss. Laws 90, An Act Respecting Slaves, § 4 | Prohibited a "Slave" from keeping or carrying a gun, powder, shot, club, or other weapon. | Objection to inclusion.<br><br>The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen does not even consider* the many explicitly racist laws of the 18th and 19th centuries.<br><br>The law is not "relevantly similar" to CA's magazine ban because it restricted *who* may use and possess arms, not *what* arms they |

10

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | | | may possess. *Bruen*, 142 S.Ct. at 2133. |
| | | | | | Further, if a restriction that applied only to disfavored groups was a sufficient historical tradition, then neither *Heller* nor *Bruen* would have ruled in favor of the individual right to keep and bear arms. |
| | | | | | Finally, the 19th-century laws of the Western Territories are not "instructive" because they are "most unlikely to reflect 'the origins of and continuing significance of the Second Amendment.'" *Id.* at 2154. |
| 23 | 1811 | Maryland | The Laws of Maryland, with the Charter, the Bill Of Rights, the Constitution of the State, and Its Alterations, the Declaration of Independence, and the Constitution of the United States, and Its Amendments, at 465 (1811) | Prohibited the carrying of any pistol, hanger, cutlass, bludgeon, or other offensive weapon with the intent to assault a person. Punishable by imprisonment for 3 months to 2 years. | Objection to inclusion.<br><br>This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms and, even then, only while participating in or attempting to engage in illegal activity (i.e., assault). *Bruen*, 142 S.Ct. at 2133.<br><br>Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 24 | 1813 | Louisiana | 1813 La. Acts 172, An Act Against Carrying Concealed Weapons, and Going Armed in Public Places in an Unnecessary Manner, § 1 | Prohibited the carrying of any concealed weapon, including a dirk, dagger, knife, pistol, or any other deadly weapon. | Objection to inclusion.<br><br>This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms, and even then, it only regulates *how* they are |

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | | | carried. *Bruen*, 142 S.Ct. at 2133. |
| | | | | | Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 25 | 1816 | Georgia | Lucius Q.C. Lamar, A Compilation of the Laws of the State of Georgia, Passed by the Legislature since the Year 1810 to the Year 1819, Inclusive. Comprising all the Laws Passed within those Periods, Arranged under Appropriate Heads, with Notes of Reference to those Laws, or Parts of Laws, which are Amended or Repealed to which are Added such Concurred and Approved Resolutions, as are Either of General, Local, or Private Moment. Concluding with a Copious Index to the Laws, a Separate one to the Resolutions, at 599 (1821), Offences Against the Public Peace, (1816) § 19 | Prohibited the carrying of any pistol, hanger, cutlass, bludgeon, or other offensive weapon with the intent to assault a person. Punishable by imprisonment with hard labor for a period of time to be determined by a jury. | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms and, even then, only while participating in or intending to engage in illegal activity (i.e., assault). *Bruen*, 142 S.Ct. at 2133. Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |

**ER_452**

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| 26 | 1818 | Missouri [Territory] | Organic Laws:-Laws of Missouri Territory, (Alphabetically Arranged):-Spanish Regulations for the Allotment of Lands:- Laws of the United States, for Adjusting Titles to Lands, &c. to Which are Added, a Variety of Forms, Useful to Magistrates, at 374 (1818), Slaves, § 3 | Prohibited "slave or mulatto" from carrying a gun, powder, shot, club or other weapon and from possessing a gun or ammunition. | Objection to inclusion.<br><br>The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen does not even consider* the many explicitly racist laws of the 18th and 19th centuries.<br><br>The law is not "relevantly similar" to CA's magazine ban because it restricted *who* (i.e., only disfavored groups) may use and possess arms, not *what* arms anyone may possess. *Id.* at 2133.<br><br>Further, if a restriction that applied only to disfavored groups was a sufficient historical tradition, then neither *Heller* nor *Bruen* would have ruled in favor of the individual right to keep and bear arms.<br><br>Finally, the 19th-century laws of the Western Territories are not "instructive" because they are "most unlikely to reflect 'the origins of and continuing significance of the Second Amendment.'" *Id.* at 2154. |
| 27 | 1821 | Maine | 1821 Me. Laws 98, An Act for the Prevention of Damage by Fire, and the Safe Keeping of Gun Powder, chap. 25, § 1 | Prohibited any person from possessing any gunpowder, in any quantity, unless permitted by local rules and regulations. | Objection to inclusion.<br><br>This law is not "relevantly similar" to CA's magazine ban. It regulates the possession of gun powder for entirely different reasons than CA does here (i.e., prevention of fires and explosions). *Bruen*, 142 S.Ct. at 2133.<br><br>But if it were relevant, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more |

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|-------------------|--------------|----------|--------------------------|----------------------|
|     |                   |              |          |                          | weight than it can rightly bear."). |
|     |                   |              |          |                          | And this law is an outlier insufficient to establish an American tradition of such regulation. *Bruen*, 142 S.Ct. at 2133. |
| 28  | 1835              | Arkansas [Territory] | Slaves, in Laws of the Arkansas Territory 521 (J. Steele & J. M'Campbell, Eds., 1835) | Prohibited any "slave or mulatto" from keeping or carrying a gun, powder, shot, club, or other weapon. | Objection to inclusion.<br><br>The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen does not even consider* the many explicitly racist laws of the 18th and 19th centuries.<br><br>The law is not "relevantly similar" to CA's magazine ban because it restricted *who* (i.e., only disfavored groups) may use and possess arms, not *what* arms anyone may possess. *Id.* at 2133.<br><br>Further, if a restriction that applied only to disfavored groups was a sufficient historical tradition, then neither *Heller* nor *Bruen* would have ruled in favor of the individual right to keep and bear arms.<br><br>Finally, the 19th-century laws of the Western Territories are not "instructive" because they are "most unlikely to reflect 'the origins of and continuing significance of the Second Amendment.'" *Id.* at 2154. |
| 29  | 1836              | Massachusetts | Mass. Rev. Stat., ch. 134, § 16 (1836) | Prohibited the carrying of a dirk, dagger, sword, pistol, or other offensive and dangerous weapon without reasonable cause to fear an assault.  Punishable by finding sureties for keeping the peace for a term up to 6 months. | Objection to inclusion.<br><br>This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms. *Bruen*, 142 S.Ct. at 2133. |

**_Duncan v. Bonta_, No. 3:17-cv-01017-BEN-JLB**
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|------|------|------|------|------|
| | | | | | Further, the law was adopted too long after the Founding to be afforded much weight _Heller_, 554 U.S. at 634-635; _see also Bruen_, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| | | | | | Objection to Description. |
| | | | | | The law does not even ban carry. It only required the posting of a surety and, even then, only if someone complained of a reasonable fear of the person carrying. |
| | | | | | The relevant text is as follows: "If any person shall go armed with a dirk, dagger, sword, pistol, or other offensive and dangerous weapon, without reasonable cause to fear an assault or other injury, or violence to his person, or to his family or property, he may, on complaint of any person **having reasonable cause to fear an injury, or breach of the peace**, be required **to find sureties for keeping the peace**, for a term not exceeding six months, **with the right of appealing as before provided**."[4] |
| 30 | 1836 | Connecticut – Cities of Hartford, New Haven, New London, | 1836 Conn. Acts 105, ch. 1, § 20 | Authorizing the local court of common counsel to prohibit and regulate the storage of gun powder. | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not ban possession of any arm or any conduct at all. It instead authorizes a court to prohibit and regulate the storage of gun powder, likely for reasons |

---

[4] https://firearmslaw.duke.edu/laws/theron-metcalf-the-revised-statutes-of-the-commonwealth-of-massachusetts-passed-november-4-1835-to-which-are-subjoined-an-act-in-amendment-thereof-and-an-act-expressly-to-repeal-the-acts-which-a/.

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|-------------------|--------------|----------|---------------------------|----------------------|
| | | Norwich, and Middletown | | | related to fire prevention. Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 31 | 1837 | Alabama | 1837 Ala. Acts 7, §§ 1, 2 | Imposed tax of $100 on any person selling, giving, or disposing of any Bowie knife or Arkansas toothpick.  Failure to pay the tax was subject to penalty of perjury. | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It is only a tax on transferring certain arms. *Bruen*, 142 S.Ct. at 2133. Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 32 | 1837 | Arkansas | Josiah Gould, A Digest of the Statutes of Arkansas Embracing All Laws of a General and Permanent Character in Force the Close of the Session of the General Assembly of 1856 380 381–82 (1837) | Prohibited the concealed carrying of any pistol, dirk, butcher or large knife, sword cane, unless "upon a journey." | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms and, even then, it only regulates *how* one may carry. *Bruen*, 142 S.Ct. at 2133. Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving |

**ER_456**

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | | | postenactment history more weight than it can rightly bear."). |
| 33 | 1837 | Georgia | Acts of the General Assembly of the State of Georgia Passed in Milledgeville at an Annual Session in November and December 1837, at 90-91 (1838) | Prohibited any merchant, or "any other person or persons whatsoever," to sell, offer to sell, keep, or have on their person or elsewhere any Bowie knife or "any other kind of knives, manufactured and sold for the purpose of wearing, or carrying the same as arms of offence or defence," pistols, swords, sword canes, or spears.  Exempted "such pistols as are known as horseman's pistols" from these restrictions.  Punishable by a fine of up to $100-500 for the first offense and $500-1,000 for subsequent offenses. | No objection to inclusion.  The law was held to be unconstitutional under the 2nd Amendment. *Nunn v. State*, 1 Ga. 243 (1846). To the extent that it bans the transfer or possession of common arms, like CA's magazine ban does, judicial review of the law tends to show that CA's magazine ban is also unconstitutional. |
| 34 | 1837 | Mississippi | 1837 Miss. L. 291-92 | Prohibited the use of any rifle, shotgun, sword cane, pistol, dirk, dirk knife, Bowie knife, or any other deadly weapon in a fight in which one of the combatants was killed, and the exhibition of any dirk, dirk knife, Bowie knife, sword, sword cane, or other deadly weapon in a rude or threatening manner that was not in necessary self-defense.  Punishable by liability to decedent and a fine of up to | Objection to inclusion.  This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It bans the use of arms (including common arms) to assault and kill people. It also bans brandishing a weapon in a threatening manner necessary for self-defense. *Bruen*, 142 S.Ct. at 2133.  Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving |

17

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|-------------------|--------------|----------|--------------------------|----------------------|
| | | | | $500 and imprisonment for up to 3 months. | postenactment history more weight than it can rightly bear."). |
| 35 | 1837 | Mississippi – Town of Sharon | 1837 Miss. L. 294 | Authorized the town of Sharon to enact "the total inhibition of the odious and savage practice" of carrying dirks, Bowie knives, or pistols. | Objection to inclusion. <br><br> This law is not "relevantly similar" to CA's magazine ban. It does not ban possession of any arm or any conduct at all. It instead purports to authorize a local jurisdiction to adopt a law. And the State does not indicate whether the town actually passed that law. *Bruen*, 142 S.Ct. at 2133. <br><br> Even if the town did pass such a law, it would not be "relevantly similar" because it would regulate only carry of certain arms. <br><br> Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 36 | 1837 | Tennessee | 1837-38 Tenn. Pub. Acts 200-01, An Act to Suppress the Sale and Use of Bowie Knives and Arkansas Tooth Picks in this State, ch. 137, § 2 | Prohibited the carrying of a concealed Bowie knife, Arkansas tooth pick, or other knife or weapon.  Punishable by fine of $200-500 and imprisonment for 3-6 months. | Objection to inclusion. <br><br> This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms, and even then, it only regulates *how* they are carried. *Bruen*, 142 S.Ct. at 2133. <br><br> Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|-------------------|--------------|----------|--------------------------|----------------------|
| 37 | 1837 | Tennessee | 1837-1838 Tenn. Pub. Acts 200, An Act to Suppress the Sale and Use of Bowie Knives and Arkansas Tooth Picks in this State, ch. 137, § 1. | Prohibited any merchant from selling a Bowie knife or Arkansas tooth pick. Punishable by fine of $100-500 and imprisonment for $1-6 months. | Objection to inclusion.<br><br>If the State's claim is that the arms subject to this law are "dangerous and unusual," the law is not "relevantly similar" to CA's ban on magazines in common use for lawful purposes. *Bruen*, 142 S.Ct. at 2133.<br><br>But if it were relevant, the law was adopted too long after the Founding to be afforded much weight—especially because the law is not consistent with founding-era laws. *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear.").<br><br>And this law is an outlier insufficient to establish an American tradition of such regulation. *Bruen*, 142 S.Ct. at 2133. It was the only still-standing prohibition on sales of bowie knives by the end of the 19th century. Kopel, *Bowie Knife Statutes 1837-1899*, Reason Magazine (Nov. 20, 2022). |
| 38 | 1837 | Tennessee | 1837-1838 Tenn. Pub. Acts 201, An Act to Suppress the Sale and Use of Bowie Knives and Arkansas Tooth Picks in the State, ch. 137, § 4 | Prohibited the stabbing or cutting of another person with any knife or weapon known as a "Bowie knife, Arkansas tooth pick, or any knife or weapon that shall in form, shape or size resemble a Bowie knife," regardless of whether the person dies. Punishable by imprisonment for 3-15 years. | Objection to inclusion.<br><br>This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It only bans the use of certain knives to stab or cut people. *Bruen*, 142 S.Ct. at 2133.<br><br>Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving |

19

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|-------------------|--------------|----------|---------------------------|----------------------|
| | | | | | postenactment history more weight than it can rightly bear."). |
| 39 | 1838 | Tennessee | Acts Passed at the First Session of the Twenty-Second General Assembly of the State of Tennessee: 1837-38, at 200-01, ch. 137 | Prohibited the sale or transfer of any Bowie knife or knives, Arkansas toothpicks, or "any knife or weapon that shall in form shape or size resemble a Bowie knife or any Arkansas toothpick." | Objection to inclusion. This appears to be the same TN Bowie knife law listed above (No. 35). If the State's claim is that the arms subject to this law are "dangerous and unusual," the law is not "relevantly similar" to CA's ban on magazines in common use for lawful purposes. *Bruen*, 142 S.Ct. at 2133. But if it were relevant, the law was adopted too long after the Founding to be afforded much weight—especially because the law is not consistent with founding-era laws. *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). And this law is an outlier insufficient to establish an American tradition of such regulation. *Bruen*, 142 S.Ct. at 2133. It was the only still-standing prohibition on sales of bowie knives by the end of the 19th century. Kopel, *Bowie Knife Statutes 1837-1899*, Reason Magazine, (Nov. 20, 2022). |
| 40 | 1838 | Virginia | Acts of the General Assembly of Virginia, Passed at the Session of 1838, at 76-77, ch. 101 (1838) | Prohibited "habitually or generally" carrying any concealed pistol, dirk, Bowie knife, or any other weapon of like kind. | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms, and even then, it only regulates *how* they are |

**ER_460**

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | | | carried. *Bruen*, 142 S.Ct. at 2133. Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 41 | 1839 | Alabama | 1839 Ala. Acts 67, § 1 | Prohibited the concealed carrying of "any species of fire arms, or any bowie knife, Arkansas tooth-pick, or any other knife of the like kind, dirk, or any other deadly weapon." Punished by fine of $50-100 and imprisonment not to exceed 3 months. | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms, and even then, it only regulates *how* they are carried. *Bruen*, 142 S.Ct. at 2133. Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 42 | 1839 | Florida [Territory] | John P. Duval, Compilation of the Public Acts of the Legislative Council of the Territory of Florida, Passed Prior to 1840, at 423 (1839), An Act to Prevent any Person in this Territory from Carrying Arms Secretly | Prohibited the concealed carrying of "any dirk, pistol, or other arm, or weapon, except a common pocket-knife." Punishable by fine of $50-500 or imprisonment for 1-6 months. | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms, and even then, it only regulates *how* they are carried. *Bruen*, 142 S.Ct. at 2133. Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving |

**ER_461**

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | | | postenactment history more weight than it can rightly bear."). |
| | | | | | Finally, the 19th-century laws of the Western Territories are not "instructive" because they are "most unlikely to reflect 'the origins of and continuing significance of the Second Amendment.'" *Id.* at 2154. |
| 43 | 1839 | Mississippi – Town of Emery | 1839 Miss. L. 385, ch. 168 | Authorized the town of Emery to enact restrictions on the carrying of dirks, Bowie knives, or pistols. | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not ban possession of any arm or any conduct at all. It instead purports to authorize a local jurisdiction to adopt a law. And the State does not indicate whether the town actually passed that law. *Bruen*, 142 S.Ct. at 2133. Even if the town did pass such a law, it would not be "relevantly similar" because it would regulate only carry of certain arms. Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 44 | 1840 | Mississippi – Town of Hernando | 1840 Miss. L. 181, ch. 111 | Authorized the town of Hernando to enact restrictions on the carrying of dirks, Bowie knives, or pistols. | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not ban possession of any arm or any conduct at all. It instead purports to authorize a local jurisdiction to adopt a law. And the State does not indicate whether the town actually passed that law. |

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|-------------------|--------------|----------|---------------------------|----------------------|
|  |  |  |  |  | *Bruen*, 142 S.Ct. at 2133. Even if the town did pass such a law, it would not be "relevantly similar" because it would regulate only carry of certain arms. Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 45 | 1841 | Alabama | 1841 Ala. Acts 148–49, Of Miscellaneous Offences, ch. 7, § 4 | Prohibited the concealed carrying of "a bowie knife, or knife or instrument of the like kind or description, by whatever name called, dirk or any other deadly weapon, pistol or any species of firearms, or air gun," unless the person is threatened with an attack or is traveling or "setting out on a journey." Punished by a fine of $50-100. | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms, and even then, it only regulates *how* they are carried. And it includes exceptions for self-defense and when on a "journey." *Bruen*, 142 S.Ct. at 2133. Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 46 | 1841 | Maine | 1841 Me. Laws 709, ch. 169, § 16. | Prohibited the carrying of a dirk, dagger, sword, pistol, or other offensive and dangerous weapon without reasonable cause to fear an assault.  Upon complaint of any person, the person intending to carry such weapons may be | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms, and even then, it only regulates *how* they are carried. And it includes exceptions for self- |

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|------|------|------|------|------|
| | | | | required to find sureties for keeping the peace for up to six months. | defense and when on a "journey." *Bruen*, 142 S.Ct. at 2133. |
| | | | | | Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 47 | 1841 | Mississippi | 1841 Miss. 52, ch. 1 | Imposed an annual property tax of $1 on each Bowie knife. | Objection to inclusion. |
| | | | | | This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It is only a tax on certain arms. *Bruen*, 142 S.Ct. at 2133. |
| | | | | | Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 48 | 1842 | Louisiana | Henry A. Bullard & Thomas Curry, 1 A New Digest of the Statute Laws of the State of Louisiana, from the Change of Government to the Year 1841 at 252 (E. Johns & Co., New Orleans, 1842) | Prohibited the carrying of " any concealed weapon, such as a dirk, dagger, knife, pistol, or any other deadly weapon." Punishable by fine of $20-50. | Objection to inclusion. |
| | | | | | This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms, and even then, it only regulates *how* they are carried. *Bruen*, 142 S.Ct. at 2133. |
| | | | | | Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving |

24

***Duncan v. Bonta***, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | | | postenactment history more weight than it can rightly bear."). |
| 49 | 1845 | Illinois | Mason Brayman, Revised Statutes of the State of Illinois: Adopted by the General Assembly of Said State, at Its Regular Session, Held in the Years A.D. 1844-45: Together with an Appendix Containing Acts Passed at the Same and Previous Sessions, Not Incorporated in the Revised Statutes, but Which Remain in Force , at 176 (1845), Criminal Jurisprudence, § 139 | Prohibited the carrying of "any pistol, gun, knife, dirk, bludgeon or other offensive weapon, with intent to assault any person. Punishable by fine up to $100 or imprisonment up to 3 months. | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms and, even then, only while participating in or intending to engage in illegal activity (i.e., assault). *Bruen*, 142 S.Ct. at 2133. Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 50 | 1846 | North Carolina | 1846 N.C. L., ch. 42 | Prohibited "any slave" from receiving any sword, dirk, Bowie knife, gun, musket, firearms, or "any other deadly weapons of offense" without written permission. | Objection to inclusion. The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen does not even consider* the many explicitly racist laws of the 18th and 19th centuries. The law is not "relevantly similar" to CA's magazine ban because it restricted *who* may use and possess arms, not *what* arms they may possess. *Id.* at 2133. Further, if a restriction that applied only to disfavored groups was a sufficient historical tradition, then neither *Heller* nor *Bruen* would have ruled in favor of the individual |

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | | | right to keep and bear arms. |
| | | | | | Finally, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 51 | 1847 | Maine | The Revised Statutes of the State of Maine, Passed October 22, 1840; To Which are Prefixed the Constitutions of the United States and of the State of Maine, and to Which Are Subjoined the Other Public Laws of 1840 and 1841, with an Appendix, at 709 (1847), Justices of the Peace, § 16 | Prohibited the carrying of a dirk, dagger, sword, pistol, or other offensive and dangerous weapon without reasonable cause to fear an assault.  Upon complaint of any person, the person intending to carry such weapons may be required to find sureties for keeping the peace for up to one year. | Objection to inclusion. <br><br>This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms. And it provides an exception for self-defense *Bruen*, 142 S.Ct. at 2133. <br><br>Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 52 | 1849 | California – City of San Francisco | 1849 Cal. Stat. 245, An Act to Incorporate the City of San Francisco, § 127 | Prohibited the carrying, with intent to assault any person, any pistol, gun, knife, dirk, bludgeon, or other offensive weapon with the intent to assault another person..  Punished by fine of up to $100 and imprisonment for up to 3 months. | Objection to inclusion. <br><br>This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms and, even then, only while participating in or intending to engage in illegal activity (i.e., assault). *Bruen*, 142 S.Ct. at 2133. <br><br>Further, this was not a state law, but a local law. *Bruen* rejected the notion that ordinances from a few cities are persuasive. |

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|-----|-----|-----|-----|-----|
| | | | | | *Id.* at 2156. |
| | | | | | Finally, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 53 | 1850 | Mississippi | 1850 Miss. 43, ch. 1 | Imposed an annual property tax of 50 cents on each Bowie knife. | Objection to inclusion. |
| | | | | | This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It is only a tax on certain arms. *Bruen*, 142 S.Ct. at 2133. |
| | | | | | Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 54 | 1851 | Alabama | 1851-52 Ala. 3, ch. 1 | Tax of $2 on "every bowie knife or revolving pistol." | Objection to inclusion. |
| | | | | | This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It is only a tax on certain arms. *Bruen*, 142 S.Ct. at 2133. |
| | | | | | Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|-------------------|--------------|----------|--------------------------|----------------------|
| 55 | 1851 | Illinois – City of Chicago | Ordinances of the City of Chicago, Ill., ch. 16, § 1 | Prohibiting the keeping, sale, or giving away of gun powder or gun cotton "in any quantity" absent written permission of the authorities.  Punishable by a fine of $25 per offense. | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It regulates the possession of gun powder/cotton differently (i.e., requires permission to possess) than CA's flat ban. And it regulates for entirely different reasons than CA does here (i.e., prevention of fires and explosions). *Bruen*, 142 S.Ct. at 2133.   Further, this was not a state law, but a local law. *Bruen* rejected the notion that ordinances from a few cities are persuasive. *Id.* at 2156.   Finally, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 56 | 1851 | Pennsylvania – City of Philadelphia | 1851 Pa. Laws 382, An Act Authorizing Francis Patrick Kenrick, Bishop of Philadelphia, to Convey Certain Real Estate in the Borough of York, and a Supplement to the Charter of Said Borough, § 4 | Prohibited the willful and malicious carrying of any pistol, gun, dirk, knife, slungshot, or deadly weapon.  Punishable by imprisonment for 6 months to 1 year and security for future good behavior. | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms. *Bruen*, 142 S.Ct. at 2133.   Further, this was not a state law, but a local law. *Bruen* rejected the notion that ordinances from a few cities are persuasive. *Id.* at 2156.   Finally, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, |

28

**ER_468**

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | | | 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 57 | 1853 | California | S. Garfielde, Compiled Laws of the State of California: Containing All the Acts of the Legislature of a Public and General Nature, Now in Force, Passed at the Sessions of 1850-51-52-53, § 127 | Prohibited carrying of pistol, gun, knife, dirk, bludgeon, or other offensive weapon with intent to assault.  Punishable by fine of up to $100 or imprisonment for up to 3 months. | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms and, even then, only while participating in or intending to engage in illegal activity (i.e., assault). *Bruen*, 142 S.Ct. at 2133. Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 58 | 1853 | New Mexico [Territory] | 1853 N.M. Laws 406, An Act Prohibiting the Carrying of Weapons Concealed or Otherwise, § 25 | Prohibited the carrying of a concealed pistol, Bowie knife, cuchillo de cinto (belt buckle knife), Arkansas toothpick, Spanish dagger, slungshot, or any other deadly weapon. | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms, and even then, it only regulates *how* they are carried. *Bruen*, 142 S.Ct. at 2133. Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). Finally, the 19th-century laws of the Western Territories are not "instructive" because they |

**ER_469**

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|-------------------|--------------|----------|---------------------------|----------------------|
|     |                   |              |          |                           | are "most unlikely to reflect 'the origins of and continuing significance of the Second Amendment.'" *Bruen*, 142 S.Ct. at 2154. |
| 59 | 1854 | Mississippi | 1854 Miss. 50, ch. 1 | Imposed an annual property tax of $1 on each Bowie knife, Arkansas toothpick, sword cane, and dueling or pocket pistol. | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It is only a tax on certain arms. *Bruen*, 142 S.Ct. at 2133. Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 60 | 1854 | Washington [Territory] | 1854 Wash. Sess. Law 80, An Act Relative to Crimes and Punishments, and Proceedings in Criminal Cases, ch. 2, § 30 | Prohibited exhibiting, in a rude, angry, or threatening manner, a pistol, Bowie knife, or other dangerous weapon.  Punishable by imprisonment up to 1 year and a fine up to $500. | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only brandishing of certain arms (including common arms) in a rude, angry, or threatening manner. *Bruen*, 142 S.Ct. at 2133. Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). Finally, the 19th-century laws of the Western Territories are not "instructive" because they are "most unlikely to reflect 'the origins of |

30

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | | | and continuing significance of the Second Amendment.'" *Bruen*, 142 S.Ct. at 2154. |
| 61 | 1855 | California | 1855 Cal. L. 152-53, ch. 127 | Provided that a person who killed another in a duel with "a rifle, shot-gun, pistol, bowie-knife, dirk, small-sword, back-sword or other dangerous weapon" would pay the decedent's debts and be liable to the decedent's family for liquidated damages. | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not ban possession of any arm or any conduct at all. It merely holds a person civilly liable if they kill another person in a duel with certain weapons (including common arms). *Bruen*, 142 S.Ct. at 2133. |
| 62 | 1855 | Indiana | 1855 Ind. Acts 153, An Act to Provide for the Punishment of Persons Interfering with Trains or Railroads, ch. 79, § 1 | Prohibited the carrying of any dirk, pistol, Bowie knife, dagger, sword in cane, or any other dangerous or deadly weapon with the intent of injuring another person. Exempted any person who was a "traveler." Punishable by fine up to $500. | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms, even then, only while participating in or intending to engage in illegal activity (i.e., assault). *Bruen*, 142 S.Ct. at 2133. Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 63 | 1855 | Louisiana | 1855 La. L. 148, ch. 120 | Prohibited the concealed carrying of "pistols, bowie knife, dirk, or any other dangerous weapon." | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms, and even then, it only regulates *how* they are carried. *Bruen*, 142 S.Ct. at 2133. |

31

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|------|------|------|------|------|
| | | | | | Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 64 | 1856 | Mississippi | 1856-1857 Miss. L. 36, ch. 1 | Imposed an annual property tax of $1 on each Bowie knife, dirk knife, or sword cane. | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It is only a tax on certain arms. *Bruen*, 142 S.Ct. at 2133. Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 65 | 1856 | Tennessee | 1855-56 Tenn. L. 92, ch. 81 | Prohibited the sale or transfer of any pistol, Bowie knife, dirk, Arkansas toothpick, or hunter's knife to a minor. Excepted the transfer of a gun for hunting. | Objection to inclusion. The law is not "relevantly similar" to CA's magazine ban because it restricted only the transfer of certain arms to *minors*. It did not flatly ban possession by *anyone*, nor did not ban transfer to adults. *Id.* at 2133. Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|-------------------|--------------|----------|---------------------------|----------------------|
| 66 | 1856 | Texas | Tex. Penal Code arts. 611-12 (enacted Aug. 28, 1856) | Provided that the use of a Bowie knife or a dagger in manslaughter is to be deemed murder. | Objection to inclusion.<br><br>This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It only enhances criminal charges/penalties for killing another person with certain knives. *Bruen*, 142 S.Ct. at 2133.<br><br>Further, while the court in *Cockrum v. State*, 24 Tex. 394 (1859) upheld the penalty enhancement, it also held that "[t]he right to carry a bowie-knife for lawful defence is secured, and must be admitted." |
| 67 | 1858 | Minnesota – City of St. Paul | Ordinances of the City of St. Paul, Minn., ch. 21, § 1 | Prohibited the keeping, sale, or giving away of gun powder or gun cotton "in any quantity" absent payment of $5 to the City Treasurer and written permission of the authorities.  Authorized any person to "keep for his own use" no more than 1 pound of gun powder or gun cotton at any one time.  Punishable by a fine not to exceed $50 per offense. | Objection to inclusion.<br><br>This law is not "relevantly similar" to CA's magazine ban. It regulates the possession of gun powder/cotton differently (i.e., requires permission to possess) than CA's flat ban. And it regulates for entirely different reasons than CA does here (i.e., prevention of fires and explosions). *Bruen*, 142 S.Ct. at 2133.<br><br>Further, this was not a state law, but a local law. *Bruen* rejected the notion that ordinances from a few cities are persuasive. *Id.* at 2156.<br><br>Even if it were relevant, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | | | And this law is an outlier insufficient to establish an American tradition of such regulation. *Bruen*, 142 S.Ct. at 2133. |
| 68 | 1858 | Nebraska [Territory] | 1858 Neb. Laws 69, An Act to Adopt and Establish a Criminal code for the Territory of Nebraska, § 135 | Prohibited the carrying of a pistol, gun, knife, dirk, bludgeon or other offensive weapon with the intent to assault a person. Punishable by fine up to $100. | <u>Objection to inclusion.</u><br><br>This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms and, even then, only while participating in or intending to engage in illegal activity (i.e., assault). *Bruen*, 142 S.Ct. at 2133.<br><br>Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear.").<br><br>Finally, the 19th-century laws of the Western Territories are not "instructive" because they are "most unlikely to reflect 'the origins of and continuing significance of the Second Amendment.'" *Bruen*, 142 S.Ct. at 2154. |
| 69 | 1859 | Kentucky – Town of Harrodsburg | 1859 Ky. Acts 245, An Act to Amend An Act Entitled "An Act to Reduce to One the Several Acts in Relation to the Town of Harrodsburg," § 23 | Prohibited the selling, giving, or loaning of a concealed pistol, dirk, Bowie knife, brass knuckles, slungshot, colt, cane-gun, or other deadly weapon to a "minor, slave, or free negro." Punishable by fine of $50. | <u>Objection to inclusion.</u><br><br>The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen does not even consider* the many explicitly racist laws of the 18th and 19th centuries.<br><br>The law is not "relevantly similar" to CA's magazine ban because it restricted *who* may use and possess arms, not *what* arms they |

**ER_474**

***Duncan v. Bonta***, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|-------------------|--------------|----------|---------------------------|----------------------|
|     |                   |              |          |                           | may possess. *Id.* at 2133. Further, if a restriction that applied only to disfavored groups was a sufficient historical tradition, then neither *Heller* nor *Bruen* would have ruled in favor of the individual right to keep and bear arms. |
| 70  | 1859              | Ohio         | 1859 Ohio Laws 56, An Act to Prohibit the Carrying or Wearing of Concealed Weapons, § 1 | Prohibited the concealed carrying of any pistol, Bowie knife, or any other "dangerous weapon." Punishable by fine of up to $200 or imprisonment of up to 30 days for the first offense, and a fine of up to $500 or imprisonment for up to 3 months for the second offense. | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms, and even then, it only regulates *how* they are carried. *Bruen*, 142 S.Ct. at 2133. Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 71  | 1859              | Washington [Territory] | 1859 Wash. Sess. Laws 109, An Act Relative to Crimes and Punishments, and Proceedings in Criminal Cases, ch. 2, § 30 | Prohibited exhibiting, in a rude, angry, or threatening manner, a pistol, Bowie knife, or other dangerous weapon. Punishable by imprisonment up to 1 year and a fine up to $500. | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only brandishing of certain arms (including common arms) in a rude, angry, or threatening manner. *Bruen*, 142 S.Ct. at 2133. Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving |

35

**ER_475**

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | | | postenactment history more weight than it can rightly bear."). |
| 72 | 1860 | Georgia | 1860 Ga. Laws 56, An Act to add an additional Section to the 13th Division of the Penal Code, making it penal to sell to or furnish slaves or free persons of color, with weapons of offence and defence; and for other purposes therein mentioned, § 1. | Prohibited the sale or furnishing of any gun, pistol, Bowie knife, slungshot, sword cane, or other weapon to a "slave or free person of color." Punishable by fine up to $500 and imprisonment up to 6 months. | Objection to inclusion.<br><br>The 14th Amendment renders explicitly racist laws and slave codes irrelevant to the analysis. *Bruen does not even consider* the many explicitly racist laws of the 18th and 19th centuries.<br><br>The law is not "relevantly similar" to CA's magazine ban because it restricted *who* (i.e., only disfavored groups) may use and possess arms, not *what* arms anyone may possess. *Id.* at 2133.<br><br>Further, if a restriction that applied only to disfavored groups was a sufficient historical tradition, then neither *Heller* nor *Bruen* would have ruled in favor of the individual right to keep and bear arms.<br><br>Finally, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear.").; *id.* at 2153-54 ("late 19th-century cannot provide much insight … when it contradicts earlier evidence") |
| 73 | 1861 | California | William H. R. Wood, Digest of the Laws of California: Containing All Laws of a General Character Which were in Force on the First Day of | Prohibited the display of any dirk, dirk-knife, Bowie knife, sword, sword cane, pistol, gun, or other deadly weapon in a threatening manner, or use of such weapon in a fight. | Objection to inclusion.<br><br>This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only display/brandishing of certain arms (including common arms) in a |

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | January, 1858; Also, the Declaration of Independence, Constitution of the United States, Articles of Confederation, Kentucky and Virginia Resolutions of 1798-99, Acts of Congress Relative to Public Lands and Pre-Emptions. Together with Judicial Decisions, Both of the Supreme Court of the United States and of California, to Which are Also Appended Numerous Forms for Obtaining Pre-Emption and Bounty Lands, Etc., at 334 (1861) | Punishable by a fine of $100-500 or imprisonment for 1-6 months. | threatening manner, and the use of such arms to assault others. *Bruen*, 142 S.Ct. at 2133. Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; ; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear.").; *id.* at 2153-54 ("late 19th-century cannot provide much insight … when it contradicts earlier evidence") |
| 74 | 1861 | Nevada [Territory] | 1861 Nev. L. 61 | Provided that the killing of another in a duel with a rifle, shotgun, pistol, Bowie knife, dirk, small-sword, back-sword, or other "dangerous weapon" in the killing of another in a duel is to be deemed murder. | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It merely provides that killing another person in a duel with certain weapons (including common arms) is murder. *Bruen*, 142 S.Ct. at 2133. |
| 75 | 1862 | Colorado [Territory] | 1862 Colo. Sess. Laws 56, § 1 | Prohibited the concealed carrying in any city, town, or village any pistol, Bowie knife, dagger, or other deadly weapon. Punished by fine of $5-35. | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms, and |

ER_477

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|-------------------|--------------|----------|--------------------------|----------------------|
| | | | | | even then, it only regulates *how* they are carried. *Bruen*, 142 S.Ct. at 2133. <br><br> Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 76 | 1863 | Kansas – City of Leavenworth | C. B. Pierce, Charter and Ordinances of the City of Leavenworth, with an Appendix, at 45 (1863), An Ordinance Relating to Misdemeanors, § 23 | Prohibited the carrying of any concealed "pistol, dirk, bowie knife, revolver, slung shot, billy, brass, lead or iron knuckles, or any other deadly weapon within this city." Punishable by a fine of $3-100. | Objection to inclusion. <br><br> This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms, and even then, it only regulates *how* they are carried. *Bruen*, 142 S.Ct. at 2133. <br><br> Further, this was not a state law, but a local law. *Bruen* rejected the notion that ordinances from a few cities are persuasive. *Id.* at 2156. <br><br> Finally, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 77 | 1863 | Tennessee – City of Memphis | William H. Bridges, Digest of the Charters and Ordinances of the City of Memphis, Together with the Acts of the Legislature Relating to the City, with an Appendix, at 190 | Prohibited the carrying of a concealed pistol, Bowie knife, dirk, or any other deadly weapon. Punishable by fine of $10-50. | Objection to inclusion. <br><br> This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms, and even then, it only regulates *how* they are |

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|-----|-----|-----|-----|-----|
| | | | (1863), Offences Affecting Public Safety: Carrying Concealed Weapons, § 3 | | carried. *Bruen*, 142 S.Ct. at 2133. Further, this was not a state law, but a local law. *Bruen* rejected the notion that ordinances from a few cities are persuasive. *Id.* at 2156. Finally, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 78 | 1864 | California | Theodore Henry Hittell, The General Laws of the State of California, from 1850 to 1864, Inclusive: Being a Compilation of All Acts of a General Nature Now in Force, with Full References to Repealed Acts, Special and Local Legislation, and Statutory Constructions of the Supreme Court. To Which are Prefixed the Declaration of Independence, Constitution of the United States, Treaty of Guadalupe Hidalgo, Proclamations to the People of California, Constitution of the State of | Prohibited the concealed carrying of any dirk, pistol, sword cane, slungshot, or "other dangerous or deadly weapon." Exempted any peace officer or officer acting under the law of the United States. Punishable by imprisonment for 30-90 days or fine of $20-200. | <u>Objection to inclusion.</u> This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms, and even then, it only regulates *how* they are carried. *Bruen*, 142 S.Ct. at 2133. Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | California, Act of Admission, and United States Naturalization Laws, with Notes of California Decisions Thereon, at 261, § 1 (1868) | | |
| 79 | 1864 | Montana [Territory] | 1864 Mont. Laws 355, An Act to Prevent the Carrying of Concealed Deadly Weapons in the Cities and Towns of This Territory, § 1 | Prohibited the carrying of a concealed "any pistol, bowie-knife, dagger, or other deadly weapon" within any town or village in the territory. Punishable by fine of $25-100. | Objection to inclusion.<br><br>This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms, and even then, it only regulates *how* they are carried. *Bruen*, 142 S.Ct. at 2133.<br><br>Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear.").<br><br>Finally, the 19th-century laws of the Western Territories are not "instructive" because they are "most unlikely to reflect 'the origins of and continuing significance of the Second Amendment.'" *Bruen*, 142 S.Ct. at 2154. |
| 80 | 1865 | Utah [Territory] | An Act in relation to Crimes and Punishment, Ch. XXII, Title VII, Sec. 102, in Acts, Resolutions and Memorials Passed at the Several Annual Sessions of the Legislative | Prohibited the "set[ting] of any gun." Punishable by imprisonment of up to 1 year or a fine of up to $500. | Objection to inclusion.<br><br>This law is not "relevantly similar" to CA's magazine ban. It does not regulate the possession of any arm. It regulates only how arms are used (i.e., the setting of "trap guns"). And it regulates for completely different reasons than CA's magazine ban |

***Duncan v. Bonta***, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | Assembly of the Territory of Utah 59 (Henry McEwan 1866), § 102 | | (i.e., to prevent unintended discharges). *Bruen*, 142 S.Ct. at 2133.<br><br>Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear.").<br><br>Finally, the 19th-century laws of the Western Territories are not "instructive" because they are "most unlikely to reflect 'the origins of and continuing significance of the Second Amendment.'" *Bruen*, 142 S.Ct. at 2154. |
| 81 | 1866 | New York | Montgomery Hunt Throop, The Revised Statutes of the State of New York; As Altered by Subsequent Legislation; Together with the Other Statutory Provisions of a General and Permanent Nature Now in Force, Passed from the Year 1778 to the Close of the Session of the Legislature of 1881, Arranged in Connection with the Same or kindred Subjects in the Revised Statutes; To Which are Added References to Judicial Decisions upon the Provisions Contained in the Text, Explanatory | Prohibited using, attempting to use, concealing, or possessing a slungshot, billy, sandclub or metal knuckles, and any dirk or dagger, or sword cane or air-gun. Punishable by imprisonment for up to 1 year and/or a fine up to $500. | Objection to inclusion.<br><br>If the State's claim is that the arms subject to this law are "dangerous and unusual," the law is not "relevantly similar" to CA's ban on magazines in common use for lawful purposes. *Bruen*, 142 S.Ct. at 2133.<br><br>But if it were relevant, the law was adopted too long after the Founding to be afforded much weight—especially because the law is not consistent with founding-era laws. *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear.").<br><br>And this law is an outlier insufficient to establish an American tradition of such regulation. *Bruen*, 142 S.Ct. at 2133. |

41

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|-------------------|--------------|----------|---------------------------|----------------------|
| | | | Notes, and a Full and Complete Index, at 2512 (Vol. 3, 1882), An Act to Prevent the Furtive Possession and use of slungshot and other dangerous weapons, ch. 716, § 1 | | |
| 82 | 1866 | North Carolina | 1866 N.C. L. ch. 21, at 33-34, § 11 | Imposed a $1 tax on every dirk, Bowie knife, pistol, sword cane, dirk cane, and rifle cane used or worn during the year. | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It is only a tax on certain arms. *Bruen*, 142 S.Ct. at 2133. Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 83 | 1867 | Alabama | 1867 Ala. Rev. Code 169 | Tax of $2 on pistols or revolvers in the possession of private persons, excluding dealers, and a tax of $3 on "all bowie knives, or knives of the like description." Non-payment was punishable by seizure and, unless payment was made within 10 days with a penalty of an additional 50%, subject to sale by public auction. | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It is only a tax on certain arms. *Bruen*, 142 S.Ct. at 2133. Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|-----|-----|-----|-----|-----|
| 84 | 1867 | Colorado [Territory] | 1867 Colo. Sess. Laws 229, § 149 | Prohibited the concealed carrying of any pistol, Bowie knife, dagger, or other deadly weapon within any city, town, or village in the territory. Punishable by fine of $5-35. Exempted sheriffs, constables, and police officers when performing their official duties. | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms, and even then, it only regulates *how* they are carried. *Bruen*, 142 S.Ct. at 2133. Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). Finally, the 19th-century laws of the Western Territories are not "instructive" because they are "most unlikely to reflect 'the origins of and continuing significance of the Second Amendment.'" *Bruen*, 142 S.Ct. at 2154. |
| 85 | 1867 | Tennessee – City of Memphis | William H. Bridges, Digest of the Charters and Ordinances of the City of Memphis, from 1826 to 1867, Inclusive, Together with the Acts of the Legislature Relating to the City, with an Appendix, at 44 (1867), Police Regulations of the State, Offences Against Public Peace, §§ 4746, 4747, 4753, 4757 | Prohibited the carrying of a concealed Bowie knife, Arkansas tooth pick, dirk, sword cane, Spanish stiletto, belt or pocket pistol, or other knife or weapon.  Also prohibited selling such a weapon or using such a weapon to threaten people. | § 4746. Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms, and even then, it only regulates *how* they are carried. *Bruen*, 142 S.Ct. at 2133. Further, this was not a state law, but a local law. *Bruen* rejected the notion that ordinances from a few cities are persuasive. *Id.* at 2156. Finally, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, |

43

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | | | 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| | | | | | § 4747. <u>No objection to inclusion.</u> |
| | | | | | To the extent that the law restricted sales of arms in common use for lawful purposes at the time, it may be relevant to this Court's analysis. |
| | | | | | If relevant, however, the law was adopted too long after the Founding to be afforded much weight—especially because the law is not consistent with founding-era laws. *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| | | | | | Further, this was not a state law, but a local law. *Bruen* rejected the notion that ordinances from a few cities are persuasive. *Id.* at 2156. |
| | | | | | And this law is an outlier insufficient to establish an American tradition of such regulation. *Bruen*, 142 S.Ct. at 2133. |
| | | | | | § 4753. <u>Objection to inclusion.</u> |
| | | | | | This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms, and even then, it only applies when carrying to terrorize others. *Bruen*, 142 S.Ct. at 2133. |
| | | | | | Further, this was not a state law, but a local |

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|-------------------|--------------|----------|---------------------------|----------------------|
| | | | | | law. *Bruen* rejected the notion that ordinances from a few cities are persuasive. *Id.* at 2156. |
| | | | | | Finally, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| | | | | | § 4757. <u>Objection to inclusion.</u> |
| | | | | | This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms. *Bruen*, 142 S.Ct. at 2133. |
| | | | | | Further, this was not a state law, but a local law. *Bruen* rejected the notion that ordinances from a few cities are persuasive. *Id.* at 2156. |
| | | | | | Finally, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 86 | 1867 | Tennessee – City of Memphis | William H. Bridges, Digest of the Charters and Ordinances of the City of Memphis, from 1826 to 1867, Inclusive, Together with the Acts of the Legislature Relating to the | Prohibited selling, loaning, or giving to a minor a pistol, Bowie knife, dirk, Arkansas tooth-pick, hunter's knife, or like dangerous weapon, except a gun for hunting or self defense in traveling.  Punishable by fine of | <u>Objection to inclusion.</u> The law is not "relevantly similar" to CA's magazine ban because it restricted only the transfer of certain arms to *minors*. It did not flatly ban possession by anyone, nor did not ban transfer to adults. *Bruen*, 142 S.Ct. at |

**_Duncan v. Bonta_, No. 3:17-cv-01017-BEN-JLB**
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|-------------------|--------------|----------|--------------------------|----------------------|
|  |  |  | City, with an Appendix, at 50 (1867), Police Regulations of the State. Selling Liquors or Weapons to Minors, § 4864 | minimum $25 and imprisonment. | 2133. <br><br> Further, this was not a state law, but a local law. _Bruen_ rejected the notion that ordinances from a few cities are persuasive. _Id._ at 2156. <br><br> Finally, the law was adopted too long after the Founding to be afforded much weight _Heller_, 554 U.S. at 634-635; _see also Bruen_, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 87 | 1868 | Alabama | Wade Keyes, The Code of Alabama, 1876, ch. 3, § 4111 (Act of Aug. 5, 1868, at 1) | Prohibited the carrying of any rifle or "shot-gun walking cane." Punishable by fine of $500-1000 and imprisonment of no less than 2 years. | Objection to inclusion. <br><br> This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms. _Bruen_, 142 S.Ct. at 2133. <br><br> Further, the law was adopted too long after the Founding to be afforded much weight— especially because the law is not consistent with founding-era laws. _Heller_, 554 U.S. at 634-635; _see also Bruen_, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). <br><br> What's more, this law is an extreme outlier in restricting the carry of rifles; it is insufficient to establish an American tradition of such regulation. _Bruen_, 142 S.Ct. at 2133. |
| 88 | 1868 | Florida | Fla. Act of Aug. 8, 1868, as codified in Fla. Rev. | Prohibited the manufacture or sale of slungshots or metallic | Objection to inclusion. |

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|-----|-----|-----|-----|-----|
| | | | Stat., tit. 2, pt. 5 (1892), at 2425 | knuckles.  Punishable by imprisonment for up to 6 months or a fine up to $100. | If the State's claim is that the arms subject to this law are "dangerous and unusual," the law is not "relevantly similar" to CA's ban on magazines in common use for lawful purposes. *Bruen*, 142 S.Ct. at 2133. But if relevant, the law was adopted too long after the Founding to be afforded much weight—especially because the law is not consistent with founding-era laws. *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). And this law is an outlier insufficient to establish an American tradition of such regulation. *Bruen*, 142 S.Ct. at 2133. |
| 89 | 1868 | Florida | 1868 Fla. Laws 2538, Persons Engaged in Criminal Offence, Having Weapons, ch. 7, § 10 | Prohibited the carrying of a slungshot, metallic knuckles, billies, firearms or other dangerous weapon if arrested for committing a criminal offence or disturbance of the peace. Punishable by imprisonment up to 3 months or a fine up to $100. | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms, and even then, only when participating in illegal conduct or disturbing the peace. *Bruen*, 142 S.Ct. at 2133. Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 90 | 1868 | Florida | James F McClellan, A Digest of the Laws of the | Prohibited the carrying "about or on their person" any dirk, pistol | Objection to inclusion. This law is not "relevantly similar" to CA's |

**ER_487**

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|-------------------|--------------|----------|--------------------------|----------------------|
| | | | State of Florida: From the Year One Thousand Eight Hundred and Twenty-Two, to the Eleventh Day of March, One Thousand Eight Hundred and Eighty-One, Inclusive, at 403 (1881), Offences Against Public Peace, § 13 (Fla. Act of Aug. 6, 1868, ch. 1637) | or other arm or weapon, except a "common pocket knife." Punishable by fine up to $100 or imprisonment up to 6 months. | magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms, and even then, it only regulates *how* they are carried. *Bruen*, 142 S.Ct. at 2133. Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 91 | 1869 | Tennessee | 1869-70 Tenn. L. 23-24, ch. 22 | Prohibited the carrying of any "pistol, dirk, bowie-knife, Arkansas tooth-pick," any weapon resembling a bowie knife or Arkansas toothpick, "or other deadly or dangerous weapon" while "attending any election" or at "any fair, race course, or public assembly of the people." | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms, and even then, it only while attending certain public events. *Bruen*, 142 S.Ct. at 2133. Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 92 | 1869 | Washington [Territory] | 1869 Wash. Sess. Laws 203-04, An Act Relative to Crimes and Punishments, and Proceedings in Criminal Cases, ch. 2, § 32 | Prohibited exhibiting, in a rude, angry, or threatening manner, a pistol, Bowie knife, or other dangerous weapon.  Punishable by imprisonment up to 1 year and a fine up to $500. | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only exhibiting/brandishing of certain arms (including common arms) in a rude, angry, or threatening manner. *Bruen*, 142 S.Ct. at 2133. |

48

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|------|------|------|------|------|
| | | | | | Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 93 | 1870 | Georgia | 1870 Ga. L. 421, ch. 285 | Prohibited the open or concealed carry of "any dirk, bowie-knife, pistol or revolver, or any kind of deadly weapon" at "any court of justice, or any general election ground or precinct, or any other public gathering," except for militia musters. | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms, and even then, it only applies in certain public space. *Bruen*, 142 S.Ct. at 2133. Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 94 | 1870 | Louisiana | 1870 La. Acts 159–60, An Act to Regulate the Conduct and to Maintain the Freedom of Party Election . . ., § 73 | Prohibited the carrying of a concealed or open gun, pistol, Bowie knife or other dangerous weapon on an election day during the hours the polls are open or during registration. Punishable by fine of minimum $100 and imprisonment of minimum 1 month. | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms, and even then, it only applies in certain public space. *Bruen*, 142 S.Ct. at 2133. Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |

**ER_489**

***Duncan v. Bonta***, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|-------------------|--------------|----------|---------------------------|----------------------|
| 95 | 1870 | New York | "The Man Trap," The Buffalo Commercial, Nov. 1, 1870 | Referenced prohibition on the use of "infernal machines." | Objection to inclusion. It is entirely unclear whether this entry even references a law. If it does, such law is not "relevantly similar" to CA's magazine ban. It does not regulate the possession of any arm. It regulates only how arms are used (i.e., the setting of "trap guns" or "infernal machines"). And it regulates for completely different reasons than CA's magazine ban (i.e., to prevent unintended discharges). *Bruen*, 142 S.Ct. at 2133. |
| 96 | 1871 | Arkansas – City of Little Rock | George Eugene Dodge, A Digest of the Laws and Ordinances of the City of Little Rock, with the Constitution of State of Arkansas, General Incorporation Laws, and All Acts of the General Assembly Relating to the City 230-31 (1871) | Prohibited carrying of a pistol, revolver, Bowie knife, dirk, rifle, shot gun, slungshot, colt, or metal knuckles while engaged in a breach of the peace. Punishable by a fine of $25-500. | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms and, even then, only while participating in or intending to engage in illegal activity (i.e., breach of the peace). *Bruen*, 142 S.Ct. at 2133. Further, this was not a state law, but a local law. *Bruen* rejected the notion that ordinances from a few cities are persuasive. *Id.* at 2156. Finally, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| 97 | 1871 | District of Columbia | An Act to Prevent the Carrying of Concealed Weapons, Aug. 10, 1871, reprinted in Laws of the District of Columbia: 1871-1872, Part II, 33 (1872) (Dist. of Col., An Act to Prevent the Carrying of Concealed Weapons, 1871, ch. XXV) | Prohibited the carrying or having concealed "any deadly or dangerous weapons, such as daggers, air-guns, pistols, Bowie knives, dirk-knives, or dirks, razors, razor-blades, sword-canes, slungshots, or brass or other metal knuckles." Punishable by forfeiture of the weapon and a fine of $20-50. | Objection to inclusion.<br><br>This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms. *Bruen*, 142 S.Ct. at 2133.<br><br>Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 98 | 1871 | Mississippi | 1871 Miss. L. 819-20, ch. 33 | Imposed property tax on pistols, dirks, Bowie knives, and sword canes. | Objection to inclusion.<br><br>This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It is only a tax on certain arms. *Bruen*, 142 S.Ct. at 2133.<br><br>Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 991 | 1871 | Missouri – City of St. Louis | Everett Wilson Pattison, The Revised Ordinance of the City of St. Louis, Together with the Constitution of the United States, and of the State of Missouri; the Charter of the City; and a Digest of | Prohibited the carrying of a concealed pistol, or revolver, colt, billy, slungshot, cross knuckles, or knuckles of lead, brass or other metal, Bowie knife, razor, dirk knife, dirk, dagger, or any knife resembling a Bowie knife, or any other | Objection to inclusion.<br><br>This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms, and even then, it only regulates *how* they are carried. *Bruen*, 142 S.Ct. at 2133. |

51

**ER_491**

***Duncan v. Bonta***, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|-------------------|--------------|----------|---------------------------|----------------------|
| | | | the Acts of the General Assembly, Relating to the City, at 491-92 (1871), Ordinances of the City of St. Louis, Misdemeanors, §§ 9-10. | dangerous or deadly weapon without written permission from the Mayor. Punishable by fine of $10-500. | Further, this was not a state law, but a local law. *Bruen* rejected the notion that ordinances from a few cities are persuasive. *Id.* at 2156. <br><br> Finally, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 100 | 1871 | Tennessee | James H. Shankland Public Statutes of the State of Tennessee, since the Year 1858. Being in the Nature of a Supplement to the Code, at 108 (Nashville, 1871) | Prohibited the carrying of a pistol, dirk, Bowie knife, Arkansas tooth pick, or other weapon in the shape of those weapons, to an election site. Punishable by fine of minimum $50 and imprisonment at the discretion of the court. | Objection to inclusion. <br><br> This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms, and even then, it only applies at election sites. *Bruen*, 142 S.Ct. at 2133. <br><br> Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 101 | 1871 | Texas | 1871 Tex. Laws 25, An Act to Regulate the Keeping and Bearing of Deadly Weapons. § 1 | Prohibited the carrying of a concealed pistol, dirk, dagger, slungshot, sword cane, spear, brass knuckles, Bowie knife, or any other kind of knife used for offense or defense, unless carried openly for self-defense. Punishable by fine of $20-100, forfeiture of the weapon, and for | Objection to inclusion. <br><br> This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms, and even then, it only regulates *how* they are carried. And it provides an exception for self-defense. *Bruen*, 142 S.Ct. at 2133. |

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|-------------------|--------------|----------|--------------------------|----------------------|
| | | | | subsequent offenses, imprisonment up to 60 days. | Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| | | | | | Finally, while *English v. State*, 35 Tex. 47 (1872) upheld the constitutionality of the TX law, it held that the arms protected by the 2nd Amendment are only "the arms of a militiaman or soldier." This is not the test under *Heller* or *Bruen*. |
| 102 | 1871 | Texas | Tex. Act of Apr. 12, 1871, as codified in Tex. Penal Code (1879). Art. 163. | Prohibited the carrying of a concealed or open gun, pistol, Bowie knife, or other dangerous weapon within a half mile of a polling site on an election day. Also prohibited generally carrying a pistol, dirk, dagger, slungshot, sword cane, spear, brass knuckles, Bowie knife, or other kind of knife used for offense or defense.  Punishable by fine and forfeiture of the weapon. | Objection to inclusion.<br><br>This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms and, even then, it only regulates *how* they are carried and within ½ mile from polling sites on election day. *Bruen*, 142 S.Ct. at 2133.<br><br>Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 103 | 1872 | Maryland – City of Annapolis | 1872 Md. Laws 57, An Act to Add an Additional Section to Article Two of the Code of Public Local Laws, Entitled "Anne Arundel County," Sub-title | Prohibited the carrying of a concealed pistol, dirk-knife, Bowie knife, slingshot, billy, razor, brass, iron or other metal knuckles, or any other deadly | Objection to inclusion.<br><br>This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms, and even then, it only regulates *how* they are |

***Duncan v. Bonta***, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|-------------------|--------------|----------|---------------------------|----------------------|
| | | | "Annapolis," to Prevent the Carrying of Concealed Weapons in Said City, § 246 | weapon.  Punishable by a fine of $3-10. | carried. *Bruen*, 142 S.Ct. at 2133. Further, this was not a state law, but a local law. *Bruen* rejected the notion that ordinances from a few cities are persuasive. *Id.* at 2156. Finally, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 104 | 1872 | Nebraska – City of Nebraska | Gilbert B. Colfield, Laws, Ordinances and Rules of Nebraska City, Otoe County, Nebraska, at 36 (1872), Ordinance No. 7, An Ordinance Prohibiting the Carrying of Fire Arms and Concealed Weapons, § 1 | Prohibited the carrying openly or concealed of a musket, rifle, shot gun, pistol, sabre, sword, Bowie knife, dirk, sword cane, billy slungshot, brass or other metallic knuckles, or any other dangerous or deadly weapons. | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms. *Bruen*, 142 S.Ct. at 2133. Further, this was not a state law, but a local law. *Bruen* rejected the notion that ordinances from a few cities are persuasive. *Id.* at 2156. And the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). What's more, the law is an extreme outlier in that it restricts carry of rifles and other long guns; it is insufficient to establish an |

**Duncan v. Bonta**, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | | | American tradition of such regulation. *Id.* at 2133. |
| 105 | 1873 | Alabama | Wade Keyes, The Code of Alabama, 1876, ch. 3, § 4110 (Act of Apr. 8, 1873, p. 130) | Prohibited the concealed carrying of any brass knuckles, slungshots, or "other weapon of like kind or description." Punishable by a fine of $20-200 and imprisonment or term of hard labor not to exceed 6 months. | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms, and even then, it only regulates *how* they are carried. *Bruen*, 142 S.Ct. at 2133. Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 106 | 1873 | Georgia | R. H. Clark, The Code of the State of Georgia (1873) § 4528 | Prohibited the carrying of any dirk, Bowie knife, pistol, or other deadly weapon to a court, election site, precinct, place of worship, or other public gathering site. Punishable by fine of $20-50 or imprisonment for 10-20 days. | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms, and even then, it only regulates *where* they are carried. *Bruen*, 142 S.Ct. at 2133. Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 107 | 1873 | Massachusetts | 1850 Mass. Gen. Law, ch. 194, §§ 1, 2, as codified in Mass. Gen. Stat., ch. 164 (1873) § 10 | Prohibited the carrying of a slungshot, metallic knuckles, bills, or other dangerous weapon if arrested pursuant to a warrant | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It |

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|-------------------|--------------|----------|---------------------------|----------------------|
| | | | | or while committing a crime. Punishable by fine. | regulates only carry of certain arms, and even then, only when participating in illegal conduct. *Bruen*, 142 S.Ct. at 2133. |
| | | | | | Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 108 | 1873 | Massachusetts | 1850 Mass. Gen. Law, ch. 194, §§ 1, 2 as codified in Mass. Gen. Stat., ch. 164 (1873) § 11 | Prohibited manufacturing or selling a slungshot or metallic knuckles. Punishable by fine up to $50 or imprisonment up to 6 months. | Objection to inclusion. |
| | | | | | If the State's claim is that the arms subject to this law are "dangerous and unusual," the law is not "relevantly similar" to CA's ban on magazines in common use for lawful purposes. *Bruen*, 142 S.Ct. at 2133. |
| | | | | | But if relevant, the law was adopted too long after the Founding to be afforded much weight—especially because the law is not consistent with founding-era laws. *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| | | | | | And this law is an outlier insufficient to establish an American tradition of such regulation. *Bruen*, 142 S.Ct. at 2133. |
| 109 | 1873 | Minnesota | The Statutes at Large of the State of Minnesota: Comprising the General Statutes of 1866 as Amended by Subsequent Legislation to the Close of | Prohibited the setting of any spring or trap gun. Punished by imprisonment for at least 6 months or a fine of up to $500 if no injury results; imprisonment for up to 5 years if non-fatal | Objection to inclusion. |
| | | | | | The law is not "relevantly similar" to CA's magazine ban. It does not regulate the possession of any arm. It regulates only how arms are used (i.e., the setting of "trap guns"). And it regulates for completely |

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | the Session of 1873: Together with All Laws of a General Nature in Force, March 7, A.D. 1873 with References to Judicial Decisions of the State of Minnesota, and of Other States Whose Statutes are Similar to Which are Prefixed the Constitution of the United States, the Organic Act, the Act Authorizing a State Government, and the Constitution of the State of Minnesota, at 993 (Vol. 2, 1873), Of Crimes and Their Punishment, Setting Spring Guns Unlawful, § 64-65 | injury results; and imprisonment for 10-15 years if death results. | different reasons than CA's magazine ban (i.e., to prevent unintended discharges). *Bruen*, 142 S.Ct. at 2133. Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 110 | 1873 | Nevada | Bonnifield, The Compiled Laws of the State of Nevada. Embracing Statutes of 1861 to 1873, Inclusive, at 563 (Vol. 1, 1873), Of Crimes and Punishments, §§ 35-36 | Prohibited dueling and killing a person with a rifle, shotgun, pistol, Bowie knife, dirk, small sword, backsword, or other dangerous weapon. | <u>Objection to inclusion.</u> This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It merely bans killing another person in a duel with certain weapons (including common arms). *Bruen*, 142 S.Ct. at 2133. |
| 111 | 1873 | Tennessee | Seymour Dwight Thompson, A Compilation of the Statute Laws of the State of Tennessee, of a General and Permanent | Prohibited selling, loaning, or giving to a minor a pistol, Bowie knife, dirk, Arkansas tooth-pick, hunter's knife, or like dangerous weapon, except a gun for | <u>Objection to inclusion.</u> The law is not "relevantly similar" to CA's magazine ban because it restricted only the transfer of certain arms to *minors*. It did not |

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|-------------------|--------------|----------|--------------------------|----------------------|
| | | | Nature, Compiled on the Basis of the Code of Tennessee, With Notes and References, Including Acts of Session of 1870-1871, at 125 (Vol. 2, 1873), Offences Against Public Policy and Economy, § 4864 | hunting or self defense in traveling.  Punishable by fine of minimum $25 and imprisonment for a term determined by the court. | flatly ban possession by anyone, nor did not ban transfer to adults. And it provides express exceptions for hunting and self-defense. *Bruen*, 142 S.Ct. at 2133.<br><br>Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 112 | 1874 | Alabama | 1874 Ala. L. 41, ch. 1 | Imposed $25 occupational tax on dealers of pistols, Bowie knives, and dirk knives. | Objection to inclusion.<br><br>This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It is only a tax on certain arms. And it only applies to dealers. *Bruen*, 142 S.Ct. at 2133.<br><br>Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 113 | 1874 | Illinois | Harvey Bostwick Hurd, The Revised Statutes of the State of Illinois. A. D. 1874. Comprising the Revised Acts of 1871-72 and 1873-74, Together with All Other General Statutes of the State, in Force on the First Day of July, 1874, at 360 (1874), | Prohibited the carrying a concealed weapon, including a pistol, knife, slungshot, brass, steel, or iron knuckles, or other deadly weapon while disturbing the peace.  Punishable by fine up to $100. | Objection to inclusion.<br><br>This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms, and even then, it only regulates *how* they are carried and only when one is "disturbing the peace." *Bruen*, 142 S.Ct. at 2133.<br><br>Further, the law was adopted too long after the Founding to be afforded much weight |

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB

**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | Disorderly Conduct: Disturbing the Peace, § 56 | | *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 114 | 1874 | New Jersey – City of Jersey City | Ordinances of Jersey City, Passed by the Board of Aldermen since May 1, 1871, under the Act Entitled "An Act to Re-organize the Local Government of Jersey City," Passed March 31, 1871, and the Supplements Thereto, at 41 (1874), An Ordinance to Prevent the Carrying of Loaded or Concealed Weapons within the Limits of Jersey City. The Mayor and Aldermen of Jersey City do ordain as follows: §§ 1-2 | Prohibited the carrying of a concealed slungshot, billy, sandclub or metal knuckles, and any dirk or dagger (not contained as a blade of a pocket-knife), and loaded pistol or other dangerous weapon, including a sword in a cane, or air-gun. punishable by confiscation of the weapon and a fine of up to $20. Exempted policemen of Jersey City. | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms, and even then, it only regulates *how* they are carried. *Bruen*, 142 S.Ct. at 2133. Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 115 | 1874 | Virginia | 1874 Va. L. 239, ch. 239 | Included the value of all "rifles, muskets, and other fire-arms, bowie-knives, dirks, and all weapons of a similar kind" in list of taxable personal property. | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. In fact, it does not regulate conduct of any kind. It merely includes arms as taxable personal property. *Bruen*, 142 S.Ct. at 2133. Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, |

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | | | 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 116 | 1875 | Alabama | 1875-1876 Ala. L. 82, ch. 1 | Imposed $50 occupational tax on dealers of pistols, Bowie knives, and dirk knives. | Objection to inclusion. <br><br> This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It is only a tax on certain arms. And it only applies to dealers. *Bruen*, 142 S.Ct. at 2133. <br><br> Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 117 | 1875 | Alabama | 1875-1876 Ala. L. 46, ch. 2 | Imposed tax rate of 0.75% of the value of any pistols, guns, dirks, and Bowie knives. | Objection to inclusion. <br><br> This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It is only a tax on certain arms. And it only applies to dealers. *Bruen*, 142 S.Ct. at 2133. <br><br> Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 118 | 1875 | Arkansas | Act of Feb. 16, 1875, 1874-75 Ark. Acts 156, § 1 | Prohibited the carrying in public of any "pistol, gun, knife, dirk, bludgeon, or other offensive weapon, with intent to assault | Objection to inclusion. <br><br> This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It |

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | | any person." Punishable by a fine of $25-100. | regulates only carry of certain arms and, even then, only while participating in or intending to engage in illegal activity (i.e., assault). *Bruen*, 142 S.Ct. at 2133. <br><br> Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). <br><br> Finally, the law was held to be unconstitutional in *Wilson v. State*, 33 Ark. 557 (1878). |
| 119 | 1875 | Idaho [Territory] | Crimes and Punishments, in Compiled and Revised Laws of the Territory of Idaho 354 (M. Kelly, Territorial Printer 1875), § 133. | Prohibited the carrying of "any pistol, gun, knife, dirk, bludgeon, or other offensive weapon, with intent to assault any person." Punishable by imprisonment for up to 3 months or a fine up to $100. | Objection to inclusion. <br><br> This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms and, even then, only while participating in or intending to engage in illegal activity (i.e., assault). *Bruen*, 142 S.Ct. at 2133. <br><br> Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). <br><br> Finally, the 19th-century laws of the Western Territories are not "instructive" because they are "most unlikely to reflect 'the origins of and continuing significance of the Second Amendment.'" *Bruen*, 142 S.Ct. at 2154. |

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|-------------------|--------------|----------|--------------------------|----------------------|
| 120 | 1875 | Indiana | 1875 Ind. Acts 62, An Act Defining Certain Misdemeanors, and Prescribing Penalties Therefore, § 1 | Prohibited the drawing or threatening to use a pistol, dirk, knife, slungshot, or any other deadly or dangerous weapon. Punishable by fine of $1-500, and potentially imprisonment up to 6 months. | Objection to inclusion.<br><br>This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only drawing/brandishing or threatening to draw/brandish certain arms. *Bruen*, 142 S.Ct. at 2133.<br><br>Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear"). |
| 121 | 1875 | Michigan | 1875 Mich. Pub. Acts 136, An Act To Prevent The Setting Of Guns And Other Dangerous Devices, § 1 | Prohibited the setting of any spring or trap gun. | Objection to inclusion.<br><br>The law is not "relevantly similar" to CA's magazine ban. It does not regulate the possession of any arm. It regulates only how arms are used (i.e., the setting of "trap guns"). And it regulates for completely different reasons than CA's magazine ban (i.e., to prevent unintended discharges). *Bruen*, 142 S.Ct. at 2133.<br><br>Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 122 | 1876 | Alabama | 1876-77 Ala. Code 882, § 4109 | Prohibited the carrying of a Bowie knife, pistol, or air gun, or any other weapon of "like kind or description," unless | Objection to inclusion.<br><br>This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It |

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|-------------------|--------------|----------|--------------------------|----------------------|
|  |  |  |  | threatened with or having good cause to fear an attack or while traveling or setting out on a journey.  Punishable by a fine of $50-300 and imprisonment or hard labor for no more than 6 months. | regulates only carry of certain arms, and even then, it provides an exception for self-defense. *Bruen*, 142 S.Ct. at 2133. <br><br> Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 123 | 1876 | Colorado | 1876 Colo. Sess. Laws 304, § 154 | Prohibited the carrying with intent to assault another any pistol, gun, knife, dirk, bludgeon, or other offensive weapon. | Objection to inclusion. <br><br> This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms and, even then, only while participating in or intending to engage in illegal activity (i.e., assault). *Bruen*, 142 S.Ct. at 2133. <br><br> Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 124 | 1876 | Georgia | 1876 Ga. L. 112, ch. 128 | Prohibited the transfer of any pistol, dirk, Bowie knife, or sword cane to a minor. | Objection to inclusion. <br><br> The law is not "relevantly similar" to CA's magazine ban because it restricted only the transfer of certain arms to *minors*. It did not flatly ban possession by anyone, nor did not ban transfer to adults. *Bruen*, 142 S.Ct. at 2133. <br><br> Further, the law was adopted too long after the Founding to be afforded much weight |

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|-------------------|--------------|----------|---------------------------|----------------------|
| | | | | | *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 125 | 1876 | Illinois – Village of Hyde Park | Consider H. Willett, Laws and Ordinances Governing the Village of Hyde Park [Illinois] Together with Its Charter and General Laws Affecting Municipal Corporations; Special Ordinances and Charters under Which Corporations Have Vested Rights in the Village. Also, Summary of Decisions of the Supreme Court Relating to Municipal Corporations, Taxation and Assessments, at 64 (1876), Misdemeanors, § 39 | Prohibited the carrying a concealed pistol, revolver, slungshot, knuckles, Bowie knife, dirk knife, dirk, dagger, or any other dangerous or deadly weapon without written permission from the Captain of Police.  Exempted peace officers. | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms, and even then, it only regulates *how* they are carried. *Bruen*, 142 S.Ct. at 2133. Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 126 | 1876 | Wyoming [Territory] | Wyo. Comp. Laws (1876) ch. 35, § 127, as codified in Wyo. Rev. Stat., Crimes (1887), Having possession of offensive weapons, § 1027 | Prohibited the carrying of a pistol, knife, dirk, bludgeon, or other offensive weapon with the intent to assault a person. Punishable by fine up to $500 or imprisonment up to 6 months. | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms and, even then, only while participating in or intending to engage in illegal activity (i.e., assault). *Bruen*, 142 S.Ct. at 2133. Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving |

64

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | | | postenactment history more weight than it can rightly bear."). |
| | | | | | Finally, the 19th-century laws of the Western Territories are not "instructive' because they are "most unlikely to reflect 'the origins of and continuing significance of the Second Amendment.'" *Bruen*, 142 S.Ct. at 2154. |
| 127 | 1877 | Alabama | Wade Keyes, The Code of Alabama, 1876, ch. 6, § 4230 | Prohibited the sale, giving, or lending of any pistol, Bowie knife, or "like knife" to any boy under the age of 18. | Objection to inclusion. <br><br> The law is not "relevantly similar" to CA's magazine ban because it restricted only the transfer of certain arms to *minors*. It did not flatly ban possession by anyone, nor did not ban transfer to adults. *Bruen*, 142 S.Ct. at 2133. <br><br> Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 128 | 1877 | Alabama | Wade Keyes, The Code of Alabama, 1876, ch. 3, § 4109 | Prohibited the concealed carrying of any Bowie knife, or any other knife of like kind or description, pistol, air gun, slungshot, brass knuckles, or other deadly or dangerous weapon, unless the person was threatened with, or had good reason to apprehend, an attack, or "while traveling, or setting out on a journey."  Punishable by fine of $50-300 and | Objection to inclusion. <br><br> This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms, and even then, it only regulates *how* they are carried. And it had exceptions for self-defense and while traveling or on a journey. *Bruen*, 142 S.Ct. at 2133. <br><br> Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, |

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|-------------------|--------------|----------|---------------------------|----------------------|
|  |  |  |  | imprisonment of not more than 6 months. | 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 129 | 1877 | Colorado – Town of Georgetown | Edward O. Wolcott, The Ordinances of Georgetown [Colorado] Passed June 7th, A.D. 1877, at 100, § 9 | Prohibited the concealed carrying of any pistol, Bowie knife, dagger, or other deadly weapon. Punishable by a fine of $5-50. | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms, and even then, it only regulates *how* they are carried. *Bruen*, 142 S.Ct. at 2133. Further, this was not a state law, but a local law. *Bruen* rejected the notion that ordinances from a few cities are persuasive. *Id.* at 2156. Finally, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 130 | 1877 | New Jersey | Mercer Beasley, Revision of the Statutes of New Jersey: Published under the Authority of the Legislature; by Virtue of an Act Approved April 4, 1871, at 304 (1877), An Act Concerning Disorderly Persons, § 2 | Prohibited The carrying of "any pistol, hanger, cutlass, bludgeon, or other offensive weapon, with intent to assault any person." Punishable as a "disorderly person." | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms and, even then, only while participating in or intending to engage in illegal activity (i.e, assault). *Bruen*, 142 S.Ct. at 2133. Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving |

66

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | | | postenactment history more weight than it can rightly bear."). |
| 131 | 1877 | South Dakota [Territory] | S.D. Terr. Pen. Code (1877), § 457 as codified in S.D. Rev. Code, Penal Code (1903), §§ 470-471. | Prohibited the carrying, "whether concealed or not," of any slungshot, and prohibited the concealed carrying of any firearms or sharp or dangerous weapons. | Objection to inclusion.<br><br>This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms. *Bruen*, 142 S.Ct. at 2133.<br><br>Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 132 | 1877 | Utah – City of Provo [Territory] | Chapter 5: Offenses Against the Person, undated, reprinted in The Revised Ordinances Of Provo City, Containing All The Ordinances In Force 105, 106-07 (1877) (Provo, Utah). § 182: | Prohibited carrying a pistol, or other firearm, slungshot, false knuckles, Bowie knife, dagger or any other "dangerous or deadly weapon." Punishable by fine up to $25. | Objection to inclusion.<br><br>This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms. *Bruen*, 142 S.Ct. at 2133.<br><br>Further, this was not a state law, but a local law. *Bruen* rejected the notion that ordinances from a few cities are persuasive. *Id.* at 2156.<br><br>Finally, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|------------------|--------------|----------|-------------------------|---------------------|
| 133 | 1878 | Alabama – City of Uniontown | 1878 Ala. L. 437, ch. 314 | Authorized Uniontown to license dealers of pistols, Bowie knives, and dirk knives. | Objection to inclusion.<br><br>This law is not "relevantly similar" to CA's magazine ban. It does not ban possession of any arm or any conduct at all. It instead purports to authorize a local jurisdiction to adopt a law. And the State does not indicate whether the town actually passed that law. *Bruen*, 142 S.Ct. at 2133.<br><br>Even if the town did pass such a law, it would not be "relevantly similar" because it would regulate only carry of certain arms. |
| 134 | 1878 | Mississippi | 1878 Miss. Laws 175, An Act to Prevent the Carrying of Concealed Weapons and for Other Purposes, § 1 | Prohibited the carrying of a concealed Bowie knife, pistol, brass knuckles, slungshot or other deadly weapon. Excepted travels other than "a tramp." Punishable by fine of $5-100. | Objection to inclusion.<br><br>This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms, and even then, it only regulates *how* they are carried. And it provided an exception for travelling. *Bruen*, 142 S.Ct. at 2133.<br><br>Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 135 | 1879 | Alabama – City of Montgomery | J. M. Falkner, The Code of Ordinances of the City Council of Montgomery [Alabama] (1879), § 428 | Prohibited carrying of a concealed Bowie knife, pistol, air gun, slungshot, brass knuckles, or other deadly or dangerous weapon. Punishable by a fine of $1-100. | Objection to inclusion.<br><br>This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms, and even then, it only regulates *how* they are |

**ER_508**

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | | | carried. *Bruen*, 142 S.Ct. at 2133. |
| | | | | | Further, this was not a state law, but a local law. *Bruen* rejected the notion that ordinances from a few cities are persuasive. *Id.* at 2156. |
| | | | | | Finally., the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 136 | 1879 | Idaho – City of Boise [Territory] | Charter and Revised Ordinances of Boise City, Idaho. In Effect April 12, 1894, at 118-19 (1894), Carrying Concealed Weapons, § 36 | Prohibited the carrying a concealed Bowie knife, dirk knife, pistol or sword in cane, slungshot, metallic knuckles, or other dangerous or deadly weapon, unless traveling or setting out on a journey. Punishable by fine up to $25 and/or imprisonment up to 20 days. | Objection to inclusion. <br><br> This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms, and even then, it only regulates *how* they are carried. *Bruen*, 142 S.Ct. at 2133. <br><br> Further, this was not a state law, but a local law. *Bruen* rejected the notion that ordinances from a few cities are persuasive. *Id.* at 2156. <br><br> And the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). <br><br> Finally, the 19th-century laws of the Western Territories are not "instructive" because they are "most unlikely to reflect 'the origins of |

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | | | and continuing significance of the Second Amendment.'" *Bruen*, 142 S.Ct. at 2154. |
| 137 | 1879 | Louisiana | La. Const. of 1879, art. III | Provided the right to bear arms, but authorizes the passage of laws restricting the carrying of concealed weapons. | No objection to inclusion. <br><br> To the extent that the law recognizes the individual right to bear arms, it is potentially relevant to this Court's analysis. <br><br> But providing authority to regulate carrying of concealed weapons is not "relevantly similar" to CA's magazine ban. It does not ban the possession, manufacture, or transfer of any arms. It regulates only the carry of arms and, even then, it only regulates *how* they are carried. *Bruen*, 142 S.Ct. at 2133. |
| 138 | 1879 | Montana [Territory] | 1879 Mont. Laws 359, Offences against the Lives and Persons of Individuals, ch. 4, § 23 | Prohibited dueling and killing a person involved with a rifle, shot-gun, pistol, Bowie knife, dirk, small-sword, back-sword, or other dangerous weapon. Punishable by death by hanging. | Objection to inclusion. <br><br> This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It merely bans killing another person in a duel with certain weapons (including common arms). *Bruen*, 142 S.Ct. at 2133. |
| 139 | 1879 | North Carolina | North Carolina: N.C. Sess. Laws (1879), ch. 127, as codified in North Carolina Code, Crim. Code, ch. 25 (1883) § 1005, Concealed weapons, the carrying or unlawfully, a misdemeanor | Prohibited the concealed carrying of any pistol, Bowie knife, dirk, dagger, slungshot, loaded case, metal knuckles, razor, or other deadly weapon. Exemption for carrying on the owner's premises. Punishable by fine or imprisonment at the discretion of the court. | Objection to inclusion. <br><br> This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms, and even then, it only regulates *how* they are carried. And it provides an express exemption for carry within the home. *Bruen*, 142 S.Ct. at 2133. <br><br> Further, the law was adopted too long after the Founding to be afforded much weight |

**Duncan v. Bonta**, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | | | *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 140 | 1880 | Ohio | Michael Augustus Daugherty, The Revised Statutes and Other Acts of a General Nature of the State of Ohio: In Force January 1, 1880, at 1633 (Vol. 2, 1879), Offences Against Public Peace, § 6892 | Prohibited the concealed carrying of any pistol, Bowie knife, dirk, or other dangerous weapon.  Punishable by a fine of up to $200 or imprisonment for up to 30 days for the first offense, and a fine of up to $500 or imprisonment for up to 3 months for the second offense. | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms, and even then, it only regulates *how* they are carried. *Bruen*, 142 S.Ct. at 2133. Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 141 | 1880 | South Carolina | 1880 S.C. Acts 448, § 1, as codified in S.C. Rev. Stat. (1894), § 129 | Prohibited the carrying of a concealed pistol, dirk, dagger, slungshot, metal knuckles, razor, or other deadly weapon. Punishable by fine up to $200 and/or imprisonment up to 1 year. | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms, and even then, it only regulates *how* they are carried. *Bruen*, 142 S.Ct. at 2133. Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 142 | 1881 | Alabama | 1880-1881 Ala. L. 38-39, ch. 44 | Prohibited the concealed carrying of any Bowie knife, or | Objection to inclusion. |

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | | any other knife of like kind or description, pistol, or firearm of "any other kind or description," or air gun.  Punishable by fine of $50-300 and imprisonment of not more than 6 months.  Further provided that fines collected under the statute would be monetary and not in-kind payments. | This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms, and even then, it only regulates *how* they are carried. *Bruen*, 142 S.Ct. at 2133. <br><br> Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 143 | 1881 | Arkansas | 1881 Ark. Acts 191, ch. 96, § 1-2 | Prohibited the carrying of any dirk, Bowie knife, sword, spear cane, metal knuckles, razor, or any pistol (except pistols that are used in the Army or Navy if carried openly in the hand). | Objection to inclusion. <br><br> This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms. *Bruen*, 142 S.Ct. at 2133. <br><br> Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 144 | 1881 | Colorado | Colo. Rev. Stat 1774, § 248 (1881) | Prohibited the concealed carrying of any firearms, any pistol, revolver, Bowie knife, dagger, slingshot, brass knuckles, or other deadly weapon, unless authorized by chief of police. | Objection to inclusion. <br><br> This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms, and even then, it only regulates *how* they are carried. *Bruen*, 142 S.Ct. at 2133. |

**Duncan v. Bonta**, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | | | Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 145 | 1881 | Delaware | 1881 Del. Laws 987, An Act Providing for the Punishment of Persons Carrying Concealed Deadly Weapons, ch. 548, § 1 | Prohibited the carrying of concealed deadly weapons or selling deadly weapons other than an ordinary pocket knife to minors.  Punishable by a fine of $25-200 or imprisonment for 10-30 days. | Objection to inclusion. <br><br> The law's transfer restriction is not "relevantly similar" to CA's magazine ban because it restricted only the transfer of certain arms (including common arms) to *minors*. It did not flatly ban possession by anyone, nor did not ban transfer to adults. *Bruen*, 142 S.Ct. at 2133. <br><br> The restriction on concealed carry is not "relevantly similar" either. It does not ban the possession, transfer, or manufacture of any arm. It regulates only carry of certain arms and, even then, it only regulates *how* they are carried. <br><br> Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 146 | 1881 | Illinois | Ill. Act of Apr. 16, 1881, as codified in Ill. Stat. Ann., Crim. Code 73 (1885), ch. 38, Possession or sale forbidden, § 1 | Prohibited the possession, selling, loaning, or hiring for barter of a slungshot or metallic knuckles or other deadly weapon.  Punishable as a misdemeanor. | Objection to inclusion. <br><br> If the State's claim is that the arms subject to this law are "dangerous and unusual," the law is not "relevantly similar" to CA's ban on magazines in common use for lawful purposes. *Bruen*, 142 S.Ct. at 2133. |

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | | | But if relevant, the law was adopted too long after the Founding to be afforded much weight—especially because the law is not consistent with founding-era laws. *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear.").<br><br>And this law is an outlier insufficient to establish an American tradition of such regulation. *Bruen*, 142 S.Ct. at 2133. |
| 147 | 1881 | Illinois | Harvey Bostwick Hurd, Late Commissioner, The Revised Statutes of the State of Illinois. 1882. Comprising the "Revised Statutes of 1874," and All Amendments Thereto, Together with the General Acts of 1875, 1877, 1879, 1881 and 1882, Being All the General Statutes of the State, in Force on the First Day of December, 1882, at 375 (1882), Deadly Weapons: Selling or Giving to Minor, § 54b. | Prohibited selling, giving, loaning, hiring for barter any minor a pistol, revolver, derringer, Bowie knife, dirk or other deadly weapon. Punishable by fine of $25-200. | Objection to inclusion.<br><br>The law is not "relevantly similar" to CA's magazine ban because it restricted only the transfer of certain arms (including common arms) to *minors*. It did not flatly ban possession by anyone, nor did not ban transfer to adults. *Bruen*, 142 S.Ct. at 2133.<br><br>Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 148 | 1881 | Indiana | The Revised Statutes of Indiana: Containing, Also, the United States and Indiana Constitutions and an Appendix of Historical | Prohibited maliciously or mischievously shooting a gun, rifle, pistol, or other missile or weapon, or throwing a stone, stick, club, or other substance at a vehicle. Punishable by | Objection to inclusion.<br><br>This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It merely bans shooting or throwing certain projectiles at vehicles. And it regulates for |

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | Documents. Vol. 1, at 366 (1881), Crimes, § 1957 | imprisonment for 30 days to 1 year and a fine of $10-100. | very different reasons (i.e., vehicle accident prevention). *Bruen*, 142 S.Ct. at 2133. <br><br> Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 149 | 1881 | Nevada | David E. Baily, The General Statutes of the State of Nevada. In Force. From 1861 to 1885, Inclusive. With Citations of the Decisions of the Supreme Court Relating Thereto, at 1077 (1885), An Act to prohibit the carrying of concealed weapons by minors, § 1 | Prohibited a minor from carrying a concealed dirk, pistol, sword in case, slungshot, or other dangerous or deadly weapon. Punishable by fine of $20-200 and/or imprisonment of 30 days to 6 months. | Objection to inclusion. <br><br> This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It merely bans shooting or throwing certain projectiles at vehicles. And it regulates for very different reasons (i.e., vehicle accident prevention). *Bruen*, 142 S.Ct. at 2133. <br><br> Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 150 | 1881 | New York | George S. Diossy, The Statute Law of the State of New York: Comprising the Revised Statutes and All Other Laws of General Interest, in Force January 1, 1881, Arranged Alphabetically According to Subjects, at 321 (Vol. 1, | Prohibited using, attempting to use, or concealing a slungshot, billy, sandclub or metal knuckles, and any dirk. Punishable by imprisonment for up to 1 year and/or a fine up to $500. | Objection to inclusion. <br><br> If the State's claim is that the arms subject to this law are "dangerous and unusual," the law is not "relevantly similar" to CA's ban on magazines in common use for lawful purposes. *Bruen*, 142 S.Ct. at 2133. <br><br> But if relevant, the law was adopted too long after the Founding to be afforded much |

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | 1881), Offenses Against Public Decency; Malicious Mischief, and Other Crimes not Before Enumerated, Concealed Weapons, § 9 | | weight—especially because the law is not consistent with founding-era laws. *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). <br><br> And this law is an outlier insufficient to establish an American tradition of such regulation. *Bruen*, 142 S.Ct. at 2133. |
| 151 | 1881 | Tennessee – City of Nashville | William King McAlister Jr., Ordinances of the City of Nashville, to Which are Prefixed the State Laws Chartering and Relating to the City, with an Appendix, at 340-41 (1881), Ordinances of the City of Nashville, Carrying Pistols, Bowie-Knives, Etc., § 1 | Prohibited the carrying of pistol, Bowie knife, dirk, slungshot, brass knuckles, or other deadly weapon. Punishable by fine of $10-50 for a first offense and $50 for subsequent offenses. | Objection to inclusion. <br><br> This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms. *Bruen*, 142 S.Ct. at 2133. <br><br> Further, this was not a state law, but a local law. *Bruen* rejected the notion that ordinances from a few cities are persuasive. *Id.* at 2156. <br><br> Finally, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 152 | 1881 | Washington [Territory] | 1881 Wash. Code 181, Criminal Procedure, Offenses Against Public Policy, ch. 73, § 929 | Prohibited the carrying of "any concealed weapon." Punishable by fine up to $100 or imprisonment up to 30 days. | Objection to inclusion. <br><br> This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms, and even then, it only regulates *how* they are |

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|-------------------|--------------|----------|---------------------------|----------------------|
| | | | | | carried. *Bruen*, 142 S.Ct. at 2133. Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 153 | 1881 | Washington – City of New Tacoma [Territory] | 1881 Wash. Sess. Laws 76, An Act to Confer a City Govt. on New Tacoma, ch. 6, § 34, pt. 15 | Authorized New Tacoma to regulate transporting, storing, or selling gunpowder, giant powder, dynamite, nitroglycerine, or other combustibles without a license, as well as the carrying concealed deadly weapons, and the use of guns, pistols, firearms, firecrackers. | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not ban possession of any arm or any conduct at all. It instead purports to authorize a local jurisdiction to adopt a law. And the State does not indicate whether the town actually passed that law. *Bruen*, 142 S.Ct. at 2133. Even if the town did pass such a law, it would not be "relevantly similar" to CA's magazine ban. It regulates for completely different reasons (i.e., prevention of fires and explosions) than CA's magazine ban. *Bruen*, 142 S.Ct. at 2133. |
| 154 | 1881 | Washington [Territory] | William Lair Hill, Ballinger's Annotated Codes and Statutes of Washington, Showing All Statutes in Force, Including the Session Laws of 1897, at 1956 (Vol. 2, 1897) | Prohibited exhibiting a dangerous weapon in a manner likely to cause terror. Punishable by fine up to $25. | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only exhibiting/brandishing of arms in a terrorizing manner. *Bruen*, 142 S.Ct. at 2133. Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, |

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | | | 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 155 | 1882 | Georgia | 1882-83 Gal. L. 48-49, ch. 94 | Prohibited the concealed carrying of any "pistol, dirk, sword in a cane, spear, Bowie-knife, or any other kind of knives manufactured and sold for the purpose of offense and defense." | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms, and even then, it only regulates *how* they are carried. *Bruen*, 142 S.Ct. at 2133. Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 156 | 1882 | Georgia | 1882-83 Ga. L. 37, ch. 18 | Imposed $25 occupational tax on dealers of pistols, revolvers, dirks, or Bowie knives. | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It is only a tax on certain arms. And it only applies to dealers. *Bruen*, 142 S.Ct. at 2133. Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 157 | 1882 | Iowa – City of Sioux City | S. J. Quincy, Revised Ordinances of the City of Sioux City, Iowa, at 62 (1882), Ordinances of the | Prohibited the carrying a concealed pistol, revolver, slungshot, cross-knuckles, knuckles of lead, brass or other | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, |

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | City of Sioux City, Iowa, § 4. | metal, or any Bowie knife, razor, billy, dirk, dirk knife or Bowie knife, or other dangerous weapon. | transfer, or manufacture of any arm. It regulates only carry of certain arms, and even then, it only regulates *how* they are carried. *Bruen*, 142 S.Ct. at 2133. Further, this was not a state law, but a local law. *Bruen* rejected the notion that ordinances from a few cities are persuasive. *Id.* at 2156. Finally, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 158 | 1882 | West Virginia | 1882 W. Va. Acts 421-22; W. Va. Code, ch. 148, § 7 | Prohibited the carrying of a pistol, dirk, Bowie knife, razor, slungshot, billy, metallic or other false knuckles, or any other dangerous or deadly weapon. Also prohibited selling any such weapon to a minor.  Punishable by fine of $25-200 and imprisonment of 1-12 months. | Objection to inclusion. The law's transfer restriction is not "relevantly similar" to CA's magazine ban. It restricted only the transfer of arms (including common arms) to *minors*. It did not flatly ban possession by anyone, nor did not ban transfer to adults. *Bruen*, 142 S.Ct. at 2133. The restriction on carry is not "relevantly similar" either. It does not ban the possession, transfer, or manufacture of any arm. It regulates only carry of certain arms. *Id.* Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| 159 | 1883 | Illinois – City of Danville | Revised Ordinances of the City of Danville [Illinois], at 66 (1883), Ordinances of the City of Danville. Concealed Weapons, § 22. | Prohibited the carrying of a concealed pistol, revolver, derringer, Bowie knife, dirk, slungshot, metallic knuckles, or a razor, as a weapon, or any other deadly weapon. Also prohibited displaying the weapon in a threatening or boisterous manner. Punishable by fine of $1-100 and forfeiting the weapon, if ordered by the magistrate. | Objection to inclusion. This law's carry restriction is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms, and even then, it only regulates *how* they are carried. *Bruen*, 142 S.Ct. at 2133. The law's restriction on displaying/brandishing arms is not "relevantly similar" either. It does not ban possession, transfer, or manufacture of any arm. It regulates only displaying/brandishing of arms in a threatening or boisterous manner. *Bruen*, 142 S.Ct. at 2133. Further, this was not a state law, but a local law. *Bruen* rejected the notion that ordinances from a few cities are persuasive. *Id.* at 2156. Finally, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 160 | 1883 | Kansas | 1883 Kan. Sess. Laws 159, An Act to Prevent Selling, Trading Or Giving Deadly Weapons or Toy Pistols to Minors, and to Provide Punishment Therefor, §§ 1-2 | Prohibited the selling, trading, giving, or loaning of a pistol, revolver, or toy pistol, dirk, Bowie knife, brass knuckles, slungshot, or other dangerous weapons to any minor, or to any person of notoriously unsound mind. Also prohibited the | Objection to inclusion. The law is not "relevantly similar" to CA's magazine ban because it restricted only the transfer of certain arms (including common arms) to *minors* and those of "notoriously unsound mind." It did not flatly ban possession of arms by or transfer of arms to law-abiding adults of "sound mind." *Bruen*, |

**_Duncan v. Bonta_, No. 3:17-cv-01017-BEN-JLB**
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | | possession of such weapons by any minor.  Punishable by fine of $5-100.  Also prohibited a minor from possessing a pistol, revolver, toy pistol by which cartridges may be exploded, dirk, Bowie knife, brass knuckles, slungshot, or other dangerous weapon.  Punishable by fine of $1-10. | 142 S.Ct. at 2133.  Further, the law was adopted too long after the Founding to be afforded much weight _Heller_, 554 U.S. at 634-635; _see also Bruen_, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 161 | 1883 | Missouri | 1883 Mo. Laws 76, An Act to Amend Section 1274, Article 2, Chapter 24 of the Revised Statutes of Missouri, Entitled "Of Crimes And Criminal Procedure" § 1274 | Prohibited the carrying of a concealed fire arms, Bowie knife, dirk, dagger, slungshot, or other deadly weapon to a church, school, election site, or other public setting or carrying in a threatening manner or while intoxicated.  Punishable by fine of $25-200 and/or imprisonment up to 6 months. | Objection to inclusion.  This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms, and even then, it only regulates _how_ and _where_ they are carried. _Bruen_, 142 S.Ct. at 2133.  Further, the law was adopted too long after the Founding to be afforded much weight _Heller_, 554 U.S. at 634-635; _see also Bruen_, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 162 | 1883 | Washington – City of Snohomish [Territory] | 1883 Wash. Sess. Laws 302, An Act to Incorporate the City of Snohomish, ch. 6, § 29, pt. 15 | Authorized City of Snohomish to regulate and prohibit carrying concealed deadly weapons and to prohibit using guns, pistols, firearms, firecrackers, bombs, and explosives. | Objection to inclusion.  This law is not "relevantly similar" to CA's magazine ban. It does not ban possession of any arm or any conduct at all. It instead purports to authorize a local jurisdiction to adopt a law. And the State does not indicate whether the town actually passed that law. _Bruen_, 142 S.Ct. at 2133. |

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|-------------------|--------------|----------|---------------------------|----------------------|
| | | | | | Even if the town did pass such a law, it would not be "relevantly similar" because it would regulate only carry of certain arms. |
| 163 | 1883 | Wisconsin – City of Oshkosh | 1883 Wis. Sess. Laws 713, An Act to Revise, consolidate And Amend The Charter Of The City Of Oshkosh, The Act Incorporating The City, And The Several Acts Amendatory Thereof, ch. 6, § 3, pt. 56 | Prohibited the carrying of a concealed pistol or colt, or slungshot, or cross knuckles or knuckles of lead, brass or other metal or Bowie knife, dirk knife, or dirk or dagger, or any other dangerous or deadly weapon. Punishable by confiscation of the weapon. | Objection to inclusion.<br><br>This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms, and even then, it only regulates *how* they are carried. *Bruen*, 142 S.Ct. at 2133.<br><br>Further, this was not a state law, but a local law. *Bruen* rejected the notion that ordinances from a few cities are persuasive. *Id.* at 2156.<br><br>Finally, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 164 | 1884 | Georgia | 1884-85 Ga. L. 23, ch. 52 | Imposed $100 occupational tax on dealers of pistols, revolvers, dirks, or Bowie knives. | Objection to inclusion.<br><br>This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It is only a tax on dealers of certain arms. *Bruen*, 142 S.Ct. at 2133.<br><br>Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |

**Duncan v. Bonta**, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| 165 | 1884 | Maine | The Revised Statutes of the State of Maine, Passed August 29, 1883, and Taking Effect January 1, 1884, at 928, (1884), Prevention of Crimes, § 10 | Prohibited the carrying of a dirk, dagger, sword, pistol, or other offensive and dangerous weapon without reasonable cause to fear an assault. | Objection to inclusion.<br><br>This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms, and even then, provides an exception to the law for self-defense. *Bruen*, 142 S.Ct. at 2133.<br><br>Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 166 | 1884 | Minnesota – City of Saint Paul | W. P. Murray, The Municipal Code of Saint Paul: Comprising the Laws of the State of Minnesota Relating to the City of Saint Paul, and the Ordinances of the Common Council; Revised to December 1, 1884, at 289 (1884), Concealed Weapons – License, § 1 | Prohibited the carrying of a concealed pistol or pistols, dirk, dagger, sword, slungshot, cross-knuckles, or knuckles of lead, brass or other metal, Bowie knife, dirk knife or razor, or any other dangerous or deadly weapon. Punishable by seizure of the weapon. | Objection to inclusion.<br><br>This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms, and even then, it only regulates *how* they are carried. *Bruen*, 142 S.Ct. at 2133.<br><br>Further, this was not a state law, but a local law. *Bruen* rejected the notion that ordinances from a few cities are persuasive. *Id.* at 2156.<br><br>Finally, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |

**Duncan v. Bonta**, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| 167 | 1884 | Tennessee | Tenn. Pub. Acts (1879), ch. 186, as codified in Tenn. Code (1884) | Prohibited the carrying, "publicly or privately," of any dirk, razor, sword cane, loaded cane, slungshot, brass knuckles, Spanish stiletto, belt or pocket pistol, revolver, or any kind of pistol. | Objection to inclusion.<br><br>This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms. *Bruen*, 142 S.Ct. at 2133.<br><br>Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 168 | 1884 | Vermont | 1884 Vt. Acts & Resolves 74, An Act Relating To Traps, § 1 | Prohibited the setting of any spring gun trap. Punishable by a fine of $50-500 and liability for twice the amount of any damage resulting from the trap. | Objection to inclusion.<br><br>The law is not "relevantly similar" to CA's magazine ban. It does not regulate the possession of any arm. It regulates only how arms are used (i.e., the setting of "trap guns"). And it regulates for completely different reasons than CA's magazine ban (i.e., to prevent unintended discharges). *Bruen*, 142 S.Ct. at 2133.<br><br>Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 169 | 1884 | Wyoming [Territory] | 1884 Wyo. Sess. Laws, ch. 67, § 1, as codified in Wyo. Rev. Stat., Crimes (1887): Exhibiting deadly | Prohibited exhibiting in a threatening manner a fire-arm, Bowie knife, dirk, dagger, slungshot or other deadly weapon. Punishable by fine of | Objection to inclusion.<br><br>This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only exhibiting/brandishing of arms |

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|-------------------|--------------|----------|--------------------------|----------------------|
| | | | weapon in angry manner. § 983 | $10-100 or imprisonment up to 6 months. | in a threatening manner. *Bruen*, 142 S.Ct. at 2133. Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). Finally, the 19th-century laws of the Western Territories are not "instructive" because they are "most unlikely to reflect 'the origins of and continuing significance of the Second Amendment.'" *Bruen*, 142 S.Ct. at 2154. |
| 170 | 1885 | Montana [Territory] | 1885 Mont. Laws 74, Deadly Weapons, An Act to Amend § 62 of Chapter IV of the Fourth Division of the Revised Statutes, § 62-63 | Prohibited possessing, carrying, or purchasing a dirk, dirk-knife, sword, sword cane, pistol, gun, or other deadly weapon, and from using the weapon in a threatening manner or in a fight. Punishable by fine of $10-100 and/or imprisonment for 1-3 months. | No objection to inclusion. To the extent the law purports to ban the possession or transfer of arms in common use for lawful purposes, it may be relevant to this Court's analysis. But if relevant, the law was adopted too long after the Founding to be afforded much weight—especially because the law is not consistent with founding-era laws. *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). And this law is an outlier insufficient to establish an American tradition of such regulation. *Bruen*, 142 S.Ct. at 2133. |
| 171 | 1885 | New York | George R. Donnan, Annotated Code of Criminal Procedure and | Prohibited using or attempting to use, carrying, concealing, or possessing a slungshot, billy, | Objection to inclusion. |

***Duncan v. Bonta***, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|------|------|------|------|------|
| | | | Penal Code of the State of New York as Amended 1882-85, at 172 (1885), Carrying, Using, Etc., Certain Weapons, § 410 | sandclub or metal knuckles, or a dagger, dirk or dangerous knife. Punishable as a felony, and as a misdemeanor if a minor. | If the State's claim is that the arms subject to this law are "dangerous and unusual," the law is not "relevantly similar" to CA's ban on magazines in common use for lawful purposes. *Bruen*, 142 S.Ct. at 2133.<br><br>But if relevant, the law was adopted too long after the Founding to be afforded much weight—especially because the law is not consistent with founding-era laws. *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear.").<br><br>And this law is an outlier insufficient to establish an American tradition of such regulation. *Bruen*, 142 S.Ct. at 2133. |
| 172 | 1885 | New York – City of Syracuse | Charter and Ordinances of the City of Syracuse: Together with the Rules of the Common Council, the Rules and Regulations of the Police and Fire Departments, and the Civil Service Regulations, at 215 (1885), [Offenses Against the Public Peace and Quiet,] § 7 | Prohibited the carrying or using with the intent to do bodily harm a dirk, Bowie knife, sword or spear cane, pistol, revolver, slungshot, jimmy, brass knuckles, or other deadly or unlawful weapon.  Punishable by a fine of $25-100 and/or imprisonment for 30 days to 3 months. | Objection to inclusion.<br><br>If the State's claim is that the arms subject to this law are "dangerous and unusual," the law is not "relevantly similar" to CA's ban on magazines in common use for lawful purposes. *Bruen*, 142 S.Ct. at 2133.<br><br>But if relevant, the law was adopted too long after the Founding to be afforded much weight—especially because the law is not consistent with founding-era laws. *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | | | And this law is an outlier insufficient to establish an American tradition of such regulation. *Bruen*, 142 S.Ct. at 2133. |
| 173 | 1885 | Oregon | 1885 Or. Laws 33, An Act to Prevent Persons from Carrying Concealed Weapons and to Provide for the Punishment of the Same, §§ 1-2 | Prohibited the concealed carrying of any revolver, pistol, or other firearm, or any knife (other than an "ordinary pocket knife"), or any dirk, dagger, slungshot, metal knuckles, or any instrument that could cause injury.  Punishable by a fine of $10-200 or imprisonment for 5-100 days. | Objection to inclusion.  This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms, and even then, it only regulates *how* they are carried. *Bruen*, 142 S.Ct. at 2133.  Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 174 | 1886 | Colorado – City of Denver | Isham White, The Laws and Ordinances of the City of Denver, Colorado, at 369, § 10 (1886) | Prohibited the carrying of any slungshot, colt, or metal knuckles while engaged in any breach of the peace.  Punishable by a fine of $25-300. | Objection to inclusion.  This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms and, even then, only when one is engaged in a breach of the peace. *Bruen*, 142 S.Ct. at 2133.  Further, this was not a state law, but a local law. *Bruen* rejected the notion that ordinances from a few cities are persuasive. *Id.* at 2156.  Finally, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving |

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|-------------------|--------------|----------|---------------------------|----------------------|
| | | | | | postenactment history more weight than it can rightly bear."). |
| 175 | 1886 | Georgia | 1886 Ga. L. 17, ch. 54 | Imposed $100 occupational tax on dealers of pistols, revolvers, dirks, Bowie knives, and "pistol or revolver cartridges." | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It is only a tax on dealers of certain arms. *Bruen*, 142 S.Ct. at 2133. Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 176 | 1886 | Maryland – County of Calvert | 1886 Md. Laws 315, An Act to Prevent the Carrying of Guns, Pistols, Dirk-knives, Razors, Billies or Bludgeons by any Person in Calvert County, on the Days of Election in said County, Within One Mile of the Polls § 1 | Prohibited the carrying of a gun, pistol, dirk, dirk-knife, razor, billy or bludgeon on an election day. Punishable by a fine of $10-50. | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms, and even then, it only applies on election day. *Bruen*, 142 S.Ct. at 2133. Further, this was not a state law, but a local law. *Bruen* rejected the notion that ordinances from a few cities are persuasive. *Id.* at 2156. Finally, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |

**Duncan v. Bonta**, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|-------------------|--------------|----------|---------------------------|----------------------|
| 177 | 1886 | Maryland – County of Calvert | John Prentiss Poe, The Maryland Code. Public Local Laws, Adopted by the General Assembly of Maryland March 14, 1888. Including also the Acts of the Session of 1888 Incorporated Therein, and Prefaced with the Constitution of the State, at 468-69 (Vol. 1, 1888), Concealed Weapons, § 30 | Prohibited the carrying of a concealed pistol, dirk knife, Bowie knife, slungshot, billy, sandclub, metal knuckles, razor, or any other dangerous or deadly weapon. Punishable by fine of up to $500 or imprisonment of up to 6 months. | Objection to inclusion.<br><br>This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms, and even then, it only regulates *how* they are carried. *Bruen*, 142 S.Ct. at 2133.<br><br>Further, this was not a state law, but a local law. *Bruen* rejected the notion that ordinances from a few cities are persuasive. *Id.* at 2156.<br><br>Finally, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 178 | 1886 | Maryland | 1886 Md. Laws 315, An Act to Prevent the Carrying of Guns, Pistols, Dirk-knives, Razors, Billies or Bludgeons by any Person in Calvert County, on the Days of Election in said County, Within One Mile of the Polls § 1 | Prohibited the carrying of a gun, pistol, dirk, dirk-knife, razor, billy or bludgeon on an election day within 300 yards of the polls. Punishable by fine of $10-50. | Objection to inclusion.<br><br>This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms, and even then, it only applies on election day and w/in 300 yards of the polls. *Bruen*, 142 S.Ct. at 2133.<br><br>Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |

**Duncan v. Bonta**, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|------|-----|-----|-----|-----|
| 179 | 1887 | Alabama | 1886 Ala. L. 36, ch. 4 | Imposed $300 occupational tax on dealers of pistols, pistol cartridges, Bowie knives, and dirk knives. | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It is only a tax on dealers of certain arms. *Bruen*, 142 S.Ct. at 2133. Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 180 | 1887 | Iowa – City of Council Bluffs | Geoffrey Andrew Holmes, Compiled Ordinances of the City of Council Bluffs, and Containing the Statutes Applicable to Cities of the First-Class, Organized under the Laws of Iowa, at 206-07 (1887), Carrying Concealed Weapons Prohibited, § 105 | Prohibited the carrying of a concealed pistol or firearms, slungshot, brass knuckles, or knuckles of lead, brass or other metal or material , or any sandbag, air guns of any description, dagger, Bowie knife, or instrument for cutting, stabbing or striking, or other dangerous or deadly weapon, instrument or device. | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms, and even then, it only regulates *how* they are carried. *Bruen*, 142 S.Ct. at 2133. Further, this was not a state law, but a local law. *Bruen* rejected the notion that ordinances from a few cities are persuasive. *Id.* at 2156. Finally, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 181 | 1887 | Kansas – City of Independence | O. P. Ergenbright, Revised Ordinances of the City of Independence, Kansas: | Prohibited using a pistol or other weapon in a hostile or threatening manner.  Also | Objection to inclusion. This law is not "relevantly similar" to CA's |

**_Duncan v. Bonta_, No. 3:17-cv-01017-BEN-JLB**
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | Together with the Amended Laws Governing Cities of the Second Class and Standing Rules of the City Council, at 162 (1887), Weapons, § 27 | prohibited carrying a concealed pistol, dirk, Bowie knife, revolver, slungshot, billy, brass, lead, or iron knuckles, or any deadly weapon.  Punishable by fine of $5-100. | magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only the use of certain arms in a hostile or threatening manner and the manner of carrying certain arms. _Bruen_, 142 S.Ct. at 2133.<br><br>Further, this was not a state law, but a local law. _Bruen_ rejected the notion that ordinances from a few cities are persuasive. _Id._ at 2156.<br><br>Finally, the law was adopted too long after the Founding to be afforded much weight _Heller_, 554 U.S. at 634-635; _see also Bruen_, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 182 | 1887 | Michigan | 1887 Mich. Pub. Acts 144, An Act to Prevent The Carrying Of Concealed Weapons, And To Provide Punishment Therefore, § 1 | Prohibited the carrying of a concealed dirk, dagger, sword, pistol, air gun, stiletto, metallic knuckles, pocket-billy, sandbag, skull cracker, slungshot, razor or other offensive and dangerous weapon or instrument. | Objection to inclusion.<br><br>This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms, and even then, it only regulates _how_ they are carried. _Bruen_, 142 S.Ct. at 2133.<br><br>Further, the law was adopted too long after the Founding to be afforded much weight _Heller_, 554 U.S. at 634-635; _see also Bruen_, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 183 | 1887 | Montana [Territory] | 1887 Mont. Laws 549, Criminal Laws, § 174 | Prohibited the carrying of a any pistol, gun, knife, dirk-knife, bludgeon, or other offensive | Objection to inclusion.<br><br>This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, |

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | | weapon with the intent to assault a person.  Punishable by fine up to $100 or imprisonment up to 3 months. | transfer, or manufacture of any arm. It regulates only carry of certain arms and, even then, only while participating in or intending to engage in illegal activity (i.e., assault). *Bruen*, 142 S.Ct. at 2133.  Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 184 | 1887 | New Mexico [Territory] | An Act to Prohibit the Unlawful Carrying and Use of Deadly Weapons, Feb. 18, 1887, reprinted in Acts of the Legislative Assembly of the Territory of New Mexico, Twenty-Seventh Session 55, 58 (1887) | Defined "deadly weapons" as including pistols, whether the same be a revolved, repeater, derringer, or any kind or class of pistol or gun; any and all kinds of daggers, Bowie knives, poniards, butcher knives, dirk knives, and all such weapons with which dangerous cuts can be given, or with which dangerous thrusts can be inflicted, including sword canes, and any kind of sharp pointed canes; as also slungshots, bludgeons or any other deadly weapons. | Objection to inclusion.  This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm or any other conduct. It merely provides a definition of "deadly weapons." *Bruen*, 142 S.Ct. at 2133.  Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear.").  Finally, the 19th-century laws of the Western Territories are not "instructive" because they are "most unlikely to reflect 'the origins of and continuing significance of the Second Amendment.'" *Bruen*, 142 S.Ct. at 2154. |
| 185 | 1887 | Virginia | The Code of Virginia: With the Declaration of Independence and the | Prohibited the carrying of a concealed pistol, dirk, Bowie knife, razor, slungshot, or any | Objection to inclusion.  This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, |

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB

**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | Constitution of the United States; and the Constitution of Virginia, at 897 (1887), Offences Against the Peace, § 3780 | weapon of the like kind. Punishable by fine of $20-100 and forfeiture of the weapon. | transfer, or manufacture of any arm. It regulates only carry of certain arms, and even then, it only regulates *how* they are carried. *Bruen*, 142 S.Ct. at 2133.

Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 186 | 1888 | Maryland – County of Kent | John Prentiss Poe, The Maryland Code : Public Local Laws, Adopted by the General Assembly of Maryland March 14, 1888. Including also the Public Local Acts of the Session of 1888 incorporated therein, at 1457 (Vol. 2, 1888), Election Districts– Fences, § 99 | Prohibited carrying, on days of an election, any gun, pistol, dirk, dirk-knife, razor, billy or bludgeon. Punishable by a fine of $5-20. | Objection to inclusion.

This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms, and even then, it only applies on election day. *Bruen*, 142 S.Ct. at 2133.

Further, this was not a state law, but a local law. *Bruen* rejected the notion that ordinances from a few cities are persuasive. *Id.* at 2156.

Finally, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 187 | 1888 | Florida | Fla. Act of Aug. 6, 1888, ch. 1637, subch. 7, § 10, as codified in Fla. Rev. State., tit. 2, pt. 5 (1892) | Prohibited the concealed carrying of slungshot, metallic knuckles, billies, firearms, or other dangerous weapons if arrested for committing a | Objection to inclusion.

This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only the manner of carrying certain |

***Duncan v. Bonta***, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | | criminal offense or disturbance of the peace.  Punishable by imprisonment up to 1 year and a fine up to $50. | arms, and even then, only while participating in or intending to engage in illegal activity. *Bruen*, 142 S.Ct. at 2133. <br><br> Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 188 | 1888 | Georgia | 1888 Ga. L. 22, ch. 123 | Imposed $25 occupational tax on dealers of pistols, revolvers, dirks, or Bowie knives. | <u>Objection to inclusion.</u> <br><br> This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It is only a tax on dealers of certain arms. *Bruen*, 142 S.Ct. at 2133. <br><br> Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 189 | 1888 | Maryland – City of Baltimore | John Prentiss Poe, The Maryland Code. Public Local Laws, Adopted by the General Assembly of Maryland March 14, 1888. Including also the Public Local Acts of the Session of 1888 Incorporated Therein, at 522-23 (Vol. 1, 1888), City of Baltimore, § 742 | Prohibited the carrying of a pistol, dirk knife, Bowie knife, slingshot, billy, brass, iron or any other metal knuckles, razor, or any other deadly weapon if arrested for being drunk and disorderly.  Punishable by fine of $5-25, and confiscation of the weapon. | <u>Objection to inclusion.</u> <br><br> This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms, and even then, it only applied when one was arrested for being drunk and disorderly. *Bruen*, 142 S.Ct. at 2133. <br><br> Further, this was not a state law, but a local law. *Bruen* rejected the notion that ordinances from a few cities are persuasive. |

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | | | *Id.* at 2156. |
| | | | | | Finally, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 190 | 1888 | Minnesota | George Brooks Young. General Statutes of the State of Minnesota in Force January 1, 1889, at 1006 (Vol. 2, 1888), Making, Selling, etc., Dangerous Weapons, §§ 333-34 | Prohibited manufacturing, selling, giving, or disposing of a slungshot, sandclub, or metal knuckles, or selling or giving a pistol or firearm to a minor without magistrate consent. Also prohibited carrying a concealed slungshot, sandclub, or metal knuckles, or a dagger, dirk, knife, pistol or other fire-arm, or any dangerous weapon. | § 333. Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban because it restricted only the transfer of certain arms to *minors*. It did not flatly ban possession by *anyone*, nor did not ban transfer to adults. *Bruen*, 142 S.Ct. at 2133. § 334. Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only the attempt to use certain arms "against another" and the carry of such arm with the intent to assault. *Id.* at 2133. Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). Objection to description. The law was not a flat a restriction on carry. It only restricted carry with the intent to assault another. |

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|-------------------|--------------|----------|---------------------------|----------------------|
| | | | | | The relevant language is as follows: "A person who **attempts to use against another, or who, with intent so to use,** carries, conceals, or possesses any instrument or weapon of the kind commonly known as a slung-shot, sand-club, or metal knuckles, or a dagger, dirk, knife, pistol or other fire-arm, or any dangerous weapon, is guilty of a misdemeanor." |
| 191 | 1888 | Utah – City of Salt Lake City [Territory] | Dangerous and Concealed Weapon, Feb. 14, 1888, reprinted in The Revised Ordinances Of Salt Lake City, Utah 283 (1893) (Salt Lake City, Utah). § 14 | Prohibited carrying a slingshot or any concealed deadly weapon without permission of the mayor. Punishable by fine up to $50. | Objection to inclusion. <br><br> This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms, and even then, it only regulates *how* they are carried. *Bruen*, 142 S.Ct. at 2133. <br><br> Further, this was not a state law, but a local law. *Bruen* rejected the notion that ordinances from a few cities are persuasive. *Id.* at 2156. <br><br> Finally, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| | | | **Defendant's Survey of Statutes (1889 – 1930s)** | | |
| 192 | 1889 | Arizona [Territory] | 1889 Ariz. Sess. Laws 16, § 1 | Prohibited carrying of any pistol, dirk, dagger, slungshot, sword cane, spear, brass knuckles, Bowie knife, or any knife | Objection to inclusion. <br><br> This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, |

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | | manufactured to offensive or defensive purposes.  Punishable by a fine of $25-100 and forfeiture of the weapon. | transfer, or manufacture of any arm. It regulates only carry of certain arms. *Bruen*, 142 S.Ct. at 2133.<br><br>Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; see also *Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear.").<br><br>Finally, the 19th-century laws of the Western Territories are not "instructive" because they are "most unlikely to reflect 'the origins of and continuing significance of the Second Amendment.'" *Bruen*, 142 S.Ct. at 2154.<br><br>Defendants have not provided the current status of this law indicating whether the law was ever repealed or reviewed by a court.[5] |
| 193 | 1889 | Idaho [Territory] | The Act of the Territory of Idaho approved February 4, 1889 (Sess. Laws 1889, p. 27) | Prohibited private persons from carrying "deadly weapons" within any city, town or village. | Objection to inclusion.<br><br>This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms. *Bruen*, 142 S.Ct. at 2133.<br><br>Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; see also *Bruen*, 142 S.Ct. at 2136 (cautioning against "giving |

---

[5] Plaintiffs will not repeat this for each entry in the chart in which Defendants did not provide the current status of the law, because it applies to nearly every entry in this survey. It is likely that the vast majority of the laws Defendants present here have been repealed or replaced or are otherwise no longer enforced.

**ER_537**

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | | | postenactment history more weight than it can rightly bear."). |
| | | | | | Finally, the 19th-century laws of the Western Territories are not "instructive" because they are "most unlikely to reflect 'the origins of and continuing significance of the Second Amendment.'" *Bruen*, 142 S.Ct. at 2154. |
| 194 | 1889 | Pennsylvania – City of Johnstown | Laws of the City of Johnstown, Pa., Embracing City Charter, Act of Assembly of May 23, 1889, for the Government of Cities of the Third Class, General and Special Ordinances, Rules of Select and Common Councils and Joint Sessions, at 86 (1897), An Ordinance for the Security of Persons and Property of the Inhabitants of the City of Johnstown; The preservation of the Public Peace and Good Order of the City, and Prescribing Penalties for Offenses Against the Same, § 12 | Prohibited the concealed carrying of any pistol, razor, dirk, Bowie knife, blackjack, handy billy, or other deadly weapon. Punishable by fine of $5-50. | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms and, even then, it only regulates *how* they are carried. *Bruen*, 142 S.Ct. at 2133. Further, this was not a state law, but a local law. *Bruen* rejected the notion that ordinances from a few cities are persuasive. *Id.* at 2156. Finally, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; see also *Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 195 | 1890 | Connecticut – City of New Haven | Charles Stoers Hamilton, Charter and Ordinances of the City of New Haven, Together with Legislative | Prohibited the concealed carrying of any metal knuckles, pistol, slungshot, stiletto, or similar weapons, absent written | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It |

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | Acts Affecting Said City, at 164, § 192 (1890) | permission of the mayor or superintendent of police. Punishable by a fine of $5-50. | regulates only carry of certain arms and, even then, it only regulates *how* they are carried. *Bruen*, 142 S.Ct. at 2133.<br><br>Further, this was not a state law, but a local law. *Bruen* rejected the notion that ordinances from a few cities are persuasive. *Id.* at 2156.<br><br>Finally, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; see also *Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 196 | 1890 | Georgia | 1890 Ga. L. 38, ch. 131 | Imposed $100 occupational tax on dealers of pistols, revolvers, dirks, or Bowie knives. | Objection to inclusion.<br><br>This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It is only a tax on dealers of certain arms. *Bruen*, 142 S.Ct. at 2133.<br><br>Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 197 | 1890 | Louisiana | 890 La. L. 39, ch. 46 | Prohibiting the transfer of any pistol, dirk, Bowie knife, or "any other dangerous weapon, which may be carried concealed on a person to any person under the age of 21. | Objection to inclusion.<br><br>The law is not "relevantly similar" to CA's magazine ban because it restricted only the transfer of certain arms to *minors*. It did not flatly ban possession by *anyone*, nor did not |

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|------|------|------|------|------|
| | | | | | ban transfer to adults. *Bruen*, 142 S.Ct. at 2133. <br><br> Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). <br><br> Finally, the 19th-century laws of the Western Territories are not "instructive" because they are "most unlikely to reflect 'the origins of and continuing significance of the Second Amendment.'" *Bruen*, 142 S.Ct. at 2154. |
| 198 | 1890 | Maryland – City of Baltimore | John Prentiss Poe, The Baltimore City Code, Containing the Public Local Laws of Maryland Relating to the City of Baltimore, and the Ordinances of the Mayor and City Council, in Force on the First Day of November, 1891, with a Supplement, Containing the Public Local Laws Relating to the City of Baltimore, Passed at the Session of 1892 of the General Assembly, and also the Ordinances of the Mayor and City Council, Passed at the Session of | Prohibited the carrying of a concealed pistol, dirk-knife, Bowie knife, slingshot, billy, sandclub, metal knuckles, razor or any other dangerous or deadly weapon, or who openly carries with the intent to injure a person. Punishable by fine of up to $500 and imprisonment up to 6 months. | Objection to inclusion. <br><br> This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms and, even then, it only regulates *how* they are carried. *Bruen*, 142 S.Ct. at 2133. <br><br> Further, this was not a state law, but a local law. *Bruen* rejected the notion that ordinances from a few cities are persuasive. *Id.* at 2156. <br><br> Finally, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; see also *Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |

***Duncan v. Bonta***, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|------------------|--------------|----------|--------------------------|---------------------|
| | | | 1891-92, and of 1892-1893, up to the Summer Recess of 1893, at 297-98 (1893), Ordinances of Baltimore, § 742A | | |
| 199 | 1890 | Nebraska – City of Omaha | W. J. Connell, The Revised Ordinances of the City of Omaha, Nebraska, Embracing All Ordinances of a General Nature in Force April 1, 1890, Together with the Charter for Metropolitan Cities, the Constitution of the United States and the Constitution of the State of Nebraska, at 344 (1890), Ordinances of Omaha, Concealed Weapons, § 10 | Prohibited the carrying of a concealed pistol or revolver, colt, billy, slungshot, brass knuckles or knuckles of lead, dirk, dagger, or any knife resembling a Bowie knife, or any other dangerous or deadly weapon.  Punishable by fine up to $100. | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms and, even then, it only regulates *how* they are carried. *Bruen*, 142 S.Ct. at 2133. Further, this was not a state law, but a local law. *Bruen* rejected the notion that ordinances from a few cities are persuasive. *Id.* at 2156. Finally, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; see also *Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 200 | 1890 | Nebraska – City of Omaha | W. J. Connell, The Revised Ordinances of the City of Omaha, Nebraska, Embracing All Ordinances of a General Nature in Force April 1, 1890, Together with the Charter for Metropolitan Cities, the Constitution of the United States and the | Prohibited the carrying of a concealed pistol or revolver, colt, billy, slungshot, brass knuckles or knuckles of lead, dirk, dagger, or any knife resembling a Bowie knife, or any other dangerous or deadly weapon.  Punishable by fine up to $100. | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms and, even then, it only regulates *how* they are carried. *Bruen*, 142 S.Ct. at 2133. Further, this was not a state law, but a local law. *Bruen* rejected the notion that ordinances from a few cities are persuasive. |

***Duncan v. Bonta***, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|-------------------|--------------|----------|--------------------------|----------------------|
|  |  |  | Constitution of the State of Nebraska, at 344 (1890), Ordinances of Omaha, Concealed Weapons, § 10. |  | *Id.* at 2156. Finally, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; see also *Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 201 | 1890 | Oklahoma [Territory] | 1890 Okla. Laws 495, art. 47, §§ 1, 2, 10; Leander G. Pitman, The Statutes of Oklahoma, 1890. (From the Laws Passed by the First Legislative Assembly of the Territory), at 495-96 (1891) | Prohibited the concealed carrying of any pistol, revolver, Bowie knife, dirk, dagger, slungshot, sword cane, spear, metal knuckles, or any other knife or instrument manufactured or sold solely for defense.  Also prohibited the carrying of any pistol, revolver, Bowie knife, dirk knife, loaded cane, billy, metal knuckles, or "any other offensive or defense weapon."  Punishable by a fine of $50-500 and imprisonment for 3-12 months. | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms *Bruen*, 142 S.Ct. at 2133. Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; see also *Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). Finally, the 19th-century laws of the Western Territories are not "instructive" because they are "most unlikely to reflect 'the origins of and continuing significance of the Second Amendment.'" *Bruen*, 142 S.Ct. at 2154. |
| 202 | 1890 | Oklahoma [Territory] | 1890 Okla. Sess. Laws 475, Crimes Against The Public Health And Safety, §§ 18-19 | Prohibited the manufacture, sale, giving, or disposing of any instrument or weapon usually known as a slungshot, and prohibited the carrying any slungshot or similar weapon. | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not ban transfer or manufacture of arms in common use for lawful purposes at the time. *Bruen*, 142 S.Ct. at 2133. |

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|-------------------|--------------|----------|--------------------------|----------------------|
| | | | | | Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; see also *Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| | | | | | Finally, the 19th-century laws of the Western Territories are not "instructive" because they are "most unlikely to reflect 'the origins of and continuing significance of the Second Amendment.'" *Bruen*, 142 S.Ct. at 2154. |
| 203 | 1890 | Oklahoma – Town of Checotah [Territory] | General Laws Relating to Incorporated Towns of Indian Territory, at 37 (1890), Revised Ordinances of the Town of Checotah, Ordinance No. 11, § 3 | Prohibited the carrying of any pistol; dirk; butcher knife; Bowie knife; sword; spear-cane, metal knuckles, razor, slungshot, sandbag, or a switchblade. | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms. *Bruen*, 142 S.Ct. at 2133. |
| | | | | | Further, this was not a state law, but a local law. *Bruen* rejected the notion that ordinances from a few cities are persuasive. *Id.* at 2156. |
| | | | | | The law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; see also *Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| | | | | | Finally, the 19th-century laws of the Western Territories are not "instructive" because they are "most unlikely to reflect 'the origins of and continuing significance of the Second |

***Duncan v. Bonta***, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|-------------------|--------------|----------|---------------------------|----------------------|
| | | | | | Amendment.'" *Bruen*, 142 S.Ct. at 2154. |
| 204 | 1891 | Michigan | 1891 Mich. Pub. Acts 409, Police Department, pt 15 | Prohibited the carrying of a concealed pistol, revolver, Bowie knife, dirk, slungshot, billie, sandbag, false knuckles, or other dangerous weapon. Also prohibited lurking or being concealed with the intent to injure a person or property, or threatening to beat or kill a person or property.  Punishable by fine up to $100 and the costs of prosecution, and in default of payment, imprisonment. | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms. *Bruen*, 142 S.Ct. at 2133. Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; see also *Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 205 | 1891 | Missouri | "Shot by a Trap-Gun," The South Bend Tribune, Feb. 11, 1891 | Fined farmer for setting a trap gun that killed his wife. | Objection to inclusion. It is entirely unclear whether this entry even references a law. If it does, such law is not "relevantly similar" to CA's magazine ban. It does not regulate the possession of any arm. It regulates only how arms are used (i.e., the setting of "trap guns"). And it regulates for completely different reasons than CA's magazine ban (i.e., to prevent unintended discharges). *Bruen*, 142 S.Ct. at 2133. |
| 206 | 1891 | North Dakota | 1891 N.D. Laws 193, An Act to Amend Sections 1 and 2 of Chapter 63 of the General Laws of 1883, ch. 70, § 1 | Prohibited the setting of any gun or gun trap to be discharged at certain animals. | Objection to inclusion. The law is not "relevantly similar" to CA's magazine ban. It does not regulate the possession of any arm. It regulates only how arms are used (i.e., the setting of "trap |

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|-------------------|--------------|----------|--------------------------|----------------------|
| | | | | | guns"). And it regulates for completely different reasons than CA's magazine ban (i.e., to prevent unintended discharges). *Bruen*, 142 S.Ct. at 2133. <br><br> Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 207 | 1891 | West Virginia | 1891 W. Va. Code 915, Of Offences Against the Peace, ch. 148, § 7 | Prohibited the carrying of a pistol, dirk, Bowie knife, razor, slungshot, billy, metallic or other false knuckles, or any other dangerous or deadly weapon. Also prohibited selling such a weapon to a minor. Punishable by fine of $25-200 and imprisonment for 1-12 months. | Objection to inclusion. <br><br> The law's transfer restriction is not "relevantly similar" to CA's magazine ban because it restricted only the transfer of certain arms to *minors*. It did not flatly ban possession by *anyone*, nor did not ban transfer to adults. *Bruen*, 142 S.Ct. at 2133. <br><br> The law's carry restriction is not "relevantly similar" either because it does not ban possession, transfer, or manufacture of any arm. It only regulates the carry of certain arms. *Id.* <br><br> Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 208 | 1892 | Alabama | 1892 Ala. L. 183, ch. 95 | Imposed $300 occupational tax on dealers of pistols, pistol cartridges, Bowie knives, and dirk knives, and clarified that | Objection to inclusion. <br><br> This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, |

**Duncan v. Bonta**, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|-------------------|--------------|----------|--------------------------|----------------------|
| | | | | cartridges that can be used in a pistol shall be deemed pistol cartridges. | transfer, or manufacture of any arm. It is only a tax on dealers of certain arms. *Bruen*, 142 S.Ct. at 2133.<br><br>Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 209 | 1892 | Georgia | 1892 Ga. L. 25, ch. 133 | Imposed $100 occupational tax on dealers of pistols, revolvers, dirks, Bowie knives, and metal knuckles. | Objection to inclusion.<br><br>This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It is only a tax on dealers of certain arms. *Bruen*, 142 S.Ct. at 2133.<br><br>Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 210 | 1892 | Washington – City of Tacoma | Albert R. Heilig, Ordinances of the City of Tacoma, Washington, at 333-34 (1892) | Prohibited the carrying of a concealed a revolver, pistol or other fire arms or any knife (other than an ordinary pocket knife) or any dirk or dagger, slingshot or metal knuckles, or any instrument by the use of which injury could be inflicted upon the person. | Objection to inclusion.<br><br>This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms and, even then, it only regulates *how* they are carried. *Bruen*, 142 S.Ct. at 2133.<br><br>Further, this was not a state law, but a local law. *Bruen* rejected the notion that ordinances from a few cities are persuasive. |

106

***Duncan v. Bonta***, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|------|------|------|------|------|
| | | | | | *Id.* at 2156. |
| | | | | | Finally, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; see also *Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 211 | 1893 | Arizona [Territory] | 1893 Ariz. Sess. Laws 3, § 1 | Prohibited the concealed carrying of any pistol or other firearm, dirk, dagger, slungshot, sword cane, spear, brass knuckles, Bowie knife (or any kind of knife, except a pocket knife not manufactured for offensive or defensive use). | Objection to inclusion.<br><br>This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms and, even then, it only regulates *how* they are carried. *Bruen*, 142 S.Ct. at 2133.<br><br>Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; see also *Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear.").<br><br>Finally, the 19th-century laws of the Western Territories are not "instructive" because they are "most unlikely to reflect 'the origins of and continuing significance of the Second Amendment.'" *Bruen*, 142 S.Ct. at 2154. |
| 212 | 1893 | Delaware | Revised Statutes of the State of Delaware, of Eight Hundred and Fifty-Two. As They Have Since Been Amended, Together with the Additional Laws | Prohibited the concealed carrying of deadly weapons or selling deadly weapons other than an ordinary pocket knife, and prohibited discharging any firearm in any public road. | Objection to inclusion.<br><br>To the extent that this law restricts transfer of arms in common use for lawful purposes, this late 19th-century law "cannot provide much insight into the meaning of the Second Amendment" because it is not consistent |

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|-------------------|--------------|----------|--------------------------|----------------------|
| | | | of a Public and General Nature, Which Have Been Enacted Since the Publication of the Revised Code of Eighteen Fifty-Two. To the Year of Our Lord One Thousand Eight Hundred and Ninety-Three; to Which are Added the Constitutions of the United States and of this State, the Declaration of Independence, and Appendix, at 987 (1893), An Act Providing for the Punishment of Persons Carrying Concealed Deadly Weapons, § 1 | Punishable by fine of $25-100 or by imprisonment for 10-30 days. | with earlier laws. *Bruen*, 142 S.Ct. at 2153-54.<br><br>The law's bans on concealed carry and public discharge are not "relevantly similar" either because neither bans possession, transfer, or manufacture of any arm. *Id.*<br><br>Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; see also *Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 213 | 1893 | North Carolina | 1893 N.C. L. 468-69, ch. 514 | Prohibiting the transfer of any pistol, pistol cartridge, brass knucks, Bowie knife, dirk, loaded cane, or slingshot to a minor. | <u>Objection to inclusion.</u><br><br>The law is not "relevantly similar" to CA's magazine ban because it restricted only the transfer of certain arms to *minors*. It did not flatly ban possession by *anyone*, nor did not ban transfer to adults. *Bruen*, 142 S.Ct. at 2133.<br><br>Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |

ER_548

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| 214 | 1893 | Rhode Island | 1893 R.I. Pub. Laws 231, An Act Prohibiting The Carrying Of Concealed Weapons, chap. 1180, § 1 | Prohibited the carrying of any dirk, Bowie knife, butcher knife, dagger, razor, sword cane, air-gun, billy, metal knuckles, slungshot, pistol, or firearm of any description. | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms and, even then, it only regulates *how* they are carried. *Bruen*, 142 S.Ct. at 2133. Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; see also *Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 215 | 1893 | Tennessee – City of Nashville | Claude Waller, Digest of the Ordinances of the City of Nashville, to Which are Prefixed the State Laws Incorporating, and Relating to, the City, with an Appendix Containing Various Grants and Franchises, at 364-65 (1893), Ordinances of the City of Nashville, § 738 | Prohibited the carrying of a pistol, Bowie knife, dirk knife, slungshot, brass knucks, or other deadly weapon.  Punishable by fine of $10-50 for a first offense and $50 for subsequent offenses. | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms. *Bruen*, 142 S.Ct. at 2133. Further, this was not a state law, but a local law. *Bruen* rejected the notion that ordinances from a few cities are persuasive. *Id.* at 2156. Finally, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 216 | 1893 | Wyoming – City of Rawlins | A. McMicken, City Attorney, The Revised | Prohibited a person from possessing or carrying a pistol, | Objection to inclusion. |

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|-------------------|--------------|----------|--------------------------|----------------------|
| | | | Ordinances of the City of Rawlins, Carbon County, Wyoming, at 131-32 (1893), Revised Ordinances of the City of Rawlins, Article VII, Carrying Firearms and Lethal Weapons, § 1 | revolver, knife, slungshot, bludgeon or other lethal weapon. Punishable by fine up to $100 or imprisonment up to 30 days. | This late 19th-century law banning possession of certain arms "cannot provide much insight into the meaning of the Second Amendment" because it is not consistent with earlier laws. *Bruen*, 142 S.Ct. at 2153-54.<br><br>Also, if the State's claim is that the arms subject to this law are "dangerous and unusual," the law is not "relevantly similar" to CA's ban on magazines in common use for lawful purposes. *Id.* at 2133.<br><br>The law's restriction on carry is not "relevantly similar" either because it does not ban possession, transfer, or manufacture of any arm. *Id.*<br><br>Further, this was not a state law, but a local law. *Bruen* rejected the notion that ordinances from a few cities are persuasive. *Id.* at 2156.<br><br>Finally, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; see also *Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 217 | 1895 | North Dakota | 1895 N.D. Rev. Codes 1293, Penal Code, Crimes Against the Public Health and Safety, ch. 40, §§ 7312-13 | Prohibited the carrying of any slungshot or similar weapon, and the concealed carrying of any firearm or any "sharp or dangerous weapon." | Objection to inclusion.<br><br>This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms and, |

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | | | even then, it only regulates *how* they are carried. *Bruen*, 142 S.Ct. at 2133. Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; see also *Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 218 | 1895 | North Dakota | The Revised Codes of the State of North Dakota 1895 Together with the Constitution of the United States and of the State of North Dakota with the Amendments Thereto, at 1259 (1895) | Prohibited the setting of any spring or trap gun. | Objection to inclusion. The law is not "relevantly similar" to CA's magazine ban. It does not regulate the possession of any arm. It regulates only how arms are used (i.e., the setting of "trap guns"). And it regulates for completely different reasons than CA's magazine ban (i.e., to prevent unintended discharges). *Bruen*, 142 S.Ct. at 2133. Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 219 | 1895 | Vermont – City of Barre | Ordinances of the City of Barre, Vermont, ch. 16, § 18 (1895) | Prohibited discharging a gun, pistol, or other loaded firearm, firecracker, serpent, or other explosive, unless on a person's own property or with the permission of the property owner.  Also prohibited making a bonfire in the street except with city council permission and | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only public discharge of firearms and carry of certain arms and, even then, it only regulates *how* they are carried. *Bruen*, 142 S.Ct. at 2133. |

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | | the carrying of concealed steel or brass knuckles, a pistol, slungshot, stiletto, or weapon of similar character. | Further, this was not a state law, but a local law. *Bruen* rejected the notion that ordinances from a few cities are persuasive. *Id.* at 2156. <br><br>Finally, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 220 | 1896 | California – City of Fresno | L. W. Moultrie, City Attorney, Charter and Ordinances of the City of Fresno, 1896, at 37, § 53 (1896) | Prohibited the transfer to any minor under the age of 18 any gun, pistol or other firearm, dirk, Bowie knife, powder, shot, bullets, or any combustible or dangerous material, absent written consent of parent or guardian. | Objection to inclusion. <br><br>The law is not "relevantly similar" to CA's magazine ban because it restricted only the transfer of certain arms to *minors*. It did not flatly ban possession by *anyone*, nor did not ban transfer to adults or even minors w/ parental consent. *Bruen*, 142 S.Ct. at 2133. <br><br>Further, this was not a state law, but a local law. *Bruen* rejected the notion that ordinances from a few cities are persuasive. *Id.* at 2156. <br><br>Finally, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 221 | 1896 | California – City of Fresno | L. W. Moultrie, Charter and Ordinances of the City of Fresno, at 30, § 8 (1896) | Prohibited the concealed carrying of any pistol or firearm, slungshot, dirk, Bowie knife, or other deadly weapon, absent written permission. | Objection to inclusion. <br><br>This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It |

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | | | regulates only carry of certain arms and, even then, it only regulates *how* they are carried. *Bruen*, 142 S.Ct. at 2133.<br><br>Further, this was not a state law, but a local law. *Bruen* rejected the notion that ordinances from a few cities are persuasive. *Id.* at 2156.<br><br>Finally, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; see also *Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 222 | 1896 | Mississippi | 1896 Miss. L. 109-10, ch. 104 | Prohibited the carrying of a concealed Bowie knife, dirk, butcher knife, pistol, brass or metallic knuckles, slingshot, sword, or other deadly weapon "of like kind or description." | Objection to inclusion.<br><br>This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms and, even then, it only regulates *how* they are carried. *Bruen*, 142 S.Ct. at 2133.<br><br>Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; see also *Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 223 | 1896 | Rhode Island | General Laws of the State of Rhode Island and Providence Plantations to Which are Prefixed the Constitutions of the United States and of the State, at | Prohibited the carrying of any dirk, Bowie knife, butcher knife, dagger, razor, sword cane, air-gun, billy, metal knuckles, slingshot, pistol, or firearm of any description. Exempted | Objection to inclusion.<br><br>This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It |

**Duncan v. Bonta**, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | 1010-11 (1896), Offences Against Public Policy, §§ 23, 24, 26 | officers or watchmen whose duties required them to make arrests or guard prisoners or property. | regulates only carry of certain arms. *Bruen*, 142 S.Ct. at 2133.<br><br>Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 224 | 1896 | Washington – City of Spokane | Rose M. Denny, The Municipal Code of the City of Spokane, Washington. Comprising the Ordinances of the City (Excepting Ordinances Establishing Street Grades) Revised to October 22, 1896, at 309-10 (1896), Ordinances of Spokane, An Ordinance to Punish the Carrying of Concealed Weapons within the City of Spokane, § 1 | Prohibited the carrying of a concealed revolver, pistol or other fire-arms, or any knife (other than an ordinary pocket knife) or any dirk or dagger, sling-shot or metal knuckles, or any instrument by the use of which injury could be inflicted upon the person or property. punishable by fine of $25-100, cost of prosecution, and imprisonment until fines/costs are paid. | Objection to inclusion.<br><br>This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates carry of certain arms and, even then, it only regulates *how* they are carried. *Bruen*, 142 S.Ct. at 2133.<br><br>Further, this was not a state law, but a local law. *Bruen* rejected the notion that ordinances from a few cities are persuasive. *Id.* at 2156.<br><br>Finally, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; see also *Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 225 | 1897 | Alabama | William Logan Martin, Commissioner, The Code of Alabama, Adopted by Act of the General Assembly of the State of Alabama, Approved | Tax of $300 on the sale of pistols, pistol cartridges, Bowie knives, and dirk knives. | Objection to inclusion.<br><br>This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It is only a tax on the sale of certain arms. *Bruen*, 142 S.Ct. at 2133. |

114

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|-------------------|--------------|----------|---------------------------|----------------------|
| | | | February 16, 1897, § 27 (1897) | | Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 226 | 1897 | Missouri – City of Saint Joseph | William K. Amick, The General Ordinances of the City of Saint Joseph (A City of the Second Class) Embracing all Ordinances of General Interest in Force July 15, 1897, together with the Laws of the State of Missouri of a General Nature Applicable to the City of St. Joseph. Compiled and Arranged, at 508 (1897), Concealed Weapons – Carrying of, § 7 | Prohibited the carrying of a concealed pistol or revolver, colt, billy, slungshot, cross knuckles or knuckles of lead, brass or other metal, dirk, dagger, razor, Bowie knife, or any knife resembling a Bowie knife, or any other dangerous or deadly weapon. | Objection to inclusion.

This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms and, even then, it only regulates *how* they are carried. *Bruen*, 142 S.Ct. at 2133.

Further, this was not a state law, but a local law. *Bruen* rejected the notion that ordinances from a few cities are persuasive. *Id.* at 2156.

Finally, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 227 | 1897 | Texas | 1897 Tex. Gen. Laws 221, An Act to Prevent the Barter, Sale And Gift of Any Pistol, Dirk, Dagger, Slung Shot, Sword Cane, Spear, or Knuckles Made of Any Metal Or Hard Substance to Any Minor Without the Written | Prohibited the selling or giving to a minor a pistol, dirk, dagger, slungshot, sword cane, spear or knuckles made of any metal or hard substance, Bowie knife or any other knife manufactured or sold for the purpose of offense or defense without the consent of their parent or guardian. | Objection to inclusion.

The law is not "relevantly similar" to CA's magazine ban because it restricted only the transfer of certain arms to *minors*. It did not flatly ban possession by *anyone*, nor did not ban transfer to adults or even minors w/ parental consent. *Bruen*, 142 S.Ct. at 2133.

Further, the law was adopted too long after |

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|-----|-----|-----|-----|-----|
| | | | Consent of the Parent or Guardian of Such Minor. . ., ch. 155 | Punishable by fine of $25-200 and/or imprisonment for 10-30 days. | the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 228 | 1897 | Washington | Richard Achilles Ballinger, Ballinger's Annotated Codes and Statutes of Washington: Showing All Statutes in Force, Including the Session Laws of 1897, at 1956-57 (Vol. 2, 1897), Carrying Concealed Weapons, § 7084 | Prohibited the carrying of a concealed revolver, pistol, or other fire-arms, or any knife, (other than an ordinary pocket knife), or any dirk or dagger, sling-shot, or metal knuckles, or any instrument by the use of which injury could be inflicted upon the person or property of any other person.  Punishable by fine of $25-100 and/or imprisonment for 30 days. | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms and, even then, it only regulates *how* they are carried. *Bruen*, 142 S.Ct. at 2133. Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; see also *Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 229 | 1898 | Georgia | 1898 Ga. L. 60, ch. 103 | Prohibited the concealed carry of any pistol, dirk, sword cane, spear, Bowie knife, other kind of knife "manufactured and sold for purpose of offense and defense," and any "kind of metal knucks." | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms and, even then, it only regulates *how* they are carried. *Bruen*, 142 S.Ct. at 2133. Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; see also *Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |

**ER_556**

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|-----|-----|-----|-----|-----|
| 230 | 1898 | Oregon – City of Oregon City | The Charter of Oregon City, Oregon, Together with the Ordinances and Rules of Order, 259 (1898), An Ordinance Providing for the Punishment of Disorderly Persons, and Keepers and Owners of Disorderly Houses, § 2 | Prohibited the carrying of any slingshot, billy, dirk, pistol, or "any concealed deadly weapon," and the discharge of any firearm, air gun, sparrow gun, flipper, or bean shooter, unless in self-defense. | Objection to inclusion. <br><br> The law's carry ban is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms and, even then, it only regulates *how* they are carried. *Bruen*, 142 S.Ct. at 2133. <br><br> The law's discharge ban is not "relevantly similar" either. It only restricts the discharge of certain arms unless in self-defense. *Id.* <br><br> Further, this was not a state law, but a local law. *Bruen* rejected the notion that ordinances from a few cities are persuasive. *Id.* at 2156. <br><br> Finally, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; see also *Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 231 | 1899 | Alaska | Fred F. Barker, Compilation of the Acts of Congress and Treaties Relating to Alaska: From March 30, 1867, to March 3, 1905, at App. A, p. 139 (30 Stat. L. 1253 (1899)); 1896-99 Alaska Sess. Laws 1270, ch. 6, § 117 | Prohibited concealed carrying in any manner any revolver, pistol, other firearm, knife (other than an "ordinary pocket knife"), dirk, dagger, slungshot, metal knuckles, or any instrument that could cause injury to a person or property. | Objection to inclusion. <br><br> This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms and, even then, it only regulates *how* they are carried. *Bruen*, 142 S.Ct. at 2133. <br><br> Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; see also *Bruen*, 142 S.Ct. at 2136 (cautioning against "giving |

**Duncan v. Bonta**, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|-------------------|--------------|----------|---------------------------|----------------------|
| | | | | | postenactment history more weight than it can rightly bear."). <br><br> Finally, the 20th-century laws of the U.S. territories are not "instructive" because they are "most unlikely to reflect 'the origins of and continuing significance of the Second Amendment.'" *Bruen*, 142 S.Ct. at 2154. |
| 232 | 1899 | Nebraska – City of Fairfield | Compiled Ordinances of the City of Fairfield, Clay County, Nebraska, at 34 (1899), Ordinance No. 20, An Ordinance to Prohibit the Carrying of Concealed Weapons and Fixing a Penalty for the violations of the same. Be it ordained by the Mayor and Council of the City of Fairfield, Nebraska: § 1 | Prohibited the carrying of a concealed pistol, revolver, dirk, Bowie knife, billy, slingshot, metal knuckles, or other dangerous or deadly weapons. Punishable by forfeiture and "shall be so adjudged." | Objection to inclusion. <br><br> This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms and, even then, it only regulates *how* they are carried. *Bruen*, 142 S.Ct. at 2133. <br><br> Further, this was not a state law, but a local law. *Bruen* rejected the notion that ordinances from a few cities are persuasive. *Id.* at 2156. <br><br> Finally, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; see also *Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 233 | 1899 | Texas – City of San Antonio | Theodore Harris, Charter and Ordinances of the City of San Antonio. Comprising All Ordinances of a General Character in Force August 7th, at 220 (1899), | Prohibited drawing in a threatening manner a pistol, gun, knife, sword cane, club or any other instrument or weapon that may cause death. | Objection to inclusion. <br><br> This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only drawing/brandishing of arms in a threatening manner. *Bruen*, 142 S.Ct. at 2133. |

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | Ordinances of the City of San Antonio, Ordinances, ch. 22, § 4 | | Further, this was not a state law, but a local law. *Bruen* rejected the notion that ordinances from a few cities are persuasive. *Id.* at 2156.<br><br>Finally, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 234 | 1900 | Iowa – City of Des Moines | William H. Baily, The Revised Ordinances of Nineteen Hundred of the City of Des Moines, Iowa, at 89-90,  (1900), Ordinances City of Des Moines, Weapons, Concealed, § 209 | Prohibited the carrying of a concealed pistol or other firearms, slungshot, brass knuckles, or knuckles of lead, brass or other metal or material, or any sandbag, air guns of any description, dagger, Bowie knife, dirk knife, or other knife or instrument for cutting, stabbing or striking, or other dangerous or deadly weapon. | Objection to inclusion.<br><br>This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms and, even then, it only regulates *how* they are carried. *Bruen*, 142 S.Ct. at 2133.<br><br>Further, this was not a state law, but a local law. *Bruen* rejected the notion that ordinances from a few cities are persuasive. *Id.* at 2156.<br><br>Finally, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; see also *Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 235 | 1900 | New York | 1900 N.Y. Laws 459, An Act to Amend Section Four Hundred and Nine of the Penal Code, Relative | Prohibited manufacturing or selling a slungshot, billy, sandclub or metal knuckles, and prohibited selling a firearm to a minor in any city or incorporated | Objection to inclusion.<br><br>The law's firearm transfer restriction is not "relevantly similar" to CA's magazine ban because it restricted only the transfer of |

119

**ER_559**

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|-------------------|--------------|----------|--------------------------|----------------------|
| | | | to Dangerous Weapons, ch. 222, § 1 | village without written consent of police magistrate.  Exempted any officer of the United States or peace officer when necessary and proper to discharge official duties. | firearms (including common arms) to *minors*. It did not flatly ban possession by *anyone*, nor did not ban transfer of firearms to adults or even to minors with parental consent. *Bruen*, 142 S.Ct. at 2133.<br><br>Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear.").<br><br>Re: the law's restrictions on manufacturing and transferring any slungshot, billy, sandclub, or metal knuckles: If the State's claim is that the arms subject to this law are "dangerous and unusual," the law is not "relevantly similar" to CA's ban on magazines in common use for lawful purposes. *Id.*<br><br>Even if relevant, this 20th-century law banning the manufacture and transfer of certain arms should not be considered because it is not consistent with earlier laws. *Bruen*, 142 S.Ct. at 2154, n.28.<br><br>And this law is an outlier insufficient to establish an American tradition of such regulation. *Id.* |
| 236 | 1901 | Arizona [Territory] | 1901 Ariz. 1251-53, §§ 381, 385, 390 | Prohibited the concealed carrying of any pistol or other firearm, dirk, dagger, slungshot, sword cane, spear, brass knuckles, Bowie knife (or any | Objection to inclusion.<br><br>This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms and, |

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|------------------|--------------|----------|--------------------------|---------------------|
| | | | | kind of knife, except a pocket knife not manufactured for offensive or defensive use). Exempted peace officers in discharge of official duties. Punishable by a fine of $25-100 and forfeiture of the weapon. | even then, it only regulates *how* they are carried. *Bruen*, 142 S.Ct. at 2133. Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; see also *Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). Finally, the 19th-century laws of the Western Territories are not "instructive" because they are "most unlikely to reflect 'the origins of and continuing significance of the Second Amendment.'" *Bruen*, 142 S.Ct. at 2154. |
| 237 | 1901 | Utah | 1901 Utah Laws 97-98, An Act Defining an Infernal Machine, and Prescribing Penalties for the Construction or Contrivance of the Same, or Having Such Machine in Possession, or Delivering Such Machine to Any Person . . . , ch. 96, §§ 1-3 | Prohibited the construction and possession of any "infernal machine," defined as a device with a loaded firearm that is capable of igniting when moved, handled, or opened. | Objection to inclusion. The law is not "relevantly similar" to CA's magazine ban. It does not regulate the possession of any arm. It regulates only how arms are used (i.e., the setting of "infernal machines"). And it regulates for completely different reasons than CA's magazine ban (i.e., to prevent unintended discharges). *Bruen*, 142 S.Ct. at 2133. |
| 238 | 1903 | Oklahoma [Territory] | Wilson's Rev. & Ann. St. Okla.(1903) § 583, c. 25 | Prohibited the concealed carrying of any pistol, revolver, Bowie knife, dirk, dagger, slungshot, sword cane, spear, metal knuckles, or other kind of knife manufactured for defense. | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms and, even then, it only regulates *how* they are carried. *Bruen*, 142 S.Ct. at 2133. |

121

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|-------------------|--------------|----------|---------------------------|----------------------|
| | | | | | Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; see also *Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| | | | | | Finally, the 19th-century laws of the Western Territories are not "instructive" because they are "most unlikely to reflect 'the origins of and continuing significance of the Second Amendment.'" *Bruen*, 142 S.Ct. at 2154. |
| 239 | 1903 | South Dakota | S.D. Rev. Code, Penal Code 1150 (1903) §§ 470, 471 | Prohibited the carrying of a concealed slungshot, firearm, or sharp or dangerous weapon. | Objection to inclusion.

This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms, and even then, it only regulates *how* they are carried. *Bruen*, 142 S.Ct. at 2133.

Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; see also *Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 240 | 1905 | Indiana | 1905 Ind. Acts 677, Public Conveyance—Attacking, § 410 | Prohibited maliciously or mischievously shooting a gun, rifle, pistol or other weapon, or throwing a stone, stick, club or any other substance at a vehicle. Punishable by imprisonment for 30 days to 1 year and a fine of $10-100. | Objection to inclusion.

This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It merely bans shooting or throwing certain projectiles at vehicles with the. *Bruen*, 142 S.Ct. at 2133. |

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|------|------|------|------|------|
| | | | | | Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 241 | 1905 | New Jersey | 1905 N.J. Laws 324-25, A Supplement to an Act Entitled "An Act for the Punishment of Crimes," ch. 172, § 1 | Prohibited the carrying of a concealed revolver, pistol or other deadly, offensive or dangerous weapon or firearm or any stiletto, dagger or razor. Punishable by fine up to $200 and/or imprisonment with hard labor up to 2 years. | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms and, even then, it only regulates *how* they are carried. *Bruen*, 142 S.Ct. at 2133. Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 242 | 1908 | Rhode Island | 1908 (January Session) R.I. Pub. Laws 145, An Act in Amendment of section 23 of chapter 283 of the General Laws, § 23 | Prohibited the carrying of any dirk, dagger, razor, sword cane, Bowie knife, butcher knife, air-gun, billy, metal knuckles, slungshot, pistol, other firearm. Exempted officers or watchmen. | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms. *Bruen*, 142 S.Ct. at 2133. Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|-------------------|--------------|----------|---------------------------|----------------------|
| 243 | 1909 | Idaho | 1909 Id. Sess. Laws 6, An Act To Regulate the Use and Carrying of Concealed Deadly Weapons and to Regulate the Sale or Delivery of Deadly Weapons to Minors Under the Age of Sixteen Years to Provide a Penalty for the Violation of the Provisions of this Act, and to Exempt Certain Persons, § 1 | Prohibited the carrying a concealed dirk, Bowie knife, dagger, slungshot, pistol, revolver, gun, or any other deadly or dangerous weapon in any public setting. | Objection to inclusion.<br><br>This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms and, even then, it only regulates *how* they are carried. *Bruen*, 142 S.Ct. at 2133.<br><br>Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; see also *Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear." |
| 244 | 1909 | South Dakota | 1909 S.D. Sess. Laws 450, An Act for the Preservation, Propagation, Protection, Taking, Use and Transportation of Game and Fish and Establishing the Office of State Game Warden and Defining His Duties, ch. 240, §§ 21-22 | Prohibited the setting or possession of any "set gun." | Objection to inclusion.<br><br>The law is not "relevantly similar" to CA's magazine ban. It regulates for completely different reasons than CA's magazine ban (i.e., to prevent unintended discharges while hunting). *Bruen*, 142 S.Ct. at 2133.<br><br>Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 245 | 1909 | Washington | 1909 Wash. Sess. Laws 973, An Act Relating to Crimes and Punishments and the Rights and Custody of Persons Accused or Convicted of | Prohibited the setting of any trap, spring pistol, rifle, or other deadly weapon. Punishable by imprisonment for up to 1 year or a fine of up to $1,000. Further punishable by imprisonment for | Objection to inclusion.<br><br>The law is not "relevantly similar" to CA's magazine ban. It does not regulate the possession of any arm. It regulates only how arms are used (i.e., the setting of "trap guns"). And it regulates for completely |

124

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|-------------------|--------------|----------|--------------------------|----------------------|
| | | | Crime, and Repealing Certain Acts, ch. 249, ch. 7, §266, pts. 1-3 | up to 20 years for non-fatal or fatal injuries resulting from the trap or | different reasons than CA's magazine ban (i.e., to prevent unintended discharges). *Bruen*, 142 S.Ct. at 2133. Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 246 | 1911 | New York | 1911 N.Y. Laws 442, An Act to Amend the Penal Law, in Relation to the Sale and Carrying of Dangerous Weapons, ch. 195, § 1 | Prohibited the manufacture, sale, giving, or disposing of any weapon of the kind usually known as a blackjack, slungshot, billy, sandclub, sandbag, bludgeon, or metal knuckles, and the offering, sale, loaning, leasing, or giving of any gun, revolver, pistol, air gun, or spring-gun to a person under the age of 16. | Objection to inclusion. The law is not "relevantly similar" to CA's magazine ban because it restricted only the transfer of certain arms to *minors under 16*. It did not flatly ban possession by *anyone*, nor did not ban transfer to adults or even minors over 16. *Bruen*, 142 S.Ct. at 2133. Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 247 | 1911 | New York | 1911 N.Y. Laws 442-43, An Act to Amend the Penal Law, in Relation to the Sale and Carrying of Dangerous Weapons. ch. 195, § 1 | Prohibited the carrying or possession of any weapon of the kind commonly known as a blackjack, slungshot, billy, sandclub, sandbag, metal knuckles, or bludgeon, and the carrying or possession of any dagger, dirk, dangerous knife, razor, stiletto, or other "dangerous or deadly instrument | Objection to inclusion. The law is not "relevantly similar" to CA's magazine ban because it restricted only the transfer of certain arms to *minors under 16*. It did not flatly ban possession by *anyone*, nor did not ban transfer to adults or even minors over 16. *Bruen*, 142 S.Ct. at 2133. Further, the law was adopted too long after the Founding to be afforded much weight |

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|-----|-----|-----|-----|-----|
| | | | | or weapon" with intent to use the weapon unlawfully against another. | *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 248 | 1912 | Vermont | 1912 Vt. Acts and Resolves 261 | Prohibited the setting of any spring gun.  Punishable by a fine of $50-500 and liability for twice the amount of damage resulting from the trap. | Objection to inclusion. The law is not "relevantly similar" to CA's magazine ban. It does not regulate the possession of any arm. It regulates only how arms are used (i.e., the setting of "spring guns"). And it regulates for completely different reasons than CA's magazine ban (i.e., to prevent unintended discharges). *Bruen*, 142 S.Ct. at 2133. Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 249 | 1913 | Florida | 1913 Fla. 117, An Act to Regulate the Hunting of Wild Deer etc., § 8 | Prohibited hunting wild game with automatic guns. | Objection to inclusion. This 20th-century law banning hunting with certain arms should not be considered because it is not consistent with earlier laws. *Bruen*, 142 S.Ct. at 2154, n.28. Further, this law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It merely regulates which arms may be used for hunting wild game. *Id.* at 2133. Also, if the State's claim is that the arms subject to this law are "dangerous and |

126

**ER_566**

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|-------------------|--------------|----------|---------------------------|----------------------|
| | | | | | unusual," the law is not "relevantly similar" to CA's ban on magazines in common use for lawful purposes. *Id.* |
| 250 | 1913 | Hawaii [Territory] | 1913 Haw. Rev. Laws ch. 209, § 3089, Carrying Deadly Weapons, § 3089. | Prohibited the carrying a Bowie knife, sword cane, pistol, air-gun, slungshot, or other deadly weapon. Punishable by fine of $10-250 or imprisonment for 3-12 months, unless good cause can be shown for carrying the weapon. | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms and, even then, it provides an exception for good cause. *Bruen*, 142 S.Ct. at 2133. Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; see also *Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 251 | 1913 | Iowa | 1913 Iowa Acts 307, ch. 297, §§ 1, 2 | Prohibited the carrying of a concealed dirk, dagger, sword, pistol, revolver, stiletto, metallic knuckles, picket billy, sandbag, skull cracker, slungshot, or other offensive and dangerous weapons or instruments.  Also prohibited the selling, keeping for sale, offering for sale, loaning, or giving away any dirk, dagger, stiletto, metallic knuckles, sandbag, or "skull cracker."  Exempted the selling or keeping for sale of "hunting and fishing knives." | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms and, even then, it only regulates *how* they are carried. *Bruen*, 142 S.Ct. at 2133. Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; see also *Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |

127

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|-------------------|--------------|----------|--------------------------|----------------------|
| 252 | 1913 | New York | 1913 N.Y. Laws 1627-30, vol. III, ch. 608, § 1, Carrying and Use of Dangerous Weapons Carrying Weapons, Dangerous or Unusual Weapons, § 1 | Prohibited the carrying or possession of any weapon of the kind commonly known as a blackjack, slungshot, billy, sandclub, sandbag, metal knuckles, bludgeon, bomb, or bombshell, and the carrying or possession of any dagger, dirk, dangerous knife, razor, stiletto, or other "dangerous or deadly instruments or weapon." | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms and, even then, it only regulates *how* they are carried. *Bruen*, 142 S.Ct. at 2133. Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 253 | 1915 | New Hampshire | 1915 N.H. Laws 180-81, An Act to Revise and Amend the Fish and Game Laws, ch. 133, pt. 2, § 18 | Prohibited the setting of a spring gun.  Punished by a fine of $50-500. | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not regulate the possession of any arm. It regulates only how arms are used (i.e., the setting of "spring guns"). And it regulates for completely different reasons than CA's magazine ban (i.e., to prevent unintended discharges while hunting). *Bruen*, 142 S.Ct. at 2133. Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 254 | 1915 | North Dakota | 1915 N.D. Laws 96, An Act to Provide for the Punishment of Any Person Carrying Concealed Any | Prohibited the concealed carrying of any instrument or weapon usually known as a blackjack, slungshot, billy, | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, |

***Duncan v. Bonta***, No. 3:17-cv-01017-BEN-JLB

**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|-------------------|--------------|----------|---------------------------|----------------------|
| | | | Dangerous Weapons or Explosives, or Who Has the Same in His Possession, Custody or Control, unless Such Weapon or Explosive Is Carried in the Prosecution of a Legitimate and Lawful Purpose, ch. 83, §§ 1-3, 5 | sandclub, sandbag, bludgeon, metal knuckles, or any sharp or dangerous weapon, any gun, revolver, pistol, or "other dangerous fire arm," nitroglycerin, dynamite, or any other dangerous or violent explosive. | transfer, or manufacture of any arm. It regulates only carry of certain arms and, even then, it only regulates *how* they are carried. *Bruen*, 142 S.Ct. at 2133.<br><br>Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; see also *Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 255 | 1917 | California | 1917 Cal. Stat. 221, § 1 | Prohibited the manufacture, leasing, keeping for sale, offering, giving, or disposing of any instrument or weapon of the kind commonly known as a blackjack, slungshot, billy, sandclub, sandbag, bludgeon, metal knuckles, dirk, or dagger. | Objection to inclusion.<br><br>This 20th-century law banning the transfer and manufacture of certain arms should not be considered because it is not consistent with earlier laws. *Bruen*, 142 S.Ct. at 2154, n.28.<br><br>Also, if the State's claim is that the arms subject to this law are "dangerous and unusual," the law is not "relevantly similar" to CA's ban on magazines in common use for lawful purposes. *Id.* at 2133. |
| 256 | 1917 | California | 1917 Cal. Stat. 221, § 2 | Prohibited the possession of any instrument or weapon of the kind commonly known as a blackjack, slungshot, billy, sandclub, sandbag, bludgeon, metal knuckles, bomb, or bombshells, and the carrying of any dirk or dagger. | Objection to inclusion.<br><br>This 20th-century law banning the possession of certain arms should not be considered because it is not consistent with earlier laws. *Bruen*, 142 S.Ct. at 2154, n.28.<br><br>Also, if the State's claim is that the arms subject to this law are "dangerous and unusual," the law is not "relevantly similar" to CA's ban on magazines in common use for lawful purposes. *Id.* at 2133. |

129

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| 257 | 1917 | California | 1917 Cal. Stat. 221, § 5 | Prohibited the use, or carrying or possession with the intent to use, any dagger, dirk, dangerous knife, razor, stiletto, loaded pistol, revolver, or other firearm, blackjack, slungshot, billy, sandclub, sandbag, metal knuckles, bomb, bombshell, or other "dangerous or deadly instrument or weapon." | Objection to inclusion.<br><br>This 20th-century law banning the use of and possession with intent to use certain arms should not be considered because it is not consistent with earlier laws. *Bruen*, 142 S.Ct. at 2154, n.28.<br><br>Also, if the State's claim is that the arms subject to this law are "dangerous and unusual," the law is not "relevantly similar" to CA's ban on magazines in common use for lawful purposes. *Id.* at 2133. |
| 258 | 1917 | Missouri – City of Joplin | Joplin Code of 1917, Art. 67, § 1201. | Prohibited the carrying of a concealed firearm, Bowie knife, spring-back knife, razor, knuckles, bill, sword cane, dirk, dagger, slungshot, or other similar deadly weapons in a church, school, election site, court, or other public setting. Also prohibits using the weapon in a threatening manner, using while intoxicated, or selling to a minor. | Objection to inclusion.<br><br>This law's carry restriction is not "relevantly similar" to CA's magazine ban. It does not ban possession or manufacture of any arm. Instead, it regulates carry of certain arms and, even then, it only regulates *how* and *where* they are carried. *Bruen*, 142 S.Ct. at 2133.<br><br>The law's transfer restriction is not "relevantly similar" either. It restricted only the transfer of certain arms to *minors*. It did not flatly ban possession by *anyone*, nor did not ban transfer to adults. *Id.*<br><br>The law's intoxicated use restriction is not "relevantly similar" either. It restricted only the use of certain arms while intoxicated. It did not flatly ban possession, transfer, or manufacture of any arm. *Id.*<br><br>Further, this was not a state law, but a local law. *Bruen* rejected the notion that |

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|------|------|------|------|------|
| | | | | | ordinances from a few cities are persuasive. *Id.* at 2156. |
| | | | | | Finally, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 259 | 1917 | North Carolina – Harnett County | 1917 N.C. Sess. Laws 309, Pub. Local Laws, An Act to Regulate the Hunting of Quail in Harnett County, ch. 209, § 1 | Prohibited killing quail with a gun that shoots over two times before reloading. | Objection to inclusion. This 20th-century law banning the killing of quail with certain arms in a single county should not be considered because it is not consistent with earlier laws. *Bruen*, 142 S.Ct. at 2154, n.28. Further, this law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It merely regulates which arms may be used for hunting wild game. *Id.* at 2133. Also, if the State's claim is that the arms subject to this law are "dangerous and unusual," the law is not "relevantly similar" to CA's ban on magazines in common use for lawful purposes. *Id.* |
| 260 | 1917 | Oregon | 1917 Or. Sess. Laws 804-08, An Act Prohibiting the manufacture, sale, possession, carrying, or use of any blackjack, slungshot, billy, sandclub, sandbag, metal knuckles, | Prohibited the attempted use, or the carry and possession with the intent to use, any dagger, dirk, dangerous knife, razor, stiletto, loaded pistol, revolver, or other firearm, or any instrument or weapon of the kind commonly | Objection to inclusion. This 20th-century law banning the use of, attempted use of, and possession with intent to use certain arms should not be considered because it is not consistent with earlier laws. *Bruen*, 142 S.Ct. at 2154, n.28. Also, if the State's claim is that the arms |

131

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | dirk, dagger or stiletto, and regulating the carrying and sale of certain firearms, and defining the duties of certain executive officers, and providing penalties for violation of the provisions of this Act, § 7 | known as a blackjack, slungshot, billy, sandclub, sandbag, metal knuckles, bomb, bombshell, or any other "dangerous or deadly weapon." Punishable by a fine of $50-500 or imprisonment for 1-6 months. | subject to this law are "dangerous and unusual," the law is not "relevantly similar" to CA's ban on magazines in common use for lawful purposes. *Id.* at 2133. |
| 261 | 1923 | California | 1923 Cal. Stat. 695, § 1 | Prohibited the manufacture, importation, keeping for sale, offering or exposing for sale, giving, lending, or possession of any instrument or weapon commonly known as a blackjack, slungshot, billy, sandclub, sandbag, metal knuckles, and the concealed carrying of any dirk or dagger. Punishable by imprisonment for 1-5 years. | Objection to inclusion.<br><br>This 20th-century law banning the possession, transfer, and manufacture of certain arms should not be considered because it is not consistent with earlier laws. *Bruen*, 142 S.Ct. at 2154, n.28.<br><br>The restriction on concealed carry is not "relevantly similar" because it regulates only carry of certain arms and, even then, it only regulates *how* they are carried. *Id.* at 2133. |
| 262 | 1923 | Missouri | 1923 Mo. Laws 241-42, An Act to Provide the Exercise of the Police Powers of the State by and through Prohibiting the Manufacture, Possession, Transportation, Sale and Disposition of Intoxicating Liquors. . .§ 17 | Prohibited the carrying, while a passenger or operating a moving vehicle, of a revolver, gun or other firearm, or explosive, any Bowie knife, or other knife having a blade of more than two and one-half inches in length, any slingshot, brass knucks, billy, club or other dangerous weapon. Punishable by imprisonment of minimum 2 years. | Objection to inclusion.<br><br>This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms and, even then, it only applies when operating or a passenger in a moving vehicle. *Bruen*, 142 S.Ct. at 2133.<br><br>Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it |

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|-------------------|--------------|----------|--------------------------|----------------------|
| | | | | | can rightly bear."). |
| 263 | 1923 | South Carolina | 1923 S.C. Acts 221 | Prohibited the selling or giving to a minor a pistol or pistol cartridge, brass knucks, Bowie knife, dirk, loaded cane or slingshot. Also prohibited a parent from giving such a weapon to their child under 12 years old. Punishable by fine up to $50 or imprisonment up to 30 days. | Objection to inclusion. The law is not "relevantly similar" to CA's magazine ban because it restricted only the transfer of certain arms to *minors*. It did not flatly ban possession by *anyone* over 12 years old, nor did not ban transfer to adults. *Bruen*, 142 S.Ct. at 2133. Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 264 | 1923 | Vermont | 1923 Vt. Acts and Resolves 127, An Act to Prohibit the Use of Machine Guns and Automatic Rifles in Hunting, § 1 | Prohibited using, carrying, or possessing a machine gun or automatic rifle while hunting. | Objection to inclusion. This 20th-century law banning the possession of certain arms while hunting should not be considered because it is not consistent with earlier laws. *Bruen*, 142 S.Ct. at 2154, n.28. Also, if the State's claim is that the arms subject to this law are "dangerous and unusual," the law is not "relevantly similar" to CA's ban on magazines in common use for lawful purposes. *Bruen*, 142 S.Ct. at 2133. |
| 265 | 1925 | | 1925 Or. Laws 42, An Act Prohibiting the Placing of Spring-Guns or Set-Guns; and Providing a Penalty Therefor, ch. 31, §§ 1-2 | Prohibited the setting of any loaded spring gun. Punishable by a fine of $100-500 or imprisonment for 30 days to 6 months. Exception for setting of | Objection to inclusion. The law is not "relevantly similar" to CA's magazine ban. It does not regulate the possession of any arm. It regulates only how arms are used (i.e., the setting of "spring |

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | | trap gun to destroy burrowing rodents. | guns" and "set guns"). And it regulates for completely different reasons than CA's magazine ban (i.e., to prevent unintended discharges). *Bruen*, 142 S.Ct. at 2133.<br><br>Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 266 | 1925 | West Virginia | 1925 W.Va. Acts 25-30, 1st Extraordinary Sess., An Act to Amend and Re-Enact Section Seven . . . Relating to Offenses Against the Peace; Providing for the Granting and Revoking of Licenses and Permits Respecting the Use, Transportation and Possession of Weapons and Fire Arms. . . , ch. 3, § 7(a) | Prohibited unlicensed carrying of a pistol, dirk, Bowie knife, slungshot, razor, billy, metallic or other false knuckles, or any other dangerous or deadly weapon.  Punishable by imprisonment for 6-12 months for the first offense, and for 1-5 years for subsequent offenses, and in either case, a fine of $50-200. | Objection to inclusion.<br><br>This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms and, even then, it only applies to unlicensed carry. *Bruen*, 142 S.Ct. at 2133.<br><br>Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 267 | 1925 | West Virginia | 1925 W.Va. Acts 31-32, 1st Extraordinary Sess., An Act to Amend and Re-Enact Section Seven . . . Relating to Offenses Against the Peace . . . , ch. 3, § 7, pt. b | Prohibited publicly displaying for rent or sale any revolver, pistol, dirk, Bowie knife, slungshot, other dangerous weapon, machine gun, submachine gun, or high powered rifle. Requires dealers to keep a register.  Prohibited selling, renting, giving, or | Objection to inclusion.<br><br>This 20th-century law banning the public display of certain arms for sale or rent should not be considered because it is not consistent with earlier laws. *Bruen*, 142 S.Ct. at 2154, n.28.<br><br>Further, this law is not "relevantly similar" to CA's magazine ban. It did not ban |

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | | lending any of these weapons to an unnaturalized person. | possession by anyone, nor did not ban transfer to citizens. *Id.* at 2133.<br><br>Also, if the State's claim is that the arms subject to this law are "dangerous and unusual," the law is not "relevantly similar" to CA's ban on magazines in common use for lawful purposes. *Id.* |
| 268 | 1925 | West Virginia | 1925 W.Va. Acts 30-31, 1st Extraordinary Sess., An Act to Amend and Re-Enact Section Seven . . . Relating to Offenses Against the Peace; Providing for the Granting and Revoking of Licenses and Permits Respecting the Use, Transportation and Possession of Weapons and Fire Arms . . . , ch. 3, § 7, pt. b | Prohibited carrying, transporting, or possessing a machine gun, submachine gun, or high powered rifle except on their own premises and with a permit. Also provides guidelines for such a permit. | Objection to inclusion.<br><br>This 20th-century law banning possession of certain arms without a permit should not be considered because it is not consistent with earlier laws. *Bruen*, 142 S.Ct. at 2154, n.28.<br><br>But even if the law's possession restriction were not inconsistent with earlier laws, it is not "relevantly similar" because it regulates differently that CA's flat magazine ban.<br><br>The law's restriction on carry is not "relevantly similar" either because it does not ban possession, sale, or transfer of any arm.<br><br>Also, if the State's claim is that the arms subject to this law are "dangerous and unusual," the law is not "relevantly similar" to CA's ban on magazines in common use for lawful purposes. *Id.*<br><br>Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; see also *Bruen*, 142 S.Ct. at 2136 (cautioning against "giving post enactment history more weight than it can rightly bear.") |

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|------|------|------|------|------|
| 269 | 1927 | California | 1927 Cal. Stat. 938, An Act to Prohibit the Possession of Machine Rifles, Machine Guns and Submachine Guns Capable of Automatically and Continuously Discharging Loaded Ammunition of any Caliber in which the Ammunition is Fed to Such Guns from or by Means of Clips, Disks, Drums, Belts or other Seperable Mechanical Device, and Providing a Penalty for Violation Thereof, ch. 552, §§ 1 2 | Prohibited a person, firm, or corporation possessing a machine gun. Punishable by imprisonment up to 3 years and/or fine up to $5,000. | Objection to inclusion.<br><br>This 20th-century law banning possession of certain arms should not be considered because it is not consistent with earlier laws. *Bruen*, 142 S.Ct. at 2154, n.28.<br><br>Also, if the State's claim is that the arms subject to this law are "dangerous and unusual," the law is not "relevantly similar" to CA's ban on magazines in common use for lawful purposes. *Id.* |
| 270 | 1927 | Indiana | 1927 Ind. Acts 469, Public Offenses—Ownership, Possession or Control of Machine Guns or Bombs—Penalty, ch. 156, § 1 | Prohibited owning or possessing a machine gun or bomb in an automobile. Punishable by imprisonment for 1-5 years. | Objection to inclusion.<br><br>This 20th-century law banning possession of certain arms in an automobile should not be considered because it is not consistent with earlier laws. *Bruen*, 142 S.Ct. at 2154, n.28.<br><br>Also, if the State's claim is that the arms subject to this law are "dangerous and unusual," the law is not "relevantly similar" to CA's ban on magazines in common use for lawful purposes. *Id.* |
| 271 | 1927 | Indiana | 1927 Ind. Acts 469, Operation of Machine Guns, Discharge of Bombs—Offense and Penalty:, ch. 156, § 2 | Prohibited discharging a machine gun or bomb. Punishable by imprisonment for 2-10 years. | Objection to inclusion.<br><br>This 20th-century law banning the discharge of certain arms should not be considered |

**ER_576**

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | | | because it is not consistent with earlier laws. *Bruen*, 142 S.Ct. at 2154, n.28.<br><br>Also, if the State's claim is that the arms subject to this law are "dangerous and unusual," the law is not "relevantly similar" to CA's ban on magazines in common use for lawful purposes. *Id.* at 2133. |
| 272 | 1927 | Iowa | 927 Iowa Acts 201, An Act to prohibit the Possession or Control of Machine Guns. . . ., §§ 1 2 | Prohibited possession of a machine gun. | Objection to inclusion.<br><br>This 20th-century law banning possession of certain arms without a permit should not be considered because it is not consistent with earlier laws. *Bruen*, 142 S.Ct. at 2154, n.28.<br><br>Also, if the State's claim is that the arms subject to this law are "dangerous and unusual," the law is not "relevantly similar" to CA's ban on magazines in common use for lawful purposes. *Id.* |
| 273 | 1927 | Maryland | 1927 Md. Laws 156, § 388-B | Prohibited possession of liquor in an automobile that also carries a gun, pistol, revolver, rifle machine gun, or other dangerous or deadly weapon. | Objection to inclusion.<br><br>This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It restricts only the possession of *liquor in an automobile* when one is carrying certain arms. *Bruen*, 142 S.Ct. at 2133.<br><br>Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |

137

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|------------------|--------------|----------|--------------------------|----------------------|
| 274 | 1927 | Massachusetts | 1927 Mass. Acts 416, An Act Relative to Machine Guns and Other Firearms, ch. 326, § 5 | Prohibited the carrying of a pistol, revolver, machine gun, stiletto, dagger, dirk knife, slungshot, metallic knuckles, or sawed off shotgun, billy, or dangerous weapon if arrested upon a warrant for an alleged crime. Punishable by imprisonment of 6 months to 2.5 years. | Objection to inclusion. <br><br>This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It regulates only carry of certain arms and, even then, only when arrested for an alleged crime. *Bruen*, 142 S.Ct. at 2133. <br><br>Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 275 | 1927 | Massachusetts | 1927 Mass. Acts 413, An Act Relative to Machine Guns and Other Firearms, ch. 326, §§ 1-2 (amending §§ 121, 123) | Prohibited selling, renting, or leasing a pistol, revolver, or machine gun to a person without a license to possess the same. | Objection to inclusion. <br><br>This 20th-century law banning transfer of certain arms (including common arms) to individuals without a permit should not be considered because it is not consistent with earlier laws. *Bruen*, 142 S.Ct. at 2154, n.28. <br><br>Also, if the State's claim is that (at least some of the) arms subject to this law are "dangerous and unusual," the law is not "relevantly similar" to CA's ban on magazines in common use for lawful purposes. *Id.* |
| 276 | 1927 | Michigan | 1927 Mich. Pub. Acts 888-89, An Act to Regulate and License the Selling, Purchasing, Possessing and Carrying of Certain Firearms, § 3 | Prohibited manufacturing, selling, or possessing a machine gun, silencer, bomb, bombshell, blackjack, slungshot, billy, metallic knuckles, sandclub, | Objection to inclusion. <br><br>This 20th-century law banning possession, transfer, and manufacture of certain arms should not be considered because it is not consistent with earlier laws. *Bruen*, 142 S.Ct. at 2154, n.28. |

138

**ER_578**

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|-------------------|--------------|----------|--------------------------|----------------------|
| | | | | bludgeon. Punishable by fine up to $1,000 or imprisonment. | Also, if the State's claim is that the arms subject to this law are "dangerous and unusual," the law is not "relevantly similar" to CA's ban on magazines in common use for lawful purposes. *Id.* |
| 277 | 1927 | Michigan | 1927 Mich. Pub. Acts 888-89, An Act to Regulate and License the Selling, Purchasing, Possessing and Carrying of Certain Firearms, § 3 | Prohibited manufacturing, selling, or possessing a machine gun or firearm that can be fired more than 16 times without reloading. Also Prohibited the same for a muffler or silencer. Punishable by fine of $1,000 and/or imprisonment up to 5 years. | Objection to inclusion. This 20th-century law banning possession, transfer, and manufacture of certain arms without a permit should not be considered because it is not consistent with earlier laws. *Bruen*, 142 S.Ct. at 2154, n.28. Also, if the State's claim is that the arms subject to this law are "dangerous and unusual," the law is not "relevantly similar" to CA's ban on magazines in common use for lawful purposes. *Id.* |
| 278 | 1927 | New Jersey | 1927 N.J. Laws 742, A Further Supplement to an Act Entitled, "An Act for the Punishment of Crimes," ch. 321, § 1 | Prohibited a pawnbroker from selling or possessing for sale, loan, or to give away a machine gun, automatic rifle, revolver, pistol, or other firearm, or other instrument of any kind known as a blackjack, slungshot, billy, sandclub, sandbag, bludgeon, metal knuckles, dagger, dirk, dangerous knife, stiletto, bomb or other high explosive. Punishable as a high misdemeanor. | Objection to inclusion. This 20th-century law banning pawnbrokers from transferring or possessing certain arms should not be considered because it is not consistent with earlier laws. *Bruen*, 142 S.Ct. at 2154, n.28. Also, if the State's claim is that the arms subject to this law are "dangerous and unusual," the law is not "relevantly similar" to CA's ban on magazines in common use for lawful purposes. *Id.* |
| 279 | 1927 | New Jersey | 1927 N.J. Laws 180-81, A Supplement to an Act Entitled "An Act for the | Prohibited selling, giving, loaning, delivering or furnishing, or possessing a machine gun or | Objection to inclusion. This 20th-century law banning the transfer of certain arms to individuals without a permit |

139

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|-----|-----|-----|-----|-----|
| | | | Punishment of Crimes," ch. 95, §§ 1-2 | automatic rifle to another person without a license. | should not be considered because it is not consistent with earlier laws. *Bruen*, 142 S.Ct. at 2154, n.28.<br><br>Also, if the State's claim is that the arms subject to this law are "dangerous and unusual," the law is not "relevantly similar" to CA's ban on magazines in common use for lawful purposes. *Id.* |
| 280 | 1927 | Rhode Island | 1927 (January Session) R.I. Pub. Laws 256, An Act to Regulate the Possession of Firearms: §§ 1, 4, 5, 6 | Prohibited carrying a concealed pistol and Prohibited manufacturing, selling, purchasing, or possessing a machine gun. | <u>Objection to inclusion.</u><br><br>This 20th-century law banning the possession, transfer, and manufacture of certain arms should not be considered because it is not consistent with earlier laws. *Bruen*, 142 S.Ct. at 2154, n.28.<br><br>Also, if the State's claim is that the arms subject to this law are "dangerous and unusual," the law is not "relevantly similar" to CA's ban on magazines in common use for lawful purposes. *Id.*<br><br>The restriction on concealed carry of pistols is not "relevantly similar" because it regulates only carry of certain arms and, even then, it only regulates *how* they are carried. *Id.* at 2133.<br><br>Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |

**ER_580**

***Duncan v. Bonta***, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|------|------|------|------|------|
| 281 | 1927 | Rhode Island | 1927 R. I. Pub. Laws 256, An Act to Regulate the Possession of Firearms: §§ 1, 4, 7, 8. | Prohibited carrying a concealed pistol and Prohibited manufacturing, selling, purchasing, or possessing a machine gun or silencer. | Objection to inclusion.<br><br>This 20th-century law banning the possession, transfer, and manufacture of certain arms should not be considered because it is not consistent with earlier laws. *Bruen*, 142 S.Ct. at 2154, n.28.<br><br>Also, if the State's claim is that the arms subject to this law are "dangerous and unusual," the law is not "relevantly similar" to CA's ban on magazines in common use for lawful purposes. *Id.*<br><br>The restriction on concealed carry of pistols is not "relevantly similar" because it regulates only carry of certain arms and, even then, it only regulates *how* they are carried. *Id.* at 2133. |
| 282 | 1927 | Rhode Island | 1927 R.I. Pub. Laws 256, An Act to Regulate the Possession of Firearms, §§1, 3 | Prohibited a person who has previously been convicted of a violent crime from owning, carrying, or possessing any firearm (including machine gun or pistol). | Objection to inclusion.<br><br>This law is not "relevantly similar" to CA's magazine ban. It does not ban the transfer or manufacture of any arm, and it only restricts possession and carry of firearms by those convicted of a violent crime. *Bruen*, 142 S.Ct. at 2133.<br><br>Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 283 | 1929 | Indiana | 1929 Ind. Acts 139, Criminal Offenses— | Prohibited being armed with a pistol, revolver, rifle shotgun, | Objection to inclusion.<br><br>This law is not "relevantly similar" to CA's |

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | Commission of or Attempt to Commit Crime While Armed with Deadly Weapon, ch. 55, § 1 | machine gun, or any other firearm or dangerous weapon while committing or attempting to commit a crime of rape, robbery, bank robbery, or larceny. Punishable by imprisonment for 10-20 years, in addition to the punishment for the original crime. | magazine ban. It does not ban possession, transfer, or manufacture of any arm. It restricts only the possession of certain arms while committing or attempting to commit rape, robbery, bank robbery, or larceny. *Bruen*, 142 S.Ct. at 2133.<br><br>Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 284 | 1929 | Michigan | 1929 Mich. Pub. Acts 529, An Act to Regulate and License the Selling, Purchasing, Possessing and Carrying of Certain Firearms, § 3 | Prohibited manufacturing, selling, or possessing a machine gun, silencer, bomb, bombshell, blackjack, slungshot, billy, metallic knuckles, sandclub, sandbag, bludgeon, or any gas ejecting device. | Objection to inclusion.<br><br>This 20th-century law banning possession, transfer, and manufacture of certain arms should not be considered because it is not consistent with earlier laws. *Bruen*, 142 S.Ct. at 2154, n.28.<br><br>Also, if the State's claim is that the arms subject to this law are "dangerous and unusual," the law is not "relevantly similar" to CA's ban on magazines in common use for lawful purposes. *Id.* |
| 285 | 1929 | Michigan | 1929 Mich. Pub. Acts 529, An Act to Regulate and License the Selling, Purchasing, Possessing and Carrying of Certain Firearms, § 3 | Prohibited manufacturing, selling, or possessing a machine gun or firearm that can be fired more than 16 times without reloading. Also Prohibited the same for a muffler or silencer. | Objection to inclusion.<br><br>This 20th-century law banning possession, transfer, and manufacture of certain arms should not be considered because it is not consistent with earlier laws. *Bruen*, 142 S.Ct. at 2154, n.28.<br><br>Also, if the State's claim is that the arms subject to this law are "dangerous and |

142

***Duncan v. Bonta***, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|-------------------|--------------|----------|--------------------------|----------------------|
| | | | | | unusual," the law is not "relevantly similar" to CA's ban on magazines in common use for lawful purposes. *Id.* |
| 286 | 1929 | Missouri | 1929 Mo. Laws 170, Crimes and Punishment, Prohibiting the Sale, Delivery, Transportation, Possession, or Control of Machine Rifles, Machine Guns and Sub-machine Guns, and Providing Penalty for Violation of Law, §§ 1-2 | Prohibited selling, delivering, transporting, and possessing a machine gun. Punishable by imprisonment of 2-30 years and/or fine up to $5,000. | Objection to inclusion. This 20th-century law banning possession, transfer, and manufacture of certain arms should not be considered because it is not consistent with earlier laws. *Bruen*, 142 S.Ct. at 2154, n.28. Also, if the State's claim is that the arms subject to this law are "dangerous and unusual," the law is not "relevantly similar" to CA's ban on magazines in common use for lawful purposes. *Id.* |
| 287 | 1929 | Nebraska | 1929 Neb. Laws 674, An Act Prohibiting the Sale, Possession and Transportation of Machine Guns within the State of Nebraska; and Prescribing Penalties for the Violation of the Provisions Hereof, ch. 190, §§ 1-2 | Prohibited selling or otherwise disposing of a machine gun. Punishable by fine of $1,000-$10,000. Also Prohibited transporting or possessing a machine gun.  Punishable by imprisonment for 1-10 years. | Objection to inclusion. This 20th-century law banning possession and transfer of certain arms should not be considered because it is not consistent with earlier laws. *Bruen*, 142 S.Ct. at 2154, n.28. Also, if the State's claim is that the arms subject to this law are "dangerous and unusual," the law is not "relevantly similar" to CA's ban on magazines in common use for lawful purposes. *Id.* |
| 288 | 1929 | Pennsylvania | 1929 Pa. Laws 777, An Act prohibiting the sale, giving away, transfer, purchasing, owning, possession and use of machine guns: §§1 4 | Prohibited selling, giving, transferring, or possessing a machine gun. Punishable by fine up to $1,000 and imprisonment by separate or solitary confinement at labor up to 5 years. Also Prohibited using a | Objection to inclusion. This 20th-century law banning possession, transfer, and manufacture of certain arms should not be considered because it is not consistent with earlier laws. *Bruen*, 142 S.Ct. at 2154, n.28. |

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|-------------------|--------------|----------|---------------------------|----------------------|
| | | | | machine gun during an attempted crime. Punishable by separate and solitary confinement at labor for up to 10 years. | Also, if the State's claim is that the arms subject to this law are "dangerous and unusual," the law is not "relevantly similar" to CA's ban on magazines in common use for lawful purposes. *Id.* <br><br> The law's ban on using a machine gun in the commission of a crime is not "relevantly similar." *Id.* at 2133. |
| 289 | 1929 | Pennsylvania | 1929 Pa. Laws 777, An Act prohibiting the sale, giving away, transfer, purchasing, owning, possession and use of machine guns, § 3 | Prohibited being armed with a machine gun while committing a crime. Punishable by imprisonment with solitary confinement up to 10 years. | <u>Objection to inclusion.</u> <br><br> This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It restricts only the possession of certain arms while committing or attempting to commit a crime. *Bruen*, 142 S.Ct. at 2133. <br><br> Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 290 | 1929 | Wisconsin | 1928-1929 Wis. Sess. Laws 157, An Act to Create . . . the Statutes, Relating to Machine Guns and Providing a Penalty, ch. 132, § 1 | Prohibited owning, using, or possession a machine gun. Punishable by imprisonment of 1-15 years. | <u>Objection to inclusion.</u> <br><br> This 20th-century law banning possession and use of certain arms should not be considered because it is not consistent with earlier laws. *Bruen*, 142 S.Ct. at 2154, n.28. <br><br> Also, if the State's claim is that the arms subject to this law are "dangerous and unusual," the law is not "relevantly similar" to CA's ban on magazines in common use for lawful purposes. *Id.* |

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|-------------------|--------------|----------|--------------------------|----------------------|
| 291 | 1931 | Delaware | 1931 Del. Laws 813, An Act Making it Unlawful for any Person or Persons Other than the State Military Forces or Duly Authorized Police Departments to have a Machine Gun in his or their Possession, and Prescribing a Penalty for Same, ch. 249, § 1 | Prohibited a person from possessing a machine gun. Punishable by fine and/or imprisonment. | Objection to inclusion.<br><br>This 20th-century law banning possession of certain arms should not be considered because it is not consistent with earlier laws. *Bruen*, 142 S.Ct. at 2154, n.28.<br><br>Also, if the State's claim is that the arms subject to this law are "dangerous and unusual," the law is not "relevantly similar" to CA's ban on magazines in common use for lawful purposes. *Id.* |
| 292 | 1931 | Illinois | 1931 Ill. Laws 452-53, An Act to Regulate the Sale, Possession and Transportation of Machine Guns, §§ 1-2 | Prohibited selling, loaning, or giving away, purchasing, possessing, carrying, or transporting any machine gun. | Objection to inclusion.<br><br>This 20th-century law banning possession and transfer of certain arms should not be considered because it is not consistent with earlier laws. *Bruen*, 142 S.Ct. at 2154, n.28.<br><br>Also, if the State's claim is that the arms subject to this law are "dangerous and unusual," the law is not "relevantly similar" to CA's ban on magazines in common use for lawful purposes. *Id.*<br><br>The law's restriction on carrying and transporting certain arm is not "relevantly similar" because it does not ban possession, transfer, or manufacture or any arm. *Id.*<br><br>Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|-------------------|--------------|----------|--------------------------|----------------------|
| 293 | 1931 | Illinois | 1931 Ill. Laws 454, An Act to Regulate the Sale, Possession and Transportation of Machine Guns, § 7 | Prohibited being armed with a machine gun while committing arson, assault, burglary, kidnapping, larceny, rioting, or robbery. Punishable by imprisonment for 5 years to life. | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It restricts only the possession of certain arms while engaged in arson, assault, burglary, kidnapping, larceny, rioting, or robbery. *Bruen*, 142 S.Ct. at 2133. Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 294 | 1931 | Michigan | 1931 Mich. Pub. Acts 671, The Michigan Penal Code, ch. 37, § 236 | Prohibited the setting of any spring or trap gun. | Objection to inclusion. The law is not "relevantly similar" to CA's magazine ban. It does not regulate the possession of any arm. It regulates only how arms are used (i.e., the setting of "trap guns" and "spring guns"). And it regulates for completely different reasons than CA's magazine ban (i.e., to prevent unintended discharges). *Bruen*, 142 S.Ct. at 2133. Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 295 | 1931 | New York | 1931 N.Y. Laws 1033, An Act to Amend the Penal Law in Relation to | Prohibited using an imitation pistol and carrying or possessing a black-jack, slungshot, billy, | Objection to inclusion. This law is not "relevantly similar" to CA's |

146

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | Carrying and Use of Glass Pistols, ch. 435, § 1 | sandclub, sandbag, metal knuckles, bludgeon, dagger, dirk, dangerous knife, razor, stiletto, imitation pistol, machine gun, sawed off shot-gun, or any other dangerous or deadly weapon. | magazine ban. It does not a flat ban on possession, transfer, or manufacture of any arm. It regulates only the use of imitation pistols "against another" and the carry and possession of certain arms with the intent to use the same unlawfully against another. *Bruen*, 142 S.Ct. at 2133. |

Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear.").

To the extent that this 20th century law flatly prohibits any the possession of any arm in common use for lawful purposes, it should not be considered because it is not consistent with earlier laws. *Bruen*, 142 S.Ct. at 2154, n.28.

Objection to description.

The law was not a flat a restriction on use, possession, or carry on all the arms listed by the State. It restricted the possession and carry of certain arms only "with intent to use the same unlawfully against another" and the use of "imitation pistols" "against another."

The relevant language is as follows: A person who attempts to use **against another** an imitation pistol, or who carries or possesses any instrument or weapon of the kind commonly known as a black-jack, slungshot, billy, sand club, sandbag, metal

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|-------------------|--------------|----------|---------------------------|----------------------|
|  |  |  |  |  | knuckles, bludgeon, **or who, with intent to use the same unlawfully against another, carries or possesses a dagger, dirk, dangerous knife, razor, stiletto, imitation pistol, machine gun, sawed off shot-gun, or any other dangerous or deadly instrument**, or weapon is guilty of a misdemeanor, and if he has been previously convicted of any crime he is guilty of a felony. |
| 296 | 1931 | North Dakota | 1931 N.D. Laws 305-06, An Act to Prohibit the Possession, Sale and Use of Machine Guns, Sub-Machine Guns, or Automatic Rifles and Defining the Same . . . , ch. 178, §§ 1-2 | Prohibited selling, giving, loaning, furnishing, or delivering a machine gun, submachine gun, automatic rifle, or bomb (without a license). Punishable by imprisonment up to 10 years and/or fine up to $3,000. | Objection to inclusion. This 20th-century law banning the use of certain arms should not be considered because it is not consistent with earlier laws. *Bruen*, 142 S.Ct. at 2154, n.28. Also, if the State's claim is that the arms subject to this law are "dangerous and unusual," the law is not "relevantly similar" to CA's ban on magazines in common use for lawful purposes. *Id.* |
| 297 | 1931 | South Carolina | 1931 S.C. Acts 78, An Act Declaring it unlawful for any person, firm, or corporation to place a loaded trap gun, spring gun, or any like devise in any building, or in any place, and providing punishment for the violation thereof: § 1 | Prohibited the setting of any loaded trap gun or spring gun. Punishable by a fine of $100-500 or imprisonment of 30 days to 1 year. | Objection to inclusion. The law is not "relevantly similar" to CA's magazine ban. It does not regulate the possession of any arm. It regulates only how arms are used (i.e., the setting of "trap guns" and "spring guns"). And it regulates for completely different reasons than CA's magazine ban (i.e., to prevent unintended discharges). *Bruen*, 142 S.Ct. at 2133. Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, |

148

**ER_588**

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | | | 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 298 | 1932 | District of Columbia | District of Columbia 1932: 1932, Public-No. 275-72D Congress, ch. 465 | Prohibited being armed with or having readily available any pistol or other firearm while committing a violent crime. In addition to being punished for the crime, will also be punished with imprisonment (various terms depending on the number of previous convictions). Additionally, Prohibited people convicted of violent crimes from owning or possessing a pistol. Prohibited carrying a concealed deadly or dangerous weapon. Regulates the sale and transfer of pistols. | Objection to inclusion. <br><br> This law is not "relevantly similar" to CA's magazine ban. It does not ban the possession, transfer, or manufacture of any arm. Instead, it bans the possession of firearms only while committing a violent crime and by those convicted of violent crimes. And it merely regulates, but does not ban, the transfer of pistols. *Bruen*, 142 S.Ct. 2133. <br><br> Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 299 | 1932 | Louisiana | 1932 La. Acts 337-38, An Act to Regulate the Sale, Possession and Transportation of Machine Guns, and Providing a Penalty for a Violation Hereof . . . , §§ 1 2 | Prohibited selling, loaning, giving, purchasing, possession, carrying, or transporting a machine gun. | Objection to inclusion. <br><br> This 20th-century law banning possession and transfer of certain arms should not be considered because it is not consistent with earlier laws. *Bruen*, 142 S.Ct. 2154, n.28. <br><br> Also, if the State's claim is that the arms subject to this law are "dangerous and unusual," the law is not "relevantly similar" to CA's ban on magazines in common use for lawful purposes. *Id.* |
| 300 | 1933 | California | 1933 Cal. Stat. 1169 | Prohibited a person, firm, or corporation from selling, possessing or transporting a | Objection to inclusion. |

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|------|------|------|------|------|
| | | | | machine gun. Punishable by imprisonment up to 3 years and/or fine up to $5,000. | This 20th-century law banning possession and transfer of certain arms should not be considered because it is not consistent with earlier laws. *Bruen*, 142 S.Ct. at 2154, n.28.<br><br>Also, if the State's claim is that the arms subject to this law are "dangerous and unusual," the law is not "relevantly similar" to CA's ban on magazines in common use for lawful purposes. *Id.* |
| 301 | 1933 | Florida | 1933 Fla. Laws 623, An Act to Prevent Throwing of Bombs and the Discharge of Machine Guns Upon, or Across Any Public Road in the State of Florida . . ., ch. 16111, § 1 | Prohibited throwing a bomb or shooting a machine gun across or along a street or highway, any public park or place where people assemble with the intent to do bodily harm. Punishable by death. | Objection to inclusion.<br><br>This law is not "relevantly similar" to CA's magazine ban. It does not ban possession, transfer, or manufacture of any arm. It merely bans shooting or throwing certain projectiles at vehicles with the intent to do bodily harm. *Bruen*, 142 S.Ct. at 2133.<br><br>Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 302 | 1933 | Hawaii | 1933 Haw. Special Sess. Laws 117, An Act . . . Regulating The Sale, Transfer And Possession Of Certain Firearms, Tear Gas And Ammunition: § 2 | Prohibited a person, firm, or corporation from owning, possessing, selling, or transporting a machine gun, shell cartridge, or bomb containing or capable of emitting tear gas or other noxious gas. | Objection to inclusion.<br><br>This 20th-century law banning possession and transfer of certain arms should not be considered because it is not consistent with earlier laws. *Bruen*, 142 S.Ct. at 2154, n.28.<br><br>Also, if the State's claim is that the arms subject to this law are "dangerous and unusual," the law is not "relevantly similar" to CA's ban on magazines in common use |

**ER_590**

**Duncan v. Bonta**, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | | | for lawful purposes. *Id.* |
| 303 | 1933 | Kansas | 1933 Kan. Sess. Laws 76, An Act Relating to Machine Guns and Other Firearms Making the Transportation or Possession Thereof Unlawful in Certain Cases, Providing for Search, Seizure and Confiscation Thereof in Certain Cases, Relating to the Ownership and Registration of Certain Firearms, and Providing Penalties for the Violation of this Act, ch. 62, §§ 1 3 | Prohibited possession of a machine rifle, machine gun, or submachine gun. | Objection to inclusion.<br><br>This 20th-century law banning possession of certain arms should not be considered because it is not consistent with earlier laws. *Bruen*, 142 S.Ct. at 2154, n.28.<br><br>Also, if the State's claim is that the arms subject to this law are "dangerous and unusual," the law is not "relevantly similar" to CA's ban on magazines in common use for lawful purposes. *Id.* |
| 304 | 1933 | Minnesota | 1933 Minn. Laws 231-33, An Act Making It Unlawful to Use, Own, Possess, Sell, Control or Transport a "Machine Gun", as Hereinafter Defined, and Providing a Penalty for the Violation Thereof, ch. 190, §§ 1-3 | Prohibited owning, controlling, using, possessing, selling, or transporting a machine gun. | Objection to inclusion.<br><br>This 20th-century law banning possession and transfer of certain arms should not be considered because it is not consistent with earlier laws. *Bruen*, 142 S.Ct. at 2154, n.28.<br><br>Also, if the State's claim is that the arms subject to this law are "dangerous and unusual," the law is not "relevantly similar" to CA's ban on magazines in common use for lawful purposes. *Id.* |
| 305 | 1933 | New York | 1933 N.Y. Laws 1639, An Act to Amend the Penal Law, in Relation to the Sale, Possession and Use of Sub-Machine Guns, ch. 805, §§ 1, 3 | Prohibited selling, giving, disposing of, transporting, or possessing a machine gun or submachine gun to a person guilty of a felony. | Objection to inclusion.<br><br>The law is not "relevantly similar" to CA's magazine ban because it restricted only the possession and transfer of certain arms to convicted felons. It did not ban possession by |

151

***Duncan v. Bonta***, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | | | or transfer to law-abiding citizens. *Bruen*, 142 S.Ct. at 2133. <br><br> Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 306 | 1933 | Ohio | 1933 Ohio Laws 189-90, Reg. Sess., An Act. . . Relative to the Sale and Possession of Machine Guns, § 1 | Prohibited owning, possessing, and transporting a machine gun, light machine gun, or submachine gun without a permit. Punishable by imprisonment of 1-10 years. | Objection to inclusion. <br><br> This 20th-century law banning possession of certain arms without a permit should not be considered because it is not consistent with earlier laws. *Bruen*, 142 S.Ct. at 2154, n.28. <br><br> Also, if the State's claim is that the arms subject to this law are "dangerous and unusual," the law is not "relevantly similar" to CA's ban on magazines in common use for lawful purposes. *Id.* |
| 307 | 1933 | Oregon | 1933 Or. Laws 489, An Act to Amend Sections 72-201, 72-202, 72-207, Oregon Code 1930, ch. 315, §§ 3-4 | Prohibited possession of a machine gun. Also Prohibited carrying a concealed machine gun, pistol, revolver, or other firearm. | Objection to inclusion. <br><br> This 20th-century law banning the possession of certain arms should not be considered because it is not consistent with earlier laws. *Bruen*, 142 S.Ct. at 2154, n.28. <br><br> Also, if the State's claim is that the arms subject to this law are "dangerous and unusual," the law is not "relevantly similar" to CA's ban on magazines in common use for lawful purposes. *Id.* <br><br> The law's restriction on concealed carry is not "relevantly similar" because it regulates only carry of certain arms and, even then, it |

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|-----|------------------|--------------|----------|---------------------------|----------------------|
|  |  |  |  |  | only regulates *how* they are carried. *Id.* at 2133. |
| 308 | 1933 | Oregon | 1933 Or. Laws 488, An Act to Amend Sections 72-201, 72-202, 72-207, Oregon Code 1930, § 2 | Prohibited a unnaturalized person and person convicted of a felony against another person or the government from owning or possessing a pistol, revolver, other firearm, or machine gun. Punishable by imprisonment for 1-5 years. | <u>Objection to inclusion.</u><br><br>The law is not "relevantly similar" to CA's magazine ban because it restricted only the possession of certain arms by convicted felons and unnaturalized persons. It did not flatly ban possession by law-abiding citizens. *Bruen*, 142 S.Ct. at 2133.<br><br>Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 309 | 1933 | South Dakota | 1933 S.D. Sess. Laws 245-47, An Act Relating to Machine Guns, and to Make Uniform the Law with Reference Thereto, ch. 206, §§ 1-8 | Prohibited possession of a machine gun during a violent crime. Punishable by imprisonment up to 15 years. Prohibited using a machine gun offensively or aggressively; punishable by imprisonment up to 15 years. Requires manufacturers to keep a register of machine guns and for owners to converted their machine guns to pistols to register the weapon. | <u>Objection to inclusion.</u><br><br>This law is not "relevantly similar" to CA's magazine ban. It does not flatly ban possession, transfer, or manufacture of any arm. It restricts only the possession or use of a machine gun when engaged in or attempting to engage in murder, manslaughter, kidnapping, rape, mayhem, assault to do great bodily harm, robbery, burglary, housebreaking, breaking and entering, or larceny. *Bruen*, 142 S.Ct. at 2133.<br><br>The law's recordkeeping and registration requirements are not "relevantly similar" either. *Id.* They do not ban the possession, transfer, or manufacture of any arm. |

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | | | Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; see also *Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 310 | 1933 | Texas | 1933 Tex. Gen. Laws 219-20, 1st Called Sess., An Act Defining "Machine Gun" and "Person"; Making It an Offense to Possess or Use Machine Guns. . . , ch. 82, §§ 1-4, 6 | Prohibited possession of a machine gun; punishable by imprisonment up to 10 years. Prohibited selling, leasing, giving, bartering, exchanging, or trading a machine gun; punishable by imprisonment for 2 months to 10 years. | Objection to inclusion.<br><br>This 20th-century law banning possession and transfer of certain arms should not be considered because it is not consistent with earlier laws. *Bruen*, 142 S.Ct. at 2154, n.28.<br><br>Also, if the State's claim is that the arms subject to this law are "dangerous and unusual," the law is not "relevantly similar" to CA's ban on magazines in common use for lawful purposes. *Id.* |
| 311 | 1933 | Washington | 1933 Wash. Sess. Laws 335-36, An Act Relating to Machine Guns, Regulating the Manufacture, Possession, Sale of Machine Guns and Parts, and Providing Penalty for the Violation Thereof, and Declaring an Emergency, ch. 64, §§ 1-5 | Prohibited manufacturing, owning, buying, selling, loaning, furnishing, transporting, or possessing a machine gun. | Objection to inclusion.<br><br>This 20th-century law banning possession, transfer, and manufacture of certain arms should not be considered because it is not consistent with earlier laws. *Bruen*, 142 S.Ct. at 2154, n.28.<br><br>Also, if the State's claim is that the arms subject to this law are "dangerous and unusual," the law is not "relevantly similar" to CA's ban on magazines in common use for lawful purposes. *Id.* |
| 312 | 1934 | New Jersey | 1934 N.J. Laws 394-95, A Further Supplement to an Act Entitled "An Act for | Declares a person who possesses a machine gun or submachine gun a "gangster" and therefore, enemy of the state.  Also | Objection to inclusion.<br><br>This 20th-century law declaring any person who possesses certain arms to be a "gangster" should not be considered because |

**ER_594**

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | the Punishment of Crimes," ch. 155, §§ 1-5 | declares a person who carries a deadly weapon without a permit a "gangster." If convicted a "gangster," punishable by fine up to $10,000 and/or imprisonment up to 20 years. | it is not consistent with earlier laws. *Bruen*, 142 S.Ct. at 2154, n.28. Also, if the State's claim is that the arms subject to this law are "dangerous and unusual," the law is not "relevantly similar" to CA's ban on magazines in common use for lawful purposes. *Id.* Further, the law is not "relevantly similar" to CA's magazine ban. *Id.* at 2133. |
| 313 | 1934 | South Carolina | 1934 S.C. Acts 1288, An Act regulating the use and possession of Machine Guns: §§ 1 to 6 | Prohibited transporting, possessing, selling, renting, or giving a firearm or machine gun. Punishable by fine up to $1,000 and imprisonment with solitary confinement up to 20 years. | Objection to inclusion. This 20th-century law banning possession, transfer, and manufacture of certain arms should not be considered because it is not consistent with earlier laws. *Bruen*, 142 S.Ct. at 2154, n.28. Also, if the State's claim is that the arms subject to this law are "dangerous and unusual," the law is not "relevantly similar" to CA's ban on magazines in common use for lawful purposes. *Id.* |
| 314 | 1934 | Virginia | 1934 Va. Acts 137-39, An Act to define the term "machine gun"; to declare the use and possession of a machine gun for certain purposes a crime and to prescribe the punishment therefor, ch. 96, §§ 1-7 | Prohibited possession or use of a machine gun during a violent crime; punishable by death or imprisonment for a minimum of 20 years. Prohibited unlawful possession or use of a machine gun for offensive or aggressive purposes; punishable by imprisonment for a minimum of 10 years. Requires | Objection to inclusion. This law is not "relevantly similar" to CA's magazine ban. It does not flatly ban possession, transfer, or manufacture of any arm. It restricts the possession and use of certain arms while engaged in illegal activity. *Bruen*, 142 S.Ct. at 2133. Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving |

155

*Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB
**Defendant's Survey of Relevant Statutes (Pre-Founding – 1888)**

| No. | Year of Enactment | Jurisdiction | Citation | Description of Regulation | Plaintiffs' Position |
|---|---|---|---|---|---|
| | | | | manufacturers to keep a register of machine guns. | postenactment history more weight than it can rightly bear."). |
| 315 | 1931-1933 | Wisconsin | 1931-1933 Wis. Sess. Laws 245-47, An Act . . .Relating to Machine Guns and to Make Uniform the Law with Reference Thereto, ch. 76, § 1, pt. 164.01-164.06 | Prohibited using or possessing a machine gun during an attempted violent crime; punishable by imprisonment of minimum 20 years. Prohibited use of a machine gun for offensive or aggressive purposes; punishable by imprisonment of minimum 10 years. | Objection to inclusion.<br><br>This law is not "relevantly similar" to CA's magazine ban. It does not flatly ban possession, transfer, or manufacture of any arm. It restricts only the possession and use of certain arms while engaged in or attempting to engage in violent illegal activity. *Bruen*, 142 S.Ct. at 2133.<br><br>Further, the law was adopted too long after the Founding to be afforded much weight *Heller*, 554 U.S. at 634-635; *see also Bruen*, 142 S.Ct. at 2136 (cautioning against "giving postenactment history more weight than it can rightly bear."). |
| 316 | 1931-1933 | Wisconsin | 1931-1933 Wis. Sess. Laws 778, An Act . . . Relating to the Sale, Possession, Transportation and Use of Machine Guns and Other Weapons in Certain Cases, and Providing a Penalty, ch. 359, § 1 | Prohibited selling, possessing, using, or transporting a machine gun, automatic firearm, bomb, hand grenade, projectile, shell, or other container that can contain tear or other gas. Punishable by imprisonment for 1-3 years. | Objection to inclusion.<br><br>This 20th-century law banning possession and transfer of certain arms should not be considered because it is not consistent with earlier laws. *Bruen*, 142 S.Ct. at 2154, n.28.<br><br>Also, if the State's claim is that the arms subject to this law are "dangerous and unusual," the law is not "relevantly similar" to CA's ban on magazines in common use for lawful purposes. *Id.* |

```
1            UNITED STATES DISTRICT COURT        ┌──────────┐
                                                 │ ORIGINAL │
2        FOR THE SOUTHERN DISTRICT OF CALIFORNIA └──────────┘

3                BEFORE THE HONORABLE
        ROGER T. BENITEZ, DISTRICT JUDGE PRESIDING
4    _____

5   VIRGINIA DUNCAN, et al.,      ) Case No: 3:17-cv-01017-BEN-JLB
                                   )
6   Plaintiffs,                    ) Motion Hearings
                                   ) Department 5A
7            v.                    )
                                   ) Date: 12/12/2022
8   ROB BONTA, in his official     )
    capacity as attorney general   )
9   of the State of California     )
                                   )
10  Defendants.                    )
                                   )
11  _____

12  KIM RHODE, et al.,             ) Case No: 3:18-cv-00802-BEN-JLB
                                   )
13  Plaintiffs,                    )
                                   )
14  v.                             )
                                   )
15  ROB BONTA, in his official     )
    capacity as attorney general   )
16  of the State of California,    )
                                   )
17  Defendants.                    )
18  _____

    JAMES MILLER, et al.,          ) Case No: 3:19-cv-01537-BEN-JLB
19                                 )
    Plaintiffs,                    )
20                                 )
    v.                             )
21                                 )
    CALIFORNIA ATTORNEY GENERAL    )
22  ROB BONTA, et al.,             )
                                   )
23  Defendants.                    )
    _____
24

25        --- caption continued on the following page ---
```

--- caption continued on the following page ---

```
 1  _____
 2  RUSSELL FOUTS, et al.,        ) Case No: 3:19-cv-01662-BEN-JBL
                                  )
 3  Plaintiffs,                   )
                                  )
 4  v.                            )
                                  )
 5  ROB BONTA, in his official    )
    capacity as attorney general  )
 6  of the State of California.   )
                                  )
 7  Defendants.                   )
 8  _____
                REPORTER'S TRANSCRIPT OF PROCEEDINGS
 9
                      Pages 1 through 51
10
11
12
13
14
15
16
17
18
19
20
21      --- appearances continued on the following page ---
22  _____
    REPORTED BY:            Abigail R. Torres, CSR, RPR/RMR, FCRR
23                          CSR No. 13700
                            United States District Court
24                          Southern District of California
                            333 West Broadway, Suite 420
25                          San Diego, California 92101
```

**ER_598**

```
 1    APPEARANCES:

 2

 3    For the Plaintiffs:      MICHEL & ASSOCIATES, PC
      Duncan, et al.          180 East Ocean Boulevard, Suite 200
                              Long Beach, California 90802
 4                            By:  ANNA M. BARVIR, ESQ.
                              By:  SEAN A. BRADY, ESQ.
 5                            By:  KONSTADINOS T. MOROS, ESQ.

 6    For the Defendants:      DEPARTMENT OF JUSTICE
      Becerra, et al.         OFFICE OF ATTORNEY GENERAL
 7                            GOVERNMENT LAW SECTION
                              300 South Spring Street, Suite 9012
 8                            Los Angeles, California 90013
                              By:  KEVIN J. KELLY, ESQ.
 9                                   -oOo-
                              DEPARTMENT OF JUSTICE
10                            OFFICE OF ATTORNEY GENERAL
                              GOVERNMENT LAW SECTION
11                            300 South Spring Street, Suite 1702
                              Los Angeles, California 90013
12                            By:  MARK R. BECKINGTON, ESQ.

13    APPEARANCES:

14    For the Plaintiffs:      MICHEL & ASSOCIATES, PC
      Rhode, et al.           180 East Ocean Boulevard, Suite 200
15                            Long Beach, California 90802
                              By:  ANNA M. BARVIR, ESQ.
16                            By:  SEAN A. BRADY, ESQ.
                              By:  KONSTADINOS T. MOROS, ESQ.
17
      For the Defendants:      DEPARTMENT OF JUSTICE
18    Becerra, et al.         OFFICE OF ATTORNEY GENERAL
                              GOVERNMENT LAW SECTION
19                            1300 I Street, Suite 125
                              Sacramento, California 95814
20                            By:  ANTHONY P. O'BRIEN, ESQ.
                                     -oOo-
21                            DEPARTMENT OF JUSTICE
                              OFFICE OF ATTORNEY GENERAL
22                            GOVERNMENT LAW SECTION
                              300 South Spring Street, Suite 1702
23                            Los Angeles, California 90013
                              By:  MARK R. BECKINGTON, ESQ.

24

25       --- appearances continued on the following page ---
```

```
1    APPEARANCES:

2    For the Plaintiffs:      DILLON LAW GROUP, APC
     Miller, et al.,          2647 Gateway Road, Suite 105, No. 255
3                             Carlsbad, California 92009
                              By:  JOHN W. DILLON, ESQ.
4
     For the Defendants:      DEPARTMENT OF JUSTICE
5    Becerra, et al.,         OFFICE OF ATTORNEY GENERAL
                              GOVERNMENT LAW SECTION
6                             300 South Spring Street, Suite 9012
                              Los Angeles, California 90013
7                             By:  KEVIN J. KELLY, ESQ.
                                       -oOo-
8                             DEPARTMENT OF JUSTICE
                              OFFICE OF ATTORNEY GENERAL
9                             GOVERNMENT LAW SECTION
                              300 South Spring Street, Suite 1702
10                            Los Angeles, California 90013
                              By:  MARK R. BECKINGTON, ESQ.
11
     APPEARANCES:
12
     For the Plaintiffs:      LAW OFFICE OF ALAN BECK
13   Fouts, et al.,           2692 Harcourt Drive
                              San Diego, California 92123
14                            By:  ALAN A. BECK, ESQ.
                                       -oOo-
15                            STAMBOULIEH LAW, PLLC
                              PO Box 428
16                            Olive Branch, Mississippi 38654
                              By:  STEPHEN D. STAMBOULIEH, ESQ.
17
     For the Defendants:      DEPARTMENT OF JUSTICE
18   Becerra, et al.          OFFICE OF ATTORNEY GENERAL
                              GOVERNMENT LAW SECTION
19                            1300 I Street, Suite 125
                              Sacramento, California 95814
20                            By:  ANTHONY P. O'BRIEN, ESQ.
                                       -oOo-
21                            DEPARTMENT OF JUSTICE
                              OFFICE OF ATTORNEY GENERAL
22                            GOVERNMENT LAW SECTION
                              300 South Spring Street, Suite 1702
23                            Los Angeles, California 90013
                              By:  MARK R. BECKINGTON, ESQ.
24

25
```

```
 1    SAN DIEGO, CALIFORNIA; MONDAY, DECEMBER 12, 2022; 10:38 A.M.

 2                              -oOo-

 3              THE COURT:  Good morning.

 4              THE CLERK:  Calling 1, 2, 3, and 4 on calendar.

 5              One, 17-cv-1017, Duncan, et al., v. Becerra, et al.

 6              Two, 18-cv-0802, Rhode, et al., v. Becerra, et al.

 7              Three, 19-cv-1537, Miller, et al., v. Becerra, et al.

 8              Four, 19-cv-1662, Fouts, et al., v. Becerra, et al.

 9              All set for status conference.

10              THE COURT:  All right, Counsel.  Thank you for being

11    here this morning.  Let's start with the Plaintiff.

12              If you would please identify yourself.  Please speak

13    slowly, clearly, so that my court reporter can take down your

14    names and so that I can, hopefully, do justice to them.  Okay?

15              MS. BARVIR:  Thank you, Your Honor.

16              Anna Barvir, B-a-r-v-i-r, for Plaintiff Virginia

17    Duncan, et al.

18              THE COURT:  All right.

19              MR. BRADY:  Good morning, Your Honor.

20              Sean Brady, S-e-a-n, B-r-a-d-y, on behalf of the

21    Plaintiffs.

22              MR. MOROS:  Good morning, Your Honor.

23              Konstadinos Moros on behalf of the Plaintiffs.  That's

24    K-o-n-s-t-a-d-i-n-o-s.  And last name is Moros, M-o-r-o-s.

25              THE COURT:  Okay.  And for the State?
```

```
1          MR. O'BRIEN:  Good morning, Your Honor.

2          Deputy Attorney General Anthony O'Brien,

3    A-n-t-h-o-n-y; O, apostrophe, B-r-i-e-n, on behalf of the

4    Attorney General and the Fouts and Rhode matter.

5          THE COURT:  Okay.

6          MR. KELLY:  Your Honor, excuse me.  I'm also

7    appearing -- I'm appearing on behalf of the State and the

8    Attorney General in the Duncan and Miller matters.

9          My name is Kevin Kelly.  K-e-v-i-n.  Kelly, K-e-l-l-y.

10   Deputy Attorney General.  Thank you.

11         THE COURT:  I'm sorry.  You're on Duncan and Miller?

12         MR. KELLY:  Correct, Your Honor.

13         THE COURT:  Okay.  Boy, I hope I can keep all this

14   straight.  Okay.

15         MR. BECKINGTON:  Good morning, Your Honor.

16         Mark Beckington, B-e-c-k-i-n-g-t-o-n.  I'm joining

17   Mr. O'Brien and Mr. Kelly on all four cases.

18         THE COURT:  I'm sorry?

19         MR. BECKINGTON:  I'm joining Mr. Kelly and Mr. O'Brien

20   on all four of the cases.

21         THE COURT:  On all four.  I remember you from the

22   Miller case.

23         MR. BECKINGTON:  Yes, Your Honor.

24         THE COURT:  Yeah.  Okay.  Great.

25         All right.  All right.  Let's see Plaintiff in the
```

1    Rhode case.

2            MR. BRADY:  Your Honor, Sean Brady on behalf of the

3    Plaintiffs on Rhode.

4            MS. BARVIR:  Anna Barvir on behalf of the Plaintiffs

5    and Rhode as well.

6            THE COURT:  All right.  And on the Fouts matter?

7            MR. STAMBOULIEH:  Steven Stamboulieh,

8    S-t-a-m-b-o-u-l-i-e-h, for Plaintiff Fouts.

9            THE COURT:  I'm sorry.  Just a second.

10           Can you repeat your last name again for me, please?

11           MR. STAMBOULIEH:  Stamboulieh, S-t-a-m-b-o-u-l-i-e-h.

12           MR. BECK:  Alan Beck on behalf of the Plaintiffs.

13   A-l-a-n.  Last name B-e-c-k, sir.

14           THE COURT:  Okay.  Have I missed anyone?

15           MR. DILLON:  Your Honor, this is John Dillon appearing

16   on behalf of the Plaintiffs for the Millers and --

17           THE COURT:  I'm sorry.  For Miller?

18           MR. DILLON:  Yes.

19           THE COURT:  And?

20           MR. DILLON:  John Dillon.

21           THE COURT:  Just on the Miller case?

22           MR. DILLON:  Yeah, just for Miller.

23           THE COURT:  All right.  Have I missed anyone?

24           Okay.  Well, thank you so much for being here this

25   morning.  The reason why I called the status conference -- and

1    I called all these cases at the same time -- is because, you

2    know, a great deal of my life over the last few years has been

3    devoted to dealing with these Second Amendment cases.

4          As you probably know, I have four of these cases and

5    recently inherited the fee-shifting case from two other judges.

6    And I've spent an awful lot of time, an awful lot of time, and

7    read an awful lot of material and heard testimony on some of

8    these -- at least one of these cases, anyway.

9          And so I thought that, given the fact that these cases

10   have been returned to me following the Bruen opinion, that I

11   didn't want to duplicate effort.  First of all, my time, as I'm

12   sure your time, my law clerk's time is valuable.

13         And so I thought that perhaps there was some way that

14   we could approach a joint methodology for dealing with all of

15   these cases, essentially, at one time and in one -- in one way.

16   So my understanding of -- of Heller, is that Heller has not

17   changed.  It has not been overruled.  It is still good law.

18         Bruen, the Bruen opinion, I believe, discarded the

19   intermediate scrutiny test that I also thought was not very

20   useful; and has, instead, replaced it with a text history and

21   tradition test.  Now, the text history and tradition issue is

22   pretty much common, I think, to all of these cases.

23         There may be some nuance as to whether, for example,

24   in some case the -- the history and tradition may effect

25   ammunition.  In another case, it may effect the type of weapon,

1  for example, whether it's a rifle or a dirk or a dagger.  But

2  in the end, it's the same.  We're basically looking at the same

3  body of history and tradition that we're going to be looking at

4  in all of the cases.

5          So I have an idea of how this case ought to go

6  forward, and I'll tell you what I would like to have -- by the

7  way, I might add, I'm not sure, Mr. O'Brien, whether you filed

8  the supplemental brief in the Fouts case.  I'm not sure who

9  filed that.

10          MR. O'BRIEN:  Yes, Your Honor, I did.

11          THE COURT:  All right.  Well, let me compliment you on

12  that, because one of the things that I thought you did that I

13  really appreciated was you filed several declarations.  One of

14  those declarations did a historical analysis of several rules,

15  laws, regulations, and so on and so forth, all of which I have

16  read, I might add.  So --

17          You can sit down.

18          -- I found that to be very, very helpful.

19          But I would like to ask you folks to do something a

20  little bit different; very similar.  But I don't have the

21  staff.  I don't have, really, the resources to do this, at

22  least not to do it in a timely fashion.

23          So I thought that I would ask you to do something for

24  me, which is to, essentially, do a similar survey as,

25  Mr. O'Brien, you did in the -- in the Fouts case.

1           And I would like that survey, if you would.  I mean,

2    I'm sure you all have access to Excel spreadsheets and so on.

3    But I'd like to see a survey that does the following for me:

4    First of all, on a chronological bases, starting with date, the

5    date of any law, regulation, ordinance, restriction.  And I'm

6    going to refer to those from now on as "restrictions."  Okay.

7    Generically, okay, restriction or regulation.  Okay.

8           So if you could start out chronologically, if you

9    would give me the date, and then if you would tell me what was

10   it that was restricted.  So, for example, in many of those

11   regulations, they regulate dirks, daggers, metal knuckles.  In

12   some cases, it might be storage of gunpowder or cartridges.

13   Some of them, some of these, are "use" regulations.  In other

14   words, you cannot use these while committing a crime.  You

15   cannot use them while breaking and entering into somebody's

16   property.  You cannot display them in anger.

17          So what is it exactly that the law or the regulation

18   restricted?  What type of weapon?  What was the weapon that was

19   being restricted?  Was it a knife? a Bowie knife? a stiletto?

20   metal knuckles? pistols? rifles?  Then I would like to know

21   whether or not that statute was repealed and, if it was

22   repealed, what was repealed by, and was it replaced by

23   something else?  And if so, if you would do the same analysis?

24   Again, continuing a chronological order.  Right?

25          And then, finally, whether or not that regulation or

11

1  restriction was reviewed by court or courts?  And if so, what

2  was the -- what was the outcome?  For example, was it found to

3  be unconstitutional, or was it found to be constitutional?  And

4  if you'll give me a citation so that I can then go and look at

5  the cases and see what the cases say.

6          I think -- so to pose an example, I think there are

7  one or two regulations that I have found that restricted --

8  specifically restricted billys.  Okay.  So in the Fouts case, I

9  think that would be particularly relevant.  I think I found one

10  or two that restricted rifles and shotguns.  I think I found

11  one or two that restrict certain ammunition, cartridges.

12  Right.  I think I found one that restricts a weapon that can

13  fire more than 16 or 18 rounds.  And I found one that dealt

14  with machine guns and automatic rifles.

15          You see, that's the sort of thing that I've read

16  through that I've captured, but I can't really capture it in a

17  way that I think that the Supreme Court would like us to do it,

18  which is a chronological order, so that we can determine what

19  regulations, what tradition exists with regards to restrictions

20  at the adoption of the Second Amendment; and then I think,

21  secondarily, at the time that the Fourteenth Amendment was

22  adopted.

23          I think with that body of information, I think this

24  Court would be in a much better position to make a decision as

25  to what to do in each one of these cases.

1          So the cases have been sent back to me, given the

2    Bruen opinion, and I'm now going to attempt to deal with them,

3    but I don't want to have to deal and read the same stuff over

4    and over and over again, because I've already read some of it

5    twice.  And, frankly, there's a lot of material there.  I don't

6    know how many boxes of five-inch binders I have, but it's a

7    lot, and I have only so much time.

8          So I would suggest both sides, if you can, please do

9    that for me.  Okay.  And I think that would be very helpful.

10          Now, as far as actually setting a hearing to -- to

11    hear your arguments on these, I don't think there's any use in

12    taking any evidence, meaning testimony, from anyone in any of

13    these cases.

14          I mean, the history and tradition is what it is.  I

15    don't need, you know, Mr. Spitzer or Mr. Cornell to tell me

16    what his view of the history and tradition is.  I see no point

17    in that; nor do I think any additional discovery is necessary

18    or additional expert work is necessary.  So, anyway, that's

19    my -- that's my initial thought on this case.

20          If anyone has any suggestions on how we can go about

21    proceeding with these cases, I would love to hear your views.

22    I may not adopt your suggestion, but I'll certainly consider

23    it.  So if -- if anybody wants to address what I have said, or

24    anything else on how we proceed with these cases, please feel

25    free to speak up.

1          Maybe we'll start with Duncan, since it was the first

2     case that I dealt with.

3          So do you have anything you want to add?

4          MS. BARVIR:  Should I move here?

5          THE COURT:  Yeah.  Whatever.  If you feel comfortable

6     there at the table, that's fine.

7          MS. BARVIR:  Again, Anna Barvir for Plaintiff Virginia

8     Duncan.

9          Thank you, Your Honor, for your thoughtful

10    consideration of all four matters.  I'm sorry.  I'm -- we've

11    heard what -- that Your Honor is asking for from each party.  I

12    think that makes a lot of sense, though I do want to, I think,

13    perhaps, focus the Court a little bit on what Plaintiffs' view

14    as the kind of proper way of reviewing this case.  And in our

15    position, it doesn't really rely on -- it actually shouldn't

16    rely, and it might be improper to rely on the sorts of -- even

17    the laws that Your Honor is referencing in this survey and/or

18    spreadsheet that we were talking about just now.

19         It is our position that Heller already tells -- Your

20    Honor, tells all of us how to analyze this.  The -- this is an

21    arms banned possession case.  So the Heller court then, backed

22    up by the decision in Bruen, already handled that entire

23    analysis.  The analysis starts with --

24         THE COURT:  But if that were so, why would the Ninth

25    Circuit have kicked it back to me?  I mean, I agree with you in

1  concept, but, you know, the Ninth Circuit kicked it back to me,

2  so...

3        MS. BARVIR:  Excuse me.  I think that's a good

4  question, and perhaps that's why Your Honor is, I think,

5  intelligent, smart to ask the parties to do what we're doing.

6  But I think that -- excuse me -- the Ninth Circuit also has a

7  lot of these -- had a lot of these cases before it.  And,

8  obviously, all of the pro Second Amendment cases had gone up to

9  en banc, and perhaps the Court wasn't willing to handle those

10 at that point.

11        I'm not trying to cast aspersions, but I think we can

12 all kind of agree that we've seen a lot of decisions that are

13 not upholding lower-court decisions that strike California

14 state laws, gun control laws, just overturned.

15        So perhaps they'd like to see that Your Honor do some

16 more work on this case, but I don't think it requires --

17        THE COURT:  Would you like some water?

18        MS. BARVIR:  Yes.

19        I don't think that that requires us to do a new

20 analysis of all the history that's out there.  The Heller court

21 was very -- had done a very detailed deep dive into all of the

22 historical laws that are banning possession of arms and other

23 types of gun control laws since the Founding and before.

24        And it found that the test is if it's -- excuse me --

25 that the only time the State can lawfully ban a firearm or

1   other type of arm that is protected by the Second Amendment is

2   if it's dangerous and unusual.  The flip side being, typically

3   possessed by law-abiding citizens for lawful purposes or

4   other -- we've also heard it called the "common use" test.  And

5   so that test came out of the Court's analysis of the history

6   and tradition.

7        So if the Court -- so the question that really is

8   posed -- that Duncan poses this Court today, is whether or not

9   magazines, and maybe more specifically magazines capable of

10  holding more than ten rounds, are protected arms, bearable

11  arms, under the Second Amendment's text.

12       And then, secondly, if there -- excuse me --

13  otherwise, if there's a longstanding tradition, meaning are

14  they dangerous and unusual.  And this Court has already found

15  that -- I mean, we have a really large record showing that

16  they're not dangerous and unusual.  And several courts have

17  agreed with that finding both in the Ninth Circuit and other

18  circuits have found it or they have been willing to accept it.

19  And I don't think that Heller or -- I mean, I'm sorry -- I do

20  not think Bruen changed that outcome.

21       So that's what we would like Your Honor to consider

22  and to look at and perhaps think about when we are doing this

23  search for more historical restrictions.

24       THE COURT:  Let me ask you a question that I think has

25  troubled me somewhat.  So I think facts matter.  And in

1    certain -- and in cases -- every case, there are parties that

2    have greater access to evidence than others.  Right.  And at

3    least in California, we have a presumption, for example, that

4    when a party has the largest body of evidence but fails to

5    present it, there's a presumption that if the evidence were to

6    be considered by the Court, that the presumption would be that

7    the party who has a greater body of evidence, that it would be

8    held against him.

9            Now, one of the things that I'm concerned about, for

10   example, is I just read someone said, "There's no evidence that

11   a homeowner has ever fired more than ten rounds in defense."

12   And I kind of think that that's -- I mean, I think probably the

13   best evidence of that would be the State.  The State would have

14   the investigative reports, police reports, and so on, to

15   explain that.

16           But I wonder if you agree with that statement, that

17   there are no cases where a homeowner or a business owner has

18   ever fired more than ten rounds in defense.  And if so, and if

19   that's the case, have you provided the Court with any

20   information to support that?

21           MS. BARVIR:  I don't -- I don't, standing here, know

22   that that's true.  I think that part of that is -- it's a kind

23   of a false thing to do when you're limited to that number,

24   anyway, but also --

25           THE COURT:  I understand you.  I understand -- I hear

1  you.  I hear you.  But I -- particularly in the Miller case, I

2  took issue with Ms. Alan's -- Ms. Alan's analysis.  And then I

3  think I read something recently -- I can't recall which court

4  it was -- but somebody said, "Oh, there's no evidence that a

5  homeowner has fired more than ten rounds."

6       And defense -- and of course all that anyone has to do

7  is go on the Internet and do a cursory search and find out that

8  that's not true.

9       MS. BARVIR:  Right.

10      THE COURT:  And I wonder if you've done that.

11      MS. BARVIR:  I think when we were here on MSJ -- and

12  that's why we had this conversation several years ago.

13      THE COURT:  You know, I'm sorry.  But as I said, I

14  have four of these, and if I get you all confused with one

15  another, please forgive me.  You know, I'm not as young as I

16  used to be, so...

17      MS. BARVIR:  None of us are.

18      When we were here on MSJ, I think we had this

19  conversation as well.  And a lot of times that was coming

20  from -- you know, from Plaintiffs' side was coming from, I

21  guess you could say, anecdotal news stories.  Because we don't

22  -- we aren't the State.  We don't have access to those same

23  sorts of records.

24      I don't think that it's true that that's never

25  happened.  That there's no evidence that it's ever happened.

```
 1   But, again, even if it never happened, which I find

 2   extraordinarily hard to believe -- the police do it all the

 3   time -- it's not a relevant matter because the test --

 4           THE COURT:  Yeah, I know.

 5           MS. BARVIR:  -- for common use is typically

 6   possession.

 7           THE COURT:  I heard you.  I know that.  But I was just

 8   wondering if you agreed with that statement that there's no

 9   evidence that the homeowner has ever fired more than ten

10   rounds, and just wanted to pick your brain on that.

11           Okay.  I distracted you.

12           MS. BARVIR:  That's okay.  I have nothing more to add.

13           THE COURT:  Okay.  Great.

14           MS. BARVIR:  So thank you for your time.

15           THE COURT:  Sometimes -- sometimes less is more.

16   Okay.

17           Anyone else?  No one else?  Gee, I'm so glad.

18           MR. KELLY:  Your Honor, could I be heard?

19           THE COURT:  No.  Sorry.  I've heard all I need to

20   hear.

21           No.  Go ahead.

22           MR. KELLY:  So the State would like to renew its

23   request for an addition discovery period, not a lengthy

24   discovery period in this action.  Just a three-month is all we

25   would ask for.
```

```
1            THE COURT:  Tell me why.

2            MR. KELLY:  Sorry, Your Honor?

3            THE COURT:  Tell me why.

4            MR. KELLY:  There's two reasons:  First of all, this

5   is a brand-new area of law, and it's a brand new area of

6   historical analysis.  And a three-month period would give our

7   experts more time to actually look into this.  I think we

8   submitted a declaration from Professor Schrag, who details the

9   types of work that is required of historians when they approach

10  an issue like this.

11           And, also, Professor Cornell in his declaration also

12  said that, "This work is still ongoing, and we did our level

13  best" --

14           THE COURT:  What happens in three months when the work

15  stops?  What's the -- what's the miracle?  Was the miracle

16  pertinent?  Drops down in three months and work stops?

17           MR. KELLY:  Well, Your Honor, obviously, I can't

18  represent that new evidence will be found, but that's also

19  because I don't know what I don't know, at this point, and

20  neither do our experts.

21           So we would, again, renew our request for an

22  additional discovery period followed by supplemental briefing.

23           And -- excuse me -- I had another point to make on

24  that.

25           THE COURT:  Okay.  Go ahead.
```

1          MR. KELLY:  So we would also want an opportunity for

2    our experts to examine the evidence, the new evidence that the

3    plaintiffs included in their response to our supplemental

4    briefing.  And that would also give our experts a chance to do

5    so, and then --

6          THE COURT:  So give me an example.

7          MR. KELLY:  So I will give -- one moment, Your Honor.

8          So the Plaintiffs brought or included a declaration

9    from Ashley Hlebinsky, who claimed that "repeating rifles were

10   not commonly owned in the nineteenth century," presumably in

11   response to our declaration from Professor Vorenberg.

12         THE COURT:  I'm sorry.  They said "they were not"?

13         MR. KELLY:  They were not commonly owned in the

14   nineteenth century.

15         THE COURT:  She says they were not.

16         MR. DILLON:  No.

17         THE COURT:  No.  I think you're wrong.  I think you're

18   opposite.  I think she says --

19         MR. KELLY:  Opposing counsel will correct me if I'm

20   wrong.

21         THE COURT:  Yeah, I think you're wrong.  I think she

22   said the opposite.

23         MR. DILLON:  I don't believe that's the case that she

24   said they were not.

25         (Court reporter interruption.)

```
1              MR. DILLON:  John Dillon on behalf of the Miller

2    defendants.

3              THE COURT:  Yeah.  So she said they were commonly

4    owned.

5              MR. DILLON:  Yeah.

6              THE COURT:  So the Model 94 Winchester --

7              MR. DILLON:  She was rebutting Dr. Saul Cornell's

8    statement that these guns were, in fact, not common.  That's

9    what his testimony was, Your Honor.

10             THE COURT:  All you got to do, if you look at

11   Professor Cornell's declarations and you look at the website

12   that he refers to -- to Winchester -- to the Winchester

13   company, if you look at that website, you see that, in fact,

14   they were commonly owned.

15             So, I mean, what are you going to do?  You going to --

16             MR. KELLY:  Your Honor, if --

17             THE COURT:  How are you going to -- I mean, if you

18   look at Mr. Vorenberg's declaration, and you look at -- for

19   example, as I sit here right now, I can recall one instance

20   that he talks about where two miners were mining for borax.

21             Do you recall the incidents?

22             MR. KELLY:  Sorry.  Do I recall the incidents, Your

23   Honor?

24             THE COURT:  Yeah.

25             MR. KELLY:  I do not, no.
```

1          THE COURT:  Okay.  So two miners were mining for

2     borax.  And I can't recall whether it was Montana or Wyoming or

3     Nebraska, or whatever.  These are just two miners, two common

4     folks that were miners for miners -- I mean, mining for borax,

5     and they're attacked by a band of 40 Indians.  And these two

6     miners happen to have Henry rifles, and they were able to

7     defeat the 40 Indians that were attacking them.

8          So the point -- the point was, if you look at Mr. --

9     Professor Cornell's -- if you look at Professor Vorenberg's

10    materials, which I have looked at, you see that the statement

11    that they were not commonly owned is just not true.

12         For example, there's a statement in there about how

13    after the Civil War many of the -- of the soldiers, when they

14    were released from duty, were, in fact, allowed to buy the

15    repeating rifles and took the repeating rifles home.

16         And you can do the statistical analysis, by the way,

17    which I sat down and did because maybe I have too much time on

18    my hands.  But there was an awful lot of those weapons that

19    wound up in civilian hands.

20         So, I mean, the evidence is there.  You can call, I

21    suppose, this person for a deposition and take her deposition.

22    But I don't think, no matter what she says, it's not going to

23    contradict her own experts' declarations and the materials that

24    they themselves refer to.

25         You follow what I'm saying?  Okay.

1          MR. KELLY:  Your Honor, I do have another example of

2     something we would want to explore and --

3          THE COURT:  Okay.  Give me one more.

4          MR. KELLY:  So the Plaintiffs also include a

5     declaration from Clayton Cramer --

6          THE COURT:  Okay.

7          MR. KELLY:  -- presumably in response to Professor

8     Roth's position that mass murder was not a new phenomenon or --

9     excuse me -- mass murder, yes, correct, is a new phenomenon at

10    this point.  And we would want -- to my knowledge, Mr. Cramer

11    was not disclosed as an expert, was not deposed in any prior

12    proceeding in Duncan.

13         And we would first want an opportunity for Professor

14    Roth to examine the new evidence that the Plaintiffs have

15    brought, as well as potentially depose Mr. Cramer on that

16    issue.

17         THE COURT:  Well, before I get to that issue, let me

18    point out something, Mr. Kelly.  I don't know how long you've

19    been in this case.  But you said something about -- going back

20    to the reason why you needed three months; that you needed --

21    that this was a new area and so on and so forth.

22         Did I get you right?

23         MR. KELLY:  That's correct, Your Honor.

24         THE COURT:  Yeah.  How long you have been in this

25    case, Mr. Kelly?

1          MR. KELLY:  Several weeks, Your Honor.

2          THE COURT:  It's not fair to dump you into a case like

3     this.  Mr. -- Professor Cornell has gone on record and stated

4     -- in 2017, Professor Cornell stated that he had been

5     researching and writing on the history and tradition of Second

6     Amendment regulations for two decades.  That's 20 years,

7     20 years before 2017.  We're now in 2023.  Add five years to

8     that; that's 25 years.  That's a quarter of a century that

9     Professor Cornell has been writing, researching on the history

10    of and tradition of the Second Amendment.

11         And I've read an awful lot of that material.

12    Professor Cornell cites to Spitzer.  Spitzer cites to

13    Vorenberg.  Vorenberg cites to Bazilli.  Bazilli, I think it

14    is, who cites to -- these folks have been working on this for a

15    really, really long time.

16         In 2000- -- well, as you probably know in the Rhode --

17    Rhode case, I issued an opinion where I said that the State's

18    regulation had no historical pedigree, and I was right.  The

19    Ninth Circuit asked the State to file a supplemental brief on

20    the issue of the historical pedigree.

21         In response to that request from the Ninth Circuit,

22    the State at Footnote 3, page 11 of its response, cites to Saul

23    Cornell and Nathan DeNino, "A Well Regulated Right.  The Early

24    American Origins of Gun Control," 2004, surveying firearms

25    regulations from Founding era through the nineteenth century.

1          Mr. Kelly, with all due respect, Mr. Cornell and all

2    these other folks have been researching and writing on this

3    issue for 25 years.  We're not here, looking -- this is not a

4    question for the missing link.  We're not looking for truffles.

5    If it's a history and tradition, 25 years of research and

6    writing should have disclosed it by now.

7          And as you know, probably in Bruen -- I think it was

8    in Bruen.  It might have been in Heller, as well, where the

9    Court said, "Look, 'a lot of' doesn't show a history and

10   tradition."  Right.  So I don't think -- I mean, with all due

11   respect, I understand what you're doing, and I appreciate that.

12   And I'm sorry that you got dumped into this just a few -- just

13   a few weeks ago.

14          But, realistically, you don't need more time.  I might

15   give you a little more time to depose the one expert, and that

16   might be it, but that's about it.  Okay.

17          MR. KELLY:  Thank you, Your Honor.

18          THE COURT:  All right.  Is there anything else you

19   wanted to add?

20          MR. KELLY:  Actually, a point of clarification, Your

21   Honor.

22          THE COURT:  Sure.  Go ahead.

23          MR. KELLY:  Would Your Honor like us to submit one set

24   of briefing for all four matters, or one for each matter?

25          THE COURT:  I'm open to suggestions.  I don't want to

1    have to be rereading the same stuff over and over and over

2    again.  So what do you think?

3            MR. KELLY:  Your Honor, I think they should be heard

4    separately.  I think as Your Honor said, you know, there is

5    some overlap here in terms of the historical analysis,

6    et cetera.  But there's also enough nuance among the cases

7    that, I think, both, as a matter of fairness, and to make your

8    burden easier, they should be heard separately.

9            For example, I think the textual analyses is different

10   in these case; the first prong under Bruen as to whether the

11   regulated items constitute arms under the Second Amendment.

12   And our position is a different analysis in each case.

13           THE COURT:  Okay.  Well, what you say makes sense.

14   All right.  So how about if what we do is we have a joint

15   historical analysis?  In other words, what I suggested at the

16   very beginning of this hearing?  How about if we have that as

17   one?

18           And, yes, I can understand how you might want to

19   argue, for example, that in the Fouts case, looking at the

20   historical analysis, there's, you know, history and tradition.

21   And that you might want to brief that separately.

22           Yeah, I can understand what you're saying.  I'll hear

23   from the Plaintiffs in just a second, see if they have a

24   different idea.  But that makes sense.  I can go along with it.

25           MR. KELLY:  Thank you, Your Honor.

```
1              THE COURT:  All right.  Thank you.

2              Anyone else?

3              All right.  Let's go back to the Plaintiffs.  Anyone

4    have anything you want to comment in response?

5              MR. BRADY:  Sure, Your Honor.  Sean Brady on behalf of

6    the Plaintiffs.

7              I agree.  I think that makes sense.  But to address

8    the nuance, there are some things that are going to sort of be

9    boilerplate with respect to this compendium of Excel

10   spreadsheet of the laws.  If the State prepares that, they're

11   going to have to prepare that for all the cases.  Right.  So it

12   wouldn't be an additional burden on them.

13             THE COURT:  I want you to look at it, and see if you

14   agree or disagree because I want to know, you know, if there's

15   disagreement.  Right.

16             MR. BRADY:  If Your Honor would like us to meet and

17   confer, you know -- I guess our position is that it's the

18   State's burden to research and present these laws, and they've

19   had adequate time for that.  We don't need to get into --

20             THE COURT:  I think I agree.  But I think it's always

21   really a good idea to meet and confer.  So if you could do

22   that, that would be wonderful.

23             MR. BRADY:  Absolutely.  And if Your Honor wants us to

24   do that prior to -- instead of dressing it in our opposition

25   and meeting and conferring beforehand, we're more than happy to
```

1   do that.

2          THE COURT:  Why don't you do that.  And then if

3   there's any disagreement, if there's any disagreement, then we

4   can deal with that later.  Right.

5          So here's something that I do with jury instructions.

6   I ask the parties to meet and confer and come up with an

7   agreed-upon body of jury instructions.  Okay.  And then if

8   there are any jury instructions that they disagree with, then

9   they can file a brief to tell me what instructions they

10  disagree with and what other instructions they want me to give.

11         Perhaps this is a good policy for us to apply here.

12  If you meet and confer and agree on the historical analysis,

13  then that's great.  You can submit that.  And if there are any

14  disagreements, then you can submit that separately.

15         How's that?  That work?

16         MR. BRADY:  I think that works, Your Honor.

17         THE COURT:  Mr. Kelly?

18         MR. KELLY:  Yeah, that works for us, Your Honor.

19         THE COURT:  Great.

20         MR. BRADY:  This meet-and-confer process, though, is

21  there going to be another status conference or -- that's my

22  only concern.  Or are we just going to address it in our

23  briefing?

24         THE COURT:  No.  I don't think we need another

25  meet-and-confer conference after this.  I think -- look, I

1    don't want to slow-walk these cases.  These are important cases

2    both to the State and to the Plaintiffs and the people that

3    insist that they have these rights, and I think we need to move

4    these cases along.

5          So a meet-and-confer.  Give me an agreed-upon

6    historical analysis, and then what I will do is I will give you

7    a time period for that to be filed.  I'll give you a time

8    period for additional briefs to be filed, and then we're going

9    to have hearings, and we're going to put these cases to bed.

10         MR. MOROS:  Your Honor, one question.

11         Is the State to be limited in the presentation of its

12   laws to laws before the year 1900?  Because I know in their

13   supplemental briefing, they went into twentieth century laws,

14   and our position is those aren't relevant.  But if you want a

15   comprehensive view, just to get everything.

16         THE COURT:  You know, frankly, I don't see much point

17   in those because I think that there would be so many laws.  I

18   mean, let's face it, after -- there came a point when -- when

19   they began to grow exponentially.

20         I think in the Bruen opinion it talks about -- the way

21   I see it, it places greater emphasis on those laws that were,

22   essentially, in effect at the time the Second Amendment was

23   adopted, and then with a secondary emphasis at the time that

24   the Fourteenth Amendment incorporated the Second Amendment by

25   reference.  I think that's the time period.

1              In fact, I think the one -- if I'm not mistaken, the

2      one statute that regulates -- that was submitted in the Fouts

3      case, it talks about machine guns and automatic rifles, is a

4      1927 statute, if I'm not mistaken; which, frankly, I thought

5      was irrelevant, anyway.

6              So why don't we limit it to -- how about this?  How

7      about, let's say, 20 years -- how about an arbitrary and

8      capricious number that I'm going to give you?  Twenty years

9      after the Second Amendment was incorporated by the Fourteenth

10     Amendment -- or the Fourteenth Amendment was adopted.  How's

11     that?

12             MR. MOROS:  So, 1888.  Okay.

13             THE COURT:  All right.  Twenty years after the

14     Fourteenth Amendment was adopted.

15             MR. KELLY:  Your Honor, we would object to that.

16             THE COURT:  Why?

17             MR. KELLY:  In Bruen, it specifically says that

18     statutes after the Fourteenth Amendment's ratification can be

19     used as evidence so long as they do not conflict with the

20     restrictions that were in place prior to then around the

21     Founding and the Reconstruction period.

22             So we would want to reserve our right to introduce

23     those laws if -- if we do, in fact, do that.

24             THE COURT:  Can you cite me to the page in Bruen?

25             MR. KELLY:  Yes, Your Honor.

```
 1            THE COURT:  And if that were the case, why would --
 2   why would the Supreme Court have overturned the New York
 3   statute on concealed carry?  Since there were -- I would
 4   imagine there's probably 100, if not 200, statutes that have
 5   prohibited the methodology for obtaining concealed carry
 6   permits.
 7            MR. KELLY:  So, Your Honor, the page we're referring
 8   to is at 142, Supreme Court page 2153, Note 28.
 9            THE COURT:  Can you read it for me?  Because I -- I
10   don't have a photographic memory.
11            MR. KELLY:  Sure, Your Honor.  Just give us one
12   moment.
13            Your Honor, the footnote says:  "We will not address
14   any of the twentieth century historical evidence brought to
15   bear by respondent or their amici.  As with their
16   late-nineteenth-century evidence, the twentieth century
17   evidence presented by Respondent's in the amici --"
18            (Court reporter interruption.)
19            MR. KELLY:  "-- the twentieth century evidence
20   presented by Respondents and their amici does not provide
21   insight into the meaning of the Second Amendment when it
22   contradicts earlier evidence."
23            And we would argue that that footnote would allow us
24   to introduce statutes and regulations post-Reconstruction so
25   long as they do not contradict earlier restrictions.
```

1          THE COURT:  The problem with that, though, as I

2    said -- how many -- how many laws have been enacted?  I mean,

3    just look at California.  Let's just take, for example, the

4    Miller case, right, the AR-15-type regulations.

5          How many of those laws have been enacted since 1927?

6    Lots and lots and lots and lots.  But how does that help me

7    decide the history and tradition of regulation of rifles --

8          MR. KELLY:  I think, Your Honor --

9          THE COURT:  -- at the time the Second Amendment was

10   adopted, or at the time the Fourteenth Amendment was adopted?

11   All that tells me is -- has happened after the Civil War when

12   states found out that, yes, they could restrict certain

13   firearms.  Right.  That all of a sudden there was an explosion

14   of restrictions because the states found out, "Hey, guess what?

15   We can do this."  So then they did it.

16         But how does that help me determine the history and

17   tradition of these laws at the time the Second Amendment was

18   adopted or at the time that the Nineteenth -- I mean the

19   Fourteenth Amendment was adopted?

20         MR. KELLY:  Your Honor, I'm only speculating that

21   these laws are out there.  I personally do not know.  I think

22   we would just want to reserve our right and not be barred from

23   doing so should it come to that.

24         THE COURT:  I'll tell you what I'll do.  I'll let you

25   file a separate one.  You can file -- you can file a separate

1   survey, and we'll call it "Post 20 years after" -- "20 Years

2   After the Ratification of the Fourteenth Amendment."

3           How's that?

4           MR. KELLY:  That sounds good, Your Honor.

5           THE COURT:  And include as many as you want.  In fact,

6   the more the merrier.

7           MR. DILLON:  Your Honor, if I may?

8           THE COURT:  Yes, go ahead.

9           MR. DILLON:  I just wanted to clarify on the parameter

10  of exactly what you're requesting.  As I heard you, you're

11  looking for a single spreadsheet-style chronological order of

12  all the statutes, ordinances, restrictions that the State can

13  come up with that identify what was restricted, what act was

14  restricted, whether it was a law that was repealed or not

15  repealed, and whether or not it was ever brought before a

16  court.

17          And then they'll present -- they'll draft that

18  document with no argument, no expert witness testimony.

19          THE COURT:  Correct.

20          MR. DILLON:  It will just be a straight list of the

21  laws.  We will have a chance to review it as Plaintiffs.  And

22  like a summary judgment, if we have a contested issue of the

23  summary of the law that they present, we can note that contest

24  in the -- you know, a joint document?  Is that what you're --

25          THE COURT:  Sounds reasonable.  Sounds reasonable to

 1    me.

 2            MR. DILLON:  No problem.  Thank you, Your Honor.

 3            MR. KELLY:  Your Honor, I think we would object to

 4    that as well.  I think we would want, if we need to, to

 5    introduce experts to interpret some of the laws and the

 6    standards --

 7            THE COURT:  No.

 8            MR. KELLY:  -- in the language --

 9            THE COURT:  No.

10            MR. KELLY:  -- and the statute --

11            THE COURT:  No.  Look -- no, no.

12            Mr. Kelly, with all due respect, I don't need -- every

13    one of these experts that you've put forth, I have read, just

14    like experts that they have put forth, like Mr. Copill, for

15    example.  Your experts -- these are people that have, you know,

16    biased points of view.  I mean, Mr. Bosey, for example -- I

17    hope I'm pronouncing his name.  The fellow who worked for --

18            MR. MOROS:  Kimber, Your Honor.

19            THE COURT:  Kimber.  Yeah.  Who at some point in time

20    had an epiphany and realized that all the work that he'd been

21    doing for all these years, selling these weapons to the public

22    was not good.  And now he works -- he's a consultant for

23    Everytown -- I'm trying to remember.

24            Anyway, look.  These people's opinions of what these

25    statutes say, right, means nothing.  It means nothing.  It's

1   like, I remember -- I think it was Justice Brier in -- I think

2   it was Bruen, who talked about, "Well, we need to have this

3   factual record," and this and that, what have you.

4        No.  702 says that the admission of expert testimony

5   is help -- is possible if, because of the expert's knowledge,

6   skill, or experience, it will assist the trier of fact.  Okay.

7        But there's nothing.  I mean, I've read these

8   declarations.  Every one of these folks come in here with a

9   biased -- it's not like they're really neutral experts, okay,

10   or they're not experts who've come up on these opinions as a

11   result of these cases, okay, doing research for these cases.

12        These are all people that already come with

13   preconceived ideas and opinions, but their opinion is not worth

14   any more than your opinion or her opinion.  They're going to

15   tell me, "Well, in my opinion, if you look at this statute,

16   this statute means that -- you know, that the State of Wyoming

17   regulated concealed carry of brass knuckles," and so I can read

18   that.  I can figure that out by myself.

19        MR. KELLY:  Well, Your Honor, I think the issue that

20   we might have with simply creating a spreadsheet and submitting

21   it to the Court doesn't take into account that restrictions

22   were found in places other than statutes.  In our supplemental

23   briefing, we -- Professor Vorenberg testified as to how, for

24   example, in the Reconstruction period, the U.S. Army acted to

25   restrict firearms with magazines or carrying more than ten

 1  rounds.

 2           THE COURT:  When was the Reconstruction period?  It

 3  was after the Civil War.

 4           MR. KELLY:  Correct, Your Honor.

 5           THE COURT:  Yeah.  It was after the Fourteenth

 6  Amendment?

 7           MR. KELLY:  It was during the same period, Your Honor;

 8  during the same time period.

 9           THE COURT:  And why would I want to give -- in fact, I

10  think there was some discussion about this.  I thought maybe it

11  was in Bruen.

12           Why would I want to give any credit to -- to what the

13  U.S. Army was doing in their territories?  In fact, I think,

14  wasn't it Bruen that somewhat criticizes applying laws that

15  were regulations that were used in territories that --

16           MR. KELLY:  Your Honor, it goes to the history and

17  tradition of firearm regulations.  That may not be a statute.

18           THE COURT:  But, look.  If it's the State's position

19  that there's a long history and tradition to regulating

20  firearms, if that's your position, you don't need to present

21  any evidence.  I'll buy that.  I understand that.

22           Any time the State can get their -- the ability to

23  regulate something, they'll do it, and they've been regulating

24  firearms for a long time.  Right.  But that doesn't mean that

25  it's an analog to the particular statute that's at issue in the

1    cases that I have before me.

2         So the fact that, for example, in the territories in

3    the Reconstruction period, the Army may not have wanted to have

4    people to have this, that or whatever, that doesn't help me.

5    It's not an analog.

6         Yes, we know.  We know.  We know.  We don't have -- I

7    don't need to take testimony of the fact that there's a history

8    and tradition in the United States in regulating firearms.

9    Right.  But if that were the test, if that were the test,

10   Heller would not have been decided the way it was, and neither

11   would McDonald, and neither would Bruen, and neither would

12   Caetano.

13        That's not the test.  But the test is, is there a

14   reasonable analog?  It doesn't have a twin.  It doesn't have to

15   be a twin.  But is there a reasonable analog in the history and

16   tradition of firearm regulation or arms regulation?  Because in

17   the Fouts case, we're dealing with billy clubs.

18        Is there an analog in the history and tradition of

19   regulating this type of weapon, this type of conduct, this type

20   of behavior?  That's what we're looking at.

21        So, anyway, all right.  Anyone else?

22        Yes.

23        MR. O'BRIEN:  Your Honor, just wanted to check.

24        With respect to Fouts and Rhode, what the Court's

25   requesting here, what effect does it have on kind of the

1   existing posture of those cases?

2           With respect to Fouts, the Plaintiffs have an

3   opposition brief due on the 22nd, currently.  And Rhode, there

4   hasn't been any order with respect to briefing.  So I'm just

5   trying to check and see what's the -- what is kind of the

6   process going forward.

7           THE COURT:  Thank you.  I appreciate your mentioning

8   that.

9           So here's what I'd like for you to do.  As I said,

10  Professor Cornell, Spitzer, and some of these other folks, they

11  have been working on this for a really long time.  So it really

12  shouldn't take them really long to be able to come up with

13  this -- with a survey that I've requested.  So I'm going to ask

14  that that be done within 30 days.  Okay.

15          I will then -- given that, I will then give each side

16  an opportunity to file a brief, and the reason why I use the

17  word "brief," it's because I want it to be brief.  Okay.  I'm

18  not going to -- I'm not going to require a 25-page maximum, but

19  I don't think it needs to be 25 pages for you to tell me what

20  the analogs are that I should apply in your case.  And I'll

21  give you 30 days to do that.  Then I'll give you 10 days to

22  each side to file a response.

23          Now, Mr. Kelly, you said you wanted to take somebody's

24  deposition, and I'm more than happy to give you a chance to

25  depose someone.  See what happens.

1          So who did you want to depose?

2          MR. KELLY:  Mr. Cramer, Your Honor.

3          THE COURT:  Mr. Cramer.  Whose witness is Mr. Cramer?

4          MS. BARVIR:  Clayton Cramer is the Duncan Plaintiffs'

5   declarant.  He was responding, I think, to Professor Roth.

6          I would think that if Your Honor is going to give the

7   State some time to depose our witness, we should also get the

8   chance to depose Mr. Roth.  He was also not disclosed at any

9   point prior to filing that.

10          THE COURT:  You each have 20 days to work out an

11   agreement to -- one, to depose Mr. Cramer, to depose Mr. Roth.

12   Okay.

13          MR. STAMBOULIEH:  Yes, Your Honor.  I'm with --

14   Stephen Stamboulieh for the Fouts Plaintiffs.

15          Plaintiff Cramer is also going to be our expert even

16   though we're outside the discovery deadline.  He has,

17   obviously, not been disclosed to them as an expert, just like

18   their witnesses were not disclosed to us as an expert.

19          I'm not really sure that he needs to be deposed since

20   he's just going to be responding to Mr. Spitzer's declaration

21   of what the -- what he's found the historical analogs to be.

22   So I'm not really sure, other than wasting money and time, what

23   a deposition would bring to them.

24          I did have one question, and I -- the page length for

25   the supplemental briefs, my understanding of the local rules is

1  that we were limited to 25 pages.  We have not filed motions to

2  strike.  We have not tried to burden the docket with anything.

3  I figured I would just ask the Court.

4          Do we have the same page limit that the Defendants do,

5  which I believe was 36 pages?  We're not going to burden --

6          THE COURT:  I don't think we need 36 pages, especially

7  if we're breaking it up.  Okay.  So we've got -- so we have

8  the -- so we have the historical survey.  Right.  I don't know

9  why you would need 36 pages.  So why would you need 36 pages to

10  tell me that the history and tradition of arm regulations --

11  I'm going to use the Fouts case -- for billys is consistent

12  with the history and tradition of that which has been provided

13  to me by way of that survey?  You don't need 36 pages;

14  25 pages, max, for any opening brief, and 10 pages for any

15  reply.

16          MR. STAMBOULIEH:  Let me go back one step, Your Honor.

17          They filed the supplemental brief that this Court

18  ordered.  I'm not sure the actual date; October 17th, I

19  believe.  And they took 36 pages.  Ours is coming up.  The

20  response is due on the 22nd.

21          So my question to the Court, and perhaps the Court

22  just answered me when you limited it to 25 pages.  The reason

23  that we might need to go a little bit beyond that page limit,

24  Your Honor, is they've raised this issue and said that there's

25  really been no historical analysis of the "dangerous" -- and

1    they corrected it to be "or unusual" instead of "dangerous and

2    unusual" language.

3         THE COURT:  Yeah.  I noted that.  I noted that.  I

4    found that to be rather distressing, even though in the -- in

5    the past, they have referred to some instances as "dangerous or

6    unusual."  But as Justice Alito pointed out in his concurring

7    opinion in Caetano, anyone with a ninth-grade education can

8    read the Heller opinion and determine that, in fact, it is

9    "dangerous and unusual," i.e., the conjunctive, not a

10   disjunctive.

11        So I don't know why that keeps popping up.  I mean, I

12   heard some supposedly distinguished legal scholar make that

13   same error, and I don't know whether that's intentional or not.

14   I hope that's not intentional.

15        MR. STAMBOULIEH:  Well, the Supreme Court said

16   "dangerous and unusual," Your Honor, so we're going to go with

17   what the Supreme Court --

18        THE COURT:  That's a good thing to do.

19        MR. STAMBOULIEH:  Right.

20        THE COURT:  That's a really good thing to do.

21        MR. STAMBOULIEH:  So my question, Your Honor -- and

22   I'm sorry for taking so long on this.

23        THE COURT:  It's okay.

24        MR. STAMBOULIEH:  We have briefed "dangerous and

25   unusual."  It takes us beyond 35 pages.  It's about 35 pages.

1   We've briefed it.  So to the extent the Court wants to see

2   it -- if the Court limits us to 25, we'll cut the "dangerous

3   and unusual" and just cite back "see Supreme Court.  See

4   Justice Alito" who references Caetano --

5           THE COURT:  Are you saying -- are you talking about

6   whether or not the weapon is dangerous and unusual, or are you

7   talking about the fact that the test that some folks referred

8   to it as "dangerous or unusual"?  You follow what I'm saying?

9   Are you talking about the weapon?  Because, certainly, I can

10  understand, particularly in your case, talking about whether or

11  not the weapon is or is not dangerous and unusual.

12          But I don't want to talk about whether or not the test

13  is "dangerous and unusual" or "dangerous or unusual."  That has

14  been decided by somebody who's way above my pay grade.  Okay.

15          MR. BECK:  Alan Beck for the Plaintiffs Fouts, Your

16  Honor.

17          Our briefing also indicates that the phrase "dangerous

18  and unusual" doesn't actually refer to any sort of intrinsic

19  property of an arm.  Historically, in Heller, the Court

20  references the tradition of prohibiting carrying "dangerous and

21  unusual" weapons.

22          And after we took a look at what that actually was,

23  that -- that typically refers to prohibitions on carrying in

24  certain manners, that were actually what terrified people.

25          So our position is that the possession of any weapon

 1   cannot be justified simply through this historical tradition of

 2   carrying dangerous and unusual weapons, because it doesn't

 3   refer to types of weapons; it refers to certain types of

 4   conduct with weapons.

 5          And in light of the fact that the State's brief was

 6   36 pages, we're just hoping to have an equal-length brief as

 7   the brief they filed so we can demonstrate that to the Court,

 8   Your Honor.

 9          THE COURT:  And you've already prepared this, you're

10   telling me?

11          MR. BECK:  Yes, Your Honor.

12          THE COURT:  Okay.  File it.

13          MR. BECK:  Thank you.

14          THE COURT:  File it.  Thank you for making my life

15   that much more difficult, but whatever.  Okay.  File it.  I'm

16   done.

17          Okay.  So -- so --

18          MR. O'BRIEN:  Your Honor --

19          THE COURT:  You have 30 days to file the survey.  You

20   have 30 days after that to file any brief that you wish to

21   file.  And this goes for both sides.  Having looked at the

22   survey, having made your decisions, et cetera, you've got

23   30 days after that to file your brief.  You've got 10 days

24   after that to file any opposition that you want to in that

25   brief.  You have 20 days to depose Mr. Cramer and Mr. Roth.

1          Anything else?

2          MR. O'BRIEN:  Your Honor, if I may.  With respect to

3   the survey due in 30 days --

4          THE COURT:  Yes.

5          MR. O'BRIEN:  -- we would request, if possible, to

6   extend that to 60 days.

7          THE COURT:  I could probably do it -- if I had the

8   time and the resources, I think I could probably do that in

9   probably less than two weeks.  The State has unlimited

10  resources.  You can do this.  Trust me, you can do it.  I've

11  looked at it.  And if I had the resources and the time to do

12  it, I could do it in probably -- I could probably do it in a

13  week.

14         MR. O'BRIEN:  Well, you know, I understand where the

15  Court is coming from.

16         I think that there's a couple of issues.  One, we do

17  have a holiday period, and I think that our resources will be

18  limited at least, you know --

19         THE COURT:  Yeah.  I hear you.  I feel your pain.

20         MR. O'BRIEN:  -- to the last week, so I think to

21  expand beyond that, that takes away one week.

22         Also, as we note, even in Fouts, even, you know, in a

23  case where, you know, we provided a lot of that historical, you

24  know, information, it's still, I think with respect to what the

25  Court's asking for, is going to, you know, require, you know,

 1   some additional time, especially in researching each of those

 2   laws and determining whether or not they were challenged, and

 3   what the -- what the disposition was in those cases.

 4           THE COURT:  I would imagine, Mr. O'Brien, with all due

 5   respect, that whoever came up with that -- I don't know,

 6   whatever it is, 40 pages, 30 pages of statutes or whatever,

 7   already has, pretty much, that information.  And if they

 8   submitted it to the Court for purposes of persuading the Court,

 9   they should also have the information to determine, for

10   example, whether or not that statute has been previously held

11   unconstitutional or constitutional, and should be able to

12   provide me with a citation.

13           I don't think 30 days is unreasonable.  I understand,

14   but my order remains.  All right.

15           Is there anything else?  I'm sorry.  I don't --

16           Yeah, go ahead.

17           MR. O'BRIEN:  One more, Your Honor.

18           You know, we would just also request with respect

19   to -- as you're allowing for -- I believe, in the Miller or the

20   Duncan cases, for deposing Professor Cramer.  I don't know what

21   Professor Cramer or Mr. Cramer will testify to with respect to

22   Fouts.  I would -- if we need to depose him, and I don't know

23   if they're -- you know, we want to have that opportunity to do

24   so if we need.

25           THE COURT:  Well, if you don't know what you want from

 1   them in Fouts, what's the point of deposing him?

 2              MR. O'BRIEN:  Well, we need to have an opportunity to

 3   review his -- his declaration and --

 4              THE COURT:  Was the declaration already filed or not?

 5              MR. STAMBOULIEH:  The declaration is not filed yet,

 6   Your Honor.  The declaration, I would think, is probably

 7   substantially complete.  It's a rebuttal of Mr. Spitzer's

 8   expert report.

 9              THE COURT:  Tell you what we'll do.  Let's leave that

10   up in the air.  You take a look at it.  When you get the

11   opposition -- opposition, you get the declaration.

12              I've read Mr. Spitzer's declaration.  I'd say it's

13   probably one of the better ones I think that I've read.  If

14   after you read -- and, hopefully, you'll read it pretty

15   quickly.  But it isn't Mr. Cramer -- or is it Professor or

16   Mr. Cramer?  I hate to insult people.  But whatever it is he

17   says, if you think you need to depose him, let me know and let

18   me know quickly.

19              And if I decide that, in fact, that deposition is

20   necessary, I'll probably order that deposition to be taken on

21   very short notice, in which case I will allow you to take the

22   deposition of Mr. Spitzer.  And we'll take it from there.

23              We're going to get all this done, folks, in the time

24   period that I have set.

25              As I said, these are important cases to the State and

1   to the Plaintiffs and to the -- to the People of the State of

2   California.  So I want to move it along.  And that's that.

3   Okay.  I really appreciate you all being here.

4          MR. BRADY:  Regretfully, Your Honor, I have to raise

5   one issue --

6          THE COURT:  What's that?

7          MR. BRADY:  -- about the Rhode case that may,

8   unfortunately, complicate things.

9          And that is, the Rhode case, the analysis is a little

10  bit different than these other cases which have to do with

11  whether these specific items, right, are protected.  Here we're

12  talking about -- I don't think that there's any dispute that

13  ammunition is protected, and sale of it.  But what I suspect

14  the State, and what we've seen in the Ninth Circuit briefing,

15  their position is going to be that background checks on any

16  arm, regardless, are going to be covered historically, because

17  Bruen suggested that background checks on carry license are

18  going to be protected.

19         Our position is, obviously, going to be ammunition is

20  different, right, because the State admits that this is the

21  very first time that ammunition background check has ever been

22  put in place.  So our position is going be that's treated

23  differently.

24         But I think that we need, potentially, a backup

25  argument to make in case the State's argument carries the day

1    that background checks are generally okay or outside the scope

2    of the Second Amendment, and that is to point out that even if

3    background checks on ammunition are outside of the scope of the

4    Second Amendment, at some point the burden on them becomes so

5    great that --

6              THE COURT:  Well, I already decided that.  Didn't I

7    already decide in the ammunition case --

8              MR. BRADY:  Yes.

9              THE COURT:  -- that I thought that requiring people to

10   pay $19 every time they buy ammunition is unreasonable?

11             MR. BRADY:  Correct.

12             THE COURT:  I thought I decided that.

13             MR. BRADY:  You did, Your Honor.

14             THE COURT:  So we don't need to rehash stuff that

15   we've already gone through.

16             I think the question -- I think the question is:  Is

17   there any history or tradition that supports these background

18   checks?

19             Now, with that, Counsel, let me just say this.  The

20   Bruen case did say that background checks were okay, right,

21   with regard to the concealed carry.  Now, they also said,

22   however, that you can't impose unreasonable restrictions

23   because, you know, you can regulate the Second Amendment out of

24   existence by imposing regulations on something.  Right.

25             MR. BRADY:  Correct.  And that's what I was getting

 1    at, Your Honor.  If you're saying that your previous findings

 2    are the law of the case and the findings up to this point --

 3              THE COURT:  I'm not changing my mind.

 4              MR. BRADY:  Okay.  Then I -- so no --

 5              THE COURT:  You know, but I do want to raise

 6    something, by the way.  You know, I'm glad you mentioned that.

 7    I'm going to take a wild guess that your position is that any

 8    background check for buying ammunition is not reasonable.  I'm

 9    putting words in your mouth.  Okay.

10              Now, I said that this regulation -- which is not what

11    the legislature had originally enacted; right?

12              MR. BRADY:  Correct.

13              THE COURT:  This -- the way the bureaucracy has now

14    regulated purchases of ammunition is unreasonable.  But I guess

15    what I'm offering to you folks to talk about is whether or

16    not -- and I don't expect that this will be fruitful, but I

17    have to offer it because I think it's possible that if there

18    was a consent decree that said that the regulation of

19    purchasing ammunition as set forth by the legislature in the

20    legislative enactment would be what would be required, my

21    analysis might be very different.

22              And so I'm thinking that that perhaps might be a way

23    to compromise a resolution of that case.  I just offer that as

24    an idea, folks, but you can do with it whatever you wish.

25              I've spent about as much time on this case as I'm

1   going to.  So I need to go, unless there's something really,

2   really, really important you need to address.

3        MR. BECKINGTON:  Your Honor, I apologize for testing

4   your patience.  I'll be very brief.

5        THE COURT:  Okay.

6        MR. BECKINGTON:  Just for the clarification of the

7   record, we did have a motion for reconsideration.  We did have

8   requests, I think, both in the Miller and in Fouts and Rhode

9   for the additional time to do discovery, to submit evidence,

10   et cetera.

11        Is the Court making a formal rule on those matters --

12        THE COURT:  Nothing -- nothing is -- the only thing

13   that has changed -- the only thing that has changed since I

14   issued my rulings on the cases that I've issued rulings is what

15   Bruen -- the Bruen opinion says, which is that we consider the

16   history and tradition of the firearm regulation or the arm

17   regulation.  Okay.  That's the only thing that has changed.

18        All right.  Thank you.  Thank you very much.

19        MR. O'BRIEN:  Just one other thing, Your Honor.

20   Apologize.  Is the Court going to be issuing a written order?

21   We did the best we can to kind of keep track of what you were

22   looking for with respect to the survey, but I just wanted to

23   clarify that as well.

24        THE COURT:  Well, you couldn't write that fast?

25        MR. O'BRIEN:  I tried, Your Honor.

1          MR. DILLON:  We have to summarize, Your Honor.

2          MR. O'BRIEN:  Yeah.

3          THE COURT:  We'll do our best.  I'll issue a written

4     order.  Thank you very much.  And I appreciate you all being

5     here.

6          (The proceedings were adjourned at 11:50 a.m.)

7                              -oOo-

8                    **C E R T I F I C A T E**

9          I, Abigail R. Torres, certify that I am a duly
      qualified and acting Official Court Reporter for the United
10    States District Court; that the foregoing is a true and
      accurate transcript of the proceedings as taken by me in the
11    above-entitled matter on December 12, 2022, and that the format
      used complies with the rules and requirements of the United
12    States Judicial Conference.

13    DATED:  December 20, 2022, San Diego.
      S/ABIGAIL R. TORRES
14    _____
      Abigail R. Torres, CSR No. 13700
15    U.S. Official Court Reporter

16

17

18

19

20

21

22

23

24

25

C.D. Michel – SBN 144258
Sean A. Brady – SBN 262007
Anna M. Barvir – SBN 268728
Matthew D. Cubeiro – SBN 291519
MICHEL & ASSOCIATES, P.C.
180 E. Ocean Boulevard, Suite 200
Long Beach, CA 90802
Telephone: (562) 216-4444
Facsimile: (562) 216-4445
Email: abarvir@michellawyers.com

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIRGINIA DUNCAN, et al.,<br><br>                          Plaintiffs,<br><br>                v.<br><br>XAVIER BECERRA, in his official capacity as Attorney General of the State of California,<br><br>                          Defendant. | Case No:  17-cv-1017-BEN-JLB<br><br>**DECLARATION OF ASHLEY HLEBINSKY IN SUPPORT OF PLAINTIFFS' SUPPLEMENTAL BRIEF; EXHIBIT 1** |

1
DECLARATION OF ASHLEY HLEBINSKY

17cv1017

I, Ashley Hlebinsky, declare as follows:

1.     I am a firearms historian and public educator, specializing in material culture studies, as well as a firearms and ammunition-related museum consultant, expert witness, freelance writer, and guest lecturer. I conduct my business through a single-member LLC, The Gun Code. I also am the Co-Founder and Senior Fellow for the University of Wyoming College of Law's Firearms Research Center (2022).

2.     I have been retained by the plaintiffs in this matter to provide historical testimony on firearms technology, with an emphasis on the history of technology in relation to repeaters and magazine-fed repeaters, some with capacities greater than ten rounds. I will also provide a brief look into the laws that existed at the time of the United States' Founding and Second Founding Eras to provide reference for any possible analogous comparisons to modern magazine restrictions as defined in the *New York State Rifle and Pistol Association, Inc. v Bruen* (henceforth to be referred to as *Bruen*) ruling by the Supreme Court. This report has been prepared for the supplemental briefing that was ordered following the 9th Circuit's remand in *Virginia Duncan, et al. v. Rob Bonta.* I have been retained to write a declaration at the rate of $450/hour.

**Background and Qualifications**

3.     I have spent the last fifteen years immersed in the study of firearms history, technology, and culture. I earned both Bachelor's and Master's Degrees in American History from the University of Delaware, during which I studied firearms history and culture and instructed undergraduate students about military weaponry throughout history. Much of my work since then focuses heavily on material culture surrounding the macro-history of firearms and how their developments have affected industry, culture, and society for centuries. I have been fortunate to work in some of the largest collections in the United States, beginning my career as a researcher and fellow in the Smithsonian Institution's National Firearms Collection housed in the National Museum of American History.

4.      Additionally, I spent a decade working with and running the only accredited firearms museum in the United States, the Cody Firearms Museum (henceforth to be referred to as the CFM). During my tenure, I also served as Project Director of the museum's full-scale multimillion-dollar renovation. With the aid of my team, I was responsible for all facets of the renovation including but not limited to concept, content, fundraising, and collections management. The resulting museum, which reopened July 2019, provides a more interpretive space to facilitate productive dialogue on firearms and their roles in history. Throughout this museum, terminology and definitions play a significant role in educating both visitors not familiar with firearms and those who consider themselves aficionados. My team, a panel of experts, and I were responsible for dedicating an entire gallery at the front of the museum to understanding the basics of firearms past and present, their features, ammunition, and safety.

5.      During my time at the CFM and through my consulting business, I have become nationally known and sought after to provide a material culture perspective on firearms history that is often lacking in much of modern, academic, and legislative discussions on firearms. I guide museums as well other non- and for-profit organizations and government entities on the interpretation and understanding of that history. In May 2021, I testified in front of the Senate Judiciary Subcommittee on the Constitution's Hearing regarding "Ghost Guns," for which I researched and discussed the long history of privately made firearms and evolution of arms technology from the colonies through the 1960s. Because I have worked in several national collections that have upwards of 10,000 firearms each – collections that range from the earliest through most recent technology – I have developed a broad understanding of how firearms have evolved. Additionally, I have had the opportunity to work with, see, study and handle many of the firearms referenced in this declaration.

3
DECLARATION OF ASHLEY HLEBINSKY

6.     In addition to my historical scholarship, I also have played a role in public education around firearms. I have been responsible for the education of tens of thousands of students from elementary through college levels, teaching not only firearms safety and basics, but the historical and technical evolution of the firearm. In 2017, I developed the first full-scale symposium in the United States dedicated to the study of firearms as material culture, which reoccurs annually. These symposia were organized to bring together firearms scholars from around the world to discuss their collections but also to create metrics to analyze the quality of scholarship that already has been done in the field. The study of firearms is a complicated one, especially since much of the information about the objects themselves have traditionally been conducted by well-known firearms researchers and collectors. However, not all those people fall under traditional definitions of academic scholarship. On the other side, because of limitations in the study of firearms, academic research often has flaws in terms of a general understanding of the firearms themselves. We have worked to lessen that gap to create more balanced scholarship. To continue that mission, I sit on the Editorial Board for the recently revived, peer-reviewed arms journal, *Armax*, and I co-founded the University of Wyoming College of Law's Firearms Research Center in 2022. Despite its location in the College of Law, this new center intends to encourage research of all types related to arms and ammunition.

7.     Currently as a museum consultant, I am in the process of building several museums with heavy emphasis on firearms collections. I also conduct workshops on firearms, survey collections, and curate exhibitions at institutions such as the Houston Museum of Natural Science, CM Russell Museum & Complex, and the Mob Museum. I have served as a scholar and a panelist for the National Park Service and the Organization of American Historians on a forthcoming Coltsville National Historic Site. I am also an expert witness, freelance writer, guest lecturer, on-camera firearms historian, and television producer. A current copy of my

4

DECLARATION OF ASHLEY HLEBINSKY

1    Curriculum Vitae summarizing my education and experience is attached at the end
2    of this document as **Exhibit 1.**
3         8.    **Prior Expert Witness Testimony**
4    Ocean State Tactical et al v Rhode Island, October 2022
5    Senate Judiciary Subcommittee on the Constitution, Stop Gun Violence: Ghost
6    Guns, May 2021
7    Franklin Armory et al v Bonta, February 2021
8    FN Herstal v Sturm, Ruger & Co, January 2021
9    Sturm, Ruger & Co. v American Outdoor Brands Corp., October 2020
10   Guedes v BATFE, June 2019
11   Miller v Becerra (Bonta), November 2019
12             -    Evidentiary Hearing Testimony October 2020
13             -    Deposition January 2021
14   Regina (Nova Scotia) v Clayton, January 2019
15   Garrison v Sturm, Ruger & Company, Inc. 2018
16             -    Deposition November 2018
17        9.    **Scope of Work**
18        This report has been prepared for *Virginia Duncan, et al. v. Rob Bonta.*
19   Firstly, the report will provide a brief statement on the long history of the
20   interconnectivity between military and civilian arms. It will address how the
21   advancement of technology often was driven by the civilian market; the multi-
22   purpose use of early arms for civilians and the military; the private acquisition of
23   firearms to be used on the battlefield; and the postwar weapons surpluses that have
24   flooded and continue to flood the civilian market. Secondly, it will provide a history
25   of repeaters and/or magazine-fed repeaters, including firearms with capacities over
26   ten rounds, as well as an overview of some relevant laws during the times in which
27   they were invented and/or used. The second section will be loosely organized into
28   two subsections: the Founding and the Second Founding Eras, with related

5

DECLARATION OF ASHLEY HLEBINSKY

17cv1017

1   contextual histories, in chronological order, which also happens to be the order of

2   relevancy to constitutional law as defined in *Bruen*.

3        10.    According to *Heller v District of Columbia* and reiterated in *Bruen* "not

4   all history is created equal…Constitutional rights are enshrined with the scope they

5   were understood to have *when the people adopted them*."[1] Under *Bruen*, the most

6   relevant time frame in consideration regarding the constitutionality of modern

7   regulations is the Founding Era - when the Second Amendment was ratified. *Bruen*

8   does acknowledge that the period surrounding the creation of the Fourteenth

9   Amendment, known as the Second Founding Era, can be useful, although, as with

10   the Bruen case, it is not necessarily relevant when discussing the historical pedigree

11   of regulation.[2] Subsequent time frames can provide insight, albeit far less significant

12   if relevant at all, including the timeframe leading up to the ratification of the Second

13   Amendment, the time in between the Second and Fourteenth Amendments, and least

14   significant, the twentieth-century.[3]

15        11.    Important though to consider is "[guarding] against giving post

16   enactment history more weight than it can rightly bear."[4] *Bruen* does provide further

17   guidelines for when each era in history can inform the understanding of the Second

18   Amendment. It also provides guidance for how to determine a historical *analogue*.

19

20

---

21      [1] The following two paragraphs are summarized from an analysis of relevant history and historical analogues found in Johnson, Nicholas, Kopel, David B., Mocsary, George A, Wallace, E Gregory, & Donald Kilmer. *Firearms Law and the Second Amendment Regulation, Rights and Policy* (3rd ed. 2021) 2022 Supplement (August 2022), pg. 86 – 88

23      [2] Ibid pg. 86

24      [3] Ibid pg. 86 According to Johnson et al: some time periods can be used to provide the context of what was available leading up to the formation of the Second Amendment as well. For example, those periods can possibly provide context for the mindset of the Founding Fathers when the Second Amendment was ratified. Additionally, the period directly after can provide insight "to determine *the public understanding* of a legal text in the period after its enactment or ratification." The late nineteenth century history is helpful in instances when it affirms what has been established by earlier history. The same can be said about twentieth century history, although significantly less relevant than the other periods. These times do not necessarily provide insight if it contradicts earlier evidence

28      [4] Ibid, pg. 86

6

DECLARATION OF ASHLEY HLEBINSKY

1  While the law does not have to be a twin of a past law, there is some guidance to

2  consider as "courts should not 'uphold every modern law that remotely resembles a

3  historical analogue."[5]

4       12.    For this report, please note that I will make a distinction between

5  repeater and magazine-fed repeater. A magazine is a vital part of the firearm; it is a

6  container, detachable or fixed, that holds ammunition while it feeds into a repeating

7  firearm. In the periods being discussed, there are repeating firearms that do not use

8  magazines, such as revolvers, which use a rotating cylinder that is as important and

9  integral as a magazine is in order to fire a gun. When I am discussing a repeater that

10  has a magazine, I will qualify it as such. Additionally, I will use capacity to refer

11  specifically to the number of rounds of ammunition that can be held within a

12  firearm. When I am discussing magazine capacity, I will qualify it as such.

13  **General Statement of the Interconnectivity of Sport and War**

14       13.    The expression *weapon of war* is used a lot in modern and historical

15  discussions surrounding firearms. Today, it is used as an umbrella term to describe a

16  range of different firearms that people perceive as being useful to warfare, regardless

17  of whether they were actually used on or designed for the battlefield. How the

18  expression is used today implies a distinct line between firearms made for the

19  military and firearms made for the civilian market. However, that line for seven

20  hundred years has always been blurred.

21       14.    Once firearms were developed, technology often advanced too quickly

22  for common battlefield use, finding popularity in the civilian market. Military

23  firearms in a general sense were limited by tactics, government bureaucracy, and

24

25

26  [5] Johnson et al., pg. 88 According to the authors: "the analogue must be "relevantly similar." One measure of these laws to consider according to *Heller and McDonald v. Chicago* (2012) is through "at least two metrics: how and why the regulations burden a law-abiding citizen's right to armed defense." The how is defined as "whether modern and historical regulations impose comparable burden on the right of armed self-defense." The why is defined as "whether that burden is comparably justified."

27

28

expense, while civilian arms until recently were predominantly limited by individual budget. Additionally, civilian arms can be employed for far greater number of uses, including hunting, self-defense, and target shooting. The earliest firearms technology appeared on the battlefield by the thirteenth century. The hand cannon, or handgonne, was little more than the name suggests, a cannon for your hands. The user utilized a touchhole and external fire source to ignite powder and fire the gun. This primitive technology may not have been designed for a sporting purpose, but once it was designed, inventors pushed the boundaries, capabilities, and usages of firearms into the future. And while the hand cannon specifically may not have been used for sport, other military weapons of the time such as longbows and crossbows were popularly used for target shooting competitions in fairs during the Middle Ages.

15.     The first true ignition system, the matchlock, was developed around 1400. This firearm, which utilized a burning match cord, was a popular military arm used for centuries around the world. By the end of the 1400s, however, matchlocks and subsequent ignition systems also began appearing in early target shooting competitions.[6] Another example of a firearm being adopted for civilian use dates a century after the matchlock. In the first decade of the 1500s, a highly advanced handgun was developed, the wheel-lock. This gun, developed for use on horseback, was operated by the turning of a spring-loaded wheel. While it saw some battlefield use, it was expensive and difficult to repair. As a result, it was used for specialized purpose on the battlefield in Europe, but not as much in the colonies. However, the technology was considered so advanced, some European countries made and used wheel-locks for sport into the 1800s. Another example of superior technology being used by civilians rather than military is rifling. Rifling, the boring out of the inside

---

[6] Matchlocks and wheel-locks can be seen depicted in period imagery and in medals for shooting competitions

8

DECLARATION OF ASHLEY HLEBINSKY

of a barrel with spiral lands and grooves to spin a projectile, thus making it more accurate, was developed at the turn of the sixteenth century and appeared predominantly in civilian arms, with a few military exceptions from the American Revolution, until just before the turn of the twentieth century when military tactics finally caught up to the technology.[7]

16.    Before the ability to mass manufacture firearms, guns were privately made by gunsmiths. Although two armories did exist in the United States around the time of the Founding Era, many guns for the battlefield were made by individuals.[8] It is estimated that 2,500-3,000 gunsmiths worked in the colonies alone.[9] They, as private citizens, were responsible for making guns for both the military and civilians. While the standard infantry arm during the American Revolution was a smoothbore (no rifling) musket, there were some regiments during the War that used a common civilian firearm at the time, the American longrifle. The longrifle was a modified design from the German Jaeger (Hunting) Rifle that tended to have a longer barrel and a smaller caliber than its German counterpart. The rifle was the superior firearm in terms of accuracy compared to the inaccurate smoothbore musket. However, because of the type of projectile employed at the time – a round musket ball – the process to load was slower for rifles because the ball had to fit snuggly within the lands and grooves of the rifling. There was a trade off in terms of effectiveness for

_____

[7] Examples of rifled matchlocks do exist. Rifled wheel-locks are far more common as they were so often used for hunting. This timeline provides a decent overview of early technological developments: Gun Timeline. PBS History Detectives. <https://www.pbs.org/opb/historydetectives/technique/gun-timeline/index.html> Accessed 10/22/2022

[8] Springfield Armory was the first armory that began production in 1794 <https://www.nps.gov/spar/learn/historyculture/index.htm> Accessed 10/25/2022. The second armory was Harpers Ferry Armory and Arsenal, which began construction in 1799 < https://www.nps.gov/hafe/learn/historyculture/harpers-ferry-armory-and-arsenal.htm> Accessed 10/25/2022

[9] Moller, George D. *American Military Shoulder Arms: Volume 1*. University of New Mexico Press, 2011. P.107

9

DECLARATION OF ASHLEY HLEBINSKY

specific purposes.[10] The longrifle in the colonies served as a multi-purpose tool. It was capable of being used for hunting, self-defense, and target shooting. Important to note though that unless being made for large-scale military adoption, such as the smoothbore musket, and/or produced with the use of parts kits ordered from overseas, many civilian arms were made at the behest of individuals or in small runs.

17.     Target shooting was a part of American culture before the formation of the United States with colonists taking part in competitions known as "Rifle Frolics."[11] This tradition has continued throughout American history, especially after the Civil War. For example, the National Rifle Association may have been founded by Union officers in 1871, but its core purpose was "to promote and encourage rifle shooting on a scientific basis." What resulted was the proliferation of international shooting competitions.[12] Another example is the Olympic sport of Biathlon, a sport which involves both skiing and target shooting, dating to 1767 in Europe. It was initially created for government use in places like Norway. That purpose persisted for centuries, even after becoming an international sport. In the 1930s, Finnish troops still used skis and rifles for patrol. Until recently, the firearms used in Biathlon and other disciplines of the shooting sports, often used modified versions of

---

[10] Until the development of a successful conically shaped bullet (rather than a round musket ball) by Claude Etienne Minie and modified by James Burton at Harpers Ferry, rifling was expensive and slow to load. For a round ball to effectively spin in rifling, it had to fit perfectly which slowed the loading process. However, it was perfect for target shooting as well as hunting and specialized military use. Since tactics by the military were still shoulder-to-shoulder fighting, accuracy was not of prime importance, so militaries used smoothbore (unrifled) barrels for their standard equipment.

[11] This is a tradition kept alive by several historic sites including, Fort Boonesborough Living History Museum and Bardstown, KY's Colonial Days <<https://fortboonesboroughlivinghistory.org/html/rifle_frolic.html> Accessed 10/25/2022 <https://www.prlog.org/11271548-rifle-frolics-18th-century-market-fair-military-drills-displays-and-daniel-boone.html> Accessed 10/25/2022

[12] The National Rifle Association of America was founded after the National Rifle Association in the United Kingdom (1859). <https://home.nra.org/about-the-nra/> Accessed 10/25/2022

10

DECLARATION OF ASHLEY HLEBINSKY

1    center-fire NATO cartridge firearms.[13] By the nineteenth century, progress on

2    manufacturing processes allowed more firearms of more varieties to be available to

3    the US government as well as civilians. Many of the repeaters of all sorts produced

4    during this century came in specific models indicating sporting vs military

5    variants.[14]

6          18.     The line between military and civilian arms was certainly blurred at the

7    founding of the country and thereafter, as was the role of the civilian and the soldier.

8    In the colonies and in early America, certain citizens were required to serve in their

9    militias with firearm and ammunition requirements and some soldiers carried their

10    personal firearms into battle. By the American Civil War, it was not unheard of for

11    soldiers to privately purchase firearms that the US government had not adopted or

12    did not issue to them for use in battle. After the war, even issued weapons that were

13    used *in* war were often sold on the civilian market. After the Civil War, soldiers

14    could buy their firearms and many dealers and distributors sold the surplus in mass

15    in their catalogs or at stores for even lower prices. According to Springfield Armory

16    National Historic Site, "many thousands [of] cheap surplus weapons were released

17    into private hands through General Orders 101, providing rifles, pistols, carbines,

18    and muskets that found their ways into the hands of Americans in the decades

19    following the Civil War."[15] The tradition of selling military arms to civilians

20    continues today with firearms such as the Springfield Model 1903 bolt action rifle

21

22

---

23

24      [13] An example of a centerfire modified firearm can be found in the Cody Firearms Museum. Here is a succinct summary of the history of the biathlon <https://minnesotabiathlon.com/about-biathlon/the-history-of-biathlon/> 10/25/2022

25      [14] Flayderman, Norm. *The Flayderman's Guide to Antique American Firearms...and their Values*. 9th Ed (2019). This book is considered the gold

26 standard in the evaluation of antique American made firearms. It provides not only firearms organized by manufacturer but also by type, such as repeater, military etc.

27 Here is just one example: pgs. 694-695

     [15] Springfield Armory details this information here

28 <https://www.nps.gov/spar/learn/historyculture/a-springfield-rifle-musket.htm> Accessed 10/24/22

DECLARATION OF ASHLEY HLEBINSKY

17cv1017

1  and even with semi-automatics such as the M1 Garand rifle and the Model 1911
2  pistol.[16]

3      19.    There has always been an ebb and flow of civilian and military firearms
4  for centuries, some with clearer lines than others. However, the assertion that a gun,
5  especially during the Founding and Second Founding Eras, could be completely
6  understood as *only* for war in a time when there was such interchangeability, is
7  presentist at best.

8  **The Founding Era**

9      20.    In today's understanding of historical relevance, *Bruen* affirms that the
10  most crucial time for consideration of the constitutionality of modern regulations
11  falls under the Founding Era defined as the time around the ratification of the
12  Second Amendment. By this era, repeating, including magazine-fed, firearms had
13  been around for a long time. Additionally, repeaters, including those with
14  magazines, could have capacities of over ten rounds at least a century before and
15  during the ratification of the Second Amendment. Despite the invention of these
16  technologies, firearms laws during this time were primarily focused on restricting
17  access to enslaved, Native, and free Black peoples as well as other people of color.
18  *Repeaters*

19      21.    The concept of a repeating firearm dates to the earliest technology of
20  firearms. Hand cannons even came in repeating variations.[17] While some repeaters
21  were employed or simply attempted on the battlefield, repeating technology would
22  not be widely popular for use in war until the late nineteenth century. That did not
23  mean however that innovation in repeating technology was stymied. In fact, it was
24  quite the opposite. Without the confines of wartime tactics and budget, many

---

[16] Today, postwar weapon surplus guns including several semi-automatic firearms such as the M1 Garand are sold through the Civilian Marksmanship Unit <https://thecmp.org/sales-and-service/1911-information/> <https://thecmp.org/sales-and-service/services-for-the-m1-garand/> Accessed 11/25/2022
[17] An example can be found in the Cody Firearms Museum Collection

12

DECLARATION OF ASHLEY HLEBINSKY

repeating firearms were commissioned by civilians who utilized them. The simplest method of producing arms capable of firing more than one round at a time initially was to fit a firearm with more than one barrel. However, due to weight limitations, gunmakers began experimenting with other means of producing repeating arms during the sixteenth century. One of the first methods attempted involved superimposed loads, which were successive charges of powder and ball on top of each other that were separated by wadding or the projectile itself in one barrel. They were fitted with locks that either had multiple cocks and pans or a single lock that could slide upon a rail. One such example was a sixteen-shot firearm made in 1580.[18]

     22.   By the 1630s, a Dutch gun making family, Kalthoff, began experimenting with a design that allowed up to fifteen shots to be fired in rapid succession. It utilized a tubular magazine located in a pistol's butt or a fowling piece's stock to hold powder and balls.[19] This system was so innovative it was reproduced and modified for over 150 years. Also, by the mid-seventeenth century in Italy, magazine-fed repeaters were being developed. According to the Royal Armouries (Leeds), the earliest example can be found at the Musée de l'Armée which was made by Giacomo Berselli of Bolognia in the late 1660s.[20] However, more well-known and relevant to the Founding Fathers, is Michele Lorenzoni of Florence. He developed a magazine-fed repeater, in pistol and rifle form, known as the Lorenzoni system. This design was copied and modified by numerous designers after its invention with various configurations and magazine

---

[18] This firearm was on display at the National Firearms Museum's location in Missouri. Winant, Lewis. "A 16-Shot Wheel Lock," *America's 1st Freedom* (2014).
[19] Some of this research was compiled by the late historian, Herbert G. Houze and was featured in the Houston Museum of Natural Science's *The Art of the Hunt: Decorated European Sporting Arms from 1500-1800* (2019).
[20] For more information, visit: https://royalarmouries.org/stories/our-collection/the-christmas-connection-to-captain-souths-lorenzoni-pistol-our-collection/ Accessed 10/24/2022

DECLARATION OF ASHLEY HLEBINSKY

17cv1017

1    capacities. One such firearm was designed by British gunsmith, John Cookson in the

2    late seventeenth century. A gunmaker in Boston, also named John Cookson – it is

3    not clear if this person was the same Cookson from England, a relative, or a

4    coincidence – published an ad in the *Boston Gazette*, in 1756, advertising a nine-shot

5    repeating firearm. Around the same time a Cookson-type twelve-shot repeater was

6    made by gunmaker John Shaw.[21] Another example from the 1750s in America is the

7    Belton repeating fusil. This gun was invented by Joseph Belton around 1758. Not a

8    magazine repeater like the Lorenzoni, the Belton utilized superimposed loads.

9    Notably, he petitioned the Continental Congress during the American Revolution to

10   adopt his firearm. In 1776, he wrote Congress saying he designed a firearm that

11   could fire eight shots in three seconds. Benjamin Franklin wrote to George

12   Washington in support of the idea.[22] Washington ordered one hundred Belton

13   firearms for use in the Continental Army. However, this order was canceled because,

14   as this report has previously stated, cost is often an impediment to battlefield

15   adoption. It is alleged that Belton then sold his firearms to the public.[23] A few

16   decades later around 1779, the Girardoni (also spelled Girandoni) air rifle was

17   developed. It was a repeating arm that could fire twenty-two rounds from a tubular

18

19

20

21   [21]An example of this firearm can be found in the National Firearms Museum
     <https://www.nramuseum.org/the-museum/the-galleries/the-road-to-american-

22   liberty/case-22-the-paper-cartridge/cookson-volitional-repeating-flintlock.aspx> It is
     also discussed here: < http://firearmshistory.blogspot.com/2014/02/the-cookson-
     repeater.html> Accessed 10/24/22

23   [22] These letters can be found here:
     <https://founders.archives.gov/documents/Washington/03-05-02-0311> Accessed

24   10/22/22
     [23] What is believed to be the patent prototype of the Belton fusil is in the

25   Smithsonian Institution's National Firearms Collection:<
     https://americanhistory.si.edu/collections/search/object/nmah_440031> Accessed

26   10/22/2022. Additionally, Rock Island Auctions, who has sold recently several
     reproduction Beltons provides a great overview of this history

27   <https://www.rockislandauction.com/riac-blog/assault-weapons-before-the-second-
     amendment#:~:text=The%20Belton%20%22Roman%20candle%22%20fusil%20is

28   %20the%20first,a%20chained%20charge%20much%20like%20a%20Roman%20ca
     ndle> Accessed 10/22/2022

14

DECLARATION OF ASHLEY HLEBINSKY

1  magazine.[24] This design also was copied by gunmakers around the world.[25] The

2  actual Girardoni was used by Meriweather Lewis on the Lewis and Clark Expedition

3  (1804-1806). This air rifle had also been in service with the Austrian military, but

4  light weight examples were produced in sporting variations.[26]

5        23.    The above text serves merely as an example of the numerous types of

6  repeating firearms, utilizing a range of technologies including magazines, which

7  existed leading up to and at the time of the ratification of the Second Amendment

8  and in some cases had direct ties to Founding Fathers. While these repeaters can be

9  criticized as "one-off examples" or in some cases unsuccessful by modern and/or

10  historic standards, it is important to keep in mind that this was typical as they were

11  often made by private gunsmiths and sometimes individually commissioned.

12  Additionally, just because some firearms designs had flaws, imperfections, or issues,

13  does not mean the technology ceases to exist or can be expunged from history. As

14  manufacturing processes advanced, these concepts evolved into repeaters produced

15  in greater and more standard quantities.

16  / / /

17  / / /

18

---

19

20  [24] Kopel, David. "The History of Firearms Magazines and Magazine Prohibitions." Albany Law Review, Vol. 88, 2015, pg. 853

21  [25] An example of a Russian copy of a Girardoni Rifle can be found in the Cody Firearms Museum

22  [26] For more information on Lewis and Clark and the Girardoni, the most comprehensive research on the Girardoni air rifle was done by scholar Michael Carrick. His research is footnoted in this summary article of the Lewis and Clark

23  firearms that can be found here:
<http://www.westernexplorers.us/Firearms_of_Lewis_and_Clark.pdf> Accessed

24  10/22/22 Additionally, Ian McCollum, one of the foremost authorities on firearms technology in the United States, has done several videos and articles about the

25  firearm. This is one article he did
<https://www.forgottenweapons.com/rifles/girardoni-air-rifle/> Accessed

26  10/22/2022. A surviving example of a Girardoni can be found:
<https://www.nramuseum.org/guns/the-galleries/a-prospering-new-republic-1780-

27  to-1860/case-8-romance-of-the-long-rifle/girardoni-air-rifle-as-used-by-lewis-and-clark.aspx> Accessed 10/22/22 Rock Island sold a sporting variation in 2018:

28  <https://www.rockislandauction.com/detail/75/3293/girardoni-system-repeating-air-gun > Accessed 10/22/22

*Laws and Relevance*

24.     In the colonial period, the bulk of firearms laws were centered on restricting access to certain people rather than firearms themselves. Therefore, even if a firearm or weapon was specifically mentioned in a law, the type of weapon is not necessarily relevant, as other civilians were still permitted to own them even if some people were restricted. Each colony developed their own policies. In 1640, Virginia law stated, "that all such free Mulattoes, Negroes and Indians…shall appear without arms."[27] South Carolina also had similar bans in 1712.[28] It is generally understood that early laws were largely motivated by race.[29]

25.     The British government also used regulation to control the colonists through access to gunpowder by seizing public powder houses, also referred to as "magazines." Although it is not to be confused or conflated with the mechanical devices discussed throughout this declaration. They achieved this because, due to fire hazard, large stocks of black powder were kept in a communal powder house, which was a repository for both individuals and merchants to store their powder. It also provided powder for people who were unable to afford it.[30] In one instance of disarmament, Royal Governor Thomas Gage, in 1774, seized remaining powder in Charleston, causing a flurry of responses, known as the Powder Alarm, from the

---

[27] One of the best resources to search all firearms laws is the Duke Center for Firearms Law. <https://firearmslaw.duke.edu/> Accessed 10/25/2022. However, a concise summary of these laws is also broken down by:  Ekwall, Steve. *The Racist Origins of US Gun Control.* <https://www.sedgwickcounty.org/media/29093/the-racist-origins-of-us-gun-control.pdf> Accessed 10/22/22 Here he references: 7 The Statues at Large; Being a Collection of all the Laws of Virginia, from the First Session of the Legislature, in the Year 1619, p. 95 (W.W. Henning ed. 1823) (GMU CR LJ, p. 67)

[28] Eckwall, 7 Statutes at Large of South Carolina, p. 353-54 (D.J. McCord ed. 1836-1873). (GMU CR LJ, p. 70)

[29] The abstract of Cramer, Clayton E. "Colonia Firearms Regulation" (April 6, 2016) puts it fairly succinctly: "Firearms regulation in Colonial America was primarily focused on encouraging gun ownership for defense against external threats (Indians, pirates, non-British European powers) and internal threats (slave rebellions)"

[30] Johnson et al. Firearms Law and Second Amendment Regulation, Rights, and Policy (3rd ed. 2021), pg. 271

16
DECLARATION OF ASHLEY HLEBINSKY

17cv1017

1  colonists that was considered preparation for the Battles of Lexington and

2  Concord.[31] Shortly thereafter, King George III enacted a restriction to "prohibit the

3  Exportation of Gunpowder."[32] As a result, Revolutionary leaders, such as Paul

4  Revere, required possession of arms and ammunition by militiamen and many

5  required powder and projectiles in quantities greater than ten pounds and rounds

6  respectively.[33]

7      26.    While the ownership of gunpowder was outright encouraged by the

8  soon-to-be states of America, there were still very real concerns about the instability

9  of gunpowder. It is important to note that modern gunpowder is far more stable than

10 historic black powder. Even so, it is still recommended to be stored separately from

11 firearms in the home even today.[34] As a result of instability, fire prevention laws

12 were enacted, not to disarm individuals but to provide them a safe place to store their

13 powder while also reducing the potential for fire within communities. Philadelphia

14 in 1725 enacted a law "for the better securing of the city of Philadelphia from the

15 Danger of Gunpowder." Under this Act, safety was also defined as the distance of

16 beyond two miles outside of town limits.[35] Similarly, Boston in 1783 also made a

17 storage law citing the instability of black powder. "In the houses of the town of

18 Boston, [it] is dangerous to the lives of those who are disposed to exert themselves

19 when a fire happens to break out in town."[36] The idea of a required distance in which

---

20

21

22    [31] Johnson, et al., pg. 271
      [32] Ibid, pg. 272
23    [33] *Duncan v. Becerra*, 366 F. Supp. 3d 1131, 1150 (S.D. Cal. 2019)
      [34] According to the Sporting Arms and Ammunition Manufacturer's Institute,
24 "ammunition should be stored in a cool, dry location away from solvents and other chemical heat sources, or open flames…ammunition should be stored separately from firearms" < https://saami.org/wp-
25 content/uploads/2018/01/SAAMI_AmmoStorage.pdf> Accessed 10/25/22
      [35] 1725 Pa. Laws 31, An Act for the Better Securing of the City of Philadelphia
26 from the Danger of Gunpowder <https://firearmslaw.duke.edu/laws/1725-pa-laws-31-an-act-for-the-better-securing-of-the-city-of-philadelphia-from-the-danger-of-
27 gunpowder-%c2%a7-2/> Accessed 10/25/22
      [36] Thomas Wetmore, Commissioner, The Charter and Ordinances of the City of
28 Boston <https://firearmslaw.duke.edu/laws/thomas-wetmore-commissioner-the-charter-and-ordinances-of-the-city-of-boston-together-with-the-acts-of-the-

17

DECLARATION OF ASHLEY HLEBINSKY

17cv1017

1   it was safe to use black powder for firearms and also for fireworks, was echoed in

2   these laws. While in the above example it considered distance within town limits,

3   some places legislated a safe distance from the powder house itself. For example, in

4   1762, Rhode Island enacted "that no person whatsoever shall fire a gun or other

5   fireworks within one hundred yards of the said powder house."[37] Additionally,

6   Rhode Island in 1798, provided guidance on how to safely store powder in the home.

7   They also provided a safe space to store anything over twenty-eight pounds[38] These

8   laws strongly focused on safety from a perspective of fire prevention rather than a

9   position of regulating the amount of powder one could have since powder houses

10  were built for large quantities of chemically unstable and combustible material.

11          27.     In summary, at the time of the Founding Era, laws about firearms

12  restriction were regularly directed towards groups of people rather than the firearms

13  themselves. Within these laws, repeating and firing capacity are not mentioned. In

14  some cases, the militia required arms and ammunition to be in civilian possession

15  partially due to British attacks on public powder houses. Additionally, laws

16  concerning the private possession of gunpowder were centered around fire

17  prevention within and near town's limits or proximity to a powder house.

18  **The Second Founding Era**

19          28.     According to *Bruen,* under certain circumstances the Second Founding

20  Era, surrounding the Fourteenth Amendment, can be used to provide insight into

21  historical analogues. As mentioned in the previous section, repeaters, including

22  magazine-fed firearms, were known, and becoming increasingly popular at the time

23  of the Fourteenth Amendment. Capacities over ten rounds existed before and during

24  

25  

26  legislature-relating-to-the-city-page-142-143-image-142-1834-available-at-the-making-of/> Accessed 10/25/2022

27  [37] 1762 R.I. Pub. Laws 132 <https://firearmslaw.duke.edu/laws/1762-r-i-pub-laws-132/> Accessed 10/25/22

28  [38] 1798-1813 R.I. Pub Laws 85 < https://firearmslaw.duke.edu/laws/1798-1813-r-i-pub-laws-85-an-act-relative-to-the-keeping-gun-powder-in-the-town-of-providence-%c2%a72/> Accessed 10/25/22

18

DECLARATION OF ASHLEY HLEBINSKY

17cv1017

this time. Laws yet again did not concern capacity. They continued to center around restrictions against groups of people. They also centered around carry. Ironically, though some firearms regulated in carry laws were still legal, despite having the same or even greater capacity, as long as they were physically larger in size, or in some cases more expensive.

### *Repeaters*

29.     The period before and after ratification of the Fourteenth Amendment saw changes in the landscape of design and technology outside of just firearms. The transition of firearms being made by private gunmakers began shifting to factories by the mid-nineteenth century. Inline manufacturing, interchangeable parts, and mass production impacted not only the types of firearms that were available, but also quantity and quality. Prior to the American Civil War, there were many makers and manufacturers of repeating firearms, however, the tradition of individual gunmakers was still prominent. While repeating firearms, magazine-fed or not, exceeded ten-rounds centuries prior, the number of distinct types of repeaters by the middle of the nineteenth century was staggering. It is important to note that while this report references the ceiling of ten rounds, that number is historically arbitrary as it is unfair to assume that a person during that time would make a distinction between capacities under and over ten rounds, especially considering to my knowledge, the federal government itself did not until the 1990s.[39]

30.     After the ratification of the Second Amendment, repeating technology continued to evolve as it had for centuries. During this time frame, especially leading up to the Industrial Revolutions and standardization of interchangeability and in-line manufacturing processes, designs were very much a trial-and-error

---

[39] This date is referencing the Public Safety and Recreational Firearms Use Protection Act (1994). Additionally, there are many resources that can showcase the number of repeaters available in this time frame in the United States, but the place that aggregates them the best is Flayderman, Norm. *The Flayderman's Guide to Antique American Firearms…and their Values*. 9th Ed.

19

DECLARATION OF ASHLEY HLEBINSKY

1   process. One such repeater was designed in 1821 and was known as the Jennings

2   repeating flintlock. It was capable of firing twelve rounds before having to reload.[40]

3   Pepperbox pistols, a revolving pistol with multiple barrels that were manually

4   rotated on a central axis, were popular in the United States by the 1830s, some were

5   even taken out west with California gold miners. One maker of pepperboxes alone,

6   Ethan Allen, between the 1840s and 1850s made over forty variations of this style of

7   firearm.[41] While many pepperbox pistols typically fired four to six shots, some were

8   capable of firing twelve, eighteen, or twenty-four rounds.[42] It becomes difficult to

9   quantify the number of repeaters on the market though because makers were so

10  plentiful. In 1836, a year before Samuel Colt's first patent in England of his

11  revolving mechanism, the patent process was standardized through the United States

12  Patent Act. That year, Samuel Colt took out two patents for five or six-shot

13  revolving rifles and pistols. As a result, he owned the legal right to produce,

14  essentially the revolver, until it expired in the mid-1850s. This Act created a flurry

15  of production, innovation, and design especially towards repeaters and magazines to

16  varying degrees of success. The fact though that so many people were trying to

17  design the next great repeater shows the desire to capitalize on this technology.[43]

18      31.     It has been cited and challenged that the Winchester Model 1866 was

19  the first magazine-fed repeater that held more than ten rounds to achieve commercial

20  success.[44] The Winchester Model 1866 lever action rifle was the first firearm sold

21  using the Winchester name. Between 1866 and 1898, approximately 170,101 Model

22  1866s, in .44 Rimfire, were produced. Of that model alone, around ten variations

23

24  ───────────────

25  [40] Flayderman, Pg 683
    [41] Ibid pg. 56-61

26  [42] Kopel, pg. 854. Additionally, pinfire pistols and long guns can be found in
    museum collections with capacities greater than ten rounds.

27  [43] Examples of these patented repeaters include Volcanic lever actions, the Jarre
    Harmonica pistol and rifle, Porter and Genhart turret rifles, Josselyn Chain
    Revolvers etc. More successfully were revolvers and repeaters by Smith & Wesson,

28  Remington, Merwin & Hulbert, Henry, Winchester etc.
    [44] Kopel, pg. 869

DECLARATION OF ASHLEY HLEBINSKY

17cv1017

1  existed. It was hoped that the Winchester Model 1866 would see successful adoption

2  by the US military, however, it did not. Only a small percentage, roughly 1/3 of total

3  production, were made ultimately for use by foreign militaries.[45] According to

4  another statistic, between 1861 and 1877, a total of 164,466 Henry and all models of

5  Winchester were made, with approximately 56,000 going to foreign governments.[46]

6  This number, even with the inclusion of other models, still is only 1/3 of all sales. In

7  reference to his Model 1866, Oliver Winchester referred to it as "one of [the

8  company's] best sporting guns" in a letter, dating 1871, to prominent gunmaker R.S.

9  Lawrence.[47] In a Winchester testimonial from 1865, W.C. Dodge, Late Examiner of

10 the US Patent Office, boasted that Winchester's "Magazine Rifle, with the recent

11 improvement, is superior to any other arm ever presented to the public."[48] In the

12 beginning, Winchester did lean into its previous involvement with the Henry rifle as

13 a marketing tool because it was a known commodity, however, within a decade after

14 the company's founding, Winchester catalogs detailing their sporting models and

15 diverse product lines were interspersed with testimonies from hunters and civilians

16 about their love of the technology.[49]  The categories for their 1875 catalog reads:

17 "Winchester's Repeating Fire-Arms, Rifled Muskets, Carbines, Hunting and Target

18

19

---

20  [45] Flayderman's also provides the number of Mexican contract firearms there were. The records are not complete for the Model 1866. The Records can be found
21  in the Cody Firearms Museum's Records Office. Here is a breakdown of what has survived through the Winchester collector.
22  https://winchestercollector.org/models/model-1866/ This article also provides a breakdown of other military contracts. <
23  https://www.americanrifleman.org/content/winchester-lever-actions-go-to-war/> Accessed 10/22/22
24  [46] Michael Vorenberg Decl., pg. 28, note 32.
     [47] Oliver F. Winchester's letter to R.S. Lawrence, dated 10 February 1871.
25  McCracken Research Library, MS20, Box 51, Folder 6
     [48] Dodge is most likely referencing the 1865 King's Patent Improvement which
26  incorporated a side loading gate to improve the speed of loading the firearm. Winchester's Repeating Fire-Arms Rifled Muskets, Carbines, Hunting, and Target
27  Rifles, &c…Metallic Cartridges of all Kinds, manufactured by the Winchester Repeating Arms Company." Catalogues Vol. 1 (1865-1881). McCracken Research
28  Library TS 533.5.W5431991v1c2
     [49] Ibid

21
DECLARATION OF ASHLEY HLEBINSKY

17cv1017

1  Rifles, &c…"[50] One such testimonial was from famous performer, William F. Cody,

2  who proclaimed, "I have tried and used nearly every kind of gun made in the United

3  States, and for general hunting or Indian fighting, I pronounce your improved

4  Winchester the *boss.*"[51] Despite the ways that Winchester chose to frame and market

5  their firearms though, it should be noted that while advertising can influence a

6  consumer, a consumer also has agency to purchase and use the product they want for

7  their own purposes.

8      32.    While Winchester would provide the United States smaller runs of their

9  firearms designs modified for military service around the turn of the twentieth

10  century, Winchester would not truly be seen as a full-scale military manufacturer

11  until their involvement in World War I when government owned armories could no

12  longer meet the demand for military arms. Winchester and other manufacturers such

13  as Remington stepped in initially producing firearms – not even associated with their

14  brands - invented by other designers, companies, and/or armories, such as the British

15  Pattern 1914 Enfield and the American version, the U.S. Model 1917. These military

16  contracts however would ultimately be the financial demise of the company as it

17  went into receivership in 1931.[52]

18      33.    Outside of those early small contracts, Winchester continued designing

19  guns for the civilian market. The Winchester Model 1873 boasted a production of

20  around 720,610 manufactured in at least twelve variations, including almost 20,000

21  in .22 caliber rimfire – a caliber used for target shooting and varmint hunting. Model

22  1873 rifles were chambered in .32-20, .38-40, .44-40, and .22 caliber. The Model

23  1876 had a manufacturing run of 63,871 firearms with around fifteen variations.

24

25

26  [50] McCracken Research Library TS 533.5.W5431991v1c
    [51] Ibid, pg. 28-29
27  [52] This information can be found in pretty much any book about Winchester. The
    author also knows this information for the decade she spent running the Cody
28  Firearms Museum, formerly known as the Winchester Museum, which is home to
    Winchester's firearms collection as well as archives from the company

22

DECLARATION OF ASHLEY HLEBINSKY

17cv1017

ER_669

1   This Model was a larger version of the Model 1873 and chambered in heavier

2   calibers (.40-60, .45-60, .45-75, .50-95), which made the firearm more desirable for

3   hunters, including President Theodore Roosevelt.[53] At one point, they produced an

4   exclusive line of high-level sporting arms of the Models 1873 and 1876 known as

5   the "1 of 100" and "1 of 1,000" models. Between the start of the company until

6   1898, Winchester released fourteen repeating models – not all lever actions. Those

7   models would eventually be produced in over one hundred variations, chambered for

8   around thirty different cartridges.[54] Winchester continued mass producing repeating

9   firearms throughout the rest of the nineteenth century and beyond. Considering the

10  diversity within models, variations and especially calibers, these guns were

11  developed for specific and sometimes divergent purposes and cannot not be reduced

12  into one category of simply being a Winchester repeater. There is more nuance than

13  that.

14      34.     During this same time, other companies were producing competitive

15  repeaters, such as the Evans Repeating Rifle, which was made between 1873 and

16  1879. Approximately, 12,200 were made and they came in three variations, Sporting

17  (approximately 4,350 made), Military (approximately 3,200), and Carbine (not

18  specified as either sporting or military, approximately 4,700 made). The Evans held

19  magazine capacities at twenty-eight, thirty-four, and thirty-eight rounds.[55] The Evans

20  as well as other companies such as the Spencer Repeating Rifle, Fogerty Repeating

21  Rifle, Adirondack Firearms, Bullard Repeating Arms, Burgess Gun, and the

22  Whitney Arms Companies were making repeaters. However, they are lesser known,

23  partially because Winchester realized the value in their designs and the threat of

24

25

26

27      [53] Flayderman, pg 309

28      [54] Ibid pg 306-322.
        [55] Ibid pg. 694-695

them as a competitor so they acquired the companies.[56] Other major manufacturers, such as Marlin, quickly popped up as well by the 1880s as a direct competitor to Winchester. In all, there were over one hundred manufacturers or makers in the United States alone producing some type of repeating firearm leading up to and decades after the Civil War.[57]

35.     As plentiful as variations in Winchester firearms are though, the above information does not take into account the gargantuan amount of ammunition Winchester manufactured. In general, not enough is said about Winchester's innovation in cartridge design and the fact that ammunition production was responsible for much of the financial success of the company. According to David Kowalski, author of the *Standard Catalog of Winchester: The Most Comprehensive Price Guide Ever Published*, "cartridges played a larger role in the business operations of the Winchester Repeating Arms Company (W.R.A. Co.) than most collectors realize. Because ammunition is a high-volume, high profit product, it literally carried the W.R.A. Co. for most of its existence."[58] Their cartridge designs were so popular that other companies, such as Colt, would offer variations of their iconic firearms, such as the Colt Single Action Army revolver, to accommodate Winchester developed cartridges, such as the .44-40. Ammunition production was so vital to Winchester that the company who bought them out of receivership, the Olin Corporation, was their ammunition competitor. Today, the only surviving thread of the company is Olin's Winchester Ammunition. The various firearms brands that

---

[56] An entire exhibit at the Cody Firearms Museum is dedicated to the many repeating arms companies that Winchester acquired. Examples are archived in the Winchester Arms Collection.

[57] Flayderman, Chapters V: A-F pages 50-299; Chapter VII: A, B, C Pages 351-387; Chapter VIII: A Pg458-524; Chapter XIII pages 691-697; Chapter XV: pages 709-733

[58] Kowalski, David D. Ed. Standard Catalog of Winchester: The Most Comprehensive Price Guide Ever Published. Krause Publications 2000, pg. 159.

24

DECLARATION OF ASHLEY HLEBINSKY

17cv1017

1  bear the Winchester name, are produced by companies that license the name from
2  Olin.

3      *Magazines*

4      36.    In addition to the developments in repeating innovation, magazines
5  began to be patented as well. Even though tubular magazines existed long before,
6  the tubular magazine was first patented in the US in the 1840s, notably with the
7  Hunt Volitional Rifle, the oldest direct ancestor to the Winchester rifle. Magazines
8  though came in many shapes and sizes and became prevalent around this time. For
9  example, the Spencer repeating rifle utilized a detachable tubular magazine from the
10  buttstock capable of holding seven rounds. A speed loader even existed for that
11  magazine. In the 1850s, the Genhart turret rifle had a detachable circular magazine
12  with an externally visible shot/round counter. Between 1859 and 1862, the Jarre
13  Harmonica Pistol and Rifle received several patents. This gun has a horizontally
14  seated magazine that slides after each round is fired like a typewriter. It is also
15  detachable.

16      37.    In terms of box magazines specifically, early ones were patented by
17  designers including Rollin White in 1855.[59] A detachable version was patented in
18  1864 by Robert Wilson.[60] A vertically stacked box magazine was patented by James
19  Paris Lee in 1879 which was applied to several rifles including the Mannlicher
20  Model 1886 rifle.[61] In terms of early semi-automatic pistols, the Mauser C-96 had a
21  fixed magazine and the Borchardt C-93 had a detachable one. Semi-automatic
22  models of Winchester utilized various types of magazines, including the Winchester
23  Model 1907, a centerfire rifle capable of firing up to twenty rounds from a box
24  magazine and the Winchester Model 1903 which was also fixed with a lesser-known
25  Sabo ninety-six round detachable magazine. By the end of the nineteenth century,

26  _____

27
28  [59] White, Rollin. US Patent No 12648 (1855)
    [60] Wilson, Robert. US Patent No 45105 (1864)
    [61] Lee, James Paris US Patent No 221328 (1879)

25

DECLARATION OF ASHLEY HLEBINSKY

17cv1017

1    the earliest versions of semi-automatic pistols such as the Borchardt C-93 contained

2    eight rounds from a detachable magazine (1893) and the Mauser C-96 had a ten

3    round magazine (1895) but also came in configurations as high as twenty rounds.[62]

4    Even certain Luger semi-automatic pistols in the early 1900s had the option of

5    thirty-two round snail drum magazines.[63]

6    ***Laws and Relevance***

7         38.    Racial firearm bans continued into the nineteenth century. States

8    including but not limited to Louisiana, South Carolina, Florida, Delaware, Maryland,

9    North Carolina, and Mississippi enacted race bans between ratification and the

10    American Civil War.[64] Some states, for a time, would permit African Americans to

11    carry guns with court approval, but they were eventually repealed.[65] Several laws

12    upheld their justification for race-based regulation on the fact that Black people were

13    not considered citizens, which was upheld in the 1857 case of *Dred Scott v*

14    *Sandford.*

15         39.    During this period in between ratifications of the Second and the

16    Fourteenth Amendments, some laws emerged restricting carry by any person.

17    According to Professor of Sociology at Wake Forest University David Yamane, one

18    of the earliest examples was in Kentucky in 1813. The General Assembly of the

19    Commonwealth stated: "That any person in this commonwealth, who shall hereafter

20    wear a pocket pistol, dirk, large knife, or a sword cane, concealed as a

21    weapon…shall be fined in any sum, not less than one hundred dollars." However,

22    nine years later in 1822, the Kentucky Supreme Court ruled that ban violated their

23

24

---

25    [62] Kopel, 857 referencing *Standard Catalog of Firearms.* (2014), Gun Digest Books, pg. 708-709

26    [63] A version of this section on magazines was initially completed by author for Miller et al v Bonta

27    [64] Ekwall

28    [65] Ibid, referring to Act of Nov. 17, 1828, Sec. 9, 1828 Fla. Laws 174, 177; Act of Jan. 12, 1828, Sec. 9, 1827 Fla. Laws 97, 100; Referring to Act of Jan. 1831, 1831, Fla. Laws 30

1792 Constitution.[66] Other states adopted similar carry regulations, some still only for certain groups of people.

40.    Despite the abolition of slavery, discriminatory laws that included firearms regulation continued. One such way that could be legally achieved was through the Black Codes. While there were many aspects of discrimination in the various state "Codes," many included challenges to Black Second Amendment rights. For example, Alabama in 1866 not only banned Blacks from owning firearms and other weapons, but also made it illegal to lend or sell to a black person.[67] The Civil Rights Act of 1866, the Fourteenth Amendment and the Second Freedmen's Bureau Act in 1866 attempted to dispel a variety of these issues.[68] In February 1866, the House of Representatives amended the Second Freedmen's Bureau Act to explicitly state that people had the "full and equal benefit of all laws and proceedings for the security of person and estate *including the constitutional right to bear arms.*"[69] Following the passage of these acts, however, southern states then passed laws, known as Army/Navy Laws, in which certain firearms, such as Colt Army and Navy model revolvers were permitted while cheaper versions were not legal.[70] Prohibiting the proliferation of inexpensive handguns on the market, whether intentionally or unintentionally imposed a classist restriction on those who could no longer afford to arm themselves– a trend that has continued well into the modern era.

41.    The Enforcement Acts of 1870 and 1871 were meant to protect the rights of free men under the Fourteenth and Fifteenth Amendments. Yet these

---

[66] Yamane, David. *Concealed Carry Revolution: Expanding the Right to Bear Arms in America*. A New Press (2021), pg. 17-18. David Yamane is a Sociology Professor at Wake Forest. This book was just a small portion of his larger research on gun culture that he calls, "Gun Culture 2.0." More of his research can be found at gunculture2point0.com
[67] Ekwall
[68] A detailed explanation of this can be found in: Johnson et. al pg. 465-471
[69] *Ibid,* pg. 466
[70] Eckwall

DECLARATION OF ASHLEY HLEBINSKY

17cv1017

1   seemingly positive changes were short lived. During the 1872 election for Louisiana

2   governor, President Ulysses S. Grant sent troops to support the Republican

3   candidate. In response, a group of white supremacists began harassing Black and

4   White Republicans. These tensions culminated in Black and White Republicans

5   taking up defense in a local courthouse in Colfax, LA. In 1873, 150 white men

6   surrounded the courthouse and at one point, would fire a cannon at the building.

7   Note: White Republicans were given the opportunity to leave before the massacre

8   ensued. Black Republicans were left to fight with inferior weaponry. In the end,

9   Black Republicans would surrender to the mob, led by a man named William

10  Cruikshank. After surrender, somewhere between sixty to one hundred and fifty

11  African Americans were killed.[71] Although Cruikshank and around ninety-six white

12  vigilantes were charged for violating the Enforcements, only a few were convicted.[72]

13  Even then, the Supreme Court, in *United States v Cruikshank* (1875), overturned the

14  conviction ruling that the federal government could not prevent private citizens, in

15  this case KKK members, from disarming Blacks and that the matter must be

16  relegated to the states.[73]

17       42.     Another example concerning disarmament of a group of people

18  occurred leading up to the American Civil War. Violent confrontations broke out in

19  Kansas, known as Bleeding Kansas, between 1854 and 1859. At one point an anti-

20  slavery movement of "Free Soilers" decided to arm themselves with single-shot

21  Sharps rifles by smuggling them into the territory. However, the pro-slavery

22  segments, under the command of a deputy federal marshal, attempted to disarm

23  these settlers, most notably during the Sacking of Lawrence.[74] In response to the

24

25  _____

26  [71] Johnson et al, pg. 471
    [72] Ibid, pg. 471 as well as summarized in
27  <https://www.smithsonianmag.com/smart-news/1873-colfax-massacre-crippled-
    reconstruction-180958746/> Accessed 10/25/22
28  [73] Ibid, pg. 471
    [74] Ibid, pg. 456

situation in Kansas, abolitionist Charles Sumner gave his famous speech on the floor of the United States Senate on May 19, 1856, "The Crime Against Kansas." During which, South Carolina Senator A.P. Butler, supposedly stated that the people of Kansas should no longer possess their arms. During Sumner's speech, he attacked Butler and affirmed the right of individuals to bear arms:

> "The rifle has ever been the companion of the pioneer and, under God, his tutelary protector…Never was this efficient weapon [referring to the single shot Sharps Rifle] more needed in self-defence, than now in Kansas, and at least one article in our National Constitution must be blotted out, before the complete right to it can in any way be impeached…"[75]

This speech culminated in violence against Sumner, who was beaten with a cane on the Senate floor for advocating against disarmament. Yet, even after a Civil War and thirty-five years later government disarmament would lead to the largest mass murder in American history. On December 29, 1890, Colonel James Forsyth, commander of the 7th Cavalry, ordered the Lakota to surrender their firearms leading up to their removal from the land they inhabited. It is debated exactly what happened to pull the trigger on the slaughter, but in the end, hundreds of Lakota were killed.[76]

    43.    After a long history of government related violence as well as private vigilantism, Black people, particularly in the South, called for their personal armament to protect themselves. Much research has been done focusing on violence against people of color as a justification for firearms restrictions, however, less explored is the fact that Black people used and relied on firearms for protection *from* violence. These two ideologies conflict with one another. On one side, it is argued that restrictive laws would reduce violence, specifically on marginalized communities. On the other, it is argued that gun ownership allows those communities the best ability to protect themselves. In this circumstance, a restriction

---

[75] Johnson et. al, pg. 456
[76] Utley, Robert M. *The Last Days of the Sioux Nation.* 2nd Ed. Yale University Press, pg. 211

DECLARATION OF ASHLEY HLEBINSKY

17cv1017

1  would take away rights of the latter, putting them again at risk of violence. This

2  desire to protect oneself with the best technology available was echoed amongst the

3  Black community in the late nineteenth century through prominent leaders. For

4  example, John R. Mitchell, Jr., Vice President of the National Colored Press

5  Association, encouraged Black people to buy Winchesters to protect their families

6  from the 'two-legged animals…growling around your home in the dead of the

7  night.'[77] Ida B Wells, an activist and journalist in the South, wrote in 1892, "that a

8  Winchester rifle should have a place of honor in every black home, and it should be

9  used for the protection which the law refuses to give."[78] These activists also

10  encouraged Black Americans to move to Oklahoma where they formed self-defense

11  organizations. One Black journalist reported that in Oklahoma he "found in every

12  cabin [he] visited a modern Winchester oiled and ready for use.'"[79]

13       44.    To summarize: in Kansas, pro-slavery government backed officials

14  sought to disarm Free Soilers of their high-quality single-shot Sharps rifles. Sumner

15  denounced this effort and started a fight with Senator Butler, who himself would

16  backtrack and claim he never supported disarmament. In the Colfax massacre, Black

17  Republicans were outgunned by a mob with superior weapons. The Wounded Knee

18  Massacre started because of a government sanctioned disarmament of the Lakota,

19  who had in some cases, superior weaponry. The firearms confiscated at Wounded

20

21  _____

22  [77] Johnson et al., p 521 referencing Giddings, Paula J. *Ida: A Sword Among Lions* (2008), pg. 153-154

23  [78] Johnson et al., pg. 521 referencing Wells, Ida B. *Southern Horrors.* N.Y. Age June 25, 1892. Reprinted in Wells, Ida B. *The Light of Truth: Writings of an Anti-Lynching Crusader*, pg. 84

24  [79] While this reference is obviously anecdotal for the number of Winchesters in

25  circulation in a given area, Vorenberg's declaration claims as little as 8,000 Winchesters were in circulation in the post-Civil War South. However, this number

26  is based on an order of 6,000 from Governor Scott for the South Carolina Militia, 1,000 for the Metropolitan Police Force in Louisiana, and 1,000 potentially stolen

27  firearms. It has been stated though that the government was slow to adopt this technology, despite still being produced into the hundreds of thousands. Therefore, it is misleading to infer these orders would be the only way to measure the number of

28  Winchesters in the South at that time. The footnoted quote is from: Johnson et al., p 521 referencing Giddings, pg. 198

1    Knee included Winchester rifles, though it did not serve them any good considering

2    what transpired. And Black southerners particularly sought to have the best weapons

3    available for a government they believed was not there to protect them.

4         45.   Some scholars argue that the passage, despite the repeal in many

5    instances, of state laws regulating the carry of specific types of weapons serve as

6    sufficient evidence to support a modern magazine ban. However, it is important to

7    reiterate that these regulations regarding specific types of weapons have occurred in

8    some cases to take away the rights of some but not others. For laws that did include

9    everyone, weapons typically on that list had some sort of larger counterpart, as in the

10   Army/Navy laws, which would have at least equal capacity or were still permitted

11   via licensure. Furthermore, these laws did not explicitly concern themselves with

12   capacity or magazines but more often the size and/or other criteria of concealment.

13   Other laws during this period, had more to do with whether or not the government

14   could protect you and your rights resulting in unfortunate outcomes. In the case of

15   disarmament and the need for defense, it seems that citizens often affected by these

16   tragedies were less concerned about a discourse on the morality of firearms

17   technology, but instead protecting themselves with the best technology available.

18   **Conclusion**

19        46.   According to *Bruen,* time frames outside of the Founding and Second

20   Founding Eras can be considered informative, providing context for the mindset and

21   knowledge behind designs and legal decisions, although it does not hold the same

22   weight. This report has provided an outline of repeaters and magazine-fed repeaters

23   with a capacity of over ten rounds in the previous two sections establishing the

24   existence and use of these types of firearms. The proliferation of such technology in

25   the twentieth and twenty-first centuries is astounding. As such and coupled with the

26   tertiary importance according to *Bruen*, I will not dive into a comprehensive look at

27   all repeaters developed into the modern era.

28

31

DECLARATION OF ASHLEY HLEBINSKY

17cv1017

1    47.    This report has looked at two timeframes relevant to this case as it

2   pertains to *Bruen*. It has provided a snapshot account of several repeaters and

3   magazine-fed repeaters of capacities over ten rounds throughout history. It has also

4   examined corresponding laws from those time periods rebutting similarities to

5   twentieth and twenty-first century legislation on capacity. It has stated that

6   innumerable magazine-fed repeaters have been developed since the 1600s. At the

7   time of the Founding Era repeaters and magazine-fed firearms, with a capacity over

8   ten rounds had been in existence for over a century. To my knowledge, there are no

9   laws during this period that restrict access to firearms magazines or strict firing

10  capacity. By the time of the Second Founding Era, there were exponentially more

11  repeaters and magazine-fed firearms with capacities greater than ten. According to

12  scholarship outside of this declaration, the first laws referencing capacity, primarily

13  for machine guns, only date to the 1920s, and all except one implemented during this

14  period were repealed. Laws regulating detachable magazines date to the last decade

15  of the twentieth century, and the ten round magazine limit was imposed through

16  federal law for the first time in 1994, making the relevant conversation in this case

17  much more recent history rather than the historical precedent *Bruen* requires.

18       I declare under penalty of perjury that the foregoing is true and correct.

19  Executed within the United States on  November 30, 2022                .

20

21

22                              Ashley Hlebinsky
                                Declarant
23

24

25

26

27

28
                                    32
                 DECLARATION OF ASHLEY HLEBINSKY
                                                        17cv1017

# EXHIBIT 1

ER_680

1    **EXHIBIT 1: HLEBINSKY CURRICULUM VITAE**

2    **Ashley Hlebinsky Curriculum Vitae**
3    Ashley Hlebinsky, President, The Gun Code, LLC
     2124 E Kerry Lane, Phoenix, AZ 85024
4    Email: theguncode@gmail.com
5    Phone: 412-491-2493

6

7    **Education:**

8
     Master of Arts, American History, University of Delaware, 2013
9
     Bachelor of Arts, American History, University of Delaware, 2011
10

11
     **Recent Honors/Awards:**
12

13   Second Amendment Foundation's Defender of the Constitution, 2022

14   National Shooting Sports Foundation and Women's Outdoor Media Association's
15   Top Five Finalist, Top Woman of the Gun Industry, 2022

16   National Shooting Sports Foundation's SHOT Business's Top 40 under 40, 2020

17
18                  Wyoming Business Report's Top 40 Under 40, 2017

19   National Shooting Sports Foundation & Professional Outdoor Media Association's
20   Shooting Sports Communicator of the Year Award, 2017

21                  Wyoming's Non-Profit Woman of the Year Nominee, 2017

22

23   **Selected Professional Experience:**

24
     Co-Founder and Senior Fellow, University of Wyoming College of Law's Firearms
25   Research Center, Laramie, WY, 2020 (Current)

26   Consulting Director, Craig Boddington Wildlife and Firearms Museum,
27   Independence, KS, 2022 (Current)

28   Consulting Curator, LA Police Museum, Pasadena, 2021 (Current)

---

EXHIBIT 1

1
2   Senior Consulting Specialist. Cowan's Auctions, Cincinnati, OH, 2021 (Current)
    Consultant, National Museum of Law Enforcement and Organized Crime (Mob
3   Museum), Las Vegas, NV, 2016 (Current)

4   Guest Curator, C.M. Russell Museums and Complex, Great Falls, MT 2021
    (Current)
5

6   Adjunct Scholar of Firearms History, Technology & Culture, Firearms Policy
    Coalition, 2020-2021
7

8   Curator Emerita & Senior Firearms Scholar, Cody Firearms Museum, Buffalo Bill
    Center of the West, 2020 – 2021.
9

10  Robert W. Woodruff Curator, Cody Firearms Museum, Buffalo Bill Center of the
    West, Cody, WY, 2015-2020
11

12  Project Director, Cody Firearms Museum Renovation, Buffalo Bill Center of the
    West, Cody, WY, 2015-2019
13

14  Consulting Curator, Houston Museum of Natural Sciences, 2018

15  Consultant. Adirondack Experience. November 2019

16  Consultant. Winchester Mystery House, August 2019.

17
18  Consulting Scholar. National Park Service & Organization of American Historians,
    March 2019.
19

20  Consultant/Curator. Daniel Defense, Black Creek, Georgia. 2017

21  Associate & Acting Curator, Cody Firearms Museum, Buffalo Bill Center of the
    West, Cody, WY, 2015
22

23  Guest Curator. C.M. Russell Museums and Complex, 2015-2016

24  Guest Curator. Cody Firearms Experience, 2015

25
26  Assistant Curator, Cody Firearms Museum, Buffalo Bill Center of the West, Cody,
    WY, 2013-2014
27

28  Teaching Assistant, The Jewish Holocaust: 1933-1945, University of Delaware,
    2013

---

EXHIBIT 1

17cv1017

**ER_682**

Teaching Assistant, Introduction to Military History, University of Delaware, 2012

Teaching Assistant, History Education, University of Delaware, 2011

Researcher/Fellow, National Museum of American History, Smithsonian Institution, 2010-2013

Archival Assistant, University of Delaware Special Collection, 2010-2011

Firearm Intern, Soldiers and Sailors National Memorial Hall, 2008

**Expert Witness Testimony:**

Senate Judiciary Subcommittee on the Constitution, Stop Gun Violence: Ghost Guns, May 2021

Franklin Armory et al v Bonta, February 2021

FN Herstal v Sturm, Ruger & Co, January 2021

Sturm, Ruger & Co. v American Outdoor Brands Corp., October 2020

Guedes v BATFE, June 2019

Miller v Becerra (Bonta), November 2019

     1. Evidentiary Hearing Testimony October 2020

     2. Deposition January 2021

Regina (Nova Scotia) v Clayton, January 2019

Garrison v Sturm, Ruger & Company, Inc. 2018

     1. Deposition November 2018

**Selected Media Work:**

Writer/Producer. Mountain Men: Ultimate Marksman. History Channel, May 2022 (Current)

EXHIBIT 1

Regular Contributor. *Our American Stories* Podcast, 2022 (Current)

Co-Host. History Unloaded Podcast. Various platforms with Wyoming Public Media, 2018-2022, 6 seasons (Current)

Producer & On Camera Expert. *Gun Stories with Joe Mantegna*, Outdoor Channel, 2015-2022, 8 seasons (Current)

Producer & On Camera Expert. *Man vs History*, History Channel & Matador Productions, 2020 (aired 2021)

Co-Host. *Master of Arms*, Discovery Channel & Matador Productions, 2018. 1 season

Consulting Producer. *Brothers in Arms*. History Channel, 2018. 1 season.

On Camera Expert. *Rob Riggle: Global Investigator*. Discovery Channel, 2020.

Recurring Expert. *Mysteries at the Museum.* Travel Channel. 2017-2019

Casting Consultant. *Gun Shop Project,* Vice Media & Cineflix Productions, 2020

On Camera Expert. *American Genius Colt V. Wesson*. National Geographic. 2015

*Also appears on:* Public Broadcasting Service, National Public Radio, Travel Channel, National Geographic, Popculture.com, Media, Entertainment, Arts, World Wide (MEAWW), Women's Outdoor News, Outdoor Life, Shooting USA, Gun Talk Media, National Shooting Sports Foundation, various firearms related podcasts.

*Has been profiled by: The Bourbon Review, Recoil Magazine, Outdoor Life Magazine, Guns.com, Blue Press Magazine, and others*

**Selected Lectures/Panels:**

Guest Speaker. Gun Rights Policy Conference, October 2022

Guest Speaker. Second Amendment Foundation Legal Scholars Forum, September 2022

Guest Lecturer and Panelist. AmmCon. Second Amendment Foundation, October 2021

EXHIBIT 1

17cv1017

1   Guest Lecturer. Armed for Revolution. Royal Armouries, September 2021

2

3   Guest Speaker. Preserving Firearms Heritage. Gun Rights Policy Coalition, 2020

4   Guest Lecturer. Art of Collecting. Nevada Museum of Art. January 2020

5   Panelist. Firearms and Museums in the 21st Century. National Council for Public
6   History. March 2019.

7   Scholars Roundtable. Coltvsille National Historic Site. Organization of American
8   Historians & National Park Service, March 2019.

9   Forum Speaker. The Art of the Hunt: Embellished Sporting Arms in America. New
10  Orleans Antique Forum, August 2018

11  Guest Lecturer. Unloading the Gun: Firearms, History, and Museums. Yakima
12  Valley Museum, June 2018

13  Guest Lecturer. Perpetrators and Protectors: The Mob, The Law and Firearms,
14  National Museum of Law Enforcement and Organized Crime (Mob Museum),
    September 2017
15

16  Organizer. Arsenals of History: Firearms and Museums in the 21st Century, Buffalo
17  Bill Center of the West, July 2017

18  Lecturer. The Cody Firearms Museum, Arsenals of History Symposium, Buffalo
19  Bill Center of the West, July 2017

20  Moderator. Addressing the Press: Firearms and the Media, Arsenals of History
21  Symposium, Buffalo Bill Center of the West, July 2017

22  Moderator. Forming an Association: Legitimizing Firearms in Academic Study,
23  Arsenals of History Symposium, Buffalo Bill Center of the West, July 2017

24  Guest Lecturer. Displaying the "Politically Incorrect," C.M. Russell Museums and
25  Complex, May 2017

26  Guest Lecturer. Displaying the "Politically Incorrect," Blackhawk Museum, March
27  2017

28  Panelist. Curator Roundtable, Firearms and Common Law Symposium, Aspen
    Institute, September 2016

EXHIBIT 1

17cv1017

1
2  Guest Lecturer. Displaying the "Politically Incorrect," Canadian Guild of Antique
3  Arms Historians, April 2016
4  Guest Lecturer. The Cody Firearms Museum Renovation, American Society of
   Arms Collectors, September 2016
5
6  Guest Lecturer. From Protector to Perpetrator: Demystifying Firearms in History,
   Art Institute of Chicago, November 2015
7
8  Guest Lecturer. Winchester '73: The Illusion of Movie Making, Winchester Arms
   Collectors Association, July 2014
9
10 Guest Lecturer. Unloading the Six Shooter: Disassembling the Glamorization and
   Demonization of Firearms in the Arts, Buffalo Bill Center of the West, 2011
11
12 **Selected Firearms Exhibitions:**
13
14 Curator/Project Director. *Cody Firearms Museum Renovation*. Buffalo Bill Center
   of the West. 2019
15
16 Co-Curator. *The Art of the Hunt: Embellished Sporting Arms from 1500-1800.*
   Houston Museum of Natural Sciences. March 2019
17
18 Curator. *Glock Makes History: The Birth of the Polymer Handgun Market*. Buffalo
   Bill Center of the West. June 2016
19
20 Guest Curator. *Designing the American West: The Artist and the Inventor*. C.M.
   Russell Museum & Complex. February 2016
21
22 Curator. *The Greatest Gun Designer in History: John Moses Browning.* Buffalo Bill
   Center of the West. December 2015
23
24 Curator. *Journeying West: Distinctive Firearms from the Smithsonian Institution.*
   Buffalo Bill Center of the West. December 2015
25
26 Curator. *The Forgotten Winchester: Great Basin National Park*. Buffalo Bill Center
   of the West. June 2015
27
28 Curator. Western Firearms Gallery, including *Shoot for the Stars: The Tradition of
   Cowboy Action Shooting*. Buffalo Bill Center of the West. April 2015.

EXHIBIT 1

Curator. *Steel Sculptures: Engraving Individuality from Mass Production*. Buffalo Bill Center of the West. Winter 2014.

**Certifications:**

Certified Firearms Instructor, Basic Pistol, 2016

Certified Firearms Instructor, Personal Protection Inside the Home, 2016

Well Armed Woman Instructor Certification, 2016

Museum Studies Certification, University of Delaware, 2013

**Grants:**

National Endowment for the Humanities, 2017

Institute of Museum and Library Services, 2017

Gretchen Swanson Family Foundation, 2015, 2016, 2017, 2018, 2019, 2020

Kinnucan Arms Chair Grant, 2012

**Fellowships:**

Firearms Curatorial Resident, Buffalo Bill Center of the West, 2013

Edward Ezell Fellowship, University of Delaware, 2012

Buffalo Bill Resident Fellowship, Buffalo Bill Center of the West, 2011

**Committees and Memberships:**

Board Member – Walk the Talk America

Founding President – Association of Firearms History and Museums
- Academic association for the study of firearms history in United States

EXHIBIT 1

17cv1017

**ER_687**

Founder – Arsenals of History Symposia Series

- First international symposia series on the academic study of firearms

Spokesperson – NSSF/AFSP Suicide Prevention and Project ChildSafe Programs
American Alliance of Museums – Member

American Society of Arms Collectors – Member

Winchester Arms Collectors Association – Honorary

Remington Society of Arms Collectors – Member

Weatherby Collector's Association –Life Member

**Publication History**

Editorial Board – Armax Journal

**Selected Articles:**

Author. "Guns and Mental Health." *Recoil Magazine,* Upcoming

Author. "Colt Single Actions and Safety." *Armax Journal,* October 2021

Author. "Guns and Partisan Politics." *Recoil Magazine*, January 2021

Author. "Feminism & Firearms." *Recoil Magazine*, Summer 2020

Author. "Burton Light Machine Rifle." *Recoil Magazine*. October, 2019

Founder/Editor/Author. Arsenals of History Journal, Annual Publication, 2018 - Present

Author. "It's Complicated: The Short Answer to Firearms, Museums and History. *Journal of the Early Republic – The Panorama*, September 2018.

Contributor. "Firearms Curator Roundtable" *Technology & Culture Journal*, August 2018

EXHIBIT 1

17cv1017

1
2   Author. "Displaying the 'Politically Incorrect.'" *CLOG X Guns*: Chicago, IL, September 2017
3   Author. "Does History Repeat Itself? The Smith & Wesson LadySmith." *CLOG X Guns:* Chicago, IL, September 2017

4
5   Author. "Renovating the Cody Firearms Museum." *International Committee of Museums and Collections of Arms and Military History Magazine.* Issue 17, May 2017. Pg. 38 - 41
6

7   Author. "Renovating the Cody Firearms Museum." *American Society of Arms Collectors Journal*. Fall 2016.
8

9   Author. "Glock Exhibit Opening." *Glock Magazine.* Bang Media. Annual 2017

10
11  Author. "The 28 Most Notable Guns from Remington's 200-Year History." *Outdoor Life Magazine*. Bonnier Corporation, 2016

12
13  Author. "Cassie Waters: Businesswoman of the Old West." *Guns of the Old West.* Harris Publications, Spring 2016

14
15  Author. "Making History: GLOCK Pistols at the Cody Firearms Museum" *Glock Magazine.* Harris Publications. Annual 2016

16
17  Author. "Pocket Pistols: 10 Seminal Guns from the Past 300 Years." *Pocket Pistols.* Harris Publications. 2016

18
19  Author. "The Gun that Won the Western and the Unforeseen Stars of *Winchester '73*" *Guns of the Old West.* Harris Publications.

20
21  Author. "Frontier Profile: Jedediah Strong Smith" *American Frontiersman*. Harris Publications

22
23  Author. "Frontier Legend John Johnston." *American Frontiersman.* Harris Publications

24
25  Author. "The Guns of John Johnston." *American Frontiersman.* Harris Publications

26  Author. "Annie Oakley VS Lillian Smith: A Female Sharpshooter Rivarly." *Guns of the Old West.* Harris Publications, Spring 2015

27
28  Author. "Icons and Has-beens." *American Handgunner*. FMG Publications, 2014

EXHIBIT 1

17cv1017

**ER_689**

Author. "Triggering Memory: American Identity in *Cowboys and Aliens*." *Points West.* Spring 2012

Author. "Unloading the Six-Shooter: Disassembling the Glamorization and Demonization of Firearms in the Arts." *Points West*, Fall 2011.

**Columns:**

Author. Old School Series. *Recoil Magazine*

Author. Flashback. *Concealment Magazine*

Author/Brand Ambassador. *The Bourbon Review.*

Author. *American Association for State and Local History*. Summer 2019

Author. "Weird West: Fact or Fiction" *Guns of the Old West*. Athlon Outdoors (formerly Harris Publications)

1st Assault Rifle

Colt VS Winchester Revolver

Did Winchester Really Win the West?

Oliver Winchester's Lever Action Shotgun

Remington Cane Gun

Author. "Cowboy Action Round Up." SHOT Show New Products. *Guns of the Old West*. Athlon Outdoors (formerly Harris Publications). 2015, 2016, 2017

**Reviews:**

Reviewer: Edited by Jonathan Obert, Andrew Poe, and Austin Sarat. Oxford: Oxford UniversityPress, 2018. *Journal of Technology & Culture*, Fall 2019

Author. "Everybody Loves an Outlaw: Taylor's Outlaw Legacy Revolver Series." *Guns of the Old West.* Harris Publications

EXHIBIT 1

Reviewer: Richard Rattenbury. *A Legacy in Arms: American Firearms Manufacture, Design and Artistry, 1800-1900. Chronicle of Oklahoma*, Spring 2016

**Selected Blogs & Vlogs:**

Recoil Magazine

Weekly video series beginning October 2017 to Present

Dillon Precision
                        Historical Videos on Ammunition (Upcoming)

Outdoor Life
            Top 10 Guns in American History
            Guns of the Old West: 10 Iconic Firearms and the Legendary Men (and Women) Who Shot Them
            13 of the Biggest Gun Fails in Recent Firearms History
            Gun of the Week:
            John Martz Luger
            Apache Revolver
            German Frei Pistol
            King Louis XV Embellished Blunderbuss
            Armalite AR-17 Shotgun
            Getting the Christmas Goose with a Goose Rifle & Cutaway Suppressor
            Mossberg Brownie
            Wesson & Leavitt Belt Revolver
            William Harnett and the Faithful Colt 1890
            Winchester Model 1894 Lever Action Rifle
            Ruger Semi-Automatic Pistol, 1 of 5,000
            Herb Parson's Winchester Model 71 Lever Action Rifle
            Lincoln Head Hammer Gun
            American Trap Gun
            Browning Brother's Single Shot Rifle Patent
            Feltman Pneumatic Machine Gun
            U.S. Springfield-Allin Conversion Model 1866 Trapdoor Rifle
            Winchester Wetmore-Wood Revolver
            Webley-Fosbery Automatic Revolver
            Hopkins & Allen XL3 Double Action Revolver
            DuBiel Modern Classic Rifle
            Colt Model 1877 "Thunderer" Double Action Revolver
            Tom Tobin's Colt Model 1878 Frontier Revolver

EXHIBIT 1

17cv1017

Walch 10-Shot Double Hammers Pocket Revolver
Winchester Model 1887, Serial No. 1
Deringer vs Derringer
The Forgotten Winchester 1873 of Great Basin National Park
Range 365
To the One Who Got Away
Gun Review: New Glock 19 Gen 5
Ain't She a Pistol? 10 Historic Gun Ads Featuring Women
National Shooting Sports Foundation
The Gun Vault:
Winchester 1873 Found in Great Basin National Park
Col. Jeff Cooper's Colt MK IV Series 80
500+ Year Old Firearms, Matchlocks, Flintlocks
U.S. Presidents Guns
Cross Dominance Shotgun
Herb Parson's Winchester Model 71 Rifle
Audie Murphy's Colt Bisley Revolver
4 Gauge Winchester Wildfowler
Pocket Pistols
Henry Ford's Winchester Model 1887 Lever Action Shotgun
Tom Knapp's First Gun
Buffalo Bill Cody's Winchester 1873
Colt Model 1861 Navy Serial No. 1
Cassie Waters' Hopkins & Allen XL3 Revolver
Glock 17

The Truth About Guns
        Presidential Presentation Rifles
        Factory Cut-Away M16A1
        1854 Smith & Wesson Repeating Rifle (Serial Number 8)
        Winchester World's Fair Model 1866 Deluxe Sporting Rifle
        Raymond Wielgus Collection
        Gastinne-Renette Muzzleloading Percussion Target Pistols
        Oliver Winchester's Jennings Repeater
        Henry Ford's Winchester Model 1887
        Winchester Model 1866 Musket in .44 Rimfire
        English Wheellock
        Southern Belle American Longrifle
        Annie Oakley's Model 1892 Smoothbore Rifle
        Catherine the Great of Russia's Blunderbuss Gift to King Louis XV of France
        Color Case-Hardened GLOCK 43: Merging the Old West with the New
        Buffalo Bill Center of the West – Unloading the Myth

EXHIBIT 1

17cv1017

**ER_692**

The Cody Firearms Museum – Yesterday, Today, and Tomorrow
Guns of the Week – Christmas List
Guns of the Week: December 15-19
Guns of the Week – The Cody Firearms Museum
Guns of the Week – German Firearms
Guns of the Week – Scheutzenfest
Guns of the Week – Air Guns
Guns of the Week – Early Firearms Law
Guns of the Week – October 13-17
Guns of the Week – Ingenious Engineering
Guns of the Week – Remington – Smoot
Guns of the Week – September 22-26; 15-19; 8-12
CSI: Firearms Museum Edition
Confessions of a Gun Historian
Art Guns: Aesthetics Over Function?
What Good's a Gun Without a Firing Pin?
Gun Installations, Trials & Tribulations
A True Test of Marital Trust and Love
Remembering Tom Knapp
Cody Firearms Museum Goes Hollywood
When Will My Firearms Go On Display
What's Your Cody Firearms Museum
To Vlog or Not to Vlog
We Don't Just Have Old Guns in Our Museum: SHOT Show 2014
Taking a Staba at Displaying More Guns
"Hi Yo Silver" Cook Away! Lone Ranger Display
The Shooting Wire
Winchester's 150th Anniversary Website
Remington's 200th Anniversary Website

EXHIBIT 1

17cv1017

**ER_693**

## CERTIFICATE OF SERVICE
### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF CALIFORNIA

Case Name: *Duncan, et al. v. Becerra*
Case No.: 17-cv-1017-BEN-JLB

IT IS HEREBY CERTIFIED THAT:

I, the undersigned, declare under penalty of perjury that I am a citizen of the United States over 18 years of age. My business address is 180 East Ocean Boulevard, Suite 200 Long Beach, CA 90802. I am not a party to the above-entitled action.

I have caused service of the following documents, described as:

**DECLARATION OF ASHLEY HLEBINSKY IN SUPPORT OF PLAINTIFFS' SUPPLEMENTAL BRIEF; EXHIBIT 1**

on the following parties by electronically filing the foregoing on December 1, 2022, with the Clerk of the District Court using its ECF System, which electronically notifies them.

Rob Bonta
Attorney General of California
Mark R. Beckington
Supervising Deputy Attorney General
Kevin J. Kelly
Deputy Attorney General
300 South Spring Street, Suite 1702
Los Angeles, CA 90013
kevin.kelly@doj.ca.gov

I declare under penalty of perjury that the foregoing is true and correct. Executed on December 1, 2022, at Long Beach, CA.

Laura Palmerin

CERTIFICATE OF SERVICE

17cv1017

**ER_694**