No. 23-55805

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
_____

VIRGINIA DUNCAN, ET AL.,

*Plaintiffs and Appellees,*

v.

ROB BONTA, IN HIS OFFICIAL CAPACITY AS
ATTORNEY GENERAL OF THE STATE OF CALIFORNIA,

*Defendant and Appellant.*
_____

## On Appeal from the United States District Court
## for the Southern District of California
No. 3:17-cv-01017-BEN-JLB
The Honorable Roger T. Benitez, Judge
_____

## APPELLANT'S EXCERPTS OF RECORD
## VOLUME 17 of 17
_____

ROB BONTA
*Attorney General of California*
MICHAEL J. MONGAN
*Solicitor General*
HELEN H. HONG
*Principal Deputy Solicitor General*
THOMAS S. PATTERSON
*Senior Assistant Attorney General*

MICA L. MOORE
*Deputy Solicitor General*
R. MATTHEW WISE
*Supervising Deputy Attorney General*
ROBERT L. MEYERHOFF
KEVIN J. KELLY
JOHN D. ECHEVERRIA
*Deputy Attorneys General*

CALIFORNIA DEPARTMENT OF JUSTICE
300 South Spring Street, Suite 1702
Los Angeles, CA 90013
(213) 269-6138
Mica.Moore@doj.ca.gov
*Attorneys for Defendant and Appellant*

November 21, 2023

1  XAVIER BECERRA
   Attorney General of California
2  TAMAR PACHTER
   Supervising Deputy Attorney General
3  NELSON R. RICHARDS
   ANTHONY P. O'BRIEN
4  Deputy Attorneys General
   ALEXANDRA ROBERT GORDON
5  Deputy Attorney General
   State Bar No. 207650
6    455 Golden Gate Avenue, Suite 11000
     San Francisco, CA  94102-7004
7    Telephone: (415) 703-5509
     Fax: (415) 703-5480
8    E-mail:
     Alexandra.RobertGordon@doj.ca.gov
9  *Attorneys for Defendant*
   *Attorney General Xavier Becerra*

10

11            IN THE UNITED STATES DISTRICT COURT

12         FOR THE SOUTHERN DISTRICT OF CALIFORNIA

13

14

15

16  **VIRGINIA DUNCAN, et al.,**          17-cv-1017-BEN-JLB

                                Plaintiffs,   **ATTORNEY GENERAL XAVIER
17                                             BECERRA'S ANSWER**

18                           v.

19  **XAVIER BECERRA, in his official**   Judge: Hon. Roger T. Benitez
    **capacity as Attorney General of the**  Courtroom: 5A
20  **State of California; et al.,**       Action Filed:  May 17, 2017

21                           Defendants.

22

23

24

25

26

27

28

                                    1

1    Defendant Attorney General Xavier Becerra submits this Answer in response
2  to Plaintiffs' Complaint.  The Attorney General answers, in paragraphs that
3  correspond to the Complaint's paragraphs, as follows:

4    1.    To the extent that the allegations contained in paragraph 1 are Plaintiffs'
5  characterization of their case and conclusions of law, no answer is required.  With
6  respect to the remainder of the allegations in paragraph 1, the Attorney General
7  lacks sufficient knowledge or information to form a belief as to the truth of the
8  allegations, and on that basis denies the allegations of paragraph 1.  Except as
9  specifically admitted, the Attorney General denies the allegations of paragraph 1.

10    2.    To the extent that the allegations contained in paragraph 2 are Plaintiffs'
11  characterization of their case and conclusions of law, no answer is required.  The
12  Attorney General admits that California Penal Code section 32310 speaks for itself.
13  The Attorney General further admits that large-capacity magazines, as defined by
14  California law, *see* Cal. Penal Code § 16740, are a threat to public safety.  The
15  Attorney General denies the remainder of the allegations in paragraph 2.  Except as
16  specifically admitted, the Attorney General denies the allegations of paragraph 2.

17    3.    To the extent that the allegations contained in paragraph 3 are Plaintiffs'
18  characterization of their case and conclusions of law, no answer is required.  The
19  Attorney General admits that California Penal Code section 32310 speaks for itself.
20  The Attorney General further admits that each judicial opinion referenced in
21  paragraph 3 speaks for itself.  The Attorney General denies the remainder of the
22  allegations in paragraph 3.  Except as specifically admitted, the Attorney General
23  denies the allegations of paragraph 3.

24    4.    To the extent that the allegations contained in paragraph 4 are legal
25  conclusions, no answer is required.  To the extent they may be deemed allegations
26  of fact, the Attorney General denies the allegations of paragraph 4.

27    5.    To the extent that the allegations contained in paragraph 5 are Plaintiffs'
28  characterization of their case and conclusions of law, no answer is required.  To the

1  extent they may be deemed allegations of fact, the Attorney General denies the

2  allegations of paragraph 5.

3        6.  Paragraph 6 sets forth a description of the relief sought by Plaintiffs.  The

4  Attorney General denies that Plaintiffs are entitled to such relief.  The Attorney

5  General denies the remaining allegations of paragraph 6.

6        7.  The Attorney General admits that this Court has jurisdiction.  The

7  Attorney General denies the remaining allegations of paragraph 7.

8        8.  The Attorney General admits that Plaintiffs seek declaratory and

9  injunctive relief, as well as attorneys' fees.  The Attorney General further admits

10  that each statute referenced in paragraph 8 speaks for itself.  Except as specifically

11  admitted, the Attorney General denies the allegations of paragraph 8.

12        9.  The Attorney General admits the allegations of paragraph 9.

13        10.  The Attorney General lacks sufficient knowledge or information to form

14  a belief as to the truth of the allegations in paragraph 10, and on that basis denies

15  the allegations of paragraph 10.

16        11.  The Attorney General lacks sufficient knowledge or information to form

17  a belief as to the truth of the allegations in paragraph 11, and on that basis denies

18  the allegations of paragraph 11.

19        12.  The Attorney General lacks sufficient knowledge or information to form

20  a belief as to the truth of the allegations in paragraph 12, and on that basis denies

21  the allegations of paragraph 12.

22        13.  The Attorney General lacks sufficient knowledge or information to form

23  a belief as to the truth of the allegations in paragraph 13, and on that basis denies

24  the allegations of paragraph 13.

25        14.  The Attorney General lacks sufficient knowledge or information to form

26  a belief as to the truth of the allegations in paragraph 14, and on that basis denies

27  the allegations of paragraph 14.

28

Answer (17-cv-1017-BEN-JLB)

15.   The Attorney General lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 15, and on that basis denies the allegations of paragraph 15.

16.   The Attorney General lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 16, and on that basis denies the allegations of paragraph 16.

17.   The Attorney General lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 17, and on that basis denies the allegations of paragraph 17.

18.   To the extent that the allegations contained in paragraph 18 are Plaintiffs' characterization of their case and conclusions of law, no answer is required.  To the extent that they are allegations of fact, the Attorney General lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 18, and on that basis denies the allegations of paragraph 18.

19.   To the extent that the allegations contained in paragraph 19 are legal conclusions, no answer is required.  The Attorney General admits that he is the Attorney General of California and the chief law officer of the State.  The Attorney General admits that article V, section 13 of the California Constitution speaks for itself.  Except as specifically admitted, the Attorney General denies the allegations of paragraph 19.

20.   The Attorney General lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 20, and on that basis denies the allegations of paragraph 20.

21.   The Attorney General admits that he is the chief law officer of the State, and as such, is charged with upholding and enforcing the laws of the State.  The Attorney General denies the remaining allegations of paragraph 21.

22.   The Attorney General denies the allegations of paragraph 22.

23.   To the extent that the allegations contained in paragraph 23 are Plaintiffs' characterization of their case and conclusions of law, no answer is required.  The Attorney General admits that the Second Amendment speaks for itself.  Except as specifically admitted, the Attorney General denies the allegations of paragraph 23.

24.   To the extent that the allegations contained in paragraph 24 are Plaintiffs' characterization of their case and conclusions of law, no answer is required.  The Attorney General admits that each judicial opinion referenced in paragraph 24 speaks for itself.  Except as specifically admitted, the Attorney General denies the allegations of paragraph 24.

25.   To the extent that the allegations contained in paragraph 25 are Plaintiffs' characterization of their case and conclusions of law, no answer is required. Attorney General admits that each judicial opinion referenced in paragraph 25 speaks for itself.  Except as specifically admitted, the Attorney General denies the allegations of paragraph 25.

26.   To the extent that the allegations contained in paragraph 26 are Plaintiffs' characterization of their case and conclusions of law, no answer is required. Attorney General admits that each constitutional provision and judicial opinion referenced in paragraph 26 speaks for itself.  Except as specifically admitted, the Attorney General denies the allegations of paragraph 26.

27.   To the extent that the allegations contained in paragraph 27 are Plaintiffs' characterization of their case and conclusions of law, no answer is required.  The Attorney General admits that the Takings Clause of the Fifth Amendment speaks for itself.  Except as specifically admitted, the Attorney General denies the allegations of paragraph 27.

28.   To the extent that the allegations contained in paragraph 28 are Plaintiffs' characterization of their case and conclusions of law, no answer is required.  The Attorney General admits that the judicial opinion referenced in paragraph 28 speaks

1   for itself.  Except as specifically admitted, the Attorney General denies the

2   allegations of paragraph 28.

3        29.   To the extent that the allegations contained in paragraph 29 are Plaintiffs'

4   characterization of their case and conclusions of law, no answer is required.

5   Attorney General admits that each judicial opinion referenced in paragraph 29

6   speaks for itself.  Except as specifically admitted, the Attorney General denies the

7   allegations of paragraph 29.

8        30.   To the extent that the allegations contained in paragraph 30 are Plaintiffs'

9   characterization of their case and conclusions of law, no answer is required.  The

10   Attorney General admits that the judicial opinion referenced in paragraph 30 speaks

11   for itself.  Except as specifically admitted, the Attorney General denies the

12   allegations of paragraph 30.

13        31.   To the extent that the allegations contained in paragraph 31 are Plaintiffs'

14   characterization of their case and conclusions of law, no answer is required.  The

15   Attorney General admits that the Due Process Clause of the Fourteenth Amendment

16   speaks for itself.  Except as specifically admitted, the Attorney General denies the

17   allegations of paragraph 31.

18        32.   To the extent that the allegations contained in paragraph 32 are Plaintiffs'

19   characterization of their case and conclusions of law, no answer is required.

20   Attorney General admits that each judicial opinion referenced in paragraph 32

21   speaks for itself.  Except as specifically admitted, the Attorney General denies the

22   allegations of paragraph 32.

23        33.   To the extent that the allegations contained in paragraph 33 are Plaintiffs'

24   characterization of their case and conclusions of law, no answer is required.

25   Attorney General admits that each judicial opinion referenced in paragraph 33

26   speaks for itself.  Except as specifically admitted, the Attorney General denies the

27   allegations of paragraph 33.

28

34.   To the extent that the allegations contained in paragraph 34 are Plaintiffs' characterization of their case and conclusions of law, no answer is required.  The Attorney General admits that the judicial opinion referenced in paragraph 34 speaks for itself.  Except as specifically admitted, the Attorney General denies the allegations of paragraph 34.

35.   The Attorney General admits that a magazine is a container that holds and feeds rounds of ammunition to a firearm.  Except as specifically admitted, the Attorney General denies the allegations of paragraph 35.

36.   The Attorney General admits that magazines may be fixed or detachable. The Attorney General lacks sufficient knowledge or information to form a belief as to the truth of the remainder of the allegations in paragraph 36, and on that basis denies the allegations of paragraph 36.  Except as specifically admitted, the Attorney General denies the allegations of paragraph 36.

37.   The Attorney General lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 37, and on that basis denies the allegations of paragraph 37.

38.   The Attorney General lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 38, and on that basis denies the allegations of paragraph 38.

39.   The Attorney General lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 39, and on that basis denies the allegations of paragraph 39.

40.   The Attorney General lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 40, and on that basis denies the allegations of paragraph 40.

41.   The Attorney General lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 41, and on that basis denies the allegations of paragraph 41.

42.   The Attorney General lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 42, and on that basis denies the allegations of paragraph 42.

43.   The Attorney General lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 43, and on that basis denies the allegations of paragraph 43.

44.   The Attorney General lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 44, and on that basis denies the allegations of paragraph 44.

45.   The Attorney General admits that California law speaks for itself.  The Attorney General lacks sufficient knowledge or information to form a belief as to the truth of the remainder of the allegations in paragraph 45, and on that basis denies the allegations of paragraph 45.  Except as specifically admitted, the Attorney General denies the allegations of paragraph 45.

46.   To the extent that the allegations contained in paragraph 46 are legal conclusions, no answer is required.  The Attorney General admits that a number of jurisdictions have laws prohibiting large-capacity magazines.  The Attorney General admits that each statute referenced in paragraph 46 and footnote 7 speaks for itself.  Except as specifically admitted, the Attorney General denies the allegations of paragraph 46.

47.   To the extent that the allegations contained in paragraph 47 are Plaintiffs' characterization of their case, no answer is required.  The Attorney General lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 47, and on that basis denies the allegations of paragraph 47.

48.   The Attorney General admits that Senate Bill 23, Senate Bill 1080, and California Penal Code sections 16740 and 32310 speak for themselves.  Except as specifically admitted, the Attorney General denies the allegations of paragraph 48.

49.   The Attorney General admits that Senate Bill 23 speaks for itself.  Except as specifically admitted, the Attorney General denies the allegations of paragraph 49.

50.   The Attorney General admits that in July 2016, the California Legislature passed and the Governor signed Senate Bill 1446 into law.  The Attorney General further admits that in November 2016, California voters approved Proposition 63.  The Attorney General admits that Senate Bill 1446, Proposition 63, and California Penal Code section 32310 speak for themselves.  Except as specifically admitted, the Attorney General denies the allegations of paragraph 50.

51.   The Attorney General admits that California Penal Code section 32310 speaks for itself.  Except as specifically admitted, the Attorney General denies the allegations of paragraph 51.

52.   The Attorney General admits that California Penal Code section 32310 speaks for itself.  Except as specifically admitted, the Attorney General denies the allegations of paragraph 52.

53.   The Attorney General admits that each section of the California Penal referenced in paragraph 53 speaks for itself.  Except as specifically admitted, the Attorney General denies the allegations of paragraph 53.

54.   To the extent that the allegations contained in paragraph 54 are Plaintiffs' characterization of their case and conclusions of law, no answer is required.  The Attorney General admits that California Penal Code section 32310 speaks for itself.  The Attorney General further admits that each judicial opinion referenced in paragraph 54 speaks for itself.  The Attorney General denies the remainder of the allegations in paragraph 54.  Except as specifically admitted, the Attorney General denies the allegations of paragraph 54.

55.   To the extent that the allegations contained in paragraph 55 are Plaintiffs' characterization of their case and conclusions of law, no answer is required.  The Attorney General denies the allegations of paragraph 55.

56.   To the extent that the allegations contained in paragraph 56 are Plaintiffs' characterization of their case and conclusions of law, no answer is required.  The Attorney General admits that California Penal Code section 32310 speaks for itself. The Attorney General denies the remainder of the allegations in paragraph 56. Except as specifically admitted, the Attorney General denies the allegations of paragraph 56.

57.   To the extent that the allegations contained in paragraph 57 are Plaintiffs' characterization of their case and conclusions of law, no answer is required.  The Attorney General denies the allegations of paragraph 57.

58.   To the extent that the allegations contained in paragraph 58 are Plaintiffs' characterization of their case and conclusions of law, no answer is required.  The Attorney General denies the allegations of paragraph 58.

59.   To the extent that the allegations contained in paragraph 59 are Plaintiffs' characterization of their case and conclusions of law, no answer is required.  The Attorney General admits that the Due Process Clause of the Fourteenth Amendment speaks for itself.  The Attorney General further admits that each judicial opinion referenced in paragraph 59 speaks for itself.  Except as specifically admitted, the Attorney General denies the allegations of paragraph 59.

60.   To the extent that the allegations contained in paragraph 60 are Plaintiffs' characterization of their case and conclusions of law, no answer is required.  The Attorney General denies the allegations of paragraph 60.

61.   To the extent that the allegations contained in paragraph 61 are Plaintiffs' characterization of their case and conclusions of law, no answer is required.  The Attorney General denies the allegations of paragraph 61.

62.   To the extent that the allegations contained in paragraph 62 are Plaintiffs' characterization of their case and conclusions of law, no answer is required.  The Attorney General denies the allegations of paragraph 62.

63.   To the extent that the allegations contained in paragraph 63 are Plaintiffs' characterization of their case and conclusions of law, no answer is required.  The Attorney General denies the allegations of paragraph 63.

64.   The Attorney General incorporates and reasserts each and every response contained in the foregoing paragraphs of this Answer, as though fully set forth herein.

65.   To the extent that the allegations contained in paragraph 65 are Plaintiffs' characterization of their case and conclusions of law, no answer is required.  The Attorney General admits that California Penal Code section 32310 speaks for itself. The Attorney General denies the remainder of the allegations in paragraph 65. Except as specifically admitted, the Attorney General denies the allegations of paragraph 65.

66.   The Attorney General denies the allegations of paragraph 66.

67.   The Attorney General denies the allegations of paragraph 67.

68.   To the extent that the allegations contained in paragraph 68 are Plaintiffs' characterization of their case and conclusions of law, no answer is required.  The Attorney General admits that California Penal Code section 32310 speaks for itself. The Attorney General denies the remainder of the allegations in paragraph 68. Except as specifically admitted, the Attorney General denies the allegations of paragraph 68.

69.   The Attorney General denies the allegations of paragraph 69.

70.   The Attorney General incorporates and reasserts each and every response contained in the foregoing paragraphs of this Answer, as though fully set forth herein.

71.   To the extent that the allegations contained in paragraph 71 are Plaintiffs' characterization of their case and conclusions of law, no answer is required.  The Attorney General admits that California Penal Code section 32310 speaks for itself. The Attorney General denies the remainder of the allegations in paragraph 71.

1    Except as specifically admitted, the Attorney General denies the allegations of

2    paragraph 71.

3          72.   The Attorney General denies the allegations of paragraph 72.

4          73.   The Attorney General denies the allegations of paragraph 73.

5          74.   The Attorney General incorporates and reasserts each and every response

6    contained in the foregoing paragraphs of this Answer, as though fully set forth

7    herein.

8          75.   The Attorney General admits that the Dupe Process Clause and each

9    judicial opinion referenced in paragraph 75 speaks for itself.  The Attorney General

10   denies the remainder of the allegations in paragraph 75.  Except as specifically

11   admitted, the Attorney General denies the allegations of paragraph 75.

12         76.   The Attorney General denies the allegations of paragraph 76.

13         The Attorney General denies that Plaintiffs are entitled to the relief set forth in

14   the Prayer for Relief immediately following paragraph 76, or to any relief

15   whatsoever.  To the extent that the Prayer for Relief states any allegations, the

16   Attorney General denies them.

17                           **FIRST AFFIRMATIVE DEFENSE**

18         The Complaint, and the claims for relief alleged therein, fails to state facts

19   sufficient to constitute a cause of action.

20                          **SECOND AFFIRMATIVE DEFENSE**

21         Plaintiff's claims in this action are barred in that they do not have standing to

22   bring them.

23                           **THIRD AFFIRMATIVE DEFENSE**

24         The Complaint, and each cause of action therein, is improper as Plaintiffs have

25   an adequate remedy at law.

26                          **FOURTH AFFIRMATIVE DEFENSE**

27         The Complaint, and every cause of action therein, is barred by the equitable

28   doctrines of estoppel, laches, unclean hands, and/or waiver.

### FIFTH AFFIRMATIVE DEFENSE

To the extent that the Attorney General has undertaken any conduct with regard to the subjects and events underlying Plaintiffs' Complaint, such conduct was, at all times material thereto, undertaken in good faith and in reasonable reliance on existing law.

### SIXTH AFFIRMATIVE DEFENSE

The Attorney General has not knowingly or intentionally waived any applicable affirmative defense.  The Attorney General reserves the right to assert and rely upon other such defenses as may become available or apparent during discovery proceedings or as may be raised or asserted by others in this case, and to amend the Answer and/or affirmative defenses accordingly.  The Attorney General further reserves the right to amend the Answer to delete affirmative defenses that he determines are not applicable after subsequent discovery.

WHEREFORE, Defendant prays that:

1.     Plaintiffs take nothing by reason of the Complaint;

2.     Judgment be entered in favor of Defendant;

3.     Defendant be awarded costs incurred in defending this action; and

4.     Defendant be awarded such further relief that the Court may deem just and proper.

1    Dated:  June 12, 2017                              Respectfully submitted,

2                                                       XAVIER BECERRA
                                                        Attorney General of California
3                                                       TAMAR PACHTER
                                                        Supervising Deputy Attorney General
4                                                       NELSON R. RICHARDS
                                                        ANTHONY P. O'BRIEN
5                                                       Deputy Attorneys General

6                                                       */s/ Alexandra Robert Gordon*
                                                        ALEXANDRA ROBERT GORDON
7                                                       Deputy Attorney General
                                                        *Attorneys for Defendant*
8                                                       *Attorney General Xavier Becerra*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Finding of Emergency

The Department of Justice (Department or DOJ) finds that an emergency exists, and that the immediate adoption of sections within Chapter 39, of Division 5, of Title 11 is necessary to avoid serious harm to the public peace, health, safety, or general welfare.

**Specific Facts Demonstrating the Need for Immediate Action**

Proposition 63, a measure banning the possession of large-capacity magazines, was approved by the voters on November 8, 2016 and took effect November 9, 2016. In anticipation of its passages, the Legislature pre-amended Proposition 63 with the passage of Senate Bill 1446 (Chapter 48, Statutes of 2016). The clarifying amendments take effect on January 1, 2017.

Pursuant to Proposition 63, as amended, beginning July 1, 2017, it will be an infraction punishable by a fine for a person to possess any large-capacity magazine, regardless of the date the magazine was acquired. (Penal Code, § 32310, subdivision (b).) The new law requires a person in lawful possession of a large-capacity magazine prior to July 1, 2017 to dispose of the magazine. Some persons are exempt from the ban, including active and retired law enforcement, armored car entities, and licensed gun dealers. (Penal Code, §§ 32400, 32405, 32406, 32410, 32430, 32435, 32450.) Starting July 1, 2017, anyone who violates the ban is subject to a year in jail, and a $100 fine for a first offence, $250 fine for a second offense, and a $500 fine for a third offense. (Penal Code § 32310, subdivision (b).)

These emergency regulations are necessary for the implementation and on-going enforcement of the ban on large-capacity magazines. The proposed regulations provide guidance to California residents on how to comply with the ban. These regulations need to be established as soon as possible so the Department has time to notify gun owners and gun owners have time to make the necessary changes to comply with the ban.

There are likely hundreds of thousands of large-capacity magazines in California at this time. In recent years, there has been an increase in these types of firearms on the market. The Department therefore expects many gun owners to be affected by the new ban. Under the new law, gun owners have six months to dispose of or permanently alter their large-capacity magazines. Pursuant to Penal Code section 32310, subdivision (c), a person who legally possesses a large-capacity magazine shall dispose of that magazine by any of the following means prior to July 1, 2017: (1) remove the large-capacity magazine from the state; (2) sell the large-capacity magazine to a licensed firearms dealer; (3) destroy the large-capacity magazine; or (4) surrender the large-capacity magazine to a law enforcement agency for destruction.

Alternatively, gun owners may permanently alter large-capacity magazines by reducing their ammunition capacity so that it no longer meets the definition of a "large-capacity magazine." Penal Code section 16740 defines "large-capacity magazine" to mean any ammunition feeding device with the capacity to accept more than 10 rounds, but shall not be construed to include a feeding device that has been permanently altered so that it cannot accommodate more than 10 rounds. If a gun owner chooses to permanently reduce the capacity of their large-capacity

Page 1 of 5

magazines, these emergency regulations provide guidance for doing so with what the Department has determined to be the acceptable minimum level of permanence.

By providing this information to the public in a timely manner, through the emergency process, the Department will avert serious harm to public peace, health, safety, or general welfare.

**Technical, Theoretical, and Empirical Study, Report, or Similar Document, if any, Upon Which the Department Relied**

In addition to existing regulations forming the basis of these proposed regulations, the following documents were used:

UTAS MAKINE LTD., UTS-15 owners manual, attached for reference
KEL TEC, KSG owners manual, Rev 042814, attached for reference
Standard MFG. DP-12 shotgun owners manual, attached for reference

**Authority and Reference Citations**

Authority:      Penal Code sections 26905, 26910, 32310, 32311, 32315.

Reference:      Penal Code sections 16740, 32310, 32311, 32315, 32400, 32405, 32406, 32410, 32415, 32425, 32430, 32435, 32440, 32445, 32450.

Repealed:      Penal Code section 32420 was removed from the authority of section 5480 because SB 1446 repealed that section.

**Informative Digest/Policy Statement Overview**

Existing law prohibits the sale, gift, and loan of a large-capacity magazine. A violation of this prohibition is punishable as a misdemeanor with specified penalties, or as a felony. The new law goes further and provides that possession of large-capacity magazines by a non exempt person is an infraction punishable by a fine not to exceed $100 for the first offense, by a fine not to exceed $250 for the second offense, and by a fine not to exceed $500 for the third or subsequent offense, regardless of the date the magazine was acquired. The law requires a person in lawful possession of a large-capacity magazine prior to July 1, 2017, to dispose of the magazine as provided. By creating a new crime, this law imposes a state-mandated local program.

Existing law creates various exceptions to the prohibition on the sale, gift or loan of a large-capacity magazine including, but not limited to, the sale of, giving of, lending of, importation into this state, or purchase of, any large-capacity magazine to, or by the holder, of a special weapons permit for use as a prop for a motion picture or any federal, state, county, city and county, or city agency that is charged with the enforcement of any law, for use by agency employees in the discharge of their official duties, whether on or off duty, and where the use is authorized by the agency and is within the course and scope of their duties. The new law makes conforming changes to those exceptions by including possession of a large-capacity magazine in those provisions and would establish additional exceptions, including exceptions to allow

licensed gunsmiths and honorably retired sworn peace officers to possess large-capacity magazines.

The objective of the proposed regulations is to inform California gun owners of their options for complying with new California laws while maintaining public safety.

Article 4. Large-Capacity Magazine Permits

§ 5480. Requirements for Large-Capacity Magazine Permits Pursuant to Penal Code Section 32315.
This section is amended to state that a separate Large-Capacity Magazine Permit is needed for each licensed location. The permit will automatically transfer with an existing California Firearms Dealer if their physical store moves and they notify the Department prior to moving. Large-Capacity Magazine Permit applications can only be submitted online.

§ 5483. Large-Capacity Magazine Permit Record Keeping.
This section is amended to include instructions on how permittees shall document the Large-Capacity Magazine Permit records, which form to use, any additional documentation to be kept with the form, and timeframe for completing the documentation.

§ 5484. Large-Capacity Magazine Permit Revocations.
This section is amended to include the grounds for revocation of a Large-Capacity Magazine Permit, and the factors surrounding the revocation.

Article 5. Large-Capacity Magazines and Large-Capacity Magazine Conversion Kits

§ 5490. Large-Capacity Magazine; manufacturing
This section has been added to inform gun owners who legally possess a large-capacity magazine that they may disassemble and clean the magazine without triggering the ban.

§ 5491. Large-Capacity Magazine; capacity
This section has been added to inform gun owners of the legal definition of a large-capacity magazine and provide guidance on reducing the capacity on their large-capacity magazines.

§ 5492. Large-Capacity Magazine Conversion Kits.
This section has been added to clarify the definition of large-capacity magazine conversion kits.

**Government Code Section 11346.5(a)(3)(D) Evaluation**

The proposed regulations are not inconsistent or incompatible with existing state regulations.

**Mandate on Local Agencies or School Districts**

The Department has determined the proposed emergency regulations do impose a state-mandated local program or a mandate requiring reimbursement by the State pursuant to Chapter 58, Statutes of 2016, because it creates a new crime. However, SB 1446 states that no reimbursement

is required by this act pursuant to Section 6 of Article XIII B of the California Constitution because the only costs that may be incurred by a local agency or school district will be incurred because this act creates a new crime or infraction.

**Other Matters Prescribed by Statute Applicable to the Agency or to Any Specific Regulation or Class of Regulations**

None.

**Nonduplication of State Statutes as Necessary To Satisfy Government Code Section 11349.1(a)(6)**

To satisfy the requirements of Government Code section 11349.1(a)(6), the text of the proposed regulations are nonduplicative.

**Forms Incorporated by Reference**

Large-Capacity Magazine Permit Application, BOF 050 (Rev. 12/2016)
Large Capacity Magazine Report, BOF 1002 (Rev. 12/2016)

**Cost Estimates**

The Department has assessed the potential for significant adverse impact that might result from the proposed emergency action and has determined:
- There will be no non-discretionary costs or savings to local agencies
- There will be no costs to school districts
- There will be no costs or savings in federal funding to the State

As detailed on the attachment to the Economic and Fiscal Impact Statement (STD. 399), the Department estimates its costs (state agency) directly related to the large-capacity magazine permit and enforcement of the large-capacity magazine laws and regulations will be insignificant.

**Finding of Emergency**

Government Code section 11346.1(a)(2) requires that, at least five working days prior to submission of the proposed emergency action to the Office of Administrative Law, the adopting agency provide a notice of the proposed emergency action to every person who has filed a request for notice of regulatory action with the agency. After submission of the proposed emergency to the Office of Administrative Law, the Office of Administrative Law shall allow interested persons five calendar days to submit comments on the proposed emergency regulations as set forth in Government Code section 11349.6.

**Explanation of Failure to Adopt Nonemergency Regulations**

The Department is unable to develop regulations in the standard manner because of the short timeframes provided in the legislation.  The legislation was signed into law on July 1, 2016, and the ban commences on July 1, 2017.  It is the Department's intention to provide guidance to California's gun owners so that by July 1, 2017, they will be in compliance with the law.  The proposed regulations provide options for disposal of large-capacity magazines, as well as instructions for reducing the capacity of a large-capacity magazine, and need to be formalized and provided to California residents as soon as possible.

# OWNER'S MANUAL

*Instruction Book for UTS-15 Shotgun*

www.utas-usa.com

1



www.utas-usa.com

2

UTS 15

# OWNER'S MANUAL

*Instruction Book for UTS-15 Shotgun*

Introduction ................................................................................ 4-5

Ten commandments of safety ................................................. 6-12

Important Parts & Mechanism ............................................... 13-15

Loading and Firing .................................................................. 16-23

Unloading .................................................................................. 24

Cleaning .................................................................................... 25-28

Complete Disassembly ............................................................ 29-51

Exploded View & Part List ..................................................... 52-54

Parts and Service ..................................................................... 57

3

UTS15

# *Introduction*

Congratulations on your purchase of the UTS-15 Shotgun. This shotgun is on the cutting edge of modern shotgun design and materials utilization. Developed by UTAS MAKINE LTD and manufactured in the United States and Turkey, the UTS-15 is sure to change the way sportsmen as well as military and law enforcement personnel view a shotgun and its capabilities.

UTAS is a company that specializes in firearms design, engineering and OEM manufacturing. Arguably, UTAS is one of the top sporting firearms design companies with their products being voted "Gun of the Year" by the NRA's American Rifleman Magazine in 2006 and again in 2007. Although UTAS continues to win awards for beautiful designs, the heart of the company is innovation as exemplified in the revolutionary new UTS-15.

The UTS-15 is a unique shotgun platform not previously seen by the American shooter. The UTS-15 platform is to the shotgun shooter as the AR platform is to the center fire rifle shooter. The UTS-15 is offered in several hunting configurations as well as a Military and Law Enforcement specification. While the sporting model has twin magazines of 5 round capacities requiring manual magazine selection, the M&P model offers a total magazine capacity of 15 rounds with consecutive automatic magazine selection. The M&P model has additional law enforcement enhancements

4

**UTS 15**

including a flash suppressor extended choke and an integral laser / spotlight night sight designed for close-quarters combat situations. You will find that the UTS-15 is equally at home in shooting 2 3/4" or 3 inch ammunition. Additionally, the UTS-15 will reliably feed specialty rounds loaded in 2 1/2 inch cases. A variety of sporting choke tubes is available from cylinder bore for big game such as wild boar, bear or deer with buckshot or slugs to an extra full turkey choke.

As with any firearm, you are asked to become familiar with the UTS-15 and this operator's manual even before you take it out of the box. It is impossible to be too careful when it comes to firearms safety. Most firearms accidents could be prevented with just a few simple rules such as controlling the direction of the muzzle, proper operation of the safety mechanism and utilization of the proper loads designed for your particular firearm. The UTS-15 is not your father's shotgun. Take your time, use your head, be safe with this new and exciting shotgun and it will provide you with a lifetime of shooting enjoyment.

