No. 23-55805

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

———————

VIRGINIA DUNCAN, ET AL.,
*Plaintiffs-Appellees,*

*v.*

ROB BONTA, IN HIS OFFICIAL CAPACITY AS
ATTORNEY GENERAL OF THE STATE OF CALIFORNIA,
*Defendant-Appellant.*

———————

ON APPEAL FROM AN ORDER OF THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

———————

## BRIEF FOR AMICI CURIAE MASSACHUSETTS, NEW JERSEY, ARIZONA, COLORADO, CONNECTICUT, DELAWARE, THE DISTRICT OF COLUMBIA, HAWAIʻI, ILLINOIS, MAINE, MARYLAND, MICHIGAN, MINNESOTA, NEW YORK, OREGON, PENNSYLVANIA, RHODE ISLAND, VERMONT, WASHINGTON, AND WISCONSIN IN SUPPORT OF APPELLANT AND REVERSAL

———————

MATTHEW J. PLATKIN
   *Attorney General of New Jersey*
Jeremy M. Feigenbaum
   *Solicitor General*
Angela Cai
   *Deputy Solicitor General*
25 Market St, PO Box 080
Trenton, NJ 08625
(862) 350-5800

ANDREA JOY CAMPBELL
   *Attorney General of Massachusetts*
Elizabeth N. Dewar
   *State Solicitor*
One Ashburton Place
Boston, MA 02108
(617) 963-2204
bessie.dewar@mass.gov

(*Additional counsel on signature page*)

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................... ii

INTERESTS OF AMICI.......................................................................1

SUMMARY OF THE ARGUMENT .......................................................2

ARGUMENT ......................................................................................4

    I.    To Promote Our Residents' Safety and Well-Being, States Impose a Range of Restrictions, Including Prohibitions, on Dangerous Accessories and Weapons Not Commonly Used for Self-Defense. ........................................................................4

    II.    California's Restriction on Magazine Capacity Comports with the Second Amendment. ..........................................................8

        A.    The Second Amendment Does Not Protect Large-Capacity Magazines. ...............................................8

            1.    Large-Capacity Magazines Are Not Arms. .....................9

            2.    Large-Capacity Magazines Are Not Commonly Used for Self-Defense. ...................................................10

        B.    California's Magazine Capacity Restriction Is Analogous to the Historical Practices of Regulating the Storage of Ammunition and Imposing Restrictions on New, and Distinctly Dangerous, Forms of Weaponry. ...........................15

            1.    This Court Should Consider the Full Sweep of Our Nation's Historical Tradition of Regulating Arms.........15

            2.    California's Law Comports with Our Historical Tradition. .......................................................19

CONCLUSION ................................................................................28

## <u>TABLE OF AUTHORITIES</u>

**<u>Page(s)</u>**

**<u>Cases</u>**

*Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Att'y Gen. of New Jersey*,
  910 F.3d 106 (3d Cir. 2018) ..................................................................27

*Aymette v. State*,
  21 Tenn. 154 (1840) ............................................................................24

*Beauharnais v. Illinois*,
  343 U.S. 250 (1952) ............................................................................18

*Bevis v. City of Naperville*,
  __F.4th__, No. 23-1353,
  2023 WL 7273709 (7th Cir. Nov. 3, 2023)......................... 11, 13, 14-15

*Brumback v. Ferguson*,
  No. 22-cv-03093, 2023 WL 6221425 (E.D. Wash. Sept. 25, 2023).....................10

*Cargill v. Garland*,
  57 F.4th 447 (5th Cir. 2023)...................................................................5

*Chiafalo v. Washington*,
  140 S. Ct. 2136 (2020) ........................................................................17

*Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.*,
  __F. Supp. 3d__, No. 22-951,
  2023 WL 2655150 (D. Del. Mar. 27, 2023)..........................................14

*District of Columbia v. Heller*,
  554 U.S. 570 (2008) .....................................................................*passim*

*Duncan v. Bonta*,
  19 F.4th 1087 (9th Cir. 2021) (en banc)....................................3, 23, 27

*Duncan v. Bonta*,
  No. 17-cv-1017, 2023 WL 6180472 (S.D. Cal. Sept. 22, 2023)..................*passim*

*Friedman v. City of Highland Park*,
    784 F.3d 406 (7th Cir. 2015)......................................................13, 18, 28

*Hanson v. District of Columbia*,
    __F. Supp. 3d__, 2023 WL 3019777,
    (D.D.C. Apr. 20, 2023)......................................................................15, 19

*Heller v. District of Columbia*,
    670 F.3d 1244 (D.C. Cir. 2011) ........................................................25, 28

*Kolbe v. Hogan*,
    849 F.3d 114 (4th Cir. 2017) (en banc).......................................... 13-14, 27

*Luis v. United States*,
    578 U.S. 5 (2016) ....................................................................................10

*McCullen v. Coakley*,
    573 U.S. 464 (2014) ................................................................................19

*McDonald v. City of Chicago*,
    561 U.S. 742 (2010) .............................................................................2, 20

*Nat'l Ass'n for Gun Rights v. Lamont*,
    __F. Supp. 3d__, No. 22-cv-1118,
    2023 WL 4975979 (D. Conn. Aug. 3, 2023)..................................12, 15

*New York State Rifle & Pistol Ass'n v. Bruen*,
    142 S. Ct. 2111 (2022) .................................................................. *passim*

*New York State Rifle & Pistol Ass'n v. Cuomo*,
    804 F.3d 242 (2d Cir. 2015) ............................................................. 27-28

*NLRB v. Noel Canning*,
    573 U.S. 513 (2014) ................................................................................17

*Ocean State Tactical, LLC v. State of Rhode Island*,
    646 F. Supp. 3d 368 (D.R.I. 2022)............................................9, 10, 15

*Oregon Firearms Fed'n v. Kotek,*
  __F. Supp. 3d__, No. 22-cv-01815,
  2023 WL 4541027 (D. Or. July 14, 2023) ......................................... 12-13, 14, 15

*Roth v. United States,*
  354 U.S. 476 (1957) ................................................................................18

*State v. Reid,*
  1 Ala. 612 (1840)....................................................................................27

*United States v. Booker,*
  644 F.3d 12 (1st Cir. 2011) ...................................................................18

*United States v. Morrison,*
  529 U.S. 598 (2000) ...............................................................................1

*United States v. Salerno,*
  481 U.S. 739 (1987) ...............................................................................1

*United States v. Stevens,*
  559 U.S. 460 (2010) ...............................................................................18

*United States v. White,*
  401 U.S. 745 (1971) ...............................................................................13

*Williams-Yulee v. Florida Bar,*
  575 U.S. 433 (2015) ...............................................................................19

*Worman v. Healey,*
  922 F.3d 26 (1st Cir. 2019) ...................................................................27

## Constitutional Provisions and Statutes

U.S. Const. amend. I ........................................................................18, 19

U.S. Const. amend. II.......................................................................*passim*

U.S. Const. amend. XIV ........................................................................16

Public Safety and Recreational Firearms Use Protection Act,
Pub. L. No. 103-322, 108 Stat. 1996 (1994) ........................................5, 6

National Firearms Act of 1934,
Pub. L. No. 73-474, 48 Stat. 1236 (1934) ............................................25

18 U.S.C. § 921(a) (2000) ....................................................................5, 6

18 U.S.C. § 922(v) (2000) ........................................................................6

18 U.S.C. § 922(w) (2000) ........................................................................5

1837 Ala. Laws 7, ch. 77, § 2 ................................................................24

1839 Ala. Laws 67, ch. 77, § 1 ..............................................................24

W. Ball, Revised Statutes of the State of Arkansas, Adopted
at the October Session of the General Assembly of Said State,
A.D. 1837, § 13, 280 (1838) ..................................................................24

1881 Ark. Acts 191, no. 96, § 3 ............................................................24

1832 Conn. Acts 391, ch. 25 ..................................................................22

1933 Cal. Stat. 1169 ................................................................................25

Cal. Penal Code § 16740 ..........................................................................2

Cal. Penal Code § 32310 ..........................................................................2

An Act to Control the Possession, Sale, Transfer, and Use of Pistols and Other
Dangerous Weapons in the District of Columbia,
Pub. L. No. 72-275, 47 Stat. 650 (1932) ..............................................25

1838 Fla. Laws 36, no. 24, § 1 ..............................................................24

1837 Ga. Acts. 90, § 1............................................................................24

An Act to Regulate the Sale, Possession and Transportation of Machine Guns, 1931 Ill. Laws 452, no. 18, §§ 1-2 ...................................................25

1819 Ind. Acts 39 ..............................................................................24

1932 La. Acts 336, no. 80, § 1 ............................................................25

1821 Maine Laws 98, ch. 25 ...............................................................22

1771-72 Mass. Province Laws 167, ch. 9 .............................................22

1782 Mass. Acts 119, ch. 46 ...............................................................21

1882 Mass. Acts 212, ch. 269 .............................................................22

An Act to Regulate and License the Selling, Purchasing, Possessing and Carrying of Certain Firearms, 1927 Mich. Pub. Acts 888, no. 372, § 3 ..............25

1933 Minn. Laws 231, ch. 190, § 1 .....................................................25

1825 N.H. Laws 73, ch. 61 ..................................................................22

1772 N.Y. Laws 682, ch. 1549 ............................................................22

1784 N.Y. Laws 627, ch. 28 ................................................................21

1927 R.I. Pub. Laws 256, ch. 1052, §§ 1, 4..........................................25

1821 Tenn. Acts 15, ch. 13 ..................................................................24

1837-38 Tenn. Acts 200, ch. 137 .........................................................24

1852 Tenn. Acts 246, ch. 169 ..............................................................22

1879 Tenn. Acts 135, ch. 96 ................................................................24

1923 Vt. Acts and Resolves 930, ch. 235, § 5711 .................................25

1838 Va. Acts 76, ch. 101 ...................................................................24

1934 Va. Acts 137, ch. 96 .......................................................................25

**Rules and Regulations**

Fed. R. App. P. 29(a)(2) ...........................................................................1

**Miscellaneous**

J. Brabner-Smith, *Firearm Regulation*, 1 LAW & CONTEMP.
PROBS. 400 (1934) ................................................................................27

S. Cornell & N. DeDino, *A Well Regulated Right: The Early American
Origins of Gun Control*, 73 FORDHAM L. REV. 487 (2004) ...........................21, 23

H.R. Rep. No. 103-489 (1994) .............................................................3, 27

R. Spitzer, *Gun Law History in the United States and Second Amendment
Right*, 80 LAW & CONTEMP. PROBS. 55 (2017) .....................................21

C. Sunstein, *On Analogical Reasoning*, 106 HARV. L. REV. 741 (1993)...........20, 21

## **INTERESTS OF AMICI**

*Amici* States—Massachusetts, New Jersey, Arizona, Colorado, Connecticut, Delaware, the District of Columbia, Hawai'i, Illinois, Maine, Maryland, Michigan, Minnesota, New York, Oregon, Pennsylvania, Rhode Island, Vermont, Washington, and Wisconsin—have compelling governmental interests in public safety and crime prevention. In furtherance of these interests, and pursuant to Rule 29(a)(2), we submit this brief to explain why California's limitation on the size of ammunition magazines that may be purchased and possessed within its borders is wholly consistent with the Second Amendment to the United States Constitution.