# *Warning!*

Failure to follow any of these safety precautions and the Ten Commandments of Firearms Safety may cause personal injury including death to the shooter or to bystanders as well as substantial property damage. If you have any questions regarding your UTS-15 or it's safe operation, please call **UTAS-USA at** (+1) 847 768 1011. We will be happy to talk to you.

5

UTS15

# The ten commandments of firearm safety

The following Ten Commandments of Firearm Safety should be committed to memory and kept in mind anytime you are handling firearms whether on the range, in the field or at home for cleaning and storage. Please give these commandments your full attention and obtain a through understanding of these rules. Mistakes can be made by even the most experienced shooter. Make sure that is not you by memorizing and faithfully practicing these Ten Commandments of Firearms Safety.

6

UTS 15

### First commandment
## *Always keep the muzzle pointed in a safe direction.*

This commandment is listed first and is number one because it is the most important rule to remember and follow. If your muzzle is always pointed in a safe direction, you can never have an accidental discharge that will cause any injury or damage. Never allow your gun to point in any direction or at anything you do not want to shoot. This rule applies to your firearm whether it is loaded or not and particularly when either loading or unloading your firearm.

### Second commandment
## *Firearms should be unloaded when not actually in use.*

Your firearm should only be loaded when you are at the range or in the field and actually ready to shoot. When you have finished shooting, unload the firearm before putting it in your vehicle, tent or home. Always remember to unload the firearm completely. This means removing all ammunition not only from the chamber but the magazines as well. Anytime you are given a firearm, check to see if it is unloaded. Do this as well when passing a firearm to another person. The mark of a real firearm pro is to always know the loading condition of any firearm you are handling. Always use good common sense. If you are climbing into a tree stand, crossing a fence, stream or other obstruction, unload your firearm. Do not store firearms loaded. Be particularly careful around children who are often fascinated with firearms. Lock your firearms away and secure your ammunition is a separate storage facility

7

UTS15

### Third commandment
## *Do not rely on your firearm's safety.*

Your UTS-15 has a safety designed to maximize performance and safety.  It is, however, a mechanical device and is subject to failure.  Always keep your safety engaged until you are ready to take your shot.  Never put your finger on the trigger until you are ready to take your shot.  Do not pull the trigger just to "test the safety".  Before using your new shotgun, read the owner's manual carefully and be completely familiar with the exact location and operation of your firearm's safety mechanism.  Always know that you and your good judgment are the best safety mechanism for your firearm.

### Fourth commandment
## *Be sure of your target and what's beyond it.*

Once you have pulled a trigger and released a round, you can never get it back.  Know what you are shooting.  Never take a "sound shot" or fire at a movement or flash of color.  It might well be your hunting buddy.  Know what is behind your target in case you miss or experience a ricochet.  Bullets and shot charges can carry great distances and with lethal effect.

8



UTS15

**Fifth commandment**

## *Use proper ammunition.*

Your UTS-15 shotgun is designed to be used only with 12 gauge ammunition of no greater case length than three inches. Using the wrong ammunition or using ammunition that has been improperly loaded can cause serious personal injury and even death. It certainly can destroy your firearm. The most common ammunition error in 12 gauge shotgun shooting is called a 12/20 burst. This is when a 20 gauge shell is loaded into a 12 gauge gun by mistake. The 20 gauge shell will slide through the 12 gauge chamber and lodge in the bore. When a 12 gauge shell is then loaded and fired, the burst results. These situations have the potential to be fatal to both the shooter and those around the shooter. Always carefully check the markings on your ammunition to insure that what you are using is intended for your particular firearm. If you are using reloaded ammunition, be particularly careful to know that you are using properly reloaded shells.

9

UTS15

Sixth commandment
## *If your firearm fails to fire when the trigger is pulled, handle with care.*

Should this happen to you, remember the first commandment and keep your muzzle pointed in a safe direction. It may be a simple misfire where the primer did not ignite the propellant charge. It could also be what is known as a "hang fire" where the powder does not discharge immediately but might do so a second or two after the trigger is pulled. Keep your muzzle pointed in a safe direction, keep your face away from the ejection port, put the safety on and carefully unload the action. Safely dispose of the defective round. Throughout this procedure, always remember that the gun might discharge at any time.

Seventh commandment
## *Always wear eye and ear protection when shooting.*

Your sight and hearing are always at risk when shooting. This is particularly true in clay target shooting or in confined spaces such as a duck blind or enclosed deer stand. Always use proper eye and ear protection. Most of us only have two eyes and two ears. Take care of them through proper protection when shooting.

10

UTS 15

**Eighth commandment**

*Be sure the barrel is clear of obstructions before shooting.*

This procedure starts before you load your gun. Open the action and make sure that both the chamber and the magazines are clear. Check the barrel for any obstruction or debris. A very small obstruction such as a cleaning patch, snow, mud or similar object could well be enough to destroy your gun and hazard your life and limb. Never try to clear an obstruction by shooting a round through the barrel. If you notice something not quite right with the recoil or report when you fire your shotgun, stop, unload the gun and check the bore for obstructions.

**Ninth commandment**

*Don't alter or modify your gun and have it serviced regularly.*

Your UTS-15 shotgun has been designed to operate within certain factory specifications. If you make any attempt to alter the trigger pull, safety mechanism or any other feature in any way you might jeopardize your safety and the safety of others around you. All mechanical devices are subject to failure through wear, misuse or poor maintenance. Make sure that you periodically have your shotgun serviced and inspected by a competent service facility. The best way to insure continuing serviceability is proper cleaning and lubrication. Before cleaning, always make sure that your firearm is completely unloaded. If possible, clean the bore from the chamber end to the muzzle end.

11



**Tenth commandment**

## *Learn the mechanics and handling characteristics of your firearm.*

You might be a real firearm pro but not all guns are alike in features, operation and performance. This is particularly true of the UTS-15 which represents a new and totally different shotgun platform. Read your instruction manual from cover to cover. Become familiar with all the different component parts and operating features. As an additional note, alcohol and gun powder DO NOT MIX! Always shoot sober. Never consume anything that will impair your judgment when it comes to using firearms. A majority of the firearms accidents in the world every year involve the use of drugs and alcohol. Stay safe! Stay alive! SHOOT SOBER!

12

ER_3939

Case 3:17-cv-01017-BEN-JLB   Document 18   Filed 06/05/17   PageID.1662   Page 28 of 161



## Safety Mechanism

As indicated in illustration the tip of the safety selector is pointed at S for safety. To fire the switch is rotated clockwise until the tip is pointed at the F for fair.



## Fore-end

This is used to pull the bolt rearward to open the action and to load another round after firing.



13



## *Action Bar Release (bolt release)*

The action bar release is used to unlock and operate the action when the trigger has not been pulled.

## *Trigger*

Pulling the trigger will discharge the firearm if the chamber has a loaded round in it. The weight of the trigger is set at the factory. Do not attempt to adjust the trigger. To do so might result in an unsafe condition resulting in accidental discharge.





14

UTS15

## Choke Tubes



## Warning

Unload the firearm completely before attempting to change a choke tube. Leave the action open and the chamber and magazine empty.

To change the choke tube:

• Point the firearm in a safe direction.

• Engage the safety.

• Place the choke tube wrench into the choke tube.

• Turn the wrench counter clockwise to remove the choke tube.

• Screw in the new choke tube with the wrench.

• Tighten the choke tube snugly but DO NOT OVERTIGHTEN. With the action open and the chamber empty, check the choke tube occasionally to make sure the tube has not become loose.

• NOTE: NEVER fire the firearm without a choke tube installed.

15

ER_3942

UTS15

# UTS-15 Owners Manual Additions

## Loading and Firing

At the range after removing your UTS-15 from it's protective carton or deployment case, check to make sure the safety is in the on safe position (picture 1)



depress the bolt release button (picture 2)



16

UTS15

and slide the action into the full rear position to
insure the chamber is empty,
then raise the upper stock (picture 3)

to visually confirm that there
are no live shells in either magazine tube
(picture 4).





17



With the upper stock raised
you will be able to see
the serial number plate on the
left side of the receiver (picture 5).

It is a good idea to record this
serial number and place it in a safe place
in case your UTS-15 is ever lost or stolen.

After confirming that your UTS-15 is in
fact empty, check again to make sure the
safety is in the safe position, then check
that the extended choke tube, tactical
choke or barrel extension are fully screwed
in and snug (picture 6).

18



Open the loading port doors by
pressing down on the loading
door release latch (7).



The shell follower should then be
pushed forward with the end of
you thumb until it passes the
magazine shell  catch (8)



19

UTS15



which will hold the magazine follower in the magazine tube, leaving the monobloc port open to receive shells (9).

Six 2 ¾" 12 gauge shells or five 3" shells can now be loaded into each magazine tube; the remaining shell can then be place in the open monobloc loading port (10).



When the loading port door is closed the shells held in the magazine tube will be released, charging the full seven 2 ¾" or six 3" shells into the ready to load position, with an audible sound of the shells moving rearward to the rear of the monobloc.

20



Visual inspection to confirm that the
magazine is full charged can be achieved
by viewing the cartridge counter
indicator  the viewing ports in the side
of the aluminum magazine tube (11)



Now with both magazines fully charged
and the action in the full rear position
the 15th shell can be placed directly in
the chamber of the barrel (12).



21



With the UTS-15 pointed down range and the magazine selector in the center position if a full 15 rounds is to be fired (13)

(the magazine selector can be moved to either the full right or full left position to block the corresponding magazine if you choose to fire from only one magazine), check that there is no one in front of the firing line and that there is a sufficient down range back stop to contain the fired projectiles.

22



With the range safe, place the butt of the UTS-15 snuggly to your shoulder (14)

slide the action to the full forward locked position, rotate the safety to the fire position and commence firing.



The action will automatically release when the shell is fired; the action should then be moved fully rearward in a positive manner to expend the spent cartridge and have a new live round loaded onto the shell loading ramp (15).

23

UTS15

Sliding the action back into the full forward and locked position loads the new round and completes the loading cycle. Be sure the action is fully forward and locked before pulling the trigger. If the trigger is pulled before the action is fully forward and locked the hammer will fall, but the firing pin can not reach the shell's primer, this is a key safety feature of the UTS-15 to insure that a shell can not be fired until the action is fully closed and locked. Inexperienced shooters, in an attempt to load and fire rapidly will often pull the trigger before the gun is locked and then think that either the shell is a dud or something is wrong with the gun. To rapidly fire the UTS-15 takes practice, so go slowly at first making a conscious effort to positively pump the action fully rearward, then forward into the locked position before pulling the trigger. After repeated practice, pumping the UTS-15 can become a motor reflex, but only time and work on the range can develop this skill.



## Unloading

When you have finished firing the UTS-15 if a shell remains in either magazine, place the safety in the safe position, remove the gun from your shoulder and while keeping it pointed down range depress the bolt release button and cycle the remaining shells through the action.

24



Once the last live shell has been ejected leave the action open, raise the upper stock and visually confirm that no shells remain in the magazines tubes, then visually confirm that no shell remains in the chamber of the barrel (16).

## The UTS-15 is now ready for cleaning.
## Cleaning

It is not necessary to fully disassemble the UTS-15 to clean it, but field stripping is advised so that proper lubrication can be applied to keep the action running smoothly.

25

Case 3:17-cv-01017-BEN-JLB   Document 18   Filed 06/05/17   PageID.1675   Page 41 of 161



To field strip the UTS-15, leave the upper stock in the raised position, unscrew and remove the barrel retaining cap (17).

Then slide the barrel / magazine assembly forward and lift off (18).

26



With the barrel / magazine assembly removed, slide the fore-end and bolt carriage assembly forward and off (19),

while being conscious that the bolt when free of the receiver can be lifted off the bolt carriage (20).

You will now have four parts: the barrel / magazine assembly, lower stock and receiver assembly, bolt carriage / fore-end assembly and bolt. Clean the barrel with gun solvent and finish with a lightly oiled patch. The inside of the receiver can be wiped clean, but oil should not be used. For best operation a small amount of dry graphite powder provides the best lubrication. Wiping the bolt head and shank with a cloth and a drop of gun oil on the bolt head shank is all that is necessary to keep the bolt working smoothly. Further disassembly will be discussed later in this manual, but in most cases this simple cleaning and lubricating procedure is all that is necessary.

27

UTS15

*Field Strip Reassembly*



Place the bolt on the bolt carriage making sure it is fully down into the receiving mortises in the bolt carriage. With the upper stock raised, slide the bolt carriage into the receiver with the bolt release button depressed until the fore-end is even with the base of the barrel retaining pipe (21).

Now slide the barrel / magazine assembly into the receiver while making sure that the foot of the shell release slide is between the two bolt carriage extensions (22).

Press down firmly to make sure the barrel is fully mounted into the receiver then replace the barrel retaining cap making sure it is screwed down snuggly. Close the upper stock, slide the action into the forward and locked position, then close the ejection port door.



28   FURTHER DISSASSEMBLY OF THE UTS-15 BY THE USER IS NOT RECOMMENDED

UTS15

## Complete disassembly

Field strip the UTS-15 (see section on field stripping).
**Bolt –** With a drift punch remove the lateral pin (23) in the lower rear of the bolt while depressing the firing pin forward to keep the firing pin spring captured when the lateral pin is removed.

Remove the firing pin and firing pin spring (24).



29

Case 3:17-cv-01017-BEN-JLB   Document 18   Filed 06/05/17   PageID.1679   Page 45 of 161



Lift out the bolt head retaining pin. Slide out the bolt head and bolt head spring (25).

Place the bolt head in a vice or similar type holding fixture and drive out the extractor retaining pin with a drift punch, being conscious of the extractor spring underneath the extractor. The bolt is now completely disassembled into its component parts.



**Receiver** – remove C clips from the receiver retaining pins and upper stock hinge pin (26).



Remove receiver and upper stock retaining pins
with a drift punch than lift and remove upper
stock. Remove butt plate retaining pin (27) with
a drift punch and slide butt plate out of the
lower stock assembly.

Rotate receiver out of lower stock (28) and
unhinge trigger linkage from trigger.

31

UTS15



With the receiver now free of the lower stock place the receiver on a surface in such a manner that the rear gearbox retaining pin (29) can be removed with a drift punch.

The front gearbox retaining pin can now be driven from left to right with a drift punch only ¼" (30) to allow the gear box assembly to be dropped out of the bottom of the receiver while still retaining the component parts in the gear-box assembly.

32

The trigger linkage will fall free as the gearbox is removed (31).



The gear box can be further disassembled by removing the remaining gear box retaining pin which will free the hammer, hammer spring & plunger and bolt release (32).

33

UTS15



The sear / secondary sear assembly can be removed from the gearbox housing by pushing out the sear pivot pin (33)

with a drift punch. The secondary sear can then be removed by driving out the secondary sear pivot pin (34)

while being conscious of the secondary sear spring retained underneath.

34



The loading mechanism of the receiver can now be addressed. First remove the C clips from the mousetrap spring retaining pin (35).



With the receiver held in a vice or similar holding fixture, hold the mousetrap spring down by placing a block of wood or similar material on the spring coils while the mousetrap spring retaining pin is removed with a drift punch. Remove the C clips from the mousetrap spoon pivot and forward pin (36) and remove pins from assembly.

35

UTS15



The mousetrap trigger plate and spring is held in place with a headless screw, with a similar spring bearing screw directly below (37).



Carefully remove these two screws to complete the disassembly of the receiver loading mechanisms. Unscrew the ejector spring retaining screw on the left side of the receiver (38).

36



With the ejector spring retaining screw removed the ejector spring and pin (39)

may fall free or can be pushed out of the receiver with a thin screw driver or wire. Carefully drive the ejection port door retaining pin (40) out of the receiver being conscious of the ejection port door spring; this completes the disassembly of the receiver.



37



**Lower stock** – remove the safety spring retaining screw (41)



38          from the stock and drop out the safety spring and plunger (42).



Rotate the safety a little over 90°
until the machined clearance flat
on the safety is over the trigger bar
and slide safety out of the
stock(43)

Remove the C clips from the
trigger retaining pin, push
out the pin and lift the
trigger out of the stock (43
A).

39



If your UTS-15 is equipped with a tactical laser / spotlight unit the unit can be completely removed by unplugging the wiring just forward of the switch (44).



If the switch needs to be removed the rotary switch (45) can be unscrewed and the switch body pulled free.

40

Case 3:17-cv-01017-BEN-JLB   Document 16   Filed 06/05/17   PageID.1690   Page 56 of 161





**Barrel / magazine assembly** - Remove the magazine cap (46)  by unscrewing the two forward caps screws

41

UTS15

being conscious that the magazine cap retains
the magazine springs.



Remove the magazine springs (47)

42

Case 3:17-cv-01017-BEN-JLB   Document 18   Filed 06/05/17   PageID.1692   Page 58 of 161



and magazine followers (48).

Remove the three side cover screws on the right side and the two side cover screws and sling swivel screw on the left side (49) and lift off side covers.

43

UTS 15

Unscrews the three top
rail screws (50)

and lift off top rail /
magazines, monobloc
subassembly (51)



44



the three magazine
supports (52) can now be
lifted off the barrel.

Remove the two shell
release slide screws (53)

UTS15



with their washers and tensions springs and lift off the shell release slide (54).

This will also free the top rail from the monobloc and allow the magazine tubes to be removed from the monobloc as well ( 55 A).

46



Remove the shell stop full right or full left position. Right behind the shell stop there is a retaining screw which connects the monoblock to the shell stop. First unscrew the shell stop retaining screw then unscrew the shell stop screw. (55 B)

being conscious of the spring and detent bearing housed in the shell stop(56).

47

Case 3:17-cv-01017-BEN-JLB   Document 18   Filed 06/05/17   PageID.1697   Page 63 of 161



Remove the two screws holding the shell gate cap (57)

and lift cap off of the monobloc being conscious of the shell gate spring (58).

48

Case 3:17-cv-01017-BEN-JLB   Document 18   Filed 06/05/17   PageID.1698   Page 64 of 161



Slide the shell gates (59)

forward and up, removing them from the monobloc. With a drift punch drive out the shell catch pivot pin (60) and remove shell catch and shell catch spring from the monobloc. Drive the loading port door hinge pin (61)

out of the monobloc from front to rear with a drift punch and lift loading port doors free.

49

Case 3:17-cv-01017-BEN-JLB Document 18 Filed 06/09/17 PageID.1699 Page 65 of 161



Remove loading port door latch
retaining screw (62)



being conscious of the loading port door
latch spring underneath. Unscrew the
interrupter retaining screw (63) from
the monoblock

50

Case 3:17-cv-01017-BEN-JLB   Document 18   Filed 06/05/17   PageID.1700   Page 66 of 161

UTS 15

and slide interrupter (64) out of monoblock.

This completes the entire disassembly of the UTS-15.

**Assembly –** The UTS-15 is simple and robust by design and does not require a skilled gunsmith for correct assembly. However, in some areas special tools and fixtures greatly contribute to the ease of assembly. Professional service personnel should contact UTAS Technical Services for the availability of special tools, fixtures and training videos.



51



*UTS-15 Pump Action Shotgun*
# Parts of the UTS-15

52

# Part Listing For Model: UTS15 Pump-action

UTS15

| VIEW | DESCRIPTION | QTY |
|---|---|---|
| 1 | FRONT MAGAZINE CAP | 1 |
| 2 | FRONT MAGAZINE CAP SCREWS | 2 |
| 3 | MAGAZINE FOLLOWER BODY LEFT & RIGHT | 2 |
| 4 | MAGAZINE FOLLOWER PLUNGER | 2 |
| 5 | MAGAZINE FOLLOWER SPRING | 2 |
| 6 | RIGHT MAGAZINE TUBE | 1 |
| 7 | LEFT MAGAZINE TUBE | 1 |
| 8 | MAGAZINE TUBE SPRING | 2 |
| 9 | MONOBLOCK BODY | 1 |
| 10 | SHELL RELEASE PLATE | 1 |
| 11 | SHELL RELEASE PLATE SCREW | 2 |
| 12 | RIGHT SHELL RELEASE GATE | 1 |
| 13 | LEFT SHELL RELEASE GATE | 1 |
| 14 | SHELL RELEASE GATE SPRING | 1 |
| 15 | SHELL FEED GATE CAP | 1 |
| 16 | SHELL FEED GATE SCREW | 2 |
| 17 | INTERRUPTER | 1 |
| 18 | INTERRUPTER SCREW | 1 |
| 19 | SHELL STOP | 1 |
| 20 | SHELL STOP SCREW | 1 |
| 21 | SHELL STOP SPRING | 1 |
| 22 | SHELL STOP BALL 4MM | 1 |
| 23 | RIGHT LOADING PORT DOOR | 1 |
| 24 | LEFT LOADING PORT DOOR | 1 |
| 25 | LOADING PORT HINGE PIN | 2 |
| 26 | TOP RAIL | 1 |
| 27 | LOADING PORT DOOR SCREW | 4 |
| 28 | TOP RAIL SCREW | 3 |
| 29 | FRONT MAGAZINE SUPPORT | 1 |
| 30 | MIDDLE & REAR MAGAZINE SUPPORT | 2 |
| 31 | RIGHT SIDE COVER | 1 |
| 32 | LEFT SIDE COVER | 1 |
| 33 | SIDE COVER SCREW | 5 |
| 34 | SIDE COVER SCREW WITH HOLE | 1 |
| 35 | BARREL | 1 |
| 36 | BARREL EXTENSION | 1 |
| 37 | EXTENDED CHOKE TUBE | 1 |
| 38 | BARREL HANGER | 1 |
| 39 | BARREL STUDS | 3 |
| 40 | FORE-END | 1 |
| 41 | FORE-END SCREW | 4 |
| 42 | BOLT CARRIAGE | 1 |
| 43 | BOLT BODY | 1 |
| 44 | BOLT HEAD | 1 |
| 45 | FIRING PIN | 1 |
| 46 | FIRING PIN SPRING | 1 |
| 47 | BOLT HEAD SPRING | 1 |
| 48 | BOLT HEAD PIN | 1 |
| 49 | FIRING PIN RETAINING PIN | 1 |
| 50 | BOLT WHEEL | 1 |
| 51 | BOLT WHEEL SCREW | 1 |
| 52 | EXTRACTOR | 1 |
| 53 | EXTRACTOR PIN | 1 |
| 54 | EXTRACTOR SPRING | 1 |
| 55 | MAGAZINE CAP | 1 |
| 56 | MAGAZINE CAP SPRING | 1 |
| 57 | LOWER STOCK | 1 |
| 58 | TRIGGER GUARD | 1 |
| 59 | LOWER STOCK MAGAZINE TUBE | 1 |
| 60 | TRIGGER | 1 |
| 61 | TRIGGER PIN | 1 |
| 62 | SAFETY | 1 |
| 63 | SAFETY BALL 3 MM | 1 |
| 64 | SAFETY SPRING | 1 |
| 65 | PISTOL GRIP | 1 |
| 66 | PISTOL GRIP SCREW | 1 |
| 67 | TRIGGER GUARD SCREW | 2 |
| 68 | GEAR BOX BODY | 1 |
| 69 | HAMMER | 1 |
| 70 | BOLT RELEASE | 1 |
| 71 | HAMMER/BOLT RELEASE PIN | 1 |
| 72 | BOLT RELEASE SPRING | 1 |
| 73 | HAMMER SPRING | 1 |
| 74 | HAMMER SPRING PLUNGER | 1 |
| 75 | SEAR | 1 |
| 76 | SECONDARY SEAR | 1 |
| 77 | SEAR PIN | 1 |
| 78 | SECONDARY SEAR PIN | 1 |
| 79 | SECONDARY SEAR RETAINING PIN | 1 |
| 80 | SECONDARY SEAR SPRING | 1 |
| 81 | TRIGGER LINKAGE | 1 |
| 82 | HAMMER SPRING HOUSING | 1 |
| 83 | TRIGGER LINKAGE SPRING | 1 |
| 84 | RECEIVER | 1 |
| 85 | RECEIVER PLATE | 1 |
| 86 | EJECTION PORT DOOR | 1 |
| 87 | EJECTION PORT DOOR MAGNET | 1 |
| 88 | EJECTION PORT DOOR SPRING | 1 |
| 89 | EJECTION PORT HINGE PIN | 1 |
| 90 | MOUSE TRAP PIN | 1 |
| 91 | MOUSE TRAP SPOON | 1 |
| 92 | MOUSE TRAP FORWARD PIN | 1 |
| 93 | MOUSE TRAP SPRING | 1 |
| 94 | MOUSE TRAP SPRING RETAINING PIN | 1 |
| 95 | MOUSE TRAP TRIGGER PLATE | 1 |
| 96 | MOUSE TRAP TRIGGER PLATE PIN | 1 |
| 97 | MOUSE TRAP TRIGGER PLATE LOWER PIN | 1 |
| 98 | MOUSE TRAP TRIGGER PLATE SPRING | 1 |
| 99 | EJECTOR PIN | 1 |
| 100 | EJECTION POINT MAGNET HOUSING | 1 |
| 101 | EJECTOR SPRING RETAINING SCREW | 1 |
| 102 | EJECTOR SPRING | 1 |
| 103 | RECEIVER RETAINING PINS | 1 |
| 104 | MIDDLE RECEIVER RETAINING PIN | 2 |
| 105 | REAR GEAR BOX PIN | 1 |
| 106 | BUTT PLATE | 1 |
| 107 | RECOIL PAD | 1 |
| 108 | UPPER RETAINING PIN | 1 |
| 109 | UPPER STOCK | 1 |
| 110 | UPPER STOCK RETAINING PIN | 1 |
| 111 | SLING SWIVELS | 2 |
| 112 | FRONT SIGHT | 1 |
| 113 | SIGHT PIN | 1 |
| 114 | FRONT SIGHT CLAMP | 1 |
| 115 | FRONT SIGHT CLAMP SCREW | 2 |
| 116 | SET SCREW | 1 |
| 117 | REAR SIGHT | 1 |
| 118 | REAR SIGHT SPRING | 1 |
| 119 | REAR SIGHT APERTURE | 1 |
| 120 | WINDAGE SCREW | 1 |
| 121 | WINDAGE ADJUSTMENT KNOB | 1 |
| 122 | WINDAGE KNOB PIN | 1 |
| 123 | REAR SIGHT CLAMP SCREW | 2 |
| 124 | REAR SIGHT CLAMP | 1 |
| 125 | 7,5" BARREL EXTENSION | 1 |
| 126 | TAKE DOWN TOOL | 1 |
| 127 | WINDAGE ADJUSTMENT KNOP SPRING | 1 |
| 128 | WINDAGE ADJUSTMENT KNOP BALL 3MM | 1 |
| 129 | LASER / FLASHLIGHT UNIT | 1 |
| 130 | FLASHLIGHT LENS | 1 |
| 131 | C CLIPS (3 MM) | 2 |
| 132 | C CLIPS (4 MM) | 6 |
| 133 | C CLIPS (5 MM) | 4 |
| 134 | O-RING | 1 |
| 135 | SAFETY SCREW | 1 |
| 136 | LEFT &RIGHT MAGAZINE TUBE RIVETS | 4 |
| 137 | SHELL RELEASE PLATE SPRING | 2 |
| 138 | SHELL RELEASE PLATE SCREW FLAT WASHER | 2 |
| 139 | PISTOL GRIP SCREW SERRATED WASHER | 1 |
| 140 | TRIGGER GUARD SCREW SERRATED WASHER | 2 |
| 141 | MONOBLOCK BODY EXTRACTOR | 2 |
| 142 | MONOBLOCK BODY EXTRACTOR SPRING | 2 |
| 143 | MONOBLOCK BODY EXRACTOR PIN | 2 |
| 144 | LOADING PORT DOOR LOCK SLIDE | 2 |
| 145 | LOADING PORT DOOR LOCK SLIDE SPRING | 2 |
| 146 | LOADING PORT DOOR LOCK SLIDE SCREW | 2 |
| 148 | EXTENDED CHOKE TUBE CYLINDER SHORT | 1 |
| 149 | LASER / FLASHLIGHT SWITCH COVER | 1 |
| 150 | LOWER RECEIVER MAGAZINE TUBE LASER CAP | 1 |
| 151 | MAGAZINE CAP PIN | 1 |
| 154 | RED FLASHLIGHT UNIT | 1 |
| 155 | GREEN FLASHLIGHT UNIT | 1 |
| 163 | SHELL STOP RETAINING SCREW | 1 |
| 164 | LASER / FLASHLIGHT SWITCH HOLE PLUG | 2 |
| 165 | LASER / FLASHLIGHT TRIPLE SWITCH COVER | 1 |

53



54



55



56



1505 Cox Road
Cocoa FL 32926
Phone: 1-800-515-9983
Fax: 321-631-1169

WWW.KELTECWEAPONS.COM

SAFETY, INSTRUCTION and PAR

⚠ Warning: Read this manual caref

## TABLE OF CONTENTS

| | | |
|---|---|---|
| A. | Safety Information and Warnings | 2 |
| B. | Overview | 5 |
| | Description | 5 |
| | Nomenclature | 5 |
| | Specifications | 5 |
| | Ammunition | 6 |
| | Sling Mounting | 6 |
| C. | Operating Instructions | 7 |
| | Safety | 7 |
| | Loading Magazines | 7 |
| | Chambering from Magazine | 8 |
| | Manual Chamber Loading | 8 |
| | Firing | 8 |
| | Unloading | 10 |
| D. | Disassembly | 10 |
| | Removal of Grip Assembly | 13 |
| | Removal of the Stock | 14 |
| | Separation of the Barrel and Receiver Assemblies | 15 |
| E. | Assembly | 16 |
| | Joining of the Barrel and Receiver Assemblies | 16 |
| | Insertion of the Bolt | 18 |
| | Insertion of the Stock | 19 |
| | Attaching the Grip Assembly | 19 |
| F. | Cleaning and Maintenance | 20 |
| | Maintenance | 20 |
| | Lubrication | 20 |
| | Troubleshooting | 21 |
| G. | Exploded View and Parts List | 11 |
| H. | Service, Repair and Limited Lifetime Warranty | 22 |

REV 042814

1

## A.   SAFETY INFORMATION AND WARNINGS

**STATEMENT OF LIABILITY**
This firearm may be classified as a dangerous weapon and is surrendered by KEL-TEC CNC INDUSTRIES INC. with the understanding that the purchaser assumes all liability resulting from unsafe handling or any action that constitutes a violation of any applicable laws or regulations. Firearms can cause serious injury and death. **Safety must be the prime consideration of anyone who handles firearms. Always treat a firearm as though it were loaded. Always keep the muzzle pointed in a safe direction.** In owning a firearm, you are responsible for the firearm's safety and security. **Always secure firearms from children.**

 **READ THESE INSTRUCTIONS AND WARNINGS CAREFULLY, BE SURE YOU UNDERSTAND THESE INSTRUCTIONS AND WARNINGS BEFORE USING THIS FIREARM.**

This SAFETY, INSTRUCTION & PARTS MANUAL should always accompany this firearm and be transferred with it upon change of ownership or when the firearm is loaned or presented to another person. A copy of the SAFETY, INSTRUCTION & PARTS MANUAL is available FREE upon request and can also be downloaded from the internet at: http://www.keltecweapons.com

**READ AND CAREFULLY FOLLOW THESE WARNINGS AND INSTRUCTIONS**
These warnings and instructions are provided to assure the safe functioning of the firearm. Failure to heed these instructions may result in improper functioning and serious injury.

Kel-Tec™ firearms are designed to function reliably with proper care and knowledgeable use. Do not use your firearm unless you fully understand these instructions, and the safe operation of your firearm.

Only safe gun-handling habits will ensure the safe use of your firearm. This is your responsibility. Accidents are the result of violating the rules of safe gun handling noted below and common sense.

Before handling a firearm, understand its operation.

Never accept or pick up a firearm without checking the magazine and the chamber to assure the weapon is empty. Do not trust the extractor to clear the chamber; always look and feel.

Always make sure the **muzzle is pointed in a safe direction at all times**. Never point a firearm at anyone or anything you do not intend to shoot.

Ensure the barrel is free of obstructions prior to firing. Open the action and clear the firearm of all ammunition before checking the barrel of the **unloaded** firearm.

Keep your firearm unloaded when not in use.  Never keep a loaded firearm in the home or vehicle.  Never store a firearm with a cartridge in the chamber.  Never store firearms and ammunition together, keep them locked up and away from children.

Never touch the trigger when working the action.

Never alter any components of your firearm.

2

Never take medications, drugs, or alcohol when handling firearms.