There are few interests more paramount to state governments than protecting public safety, and especially "the suppression of violent crime and vindication of its victims." *United States v. Morrison*, 529 U.S. 598, 618 (2000); *see also United States v. Salerno*, 481 U.S. 739, 755 (1987). The *Amici* States bear the solemn responsibility of ensuring the safety of the public and private spaces—the schools, grocery stores, houses of worship, and commercial centers—that make up the fabric of daily life in a free and democratic society. We work every day to promote our residents' health, welfare, and security, including by taking steps to curb the threats of mass shootings and other forms of gun violence that harm our residents and inhibit their exercise of constitutionally protected freedoms.

Exercising our police powers in service of these goals, the *Amici* States have

1

adopted a range of measures that regulate weapons and weapon accessories, while ensuring that our residents have access to weapons for individual self-defense. Although our regulations differ in substance, we share the firm conviction that our Constitution allows the States to address gun violence in a manner adapted to local needs and consistent with our Nation's historical traditions. In accordance with these objectives, the *Amici* States urge this Court to conclude that California's limitation on the size of ammunition magazines comports with the Constitution.

## SUMMARY OF THE ARGUMENT

The Second Amendment is "'not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose.'" *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2128 (2022) (quoting *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008)). Recognizing that "reasonable firearms regulations" can coexist comfortably with the Second Amendment, *McDonald v. City of Chicago*, 561 U.S. 742, 785 (2010) (plurality op.), the States have adopted a variety of restrictions on weapons and accessories that are not in common use for self-defense. This case concerns one such law: California prohibits the possession and sale of ammunition magazines capable of holding more than ten rounds of ammunition, referred to here as "large-capacity magazines" or "LCMs." Cal. Penal Code §§ 16740, 32310. Like similar laws around the country imposing restrictions on certain types of accessories, ammunition, and weapons themselves,

California's LCM provision preserves the right of law-abiding, responsible citizens to use firearms for self-defense. *See Duncan v. Bonta*, 19 F.4th 1087, 1104 (9th Cir. 2021) (en banc), *abrogated in part on other grounds by Bruen*, 142 S. Ct. 2111 (noting LCMs "provide significant benefit to soldiers and criminals who wish to kill many people rapidly" but "provide at most a minimal benefit for civilian, lawful purposes"). The law, which does not limit access to firearms or magazines that can hold ten or fewer rounds, regulates only those large-capacity magazines that "make it possible to fire a large number of rounds without re-loading, then to reload quickly when those rounds are spent," so that "a single person with a single [semiautomatic] weapon can easily fire literally hundreds of rounds within minutes." H.R. Rep. No. 103-489, at 19 (1994).

Misapplying the framework set forth in *Bruen*, the District Court concluded that Plaintiffs-appellees' Second Amendment challenge to this law is likely to succeed on the merits. *Duncan v. Bonta*, No. 17-cv-1017, 2023 WL 6180472 (S.D. Cal. Sept. 22, 2023). That conclusion should be reversed. Large-capacity magazines are not "Arms" under the Second Amendment's plain text because they are neither commonly used nor useful for self-defense. And historical understandings of the term "Arms" did not encompass container accessories such as large-capacity magazines. Moreover, California's law is "consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2126. From the early days of

our Nation, governments have restricted the manner in which ammunition may be stored and used, effectively imposing limits on firepower, and have restricted novel forms of weaponry that pose unique dangers to public safety. These traditions amply justify California's measured restriction on magazine capacity today.

## **ARGUMENT**

I.  **To Promote Our Residents' Safety and Well-Being, States Impose a Range of Restrictions, Including Prohibitions, on Dangerous Accessories and Weapons Not Commonly Used for Self-Defense.**

The Supreme Court has long been clear that the Second Amendment "extends only to certain types of weapons." *Heller*, 554 U.S. at 623-25. States and the federal government retain latitude to regulate categories of weapons and accessories, including by restricting public carry, possession, and sale of weapons that are not commonly used for self-defense and that pose a threat to our communities. Indeed, the Court has recognized the constitutionality of laws banning categories of weapons—among them, "short-barreled shotguns" and "M-16 rifles and the like"— because certain "type[s] of weapon[s]" are simply "not eligible for Second Amendment protection." *Id.* at 621-22, 625, 627 (emphasis removed).

Consistent with that guidance, States have adopted a range of laws that impose restrictions, including prohibitions, on certain categories of weapons and accessories. Laws like California's, which restrict accessories that cannot by themselves be used for offensive or defensive purposes but nevertheless enhance the

lethality of weapons, dot the national landscape. Fourteen States and the District of Columbia restrict the size of ammunition magazines that may be used with semiautomatic weapons, while allowing for possession and sale of smaller-capacity magazines.[1] Eighteen jurisdictions and the federal government ban bump stocks, trigger cranks, binary triggers, rapid-fire trigger activators, or other devices used to approximate an automatic rate of fire with a semiautomatic weapon.[2] Silencers or suppressors, used to muffle the sound of a gun when it fires, are banned in eight States and the District of Columbia[3] and subject to restrictions or registration requirements by the federal government and 20 more States.[4]

States and the federal government also restrict the type and size of ammunition that can be purchased or possessed. While all States allow for robust access to ammunition, at least 26 jurisdictions prohibit especially dangerous forms of ammunition. Twenty-one jurisdictions and the federal government prohibit the

---

[1] *See* Appendix Table 1. From 1994 to 2004, the federal government also banned handgun and long-gun magazines capable of holding more than 10 rounds. *See* Pub. L. No. 103-322, 108 Stat. 1998-2000, codified at 18 U.S.C. §§ 921(a), 922(w) (2000).

[2] *See* Appendix Table 2. The Supreme Court has granted a petition to review the lawfulness of federal regulations construing the statutory term "machine gun" to include bump stocks. *See Cargill v. Garland*, No. 22-976 (U.S.).

[3] *See* Appendix Table 3.

[4] *See* Appendix Table 4.

5

possession or sale of bullets designed to penetrate metal or armor.[5] Nine prohibit ammunition designed to explode, detonate, or segment upon impact.[6] Multiple jurisdictions prohibit certain large-caliber ammunition, usable with .50- or .60- caliber weapons[7]; hollow-point bullets, designed to expand in their target on impact[8]; and Flechette shells, expelled from guns as pieces of metal wire or dart-like projectiles.[9] Others ban certain forms of shotgun ammunition: "Dragon's breath" shells, used to simulate a flamethrower by making shotguns spew fireballs or columns of flames, and bolo shells, designed as two or more metal balls connected by metal wire.[10]

States and the federal government also prohibit possession of certain types of weapons that are not useful for or commonly used in self-defense. Like the federal government from 1994 to 2004,[11] nine States and the District of Columbia prohibit purchase or possession of semiautomatic assault weapons.[12] Although state

---

[5] *See* Appendix Table 5.

[6] *See* Appendix Table 6.

[7] *See* Appendix Table 7.

[8] *See* Appendix Table 8.

[9] *See* Appendix Table 9.

[10] *See* Appendix Table 10.

[11] Pub. L. No. 103-322, 108 Stat. 1996-2010, codified at 18 U.S.C. §§ 921(a), 922(v) (2000).

[12] *See* Appendix Table 11.

6

definitions of the prohibited class of weapons differ, they typically encompass weapons like AR-15 and AK-47-style rifles that inflict catastrophic injuries and have distinct combat capabilities, rendering them uniquely devastating in mass shootings.[13] Thirteen jurisdictions ban automatic-fire machine guns, subject to limited exceptions,[14] while 26 States and the federal government ban machine guns manufactured after May 19, 1986, require registration of machine guns owned before that date, or impose other restrictions.[15] Nine States and the District of Columbia also prohibit short-barreled shotguns or rifles,[16] while the federal government and 22 other States impose restrictions on those weapons.[17] Four jurisdictions prohibit high-caliber rifles,[18] five prohibit guns hidden in canes and other covert weapons,[19] and 19 jurisdictions and the federal government ban grenades, rocket launchers, or other hand-held destructive devices.[20]

All told, across our country today, States and the federal government impose

---

[13] *See id.*

[14] *See* Appendix Table 12.

[15] *See* Appendix Table 13.

[16] *See* Appendix Table 14.

[17] *See* Appendix Table 15.

[18] *See* Appendix Table 16.

[19] *See* Appendix Table 17.

[20] *See* Appendix Table 18.

restrictions, including prohibitions, on a diverse array of weapons, accessories, and ammunition. California's law restricting magazine capacity is of a piece with this tapestry of regulation and, as discussed below, a long history of governmental efforts to deter violence and promote public safety.