Never load or unload a firearm without assuring the muzzle is pointed in a safe direction.

Never load a firearm except immediately before shooting.

## SAFE GUN HANDLING IS YOUR RESPONSIBILITY

 Discharging firearms in poorly ventilated areas, cleaning firearms, or handling ammunition may result in exposure to lead and other substances known to cause birth defects, reproductive harm, and other serious physical injury. Have adequate ventilation at all times. Wash hands thoroughly after exposure.

**Never discharge a firearm without proper shooting glasses and ear protection.** Never shoot at any water surface or any surface where a ricochet can occur.

Never shoot until you are sure of your backstop and what lies beyond it.

If the gun does not discharge after pulling the trigger, do not change the weapon's direction for at least 30 seconds; the weapon could be having a "hang fire", and the cartridge could go off when you do not expect it. After waiting 30 seconds, remove the magazine and remove the unfired case, while keeping the firearm pointed in a safe direction.

Always be aware of other people so that they cannot accidentally walk into the line of fire. When firing on a target range, be alert and follow the range officer's commands.  Never cross obstacles such as fences or streams with a loaded firearm.

**Do not allow a firearm to be used by individuals who do not understand its safe operation and the rules of safe gun handling.**

 **WARNING: After firing several rounds, the exterior metal parts of the firearm get VERY hot and can cause severe burns if touched.**

Be sure all accessories are compatible with the firearm and that the accessories do not interfere with safe operation of the firearm.

When transporting your firearm, be sure your firearm is unloaded and on SAFE.

This weapon passes Industry Standards for drop-test safety; this does not guarantee the weapon may not accidently discharge upon being dropped while loaded.

If you do not understand how to operate any of our products or have any questions about their safe handling, please write, call, or email us at:

**KEL-TEC CNC INDUSTRIES INC**
1505 Cox Road
Cocoa, FL 32926
**Telephone Number:** 321-631-0068
**Toll free:** 1-800-515-9983
**Hours:** M-F 9am-3pm EST (excluding holidays)
**Website:** http://www.keltecweapons.com
**Email:** customerservice@kel-tec-cnc.com

3

### B.   OVERVIEW

**Description**

The KSG" is a dual-magazine select-feed 12-gauge pump action shotgun. The bullpup dual-magazine select-feed design provides the operator with a more compact layout, increased total capacity, and the option to rapidly switch between two magazines of ammunition.

The KSG" features positive extraction and ejection, allowing it to be reliably fired in any shooting orientation. Loading and ejection are combined into a single port rearward of the grip assembly under the shotgun, enabling the KSG" to be fired from both the dominant and non-dominant side.

Two integral MIL-STD-1913 Picatinny rails, located above the barrel and on the forend, come standard with the KSG" for mounting accessories. Unloaded, the KSG" maintains a center of gravity over the grip assembly to facilitate ease of handling.

**Nomenclature**



**Figure B-1: Side-View**

**Specifications**

| Design Features | |
| --- | --- |
| Operating System | Pump Action |
| Gauge | 12 |
| Capacity | 6+6+1 dual magazines, 3" shells |
| Chamber | 12-gauge 3.00" (76 mm) |
| Barrel Length | 18.50" (470 mm) |
| Length of Pull | 13.0" (330 mm) |
| Forend Travel | 4.1" (104 mm) |
| Accessory Mount | MIL-STD-1913 Picatinny Rail |

| Dimensions and Weight | |
| --- | --- |
| Total Length | 26.1" (664mm) |
| Total Width | 2.2" (56 mm) |
| Total Height | 8.0" (204 mm) |
| Width of Grip | 1.2" (30 mm) |
| Width of Forend | 2.1" (54 mm) |
| Width of Stock | 2.1" (54 mm) |
| Weight | 6.9 lbs (3.1 kg) |

4

**Ammunition**

The KSG™ is chambered for 12-gauge 3" shells and may safely fire both lead and steel shot. Shells 2-3/4" and shorter are also safe to fire, but anything shorter than 2-3/4" should be thoroughly tested for reliable feeding and ejection. For reference, the chamber gauge and length is indicated on the grip of the shotgun.

 WARNING: ALWAYS USE SHELLS OF THE CORRECT GAUGE AND LENGTH OR SHORTER. DO NOT USE NON-STANDARD AMMUNITION OR SHELLS WITH PRESSURES EXCEEDING SAAMI STANDARDS. FAILURE TO FOLLOW THIS WARNING MAY RESULT IN SERIOUS INJURY OR DEATH AND DAMAGE TO YOUR FIREARM.

Only use commercially available US-manufactured ammunition that meets SAAMI established standards. Inspect your ammunition to make sure it is clean, dry, and in good condition. Never use non-standard, reloaded or damaged shells. Any other ammunition is considered non-standard and its use may void the warranty on this firearm.

Kel-Tec™ firearms are manufactured from high quality materials. They will provide a lifetime of service if properly maintained. However, all warranties, expressed or implied, are voided and Kel-Tec will not be liable for property damage or personal injury and consequential damages, if faulty, non-standard, or reloaded ammunition is used in any Kel-Tec™ firearm.

**Sling Mounting**

The KSG™ comes equipped with forward attachment points on the left and right sides of the barrel assembly as well as a single rear attachment slot in the stock.



**Figure B-2: KSG™ Equipped with Kel-Tec™ Sling**

The different sling attachment points on the KSG™ should be used to mount the included 1¼" wide nylon sling but will also accommodate aftermarket slings of the same width.

5

## C.   OPERATING INSTRUCTIONS

### Safety

The KSG™ features a cross-bolt safety located behind the trigger on the grip assembly. When the safety is activated, the cross-bolt blocks the sear from releasing and prevents the trigger from being pulled. Please note that the safety will not engage unless the hammer is cocked.

For right-handed users, the safety is generally pressed with the right thumb until a noticeable "click" is heard and the red letter "F" is visible on the safety. The safety is color coded and labeled to enhance visibility and hasten safety assessment.

          

White "S" for SAFE                Red "F" for FIRE

 **WARNING: NEVER TOTALLY RELY ON YOUR MECHANICAL SAFETY AS IT CAN FAIL OR UNINTENTIONALLY BE DISENGAGED. YOUR MECHANICAL SAFETY IS NOT A SUBSTITUTE FOR SAFE GUN HANDLING PRACTICES.**

### Loading Magazines

1.   Ensure your muzzle is pointed in a safe direction before loading.
2.   Engage the safety by ensuring the white "S" is visible.
3.   Ensure the forend is locked forward and not in the rearmost position.
4.   Place magazine selector to the positions shown in *Figure C-1* depending on desired loading configuration. The magazine selector indicates which magazine is selected for loading by "pointing" to the active magazine. For example: if the magazine selector is pointing left, the left magazine is available for loading. The magazine selector may also be placed in the middle position, which blocks both magazine tubes from loading and feeding.

  

**Figure C-1: Magazine Selector Orientations**

5.   With thumb on the base of the round, insert the round into the loading/ejection port and slide the round into the magazine using your thumb as shown in *Figure C-2*.

6

**ER_3990**



**Figure C-2: Loading a Shell into the Magazine Tube**

**Chambering from Magazine**

1.  Ensure the magazine selector is oriented to feed from the desired magazine tube.
2.  Press down on the action bar lock and maintain downward pressure to unlock forend.
3.  Cycle the forend fully rearward and then fully forward to chamber a round.

   **CAUTION: DO NOT HOLD THE FOREND BEHIND THE PICATINNY RAIL. DOING SO WILL SHORT STROKE THE ACTION AND PINCH YOUR HAND.**

 **Manual Chamber Loading**

The procedure for loading a shell directly into the chamber of the KSG™ is different than most other shotguns because of the combined loading and ejection port. To load a shell into the chamber of the   KSG™, use the following procedure as a guideline.

1.  Ensure your muzzle is pointed in a safe direction before loading.
2.  Engage the safety by ensuring the white "S" is visible.
3.  Press down the action bar lock to unlock forend.
4.  Slide the forend so that it is about a 1/2" from the rearmost position to prevent the lifters from elevating and blocking access to the chamber.
5.  Place shell in chamber and slide the forend forward to chamber inserted shell.

**Firing**

1.  Load a shell into the chamber of the KSG™ manually or from the magazine.
2.  Aim at the target, taking notice of the target's backdrop.
3.  Disengage the safety, taking notice of the red letter "F" that is visible on the safety.
4.  Place trigger finger into trigger guard.
5.  When the trigger is pressed, the KSG™ will fire. Cycle the forend to eject the empty case and feed a new round, if a loaded magazine tube is selected.

**Unloading**

1.  Ensure your muzzle is pointed in a safe direction before unloading.
2.  Ensure the forend is locked in the forward position.
3.  Engage the safety by ensuring the white "S" is visible.
4.  Press magazine selector to one side (either side).
5.  Rotate the KSG-331-CTG OUT down to release one or more shells in the selected magazine tube.  NOTE: Shells will eject with some force from the magazine tube.
6.  Magazine is empty when the white magazine follower is visible from the ejection port, as shown previously in *Figure C-1*.
7.  Switch the magazine selector to select the other magazine tube for unloading.
8.  Repeat steps 5-6.
9.  With the forend in its rearmost position, always visually and tactually check the chamber to confirm the firearm is unloaded.

7

ER_3991

**D.   DISASSEMBLY**

For regular maintenance of the KSG™, it will be necessary that you become familiar with its disassembly. The following sections should be followed in sequential order and continued as needed depending on desired maintenance.



Figure D-1: KSG™ General Disassembly

 WARNING: ALWAYS ENSURE THE KSG™ IS CLEAR OF ALL AMMUNITION BEFORE ATTEMPTING DISASSEMBLY. IF THE KSG™ HAS BEEN FIRED, WAIT A SUFFICIENT AMOUNT OF TIME FOR THE COMPONENTS TO COOL BEFORE ATTEMPTING DISASSEMBLY.

**Removal of Grip Assembly**

1.   Place magazine selector to the center position.
2.   Engage the safety by ensuring the white "S" is visible.
3.   Remove the rear assembly pins adjacent to the ejection port located on the grip assembly and place them in the assembly pin retaining holes as shown in *Figure D-2*.

 

Figure D-2: Place Rear Assembly Pins in Retaining Holes

4.   Remove the grip assembly by lifting the rear of the assembly directly upwards as shown in *Figure D-3*.

8



**Figure D-3: Lift Grip Assembly Directly Upwards**

**Removal of the Stock**

1.  Grip the stock as shown in *Figure D-4* and pull rearward to remove.



**Figure D-4: Pull Stock Rearward**

2.  Move the forend to its rearmost position to gain access to the bolt. The bolt should now be resting in the receiver of the KSG™ and can be easily removed by reaching in and lifting out the bolt as shown in *Figure D-5*.



**Figure D-5: Remove Bolt from Receiver**

9

# Kel-Tec KSG

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 118 | BARREL | 1 | 221 | HAMMER BAR | 2 | | |
| 135 | BARREL EXTENSION | 1 | 223 | ACTION LOCK | 1 | | |
| 136 | BARREL NUT | 1 | 224 | SEAR BAR | 1 | | |
| 137 | BARREL RING | 3 | 225 | SEAR | 1 | | |
| 138 | SIGHT BASE | 1 | 226R | HAMMER BAR PIN | 2 | 242 | TRIGGER SPRING | 1 |
| 139 | PUMP BUFFER | 1 | 227 | SEAR CATCH | 1 | 243 | SEAR SPRING | 1 |
| 140 | MUZZLE PLATE | 1 | 228 | MAG STOP ACTUATOR | 1 | 244 | SEAR SPRING GUIDE | 1 |
| 141 | M3-20 SOCKET HEAD | 1 | 230 | M4-6 BUTTON HEAD | 4 | 249 | CAPTOR SPRING | 1 |
| 142 | PICATINNY | 1 | 232 | M4-12 BUTTON HEAD | 2 | | |
| 146 | MAG BOLT | 2 | 234 | HAMMER SPRING | 2 | | |
| 148 | WAVY WASHER | 2 | 236 | M3-25 SOCKET HEAD | 1 | | |
| 154 | MAG BOLT RETAINER CLIP | 2 | | | | | |
| 170 | BOLT | 1 | | | | | |
| 172 | EXTRACTOR | 1 | | | | | |
| 173 | HEAT SHIELD | 1 | | | | | |
| 174 | BOLT LOCK | 1 | | | | | |
| 175 | FIRING PIN PIN | 1 | | | | | |
| 176 | FIRING PIN | 1 | | | | | |
| 177 | EXTRACTOR AXIS | 1 | | | | | |
| 178 | EXTRACTOR SPRING | 1 | | | | | |
| 179 | BOLT LOCK PIN | 1 | | | | | |
| 185 | BOLT CARRIER | 1 | | | | | |
| 209 | FRAME PIN | 2 | | | | | |

| | | |
|---|---|---|
| 210 | M3-10 SOCKET HEAD | 1 |
| 211 | M3-16 SOCKET HEAD | 17 |
| 212 | M3 NUT | 19 |
| 214 | GRIP RIGHT | 1 |
| 215 | GRIP LEFT | 1 |
| 216 | TRIGGER | 1 |
| 218 | FOREND RIGHT | 1 |
| 219 | FOREND LEFT | 1 |
| 220 | HAMMER | 1 |

| | | |
|---|---|---|
| 237 | M3-35 SOCKET HEAD | 1 |
| 238 | SAFETY | 1 |
| 240 | SAFETY SNAP | 1 |
| 241 | ACTION BAR SPRING | 1 |



**NOTE:**
Exploded view of weapon is for reference only.
Design is subject to change without notice.

**Separation of the Barrel and Receiver Assemblies**

The barrel assembly is secured to the receiver assembly via two slotted magazine bolts located on the front of the KSG™. To remove these assemblies, the magazine bolts must be unscrewed using an object with a flat edge such as a quarter or the rim of a spent shell casing.

1. Using your tool of choice, unscrew the magazine bolts at the same rate alternating between the two bolts a half-turn at a time. This procedure is illustrated in *Figure D-6*.

  

**Figure D-6: Unscrew Magazine Bolts with Alternating 1/2 Turns**

2. The KSG-334-CTG Stop Actuator must be pressed down for clearance as the barrel and receiver assemblies are separated, as shown in *Figures D-7 & D-8*.

   

**Figure D-7: Press down CTG Stop Actuator and Slide Forend Away**

3. With the KSG™ upside-down, simultaneously pull the barrel assembly and receiver assembly linearly apart as shown in *Figure D-9*.



**Figure D-9: Pull Barrel Assembly Apart from Receiver Assembly**

CAUTION:   FURTHER DISASSEMBLY SHOULD ONLY BE PERFORMED BY A CERTIFIED GUNSMITH OR KEL-TEC CNC INC. ATTEMPTING FURTHER DISASSEMBLY COULD VOID YOUR WARRANTY.

12

**E.   ASSEMBLY**

**Joining of the Barrel and Receiver Assemblies**

1.   Ensure the bolt carrier is properly placed into the forend as shown in *Figure E-1*.



**Figure E-1: Ensure Bolt Carrier is Locked into Forend**

2.   Orient the barrel and receiver assemblies as shown in *Figure E-2* and push the two units together, ensuring the magazine bolt screw threads seat into the magazine plug screw threads.



**Figure E-2: Join Barrel Assembly to Receiver Assembly**

3.   When joining the Barrel and Receiver Assemblies, the CTG Stop Actuator may need to be pressed down for clearance under the Mag Stop Actuator. This process is illustrated in *Figure E-3*.

13




**Figure E-3: Slide Forend over CTG Stop Actuator to Secure Assemblies**

4. Using your tool of choice, screw the magazine bolts into the magazine plugs at the same rate, alternating between the two bolts a half-turn at a time until both bolts firmly resist further tightening. This must be done because the bolts screw into the same piece and will prematurely bind if one bolt is tightened faster than the other.

5. To ensure the two assemblies are properly joined, visually check that no gap exists between the barrel extension and receiver, as shown in *Figure E-4*. Additionally, attempt to pull the barrel and receiver assemblies apart and press them together, checking for any travel. If there is any travel or gap present, the magazine bolts are not fully tightened and steps 1-2 should be repeated.





Incorrect: Gap Present          Correct: No Gap Present

**Figure E-4: Ensure No Gap Exists Between Assemblies**

14

**Insertion of the Bolt**

1. Cycle the forend completely rearward before attempting to insert the bolt.

2. Insert the bolt onto the bolt carrier as shown in *Figure E-5*, first inserting the bolt on its side before rotating 90° to its upright position. The rear lip of the bolt should easily fit into the square cutout of the bolt carrier.

  

**Figure E-5: Insert Bolt onto Bolt Carrier Sideways and Rotate 90°**

3. Ensure the bolt is in the proper position by pushing the bolt completely forward. You can confirm this by checking to see if there is a gap between the mating surfaces shown in *Figure E-6*, which is composed of the bolt lip and bolt carrier cutout.

4. Move the forend completely forward to lock the bolt into place. You should hear a definitive "click" indicating the bolt is properly locking with the barrel extension.



MATING
SURFACES

**Figure E-6: Push Bolt Fully Forward on Bolt Carrier**

15

**Insertion of the Stock**

1. Ensure the forend is completely forward before attempting to insert the stock.
2. Insert the stock as shown in *Figure E-7* and ensure the lifter axes are in place. It may be helpful to lift up on the firing pin during assembly.

 

**Figure E-7: Lift Firing Pin while Inserting Stock**

**Attaching the Grip Assembly**

1. Place magazine selector to the center position.
2. Engage the safety by ensuring the white "S" is visible.
3. As shown in *Figure E-8*, ensure the forward part of the grip assembly is inserted under the grip catch and rotate the grip down.

 

**Figure E-8: Move Forend Rearward and Insert Grip Assembly**

5. Remove the assembly pins from their pin retaining holes and insert them into the assembly pin holes located on the grip assembly.
6. After the KSG™ is fully assembled, check the firearm for proper functioning by pressing down the action bar lock and cycling the action.

16

F.   CLEANING AND MAINTENANCE

**Maintenance**

Your KSG™ is a precision instrument and will provide a lifetime of faithful service if it is properly cleaned and maintained. It is recommended that you clean your KSG™ after every shooting session or more frequently if needed. Be sure to unload your KSG™ *(see Unloading on pg. 8)* before performing any cleaning or maintenance procedures.

CAUTION:   NEVER USE AUTOMOTIVE BRAKE CLEANER OR ANY SOLVENT NOT DESIGNED FOR POLYMER FIREARMS. DOING SO MAY DAMAGE THE FIREARM AND VOID YOUR WARRANTY.

1.   Disassemble the KSG™ *(see Disassembly on pg. 9)*.
2.   Thoroughly clean all exterior sides of the bolt and receiver with solvent and brush.
3.   Brush the barrel bore and chamber with a good powder removing solvent and bore brush. Wipe the areas clean with patches or a swab.
4.   Using a small brush dipped in solvent, remove all deposits from around the breech of the barrel and barrel extension, as well as all adjacent areas that have been subjected to powder or primer residue.
5.   Clean the magazine tubes with solvent and brush if needed.


**Lubrication**

After cleaning the entire gun, use a cloth to apply a light coating of high quality gun oil to all internal and exterior metal surfaces and wipe clean.

Manually cycle the action back and forth to check the function of the firearm. If any parts are damaged or badly worn or the firearm does not work correctly, the firearm should not be fired and should be returned to Kel-Tec for servicing immediately.

 WARNING: DISCHARGING A FIREARM WITH OIL, GREASE, OR ANY OTHER MATERIAL EVEN PARTIALLY OBSTRUCTING THE BORE COULD RESULT IN SERIOUS INJURY OR DEATH AND SERIOUS DAMAGE TO YOUR FIREARM.

17

**Troubleshooting**

Proper functioning of your firearm is directly related to proper maintenance and care as well as the quality of ammunition you use. If in the unlikely circumstance your KSG™ malfunctions, we have included a list of several suggested remedies below.

If the KSG™ Fails to Fire:     You may be experiencing a misfire and should point the barrel of the KSG™ in a safe direction, engage the safety by ensuring the white "S" is visible, and wait at least 30 seconds before fully cycling the action and ejecting the round.

Otherwise, ensure the action is fully forward. The KSG™ is designed to prohibit firing out of battery to protect the user.

Double Feed:     A double feed may occur if there is a failure to extract. Engage the KSG™'s safety and place the magazine selector to the middle non-feed position.

Rotate the KSG™ to expose the ejection port and visually examine the malfunction. Depending on the orientation of the rounds, it is usually easiest to push the double-fed shell back into the magazine and cycle the action to clear the shell.

Otherwise, you must manually reach into the ejection port and remove the interfering shell by rotating it around the lifters as shown below.



Figure F-1: Clear Double Feed by Rotating Shell Around Lifters

Magazine Selector Jammed:     The magazine selector will bind if a round is not fully loaded into the magazine tubes. Ensure all shells are completely loaded into the magazines.

18

**H.   SERVICE, REPAIR, AND WARRANTY**

This warranty is granted by Kel-Tec CNC Industries, Inc. P.O. Box 236009, Cocoa, FL 32923. This lifetime warranty is effective from the date of purchase and applies to the original owner of a Kel-Tec™ firearm.

Kel-Tec™ firearms are warranted to be free from defects in material and workmanship. Any such defects of which Kel-Tec receives written notice by the original owner, will be remedied by Kel-Tec without charge within a reasonable time after such notification and delivery of the product as provided below.

If your Kel-Tec™ firearm should ever require service or repair please perform the following to ensure fast and reliable service:

1) Include a copy of a bill of sale in the owner's name or a copy of ATF Form 4473 indicating date of purchase.
2) Include a written copy of the model and serial number of the firearm and a description of the difficulty experienced and service desired.
3) Include your name, desired return address, and a number where we can reach you.
4) Also include a written list of any accessories in your shipment – Kel-Tec will not be responsible for any item that was not listed and confirmed by Kel-Tec.
5) Be sure the firearm is completely unloaded and the shipping container is free of ammunition. It is against postal and commercial regulations to ship ammunition.
6) Securely package your Kel-Tec™ firearm and ship (transportation charges pre-paid) to:

   Kel-Tec CNC, Inc
   Service Department
   1505 Cox Road
   Cocoa, FL 32926

It is recommended that shipments be insured by the owner, since Kel-Tec will accept no responsibility for loss or damage in transit.

Transportation and insurance charges for return to owner will be paid by Kel-Tec if the claim is covered by the warranty.

Under no circumstances shall Kel-Tec be responsible for incidental or consequential damages with respect to economic loss or injury or property damage, whether as a result of breach of express or implied warranty, negligence or otherwise. Some States do not allow the exclusion or limitation of incidental or consequential damages, so the above limitation or exclusion may not apply to you.

Kel-Tec will not be responsible for defects resulting from careless handling, unauthorized or unsafe adjustments or modifications, non-standard, defective, or improper ammunition, corrosion, neglect, fire damage, water damage, theft, abuse, ordinary wear and tear, or unreasonable use.

19



OWNER'S MANUAL

# TABLE OF CONTENTS

A. Safety Information and Warnings.................................................................. 3

**B. Overview**
Description ....................................................................................... 6
Nomenclature .................................................................................. 6
Ammunition ..................................................................................... 7
Sling Mounting................................................................................. 7

**C. Operating Instructions**
Safety............................................................................................... 8
Loading Magazines.......................................................................... 8
Chambering from Magazine............................................................. 9
Manual Chamber Loading................................................................ 9
Firing................................................................................................ 10
Unloading......................................................................................... 10

**D. Disassembly**
Loosen Stock Recoil Assembly........................................................ 11
Removal of Grip Assembly.......................................................... 12
Removal of the Bolts........................................................................ 13

**E. Assembly**
Insertion of the Bolt......................................................................... 15
Lower Grip Attachment ………………...........................……………………. 16

**F. Choke Tubes**
Removal and Installation of choke tubes ........................................ 17

**G. Cleaning and Maintenance**
Maintenance .................................................................................... 18
Lubrication ...................................................................................... 18

**H. Troubleshooting**
Troubleshooting ............................................................................... 19

**I. Service, Repair and Warranty**................................................................20
Parts Schematic ...............................................................................22

2      DO NOT PUT HAND IN FRONT OF MUZZLE

## A. SAFETY INFORMATION AND WARNINGS
## STATEMENT OF LIABILITY

This firearm may be classified as a dangerous weapon and is surrendered by
Standard Mfg. with the understanding that the purchaser assumes all liability
resulting from unsafe handling or any action that constitutes a violation of any
applicable laws or regulations. Firearms can cause serious injury and death.
Safety must be the prime consideration of anyone who handles firearms.

**READ THESE INSTRUCTIONS AND WARNINGS CAREFULLY, BE
SURE YOU UNDERSTAND THESE INSTRUCTIONS AND WARNINGS
BEFORE USING THIS FIREARM.**

**DO NOT PUT HAND IN FRONT OF MUZZLE.**

This manual should always accompany this firearm and be transferred with it
upon change of ownership or when the firearm is loaned or presented to another
person. A copy of the MANUAL is available FREE upon request and can also be
downloaded from the internet at: http://www.standardmfgllc.com.

Each DP-12 also has a QR
code that can be scanned
with a smart phone to bring
you to an on-line copy of the
manual.



ALWAYS LEAVE GUN IN OPEN BOLT POSITION        3

## READ AND CAREFULLY FOLLOW THESE WARNINGS AND INSTRUCTIONS

This Instruction Manual is designed to assist you in learning how to use and care for your **DP-12** properly. Please contact us if you have any questions about it. Failure to follow these instructions may result in improper functioning and serious injury or death.

Only when you are certain you fully understand the Manual and can properly carry out its instructions should you practice loading, etc. with live ammunition. If you have any doubts about your ability to handle or use a particular type of gun safely, then you should seek supervised instruction. Such personalized instruction is often available from gun dealers, gun clubs or police departments. If  none of these sources can help you, write to the National Rifle Association, 11250 Waples Mill Road, Fairfax, VA 22030-7400. They will assist you.

The person possessing a gun has a full-time job. You cannot guess; you cannot forget. You must know how to use your firearm safely. Do not use any firearm without having a complete understanding of its particular characteristics and safe use.

Remember: There is no such thing as a foolproof gun.

- Only safe gun-handling habits will ensure the safe use of your firearm. This is your responsibility. Accidents are the result of violating the rules of safe gun handling noted below and common sense.
- Before handling a firearm, understand its operation.
- Never accept or pick up a firearm without checking the magazine and the chambers to assure the weapon is empty. Do not trust the extractor to clear the chambers, always look and feel to insure both chambers are empty.
- Always make sure the muzzle is pointed in a safe direction at all times.
- Never point a firearm at anyone or anything you do not intend to shoot.
- Ensure the barrel is free of obstructions prior to firing. Open the action and clear the firearm of all ammunition before checking the barrel of the unloaded firearm.
- Keep your firearm unloaded when not in use. Never keep a loaded firearm in the home or vehicle. Never store a firearm with a cartridge in the chamber.
- Never store firearms and ammunition together, keep them locked up and away from children. Use locking accessories for prevention.
- Never touch the trigger when working the action.
- Never alter any components of your firearm.
- Never take medications, drugs, or alcohol when handling firearms.
- Never load or unload a firearm without assuring the muzzle is pointed in a safe direction.
- Never load a firearm except immediately before shooting.

4      DO NOT PUT HAND IN FRONT OF MUZZLE

**SAFE GUN HANDLING IS YOUR RESPONSIBILITY**

Discharging firearms in poorly ventilated areas, cleaning firearms, or handling ammunition may result in exposure to lead and other substances known to cause birth defects, reproductive harm, and other serious physical injury. Have adequate ventilation at all times. Wash hands thoroughly after exposure.
Never discharge a firearm without proper shooting glasses and ear protection.
Never shoot at any water surface or any surface where a ricochet can occur.
Never shoot until you are sure of your backstop and what lies beyond it.
If the gun does not discharge after pulling the trigger, do not change its direction for at least 30 seconds, you could be having a "hang fire", and the cartridge could go off when you do not expect it. After waiting 30 seconds open the action, remove all ammunition from the magazine and remove the unfired cases from the chambers, while keeping the firearm pointed in a safe direction. Always be aware of other people so that they cannot accidentally walk into the line of fire.
When firing on a target range, be alert and follow the range officer's commands.
Never cross obstacles such as fences or streams with a loaded firearm.
Do not allow a firearm to be used by individuals who do not understand its safe operation and the rules of safe gun handling.

**WARNING:** After firing several rounds, the exterior metal parts of the firearm and barrels get VERY hot and can cause severe burns if touched.
Be sure all accessories are compatible with the firearm and that the accessories do not interfere with safe operation of the firearm.
When transporting your firearm, be sure your firearm is unloaded and on SAFE.

If you do not understand how to operate your DP-12 or have any questions about their safe handling, please write, call, or email us at:
Standard Mfg.
100 Burritt Street
New Britain, CT 06053

Website: http://standardmfgllc.com
Email: info@standardmfgllc.com

ALWAYS LEAVE GUN IN OPEN BOLT POSITION        5

**B. OVERVIEW**
**Description**

The DP-12 is a dual-magazine 12-gauge pump action shotgun. The bullpup dual magazine feed design provides the operator with a more compact layout, increased total capacity, and with no requirement to switch between two magazines of ammunition.

The DP-12 features positive extraction and ejection, allowing it to be reliably fired in any shooting orientation. Loading and ejection are combined into a single port rearward of the grip assembly under the shotgun, enabling the DP-12 to be fired from both the dominant and non-dominant side.

The DP-12 has an integral MIL-STD-1913 Picatinny rail, located above the barrel and on the forend, that come standard with the DP-12 for mounting accessories. Unloaded, the DP-12 maintains a center of gravity over the grip assembly to facilitate ease of handling.

**Nomenclature**



6     DO NOT PUT HAND IN FRONT OF MUZZLE

**Ammunition**

The DP-12 is chambered for 12-gauge 3" shells and may safely fire both lead and steel shot. Shells 2-3/4" and shorter are also safe to fire, but anything shorter than 2-3/4" should be thoroughly tested for reliable feeding and ejection. For reference, the chamber gauge and length is indicated on the right side of the receiver of the shotgun.

**WARNING: ALWAYS USE SHELLS OF THE CORRECT GAUGE AND LENGTH OR SHORTER. DO NOT USE NON-STANDARD AMMUNITION OR SHELLS WITH PRESSURES EXCEEDING SAAMI STANDARDS. FAILURE TO FOLLOW THIS WARNING MAY RESULT IN SERIOUS INJURY OR DEATH AND DAMAGE TO YOUR FIREARM.  FAILURE TO FOLLOW THIS WILL VOID WARRANTY.**

Only use commercially available US-manufactured ammunition that meets SAAMI established standards. Inspect your ammunition to make sure it is clean, dry, and in good condition. Never use non-standard, reloaded or damaged shells. Any other ammunition is considered non-standard and its use may void the warranty on this firearm. Standard Mfg. firearms are manufactured from high quality materials. They will provide a lifetime of service if properly maintained. However, all warranties, expressed or implied, are voided and Standard Mfg. will not be liable for property damage or personal injury and consequential damages, if faulty, non-standard, or reloaded ammunition is used in any Standard Mfg. firearm.

**Sling Mounting**

The DP-12 comes equipped with forward attachment points on the left and right sides of the barrel assembly as well as multiple rear attachment capabilities in the rear of the receiver.

The different sling attachment points on the DP-12 can be used to mount a 1." wide nylon sling.



ALWAYS LEAVE GUN IN OPEN BOLT POSITION          7

ER_4009

## C. OPERATING INSTRUCTIONS
### Safety



The DP-12 features an AR type rotary safety located behind and above the trigger on the grip assembly. When the safety is activated, it blocks the sear from releasing and prevents the trigger from being pulled. Please note that the safety will not engage unless the hammer is cocked. The safety is rotated with the right or left thumb until a click is heard and the pointer selects the desired mode "SAFE" or "FIRE".

**WARNING: NEVER TOTALLY RELY ON YOUR MECHANICAL SAFETY AS IT CAN FAIL OR UNINTENTIONALLY BE DISENGAGED. YOUR MECHANICAL SAFETY IS NOT A SUBSTITUTE FOR SAFE GUN HANDLING PRACTICES.**

### Loading Magazines

1. Ensure your muzzle is pointed in a safe direction before loading.
2. Engage the safety by ensuring the pointer is selecting the "SAFE" position.
3. Ensure the forend is not in the rearmost position. If so, move the forend and slide assembly forward. Slide the action closed with chambers empty so that the bolt sled will aid in locating the ammunition.
4. With fingers on the base of the round, insert the round into the loading/ejection port and slide the round into the magazine using your fingers as shown in Figure C-1. The rounds should slide under and should be held in place by the magazine hooks.
5. The magazine hooks must be pulled up to manually release shells from the magazine tubes.