## II.     California's Restriction on Magazine Capacity Comports with the Second Amendment.

California's choice to limit magazine capacity to ten bullets is constitutional. Under *Bruen*, courts must evaluate Second Amendment challenges by making two inquiries. First, courts must ask if the Second Amendment right is implicated—*i.e.*, whether its "plain text covers an individual's conduct." *Bruen*, 142 S. Ct. at 2126. If it does not, "the regulated activity is categorically unprotected." *Id.* Second, if the conduct is protected, courts ask if the restriction nevertheless accords with "the Nation's historical tradition of firearm regulation." *Id.* Under either step, California's law is valid.

### A.     The Second Amendment Does Not Protect Large-Capacity Magazines.

The District Court wrongly concluded that Plaintiffs-appellees' conduct— possessing magazines that can hold more than 10 rounds—is protected by the Second Amendment. *Duncan*, 2023 WL 6180472, at *7-17. The Second Amendment's "plain text" does not protect possessing LCMs because under the Amendment's "normal and ordinary meaning" when it was ratified, LCMs are not

8

bearable arms, and because LCMs are not "common[ly] use[d] today for self-defense." *Bruen*, 142 S. Ct. at 2126-27, 2134 (quotation marks omitted).

### 1. Large-Capacity Magazines Are Not Arms.

The Second Amendment protects the right to "bear Arms." But LCMs are historically understood as accessories, not arms.

As *Heller* explained, arms were defined at the Founding as "weapons" that could be used "to cast at or strike another." 554 U.S. at 581 (quotation marks and citations omitted). Magazines—storage containers for bullets—cannot be so used: "they generally have no use independent of their attachment to a gun[.]" *Ocean State Tactical v. Rhode Island*, 646 F. Supp. 3d 368, 386-87 (D.R.I. 2022) (quotation and citation omitted), *appeal pending*, No. 23-1072 (1st Cir.).

That magazines are not bearable arms is more than common-sense intuition. As California's linguistics expert explains, historically, the term "Arms" was reserved for weapons like blades and firearms. ECF 118-2 (Baron Decl. ¶7); *see also Ocean State Tactical*, 646 F. Supp. 3d at 387. And its meaning did not encompass the separate concept of accessories like cartridge boxes, scabbards, and flint, which were historically considered "accoutrements." ECF 118-2 (Baron Decl. ¶¶7, 23-65). The same is true for bullet-holders like LCMs now.

In dismissing the arms-accoutrements distinction, the District Court mistakenly conflated magazines with bullets. *See Duncan*, 2023 WL 6180472, at *7-

9. No one disputes that bullets commonly used for and useful in self-defense are necessary to make firearms operable: "Without *bullets*, a firearm would be useless." *Ocean State Tactical*, 646 F. Supp. 3d at 386 (emphasis in original). "But a firearm can fire bullets without a detachable magazine, and in any event, a firearm does not need a magazine containing more than ten rounds to be useful." *Id.* Using LCMs is simply not an act "necessary" to bearing arms. *Luis v. United States*, 578 U.S. 5, 26 (2016) (Thomas, J., concurring in the judgment).

Thus, the original public meaning of "Arms" excludes accessories like LCMs. *See Ocean State Tactical*, 646 F. Supp. 3d at 386-87; *Brumback v. Ferguson*, No. 22-cv-03093, 2023 WL 6221425, at *8-9 (E.D. Wash. Sept. 25, 2023). California's limit on use of LCMs is therefore constitutional.

### 2. Large-Capacity Magazines Are Not Commonly Used for Self-Defense.

Even if this Court were to assume that LCMs are arms rather than accoutrements, the Second Amendment does not protect their use for another, independent reason: LCMs are not "arms" in "'common use' for self-defense today"—a prerequisite for Second Amendment protection. *Bruen*, 142 S. Ct. at 2134, 2143 (quoting *Heller*, 554 U.S. at 627).

There is abundant, uncontested record evidence establishing that LCMs are "most useful in military service," *Heller*, 554 U.S. at 627, and not commonly used

for "armed self-defense," *Bruen*, 142 S. Ct. 2132, and therefore fall outside the protection of the Second Amendment like the M-16s discussed in *Heller*. As California's unrebutted historical expert evidence demonstrates, "Nineteenth-century magazines capable of storing more than ten rounds of ammunition at a time . . . were designed for large, military-grade firearms that were not capable of being used or carried for personal use." ECF 118-7 (Rivas Decl. ¶26). Indeed, detachable magazines "were not generally sold with a capacity of more than 10 rounds until recently." *Id.* (Rivas Decl. ¶33); *see also* ECF 118-3 (Busse Decl. ¶¶6-7). This accords with the Seventh Circuit's recent holding that large-capacity magazines "can lawfully be reserved for military use" because they are "much more like machineguns and military-grade weaponry than they are like the many different types of firearms that are used for individual self-defense." *Bevis v. City of Naperville*, No. 23-1353, __F.4th__, 2023 WL 7273709, at *12, *14 (7th Cir. Nov. 3, 2023). At bottom, LCMs are military instruments—not those "that facilitate armed self-defense." *Bruen*, 142 S. Ct. at 2132.

The District Court's alternate methodology—looking *only* to surveys of whether the instrument in question is commonly possessed, *see Duncan*, 2023 WL 6180472, at *4 ("millions of Americans across the country own large capacity magazines")—defies both precedent and common sense. First, the precedent is clear: the test for whether a specific weapon falls within the Second Amendment

11

right turns on whether it is in common *use* for self-defense, not common *ownership*. *See Bruen*, 142 S. Ct. at 2138 (referring to "commonly *used* firearms for self-defense"); *Id.* at 2156 (describing "right to bear commonly *used* arms in public"); *see also Heller*, 554 U.S. at 636 (striking down an "absolute prohibition of handguns held *and used* for self-defense") (emphases added). Courts thus must consider whether the weapon actually "facilitate[s] armed self-defense," which is "the central component of the Second Amendment right." *Bruen*, 142 S. Ct. at 2132-33 (citation omitted). And, contrary to the District Court's focus on Americans "subjective need" for LCMs for self-defense, 2023 WL 6180472, at \*10-12, mere *belief* that owning a grenade or LCM would be maximally helpful for self-defense is insufficient. *See Nat'l Ass'n for Gun Rights v. Lamont*, No. 22-cv-1118, __F. Supp. 3d__, 2023 WL 4975979, at \*26 (D. Conn. Aug. 3, 2023) (rejecting relevance of argument "that a modern American citizen might want to possess a military-grade weapon"), *appeal pending*, No. 23-1162 (2d Cir.); *Oregon Firearms Fed'n v. Kotek*, No. 22-1815, __F. Supp. 3d__, 2023 WL 4541027, at \*30 (D. Or. July 14, 2023) (purchasers' "subjective intent" cannot be dispositive), *appeal pending*, No. 23-35479 (9th

Cir.).[21] Rather, *Bruen* requires analysis of the suitability and actual use of the weapon for self-defense. 142 S. Ct. at 2132-33.

Second, a tally approach of ownership figures is hopelessly circular. The tally for a weapon depends in significant part on when the government enacted legislation prohibiting it; had governments banned AR-15s the moment they became commercially available, the number of such firearms in circulation would be negligible. But "[i]t would be absurd to say that the reason why a particular weapon can be banned is that there is a statute banning it, so that it isn't commonly owned." *Friedman v. City of Highland Park*, 784 F.3d 406, 409 (7th Cir. 2015); *see also Bevis*, 2023 WL 27273709, at *14-15. Just as "[a] law's existence can't be the source of its own constitutional validity," that governments did not uniformly prohibit a certain firearm for the initial years of commercial production cannot be the reason why the Constitution presumptively protects it. *Kolbe v. Hogan*, 849 F.3d 114, 141 (4th Cir. 2017) (en banc), *abrogated on other grounds by Bruen*, 142 S. Ct. 2111. And if a tally threshold were all that were needed, manufacturers could "flood[] … the market prior to any governmental prohibition in order to ensure it

---

[21] Indeed, subjective expectations alone do not dictate the parameters of other constitutional rights. *See Oregon Firearms Fed'n*, 2023 WL 4541027, at *30-32 (collecting cases). "[I]t is the task of the law to form and project" and not just "mirror and reflect" society's "expectations" as the law. *United States v. White*, 401 U.S. 745, 786 (1971) (Harlan, J., dissenting).

13

constitutional protection"—a wholly illogical proposition. *Id.*; *see also Oregon Firearms Fed'n,* 2023 WL 4541027, at *28. Indeed, it was only after the federal assault weapons ban expired that "these weapons began to occupy a more significant share of the market." *Bevis*, 2023 WL 7273709, at *15. So, "if we looked to numbers alone, the federal ban would have been constitutional before 2004, but unconstitutional thereafter"—a result that "lacks both textual and historical provenance," not to mention common sense. *Id.*

Machine guns are a particularly illustrative example. *Heller* was clear the Second Amendment does not protect machine guns because they are "not typically possessed by law-abiding citizens for lawful purposes," and found "startling" the suggestion that machine guns are entitled to constitutional protection. *Heller*, 554 U.S. at 624-25. But under the District Court's flawed theory, machine guns could be protected; data suggest that civilians legally own hundreds of thousands of machine guns. *See Delaware State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.*, No. 22-cv-951, __F. Supp. 3d.__, 2023 WL 2655150, at *5 (D. Del. Mar. 27, 2023).