Figure C-1: Loading Shells into the Magazine Tubes

Magazines can be filled simultaneously by using two fingers while the firearm is stable upside down and pointed in a safe direction.

8        DO NOT PUT HAND IN FRONT OF MUZZLE

**Chambering from Magazine**
1. The magazines may be filled to capacity with 7  2 3/4" shotshells in each tube, less rounds may be used, if desired.
2. Pull down the action bar release on the trigger guard and maintain downward pressure to unlock forend.  See Figure C-2.
3. Actuate the forend fully rearward and then fully forward to chamber two rounds from the magazine tubes, one in each barrel.
4. The gun is ready to fire with the "SAFETY" on.  One round may now be placed into each of the magazine tubes to replace the 2 that have been chambered.

**CAUTION: DO NOT HOLD THE FOREND BEHIND THE PICATINNY RAIL. DOING SO WILL SHORT STROKE THE ACTION AND PINCH YOUR HAND.**



Figure C-2: Action bar release

**Manual Chamber Loading**
The procedure for loading a shell directly into the chamber of the DP-12 is different than most other shotguns because of the combined loading and ejection port. To load a shell into the chamber of the DP-12, use the following procedure as a guideline.
1. Ensure your muzzle is pointed in a safe direction before loading.
2. Engage the safety by ensuring the pointer is selecting "SAFE".
3. Pull down the action bar lock and maintain downward pressure to unlock forend.
4. Actuate the forend so that it is about a 1/2" from the rearmost position.  Inspect that the shell lifters are down against the top of the receiver and are not blocking access to the chamber.
5. Place a shell or 2 shells in chamber and cycle the action forward to chamber the inserted shells.

**ALWAYS LEAVE GUN IN OPEN BOLT POSITION**     9

**Firing**

1. Load a shell or two shells into the chamber of the DP-12 manually or from the magazine, as instructed above.
2. Aim at the target, taking notice of the target's backdrop.
3. Disengage the safety, rotating it so the pointer selects "FIRE".
4. Place trigger finger into trigger guard.
5. When the trigger is depressed the DP-12 will fire the right barrel. Release the trigger and depress again to fire the left barrel. Cycle the action to eject the empty cases and feed two new rounds from the loaded magazine tube into the chambers.

**IF YOU DO NOT RELEASE THE TRIGGER AFTER FIRING THE FIRST ROUND THE SECOND SEAR ENGAGEMENT WILL NOT SETUP**

**Unloading**

1. Ensure your muzzle is pointed in a safe direction before unloading.
2. Engage the safety by rotating the pointer to "SAFE".
3. **ENSURE THAT ALL FINGERS ARE CLEAR OF THE TRIGGER.**
4. Pull down the action bar lock and maintain downward pressure to unlock forend.
5. Cycle action back and forth repeatedly using the forend, loading and extracting live ammunition until the magazine followers are visible and the chambers are empty.
6. When the DP-12 is fully unloaded both magazine followers should be visible from the ejection port and the chamber should be visibly empty.
7. With the forend in its rearmost position, always visually and tactually check the chamber to confirm the firearm is unloaded.
8. To keep the firearm safe, keep action open to the rearward position and insert the locking bracket in front of the forend between the barrels and the magazine tubes. Use the supplied padlock to prevent child access.
9. The rounds in the magazine tubes may be removed manually by lifting the magazine tube hooks. This cannot be done with the forend assembly and bolts at their rearward position. Move the forend assembly forward so the lifters fall to the inside top of the receiver. Pull up on the magazine release hooks to release contained rounds. Always return forend assembly to the rearmost position and inspect that the chambers are empty, both visually and tactually.

10        DO NOT PUT HAND IN FRONT OF MUZZLE

## D. DISASSEMBLY

For regular maintenance of the DP-12 only cleaning and lubricating will be necessary. In order to remove debris or thoroughly clean and lubricate the action, it will be necessary that you become familiar with its disassembly. The following sections should be followed in sequential order and continued as needed depending on desired maintenance.

**WARNING: ALWAYS ENSURE THE DP-12 IS CLEAR OF ALL AMMUNITION BEFORE ATTEMPTING DISASSEMBLY. IF THE DP-12 HAS BEEN FIRED, WAIT A SUFFICIENT AMOUNT OF TIME FOR THE COMPONENTS TO COOL BEFORE ATTEMPTING DISASSEMBLY.**

**Loosen Stock Recoil Assembly**

1. Ensure that the firearm chambers and magazine tubes are completely empty and the muzzle is pointed in a safe direction.
2. Inspect that safety is selecting "SAFE."
3. Access the shoulder screws through the large holes in the recoil pad with an allen wrench and remove the recoil pad assembly with springs. See Figure D-1.



Figure D-1: Removal of recoil pad assembly

4. Loosen the socket head cap screws in the recoil pad shroud at least 1 1/2 turns. See Figure D-2.



Figure D-2: Loosening of socket head cap screws

ALWAYS LEAVE GUN IN OPEN BOLT POSITION          11

**Removal of Grip Assembly**

1. Slide forend assembly back to open the action and inspect that chambers and magazines are empty.

2. Inspect pointer is selecting "SAFE" mode.

3. Remove the rear assembly pin located at the rear of the receiver just in front of the recoil pad shroud. See Figure D-3.

4. On each side of the firearm remove the socket screws at the front of the receiver just below the magazine tubes. See Figure D-4.

5. Adjust the position of the forend rearward so that the front socket screw of the lower grip assembly can be accessed through the hole in the forend just in front of the lower 3 slots in the forend. Loosen and remove the screw completely. See Figures D-5 and D-6.



Figure D-3: Removal of rear assembly pin



Figure D-4: Remove socket screws



Figure D-5: Loosen and remove screws



Figure D-6: Remove screws

6. Remove the grip assembly by lifting the rear of the assembly sliding angularly against the back of the receiver as shown in Figure D-7.



Figure D-7: Remove grip assembly

12      DO NOT PUT HAND IN FRONT OF MUZZLE

7. It is best to slide the forend assembly forward. Begin removing the assembly by rocking the front of the grip assembly away from the magazine tubes slightly. Then slide the grip assembly away at an angle parallel to the rear of the receiver. Return screws and pin to their original locations. See Figure D-7 and D-8.



Figure D-8: Pull rear away from aluminum action.

8. Grip the lower assembly as shown in Figure D-8 and pull front up <u>slightly</u>.

**Removal of the Bolts**

1. With the grip assembly removed the bolt retainer plate may be removed to access the bolt sled and bolts. Remove the flat head socket screws on each side (See Figure D-9) of the receiver to the rear of the irregular "U" shaped notch in the receiver bottom. Slide the black anodized bolt retainer plate approximately 1/4" forward so that its rear corners are free from the notches in the sides of the receiver. Lift directly up and out of the receiver. See Figure D-10.



Figure D-9: Remove socket screws (both sides)



Figure D-10: Slide the retainer plate forward and lift up and out.

2. The bolt and bolt sled should now be resting in the receiver of the DP-12 and can be removed by reaching in and lifting out the bolt sled as shown in Figure D-11.

Figure D-11: The bolt and bolt sled resting in the receiver.



**ALWAYS LEAVE GUN IN OPEN BOLT POSITION**       13

3. With the bolt retainer plate out, slide forend assembly to rear position. Then slide the forend assembly 1/2" to 5/8" forward so that you can see the rear outer corners clear in front of the trigger retainer plate notch. The bolt sled can then be lifted straight up through widest opening in the receiver, See Figure D-12.



Figure D-12: Remove bolt sled

**DO NOT TILT WHILE LIFTING BOLT SLED OUT**



4. The 2 separate bolts may then be lifted out of the receiver. To reinstall bolts note that they must be positioned so that the bolt faces are approximately 5/8" forward of the front of the bolt sled at the sled entry and egress locations. The slide arm assembly must also be positioned so the notches engage the bolt sled correctly(See Figure D-11).  See Figure D-13.



Figure D-13: Remove Exposed Bolt from Receiver Note that the slidearm bumps are in their notches in the bolt sled.

**CAUTION: FURTHER DISASSEMBLY SHOULD ONLY BE PERFORMED BY A CERTIFIED GUNSMITH OR STANDARD MFG. ATTEMPTING FURTHER DISASSEMBLY COULD VOID YOUR WARRANTY.**

14      **DO NOT PUT HAND IN FRONT OF MUZZLE**

## E. ASSEMBLY
### Insertion of the Bolts

1. Cycle the forend completely rearward before attempting to insert the bolts.
2. Insert the bolts rounded side down against the inside top of the receiver with the extractor hooks up towards bottom of the receiver and forward towards the barrels. Position the bolts side by side approximately 5/8" forward of their rearward position. The rear of the extractor hooks should be slightly behind the front edge of the cutout in the receiver for installing and extracting the bolt retainer plate and bolt sled. This cutout jog is in the center of the "U" shaped cutouts in the sides of the receiver for the hammer pivot.
2. Align the notch in the outer forend slide bars so the front edge of the notch is even with the rear of the ejector hooks. See Figure D-13. Hold the bolt sled so the lock bumps are down and the 4 thin legs are rearward, the 2 smooth shallow channels facing towards you. Lower the bolt sled down through the receiver cutout; the sled must be held horizontally so that its sides slide against the inner walls of the cutout in the receiver. See Figure E-2. The slide arm assembly might need to be moved slightly back and forth so that the 3/8" cutout in the sides of the bolt sled capture the rear bumps on the outer slide arms. See Figure E-3. The lock bumps of the sled should fall into the bolts and then moving the forend assembly back and forth should move both bolts and sled back and forth for the full travel. Slide the forend assembly forward so that the sled is captured in the side slots of the receiver.



Figure E-1: Align the cutout



Figure E-2: Lower the bolt sled



Figure E-3: Move back and forth to capture bumps on the slide arms

**ALWAYS LEAVE GUN IN OPEN BOLT POSITION**          15

3. Hold the bolt retainer plate so the large rectangular bump with threaded holes are facing you and positioned forward towards the barrels. Slide the bolt retainer plate down through the cutout in the receiver just behind the "U" shaped cutouts in the receiver sides. See Figure E-4.

Figure E-4: Slide the bolt retainer plate down through the cutout



Move the bolt retaining plate down and then rearward so that the rear outside corners enter the 1/8" horizontal slots in the receiver sides. The threaded holes should then align with the counter sink holes in the sides of the receiver. Install the #5-40 flat head screws in each side. See Figure E-5



Figure E-5: Install the flat head screws.

**LOWER GRIP ATTACHMENT**

1. The hammers must be pulled rearward and cocked before installing lower grip assembly. The forend assembly must be forward and bolts closed in breech.
2. Carry out steps 8 through 3 in D. Disassembly: Removal of Lower Grip Assembly.

16      DO NOT PUT HAND IN FRONT OF MUZZLE

**F. CHOKE TUBES**

The DP-12 comes with 2 choke tubes threaded into the muzzle end of each barrel. It is imperative that they be removed and cleaned regularly.

**BEFORE REMOVAL OR INSTALLATION OF CHOKE TUBES, MAKE SURE THE FIREARM IS UNLOADED AND THE MUZZLE IS POINTED IN A SAFE DIRECTION.**

**Removal of Choke Tubes**

1. To change or remove the choke tubes, find the wrench that was supplied.
2. Align either stepped end of the tool with the notches in the choke tube as shown in Figure F-1. Turn counter clockwise.



Figure F-1: Turn counter clockwise to remove choke tubes.

**Installing Choke Tubes**

1. Start new choke tubes into the muzzle with the threaded end entering the barrel first and the 4 notches pointing away from the barrel.
2. Turn clockwise, starting threads by hand.
3. Use supplied tool to tighten.

ALWAYS LEAVE GUN IN OPEN BOLT POSITION     17

## G. CLEANING AND MAINTENANCE
### Maintenance

Your DP-12 is a precision instrument and will provide a lifetime of faithful service if it is properly cleaned and maintained. It is recommended that you clean your DP-12 after every shooting session or more frequently if needed. Be sure to unload your DP-12 (see Unloading on pg. 10) before performing any cleaning or maintenance procedures.

**CAUTION: NEVER USE AUTOMOTIVE BRAKE CLEANER OR ANY SOLVENT NOT DESIGNED FOR POLYMER FIREARMS. DOING SO MAY DAMAGE THE FIREARM AND VOID YOUR WARRANTY.**

1. Thoroughly clean all exterior sides of the bolt and receiver with solvent and brush.
2. Brush the barrel bore and chamber with a good powder removing solvent and bore brush. Wipe the areas clean with patches or a swab.
3. Using a small brush dipped in solvent, remove all deposits from around the breech of the barrel and barrel extension, as well as all adjacent areas that have been subjected to powder or primer residue.
4. Clean the magazine tubes with solvent and brush if needed.

### Lubrication

After cleaning the entire gun, use a cloth to apply a light coating of high quality gun oil to all internal and exterior metal surfaces and wipe clean. If the need arises to lubricate the grip assembly, do so through the top of the assembly. Manually cycle the action back and forth to check the function of the firearm. If any parts are damaged or badly worn or the firearm does not work correctly the firearm should not be fired and should be returned to Standard Mfg. for servicing immediately.

**WARNING: DISCHARGING A FIREARM WITH OIL, GREASE, OR ANY OTHER MATERIAL EVEN PARTIALLY OBSTRUCTING THE BORE COULD RESULT IN SERIOUS INJURY OR DEATH AND SERIOUS DAMAGE TO YOUR FIREARM.**

18      DO NOT PUT HAND IN FRONT OF MUZZLE

**H. TROUBLESHOOTING**

Proper functioning of your firearm is directly related to proper maintenance and care as well as the quality of ammunition you use. If in the unlikely circumstance your DP-12 malfunctions, we have included a list of several suggested remedies below.

If the DP-12 Fails to Fire: You may be experiencing a misfire and should point the barrel of the DP-12 in a safe direction, engage the safety by ensuring the pointer is selecting "SAFE", and wait at least 30 seconds before fully cycling the action and ejecting the round. Otherwise, ensure the action is fully forward. The DP-12 is designed to prohibit firing out of battery to protect the user.

Double Feed: A double feed may occur if there is a failure to extract.

Rotate the DP-12 to expose the ejection port and visually examine the malfunction. Depending on the orientation of the rounds, it is usually easiest to push the double-fed shell back into the magazine and cycle the action to clear the shell.
Otherwise, you must manually reach into the ejection port and remove the interfering shell by rotating it around the shell lifters as shown below.



Figure F-1: Clear Double Feed by Rotating Shell Around Lifters

Magazine tube shell hooks will not operate with action in its rearward position. Move the forend assembly forward and raise hooks to empty the magazine tubes.

**ALWAYS LEAVE GUN IN OPEN BOLT POSITION**      19

## I. SERVICE, REPAIR, AND WARRANTY

This warranty is granted by Standard Mfg. . This 1 year warranty is effective from the date of purchase and applies to the original owner of a Standard Mfg. firearm. Standard Mfg. firearms are warrantied to be free from defects in material and workmanship. Any such defects of which Standard Mfg. receives written notice by the original owner, will be remedied by Standard Mfg. without charge within a reasonable time after such notification and delivery of the product as provided below. If your Standard Mfg. firearm should ever require service or repair please perform the following to ensure fast and reliable service:

1) Include a copy of a bill of sale in the owner's name or a copy of ATF Form 4473 indicating date of purchase.
2) Include a written copy of the model and serial number of the firearm and a description of the difficulty experienced and service desired.
3) Include your name, desired return address, and a number where we can reach you.
4) Also include a written list of any accessories in your shipment – Standard Mfg. will not be responsible for any item that was not listed and confirmed by Standard Mfg..
5) Be sure the firearm is completely unloaded and the shipping container is free of ammunition. It is against postal and commercial regulations to ship ammunition.
6) Securely package your Standard Mfg. firearm and ship (transportation charges pre-paid) to:
Standard Mfg.
Service Department
100 Burritt Street
New Britain, CT 06053
It is recommended that shipments be insured by the owner, since Standard Mfg. will accept no responsibility for loss or damage in transit.
Transportation and insurance charges for return to owner will be paid by Standard Mfg. if the claim is covered by the warranty.
Under no circumstances shall Standard Mfg. be responsible for incidental or consequential damages with respect to economic loss or injury or property damage, whether as a result of breach of express or implied warranty, negligence or otherwise. Some States do not allow the exclusion or limitation of incidental or consequential damages, so the above limitation or exclusion may not apply to you.

Standard Mfg. will not be responsible for defects resulting from careless handling, unauthorized or unsafe adjustments or modifications, non-standard, defective, or improper ammunition,  corrosion, neglect, fire damage, water damage, theft, abuse, ordinary wear and tear, or unreasonable use.


20      DO NOT PUT HAND IN FRONT OF MUZZLE

ALWAYS LEAVE GUN IN OPEN BOLT POSITION        21

22      DO NOT PUT HAND IN FRONT OF MUZZLE



**ALWAYS LEAVE GUN IN OPEN BOLT POSITION**          23



**READ THE INSTRUCTIONS AND
WARNINGS IN THIS MANUAL CAREFULLY
BEFORE USING THIS FIREARM**

**For Product Service on This Model Please Email:
service@standardmfgllc.com**

THIS INSTRUCTION MANUAL SHOULD ALWAYS ACCOMPANY THIS
FIREARM AND BE TRANSFERRED WITH IT UPON CHANGE OF
OWNERSHIP, OR WHEN THE FIREARM IS LOANED OR PRESENTED TO
ANOTHER PERSON

# State of California
# Office of Administrative Law

**In re:**
**Department of Justice**

**Regulatory Action:**

**Title 11, California Code of Regulations**

**Adopt sections:**     5490, 5491, 5492
**Amend sections:**   5480, 5483, 5484
**Repeal sections:**

**AMENDED NOTICE OF WITHDRAWAL**

**Government Code Section 11349.3(c)**

**OAL Matter Number: 2016-1223-02**

**OAL Matter Type: Emergency (E)**

This notice confirms that your proposed regulatory action regarding Large-Capacity Magazines was withdrawn from OAL review pursuant to Government Code section 11349.3(c).

OAL will return your rulemaking record promptly.

Date:    December 29, 2016

_____
Mark Storm
Senior Attorney

For:    Debra M. Cornez
        Director

Original:  Kamala D. Harris
Copy:      Melan Noble

SENIOR PARTNER
C. D. MICHEL*

MANAGING PARTNER
JOSHUA ROBERT DALE

SPECIAL COUNSEL
ERIC M. NAKASU
W. LEE SMITH

ASSOCIATES
ANNA M. BARVIR
SEAN A. BRADY
MATTHEW D. CUBEIRO
SCOTT M. FRANKLIN
MARGARET E. LEIDY
BEN A. MACHIDA
CLINT B. MONFORT
JOSEPH A. SILVOSO, III
LOS ANGELES, CA

*    ALSO ADMITTED IN TEXAS AND THE
     DISTRICT OF COLUMBIA

OF COUNSEL
MATTHEW M. HORECZKO
LOS ANGELES, CA

**MICHEL & ASSOCIATES, P.C.**
A t t o r n e y s   a t   L a w

WRITER'S DIRECT CONTACT:
562-216-4444
JSILVOSO@MICHELLAWYERS.COM

December 28, 2016

Office of Administrative Law
ATTN: OAL Reference Attorney
300 Capitol Mall, Suite 1250
Sacramento, CA 95814
staff@oal.ca.gov
**BY MAIL & EMAIL**

Department of Justice
Bureau of Firearms
ATTN: Jacqueline Dosch and Melan Noble
P.O. Box 160487
Sacramento, CA 95816
Regulations@doj.ca.gov
jacqueline.dosch@doj.ca.gov
melan.noble@doj.ca.gov
Fax: (916) 324-5033
**BY MAIL, EMAIL, & FAX**

RE:    **OPPOSITION to the Proposed Emergency Regulations Regarding "Large-
        Capacity Magazines" and "Large-Capacity Magazine Conversion Kits"**

To Whom It May Concern:

        We write on behalf of our clients, the National Rifle Association of America ("NRA") and the
California Rifle & Pistol Association, Incorporated ("CRPA"), as well as their respective members
throughout California and the United States. We write in opposition to the California Department of
Justice's ("DOJ") proposed emergency regulations relating to "large-capacity magazines"[1] (OAL File
Nos. 2016-1223-02E Parts 1a and 1b and 2016-1223-02 Part 2).

        For the following reasons, the Office of Administrative Law ("OAL") should reject the
proposed regulations and require DOJ to follow the standard rulemaking process:

1.    The laws covering "large-capacity magazines " ("LCMs"), affected by the proposed
      emergency regulations, have been on California's books for 17 years.

2.    The laws restricting "large-capacity magazine conversion kits" ("Conversion Kits")

---

        [1] These regulations also, briefly, address "large-capacity magazine conversion kits." Because
these regulations predominantly cover "large-capacity magazines," and for the sake of brevity, we will
refer to these regulations as covering "large-capacity magazines." But we will address the concerns
relating to "large-capacity magazine conversion kits" as well.

180 EAST OCEAN BOULEVARD • SUITE 200 • LONG BEACH • CALIFORNIA • 90802
TEL: 562-216-4444 • FAX: 562-216-4445 • WWW.MICHELLAWYERS.COM

ER_4028

December 28, 2016
Page 2 of 17

went into effect in 2014.

3. The new laws restricting the possession of LCMs do not go into effect until July 1, 2017. There is no change to the restrictions on conversion kits.

4. DOJ presented zero evidence that an emergency exists, and there is ample time to address the regulations using the standard rulemaking procedure.

5. There is no need to clarify the existing or the new laws. DOJ has let the California public and firearm industry dictate the definitions of key terms used in California law without clarification or guidance.

6. The regulations are not necessary to avoid serious harm to the public. More troubling is the fact that if these regulations go into effect, DOJ will create unwitting felons without adequate notice or giving the public reasonable opportunity to comment.

Both the content of DOJ's proposed regulations and the timing of their submission are suspect. Our clients are gravely concerned about DOJ's attempt to circumvent the notice and hearing requirements of the California Administrative Procedure Act ("APA") during a time that encompasses both a holiday and one of the busiest periods of the year for firearm dealers and manufacturers.

On December 23, 2016, DOJ submitted its proposed regulations to the OAL, seeking an emergency exception to the requirements of the APA. This submission occurred on the Friday before Christmas Eve (Saturday) and Christmas (Sunday). Monday, December 26, is the federally-observed holiday for Christmas this year and taken as a holiday by many other Californians due to its connection to the Christmas weekend. It is also one of the busiest shopping days of the year. The timing of DOJ's submission is dubious at best if not downright deceitful.

As explained below, no actual emergency exists to justify the application of the regulations here. Even if there is an emergency, DOJ's proposed regulations do not address it, as the regulations are not needed to implement or enforce the new ban on LCM possession. And the shortened notice and comment period that DOJ seeks, along with the consequences of certain proposed regulations, will lead to detriment and damages for thousands of Californians.

I.   **BACKGROUND**

   A.   **The Current Law for "Large-Capacity Magazines" and "Large-Capacity Magazine Conversion Kits" and How Permanently Altering a "Large-Capacity Magazine" Can Exempt a Device from the Definition and Restrictions for "Large-Capacity Magazines"**

The current restrictions relating to LCMs were part of Senate Bill 23, which passed in 1999. They have been on the books for 17 years and were relatively unchanged for that entire period of time. Meanwhile, the laws defining and restricting "large-capacity magazine conversion kits" went into

180 EAST OCEAN BOULEVARD • SUITE 200 • LONG BEACH • CALIFORNIA • 90802
TEL: 562-216-4444 • FAX: 562-216-4445 • WWW.MICHELLAWYERS.COM

ER_4029

December 28, 2016
Page 3 of 17

effect in 2014 and remained unchanged from their original versions.[2]

### 1.   Definition of "Large-Capacity Magazine"

The definition of "large-capacity magazine" has also been relatively unchanged since 2000. Back then, "'large-capacity magazine' mean[t] any ammunition feeding device with the capacity to accept more than 10 rounds, but shall not be construed to include a feeding device that has been permanently altered so that it cannot accommodate more than 10 rounds nor shall it include any .22 caliber tube ammunition feeding device."[3]

Today, the Penal Code defines "large-capacity magazine" as:

"'[A]ny ammunition feeding device with the capacity to accept more than 10 rounds, but shall not be construed to include any of the following:

(a)   *Feeding devices that have been permanently altered so that they cannot accommodate more than 10 rounds.*

(b)   A .22 caliber tube ammunition feeding device.

(c)   A tubular magazine that is contained in a lever-action firearm."[4]

### 2.   Definition of "Large-Capacity Magazine Kit"

A "large-capacity magazine conversion kit" "is a device or combination of parts of a fully functioning large-capacity magazine, including, but not limited to, the body, spring, follower, and floor plate or end plate, capable of converting an ammunition feeding device into a large-capacity magazine."[5]

### 3.   Restrictions on "Large-Capacity Magazine"/"Large-Capacity Magazine Conversion Kit" Activities, Not Possession

The original restrictions on LCMs stated that: "Commencing January 1, 2000, [any person who] manufactures or causes to be manufactured, imports into the state, keeps for sale, or offers or exposes

---

[2]   *Compare* Enacted Legislation Stats. 2013, c. 728 (A.B. 48) *with* Cal. Penal Code § 32311.

[3]   *See, e.g.,* Cal. Penal Code § 12020, subd. (c)(25) (2000); *see also* Enacted Legislation Stats. 1999, c. 129 (S.B. 23). Former Penal Code section 12020 was broken up by the general renumbering of the "dangerous weapons" sections of the Penal Code in 2012.

[4]   Cal. Penal Code § 16740 (emphasis added). California law does not explain further what an LCM is. However, in its definition of "detachable magazine," California states that an "ammunition feeding device" includes "any belted or linked ammunition" but not "clips, en bloc clips, or stripper clips that load cartridges into the magazine." (Cal. Code Regs. tit. 11, § 5469, subd. (a).)

[5]   Cal. Penal Code § 32311.

180 EAST OCEAN BOULEVARD • SUITE 200 • LONG BEACH • CALIFORNIA • 90802
TEL: 562-216-4444 • FAX: 562-216-4445 • WWW.MICHELLAWYERS.COM

ER_4030

December 28, 2016
Page 4 of 17

for sale, or who gives, or lends, any large-capacity magazine" will be punished by imprisonment.[6] A violation of these restrictions is punishable as a misdemeanor or a felony.[7] Of note, possession of "large-capacity magazines" was not restricted. So those in possession of "large-capacity magazines" before January 1, 2000 could continue to possess them under California law.

The current restrictions on LCMs state that LCMs are illegal to make, manufacture, import, sell, keep or expose for sale, give, buy, receive, or loan within California.[8] The restrictions on buying and receiving LCMs were added to the code on 2014.[9] Violation of any of these restrictions remains a misdemeanor or felony pursuant to the prosecutor or court's discretion.[10]

Just like LCMs, the *possession* of conversion kits is not a restricted activity that violates the law. "Any person in [California] who knowingly manufactures or causes to be manufactured, imports into the state, keeps for sale, or offers or exposes for sale, or who gives, lends, buys, or receives" a conversion kit violates California law.[11] Unlike the punishments for LCMs, a person may only be prosecuted for a misdemeanor for violating the restrictions relating to conversion kits.[12]

### 4. *Exceptions to the Restrictions*

Penal Code section 12020, the precursor to the current restrictions on LCMs, lumped LCMs with other weapons. Therefore, there were exceptions that applied to that entire group of weapons, including LCMs. Today, those exceptions are located under the exceptions for "generally prohibited weapons," of which LCMs are included.[13] In addition, LCMs were provided their own specific exceptions.[14] Hence, there are two sets of exceptions that apply to LCMs: those for "generally prohibited weapons" and those specific to LCMs. All of the exceptions for LCMs also apply to conversion kits.[15]

---

[6]  Cal. Penal Code § 12020, subd. (a)(2) (2000).

[7]  *See* Cal. Penal Code § 12020, subd. (a) (2000).

[8]  Cal. Penal Code § 32310, subd. (a).

[9]  *See* Enacted Legislation Stats. 2013, c. 728 (A.B. 48) (adding "buys" and "receives" to the list of restricted activities in Penal Code section 32310, subdivision (a)).

[10]  *See* Cal. Penal Code § 32310, subd. (a).

[11]  Cal. Penal Code § 32311, subd. (a).

[12]  *See id.*

[13]  *See* Cal. Penal Code §§ 17700 *et seq.*

[14]  *See* Cal. Penal Code §§ 32400 *et seq.*

[15]  *See* Cal. Penal Code § 32311, subd. (a).

180 East Ocean Boulevard • Suite 200 • Long Beach • California • 90802
Tel: 562-216-4444 • Fax: 562-216-4445 • www.michellawyers.com

ER_4031

December 28, 2016
Page 5 of 17

<blockquote>
a.    *Interplay of the Exceptions and DOJ's "Large-capacity Magazine" Permit*
</blockquote>

There are a number of exceptions to the restrictions for LCMs. However, these exceptions have an interesting interplay. For those who want to import LCMs or conversion kits into California, the law is clear that they have to first obtain an LCM Permit from DOJ for the importation.[16] The law is also clear that the restrictions on LCMs and conversion kits "do not apply to the importation into this state of, or sale of, any large-capacity magazine by" such Permit holders, "when those activities are in accordance with the terms and conditions of that permit."[17] But once the LCMs and conversion kits are in California, however, another exception to the general restriction must be used (e.g., sell to law enforcement or the entertainment industry) in order to lawfully transfer the device(s).

<blockquote>
b.    *DOJ's Lack of Guidance and Clarification Resulting in (Heretofore Accepted) Industry and Public Modification of "Large-Capacity Magazines" Based on the "Permanent Alteration" Exception*
</blockquote>

For 17 years, Californians knew that an ammunition feeding device holding more than 10 rounds would lose its LCM status if someone *permanently alters* it so that it can no longer accept more than 10 rounds.[18] We know of no cases where DOJ and law enforcement ever questioned or challenged any of the many types of alterations people used to modify their LCMs to hold no more than 10 rounds.

When the original restrictions on LCMs passed in 2000, DOJ attempted to define "permanently altered" in the California Code of Regulations, but it then deleted the definition[19] and never provided further regulations or guidance. Therefore, over the course of so many years, Californians naturally assumed that DOJ did not have its own definition of "permanently altered" and that common sense modifications to LCM would suffice.

For the last 17 years, Californian firearm owners, dealers, and manufacturers made or remade LCMs "California compliant" through "permanent alteration." There are countless articles and videos online on how to modify LCMs to hold 10 rounds. And there are a number of different ways to restrict a magazine so that it cannot hold more than 10 rounds. Yet, to reiterate, there has *never* been a case to our knowledge where DOJ (or any law enforcement/prosecuting agency for that matter) has challenged

---

[16] *See* Cal. Penal Code § 32315.

[17] Cal. Penal Code § 32430.

[18] *See* Cal. Penal Code § 16740, subd. (a).

[19] *See generally Notice of Modification to Text of Proposed Regulations*, California Department of Justice, Office of the Attorney General, http://oag.ca.gov/sites/all/files/agweb/pdfs/firearms/regs/sb23rev.pdf (last visited Dec. 20, 2016).

180 EAST OCEAN BOULEVARD • SUITE 200 • LONG BEACH • CALIFORNIA • 90802
TEL: 562-216-4444 • FAX: 562-216-4445 • WWW.MICHELLAWYERS.COM

ER_4032

December 28, 2016
Page 6 of 17

an alteration of a magazine restricting its capacity to 10 rounds or less.

Thus, because of DOJ's silence on this issue, firearm dealers, manufacturers, and members of the public, have, for years, been "permanently altering" LCMs according to make them "California compliant." In its package of materials submitted to the OAL, DOJ does not state (much less cite to factual evidence showing) that this 17-year-old industry standard has in any way harmed public peace, health, safety, or welfare. DOJ's long-lasting silence and apparent support of these modifications support the lack of emergency for the pending regulations.

### B. The New Ban on the Possession of "Large-Capacity Magazine" Introduced by Senate Bill 1446 and Proposition 63

*Beginning on July 1, 2017*, the possession of LCMs shall generally be illegal within California.[20] This is due to the passage of Senate Bill ("SB") 1446 on July 1, 2016 and the people's decision to pass Proposition 63 on November 8, 2016.

It is important to note:

1.    There are no appreciable differences between the texts of SB 1446 and Proposition 63.

2.    Aside from expanding the restrictions on LCMs to include possession and making minor changes to the exceptions to those restrictions, SB 1446 and Proposition 63 leave current law relatively unchanged.