In sum, after erring in failing to recognize that LCMs are accoutrements and not "Arms" as that term was historically understood, the District Court erred in failing to consider whether LCMs are actually in common use for self-defense or even suitable for that purpose—questions on which the record compels the answer

14

set forth by California, Br. 16-31. This Court should join other courts post-*Bruen* that have come to the same conclusion. *See, e.g.*, *Bevis*, 2023 WL 7273709 at *12, *14 (holding that "high-capacity magazines are much more like machineguns and military-grade weaponry than they are like the many different types of firearms that are used for individual self-defense"); *Ocean State Tactical*, 646 F. Supp. 3d at 390 (similarly holding that large-capacity magazines are not commonly used for self-defense); *Oregon Firearms Fed'n*, 2023 WL 4541027, at *34 (same); *Lamont*, 2023 WL 4975979, at *19-26 (same); *Hanson v. District of Columbia*, No. 22-cv-2256, __F. Supp. 3d__, 2023 WL 3019777, at *7-12 (D.D.C. Apr. 20, 2023) (same), *appeal pending*, No. 23-7061 (D.C. Cir.).

**B.      California's Magazine Capacity Restriction Is Analogous to the Historical Practices of Regulating the Storage of Ammunition and Imposing Restrictions on New, and Distinctly Dangerous, Forms of Weaponry.**

If this Court holds or assumes that large-capacity magazines are protected "Arms," it should then reverse the District Court's conclusion that there exists no longstanding tradition of restrictions relevantly similar to California's present-day law. The law is constitutional because it is "consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2129-30.

**1.      This Court Should Consider the Full Sweep of Our Nation's Historical Tradition of Regulating Arms.**

To begin with, while the Supreme Court has left open the question whether a

court should "primarily" look to Founding-era or Reconstruction-era history in evaluating the Nation's traditions, *id.* at 2138, *Bruen* and *Heller* compel the conclusion that courts must consider the broad extent of our country's history— including the nineteenth and twentieth centuries—when reviewing a state law's constitutionality. In both *Heller* and *Bruen*, the Court thoroughly examined eighteenth- and nineteenth-century statutes and case law in assessing the challenged laws' constitutionality. *See Bruen*, 142 S. Ct. at 2142-56; *Heller*, 554 U.S. at 600-19. The Court made clear that post-ratification history is not only relevant, but a "critical tool of constitutional interpretation" that elucidates "the public understanding of a legal text in the period after its enactment or ratification." *Heller*, 554 U.S. at 605 (emphasis removed); *see Bruen*, 142 S. Ct. at 2136 (same). *Heller* conducted an extensive review of post-ratification sources from 1803 to 1891, *see* 554 U.S. at 605-19, and *Bruen* did likewise through 1890, *see* 142 S. Ct. at 2145-54.

This comprehensive approach accords with governing first principles. States are "bound to respect the right to keep and bear arms because of the Fourteenth Amendment," ratified in 1868, "not the Second" Amendment, ratified in 1791. *Bruen*, 142 S. Ct. at 2137. The public understanding of the scope of constitutional rights shared by those who adopted the Fourteenth Amendment must therefore carry significant weight in the historical analysis. *See Heller*, 554 U.S. at 634-35 ("Constitutional rights are enshrined with the scope they were understood to have

16

when the people adopted them.").

And, as *Bruen* also explained, "'a regular course of practice can liquidate & settle the meaning of disputed or indeterminate terms & phrases' in the Constitution." 142 S. Ct. at 2136 (quoting *Chiafalo v. Washington*, 140 S. Ct. 2136, 2326 (2020)). A governmental practice not directly contrary to the text of the Constitution may thus "'guide [a court's] interpretation of an ambiguous constitutional provision,'" particularly where the practice "'has been open, widespread, and unchallenged since the early days of the Republic.'" *Id.* at 2137 (quoting *NLRB v. Noel Canning*, 573 U.S. 513, 572 (2014) (Scalia, J., concurring in the judgment)). *Bruen* itself offered an example of such liquidation: while the Second Amendment's text does not speak directly to the constitutionality of laws prohibiting firearms in sensitive places, the Court was "aware of no disputes regarding the lawfulness of" such enactments during the eighteenth and nineteenth centuries, so the Court "assume[d] it settled that" governments can constitutionally prohibit firearms in certain sensitive places. 142 S. Ct. at 2133.

Twentieth-century history bears on the historical inquiry for the same reason, contrary to the District Court's assertion otherwise, 2023 WL 6180472, at *22. While twentieth-century history that "contradicts earlier evidence" is not probative, *Bruen*, 142 S. Ct. at 2154 n.28, the Supreme Court has relied on twentieth-century history in its Second Amendment rulings. In *Heller*, the Court characterized laws

that originated in the twentieth century—among them, laws banning people with felony convictions or mental illness from possessing weapons—as "longstanding" and "presumptively lawful." 554 U.S. at 626-27 & n.26; *see United States v. Booker*, 644 F.3d 12, 23-24 (1st Cir. 2011) ("[T]he modern federal felony firearm disqualification law … is firmly rooted in the twentieth century."). Similarly, "*Heller* deemed a ban on private possession of machine guns to be obviously valid," but "states didn't begin to regulate private use of machine guns until 1927." *Friedman*, 784 F.3d at 408. These twentieth-century measures' presumptive lawfulness was reaffirmed by a majority of the Court in *Bruen*. *See* 142 S. Ct. at 2157 (Alito, J., concurring); *Id.* at 2162 (Kavanaugh, J., concurring, joined by Roberts, C.J.); *Id.* at 2189 (Breyer, J., dissenting, joined by Sotomayor and Kagan, JJ.).[22]

---

[22] In addressing the scope of the Second Amendment, *Bruen* and *Heller* also "repeatedly compared the right to keep and bear arms" to the right to free speech, noting that "the government must generally point to *historical* evidence about the reach of the First Amendment's protections." *Bruen*, 142 S. Ct. at 2130 (citing *United States v. Stevens*, 559 U.S. 460, 468-71 (2010)) (emphasis in original). When analyzing whether categories of speech fall outside the scope of the First Amendment, the Supreme Court has looked beyond Founding-era history to laws and practices that predominated in the nineteenth and twentieth centuries. *See, e.g.*, *Roth v. United States*, 354 U.S. 476, 484-85 (1957) (looking to "the international agreement of over 50 nations," "the obscenity laws of all of the 48 States," and "the 20 obscenity laws enacted by the Congress from 1842 to 1956" in holding obscene speech unprotected); *Beauharnais v. Illinois*, 343 U.S. 250, 254-56 (1952) (focusing on contemporary criminal codes of the States as well as colonial-era criminal codes and legal developments in the decades after ratification in concluding that libel is not protected speech).

18

Furthermore, twentieth-century history can be uniquely probative in cases involving emergent weapons that did not become widely publicly available until the last century. *See Hanson*, 2023 WL 3019777, at *16. The absence of eighteenth- and nineteenth-century legislative enactments addressing such weapons cannot mean there exists no historical tradition of comparable regulation, because there would have been scant reason for States to regulate the weapons during those eras. This case is a prime example: in the eighteenth century, firearms that could accept more than 10 rounds "were extraordinarily rare," and in the nineteenth, "were possessed almost exclusively by the U.S. army." ECF 118-10 (Vorenberg Decl. ¶¶7-10, 16). Just as "[t]he First Amendment does not require States to regulate for problems that do not exist," *McCullen v. Coakley*, 573 U.S. 464, 481 (2014) (citation omitted), neither does the Second Amendment impose such a non-sensical burden. Moreover, the Constitution does not require States to legislate to the zenith of their authority by, for example, restricting curio weapons that have yet to pose a public-safety problem; rather, the Constitution allows States the flexibility to "adopt laws to address the problems that confront them." *Id.*; *see also Williams-Yulee v. Florida Bar*, 575 U.S. 433, 449 (2015) ("A State need not address all aspects of a problem in one fell swoop; policymakers may focus on their most pressing concerns.").

## 2. California's Law Comports with Our Historical Tradition.

Laws like California's restricting magazine capacity derive from a long

19

tradition of regulating uniquely dangerous weapons, accessories, gunpowder, and ammunition that posed an inordinate public safety risk upon their emergence in the commercial market.

To determine whether a challenged statute is consistent with a historical tradition of firearms regulation, courts must reason by analogy. *Bruen*, 142 S. Ct. at 2131-32. Cases that implicate "unprecedented societal concerns or dramatic technological changes" like those here demand a "nuanced" approach to analogical reasoning, one that looks to whether, over the course of history, there have existed "relevantly similar" analogues. *Id.* at 2132 (citing C. Sunstein, *On Analogical Reasoning*, 106 HARV. L. REV. 741, 773 (1993)). While the Court did not "provide an exhaustive survey of the features that render regulations relevantly similar," it made clear that "*Heller* and *McDonald* point toward at least two metrics: how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id.* at 2132-33 (stressing that "individual self-defense is the *central component* of the Second Amendment right" (quotation marks omitted)). In applying these metrics, courts must bear in mind that the analogical inquiry is not a "regulatory straightjacket," and a modern-day regulation need not be a "dead ringer for historical

precursors" to be "analogous enough to pass constitutional muster." *Id.* at 2133.[23]

From the colonial period through the nineteenth century, States and municipalities adopted measures that, like California's present-day law, limited the amount of gunpowder or ammunition that could be kept in one place or one container. *See* S. Cornell & N. DeDino, *A Well Regulated Right: The Early American Origins of Gun Control*, 73 FORDHAM L. REV. 487, 511 (2004) ("Limits on the amount of gunpowder a person could possess were common and typically in the range of twenty to thirty pounds."); R. Spitzer, *Gun Law History in the United States and Second Amendment Right*, 80 LAW & CONTEMP. PROBS. 55, 80-81 (2017) (summarizing gunpowder storage laws). A 1783 Massachusetts law imposed a fine on "any Person" who "shall take into any [house or building] within the Town of Boston, any…Fire-Arm, loaded with, or having Gun-Powder." 1782 Mass. Acts 119, ch. 46. In 1784, New York required separating gunpowder in the home "into four stone jugs or tin cannisters, which shall not contain more than seven pounds each." Act of Apr. 13, 1784, ch. 28, 1784 N.Y. Laws 627, 627. Throughout the 1780s, Pennsylvania laws "required that gunpowder be stored on the highest story of the

---

[23] That nuanced approach accords with how analogical reasoning is described in the scholarly sources upon which *Bruen* relied. *See* 142 S. Ct. at 2132. For example, as Cass Sunstein's study explained, analogical reasoning is similar to common-law reasoning, with "the important advantage of allowing a large degree of openness to new facts and perspectives." Sunstein, *supra*, at 782.

home" in certain towns. *Heller*, 554 U.S. at 686 (Breyer, J., dissenting). Similar laws were adopted well into the nineteenth century, and the *Amici* States are not aware of court decisions invalidating them. *E.g.*, 1882 Mass. Acts 212, ch. 269 (requiring registration of gunpowder in excess of one pound stored in buildings); 1771-72 Mass. Province Laws 167, ch. 9 (requiring gunpowder imported into Massachusetts to be stored in public magazines); *see also* 1832 Conn. Acts 391, ch. 25; 1825 N.H. Laws 73, ch. 61; 1821 Maine Laws 98, ch. 25; 1772 N.Y. Laws 682, ch. 1549; 1852 Tenn. Acts 246, ch. 169.