3.    The restriction on the possession of LCMs for both SB 1446 and Proposition 63 goes into effect on July 1, 2017.

SB 1446 generally prohibits the possession of LCMs in California, unless the possessor qualifies for an exception (e.g., being a certain kind of museum or historical society).[21] Meanwhile, Proposition 63 is an initiative measure that also bans the possession of LCMs in California. It just eliminates some of the exceptions available under SB 1446 and presents a slightly different punishment[22] – differences that have no bearing on how the possession ban itself is to be implemented or enforced by DOJ's proposed emergency regulations.

Significantly, both SB 1446 and Proposition 63 state that the new ban on LCM possession will not take effect until July 1, 2017, which is a full year after the passage of SB 1446 and more than half a

---

[20]   Cal. Penal Code § 32310, subd. (b) (effective July 1, 2017). Certain local jurisdictions, such as Los Angeles and Sunnyvale, already have restrictions on LCMs.

[21]   *See generally* Stats. 2016, c. 58 (S.B.1446).

[22]   For instance, Proposition 63 states in its Findings and Declaration section that "[n]o one except trained law enforcement should be able to possess [LCMs]." (*See generally*  2016 Cal. Legis. Serv. Prop. 63 (Proposition 63) (West).)

180 East Ocean Boulevard • Suite 200 • Long Beach • California • 90802
Tel: 562-216-4444 • Fax: 562-216-4445 • www.michellawyers.com

**ER_4033**

December 28, 2016
Page 7 of 17

year after the passage of Proposition 63.[23] Under both SB 1446 and Proposition 63, firearm owners
have until July 1, 2017 to (1) permanently alter or (2) dispose of their LCMs if the magazines are
affected by the new law.[24] A person can lawfully dispose of an LCM by any of the following means:

    (1)     Remove the LCM from the state;

    (2)     Sell the LCM to a licensed firearms dealer;

    (3)     Destroy the LCM; or

    (4)     Surrender the LCM to a law enforcement agency for destruction.[25]

       Neither SB 1446 nor Proposition 63 changed any laws covering conversion kits. The changes in
the laws only relate to the possession of LCMs, not conversion kits.

### C.     The Content at Issue in DOJ's Proposed Emergency Regulations

       DOJ says that it is issuing emergency regulations in response to the new ban on LCM
*possession* implemented by SB 1446 and Proposition 63. In its most relevant parts, DOJ's set of
proposed emergency regulations:

-     Require firearm dealers to get a separate LCM Permit for each licensed location;[26]

-     Require LCM Permit holders to keep records of the sales of LCMs and require this to be
done within 24 hours of any sale;[27]

-     Expand the scope of violations constituting LCM Permit revocation;[28]

-     Provide guidance stating that a lawful possessor/owner of an LCM may take it apart and
put it back together;[29]

---

[23]  *See generally* Cal. Penal Code § 32310, subd. (b) (effective July 1, 2017).

[24]  *See id.*

[25]  *Id.*

[26]  Cal. Code Regs., tit. 11, § 5480, subd.(d) (proposed).

[27]  *See* Cal. Code Regs., tit. 11, § 5483, subds. (b)-(f) (proposed).

[28]  *See* Cal. Code Regs., tit. 11, § 5484, subds. (b)-(e) (proposed).

[29]  *See* Cal. Code Regs., tit. 11, § 5490 (proposed).

180 EAST OCEAN BOULEVARD • SUITE 200 • LONG BEACH • CALIFORNIA • 90802
TEL: 562-216-4444 • FAX: 562-216-4445 • WWW.MICHELLAWYERS.COM

ER_4034

December 28, 2016
Page 8 of 17

- Clarify that an owner of an LCM may modify the magazine and clarify the ways the LCM can be "permanently altered" for purposes of exempting it from the definition of "LCM"[30] (i.e., DOJ "has determined the acceptable minimum level of permanence"[31]);

- State how magazine capacity for shotguns ought to be measured (i.e., either based on shotgun shells that are 2.75 inches or the shotgun shell standard indicated on the firearm);[32]

- Provide the circumstances under which magazines, each having a 10-round capacity or less, would be deemed "LCMs" when they are attached to each other (e.g., with tape or welded together);[33]

- Designate certain shotguns to have LCMs if they are equipped with more than one magazine tube that can hold (collectively) more than 10 shells, and can either (1) fire all of the shells without the use of a magazine tube selector switch or (2) have a switch that allows the user to utilize the shells from both tubes;[34] and

- Clarify what constitutes a conversion kit and that a person may disassemble his or her lawfully-possessed LCM and reassemble it without violating Penal Code section 32311.[35]

## II.   DOJ's Proposed "Emergency" Regulations Are Not Necessary to Address an Emergency

DOJ cannot utilize the APA's emergency rulemaking process. DOJ had, and still has, time to act via the APA's "standard" (i.e., non-emergency) rulemaking process, and it does not justify its failure (or refusal) to abide by the APA's "standard" rulemaking process. Simply put, there is no emergency based on time frame. Further, there is also no emergency based on the level of harm that is threatening public peace, health, safety, or welfare. It is significant that **DOJ does not present any evidence suggesting an emergency exists.**

Not only is there no harm that needs to be addressed when it comes to the new ban on LCM possession, but there is also no uncertainty that needs to be addressed. Accordingly, DOJ's proposed regulations do not address any unresolved issues arising from the new ban on LCM possession. In the

---

[30]  *See* Cal. Code Regs., tit. 11, § 5491, subds. (a)-(b)(2) (proposed).

[31]  DOJ, *Finding of Emergency* (submitted with the proposed emergency regulations at issue), page 2 (2016).

[32]  Cal. Code Regs., tit. 11, § 5491, subd. (b)(3) (proposed).

[33]  Cal. Code Regs., tit. 11, § 5491, subd. (b)(4) (proposed).

[34]  Cal. Code Regs., tit. 11, § 5491, subd. (b)(5) (proposed).

[35]  Cal. Code Regs., tit. 11, § 5492 (proposed).

180 East Ocean Boulevard • Suite 200 • Long Beach • California • 90802
Tel: 562-216-4444 • Fax: 562-216-4445 • www.michellawyers.com

ER_4035

December 28, 2016
Page 9 of 17

end, it appears as if DOJ is yoking the new ban to its proposed regulations as a means to poach a deadline, however artificial it may be, to further its attempt to circumvent the APA's "standard" rulemaking process.

**A.      The Law Governing the Shortened Notice/Comment Period for the APA's Emergency Rulemaking Process and the Requisite Finding of "Emergency"**

*1.      The Law re: Shortened Notice and Comment Period for Emergency Regulations, Contrasted with the APA's "Standard" Rulemaking Process*

Emergency regulations are not subject to the regular notice and comment procedures set forth in the APA. The emergency rulemaking process, rather, has specific requirements outlined in section 11346.1 of the Government Code. The section provides a brief notice period,[36] a short public comment period,[37] and limited time for the OAL to approve or deny the emergency regulations based on an adjudication of whether they are necessary to address an emergency.[38] If approved by the OAL, the emergency regulation will be effective upon filing with the Secretary of State and thrust upon the unsuspecting public. Thus, DOJ's "emergency" LCM regulations can become effective and fully applicable to all Californians in just 17 days or so without any further notice.

In contrast, the "standard" APA rulemaking process requires the state agency to: give the public a 45-day opportunity to comment on the proposed regulation (and hold a public hearing if any member of the public requests one within 15 days prior to the close of that 45-day written comment period); consider the public's comments as it decides whether to amend its proposed regulations; (if it does decide to make amendments,) make the amendments available for public comment for at least 15 or 45 days depending on the substantiality of the amendment; summarize and respond on the record to timely public comments that are directed to it; and then submit a rule-making action to the OAL, which then has 30 days to reach a decision on whether to approve or deny the proposed regulations.[39]

Based on simple arithmetic–and even providing additional buffer room for time spent on consideration, research, and everyday delays–common sense dictates that the APA's "standard" rulemaking process can be completed in approximately 4 to 5 months. Moreover, a final regulation just has to be filed between March 1 and May 31, 2017 to become effective on July 1, 2017.[40]

It bears repeating, then, that the laws covering LCMs have been around for *17 years* (including the "permanently altered" exception). And the restrictions for conversion kits were implemented in 2014. DOJ had ample time to implement regulations in a timely fashion, which would have allowed for

---

[36]  Cal. Govt. Code, § 11346.1, subd. (a)(2).

[37]  Cal. Code Regs., tit. 1, § 55, subd. (b).

[38]  *See* Cal. Code Regs., tit. 1, § 56, subd. (a)(1).

[39]  *See Guide to Public Participation in the Regulatory Process*, Office of Administrative Law, http://www.oal.ca.gov/files/2016/10/How-2-Participate-102016.pdf (last visited Dec. 20, 2016).

[40]  *See id.* at page 18.

180 East Ocean Boulevard • Suite 200 • Long Beach • California • 90802
Tel: 562-216-4444 • Fax: 562-216-4445 • www.michellawyers.com

ER_4036

December 28, 2016
Page 10 of 17

public comment and criticism as intended by the APA. As discussed below, DOJ cannot justify its fabricated "emergency."

Furthermore, the timing of its "emergency" regulations, over the holiday season, calls into serious question DOJ's motives and willingness to provide Californians ample notice or opportunity to comply and/or comment on the pending laws.

### 2.   The Law re: The Requisite Finding of Emergency for the APA's Emergency Rulemaking Process

Presumably because there is such a marked difference between the notice and comment periods for the APA's "standard" rulemaking process and that of its emergency rulemaking process, California has safeguards in place to ensure that the emergency rulemaking process is not abused and only used when it is truly needed. Hence, California only allows the APA's emergency rulemaking process to be used when "the adoption of a regulation . . . is necessary to address an emergency[.]"[41]

According to state law, "'[e]mergency' means a situation that calls for immediate action to avoid serious harm to the public peace, health, safety, or general welfare."[42] To establish a sufficient "emergency," DOJ "must . . . *describe[e] specific facts supported by substantial evidence* that demonstrate the existence of an emergency and the need for immediate adoption of the proposed regulation," unless the situation is expressly deemed an emergency by statute.[43]

In addition, if the emergency existed and was known by the agency in sufficient time to have been addressed through non-emergency regulations, the finding of emergency shall include facts explaining the failure to address the situation through non-emergency regulations. *A finding of emergency based only upon expediency, convenience, best interest, general public need, or speculation, is not adequate to demonstrate the existence of an emergency.*[44]

---

[41]   *See* Cal. Govt. Code, § 11346.1(b)(1).

[42]   Cal. Govt. Code, § 11342.545.

[43]   *About the Emergency Rulemaking Process*, Office of Administrative Law, http://www.oal.ca.gov/regulations/emergency_regulations/emergency_regulation_process/ (last visited Dec. 20, 2016) (citing Cal. Govt. Code, § 11346.1, subd. (b)(2)) (emphasis added).

[44]   *Id.* (emphasis added).

180 East Ocean Boulevard • Suite 200 • Long Beach • California • 90802
Tel: 562-216-4444 • Fax: 562-216-4445 • www.michellawyers.com

ER_4037

December 28, 2016
Page 11 of 17

**B.    DOJ's "Finding of Emergency" Does Not Sufficiently Demonstrate that the Proposed Regulations Are Necessary to Address an Emergency and to Avoid Serious Public Harm**

*1.    Assuming Arguendo that the Proposed Emergency Regulations Are Even Needed to Implement/Enforce/Clarify the New Law, There Is No Emergency Based on Time Frame*

DOJ turns a blind eye on the fact that it has had sufficient time to address its claimed "emergency" through non-emergency regulations. In the documents it submitted to the OAL, DOJ willfully overlooks the facts that: (1) the new ban on LCM possession does not go into effect until July 1, 2017, (2) DOJ knew as early as *July 1, 2016* that a ban on LCM possession would occur starting on July 1, 2017, and (3) therefore, DOJ has had ample time–and *still* has time–to issue the regulations it thinks it needs by going through the "standard" APA rulemaking process.

DOJ cannot claim that it was waiting for the November 8, 2016 vote on Proposition 63 to act because the Governor already signed the LCM restrictions in Proposition 63 into law on July 1, 2016 when he passed SB 1446. The differences between Proposition 63 and SB 1446 do not affect the substance of DOJ's proposed regulations (*see* Section I.B above).[45]

What was DOJ doing since July 1, 2016 that prevented it from drafting its proposed regulations–a mere five pages–until just a couple of days ago?

And, more importantly, what is preventing DOJ from proceeding via the APA's "standard" rule making process now, given the facts that the process can be completed in 4 months *and DOJ has until May 31, 2017 to file final regulations for a July 1, 2017 deadline*?

DOJ failed to address these crucial concerns and, therefore, failed to show that an emergency exists to justify the utilization of the APA's emergency rulemaking process. Half-heartedly, DOJ attempts to argue on page 1 of its *Finding of Emergency* that "[t]hese regulations need to be established as soon as possible so [DOJ] has time to notify gun owners and gun owners have time to make the necessary changes to comply with the ban."[46]

The logic of this argument fails on many levels. For one, as shown in Section II.B.3 below, DOJ's proposed emergency regulations are not needed to implement, clarify, or enforce the new law banning the possession of LCMs (i.e., the *only* law that DOJ identified in its *Finding of Emergency* that comes with a deadline). So there is no time pressure to notify gun owners about the proposed regulations if DOJ is truly worried about ensuring people's compliance with the new ban. And the

_____

[45]  DOJ states on page 1 of its *Finding of Emergency* that "the Legislature pre-amended Proposition 63 with the passage of Senate Bill 1446 . . . The clarifying amendments take effect on January 1, 2017." This is not only confusingly worded, but it also gives the wrong impression that a January 1, 2017 deadline somehow looms on the horizon for DOJ.

[46]  DOJ, *Finding of Emergency* (submitted with the proposed emergency regulations at issue), page 1 (2016).

180 East Ocean Boulevard • Suite 200 • Long Beach • California • 90802
Tel: 562-216-4444 • Fax: 562-216-4445 • www.michellawyers.com

**ER_4038**

December 28, 2016
Page 12 of 17

proposed regulations relating to permit applications, record keeping, and revocation are certainly not needed in an "emergency" capacity (and DOJ makes absolutely no attempt to connect them with any deadline or temporal urgency).

Second, due to its longer periods for public comment, hearing, and feedback, the APA's "standard" rulemaking process gives Californians more notice of a proposed regulation than the APA's emergency rulemaking procedure. If DOJ is truly worried about lack of notice to gun owners and giving them more time to comply with the law, DOJ should have proceeded via the APA's "standard" rulemaking process. At that point, Californians would have ample opportunity to review, understand, and make suggestions to DOJ's regulations, and, indeed, DOJ would have the ability to not only correct errors and oversights in the current regulations, but also to make corrections so that the regulations are more workable for the public.

As a result, DOJ altogether fails to show why there is a time crunch necessitating the finding of an emergency and the issuance of emergency regulations.

> **2.      *Assuming Arguendo that an Emergency Exists and DOJ Has Run Out of Time to Proceed via the APA's "Standard" Rulemaking Process, DOJ Fails to Justify Its Failure to Meet the Non-Emergency Deadlines***

Because DOJ's alleged "emergency" "existed and was known by [DOJ] in sufficient time to have been addressed through non-emergency regulations," DOJ must meet its burden to justify its "failure to address the situation through non-emergency regulations[.]"[47] DOJ has failed to do so.

Essentially, all DOJ does is state in its *Explanation of Failure to Adopt Nonemergency Regulations* that it:

> is unable to develop regulations in the standard manner because of the short timeframes [sic] provided in the legislation. The legislation was signed into law on July 1, 2016, and the ban commences on July 1, 2017.[48]

It is not sufficient to state the (comfortable) length of time one has to act and then dismiss it with a short, unqualified, and incorrect statement that the length of time to enact non-emergency regulations is too short. As explained above in Section II.B.1, the time frame given to DOJ was not too short. Actually, DOJ could propose, hold public comment, modify, and submit for final approval a number of regulations back-to-back during this timeframe. DOJ does not seem to have any countering explanation as to why a year is too short.

---

[47] *Id.* at page 2.

[48] *Id.* at page 1.

180 East Ocean Boulevard • Suite 200 • Long Beach • California • 90802
Tel: 562-216-4444 • Fax: 562-216-4445 • www.michellawyers.com

ER_4039

December 28, 2016
Page 13 of 17

### 3. *DOJ's Proposed Regulations Are Not Necessary to Implement/Enforce/Clarify the New "Large-Capacity Magazine" Possession Ban*

In its *Finding of Emergency*, DOJ disingenuously states that its proposed emergency regulations are

> *necessary* to provide guidance to California's gun owners so that by July 1, 2017, they will be in compliance with the law. The proposed regulations provide options for disposal of large-capacity magazines, as well as instructions for reducing the capacity of a large-capacity magazine[.][49]

Any reasonable person reading the texts of SB 1446 and Proposition 63, and who understands just the general contours of California's LCM laws during the last 17 years and conversion kit laws over the last three, would know that DOJ's assertion rings false.

A reasonable review of the texts reveals that neither SB 1446 nor Proposition 63 introduce any new legal requirements *necessitating new*, clarifying regulations on how an LCM Permit holder should keep records, how "permanent alteration" should be defined, how magazine capacity for shotguns ought to be measured, how magazines attached to one another can be LCMs, how dual-tube shotguns can be LCMs, etc.

The issues addressed by DOJ's proposed emergency regulations arose long before California even contemplated SB 1446 and Proposition 63, and have been on the horizon for quite some time. Accordingly, Californians have asked DOJ numerous times to address these issues. DOJ has generally refused to do so. As a result of years of silence from DOJ, firearm manufacturers, dealers, and owners created their own compliance mechanisms independent of DOJ. All these years, DOJ failed to provide guidance, comment, and even challenges to these mechanisms.

So why do these issues only *now* need to be addressed over the holiday season? What possible part of SB 1446 and Proposition 63 changes the status quo and/or landscape of LCM law in a way to make the regulations so necessary? Why didn't DOJ identify such a provision or explain how the status quo was changed in the materials it submitted to the OAL?

DOJ's meaningful silence on this matter and the statutory language itself show that the proposed emergency regulations are not needed to implement, enforce, and/or clarify the new ban on LCM possession. Unlike the case with the new "assault weapon" laws taking effect on January 1, 2017,[50] there is no indication that California gun owners cannot comply with the new laws banning LCM possession in the absence of DOJ's regulations. There is no need for DOJ to be so paternalistic or officious when it comes to grown-up gun owners, saying that the regulations are *necessary* for compliance.

---

[49]   *Id.* at page 5 (emphasis added).

[50]   Cal. Penal Code §§ 30515, 30680, 30900 (effective January 1, 2017).

180 East Ocean Boulevard • Suite 200 • Long Beach • California • 90802
Tel: 562-216-4444 • Fax: 562-216-4445 • www.michellawyers.com

ER_4040

C.D. Michel – SBN 144258
Sean A. Brady – SBN 262007
Anna M. Barvir – SBN 268728
Matthew D. Cubeiro – SBN 291519
MICHEL & ASSOCIATES, P.C.
180 E. Ocean Boulevard, Suite 200
Long Beach, CA 90802
Telephone: (562) 216-4444
Facsimile: (562) 216-4445
Email: cmichel@michellawyers.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIRGINIA DUNCAN, RICHARD LEWIS, PATRICK LOVETTE, DAVID MARGUGLIO, CHRISTOPHER WADDELL, and CALIFORNIA RIFLE & PISTOL ASSOCIATION, INCORPORATED, a California corporation,<br><br>                Plaintiffs,<br><br>        v.<br><br>XAVIER BECERRA, in his official capacity as Attorney General of the State of California; and DOES 1-10,<br><br>                Defendants. | Case No.: '17 CV 1017 BEN JLB<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

1

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs Virginia Duncan, Richard Lewis, Patrick Lovette, David Marguglio, Christopher Waddell, and California Rifle & Pistol Association, Incorporated, through their counsel, bring this action against Defendant Attorney General Xavier Becerra, in his official capacity, and make the following allegations.

## INTRODUCTION

1.     Millions of law-abiding Americans own firearms equipped with magazines capable of holding more than ten rounds of ammunition.[1] There is nothing unusual or novel about this technology. Indeed, many of the nation's best-selling handguns and rifles come *standard* with magazines that can hold more than ten rounds, and firearms equipped with such magazines are safely possessed by law-abiding citizens in the vast majority of states. The reason for the popularity of these magazines is straightforward: In a confrontation with a violent attacker, having enough ammunition can be the difference between life and death.

2.     Although magazines capable of holding more than ten rounds have existed and been in common use for more than a century, California banned their manufacture, sale, import, or transfer effective January 1, 2000. In the state's view, these standard-issue magazines are actually "large-capacity magazines" that threaten public safety.[2] Last year, the state took the additional and extreme step of banning the mere *possession* of magazines over ten rounds. Under the revised law, California Penal Code section 32310 ("Section 32310"), owners of such magazines who want to keep the property they lawfully acquired and have used only for lawful purposes may no longer continue to do

---

[1]  A firearm "magazine" is a device that holds ammunition cartridges or shells, and (along with other parts of the firearm) it feeds the ammunition into the chamber for firing. Sporting Arms & Ammunition Mfrs.' Inst. (SAAMI), *Glossary Results–M* (2009), http://saami.org/glossary/display.cfm?letter=M.

[2]  Defined as "any ammunition feeding device with the capacity to accept more than 10 rounds," but not including a feeding device that has been permanently altered so that it cannot accommodate more than 10 rounds, a .22 caliber tube ammunition feeding device, or a tubular magazine that is contained in a lever-action firearm. Cal. Penal Code § 16740.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

so.

3.      Section 32310 violates multiple constitutional provisions. First, it impermissibly burdens Plaintiffs' Second Amendment rights. The Second Amendment protects the right to keep and bear arms "typically possessed by law-abiding citizens for lawful purposes," *District of Columbia v. Heller*, 554 U.S. 570, 624-25 (2008), including the ammunition and magazines necessary to make them effective, *see Jackson v. City and County of San Francisco*, 746 F.3d 953, 967-68 (9th Cir. 2014); *Fyock v. Sunnyvale*, 779 F.3d 991, 998 (9th Cir. 2015). Because the magazines California has prohibited are "in common use . . . for lawful purposes like self-defense," the prohibition "cannot stand." *Heller,* 554 U.S. at 624, 636.

4.      Section 32310 also violates the Takings Clause. By banning *possession*—in addition to sales and use—of magazines that were lawfully acquired and are presently lawfully possessed, Section 32310 constitutes a physical appropriation of property without just compensation that is *per se* unconstitutional. *See Horne v. Dep't of Agric.*, -- U.S. --, 135 S. Ct. 2419, 2427 (2015).

5.      Finally, Section 32310 violates the Due Process Clause. Banning magazines over ten rounds is no more likely to reduce criminal abuse of guns than banning high horsepower engines is likely to reduce criminal abuse of automobiles. To the contrary, the only thing the ban ensures is that a criminal unlawfully carrying a firearm with a magazine over ten rounds will have a (potentially devastating) advantage over his law-abiding victim. And Section 32310 raises particularly acute due process concerns because it criminalizes the continued possession of magazines that were lawful when acquired. *See Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 541 (2005); *id.* at 548-49 (Kennedy, J., concurring).

6.      Desiring to acquire, possess, use, and/or transfer these constitutionally protected firearm magazines for lawful purposes including self-defense, but justifiably fearing prosecution if they do, Plaintiffs respectfully request that this Court: (1) declare that California Penal Code section 32310 infringes Plaintiffs' constitutional rights; and (2)

3

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1    permanently enjoin Defendants from enforcing section 32310 to the extent it prevents

2    law-abiding Californians, like Plaintiffs, from acquiring, possessing, using, or

3    transferring constitutionally protected arms.

**JURISDICTION AND VENUE**

4

5    7.    The Court has original jurisdiction of this civil action under 28 U.S.C. § 1331,

6    because the action arises under the Constitution and laws of the United States, thus

7    raising federal questions. The Court also has jurisdiction under 28 U.S.C. § 1343(a)(3)

8    and 42 U.S.C. § 1983 since this action seeks to redress the deprivation, under color of the

9    laws, statutes, ordinances, regulations, customs and usages of the State of California and

10   political subdivisions thereof, of rights, privileges or immunities secured by the United

11   States Constitution and by Acts of Congress.

12   8.    Plaintiffs' claims for declaratory and injunctive relief are authorized by 28

13   U.S.C. §§ 2201 and 2202, respectively, and their claim for attorneys' fees is authorized

14   by 42 U.S.C. § 1988.

15   9.    Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2), because a

16   substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this

17   district.

**PARTIES**

18

**[Plaintiffs]**

19

20   10.   Plaintiff Virginia Duncan is a resident of San Diego County, California, and a

21   law-abiding citizen of the United States. Plaintiff Duncan does not currently own a

22   magazine prohibited by Section 32310, but she seeks to acquire such a magazine to keep

23   in her home for self-defense and other lawful purposes. But for California's restrictions

24   on magazines over ten rounds and her reasonable fear of criminal prosecution for

25   violating them, Plaintiff Duncan would immediately acquire and continuously possess a

26   magazine over ten rounds within California for lawful purposes, including in-home self-

27   defense.

28   11.   Plaintiff David Marguglio is a resident of San Diego County, California, and a

4

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

law-abiding citizen of the United States. Plaintiff Marguglio does not currently own a magazine prohibited by Section 32310, but he seeks to acquire such a magazine to keep in his home for self-defense and other lawful purposes. But for California's restrictions on magazines over ten rounds and his reasonable fear of criminal prosecution for violating them, Plaintiff Marguglio would immediately acquire and continuously possess a magazine over ten rounds within California for lawful purposes, including in-home self-defense.

12.    Plaintiff Christopher Waddell is a resident of San Diego County, California, and a law-abiding citizen of the United States. Plaintiff Waddell does not currently own a magazine prohibited by Section 32310, but he seeks to acquire such a magazine to keep in his home for self-defense and other lawful purposes. But for California's restrictions on magazines over ten rounds and his reasonable fear of criminal prosecution for violating them, Plaintiff Waddell would immediately acquire and continuously possess a magazine over ten rounds and a firearm capable of accepting such a magazine within California for lawful purposes, including in-home self-defense.

13.    Plaintiff Richard Lewis is a resident of San Diego County, California, a law-abiding citizen of the United States, and an honorably discharged 22-year veteran of the United States Marine Corps. Plaintiff Lewis currently owns magazines capable of holding more than 10 rounds, items that he has lawfully possessed for over 20 years. He is not exempt from California laws barring the acquisition, possession, and/or transfer of magazines over ten rounds. Plaintiff Lewis seeks to continue possessing his lawfully owned property, acquire additional magazines capable of holding more than 10 rounds, and devise or transfer his lawfully owned property to his offspring. But for California's restrictions on magazines over ten rounds and his reasonable fear of criminal prosecution for violating them, Plaintiff Lewis would continue to possess his lawfully owned magazines over ten rounds, immediately acquire additional such magazines, and devise or transfer them to his offspring.

14.    Plaintiff Patrick Lovette is a resident of San Diego County, California, a law-

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

abiding citizen of the United States, and an honorably retired 22-year veteran of the United States Navy. He intends to relocate to Arizona in August 2017. Plaintiff Lovette currently owns magazines capable of holding more than 10 rounds, items that he has lawfully possessed for over 20 years. He is not exempt from California laws barring the acquisition, possession, and/or transfer of magazines over ten rounds. Plaintiff Lovette seeks to continue to possess his lawfully owned property, acquire additional magazines over 10 rounds, and devise or transfer his lawfully owned property to his offspring. Once he relocates to Arizona, Mr. Lovette also intends to visit California with his firearm and a magazine over ten rounds for self-defense. But for California's restrictions on magazines over ten rounds and his reasonable fear of criminal prosecution for violating them, Plaintiff Lovette would continue to possess his lawfully owned magazines over ten rounds, immediately acquire additional such magazines, travel between California and Arizona with those magazines, and devise or transfer them to his offspring.

15.    Each of the individual Plaintiffs identified above seeks to keep, acquire, possess, and/or transfer magazines capable of holding more than 10 rounds for lawful purposes, including in-home self-defense, as is their right under the Second Amendment to the United States Constitution. Each of the individual Plaintiffs identified above is eligible under the laws of the United States and of the State of California to receive and possess firearms.

16.    Plaintiff California Rifle & Pistol Association, Incorporated ("CRPA"), is a nonprofit membership and donor-support organization qualified as tax-exempt under 26 U.S.C. § 501(c)(4) with its headquarters in the City of Fullerton, in Orange County, California. Founded in 1875, CRPA seeks to defend the civil rights of all law-abiding individuals, including the fundamental right to acquire and possess commonly owned firearm magazines.

17.    CRPA regularly provides guidance to California gun owners regarding their legal rights and responsibilities. In addition, CRPA is dedicated to promoting the shooting sports and providing education, training, and organized competition for adult

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1  and junior shooters. CRPA members include law enforcement officers, prosecutors,

2  professionals, firearm experts, and the public.

3       18.     In this suit, CRPA represents the interests of the tens of thousands of its

4  members who reside in the state of California, including in San Diego County, and who

5  are too numerous to conveniently bring this action individually. Specifically, CRPA

6  represents the interests of those who are affected by California's restriction on magazines

7  capable of holding more than 10 rounds. In addition to their standing as citizens and

8  taxpayers, those members' interest includes their wish to exercise their constitutionally

9  protected right to keep and bear arms without being subjected to criminal prosecution,

10 and to continue to lawfully possess property that they lawfully obtained. But for

11 California's restrictions on magazines over ten rounds and their reasonable fear of

12 prosecution for violating them, CRPA members would seek to acquire, keep, possess

13 and/or transfer such magazines for in-home self-defense and other lawful purposes.

14                                   **[Defendants]**

15      19.     Defendant Xavier Becerra is the Attorney General of California. He is the chief

16 law enforcement officer of California. Defendant Becerra is charged by Article V,

17 Section 13 of the California Constitution with the duty to see that the laws of California

18 are uniformly and adequately enforced. Defendant Becerra also has direct supervision

19 over every district attorney and sheriff in all matters pertaining to the duties of their

20 respective officers. Defendant Becerra's duties also include informing the public, local

21 prosecutors, and law enforcement regarding the meaning of the laws of California,

22 including restrictions on certain magazines classified as "large-capacity magazines." He

23 is sued in his official capacity.

24      20.     The true names or capacities—whether individual, corporate, associate, or

25 otherwise—of the Defendants named herein as Does 1-10, are presently unknown to

26 Plaintiffs, and are therefore sued by these fictitious names. Plaintiffs pray for leave to

27 amend this Complaint to show the true names or capacities of these Defendants if and

28 when they have been determined.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

21.     Defendants Becerra and Does 1-10 are responsible for formulating, executing, and administering California's restrictions on magazines capable of holding more than 10 rounds at issue in this lawsuit, and they are in fact presently enforcing them.

22.     Defendants enforce California restrictions on magazines capable of holding more than 10 rounds against Plaintiffs and other California citizens under color of state law within the meaning of 42 U.S.C. § 1983.

**GENERAL ALLEGATIONS**

**[Right to Keep and Bear Arms]**

23.     The Second Amendment to the United States Constitution declares that "the right of the people to keep and bear arms shall not be infringed." U.S. CONST. amend. II.

24.     The United States Supreme Court has concluded that "[s]elf-defense is a basic right, recognized by many legal systems from ancient times to the present day, and . . . individual self-defense is 'the central component' of the Second Amendment right." *McDonald v. City of Chicago*, 561 U.S. 742, 767 (2010) (quoting *Heller*, 554 U.S. at 628). The Court has held that "a prohibition of an entire class of 'arms' that is overwhelmingly chosen by American society" is unconstitutional, especially when that prohibition extends "to the home, where the need for defense of self, family, and property is most acute." *Heller*, 554 U.S. at 628.

25.     The "arms" protected by the Second Amendment are those "typically possessed by law-abiding citizens for lawful purposes" today. *See, e.g.*, *id.* at 624-25; *see also Caetano v. Massachusetts*, -- U.S. --, 136 S. Ct. 1027, 1027-28 (2016). The Second Amendment's protection also includes the ammunition and magazines necessary to meaningfully keep and bear arms for self-defense. *See Jackson*, 746 F.3d at 967-68; *Fyock*, 779 F.3d at 998. As such, the Second Amendment protects magazines and the firearms equipped with them that are in common use for lawful purposes.

26.     The Supreme Court has also held that the Second Amendment right to keep and bear arms is incorporated into the Due Process Clause of the Fourteenth Amendment and may not be infringed by state and local governments. *McDonald*, 561 U.S. at 750.