Contrary to the District Court's dismissal of these gunpowder storage antecedents, 2023 WL 6180472, at *29-31, they are relevantly similar to California's magazine-capacity limit in how and why they burden the right to armed self-defense. With respect to *how*: both sets of laws limit the quantity of ammunition that may be kept in one location or one type of container, thereby restricting the amount of firepower that can be generated, but do not ban an entire class of arms or effectively prohibit citizens from carrying firearms for self-defense. *Contra Bruen*, 142 S. Ct. at 2156; *Heller*, 554 U.S. at 628. California's magazine restriction is, in fact, *less* restrictive than many of these antecedents, because it limits only the number of rounds in any single magazine, not the amount of ammunition or the number of magazines a gun owner may possess.

The gunpowder-storage laws and California's magazine-capacity limitation

22

are also relevantly similar in *why* they burden the right to armed self-defense: they seek to forestall tragedy wrought by aggregations of ammunition far in excess of what is needed for self-defense. *See* Cornell & DeDino, *supra*, at 512 (the gunpowder storage laws "were clearly crafted to meet the needs of public safety, but they also provided a check on the creation of a private arsenal"). Reflecting the measured nature of these enactments, the Supreme Court has recognized that gunpowder-storage laws "do not remotely burden the right of self-defense as much as an absolute ban on handguns." *Heller*, 554 U.S. at 632. In its vacated opinion in this case issued prior to *Bruen*, this Court similarly recognized that California's LCM law aims to advance public safety while imposing "at most a minimal burden, if any burden at all, on the right of self-defense." 19 F.4th at 1104; *see also id.* at 1097 (quoting declarations in Proposition 63 that LCMs "significantly increase a shooter's ability to kill a lot of people in a short amount of time" and are too dangerous to be possessed by anyone "except trained law enforcement").

California's magazine-capacity restriction is also relevantly similar to the longstanding practice of regulating novel, and unusually dangerous, weapons and accessories that contribute to crime without a corresponding utility for self-defense. This tradition followed a predictable pattern: first, new weapons technologies were developed; second, they spread into society and created a public safety threat; and third, governments enacted regulations to dampen weapons-related criminality and

23

violence. In the early nineteenth century, States increasingly began imposing restrictions on weapons like Bowie knives[24] and pocket pistols[25] that were contributing to rising murder rates. *See* ECF 118-9 (Spitzer Decl. ¶¶42-56); *Aymette v. State*, 21 Tenn. 154, 158 (1840) (in upholding law banning sale and concealed carry of Bowie knives, distinguishing between protected weapons and "weapons which are usually employed in private broils, and which are efficient only in the hands of the robber and the assassin"). Many of the laws prohibited concealed carry of these weapons, and some, like Arkansas's and Tennessee's postbellum statutes regulating pocket pistols, likewise banned sales. *See* An Act to Prevent the Sale of Pistols, ch. 96, § 1, 1879 Tenn. Acts 135-36; 1881 Ark. Acts 191, no. 96, § 3.

During the 1920s and 1930s, the Nation witnessed a new wave of regulation of emergent weapons that threatened public safety. During this era, "at least 32 states enacted anti-machine gun laws" which prohibited or regulated automatic-fire weapons. ECF 118-9 (Spitzer Decl. ¶5). Similarly, Congress enacted the first nationwide firearms regulation statute, the National Firearms Act of 1934, to restrict

---

[24] *See, e.g.*, 1837 Ga. Acts. 90, § 1; Ch. 77, § 2, 1837 Ala. Laws 7, 7; No. 24 § 1, 1838 Fla. Laws 36, 36; Ch. 137, §§ 1-2, 1837-38 Tenn. Acts 200; Ch. 101, § 1, 1838 Va. Acts 76, 76; Ch. 77, § 1, 1839 Ala. Laws 67, 67.

[25] *See, e.g.*, 1819 Ind. Acts 39; 1821 Tenn. Acts ch. 13, p. 15; W. Ball, Revised Statutes of the State of Arkansas, Adopted at the October Session of the General Assembly of Said State, A.D. 1837, § 13, 280 (1838); Ch. 101, § 1, 1838 Va. Acts 76, 76.

machine guns, short-barreled shotguns, and other dangerous weapons. *Id.* ¶7; Pub. L. No. 73-474. During these decades, a number of jurisdictions also banned or otherwise restricted high-capacity semiautomatic weapons shortly after they began to proliferate, typically in the same legislation that established the accepted tradition of banning machine guns. ECF 118-9 (Spitzer Decl. ¶13); *see also Heller v. District of Columbia* ("*Heller II*"), 670 F.3d 1244, 1270 (D.C. Cir. 2011) (Kavanaugh, J., dissenting) (machine guns "have traditionally been banned").[26] In the same era, regulations limiting magazine capacity were also common: twenty-three States imposed some limitation, typically restricting the number of rounds to between five and eighteen.[27]

This tradition of regulating unusually dangerous weapons and accessories is relevantly similar to the California's large-capacity magazine law in how and why the enactments burden the right to armed self-defense. With respect to how: both

---

[26] *See* An Act to Regulate and License the Selling, Purchasing, Possessing and Carrying of Certain Firearms, no. 372 § 3, 1927 Mich. Pub. Acts 888, 888-89; Ch. 1052 §§ 1, 4, 1927 R.I. Pub. Laws 256, 256-57; An Act to Control the Possession, Sale, Transfer, and Use of Pistols and Other Dangerous Weapons in the District of Columbia, Pub. L. No. 72-275, 47 Stat. 650, 650 (1932); Ch. 190, § 1, 1933 Minn. Laws 231, 232; Ch. 96, 1934 Va. Acts 137-40.

[27] *See, e.g.*, 1933 Cal. Stat. 1169, 1170; No. 80, § 1, 1932 La. Acts 336, 337; An Act to Regulate the Sale, Possession and Transportation of Machine Guns, no. 18, §§ 1-2, 1931 Ill. Laws 452-53; An Act to Prohibit the Use of Machine Guns and Automatic Rifles in Hunting, ch. 235, § 5711, 1923 Vt. Acts and Resolves 930.

types of measures regulate specific dangerous weapons or accessories used for criminal and other violent purposes, rather than standard weapons of self-defense. Important to this "how" inquiry, the analogical reasoning prescribed by *Bruen* does not require that a historical tradition be precisely the same type of regulation as the modern one, nor does it suggest that the only analogue for a weapon-specific ban is another weapon-specific ban. Rather, *Bruen* and *Heller* both relied on the *degree* of burden when evaluating proposed historical analogues. *See Bruen*, 142 S. Ct. at 2145 (examining whether analogues imposed a comparably "substantial burden"); *Heller*, 554 U.S. at 632 (similar). And, as discussed above, *supra* at 21-23, unlike the laws at issue in *Heller* and *Bruen*, the enactment at issue here, like its historical antecedents, does not amount to a ban on an entire class of arms or effectively prohibit citizens from carrying firearms for self-defense. *Contra Bruen*, 142 S. Ct. at 2156; *Heller*, 554 U.S. at 628. Rather, consistent with our Nation's tradition of regulating specific and particularly dangerous weapons used for criminality without meaningfully burdening self-defense capabilities, California's law imposes, at most, a minimal burden on the right to self-defense; indeed, as the record below establishes, large-capacity magazines are virtually never used for self-defense. *See supra* at 10-13.

The purpose of California's law is also relevantly similar to the purpose of this tradition of regulation: to enhance public safety in the face of new weapon

technology that has threatened, or already inflicted, significant harm on American citizens. The Bowie-knife restrictions of the early 1800s, for example, were intended "to promote personal security, and to put down lawless aggression and violence." *State v. Reid*, 1 Ala. 612, 617 (1840). And the early twentieth-century regulation of machine guns and semiautomatic weapons stemmed from concern over the "growth of armed gangsterism [that] resulted in the use of more deadly weapons by criminals." J. Brabner-Smith, *Firearm Regulation*, 1 LAW & CONTEMP. PROBS. 400, 405 (1934). Modern-day laws restricting magazine capacity are likewise a response to the proliferation of these accessories in a contemporary form of lawlessness and violence: mass public shootings. *See* H.R. Rep. No. 103-489, at 19 (1994); *Duncan*, 19 F.4th at 1097 (setting forth Proposition 63's stated purpose of "mak[ing] it illegal in California to possess the kinds of military-style ammunition magazines that enable mass killings"). Courts have widely recognized that because large-capacity magazines were designed for military use and to inflict exceptionally high mortality rates and rates of injury, they have been the "weapons of choice in many of the deadliest mass shootings in recent history." *Worman v. Healey*, 922 F.3d 26, 39 (1st Cir. 2019), *abrogated on other grounds by Bruen*, 142 S. Ct. 2111; *accord Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Att'y Gen. of New Jersey*, 910 F.3d 106, 118 (3d Cir. 2018), *abrogated on other grounds by Bruen*, 142 S. Ct. 2111; *Kolbe*, 849 F.3d at 126-27; *New York State Rifle & Pistol Ass'n v. Cuomo*, 804 F.3d 242, 262-63 (2d

27

Cir. 2015), *abrogated on other grounds by Bruen*, 142 S. Ct. 2111; *Friedman*, 784 F.3d 411; *Heller II*, 670 F.3d at 1262-64.