8

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

**[Takings Clause]**

27.     The Takings Clause of the Fifth Amendment provides "nor shall private property be taken for public use, without just compensation." U.S. Const. amend. V. The Takings Clause applies against the states through the Fourteenth Amendment. *See Lingle*, 544 U.S. at 536.

28.     The Takings Clause protects against two kinds of governmental takings: "a restriction on the *use* of property," which is known as a "regulatory taking," and a direct "physical *appropriation*" of "an interest in property." *Horne*, 135 S. Ct. at 2425, 2427.

29.     "When the government physically takes possession of an interest in property for some public purpose, it has a categorical duty to compensate the former owner." *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 322 (2002). That rule applies to takings of both real and personal property. *See Horne*, 135 S. Ct. at 2427.

30.     A regulation that "goes too far"—for example, by depriving a property owner of economically beneficial use or otherwise "interfer[ing] with legitimate property interests"—also requires just compensation. *Lingle*, 544 U.S. at 537-39.

**[Due Process Clause]**

31.     The Due Process Clause of the Fourteenth Amendment provides that "No state shall … deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV.

32.     "The touchstone of due process is protection of the individual against arbitrary action of government." *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974); *see also*, *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998) (collecting cases). Thus, a statute that deprives an individual of life, liberty, or property without furthering "any legitimate governmental objective" violates the Due Process Clause. *Lingle*, 544 U.S. at 542.

33.     Legislation that changes the law retroactively—making conduct that was legal when undertaken illegal—is especially likely to run afoul of the Due Process Clause. *See Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 16-17 (1976); *E. Enterps. v. Apfel*, 524

9

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

U.S. 498, 547-550 (1998) (Kennedy, J., concurring in part and dissenting in part). "If retroactive laws change the legal consequences of transactions long closed, the change can destroy the reasonable certainty and security which are the very objects of property ownership. Consequently, due process protection for property must be understood to incorporate our settled tradition against retroactive laws of great severity." *E. Enterprs.*, 524 U.S. at 548-49.

34.     A law that deprives an owner of private property without a permissible justification violates the Due Process Clause regardless of whether it also violates the Takings Clause. *See Lingle*, 544 U.S. at 541-42; *id.* at 548-49 (Kennedy, J., concurring).

**[The Restricted Items and Their Uses]**

35.     A firearm magazine is a device that stores ammunition, and it is a critical part of delivering a loaded cartridge to the firing chamber of a rifle, pistol, or shotgun for discharge of a projectile (bullet or shot).

36.     Magazines can be either fixed to ("integral") or detachable from a firearm. Removal of fixed magazines requires disassembly of the firearm. Once a fixed magazine is removed from a firearm, the firearm lacks a structure to store ammunition, rendering the firearm unable to accept ammunition for firing, unless manually loaded into the chamber one round at a time after each discharge.

37.     On the other hand, detachable magazines are designed to be routinely removed from and reinserted into a firearm.[3] Removal generally requires a shooter to use a finger on the shooter's dominant hand to press a button or push a lever that releases the magazine from the cavity into which it is inserted to feed ammunition into the firearm's chamber for firing. Once a detachable magazine is removed, the firearm is unable to

---

[3]  "Detachable magazine" means, in relevant part, "any ammunition feeding device that can be removed readily from the firearm with neither disassembly of the firearm action nor use of a tool being required." Cal. Code Regs. tit. 11, § 5469(a). They generally consist of four parts—a follower, a spring, the magazine-body, and a floor plate—but can vary between three and five parts. *See* Ex. A (image of a disassembled detachable magazine in five parts).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

**ER_4050**

1   accept ammunition for firing, unless manually loaded into the chamber one round at a
2   time after each discharge.[4]

3       38.    Originally, firearms only had "fixed" magazines.[5] The modern detachable
4   magazine was given form in 1879 with the introduction of the Remington-Lee bolt-action
5   rifle, and detachable magazines have been in common use ever since. Frank M. Sellers,
6   *Sharps Firearms* (1978).

7       39.    Detachable magazines offer several advantages beyond ease of reloading the
8   firearm. Most important to self-defense, including in the home, detachable magazines
9   allow for quick loading. This is especially beneficial if the gun is stored in an unloaded
10   condition.

11       40.    The detachable magazine is also useful if the firearm "jams." A "jam" is the
12   failure of an expended cartridge case to eject or the failure of a loaded cartridge to enter
13   the chamber properly. The proper procedure for clearing a "jam" usually involves first
14   removing the magazine. If the magazine is fixed, clearing the "jam" can be more difficult
15   (and dangerous) because the next round in the magazine is trying to feed into the
16   chamber and the user does not have the option, as there would be with a detachable
17   magazine, of removing the magazine from below to stop that pressure.

18       41.    Even outside a "jam" situation, detachable magazines offer safety advantages.
19   Many fixed magazines require that the cartridges be cycled through the loading process
20   for unloading. That creates many more opportunities for an accidental discharge—
21   opportunities that are exacerbated when unloading must occur in a vehicle, in darkness,

22

23

24

---

25       [4] This may not even be an option for some firearm models, e.g., ones with
26   magazine disconnect safety.

27       [5] Examples are the Lewis & Clark's Girandoni rifle (20-round capacity) and the
Henry lever action rifle used in America's civil war (15-round capacity). Silvio Calabi,
28   Steve Helsley & Roger Sanger, *The Gun Book for Boys* (2012).

1  or in a crowded location.[6]

2      42.    Detachable magazines are a convenient and safe way to store and transport

3  ammunition. And if mud or dirt gets into the magazine, it is often much easier to clean or

4  replace a detachable magazine.

5      43.    Finally, pre-loaded detachable magazines allow shooters to conveniently share

6  ammunition while practicing—if they have similar firearms—or to safely reload while

7  waiting one's turn to shoot, since the magazine is outside of the firearm while reloading

8  takes place.

9      44.    Firearm users have had the choice of magazine types and capacity for over 130

10  years. What they select is based on their respective need. For generations, Americans

11  have overwhelmingly chosen detachable magazines.

12      45.    While California does not prohibit all detachable magazines—allowing for

13  those with a capacity of ten rounds or less—it does prohibit the sizes of magazines that

14  are most popular among the American public. Indeed, detachable magazines capable of

15  holding more than ten rounds come standard with countless handgun and rifle models

16  throughout the country. And law-abiding Americans own such magazines by the tens of

17  millions.

18      46.    Detachable magazines capable of holding more than ten rounds are so common

19  that only seven states and the District of Columbia place any restrictions on them. Not

20  only are all those restrictions of recent vintage, they differ as to what capacity is

21  acceptable and for what types of firearms magazine-capacity should be restricted.[7]

22

23  _____

24      [6] For instance, the Evans rifle with its 34-round integral capacity would involve
25  cycling the action 34 times to completely unload it.

26      [7] Colorado (Colo. Rev. Stat. Ann. § 18-12-302) (15-round capacity maximum);
    Connecticut (Conn. Gen. Stat. Ann. § 53-202w) (10-round capacity maximum); District
    of Columbia (D.C. Code Ann. § 7-2506.01) (10-round capacity maximum); Hawaii
27  (Haw. Rev. Stat. Ann. § 134-8(c)) (10-round capacity maximum for handguns only);
    Maryland (Md. Code Ann., Crim. Law § 4-305(b)) (10-round capacity maximum);
28  Massachusetts (Mass. Gen. Laws Ann. ch. 140, § 131M) (10-round capacity maximum);

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

47.     There is little dispute that magazines having a capacity over 10 rounds are popular for self-defense purposes. The grip of a handgun is sized to the common human hand. If enough space exists inside the grip for detachable magazines capable of holding more than 10 rounds—as is true for most commonly sold handguns and rifles—it makes sense, from a self-defense perspective, to take advantage of that space by accommodating as much ammunition as possible. Each available round is an additional opportunity to end a threat. That is precisely why millions of Americans choose magazines over ten rounds for self-defense, including in the home.

**[California's Ban on Magazines Over Ten Rounds]**

48.     In 1999, the California legislature enacted Senate Bill 23 ("SB 23"), making it a crime, beginning January 1, 2000, to manufacture, import, sell, or transfer any "large-capacity magazine" in the state of California. S. B. 23, 1999-2000 Reg. Sess. (Cal. 1999) (codified at Cal. Penal Code § 32310 [formerly Cal. Penal Code § 12020(a)(2)]).[8] SB 23 defined "large-capacity magazine" as "any ammunition feeding device with the capacity to accept more than 10 rounds," but not including feeding devices that have been permanently altered to accommodate no more than 10 rounds or any .22 caliber tube ammunition feeding device. Cal. Penal Code § 16740 (formerly Cal. Penal Code § 12020(c)(25)).

49.     As originally enacted, California's restriction did not include "possession" as one of the prohibited activities relating to magazines over ten rounds. This meant that individuals who lawfully possessed such magazines prior to the enactment of SB 23 did not have to dispose of them.

---

New Jersey (N.J. Stat. Ann. § 2C:39-9(h)); (10-round capacity maximum); and New York (N.Y. Penal Law § 265.02(8)) (10-round capacity maximum).

[8]   In 2010, California enacted Senate Bill 1080 ("SB 1080"), which reorganized the Penal Code sections relating to firearms "without substantive change." S. B. 1080, 2009-2010 Reg. Sess. (Cal. 2010). Penal Code section 12020(a)(2) thus became Penal Code section 32310.

13

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

50.     In July 2016, however, the California legislature passed and the Governor signed Senate Bill 1446 ("SB 1446"), amending Section 32310 to also prohibit the mere possession of magazines capable of holding more than 10 rounds. S. B. 1446, 2015-2016 Reg. Sess. (Cal. 2016). On November 8, 2016, California voters approved Proposition 63, which made effectively the same amendment as SB 1446 did to Section 32310, prohibiting (again) the possession of magazines capable of holding more than 10 rounds.[9]

51.     Under either version of the recently amended Section 32310, any person in lawful possession of a magazine capable of holding more than ten rounds has until July 1, 2017, to: (1) remove it from the state; (2) sell it to a licensed firearms dealer; or (3) surrender it to law enforcement.

52.     Penalties for violating Section 32310 range from an infraction punishable by a fine of up to $100 to a felony punishable by a fine and/or imprisonment.

53.     California law identifies several exceptions to the ammunition magazine restrictions, including but not limited to possession by military and possession by law enforcement while acting "in the course and scope of their duties." *See* Cal. Penal Code §§ 32400-32450. None of the listed exceptions to Section 32310's magazine ban applies to the acquisition, making, and possession of magazines capable of holding more than ten rounds by law-abiding citizens, including Plaintiffs, for self-defense.

**[Violation of Plaintiffs' Right to Keep and Bear Arms]**

54.     Section 32310 prohibits magazines that come standard with or are commonly used in firearms that are "typically possessed by law-abiding citizens for lawful

---

[9] While laws passed by way of voter initiative generally supersede those made via legislation, Cal. Const. art. 2, § 10(c), Proposition 63 provides that its provisions may be amended "by a vote of 55 percent of the members of each house of the Legislature and signed by the Governor so long as such amendments are consistent with and further [its] intent . . .." SB 1446 was passed by such a majority, but before the people voted to adopt Proposition 63. It is thus unclear which controls. This is largely irrelevant because both versions amended Section 32310 (albeit in different subdivisions), however, to prohibit the possession of magazines capable of holding more than 10 rounds. Whichever version controls, Plaintiffs seek an injunction of Section 32310 for the same reasons.

1   purposes," *Heller*, 554 U.S. at 624-25, throughout the United States. Indeed, millions of
2   firearms—including the most popular models—that come stock from the factory with
3   magazines over ten rounds have been sold in the United States. People also buy such
4   magazines aftermarket by the millions. Notwithstanding California's description of the
5   prohibited magazines as being "large capacity," magazines with capacities of more than
6   ten rounds are, instead, *standard*-capacity for many common firearms that are lawfully
7   possessed in the clear majority of states.

8       55.    Prohibiting law-abiding adults from acquiring, keeping, possessing, and/or
9   transferring these commonly owned magazines implicates and violates their Second
10  Amendment rights. A total ban on standard-issue, commonly possessed magazines is not
11  remotely tailored to increasing public safety. To the contrary, limiting magazine capacity
12  to ten rounds decreases public safety.

13                    **[Violation of the Plaintiffs' Rights Under the Takings Clause]**

14      56.    Section 32310 makes it a crime for individuals to continue to possess
15  magazines that they lawfully acquired and presently lawfully possess.

16      57.    By forcing individuals who would otherwise keep their lawfully acquired
17  property to instead physically surrender that property without government compensation,
18  Section 32310 effects a per se unconstitutional taking. *See Horne*, 135 S. Ct. at 2427.

19      58.    In the alternative, to the extent that Section 32310 does not constitute a physical
20  taking, it is an unconstitutional regulatory taking.

21                    **[Violation of Plaintiffs' Right to Due Process]**

22      59.    Under the Due Process Clause, the government may deprive individuals of their
23  property only when doing so furthers a "legitimate governmental objective." *Lingle*, 544
24  U.S. at 542. The due process concerns are heightened when a law applies retroactively to
25  change the consequences of conduct that was lawful at the time. *See E. Enterps.*, 524
26  U.S. at 547-550 (Kennedy, J., concurring in part and dissenting in part).

27      60.    By making it a crime for individuals to continue to possess property that they
28  lawfully acquired, Section 32310 deprives individuals of protected property interests

without due process of law. For prohibiting law-abiding adults from possessing lawfully acquired and commonly owned magazines based solely on their ability to accept more than 10 rounds does not further a "legitimate governmental objective" in a permissible way. *Lingle*, 544 U.S. at 542.

## DECLARATORY JUDGMENT ALLEGATIONS

61.     There is an actual and present controversy between the parties. Plaintiffs contend that Section 32310 infringes on Plaintiffs' right to keep and bear arms under the Second and Fourteenth Amendments to the United States Constitution, by generally prohibiting commonly possessed ammunition feeding devices that it deems "large-capacity magazines." Plaintiffs also contend that Section 32310 violates the Takings Clause by requiring owners who lawfully purchased "large-capacity magazines" to surrender physical possession of their property to the government rather than keeping it in their possession. And Plaintiffs contend that Section 32310 violates the Due Process Clause by banning lawfully acquired magazines based on a feature (capacity to accept more than 10 rounds) that has no relation to enhancing public safety or any other valid governmental objective. Defendants deny these contentions. Plaintiffs desire a judicial declaration that the California Penal Code section 32310 violates Plaintiffs' constitutional rights. Plaintiffs should not be forced to choose between risking criminal prosecution and exercising their constitutional rights.

## INJUNCTIVE RELIEF ALLEGATIONS

62.     Plaintiffs are presently and continuously injured by Defendants' enforcement of California Penal Code section 32310 insofar as that provision violates Plaintiffs' rights under the Second Amendment, the Takings Clause, and the Due Process Clause by precluding the acquisition, possession, and use of firearm magazines that are "typically possessed by law-abiding citizens for lawful purposes" nationwide.

63.     If not enjoined by this Court, Defendants will continue to enforce Section 32310 in derogation of Plaintiffs' constitutional rights. Plaintiffs have no plain, speedy, and adequate remedy at law. Damages are indeterminate or unascertainable and, in any

16
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1  event, would not fully redress any harm suffered by Plaintiffs because they are unable to

2  engage in constitutionally protected activity due to California's ongoing enforcement of

3  Section 32310.

4

5  **FIRST CLAIM FOR RELIEF**
**Right to Keep and Bear Arms**

6  (U.S. Const., amends. II and XIV)

7  64.    Paragraphs 1-63 are realleged and incorporated by reference.

8  65.    Section 32310's definition of "large-capacity magazine" includes many firearm

9  magazines that come standard with or are common for firearms "typically possessed by

10  law-abiding citizens for lawful purposes" nationwide. Section 32310, therefore, generally

11  prohibits Californians, including Plaintiffs, from acquiring, keeping, possessing, and/or

12  transferring magazines protected by the Second Amendment, subject to significant

13  criminal penalties, including imprisonment.

14  66.    These restrictions on magazines that are commonly possessed throughout the

15  United States by law-abiding, responsible adults for lawful purposes infringe on the right

16  of the People of California, including Plaintiffs, to keep and bear protected arms as

17  guaranteed by the Second Amendment of the United States Constitution, and as made

18  applicable to California by the Fourteenth Amendment.

19  67.    In violation of the Second Amendment, Section 32310 prohibits law-abiding,

20  responsible adults, including Plaintiffs, who would otherwise do so, from acquiring,

21  keeping, possessing, and/or transferring magazines capable of holding more than ten

22  rounds that are in common use by law-abiding citizens for lawful purposes throughout

23  the United States.

24  68.    Section 32310's prohibitions extend into Plaintiffs' homes, where Second

25  Amendment protections are at their zenith, but also affects lawful and constitutionally

26  protected conduct such as hunting, recreational shooting, and competitive marksmanship

27  participation.

28  69.    Defendants cannot satisfy their burden of justifying Section 32310's restrictions

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

on the Second Amendment right of the People, including Plaintiffs, to acquire, keep, possess, transfer, and use magazines that are in common use by law-abiding adults throughout the United States for the core right of defense of self and home and other lawful purposes.

**SECOND CLAIM FOR RELIEF**
**Takings Clause**
(U.S. Const. amends. V, XIV)

70.    Paragraphs 1-69 are realleged and incorporated by reference.

71.    Section 32310 makes it a crime for individuals to continue to possess magazines that they lawfully acquired and presently lawfully possess.

72.    By forcing individuals who would otherwise keep their lawfully acquired property to instead physically surrender that property without government compensation, Section 32310 effects a per se unconstitutional taking. *See Horne*, 135 S. Ct. at 2427.

73.    In the alternative, to the extent that Section 32310 does not constitute a physical taking, it is an unconstitutional regulatory taking.

**THIRD CLAIM FOR RELIEF**
**Due Process Clause**
(U.S. Const. amend. XIV)

74.    Paragraphs 1-73 are realleged and incorporated by reference.

75.    Under the Due Process Clause, the government may deprive individuals of their property only when doing so furthers a "legitimate governmental objective." *Lingle*, 544 U.S. at 542. The due process concerns are heightened when a law applies retroactively to change the consequences of conduct that was lawful at the time. *See E. Enterps.*, 524 U.S. at 547-550 (Kennedy, J., concurring in part and dissenting in part).

76.    By making it a crime for individuals to continue to possess property that they lawfully acquired, Section 32310 deprives individuals of protected property interests without due process of law, as prohibiting law-abiding adults from possessing lawfully acquired and commonly owned magazines based solely on their ability to accept more than 10 rounds does not further a "legitimate governmental objective" in a permissible way. *Lingle*, 544 U.S. at 542.

18
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## PRAYER FOR RELIEF

Plaintiffs pray that the Court:

1.     Enter a declaratory judgment under 28 U.S.C. § 2201 that California Penal Code section 32310 is unconstitutional on its face or, alternatively, to the extent its prohibitions apply to law-abiding adults seeking to acquire, use, or possess firearm magazines that are in common use by the American public for lawful purposes, because such unlawfully infringes on the right of the People to keep and bear arms in violation of the Second and Fourteenth Amendments to the United States Constitution, unconstitutionally takes property without compensation in violation of the Takings Clause, and arbitrarily deprives Plaintiffs of protected property interests under the Due Process Clause.

2.     Issue an injunction enjoining Defendants and their officers, agents, and employees from enforcing California Penal Code section 32310 in its entirety, or, alternatively, to the extent such can be segregated from the rest of the statute, any provision of section 32310 that prohibits the acquiring, using, or possessing of firearm magazines that are in common use by the American public for lawful purposes;

3.     Award remedies available under 42 U.S.C. § 1983 and all reasonable attorneys' fees, costs, and expenses under 42 U.S.C. § 1988, or any other applicable law; and

4.     Grant any such other and further relief as the Court may deem proper.

Dated: May 17, 2017                          MICHEL & ASSOCIATES, P.C.


                                             /s/C.D. Michel_____
                                             C.D. Michel
                                             *Counsel for Plaintiffs*

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

# EXHIBIT A

**SAFETY CAUTION:**
**With the GLOCK pistol field stripped, the trigger should not be manually reset to its forward position and pulled, as damage to the trigger safety could result.**

**SAFETY CAUTION:**
**With the GLOCK pistol field stripped, do not manually pull the firing pin to the rear of the slide and allow it to snap forward, as doing so can damage the firing pin and the firing pin safety.**

## MAGAZINE DISASSEMBLY

Magazines do not normally need to be disassembled for cleaning each time your GLOCK pistol is cleaned. Disassembling and cleaning magazines at less frequent intervals (perhaps every 3-4 months) is normally sufficient, unless the magazines have been exposed to dirt or other adverse conditions or inspection indicates the need for cleaning.

When it is necessary to disassemble magazines for cleaning, proceed as follows:

**SAFETY CAUTION:**
**The magazine spring, follower, and inner floorplate are under spring tension, and can cause eye or other injury if not controlled during removal. Wear protective safety glasses to reduce the risk of eye injuries. Be sure to maintain downward pressure on the magazine spring, with your thumb, while disassembling.**

For all magazines with the standard magazine floorplate and magazine insert, insert punch fully into the opening in the floorplate (Fig. 13). Push the magazine insert down into the magazine tube, and with the punch still in place, pull the floor plate forward with the punch while holding firmly on the sides of the magazine near its base. Remove the floor plate (Fig. 10), the magazine insert, the magazine spring and the follower.



FIGURE 10

FIGURE 11



FIGURE 12

**WARNING:** THE MAGAZINE SPRING IS UNDER COMPRESSION. BE SURE TO MAINTAIN DOWNWARD PRESSURE ON MAGAZINE SPRING WITH YOUR THUMB WHILE DISASSEMBLING. FAILURE TO DO SO COULD RESULT IN INJURY.

For older magazines without the magazine, insert, press inward with thumb and first finger as you push the magazine floor plate forward or use a hard surface (Fig. 11). As soon as the floor plate starts to move, reposition hand so thumb retains magazine spring. Remove the floor plate, magazine spring and follower.

45

For GLOCK magazines with a retaining pin visible in the center hole:

The retaining pin is part of a reinforcement plate. To remove the floorplate the reinforcement plate is disengaged by pushing it into the magazine tube. This is accomplished by pushing the retaining pin in with a punch (Figure 13). Then follow the procedures outlined above.



**FIGURE 13**

## CLEANING THE FIELD STRIPPED PISTOL

**BARREL.** Once field stripped, the barrel and chamber are easily cleaned from the chamber end using a bore brush and solvent. Standard firearm solvents can be used on the pistol. The inside of both the chamber and barrel should be wiped completely dry using clean patches once they have been thoroughly cleaned.

**SLIDE.** The slide rail cuts should be cleaned of dirt and debris by using a clean patch on the end of a toothbrush-type cleaning tool. Note that the copper colored lubricant found on portions of the slide of brand new GLOCK pistols should not be removed, as it will help to provide long-term lubrication of the slide. The breech face and the area under the extractor claw should be held muzzle down and cleaned with a toothbrush-type cleaning tool, and should both be absolutely dry and free of any dirt or debris after cleaning. All other exposed areas of the slide should be checked for cleanliness, and wiped or brushed clean as required.

**FRAME.** The frame should be checked for cleanliness. Exposed parts in the frame may be wiped with a clean, soft cloth that has been slightly dampened with a quality firearm cleaning solvent. All solvent should then be wiped from the parts so that they are clean and dry.

**MAGAZINE.** When necessary, the disassembled magazines can be brushed out with a dry brush, and the magazine springs and followers wiped off with a soft, clean cloth. If solvent or lubricant are used, they must be completely dried from the magazine parts prior to reassembly to prevent contamination of ammunition and possible failures to fire.



**FIGURE 14**

## LUBRICATING THE FIELD STRIPPED PISTOL

To properly lubricate your GLOCK pistol after it has been thoroughly cleaned and dried, use a clean patch that has been slightly dampened with quality gun oil. Wipe the outside of barrel, including the barrel hood and lugs, the inside top of the slide forward of the ejection port where the barrel hood rubs against the slide and the opening that the barrel slides through in front of the slide. One drop of oil should be spread along the entire length of each slide rail cut. Most importantly, a drop of oil is needed (Figure 14) where the rear end of the trigger bar touches the connector at the right rear corner of the frame.

46

ROB BONTA
Attorney General of California
R. MATTHEW WISE
Supervising Deputy Attorney General
ROBERT L. MEYERHOFF
KEVIN J. KELLY
Deputy Attorneys General
JOHN D. ECHEVERRIA
Deputy Attorney General
State Bar No. 268843
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA  94102-7004
 Telephone:  (415) 510-3479
 Fax:  (415) 703-1234
 Email:  John.Echeverria@doj.ca.gov
*Attorneys for Defendant Rob Bonta,*
*in his official capacity as Attorney General*
*of the State of California*

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **VIRGINIA DUNCAN, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**ROB BONTA, in his official capacity as Attorney General of the State of California,**<br><br>Defendant. | Case No. 3:17-cv-1017-BEN-JLB<br><br>**NOTICE OF APPEAL**<br><br>Courtroom:   5A<br>Judge:   Hon. Roger T. Benitez<br>Action Filed:  May 17, 2017 |

1    **PLEASE TAKE NOTICE** that Defendant-Appellant Rob Bonta, in his

2    official capacity as Attorney General of the State of California, hereby appeals to

3    the United States Court of Appeals for the Ninth Circuit from this Court's Decision

4    and permanent injunction, entered on September 22, 2023 (Dkt. 149).[1]

5    Dated:  September 22, 2023                    Respectfully submitted,

6                                                  ROB BONTA
                                                   Attorney General of California
7                                                  R. MATTHEW WISE
                                                   Supervising Deputy Attorney General
8                                                  ROBERT L. MEYERHOFF
                                                   KEVIN J. KELLY
9                                                  Deputy Attorneys General

10

11                                                 *s/ John D. Echeverria*

12                                                 JOHN D. ECHEVERRIA
                                                   Deputy Attorney General
13                                                 *Attorneys for Defendant Rob Bonta,*
                                                   *in his official capacity as Attorney*
14                                                 *General of the State of California*

15

16

17

18

19

20

21

22

23

24

25

26
   _____
27   [1] This is a new appeal taken following a remand from the United States
     Supreme Court and then the en banc court.  *See* Ninth Circuit General Order 3.6;
28   *Duncan v. Bonta*, No. 21-1194 (June 30, 2022); *Duncan v. Bonta*, 49 F.4th 1228
     (9th Cir. 2022) (en banc).

## CERTIFICATE OF SERVICE

Case Name:  *Duncan, et al. v. Bonta*      Case No.  **3:17-cv-01017-BEN-JLB**

I hereby certify that on September 22, 2023, I electronically filed the following document with the Clerk of the Court by using the CM/ECF system:

### NOTICE OF APPEAL

I certify that **all** participants in the case are registered CM/ECF users and that service will be electronically accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct.

Executed on September 22, 2023, at San Francisco, California.

*s/ John D. Echeverria*

JOHN D. ECHEVERRIA
Deputy Attorney General

APPEAL,CLOSED,STAYED,ENE,Rule60b

## U.S. District Court
## Southern District of California (San Diego)
## CIVIL DOCKET FOR CASE #: 3:17-cv-01017-BEN-JLB

Duncan et al v. Becerra et al                              Date Filed: 05/17/2017
Assigned to: Judge Roger T. Benitez                       Date Terminated: 03/29/2019
Referred to: Magistrate Judge Jill L. Burkhardt           Jury Demand: None
Related Cases: 3:18-cv-00802-BEN-JLB                       Nature of Suit: 950 Constitutional - State Statute
           3:22-cv-01461-BEN-JLB       Jurisdiction: Federal Question
Case in other court: USCA, 17-56081
           USCA, 19-55376
           Supreme Court of the United States, 21-01194
           USCA, 23-55805
Cause: 42:1983cv Civil Rights Act - Civil Action for Deprivation of
Rights

**Plaintiff**

**Virginia Duncan**                    represented by    **Carl D. Michel**
                                           Michel & Associates PC
                                         180 East Ocean Boulevard
                                         Suite 200
                                         Long Beach, CA 90802
                                         (562) 216-4444
                                         Fax: (562)216-4445
                                         Email: cmichel@michellawyers.com
                                         *LEAD ATTORNEY*
                                         *ATTORNEY TO BE NOTICED*

                                         **Anna M. Barvir**
                                         Michel & Associates, P. C.
                                         180 East Ocean Blvd.
                                         Suite 200
                                         Long Beach, CA 90802
                                         562-216-4444
                                         Fax: 562-216-4445
                                         Email: abarvir@michellawyers.com
                                         *ATTORNEY TO BE NOTICED*

                                         **Sean Brady**
                                         Michel & Associates PC
                                         180 East Ocean Boulevard
                                         Suite 200
                                         Long Beach, CA 90802
                                         (562) 216-4444
                                         Fax: (562) 216-4445
                                         Email: sbrady@michellawyers.com
                                         *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Richard Lewis**
*TERMINATED: 01/09/2018*

represented by **Carl D. Michel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Anna M. Barvir**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sean Brady**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Patrick Lovette**

represented by **Carl D. Michel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Anna M. Barvir**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sean Brady**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**David Marguglio**

represented by **Carl D. Michel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Anna M. Barvir**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sean Brady**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Christopher Waddell**

represented by **Carl D. Michel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Anna M. Barvir**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sean Brady**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**California Rifle & Pistol Association, Incorporated**
*a California corporation*

represented by **Carl D. Michel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Anna M. Barvir**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sean Brady**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Xavier Becerra**
*in his official capacity as Attorney General of the State of California*

represented by **Attorney General**
State of California
Office of the Attorney General
600 West Broadway
Suite 1800
San Diego, CA 92101-3702
(619)645-2076
Fax: (619)645-2313
Email: docketingsdawt@doj.ca.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alexandra Robert Gordon**
CA Dept of Justice, Attorney General's Office
455 Golden Gate Avenue
Suite 11000
San Francisco, CA 94102-7004
415-703-5509
Fax: 415-703-5480
Email: Alexandra.RobertGordon@doj.ca.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Anthony P O'Brien**
California Office of Attorney General
1300 I Street
Suite 125
Sacramento, CA 95814
916-210-6002
Fax: 916-324-8835
Email: Anthony.OBrien@doj.ca.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John Darrow Echeverria**
California Attorney General
455 Golden Gate Avenue
Suite 11000
San Francisco, CA 94102-7004
415-510-3479

Fax: 415-703-1234
Email: John.Echeverria@doj.ca.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert Leslie Meyerhoff**
California Attorney General
300 South Springs Street
Suite 1702
Los Angeles, CA 90036
213-269-6177
Email: robert.meyerhoff@doj.ca.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kevin James Kelly**
California Attorney General
300 South Spring Street
Suite 9012
Los Angeles, CA 90013
213-269-6615
Email: Kevin.Kelly@doj.ca.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**Does 1-10**

**Movant**

| **Law Center to Prevent Gun Violence** | represented by | **Anthony P Schoenberg** |
| --- | --- | --- |

Farella Braun & Martel LLP
One Bush Street
Suite 900
San Francisco, CA 94104
415-954-4963
Fax: 415-954-4480
Email: TSchoenberg@fbm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Movant**