In choosing to restrict the capacity of magazines within its borders, California acted to prevent these harms, without correspondingly burdening the right to self-defense. Its choice is consistent with a long tradition of relevantly similar historical antecedents, and it comports fully with the Second Amendment.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should reverse the order of the District Court.

Respectfully submitted,

MATTHEW J. PLATKIN
*Attorney General of New Jersey*

Jeremy Feigenbaum
*Solicitor General*
Angela Cai
*Deputy Solicitor General*
(862) 350-5800

Date: November 28, 2023

ANDREA JOY CAMPBELL
*Attorney General of Massachusetts*

Elizabeth N. Dewar
*State Solicitor*
One Ashburton Place
Boston, Massachusetts 02108
(617) 963-2718
bessie.dewar@mass.gov

KRISTIN K. MAYES
*Attorney General*
*State of Arizona*
2005 N. Central Avenue
Phoenix, AZ 85004

PHILIP J. WEISER
*Attorney General*
*State of Colorado*
1300 Broadway
Denver, CO 80203

WILLIAM TONG
*Attorney General*
*State of Connecticut*
165 Capitol Avenue
Hartford, CT 06106

KATHLEEN JENNINGS
*Attorney General*
*State of Delaware*
820 N. French Street
Wilmington, DE 19801

BRIAN L. SCHWALB
*Attorney General for the*
*District of Columbia*
400 6th Street, NW, Suite 8100
Washington, D.C. 20001

ANNE E. LOPEZ
*Attorney General*
*State of Hawaiʻi*
425 Queen Street
Honolulu, HI 96813

KWAME RAOUL
*Attorney General*
*State of Illinois*
100 West Randolph Street
Chicago, IL 60601

AARON M. FREY
*Attorney General*
*State of Maine*
6 State House Station
Augusta, ME 04333

ANTHONY G. BROWN
*Attorney General*
*State of Maryland*
200 Saint Paul Place, 20th Floor
Baltimore, MD 21202

DANA NESSEL
*Attorney General*
*State of Michigan*
P.O. Box 30212
Lansing, MI 48909

KEITH ELLISON
*Attorney General*
*State of Minnesota*
102 State Capitol
75 Rev. Dr. Martin
  Luther King Jr. Blvd.
St. Paul, MN 55155

LETITIA JAMES
*Attorney General*
*State of New York*
28 Liberty Street
New York, NY 10005

ELLEN F. ROSENBLUM
*Attorney General*
*State of Oregon*
1162 Court Street NE
Salem, OR 97301

MICHELLE A. HENRY
*Attorney General*
*Commonwealth of Pennsylvania*
Strawberry Square, 16th Floor
Harrisburg, PA 17120

PETER F. NERONHA
*Attorney General*
*State of Rhode Island*
150 South Main Street
Providence, RI 02903

CHARITY R. CLARK
*Attorney General*
*State of Vermont*
109 State Street
Montpelier, VT 05609

ROBERT W. FERGUSON
*Attorney General*
*State of Washington*
P.O. Box 40100
Olympia, WA 98504

JOSHUA L. KAUL
*Attorney General*
*State of Wisconsin*
17 W. Main Street
Madison, WI 53703

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** __No. 23-55805_____

I am the attorney or self-represented party.

**This brief contains ___6,497_____ words,** including _____ words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[  ] complies with the word limit of Cir. R. 32-1.

[  ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[X] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[  ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[  ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
      [ ] it is a joint brief submitted by separately represented parties.
      [ ] a party or parties are filing a single brief in response to multiple briefs.
      [ ] a party or parties are filing a single brief in response to a longer joint brief.

[  ] complies with the length limit designated by court order dated _____.

[  ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).


**Signature** ___/s/ Elizabeth N. Dewar_____ **Date** _November 28, 2023___
*(use "s/[typed name]" to sign electronically-filed documents)*

31

## **CERTIFICATE OF SERVICE**

On November 28, 2023, the undersigned caused this brief to be filed with the Clerk of the United States Court of Appeals for the Ninth Circuit via electronic filing. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Elizabeth N. Dewar
Elizabeth N. Dewar
State Solicitor
Massachusetts Attorney General's Office

Dated: November 28, 2023

**APPENDIX**

**Table 1: Laws Restricting Magazine Capacity**

The following jurisdictions restrict the quantity of rounds able to be fired from a single magazine as part of their firearm safety laws.

| *Jurisdiction* | *Law* |
|---|---|
| **California** | Cal. Penal Code §§ 16740, 32310. |
| **Colorado** | Colo. Rev. Stat. §§ 18-12-301, 302, 303. |
| **Connecticut** | Conn. Gen. Stat. § 53-202w(a)(1). |
| **Delaware** | Del. Code Ann. tit. 11, §§ 1468, 1469(a). |
| **District of Columbia** | D.C. Code § 7-2506.01(b). |
| **Hawaii** | Haw. Rev. Stat. Ann. § 134-8(c). |
| **Illinois** | 720 Ill. Comp. Stat. 5/24-1.10. |
| **Maryland** | Md. Code Ann., Crim. Law § 4-305(b). |
| **Massachusetts** | Mass. Gen. Laws ch. 140, §§ 121, 131M. |
| **New Jersey** | N.J. Stat. Ann. §§ 2C:39-1(y), 2C:39-3(j). |
| **New York** | N.Y. Penal Law § 265.02(8). |

| | |
|---|---|
| **Oregon** | 2022 Oregon Ballot Measure 114, § 11. |
| **Rhode Island** | R.I. Gen. Laws §§ 11-47.1-2, 11-47.1-3. |
| **Vermont** | Vt. Stat. Ann. Tit. 13, § 4021. |
| **Washington** | Wash. Rev. Code §§ 9.41.010(22), 9.41.370. |

### Table 2: Laws Banning Rate-of-Fire Enhancing Devices

The following jurisdictions ban the possession of bump stocks, trigger cranks, trigger activators, and other devices designed to artificially increase the rate of fire for semi-automatic weapons as part of their firearm safety laws.

| *Jurisdiction* | *Law* |
|---|---|
| **Federal** | 18 U.S.C. §§ 921(a)(24), 922(o); 26 U.S.C. § 5845(b); 27 C.F.R. 447.11, 478.11, 479.11. |
| **California** | Cal. Penal Code § 32900. |
| **Connecticut** | Conn. Gen. Stat. § 53-206g. |
| **Delaware** | Del. Code tit. 11, §§ 1444(a)(6), (b)(2). |
| **District of Columbia** | D.C. Code Ann. § 22-4514(a). |
| **Florida** | Fla. Stat. § 790.222. |

34

| | |
|---|---|
| **Hawaii** | Haw. Rev. Stat. Ann. § 134-8.5. |
| **Illinois** | 720 Ill. Comp. Stat. 5/24-1(a)(14). |
| **Iowa** | Iowa Code § 724.29. |
| **Maryland** | Md. Code Ann., Crim. Law §§ 4-301, 4-305.1(a). |
| **Massachusetts** | Mass. Gen. Laws ch. 140, §§ 121, 131(o); Mass. Gen. Laws ch. 269, § 10(c). |
| **Michigan** | Mich. Comp. Laws § 750.224e. |
| **Minnesota** | Minn. Stat. § 609.67. |
| **Nevada** | Nev. Rev. Stat. Ann. § 202.274. |
| **New Jersey** | N.J. Stat. Ann. §§ 2C:39-1(ee)-(ff), 2C:39-3(*l*). |
| **New York** | N.Y. Penal Law § 265.02(2). |
| **Oregon** | Or. Rev. Stat. § 480.070. |
| **Pennsylvania** | 18 Pa. Cons. Stat. Ann. §§ 908(a), (c). |
| **Rhode Island** | R.I. Gen. Laws §§ 11-47-2(3), (19), 11-47-8(d), 11-47-8.1. |

| | |
|---|---|
| **Vermont** | Vt. Stat. Ann. tit. 13, § 4022. |
| **Virginia** | Va. Code Ann. § 18.2-308.5:1. |
| **Washington** | Wash. Rev. Code §§ 9.41.010(5), 9.41.220. |

## Table 3: Laws Banning Silencers

The following jurisdictions ban the possession of silencers, suppressors, and other accessories designed to mitigate the sound of discharging a weapon as part of their firearm safety laws.

| *Jurisdiction* | *Law* |
|---|---|
| **California** | Cal. Penal Code § 33410. |
| **Delaware** | Del. Code tit. 11, §§ 1444(a)(3), (b)(1). |
| **District of Columbia** | D.C. Code Ann. § 22-4514(a). |
| **Hawaii** | Haw. Rev. Stat. Ann. §§ 134-1, 134-8(a). |
| **Illinois** | 720 Ill. Comp. Stat. 5/24-1(a)(6). |
| **Massachusetts** | Mass. Gen. Laws ch. 269, § 10A. |
| **New Jersey** | N.J. Stat. Ann. §§ 2C:39-1(g), 2C:39-3(c). |
| **New York** | N.Y. Penal Law § 265.02(2). |

| | |
|---|---|
| **Rhode Island** | R.I. Gen. Laws § 11-47-20. |

## Table 4: Laws Restricting Silencers

The following jurisdictions restrict the possession of silencers, suppressors, and other accessories designed to mitigate the sound of discharging a weapon as part of their firearm safety laws.