**Everytown for Gun Safety**

| Date Filed | # | Docket Text |
| --- | --- | --- |
| 05/17/2017 | 1 | COMPLAINT against All Defendants ( Filing fee $ 400 receipt number 0974-10088872.), filed by California Rifle & Pistol Association, Incorporated, Richard Lewis, David Margulio, Christopher Waddell, Virginia Duncan, Patrick Lovette. (Attachments: # 1 Civil Cover Sheet)<br><br>The new case number is 3:17-cv-1017-BEN-JLB. Judge Roger T. Benitez and Magistrate Judge Jill L. Burkhardt are assigned to the case. (Michel, Carl)(fth) (sjt). (Entered: 05/18/2017) |
| 05/18/2017 | 2 | Summons Issued.<br>**Counsel receiving this notice electronically should print this summons and serve it in accordance with Rule 4, Fed.R.Civ.P and LR 4.1.** (fth) (Entered: 05/18/2017) |

| | | |
|---|---|---|
| 05/25/2017 | 3 | SUMMONS Returned Executed by California Rifle & Pistol Association, Incorporated, Richard Lewis, David Marguglio, Christopher Waddell, Virginia Duncan, Patrick Lovette. Xavier Becerra served. (Michel, Carl) (Entered: 05/25/2017) |
| 05/25/2017 | 4 | Ex Parte MOTION to Shorten Time *to Hear Plaintiffs' Motion for Preliminary Injunction* by California Rifle & Pistol Association, Incorporated, Virginia Duncan, Richard Lewis, Patrick Lovette, David Marguglio, Christopher Waddell. (Attachments: # 1 Memo of Points and Authorities in Support of Ex Parte Application for Order Shortening Time, # 2 Declaration of Anna M. Barvir in Support of Ex Parte Application for Order Shortening Time, # 3 Declaration of Sean Brady in Support of Ex Parte Application for Order Shortening Time)(Michel, Carl) (Entered: 05/25/2017) |
| 05/26/2017 | 5 | ORDER Granting 4 Ex Parte Application to Shorten Time. Motion Hearing set for 6/13/2017 at 10:00 AM in Courtroom 5A before Judge Roger T. Benitez. Signed by Judge Roger T. Benitez on 5/26/2017. (jjg) (Entered: 05/26/2017) |
| 05/26/2017 | 6 | MOTION for Preliminary Injunction by California Rifle & Pistol Association, Incorporated, Virginia Duncan, Richard Lewis, Patrick Lovette, David Marguglio, Christopher Waddell. (Attachments: # 1 Memo of Points and Authorities in Support of Plaintiffs' Motion for Preliminary Injunction, # 2 Declaration of Anna M. Barvir in Support of Plaintiffs' Motion for Preliminary Injunction, # 3 Exhibit F-G to Declaration of Anna M. Barvir, # 4 Exhibit H-V to Declaration of Anna M. Barvir, # 5 Exhibit W-GG to Declaration of Anna M. Barvir, # 6 Exhibit HH-RR to Declaration of Anna M. Barvir, # 7 Exhibit SS-LLL to Declaration of Anna M. Barvir, # 8 Declaration of Massad Ayoob in Support of Plaintiffs' Motion for Preliminary Injunction, # 9 Declaration of James Curcuruto in Support of Plaintiffs' Motion for Preliminary Injunction, # 10 Declaration of Steven Helsley in Support of Plaintiffs' Motion for Preliminary Injunction, # 11 Declaration of Gary Kleck in Support of Plaintiffs' Motion for Preliminary Injunction, # 12 Declaration of Virginia Duncan in Support of Plaintiffs' Motion for Preliminary Injunction, # 13 Declaration of Richard Lewis in Support of Plaintiffs' Motion for Preliminary Injunction, # 14 Declaration of Patrick Lovette in Support of Plaintiffs' Motion for Preliminary Injunction, # 15 Declaration of David Marguglio in Support of Plaintiffs' Motion for Preliminary Injunction, # 16 Declaration of Christopher Waddell in Support of Plaintiffs' Motion for Preliminary Injunction, # 17 Declaration of Michael Barranco in Support of Plaintiffs' Motion for Preliminary Injunction) (Michel, Carl) (Entered: 05/26/2017) |
| 05/30/2017 | 7 | NOTICE of Appearance by Alexandra Robert Gordon on behalf of Xavier Becerra (Gordon, Alexandra)Attorney Alexandra Robert Gordon added to party Xavier Becerra(pty:dft) (Entered: 05/30/2017) |
| 05/30/2017 | 8 | AMENDED DOCUMENT by California Rifle & Pistol Association, Incorporated, Virginia Duncan, Richard Lewis, Patrick Lovette, David Marguglio, Christopher Waddell. Amendment to 6 MOTION for Preliminary Injunction *Certificate of Service*. (Michel, Carl) (knb). (Entered: 05/30/2017) |
| 06/05/2017 | 9 | RESPONSE in Opposition re 6 MOTION for Preliminary Injunction filed by Xavier Becerra. (Gordon, Alexandra) (knb). (Entered: 06/05/2017) |
| 06/05/2017 | 10 | MOTION for Leave to File *Brief of Amicus Curiae* by Law Center to Prevent Gun Violence. (Attachments: # 1 Memo of Points and Authorities in Support of Motion for Leave to Participate as Amicus Curiae)(Schoenberg, Anthony)Attorney Anthony P Schoenberg added to party Law Center to Prevent Gun Violence(pty:mov) (knb). (Entered: 06/05/2017) |
| 06/05/2017 | 11 | AFFIDAVIT in Opposition re 6 MOTION for Preliminary Injunction *of Lucy Allen* filed by Xavier Becerra. (Gordon, Alexandra) (knb). (Entered: 06/05/2017) |
| 06/05/2017 | 12 | AFFIDAVIT in Opposition re 6 MOTION for Preliminary Injunction *by John Donohue* filed by Xavier Becerra. (Gordon, Alexandra) (knb). (Entered: 06/05/2017) |
| 06/05/2017 | 13 | AFFIDAVIT in Opposition re 6 MOTION for Preliminary Injunction *by Blake Graham* filed by Xavier Becerra. (Gordon, Alexandra) (knb). (Entered: 06/05/2017) |

| | | |
|---|---|---|
| 06/05/2017 | 14 | AFFIDAVIT in Opposition re 6 MOTION for Preliminary Injunction *by Ken James* filed by Xavier Becerra. (Gordon, Alexandra) (knb). (Entered: 06/05/2017) |
| 06/05/2017 | 15 | AFFIDAVIT in Opposition re 6 MOTION for Preliminary Injunction *by Daniel W. Webster* filed by Xavier Becerra. (Gordon, Alexandra) (knb). (Entered: 06/05/2017) |
| 06/05/2017 | 16 | Amicus Curiae Appearance entered by Anthony P Schoenberg on behalf of Law Center to Prevent Gun Violence. (Attachments: # 1 Exhibit A to Brief of Amicus Curiae Law Center to Prevent Gun Violence in Support of Defendant's Opposition to Plaintiffs' Motion for Preliminary Injunction) (Schoenberg, Anthony) (knb). (Entered: 06/05/2017) |
| 06/05/2017 | 17 | AFFIDAVIT in Opposition re 6 MOTION for Preliminary Injunction *of Alexandra Robert Gordon* filed by Xavier Becerra. (Attachments: # 1 Exhibits 1-15 to Dec of Alexandra Robert Gordon) (Gordon, Alexandra) (knb). (Entered: 06/05/2017) |
| 06/05/2017 | 18 | Exhibit List *16-108* re 17 AFFIDAVIT in Opposition by Xavier Becerra. (Attachments: # 1 Exhibit 25-43, # 2 Exhibit 44-54, # 3 Exhibit 55-56, # 4 Exhibit 57-62, # 5 Exhibit 63-69, # 6 Exhibit 70-73, # 7 Exhibit 74-76, # 8 Exhibit 77-84, # 9 Exhibit 85-108)(Gordon, Alexandra) (knb). (Entered: 06/05/2017) |
| 06/06/2017 | 19 | NOTICE of Appearance by Anthony P O'Brien on behalf of Xavier Becerra (O'Brien, Anthony)Attorney Anthony P O'Brien added to party Xavier Becerra(pty:dft) (Entered: 06/06/2017) |
| 06/07/2017 | 20 | NOTICE of Appearance by Anna M. Barvir on behalf of California Rifle & Pistol Association, Incorporated, Virginia Duncan, Richard Lewis, Patrick Lovette, David Marguglio, Christopher Waddell (Barvir, Anna)Attorney Anna M. Barvir added to party California Rifle & Pistol Association, Incorporated(pty:pla), Attorney Anna M. Barvir added to party Virginia Duncan(pty:pla), Attorney Anna M. Barvir added to party Richard Lewis(pty:pla), Attorney Anna M. Barvir added to party Patrick Lovette(pty:pla), Attorney Anna M. Barvir added to party David Marguglio(pty:pla), Attorney Anna M. Barvir added to party Christopher Waddell(pty:pla) (Entered: 06/07/2017) |
| 06/07/2017 | 21 | Joint MOTION for Extension of Time to File Answer by Xavier Becerra. (O'Brien, Anthony) (knb). (Entered: 06/07/2017) |
| 06/07/2017 | 22 | NOTICE of Appearance by Sean Brady on behalf of California Rifle & Pistol Association, Incorporated, Virginia Duncan, Richard Lewis, Patrick Lovette, David Marguglio, Christopher Waddell (Brady, Sean)Attorney Sean Brady added to party California Rifle & Pistol Association, Incorporated(pty:pla), Attorney Sean Brady added to party Virginia Duncan(pty:pla), Attorney Sean Brady added to party Richard Lewis(pty:pla), Attorney Sean Brady added to party Patrick Lovette(pty:pla), Attorney Sean Brady added to party David Marguglio(pty:pla), Attorney Sean Brady added to party Christopher Waddell(pty:pla) (Entered: 06/07/2017) |
| 06/09/2017 | 23 | REPLY to Response to Motion re 6 MOTION for Preliminary Injunction filed by California Rifle & Pistol Association, Incorporated, Virginia Duncan, Law Center to Prevent Gun Violence, Richard Lewis, Patrick Lovette, David Marguglio, Christopher Waddell. (Attachments: # 1 Supplement Objections to Defendants' Evidence in Support of Opposition to Motion for Preliminary Injunction, # 2 Declaration of Anna M. Barvir in Support of Motion for Preliminary Injunction, # 3 Declaration of Gary Kleck in Support of Motion for Preliminary Injunction) (Michel, Carl) (knb). (Entered: 06/09/2017) |
| 06/12/2017 | 24 | OBJECTION by Xavier Becerra re 23 Reply to Response to Motion,, *Barvir and Kleck declarations*. (Gordon, Alexandra) (Entered: 06/12/2017) |
| 06/12/2017 | 25 | ANSWER to 1 Complaint, by Xavier Becerra.(Gordon, Alexandra) (Entered: 06/12/2017) |
| 06/13/2017 | 26 | Minute Order for proceedings held before Judge Roger T. Benitez: Motion Hearing held on 6/13/2017. Submitting 6 MOTION for Preliminary Injunction filed by Virginia Duncan, Patrick Lovette, David Marguglio, California Rifle & Pistol Association, Incorporated, Christopher Waddell, Richard Lewis. Court to issue written Order. (Court Reporter/ECR Debbie OConnell). |

| | | |
|---|---|---|
| | | (Plaintiff Attorney Clint B. Monfort, Sean A. Brady).(Defendant Attorney Alexandra Robert Gordon). (no document attached) (gxr) (Entered: 06/14/2017) |
| 06/15/2017 | 27 | NOTICE OF RELATED CASE(S) by California Rifle & Pistol Association, Incorporated, Virginia Duncan, Richard Lewis, Patrick Lovette, David Marguglio, Christopher Waddell of case(s) 2:17-cv-00903-WBS-KJN . (Michel, Carl) Proposed Now Number Order not prepared - related case in different district on 6/16/2017 (knb). (Entered: 06/15/2017) |
| 06/29/2017 | 28 | ORDER Granting 6 Motion for Preliminary Injunction. Signed by Judge Roger T. Benitez on 6/29/2017. (knb) (Entered: 06/29/2017) |
| 07/06/2017 | 29 | NOTICE AND ORDER for Early Neutral Evaluation Conference. Early Neutral Evaluation set for 8/2/2017 02:45 PM in chambers before Magistrate Judge Jill L. Burkhardt. In the event the case does not settle at the ENE, a Case Management Conference is set for August 2, 2017 and will be held at the conclusion of the ENE Conference. Joint Discovery Plan due 7/21/2017. Signed by Magistrate Judge Jill L. Burkhardt on 7/6/2017.(knb) (Entered: 07/06/2017) |
| 07/12/2017 | 30 | DECLARATION re 28 Order on Motion for Preliminary Injunction *Re: Notice of Order* by Defendant Xavier Becerra. (Gordon, Alexandra) (knb). (Entered: 07/12/2017) |
| 07/19/2017 | 31 | REPORT of Rule 26(f) Planning Meeting. (Barvir, Anna) (Entered: 07/19/2017) |
| 07/27/2017 | 32 | NOTICE OF APPEAL to the 9th Circuit as to 28 Order granting Motion for Preliminary Injunction, by Xavier Becerra. (Filing fee $ 505 receipt number 0974-10288817.) (Notice of Appeal electronically transmitted to US Court of Appeals.) (Gordon, Alexandra) (Main Document 32 replaced on 7/27/2017 with printed .pdf of document, which was originally e-filed as an active fillable form. Edited docket text re linked Order.) (akr). (Entered: 07/27/2017) |
| 07/27/2017 | 33 | NOTICE *of Representation Statement* re 32 Notice of Appeal, by Xavier Becerra. (Gordon, Alexandra). (Modified on 7/27/2017: Added link to Notice of Appeal.) (akr). (Entered: 07/27/2017) |
| 07/28/2017 | 34 | USCA Case Number 17-56081 for 32 Notice of Appeal to 9th Circuit, filed by Xavier Becerra. (akr) (Entered: 07/28/2017) |
| 07/28/2017 | 35 | ORDER of USCA as to 32 Notice of Appeal to 9th Circuit, filed by Xavier Becerra. The appeal filed July 27, 2017 is a preliminary injunction appeal. Accordingly, Ninth Circuit Rule 3-3 shall apply. The mediation questionnaire is due three days after the date of this order. If they have not already done so, within 7 calendar days after the filing date of this order, the parties shall make arrangements to obtain from the court reporter an official transcript of proceedings in the USDC that will be included in the record on appeal. Briefing schedule issued and instructions issued. Failure to file timely the opening brief shall result in the automatic dismissal of this appeal by the Clerk for failure to prosecute. (akr) (Entered: 07/28/2017) |
| 08/02/2017 | 36 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings (Motion Hearing) held on 6/13/2017, before Judge Roger T. Benitez. Court Reporter/Transcriber: Deborah M. O'Connell. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or the Court Reporter/Transcriber. If redaction is necessary, parties have seven calendar days from the file date of the Transcript to E-File the Notice of Intent to Request Redaction. The following deadlines would also apply if requesting redaction: Redaction Request Statement due to Court Reporter/Transcriber 8/23/2017. Redacted Transcript Deadline set for 9/5/2017. Release of Transcript Restriction set for 10/31/2017. (akr) (Entered: 08/02/2017) |
| 08/02/2017 | 37 | Minute Entry for proceedings held before Magistrate Judge Jill L. Burkhardt: Telephonic Early Neutral Evaluation Conference held on 8/2/2017. The case did not settle. Telephonic Case Management Conference held on 8/2/2017. Scheduling order to follow. (Plaintiff Attorney Anna M. Barvir). (Defendant Attorney Alexandra Robert Gordon). (no document attached) (smm) (Entered: 08/03/2017) |

| | | |
|---|---|---|
| 08/04/2017 | 38 | SCHEDULING ORDER: Memorandum of Contentions of Fact and Law due by 5/4/2018. Proposed Pretrial Order due by 5/25/2018. Final Pretrial Conference set for 6/4/2018 10:30 AM before Judge Roger T. Benitez. Signed by Magistrate Judge Jill L. Burkhardt on 8/4/2017.(knb) (Entered: 08/04/2017) |
| 08/07/2017 | 39 | MOTION to Stay *Proceedings Pending Appeal* by Xavier Becerra. (Attachments: # 1 Memo of Points and Authorities in Support of Motion to Stay Proceedings Pending Appeal, # 2 Proposed Order, # 3 Proof of Service)(Gordon, Alexandra) (knb). (Entered: 08/07/2017) |
| 08/28/2017 | 40 | RESPONSE in Opposition re 39 MOTION to Stay *Proceedings Pending Appeal* filed by California Rifle & Pistol Association, Incorporated, Virginia Duncan, Richard Lewis, Patrick Lovette, David Marguglio, Christopher Waddell. (Barvir, Anna) (knb). (Entered: 08/28/2017) |
| 08/29/2017 | 41 | Minute Order issued by the Honorable Roger T. Benitez: Submitting 39 MOTION to Stay *Proceedings Pending Appeal*. Court to issue written Order. Motion Hearing date of 9/11/2017 10:30AM is hereby vacated. (no document attached) (gxr) (Entered: 08/29/2017) |
| 09/05/2017 | 42 | REPLY to Response to Motion re 39 MOTION to Stay *Proceedings Pending Appeal* filed by Xavier Becerra. (Gordon, Alexandra) (knb). (Entered: 09/05/2017) |
| 09/07/2017 | 43 | ORDER of USCA as to 32 Notice of Appeal to 9th Circuit, filed by Xavier Becerra. Appellant's unopposed motion for a second extension of time to file the opening brief is granted. Briefing schedule issued. (akr) (Entered: 09/07/2017) |
| 10/10/2017 | 44 | ORDER Denying 39 Motion to Stay Proceedings. Signed by Judge Roger T. Benitez on 10/10/2017. (knb) (Entered: 10/10/2017) |
| 12/01/2017 | 45 | Joint MOTION for Extension of Time to File *Motions for Summary Judgment* by California Rifle & Pistol Association, Incorporated, Virginia Duncan, Richard Lewis, Patrick Lovette, David Marguglio, Christopher Waddell. (Attachments: # 1 Proof of Service)(Barvir, Anna) (anh). (Entered: 12/01/2017) |
| 12/05/2017 | 46 | ORDER granting 45 Motion for Extension of Time to File Motions for Summary Judgment. Signed by Magistrate Judge Jill L. Burkhardt on 12/5/2017. (anh) (Entered: 12/06/2017) |
| 12/28/2017 | 47 | MOTION to Dismiss Party *Plaintiff Richard Lewis* by California Rifle & Pistol Association, Incorporated, Virginia Duncan, Richard Lewis, Patrick Lovette, David Marguglio, Christopher Waddell. (Barvir, Anna) (anh). (Entered: 12/28/2017) |
| 01/09/2018 | 48 | ORDER granting 47 Plaintiffs' Unopposed Motion For Dismissal of Plaintiff Richard Lewis. Richard Lewis terminated. Signed by Judge Roger T. Benitez on 1/9/2018. (anh) (Entered: 01/09/2018) |
| 03/02/2018 | 49 | Joint MOTION to Adopt Stipulated Briefing Schedule *for Plaintiffs' Motion for Summary Judgment* by California Rifle & Pistol Association, Incorporated, Virginia Duncan, Patrick Lovette, David Marguglio, Christopher Waddell. (Barvir, Anna)(anh). (Entered: 03/02/2018) |
| 03/05/2018 | 50 | MOTION for Summary Judgment by California Rifle & Pistol Association, Incorporated, Virginia Duncan, Patrick Lovette, David Marguglio, Christopher Waddell. (Attachments: # 1 Memo of Points and Authorities in Support of Plaintiffs' Motion for Summary Judgment, # 2 Request for Judicial Notice in Support of Plaintiffs' Motion for Summary Judgment, # 3 Declaration of Virginia Duncan in Support of Plaintiffs' Motion for Summary Judgment, # 4 Declaration of David Marguglio in Support of Plaintiffs' Motion for Summary Judgment, # 5 Declaration of Patrick Lovette in Support of Plaintiffs' Motion for Summary Judgment, # 6 Declaration of Christopher Waddell in Support of Plaintiffs' Motion for Summary Judgment, # 7 Declaration of Richard Francis Travis in Support of Plaintiffs' Motion for Summary Judgment, # 8 Declaration of Anna M. Barvir in Support of Plaintiffs' Motion for Summary Judgment; Exhibits 1-5, # 9 Exhibit 6-9 to the Declaration of Anna M. Barvir, # 10 Exhibit 10-19 to the Declaration of Anna M. Barvir, # 11 Exhibit 20-26 to the Declaration of Anna M. Barvir, # 12 Exhibit 27-30 to the Declaration of Anna M. Barvir, # 13 Exhibit 31-32 to the Declaration of Anna M. Barvir, # 14 Exhibit 33-42 to the Declaration of Anna M. Barvir, # 15 Exhibit 43-51 to the Declaration of Anna M. Barvir, # 16 |

| | | |
|---|---|---|
| | | Exhibit 52 Part 1 of 2 to the Declaration of Anna M. Barvir, # 17 Exhibit 52 Part 2 of 2 to Exhibit 55 to the Declaration of Anna M. Barvir, # 18 Exhibit 56-68 to the Declaration of Anna M. Barvir, # 19 Proof of Service)(Barvir, Anna) (anh). (Entered: 03/05/2018) |
| 03/16/2018 | 51 | NOTICE of Appearance by John Darrow Echeverria on behalf of Xavier Becerra (Echeverria, John)Attorney John Darrow Echeverria added to party Xavier Becerra(pty:dft) (anh). (Entered: 03/16/2018) |
| 04/09/2018 | 52 | Joint MOTION to Set Aside *Upcoming Pretrial Deadlines Pending Resolution of Plaintiffs' Motion for Summary Judgment* by Xavier Becerra. (Attachments: # 1 Proof of Service)(O'Brien, Anthony) (anh). (Entered: 04/09/2018) |
| 04/09/2018 | 53 | RESPONSE in Opposition re 50 MOTION for Summary Judgment *or, Alternatively, Partial Summary Judgment* filed by Xavier Becerra. (Attachments: # 1 Request for Judicial Notice in Support of Defendant's Opposition to Plaintiffs' Motion for Summary Judgment or, Alternatively, Partial Summary Judgment; Declaration of John D. Echeverria, # 2 Declaration of Blake Graham in Opposition to Plaintiffs' Motion for Summary Judgment or, Alternatively, Partial Summary Judgment, # 3 Declaration of Ken James in Opposition to Plaintiffs' Motion for Summary Judgment or, Alternatively, Partial Summary Judgment, # 4 Declaration of John D. Echeverria in Support of Defendant's Opposition to Plaintiffs' Motion for Summary Judgment or, Alternatively, Partial Summary Judgment; Exhibits 1-3, # 5 Exhibit 4-6 to the Declaration of John D. Echeverria in Support of Defendant's Opposition to Plaintiffs' Motion for Summary Judgment or, Alternatively, Partial Summary Judgment, # 6 Exhibit 7-11 to the Declaration of John D. Echeverria in Support of Defendant's Opposition to Plaintiffs' Motion for Summary Judgment or, Alternatively, Partial Summary Judgment, # 7 Exhibit 12-15 to the Declaration of John D. Echeverria in Support of Defendant's Opposition to Plaintiffs' Motion for Summary Judgment or, Alternatively, Partial Summary Judgment, # 8 Exhibit 16-19 to the Declaration of John D. Echeverria in Support of Defendant's Opposition to Plaintiffs' Motion for Summary Judgment or, Alternatively, Partial Summary Judgment, # 9 Exhibit 20-23 to the Declaration of John D. Echeverria in Support of Defendant's Opposition to Plaintiffs' Motion for Summary Judgment or, Alternatively, Partial Summary Judgment, # 10 Exhibit 24-28 to the Declaration of John D. Echeverria in Support of Defendant's Opposition to Plaintiffs' Motion for Summary Judgment or, Alternatively, Partial Summary Judgment, # 11 Exhibit 29-33 to the Declaration of John D. Echeverria in Support of Defendant's Opposition to Plaintiffs' Motion for Summary Judgment or, Alternatively, Partial Summary Judgment, # 12 Exhibit 34-43 to the Declaration of John D. Echeverria in Support of Defendant's Opposition to Plaintiffs' Motion for Summary Judgment or, Alternatively, Partial Summary Judgment, # 13 Notice of Defendant's Objections to Evidence Filed in Support of Plaintiffs' Motion for Summary Judgment, # 14 Proof of Service)(Echeverria, John) (anh). (Entered: 04/09/2018) |
| 04/16/2018 | 54 | MOTION for Leave to File */Participate as Amicus Curiae* by Everytown for Gun Safety. (Attachments: # 1 Memo of Points and Authorities, # 2 Proposed Order, # 3 Proposed Amicus Brief)(Potischman, Neal) QC Mailer Sent Re: Proposed Order (anh). (Entered: 04/16/2018) |
| 04/18/2018 | 55 | ORDER granting 54 Motion of Everytown for Gun Safety for Leave to Participate As Amicus Curiae. Signed by Judge Roger T. Benitez on 4/18/2018. (anh) (Entered: 04/18/2018) |
| 04/18/2018 | 56 | Brief of Amicus Curiae Everytown For Gun Safety in Support of 53 Defendant's Opposition to Plaintiffs' Motion for Summary judgment or, Alternatively, Partial Summary Judgment by Movant Everytown for Gun Safety. (anh) (Entered: 04/18/2018) |
| 04/23/2018 | 57 | REPLY - Other re 53 Response in Opposition to Motion,,,,,,,,,, filed by California Rifle & Pistol Association, Incorporated, Virginia Duncan, Patrick Lovette, David Marguglio, Christopher Waddell. (Attachments: # 1 Declaration of Anna M. Barvir in Support of Plaintiffs' Motion for Summary Judgment or, Alternatively, Partial Summary Judgment; Exhibits 87-88, # 2 Supplement Objections to Evidence Filed in Support of Defendant's Opposition to Motion for Summary Judgment)(Barvir, Anna) (anh). (Entered: 04/23/2018) |
| 04/24/2018 | 58 | Minute Order by Judge Roger T. Benitez: Resetting Hearing date re 50 MOTION for Summary Judgment . Motion Hearing set for 4/30/2018 is vacated and reset for 5/10/2018 10:00 AM before |

| | | |
|---|---|---|
| | | Judge Roger T. Benitez.(no document attached) (jak) (Entered: 04/24/2018) |
| 04/24/2018 | 59 | Amended Scheduling ORDER; denying 52 Motion to Set Aside. Final Pretrial Conference set for 9/10/2018 10:30 AM before Judge Roger T. Benitez. Memorandum of Contentions of Fact and Law due by 8/3/2018. Proposed Pretrial Order due by 8/31/2018. Signed by Magistrate Judge Jill L. Burkhardt on 4/24/2018. (anh) (Entered: 04/24/2018) |
| 05/10/2018 | 60 | Minute Entry for proceedings held before Judge Roger T. Benitez: Motion Hearing held on 5/10/2018 re 50 MOTION for Summary Judgment filed by Virginia Duncan, Patrick Lovette, David Marguglio, California Rifle & Pistol Association, Incorporated, Christopher Waddell. Post-hearing 25-page briefs due to the Court within 30 days from today's hearing. Response briefs due to the Court within 10 days thereafter. (Court Reporter/ECR Juliet Eichenlaub). (Plaintiff Attorney Clint B. Monfort, Anna M. Barvir). (Defendant Attorney John Darrow Echeverria). (no document attached) (gxr) (Entered: 05/11/2018) |
| 05/22/2018 | 61 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT (Motion Hearing) held on 5/10/2018, before Judge Roger T. Benitez. Court Reporter/Transcriber: Juliet Y. Eichenlaub. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or the Court Reporter/Transcriber. If redaction is necessary, parties have seven calendar days from the file date of the Transcript to E-File the Notice of Intent to Request Redaction. The following deadlines would also apply if requesting redaction: Redaction Request Statement due to Court Reporter/Transcriber 6/12/2018. Redacted Transcript Deadline set for 6/22/2018. Release of Transcript Restriction set for 8/20/2018. (akr) (Entered: 05/22/2018) |
| 06/11/2018 | 62 | RESPONSE in Opposition re 50 MOTION for Summary Judgment filed by Xavier Becerra. (Echeverria, John) (anh). (Entered: 06/11/2018) |
| 06/11/2018 | 63 | RESPONSE in Support re 50 MOTION for Summary Judgment filed by California Rifle & Pistol Association, Incorporated, Virginia Duncan, Patrick Lovette, David Marguglio, Christopher Waddell. (Attachments: # 1 Declaration of Anna M. Barvir)(Barvir, Anna) (anh) (Entered: 06/11/2018) |
| 06/21/2018 | 64 | RESPONSE in Opposition re 50 MOTION for Summary Judgment filed by Xavier Becerra. (Echeverria, John) (anh). (Entered: 06/21/2018) |
| 06/21/2018 | 65 | REPLY - Other re 62 Response in Opposition to Motion *for Summary Judgment* filed by California Rifle & Pistol Association, Incorporated, Virginia Duncan, Patrick Lovette, David Marguglio, Christopher Waddell. (Barvir, Anna) (anh). (Entered: 06/21/2018) |
| 07/24/2018 | 66 | Joint MOTION to Amend/Correct 59 Order on Motion to Set Aside, *Scheduling Order* by California Rifle & Pistol Association, Incorporated, Virginia Duncan, Patrick Lovette, David Marguglio, Christopher Waddell. (Barvir, Anna) M (anh). (Entered: 07/24/2018) |
| 07/26/2018 | 67 | NOTICE *of Supplemental Authority re: Young v. State of Hawaii* by California Rifle & Pistol Association, Incorporated, Virginia Duncan, Patrick Lovette, David Marguglio, Christopher Waddell (Barvir, Anna) (anh). (Entered: 07/26/2018) |
| 07/27/2018 | 68 | ORDER granting 66 Joint Motion of the Parties to Amend Scheduling Order Memorandum of Contentions of Fact and Law due by 9/7/2018. Proposed Pretrial Order due by 10/5/2018. Final Pretrial Conference set for 10/16/2018 10:30 AM before Judge Roger T. Benitez. Signed by Magistrate Judge Jill L. Burkhardt on 7/27/2018. (anh) (Entered: 07/27/2018) |
| 08/06/2018 | 69 | NOTICE *of Supplemental Authority* by Xavier Becerra (Echeverria, John) (anh). (Entered: 08/06/2018) |
| 08/22/2018 | 70 | ORDER of USCA as to 32 Notice of Appeal to 9th Circuit, filed by Xavier Becerra. A judge of the USCA has called for a vote to determine whether this case will be reheard en banc pursuant to Federal Rule of Appellate Procedure 35(a). Within 21 days of the filed date of this order, the parties shall file simultaneous briefs addressing their respective positions on whether this case should be reheard en banc. Instructions issued. (akr) (Entered: 08/22/2018) |

| 08/23/2018 | 71 | Joint MOTION to Amend/Correct 68 Order on Motion to Amend/Correct, *Scheduling Order* by California Rifle & Pistol Association, Incorporated, Virginia Duncan, Patrick Lovette, David Marguglio, Christopher Waddell. (Barvir, Anna) (anh). (Entered: 08/23/2018) |
|---|---|---|
| 08/27/2018 | 72 | ORDER Granting 71 Joint Motion And Issuing Third Amended Scheduling Order. Memorandum of Contentions of Fact and Law due by September 7, 2018 is reset for October 5, 2018. Proposed Pretrial Order due by October 5, 2018 is reset for November 2, 2018. Final Pretrial Conference scheduled for October 16, 2018 is reset for Tuesday, November 13, 2018 at 10:30 AM before Judge Roger T. Benitez. Signed by Magistrate Judge Jill L. Burkhardt on 8/27/2018. (sjm) (Entered: 08/27/2018) |
| 09/25/2018 | 73 | Joint MOTION to Amend/Correct 72 Order on Motion to Amend/Correct, *Scheduling Order* by California Rifle & Pistol Association, Incorporated, Virginia Duncan, Patrick Lovette, David Marguglio, Christopher Waddell. (Barvir, Anna) (anh). (Entered: 09/25/2018) |
| 09/28/2018 | 74 | ORDER granting Joint Motion and Issuing Fourth Amended Scheduling Order [ECF Nos. 72 , 73 ] Memorandum of Contentions of Fact and Law due by 11/9/2018. Proposed Pretrial Order due by 12/7/2018. Final Pretrial Conference set for 12/18/2018 10:30 AM before Judge Roger T. Benitez.. Signed by Magistrate Judge Jill L. Burkhardt on 9/28/2018. (anh) (Entered: 09/28/2018) |
| 10/26/2018 | 75 | ***RECALLED AS ISSUED IN ERROR PER 77 ORDER OF USCA***: MANDATE of USCA affirming the decision of the USDC as to 32 Notice of Appeal to the 9th Circuit filed by Xavier Becerra. (akr). (Modified on 10/26/2018: This Mandate has been recalled by the USCA.) (akr). (Entered: 10/26/2018) |
| 10/26/2018 | 76 | NOTICE *of Supplemental Authority* by Xavier Becerra (Echeverria, John) (anh). (Entered: 10/26/2018) |
| 10/26/2018 | 77 | ORDER of USCA as to 32 Notice of Appeal to 9th Circuit, filed by Xavier Becerra. The mandate issued on October 24, 2018 is recalled as issued in error. (akr) (Entered: 10/26/2018) |
| 10/30/2018 | 78 | Joint MOTION to Amend/Correct 74 Order on Motion to Amend/Correct, *Scheduling Order* by California Rifle & Pistol Association, Incorporated, Virginia Duncan, Patrick Lovette, David Marguglio, Christopher Waddell. (Barvir, Anna) (rmc). (Entered: 10/30/2018) |
| 10/31/2018 | 79 | ORDER of USCA as to 32 Notice of Appeal to 9th Circuit filed by Xavier Becerra. A judge requested a vote on whether to rehear this case en banc pursuant to Federal Rule of Appellate Procedure 35(a). After reviewing the supplemental briefing submitted by the parties, the request has been withdrawn. The mandate shall issue forthwith. (akr) (Entered: 10/31/2018) |
| 11/01/2018 | 80 | MANDATE of USCA affirming the decision of the USDC as to 32 Notice of Appeal to the 9th Circuit filed by Xavier Becerra. (akr) (Entered: 11/01/2018) |
| 11/06/2018 | 81 | ORDER Granting Joint Motion and Issuing Fifth Amended Scheduling Order [ECF Nos. 74 , 78 ]. Signed by Magistrate Judge Jill L. Burkhardt on 11/6/2018. (anh) (Entered: 11/06/2018) |
| 11/27/2018 | 82 | NOTICE *of Supplemental Authority* by Xavier Becerra (Echeverria, John) (anh). (Entered: 11/27/2018) |
| 12/11/2018 | 83 | NOTICE *of Supplemental Authority* by Xavier Becerra (Echeverria, John) (anh). (Entered: 12/11/2018) |
| 02/01/2019 | 84 | Joint MOTION to Amend/Correct 81 Order on Motion to Amend/Correct *Scheduling Order* by California Rifle & Pistol Association, Incorporated, Virginia Duncan, Patrick Lovette, David Marguglio, Christopher Waddell. (Barvir, Anna) (anh). (Entered: 02/01/2019) |
| 02/12/2019 | 85 | ORDER Granting Joint Motion and Issuing Sixth Amended Scheduling Order [ECF Nos. 81 , 84 ]. Signed by Magistrate Judge Jill L. Burkhardt on 2/12/2019. (anh) (Entered: 02/12/2019) |
| 02/13/2019 | 86 | NOTICE *of Filing Amicus Brief in Wiese v. Becerra* by California Rifle & Pistol Association, Incorporated, Virginia Duncan, Patrick Lovette, David Marguglio, Christopher Waddell (Barvir, Anna) (rmc). (Entered: 02/13/2019) |