| *Jurisdiction* | *Law* |
|---|---|
| **Federal** | 18 U.S.C. § 921(a)(3); 26 U.S.C. §§ 5841(a), 5845(a)(7), 5861. |
| **Alaska** | Alaska Stat. §§ 11.61.200(a)(3), (c), (h)(1)(B). |
| **Arizona** | Ariz. Rev. Stat. Ann. §§ 13-3101(A)(8)(a)(ii), 13-3102(A)(3), 17-251. |
| **Colorado** | Colo. Rev. Stat. § 18-12-102. |
| **Connecticut** | Conn. Gen. Stat. § 53a-211. |
| **Georgia** | Ga. Code Ann. §§ 16-11-121(7), 16-11-122. |
| **Iowa** | Iowa Code § 724.1B. |
| **Kansas** | Kan. Stat. Ann. § 21-6301(a)(4). |
| **Michigan** | Mich. Comp. Laws §§ 750.224(1)(b), (3)(c). |
| **Missouri** | Mo. Rev. Stat. § 571.020(1.6)(c). |

37

| | |
|---|---|
| **Montana** | Mont. Code Ann. § 45-8-337. |
| **Nevada** | Nev. Rev. Stat. Ann. § 202.350(1)(b). |
| **North Carolina** | N.C. Gen. Stat. § 14-288.8. |
| **North Dakota** | N.D. Cent. Code § 62.1-05-01. |
| **Ohio** | Ohio Rev. Code Ann. §§ 2923.11(K)(5), 2923.17(A), (C)(5). |
| **Oregon** | Or. Rev. Stat. § 166.272. |
| **Pennsylvania** | 18 Pa. Cons. Stat. § 908. |
| **South Dakota** | S.D. Codified Laws §§ 22-1-2(8), (17), 22-14-6. |
| **Vermont** | Vt. Stat. Ann. tit. 13, § 4010. |
| **Washington** | Wash. Rev. Code § 9.41.250(1)(c). |
| **Wisconsin** | Wis. Stat. § 941-298. |

### Table 5: Laws Banning Armor-Piercing Ammunition

The following jurisdictions ban the possession of ammunition designed to penetrate body armor or vehicle armor as part of their firearm safety laws.

| Jurisdiction | Law |
|---|---|
| **Federal** | 18 U.S.C. §§ 921(a)(17)(B)-(C), 922(a)(7)-(8). |
| **Alabama** | Ala. Code § 13A-11-60(a). |
| **California** | Cal. Penal Code §§ 16660, 30315, 30320. |
| **Connecticut** | Conn. Gen. Stat. §§ 53-202*l*(a)(1), (b)-(c). |
| **District of Columbia** | D.C. Code Ann. §§ 7-2501.01(13A)(A)(i), 7-2506.01(a)(3). |
| **Florida** | Fla. Stat. §§ 790.31(1)(a), (2)(a)-(c). |
| **Hawaii** | Haw. Rev. Stat. Ann. § 134-8(a). |
| **Illinois** | 720 Ill. Comp. Stat. 5/24-2.1, 5/24-2.2. |
| **Indiana** | Ind. Code Ann. § 35-47-5-11.5. |
| **Kansas** | Kan. Stat. Ann. § 21-6301(a)(6). |
| **Kentucky** | Ky. Rev. Stat. Ann. §§ 237.060(7), 237.080. |
| **Louisiana** | La. Rev. Stat. Ann. §§ 40:1810-40:1812. |

39

| | |
|---|---|
| **Maine** | Me. Rev. Stat. Ann. tit. 17-A, § 1056. |
| **Michigan** | Mich. Comp. Laws § 750.224c. |
| **Nevada** | Nev. Rev. Stat. Ann. § 202.273. |
| **New Jersey** | N.J. Stat. Ann. §§ 2C:39-1(gg), 2C:39-3(f). |
| **North Carolina** | N.C. Gen. Stat. § 14-34.3. |
| **Oklahoma** | Okla. Stat. tit. 21, §§ 1289.19-1289.22. |
| **Rhode Island** | R.I. Gen. Laws § 11-47-20.1. |
| **South Carolina** | S.C. Code Ann. § 16-23-520. |
| **Texas** | Tex. Penal Code §§ 46.01(12), 46.05(a)(2). |
| **Virgin Islands** | V.I. Stat. tit. 14, §§ 2256(b)-(c). |

### Table 6: Laws Banning Explosive Ammunition

The following jurisdictions ban the possession of high-explosive incendiary ammunition designed to explode or impart energy upon contact via a charge as part of their firearm safety laws.

| *Jurisdiction* | *Law* |
|---|---|
| **California** | Cal. Penal Code § 30210. |

| | |
|---|---|
| **Florida** | Fla. Stat. §§ 790.31(1)(b), (2)(a)-(c). |
| **Hawaii** | Haw. Rev. Stat. Ann. § 134-8(a). |
| **Illinois** | 720 Ill. Comp. Stat. 5/24-1(a)(11), 5/24-3.1(a)(6). |
| **Iowa** | Iowa Code §§ 724.1(1)(f), 724.3. |
| **Missouri** | Mo. Rev. Stat. § 571.020(1.4). |
| **New York** | N.Y. Penal Law § 265.01(7). |
| **Tennessee** | Tenn. Code Ann. § 39-17-1304(b). |
| **Virgin Islands** | V.I. Stat. tit. 14, §§ 2256(b)-(c). |

### Table 7: Laws Banning Large-Caliber Ammo

The following jurisdictions ban the possession of large-caliber ammunition as part of their firearm safety laws.

| *Jurisdiction* | *Law* |
|---|---|
| **California** | Cal. Penal Code § 18735. |
| **Connecticut** | Conn. Gen. Stat. §§ 53-202*l*(a)(2), (b)-(c). |
| **District of Columbia** | D.C. Code Ann. §§ 7-2501.01(13A)(A)(iii), 7-2506.01(a)(3). |

41

| | |
|---|---|
| **Illinois** | 720 Ill. Comp. Stat. 5/24-1(a)(11), 5/24-1.9(a)(6), (b), (c) (possession ban effective Jan. 1, 2024). |

## Table 8: Law Banning Hollow-Point Bullets

The following state bans the possession of hollow-point and other ammunition designed to expand on impact as part of its firearm safety laws.

| *State* | *Law* |
|---|---|
| **New Jersey** | N.J. Stat. Ann. § 2C:39-3(f). |

## Table 9: Laws Banning Flechette Ammo

The following states ban the possession of Flechette shells, or other ammunition that can be fired in a firearm and that expels two or more pieces of fin-stabilized solid metal wire or two or more solid dart-type projectiles, as part of their firearm safety laws.

| *State* | *Law* |
|---|---|
| **California** | Cal. Penal Code §§ 16570, 30210. |
| **Florida** | Fla. Stat. §§ 790.31(1)(f), (2)(a)-(c). |
| **Illinois** | 720 Ill. Comp. Stat. 5/24-2.1, 5/24-2.2. |

### Table 10: Laws Banning Dragon's Breath and Bolo Shells

The following states ban the possession of "Dragon's Breath" shells, ammunition that when fired produces sparks and flames simulating a flamethrower, and bolo shells, ammunition containing two or more large lead balls connected by a wire, that when used may sever a target's limb, as part of their firearm safety laws.

| State | Law |
|---|---|
| **Florida** | Fla. Stat. §§ 790.31(1)(d)-(e), (2)(a)-(c). |
| **Illinois** | 720 Ill. Comp. Stat. 5/24-2.1, 5/24-2.2. |
| **Iowa** | Iowa Code §§ 724.1(1)(f), 724.2, 724.3. |

### Table 11: Assault Weapon Bans

The following jurisdictions ban the possession or sale of assault weapons as part of their firearm safety laws.

| Jurisdiction | Law |
|---|---|
| **California** | Cal. Penal Code §§ 30500-30515, 30600, 30605. |
| **Connecticut** | Conn. Gen. Stat. §§ 53-202a-202c. |
| **Delaware** | Del. Code tit. 11, §§ 1465-1466(a). |
| **District of Columbia** | D.C. Code Ann. §§ 7-2501.01(3A), 7-2502.01, 7-2502.02(a)(6). |
| **Hawaii** | Haw. Rev. Stat. Ann. §§ 134-1, 134-4, 134-8(a). |

| Illinois | 720 Ill. Comp. Stat. 5/24-1.9. |
|---|---|
| Maryland | Md. Code Ann., Crim. Law §§ 4-301, 4-303. |
| Massachusetts | Mass. Gen. Laws ch. 140, §§ 121, 131M. |
| New York | N.Y. Penal Law §§ 265.00(22), 265.02(7). |
| Washington | Wash. Rev. Code §§ 9.41.0001, 9.41.010(2), 9.41.240 (2023 Wash. Sess. Laws, ch. 162, § 1). |

## Table 12: Laws Banning Automatic Weapons

The following jurisdictions ban automatic weapons as part of their firearm safety laws.

| *Jurisdiction* | *Law* |
|---|---|
| California | Cal. Penal Code § 32625. |
| Colorado | Colo. Rev. Stat. § 18-12-102. |
| Delaware | Del. Code tit. 11, §§ 1444(a)(5), (b)(1). |
| District of Columbia | D.C. Code Ann. §§ 7-2501.01(10), 7-2502.01, 7-2502.02(a)(2). |
| Hawaii | Haw. Rev. Stat. Ann. § 134-8(a). |
| Illinois | 720 Ill. Comp. Stat. 5/24-1(a)(7)(i). |

| | |
|---|---|
| **Iowa** | Iowa Code §§ 724.1(a), 724.3. |
| **Louisiana** | La. Rev. Stat. Ann. §§ 40:1751 to 40:1752. |
| **Massachusetts** | Mass. Gen. Laws ch. 140, §§ 121, 131(o); Mass. Gen. Laws ch. 269, § 10(c). |
| **Minnesota** | Minn. Stat. § 609.67. |
| **New York** | N.Y. Penal Law § 265.02(2). |
| **Rhode Island** | R.I. Gen. Laws § 11-47-8(a). |
| **Wisconsin** | Wis. Stat. § 941.26(1g)(a). |