| | | |
|---|---|---|
| 03/29/2019 | 87 | ORDER Granting 50 Plaintiffs' Motion for Summary Judgment, Declaring California Penal Code § 32310 Unconstitutional and Enjoining Enforcement. Plaintiffs' motion for summary judgment is granted. California Penal Code § 32310 is hereby declared to be unconstitutional in its entirety and shall be enjoined. Defendant Attorney General Xavier Becerra, and his officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with him, and those duly sworn state peace officers and federal law enforcement officers who gain knowledge of this injunction order, or know of the existence of this injunction order, are enjoined from enforcing California Penal Code section 32310. Defendant Becerra shall provide, by personal service or otherwise, actual notice of this order to all law enforcement personnel who are responsible for implementing or enforcing the enjoined statute. The government shall file a declaration establishing proof of such notice. Signed by Judge Roger T. Benitez on 3/29/2019. (aef) (Entered: 03/29/2019) |
| 03/29/2019 | 88 | CLERK'S JUDGMENT. IT IS SO ORDERED AND ADJUDGED Plaintiffs' motion for summary judgment is granted. California Penal Code § 32310 is hereby declared to be unconstitutional in its entirety and shall be enjoined. Defendant Attorney General Xavier Becerra, and his officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with him, and those duly sworn state peace officers and federal law enforcement officers who gain knowledge of this injunction order, or know of the existence of this injunction order, are enjoined from enforcing California Penal Code section 32310. Defendant Becerra shall provide, by personal service or otherwise, actual notice of this order to all law enforcement personnel who are responsible for implementing or enforcing the enjoined statute. The government shall file a declaration establishing proof of such notice.(aef) (Entered: 03/29/2019) |
| 04/01/2019 | 89 | Ex Parte MOTION to Stay re 88 Clerk's Judgment,,, *Pending Appeal* by Xavier Becerra. (Attachments: # 1 Memo of Points and Authorities, # 2 Declaration, # 3 Proof of Service) (Echeverria, John) (anh). (Entered: 04/01/2019) |
| 04/02/2019 | 90 | **DOCUMENT WITHDRAWN PER DOC. NO. 92 ** RESPONSE in Opposition re 89 Ex Parte MOTION to Stay re 88 Clerk's Judgment,,, *Pending Appeal* filed by Virginia Duncan. (Barvir, Anna) (anh). QC EMail Sent re: Missing signatures (anh). (anh). (Entered: 04/02/2019) |
| 04/02/2019 | 91 | RESPONSE in Support re 89 Ex Parte MOTION to Stay re 88 Clerk's Judgment,,, *Pending Appeal* filed by Xavier Becerra. (Echeverria, John) (anh). (Entered: 04/02/2019) |
| 04/03/2019 | 92 | NOTICE *of Withdrawal of Document Number 90* by California Rifle & Pistol Association, Incorporated, Virginia Duncan, Patrick Lovette, David Marguglio, Christopher Waddell re 90 Response in Opposition to Motion (Barvir, Anna) (anh). (Entered: 04/03/2019) |
| 04/03/2019 | 93 | RESPONSE in Opposition re 89 Ex Parte MOTION to Stay re 88 Clerk's Judgment,,, *Pending Appeal* filed by California Rifle & Pistol Association, Incorporated, Virginia Duncan, Patrick Lovette, David Marguglio, Christopher Waddell. (Barvir, Anna) (anh). (Entered: 04/03/2019) |
| 04/03/2019 | 94 | RESPONSE in Opposition re 89 Ex Parte MOTION to Stay re 88 Clerk's Judgment,,, *Pending Appeal* filed by California Rifle & Pistol Association, Incorporated, Virginia Duncan, Patrick Lovette, David Marguglio, Christopher Waddell. (Attachments: # 1 Declaration of Anna M. Barvir, # 2 Declaration of Charles David Wylie, Jr.)(Barvir, Anna) (anh). (Entered: 04/03/2019) |
| 04/04/2019 | 95 | RESPONSE in Support re 89 Ex Parte MOTION to Stay re 88 Clerk's Judgment,,, *Pending Appeal* filed by Xavier Becerra. (Echeverria, John) (jms). (Entered: 04/04/2019) |
| 04/04/2019 | 96 | NOTICE OF APPEAL to the 9th Circuit as to 87 Order, 88 Clerk's Judgment, by Xavier Becerra. (Filing fee $ 505 receipt number 0974-12373646.) (Notice of Appeal electronically transmitted to US Court of Appeals.) (Echeverria, John). (Modified on 4/4/2019: Edited docket text re linked Order.) (akr). (Entered: 04/04/2019) |
| 04/04/2019 | 97 | ORDER Staying In Part Judgment Pending Appeal. Signed by Judge Roger T. Benitez on 4/4/2019. (anh) (Entered: 04/04/2019) |
| 04/04/2019 | 98 | USCA Case Number 19-55376 for 96 Notice of Appeal to the 9th Circuit filed by Xavier Becerra. (akr) (Entered: 04/05/2019) |

| 04/04/2019 | 99 | USCA Time Schedule Order as to 96 Notice of Appeal to the 9th Circuit filed by Xavier Becerra. (NOTICE TO PARTIES of deadlines regarding appellate transcripts: Appellant shall file transcript designation and ordering form with the US District Court (see attached), provide a copy of the form to the court reporter, and make payment arrangements with the court reporter on or by 5/6/2019 (see Ninth Circuit Rule 10-3.1); Due date for filing of transcripts in US District Court is 6/3/2019.) (cc: Court Reporter). (Attachments: # 1 Transcript Designation and Ordering Form). (akr) (Entered: 04/05/2019) |
| --- | --- | --- |
| 04/12/2019 | 100 | Joint MOTION to Stay *Litigation of Attorneys' Fees and Costs Pending Appeal* by California Rifle & Pistol Association, Incorporated, Virginia Duncan, Patrick Lovette, David Marguglio, Christopher Waddell. (Barvir, Anna) (anh). (Entered: 04/12/2019) |
| 04/18/2019 | 101 | ORDER Granting Joint Motion to Stay Litigation of Attorneys' Fees and Costs Pending Appeal. Signed by Judge Roger T. Benitez on 4/16/2019. (anh) (Entered: 04/18/2019) |
| 04/25/2019 | 102 | DECLARATION re 88 Clerk's Judgment,,, by Defendant Xavier Becerra. (Echeverria, John) (anh). (Entered: 04/25/2019) |
| 08/28/2020 | 103 | ORDER of USCA as to 96 Notice of Appeal to the 9th Circuit filed by Xavier Becerra. Plaintiffs-Appellees are directed to file a response to the Petition for Rehearing En Banc filed with the USCA on August 28, 2020. Instructions issued. (akr) (Entered: 08/31/2020) |
| 02/25/2021 | 104 | ORDER of USCA as to 96 Notice of Appeal to the 9th Circuit filed by Xavier Becerra. Upon the vote of a majority of nonrecused active judges, it is ordered that this case be reheard en banc pursuant to Federal Rule of Appellate Procedure 35(a) and Circuit Rule 35-3. The three-judge panel opinion is vacated. (akr) (Entered: 02/25/2021) |
| 02/25/2021 | 105 | ORDER of USCA as to 96 Notice of Appeal to the 9th Circuit filed by Xavier Becerra. Virtual en banc oral argument will take place during the week of March 22, 2021. The date and time will be determined by separate order. Instructions issued. (akr) (Entered: 02/25/2021) |
| 03/02/2021 | 106 | ORDER of USCA as to 96 Notice of Appeal to the 9th Circuit filed by Xavier Becerra. The prior order scheduling oral argument is vacated. Virtual en banc oral argument is rescheduled to take place during the week of June 21, 2021. The specific date and and time will be determined by separate order. Instructions issued. (akr) (Entered: 03/02/2021) |
| 03/05/2021 | 107 | ORDER of USCA as to 96 Notice of Appeal to the 9th Circuit filed by Xavier Becerra. Virtual en banc oral argument is rescheduled to take place on June 22, 2021 at 9:30 a.m., Pacific time. Each side will be allocated 30 minutes of argument. (akr) (Entered: 03/05/2021) |
| 12/20/2021 | 108 | ORDER of USCA as to 96 Notice of Appeal to the 9th Circuit filed by Xavier Becerra. Appellees' unopposed motion to partially stay issuance of the mandate is granted. The mandate is partially stayed for a period of 150 days from the date of this order. If Appellees file a petition for certiorari in the United States Supreme Court during the period of the partial stay, the partial stay shall continue until final disposition by the Supreme Court. (akr) (Entered: 12/20/2021) |
| 08/02/2022 | 109 | ORDER of USCA as to 96 Notice of Appeal to the 9th Circuit filed by Xavier Becerra. The Supreme Court remanded this case to us "for further consideration in light of New York State Rifle & Pistol Assn., Inc. v. Bruen, 597 U.S. ____ (2022)." Therefore, the parties are directed to file supplemental briefs on the effect of Bruen on this appeal, including whether the en banc panel should remand this case to the USDC for further proceedings in the first instance. Instructions issued. (akr) (Entered: 08/02/2022) |
| 09/26/2022 | 110 | NOTICE of Appearance by Robert Leslie Meyerhoff on behalf of Xavier Becerra (Meyerhoff, Robert)Attorney Robert Leslie Meyerhoff added to party Xavier Becerra(pty:dft) (ddf). (Entered: 09/26/2022) |
| 09/26/2022 | 111 | Order Spreading The Mandate And Continuing The Preliminary Injunction. Signed by Judge Roger T. Benitez on 9/26/2022.(ddf) (Entered: 09/26/2022) |

| | | |
|---|---|---|
| 10/12/2022 | 112 | MOTION for Reconsideration re 111 Preliminary Injunction by Xavier Becerra. (Attachments: # 1 Memo of Points and Authorities, # 2 Declaration of Zachary Schrag, # 3 Proposed Order) (Meyerhoff, Robert) (ddf) (Entered: 10/12/2022) |
| 10/14/2022 | 113 | Ex Parte MOTION to Shorten Time *on Motion for Reconsideration* by Xavier Becerra. (Attachments: # 1 Declaration, # 2 Proposed Order, # 3 Proof of Service)(Meyerhoff, Robert) QC Mailer re Proposed orders should not be attached (ddf) (Entered: 10/14/2022) |
| 10/24/2022 | 114 | RESPONSE in Opposition re 112 MOTION for Reconsideration re 111 Preliminary Injunction filed by California Rifle & Pistol Association, Incorporated, Virginia Duncan, Patrick Lovette, David Marguglio, Christopher Waddell. (Barvir, Anna) (ddf) (Entered: 10/24/2022) |
| 11/02/2022 | 115 | REPLY to Response to Motion re 112 MOTION for Reconsideration re 111 Preliminary Injunction filed by Xavier Becerra. (Meyerhoff, Robert) (ddf) (Entered: 11/02/2022) |
| 11/07/2022 | 116 | NOTICE of Hearing: Status Conference set for 12/12/2022 10:30 AM in Courtroom 5A before Judge Roger T. Benitez. The Court hereby orders all attorneys to appear in-person.(no document attached) (gxr) Modified on 11/9/2022 (gxr). (Entered: 11/07/2022) |
| 11/08/2022 | 117 | NOTICE of Hearing on 112 MOTION for Reconsideration re 111 Preliminary Injunction : Motion Hearing reset for 12/12/2022 10:30 AM in Courtroom 5A before Judge Roger T. Benitez. The Court hereby orders all attorneys to appear in-person. (no document attached) (gxr) Modified on 11/9/2022 (gxr). (Entered: 11/08/2022) |
| 11/10/2022 | 118 | SUPPLEMENTAL BRIEFING by Defendant Xavier Becerra re 111 Preliminary Injunction . (Attachments: # 1 Supplemental Declaration of Lucy P. Allen, # 2 Declaration of Dennis Baron, # 3 Declaration of Ryan Busse, # 4 Declaration of Saul Cornell, # 5 Supplemental Declaration of John J. Donohue, # 6 Supplemental Declaration of Louis Klarevas, # 7 Declaration of Brennan Rivas, # 8 Declaration of Randolph Roth, # 9 Declaration of Robert Spitzer, # 10 Declaration of Michael Vorenberg)(Meyerhoff, Robert) (ddf) (Entered: 11/10/2022) |
| 11/10/2022 | 119 | NOTICE of Lodgment by Xavier Becerra re 118 Supplemental Briefing,, *Notice of Lodgment of Compendia* (Meyerhoff, Robert) (ddf) (Entered: 11/10/2022) |
| 11/10/2022 | 120 | NOTICE *Compendium of Works Cited in Supplemental Declaration of Dennis Baron* by Xavier Becerra re 119 Notice of Lodgment, 118 Supplemental Briefing,, (Meyerhoff, Robert) (ddf). (Entered: 11/10/2022) |
| 11/10/2022 | 121 | NOTICE *Compendium of Works Cited in Supplemental Declaration of Robert Spitzer Volume 1* by Xavier Becerra re 119 Notice of Lodgment, 118 Supplemental Briefing,, (Attachments: # 1 Compendium of Works Cited in Supplemental Declaration of Robert Spitzer Volume 2, # 2 Compendium of Works Cited in Supplemental Declaration of Robert Spitzer Volume 3, # 3 Compendium of Works Cited in Supplemental Declaration of Robert Spitzer Volume 4, # 4 Compendium of Works Cited in Supplemental Declaration of Robert Spitzer Volume 5)(Meyerhoff, Robert) (ddf) (Entered: 11/10/2022) |
| 11/10/2022 | 122 | NOTICE *Compendium of Works Cited in Declaration of Brennan Rivas Volume 1* by Xavier Becerra re 119 Notice of Lodgment, 118 Supplemental Briefing,, (Attachments: # 1 Compendium of Works Cited in Declaration of Brennan Rivas Volume 2, # 2 Compendium of Works Cited in Declaration of Brennan Rivas Volume 3, # 3 Compendium of Works Cited in Declaration of Brennan Rivas Volume 4, # 4 Compendium of Works Cited in Declaration of Brennan Rivas Volume 5, # 5 Compendium of Works Cited in Declaration of Brennan Rivas Volume 6)(Meyerhoff, Robert) (ddf) (Entered: 11/10/2022) |
| 11/10/2022 | 123 | NOTICE *Compendium of Works Cited in Declaration of Michael Vorenberg Volume 1* by Xavier Becerra re 119 Notice of Lodgment, 118 Supplemental Briefing,, (Attachments: # 1 Compendium of Works Cited in Declaration of Michael Vorenberg Volume 2, # 2 Compendium of Works Cited in Declaration of Michael Vorenberg Volume 3, # 3 Compendium of Works Cited in Declaration of Michael Vorenberg Volume 4, # 4 Compendium of Works Cited in Declaration of Michael Vorenberg Volume 5, # 5 Compendium of Works Cited in Declaration of Michael Vorenberg Volume 6, # 6 Compendium of Works Cited in Declaration of Michael Vorenberg Volume 7, # 7 |

| | | |
|---|---|---|
| | | Compendium of Works Cited in Declaration of Michael Vorenberg Volume 8, # 8 Compendium of Works Cited in Declaration of Michael Vorenberg Volume 9, # 9 Compendium of Works Cited in Declaration of Michael Vorenberg Volume 10, # 10 Compendium of Works Cited in Declaration of Michael Vorenberg Volume 11)(Meyerhoff, Robert) (ddf). (Entered: 11/10/2022) |
| 11/11/2022 | 124 | NOTICE *Compendium of Works Cited in Declaration of Saul Cornell Volume 1* by Xavier Becerra re 119 Notice of Lodgment, 118 Supplemental Briefing,, (Attachments: # 1 Compendium of Works Cited in Declaration of Saul Cornell Volume 2, # 2 Compendium of Works Cited in Declaration of Saul Cornell Volume 3, # 3 Compendium of Works Cited in Declaration of Saul Cornell Volume 4)(Meyerhoff, Robert) (ddf). (Entered: 11/11/2022) |
| 11/11/2022 | 125 | NOTICE *Compendium of Works Cited in Supplemental Declaration of John J. Donohue* by Xavier Becerra re 119 Notice of Lodgment, 118 Supplemental Briefing,, (Meyerhoff, Robert) (ddf). (Entered: 11/11/2022) |
| 11/11/2022 | 126 | NOTICE *Compendium of Works Cited in Supplemental Declaration of Lucy P. Allen* by Xavier Becerra re 119 Notice of Lodgment, 118 Supplemental Briefing,, (Meyerhoff, Robert) (ddf). (Entered: 11/11/2022) |
| 11/11/2022 | 127 | NOTICE *Compendium of Works Cited in Supplemental Declaration of Louis Klarevas Volume 1* by Xavier Becerra re 119 Notice of Lodgment, 118 Supplemental Briefing,, (Attachments: # 1 Compendium of Works Cited in Supplemental Declaration of Louis Klarevas Volume 2, # 2 Compendium of Works Cited in Supplemental Declaration of Louis Klarevas Volume 3, # 3 Compendium of Works Cited in Supplemental Declaration of Louis Klarevas Volume 4, # 4 Compendium of Works Cited in Supplemental Declaration of Louis Klarevas Volume 5, # 5 Compendium of Works Cited in Supplemental Declaration of Louis Klarevas Volume 6)(Meyerhoff, Robert) (ddf). (Entered: 11/11/2022) |
| 11/11/2022 | 128 | NOTICE *Compendium of Works Cited in Declaration of Randolph Roth Volume 1* by Xavier Becerra re 119 Notice of Lodgment, 118 Supplemental Briefing,, (Attachments: # 1 Compendium of Works Cited in Declaration of Randolph Roth Volume 2, # 2 Compendium of Works Cited in Declaration of Randolph Roth Volume 3, # 3 Compendium of Works Cited in Declaration of Randolph Roth Volume 4, # 4 Compendium of Works Cited in Declaration of Randolph Roth Volume 5, # 5 Compendium of Works Cited in Declaration of Randolph Roth Volume 6, # 6 Compendium of Works Cited in Declaration of Randolph Roth Volume 7)(Meyerhoff, Robert) (ddf). (Entered: 11/11/2022) |
| 11/30/2022 | 129 | NOTICE of Appearance by Kevin James Kelly on behalf of Xavier Becerra (Kelly, Kevin)Attorney Kevin James Kelly added to party Xavier Becerra(pty:dft) (ddf). (Entered: 11/30/2022) |
| 12/01/2022 | 130 | MOTION to Strike 118 Supplemental Briefing,, by California Rifle & Pistol Association, Incorporated, Virginia Duncan, Patrick Lovette, David Marguglio, Christopher Waddell. (Attachments: # 1 Memo of Points and Authorities)(Barvir, Anna) (ddf). (Entered: 12/01/2022) |
| 12/01/2022 | 131 | Ex Parte MOTION for Leave to File Excess Pages *to Plaintiffs' Supplemental Brief* by California Rifle & Pistol Association, Incorporated, Virginia Duncan, Patrick Lovette, David Marguglio, Christopher Waddell. (Attachments: # 1 Memo of Points and Authorities, # 2 Declaration of Anna M. Barvir)(Barvir, Anna) (ddf). (Entered: 12/01/2022) |
| 12/01/2022 | 132 | SUPPLEMENTAL BRIEFING by Plaintiffs California Rifle & Pistol Association, Incorporated, Virginia Duncan, Patrick Lovette, David Marguglio, Christopher Waddell . (Attachments: # 1 Declaration of Ashley Hlebinsky, # 2 Declaration of Mark Hanish, # 3 Declaration Carlisle Moody, # 4 Declaration Stephen Helsley, # 5 Declaration of Anna M. Barvir, # 6 Exhibit Exhibits 32-41 to Declaration of Anna M. Barvir, # 7 Declaration of Clayton Cramer, # 8 Declaration of Gary Kleck, # 9 Request for Judicial Notice)(Barvir, Anna) (ddf). (Entered: 12/01/2022) |
| 12/02/2022 | 133 | RESPONSE to Motion re 131 Ex Parte MOTION for Leave to File Excess Pages *to Plaintiffs' Supplemental Brief* filed by Xavier Becerra. (Attachments: # 1 Declaration)(Kelly, Kevin) (ddf). (Entered: 12/02/2022) |

| | | |
|---|---|---|
| 12/12/2022 | 134 | Minute Entry for proceedings held before Judge Roger T. Benitez: Status Conference held on 12/12/2022. The state defendants shall create, and the plaintiffs shall meet and confer regarding, a survey or spreadsheet of relevant statutes, laws, or regulations in chronological order. The listing shall begin at the time of the adoption of the Second Amendment and continue through twenty years after the Fourteenth Amendment. For each cited statute/law/regulation, the survey shall provide: (a) the date of enactment; (b) the enacting state, territory, or locality; (c) a description of what was restricted (e.g., dirks, daggers, metal knuckles, storage of gunpowder or cartridges, or use regulations); (d) what it was that the law or regulation restricted; (e) what type of weapon was being restricted (e.g., knife, Bowie Knife, stiletto, metal knuckles, pistols, rifles); (f) if and when the law was repealed and whether it was replaced; (g) whether the regulation was reviewed by a court and the outcome of the courts review (with case citation). Defendants may create a second survey covering a time period following that of the first list. If opposing parties cannot agree on the inclusion of a particular entry on the survey, the disagreement shall be indicated and described on a separate list. The survey list shall be filed within 30 days. Parties may file a brief up to 25 pages within 30 days thereafter focusing on relevant analogs. Parties may file a responsive brief within 10 days thereafter. Parties shall agree within 20 days on deposing Mr. Roth and Mr. Cramer at an agreed place and time. (Court Reporter/ECR Abigail Torres). (Plaintiff Attorney Sean A. Brady, Anna M. Barvir, Konstadinos T. Moros, Chuck Michel). (Defendant Attorney Kevin J. Kelly, Mark R. Beckington). (no document attached) (gxr) . (Entered: 12/15/2022) |
| 12/20/2022 | 135 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Status Conference held on 12/12/2022, before Judge Roger T. Benitez. Court Reporter/Transcriber Abigail R. Torres. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or the Court Reporter/Transcriber. If redaction is necessary, parties have seven calendar days from the file date of the Transcript to E-File the Notice of Intent to Request Redaction. The following deadlines would also apply if requesting redaction: Redaction Request Statement due to Court Reporter/Transcriber 1/10/2023. Redacted Transcript Deadline set for 1/20/2023. Release of Transcript Restriction set for 3/20/2023. (smy1)(jrd) (Entered: 12/20/2022) |
| 12/27/2022 | 136 | RESPONSE in Opposition re 130 MOTION to Strike 118 Supplemental Briefing,, filed by Xavier Becerra. (Kelly, Kevin) (ddf). (Entered: 12/27/2022) |
| 01/03/2023 | 137 | REPLY to Response to Motion re 130 MOTION to Strike 118 Supplemental Briefing,, filed by California Rifle & Pistol Association, Incorporated, Virginia Duncan, Patrick Lovette, David Marguglio, Christopher Waddell. (Barvir, Anna) (ddf). (Entered: 01/03/2023) |
| 01/06/2023 | 138 | Minute Order issued by the Honorable Roger T. Benitez: Denying 130 MOTION to Strike 118 Supplemental Briefing by California Rifle & Pistol Association, Incorporated, Virginia Duncan, Patrick Lovette, David Marguglio, Christopher Waddell; Granting 131 Ex Parte MOTION for Leave to File Excess Pages to Plaintiffs' Supplemental Brief by California Rifle & Pistol Association, Incorporated, Virginia Duncan, Patrick Lovette, David Marguglio, Christopher Waddell. The Court hereby vacates the Motion Hearing date of 1/9/2023. (no document attached) (gxr) (Entered: 01/06/2023) |
| 01/11/2023 | 139 | DECLARATION re 134 Status Conference,,,,,,, *Declaration re Submission of Surveys in Response to the Court's Order Entered on December 15, 2022* by Defendant Xavier Becerra. (Attachments: # 1 Exhibit 1: Defendant's Survey of Relevant Statutes (Pre-Founding to 1888), # 2 Exhibit 2: Defendant's Survey of Relevant Statutes (1889 to 1930s), # 3 Exhibit 3: Plaintiffs' Disagreements re Defendant's Survey of Relevant Statutes (Pre-Founding to 1930s))(Echeverria, John) (jms). (Entered: 01/11/2023) |
| 02/07/2023 | 140 | MINUTE ORDER issued by the Honorable Roger T. Benitez: The State defendants are directed to file a brief which identifies the best historical regulation that is a proper analogue and relevantly similar to a statewide prohibition on possession of an ammunition device or a limit on an amount of ammunition. The brief shall be limited to five pages and shall be filed with the brief currently due 30 days after the filing of the law list. (no document attached) (gxr) (Entered: 02/07/2023) |

| | | |
|---|---|---|
| 02/10/2023 | 141 | SUPPLEMENTAL BRIEFING by Plaintiffs California Rifle & Pistol Association, Incorporated, Virginia Duncan, Patrick Lovette, David Marguglio, Christopher Waddell re 139 Declaration,, *re: Charts of Historical Laws*. (Barvir, Anna) (ddf). (Entered: 02/10/2023) |
| 02/10/2023 | 142 | SUPPLEMENTAL BRIEFING by Defendant Xavier Becerra re 134 Status Conference,,,,,,, *IN RESPONSE TO THE COURT'S ORDER ENTERED ON DECEMBER 15, 2022*. (Attachments: # 1 Declaration of John D. Echeverria)(Echeverria, John) (ddf). (Entered: 02/10/2023) |
| 02/10/2023 | 143 | SUPPLEMENTAL BRIEFING by Defendant Xavier Becerra re 140 Notice (Other), *IN RESPONSE TO THE COURT'S ORDER ENTERED ON FEBRUARY 7, 2023*. (Echeverria, John) (ddf). (Entered: 02/10/2023) |
| 02/21/2023 | 144 | SUPPLEMENTAL BRIEFING by Plaintiffs California Rifle & Pistol Association, Incorporated, Virginia Duncan, Patrick Lovette, David Marguglio, Christopher Waddell re 143 Supplemental Briefing, 142 Supplemental Briefing *re: Charts of Historical Laws*. (Barvir, Anna) (ddf). (Entered: 02/21/2023) |
| 02/21/2023 | 145 | RESPONSE re 141 Supplemental Briefing *Defendant's Brief in Response to Plaintiffs' Brief Filed on February 10, 2023* filed by Xavier Becerra. (Kelly, Kevin) (ddf). (Entered: 02/21/2023) |
| 03/15/2023 | 146 | NOTICE *of Supplemental Authority* by Xavier Becerra (Kelly, Kevin) (ddf). (Entered: 03/15/2023) |
| 08/22/2023 | 147 | MINUTE ORDER issued by the Honorable Roger T. Benitez: Finding as moot 112 MOTION for Reconsideration re 111 Preliminary Injunction filed by Xavier Becerra (no document attached) (gxr) (Entered: 08/22/2023) |
| 08/22/2023 | 148 | MINUTE ORDER issued by the Honorable Roger T. Benitez: Finding as moot 113 Ex Parte MOTION to Shorten Time on Motion for Reconsideration by Xavier Becerra. (no document attached) (gxr) (Entered: 08/22/2023) |
| 09/22/2023 | 149 | Decision. Signed by Judge Roger T. Benitez on 9/22/2023.(ddf) (Entered: 09/22/2023) |
| 09/22/2023 | 150 | NOTICE OF APPEAL to the 9th Circuit as to 149 Order by Xavier Becerra. ( Filing fee $ 505 receipt number ACASDC-18209456.) (Notice of Appeal electronically transmitted to US Court of Appeals.) (Echeverria, John) (mjw). (Entered: 09/22/2023) |
| 09/25/2023 | 151 | USCA Case Number: 23-55805 Re: ECF No. 150 Notice of Appeal to 9th Circuit filed by Xavier Becerra. (Attachments: # 1 Notice to all Parties and Counsel, # 2 Mediation Letter, # 3 Case Opening Packet)(mjw)(jrd) (Entered: 09/25/2023) |
| 09/25/2023 | 152 | USCA Time Schedule Order as to 150 Notice of Appeal to 9th Circuit filed by Xavier Becerra. (NOTICE TO PARTIES of deadlines regarding appellate transcripts: Appellant shall file transcript designation and ordering form with the US District Court, provide a copy of the form to the court reporter, and make payment arrangements with the court reporter on or by 10/23/2023 (see Ninth Circuit Rule 10-3.1); Due date for filing of transcripts in US District Court is 11/22/2023.) (cc: Court Reporter). (mjw)(jrd) (Entered: 09/25/2023) |
| 09/28/2023 | 153 | CHAMBERS ORDER of USCA as to 150 Notice of Appeal to 9th Circuit filed by Xavier Becerra. The en banc panel has elected to accept this case as a comeback.(mjw)(jrd) (Entered: 09/28/2023) |
| 10/06/2023 | 154 | Joint MOTION to Stay *Litigation of Attorneys' Fees and Costs Pending Appeal* by California Rifle & Pistol Association, Incorporated, Virginia Duncan, Patrick Lovette, David Marguglio, Christopher Waddell. (Attachments: # 1 Proposed Order)(Barvir, Anna) QC Mailer re Proposed orders should not be attached (ddf). (Entered: 10/06/2023) |
| 10/10/2023 | 155 | CHAMBERS ORDER of USCA as to 150 Notice of Appeal to 9th Circuit filed by Xavier Becerra. (mjw)(jrd) (Entered: 10/10/2023) |
| 10/10/2023 | 156 | AMENDED CHAMBERS ORDER of USCA as to 150 Notice of Appeal to 9th Circuit filed by Xavier Becerra. (mjw)(jrd) (Entered: 10/10/2023) |
| 10/10/2023 | 157 | CHAMBERS ORDER of USCA as to 150 Notice of Appeal to 9th Circuit filed by Xavier Becerra. (mjw) (Entered: 10/11/2023) |

| 10/11/2023 | 159 | CHAMBERS ORDER of USCA as to 150 Notice of Appeal to 9th Circuit filed by Xavier Becerra (mjw) (Entered: 10/12/2023) |
|---|---|---|
| 10/11/2023 | 160 | Correct Chamber ORDER of USCA as to 150 Notice of Appeal to 9th Circuit filed by Xavier Becerra (mjw) (Entered: 10/12/2023) |
| 10/12/2023 | 158 | ORDER Granting Joint Motion To Enter Judgment And Stay Litigation Of Attorneys' Fees And Costs Pending Appeal 154 . Signed by Judge Roger T. Benitez on 10/11/2023. (ddf) (Entered: 10/12/2023) |
| 10/12/2023 | 161 | CLERK'S JUDGMENT. Judgment is in favor of Plaintiffs' on all claims in accordance with this Court's September 22, 2023, Decision, (Dkt.No. 149 ). Case is closed.(ddf) (Entered: 11/09/2023) |

| **PACER Service Center** | | |
|---|---|---|
| **Transaction Receipt** | | |
| 11/14/2023 09:59:41 | | |
| **PACER Login:** | CA0858GOV | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 3:17-cv-01017-BEN-JLB |
| **Billable Pages:** | 20 | **Cost:** | 2.00 |