### Table 13: Laws Requiring Registration of Pre-1986 Automatic Weapons

The following jurisdictions require that all automatic weapons manufactured before 1986 be registered with a licensing agency as part of their firearm safety laws.

| *Jurisdiction* | *Law* |
|---|---|
| **Federal** | 18 U.S.C. §§ 921(a)(24), 922(o); 26 U.S.C. § 5845(b). |
| **Alaska** | Alaska Stat. Ann. §§ 11.61.200(a)(3), (h)(1)(C). |
| **Arizona** | Ariz. Rev. Stat. Ann. §§ 13-3101(A)(8)(a)(iii), 13-3102(A)(3). |
| **Connecticut** | Conn. Gen. Stat. § 53-202. |

| | |
|---|---|
| **Florida** | Fla. Stat. §§ 790.001(9), 790.221. |
| **Georgia** | Ga. Stat. §§ 16-11-121(2), 16-11-122, 16-11-124(4). |
| **Indiana** | Ind. Code Ann. §§ 35-47-5-8 to 35-47-5-8-10. |
| **Kansas** | Kan. Stat. Ann. § 21-6301(a)(5). |
| **Maine** | Me. Rev. Stat. Ann. tit. 17-A, §§ 1051-1052. |
| **Maryland** | Md. Code Ann. §§ 4-401 to 4-405. |
| **Michigan** | Mich. Comp. Laws §§ 750.224(1)(a), (3)(c). |
| **Missouri** | Mo. Rev. Stat. § 571.020(1.6)(a). |
| **Montana** | Mont. Code Ann. §§ 45-8-302 to 45-8-304. |
| **Nebraska** | Neb. Rev. Stat. § 28-1203. |
| **Nevada** | Nev. Rev. Stat. Ann. § 202.350(1)(b). |
| **New Jersey** | N.J. Stat. Ann. §§ 2C:39-1(i), 2C:39-5(a), 2C:39-9(a). |
| **North Carolina** | N.C. Gen. Stat. § 14-288.8. |
| **North Dakota** | N.D. Cent. Code § 62.1-05-01. |

| | |
|---|---|
| **Ohio** | Ohio Rev. Code Ann. §§ 2923.11(K)(1), 2923.17. |
| **Oregon** | Or. Rev. Stat. § 166.272. |
| **Pennsylvania** | 18 Pa. Cons. Stat. Ann. § 908. |
| **South Carolina** | S.C. Code Ann. §§ 16-23-230 to 16-23-250. |
| **South Dakota** | S.D. Codified Laws §§ 22-1-2(8), (23), 22-14-6. |
| **Tennessee** | Tenn. Code Ann. §§ 39-17-1302(a)(3), (d). |
| **Texas** | Tex. Penal Code §§ 46.01(9), 46.05(a)(1)(B). |
| **Virginia** | Va. Code §§ 18.2-288 to 18.2-298. |
| **Washington** | Wash. Rev. Code §§ 9.41.010(29), 9.41.190. |
| **West Virginia** | W. Va. Code § 61-7-9. |

### Table 14: Laws Banning Short-Barreled Shotguns or Rifles

The following jurisdictions ban possession of short-barreled shotguns or short-barreled rifles as part of their firearm safety laws.

| *Jurisdiction* | *Law* |
|---|---|
| **California** | Cal. Penal Code §§ 33210, 33215. |

| | |
|---|---|
| **Colorado** | Colo. Rev. Stat. § 18-12-102. |
| **Delaware** | Del. Code tit. 11, §§ 1444(a)(4), (b)(1). |
| **District of Columbia** | D.C. Code Ann. §§ 7-2501.01(15), (17), 7-2502.01, 7-2502.02(a)(1), (a)(3). |
| **Hawaii** | Haw. Rev. Stat. Ann. §§ 134-1, 134-8(a). |
| **Illinois** | 720 Ill. Comp. Stat. 5/24-1(a)(7)(ii). |
| **Massachusetts** | Mass. Gen. Laws ch. 140, § 121; Mass. Gen. Laws ch. 269, § 10(c). |
| **Minnesota** | Minn. Stat. § 609.67. |
| **New Jersey** | N.J. Stat. Ann. §§ 2C:39-1(o), 2C:39-3(b). |
| **Rhode Island** | R.I. Gen. Laws §§ 11-47-2(15) to 11-47-2(16), 11-47-8(b). |

### Table 15: Laws Restricting Short-Barreled Shotguns or Rifles

The following jurisdictions restrict the possession of short-barreled shotguns or short-barreled rifles as part of their firearm safety laws.

| *Jurisdiction* | *Law* |
|---|---|
| **Federal** | 18 U.S.C. §§ 921(a)(6), 921(a)(8), 922(a)(4). |
| **Alaska** | Alaska Stat. Ann. §§ 11.61.200(a)(3), (h)(1)(D). |

48

| | |
|---|---|
| **Arizona** | Ariz. Rev. Stat. Ann. §§ 13-3101(A)(8)(a)(iv), 13-3102(A)(3). |
| **Connecticut** | Conn. Gen. Stat. § 53a-211. |
| **Florida** | Fla. Stat. §§ 790.001(10)-(11), 790.221. |
| **Georgia** | Ga. Stat. §§ 16-11-121(4)-(5), 16-11-122, 16-11-124(4). |
| **Iowa** | Iowa Code § 724.1C. |
| **Kansas** | Kan. Stat. Ann. § 21-6301(a)(5). |
| **Michigan** | Mich. Comp. Laws § 750.224b. |
| **Missouri** | Mo. Rev. Stat. § 571.020(1.6)(b). |
| **Montana** | Mont. Code Ann. § 45-8-340. |
| **Nebraska** | Neb. Rev. Stat. § 28-1203. |
| **Nevada** | Nev. Rev. Stat. Ann. § 202.275. |
| **New Jersey** | N.J. Stat. Ann. §§ 2C:39-1(i), 2C:39-5(a), 2C:39-9(a). |
| **North Carolina** | N.C. Gen. Stat. § 14-288.8. |
| **North Dakota** | N.D. Cent. Code § 62.1-02-03. |

| | |
|---|---|
| **Ohio** | Ohio Rev. Code Ann. §§ 2923.11(K)(1), 2923.17. |
| **Oregon** | Or. Rev. Stat. § 166.272. |
| **Pennsylvania** | 18 Pa. Cons. Stat. Ann. § 908. |
| **South Carolina** | S.C. Code Ann. §§ 16-23-230 to 16-23-250. |
| **South Dakota** | S.D. Codified Laws §§ 22-1-2(8), (46), 22-14-6. |
| **Texas** | Tex. Penal Code §§ 46.01(10), 46.05(a)(1)(C). |
| **Washington** | Wash. Rev. Code §§ 9.41.010(41)-(42), 9.41.190. |
| **Wisconsin** | Wis. Stat. § 941-28. |

### Table 16: Laws Banning 50-Caliber and Other High-Caliber Rifles

The following jurisdictions ban possession of rifles designed to shoot 50-Caliber and other High-Caliber ammunition.

| *Jurisdiction* | *Law* |
|---|---|
| **California** | Cal. Penal Code §§ 30530, 30600, 30610. |
| **District of Columbia** | D.C. Code Ann. §§ 7-2501.01(8A), 7-2502.01, 7-2502.02(a)(7). |
| **Illinois** | 720 Ill. Comp. Stat. 5/24-1(a)(15)-(16), 5/24-1.9. |

| | |
|---|---|
| **New Jersey** | N.J. Stat. Ann. §§ 2C:39-1(c)(3), (5), 2C:39-3(a). |

## Table 17: Laws Banning Covert Weapons

The following jurisdictions ban possession of covert and hidden firearms as part of their firearm safety laws.

| *Jurisdiction* | *Law* |
|---|---|
| **Alabama** | Ala. Code § 13A-11-54. |
| **California** | Cal. Penal Code § 24410. |
| **Massachusetts** | Mass. Gen. Laws ch. 140, § 131N. |
| **New Jersey** | N.J. Stat. Ann. §§ 2C:39-1(hh), 2C:39-3(m). |
| **New York** | N.Y. Penal Law § 265.02(6). |

## Table 18: Laws Banning Destructive Devices

The following jurisdictions ban the possession of grenades, rocket launchers, bombs, and other destructive devices as part of their firearm safety laws.

| *Jurisdiction* | *Law* |
|---|---|
| **California** | Cal. Penal Code §§ 16460, 18710. |
| **Colorado** | Colo. Rev. Stat. § 18-12-109(2)(a). |
| **Connecticut** | Conn. Gen. Stat. § 53-80(a). |

| | |
|---|---|
| **Delaware** | Del. Code Ann. tit. 11, §§ 1444(a)(1), (b)(1). |
| **District of Columbia** | D.C. Code § 22-4515a. |
| **Florida** | Fla. Stat. §§ 790.001(4), 790.161. |
| **Hawaii** | Haw. Rev. Stat. Ann. § 134-8(a). |
| **Illinois** | 720 Ill. Comp. Stat. 5/24-1(a)(7)(iii). |
| **Iowa** | Iowa Code §§ 101A.1(2A), 724.1(1)(c), 724.3. |
| **Massachusetts** | Mass. Gen. Laws ch. 266, § 102(c). |
| **Minnesota** | Minn. Stat. § 609.668. |
| **New Jersey** | N.J. Stat. Ann. §§ 2C:39-1(c)(1), 2C:39-3(a). |
| **New York** | N.Y. Penal Law § 265.02(2). |
| **Oregon** | Or. Rev. Stat. § 480.070. |
| **Pennsylvania** | 18 Pa. Cons. Stat. Ann. §§ 908(a), (c). |
| **Rhode Island** | R.I. Gen. Laws §§ 11-47.1-21. |
| **Utah** | Utah Code Ann. § 76-10-306(3). |

| | |
|---|---|
| **Virginia** | Va. Code Ann. § 18.2-85. |
| **Wisconsin** | Wis. Stat. § 941.26(2)(c). |