No. 23-55805

---

IN THE
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

VIRGINIA DUNCAN, *et al.*,

*Plaintiffs-Appellees*,

v.

ROB BONTA, in his official capacity as
Attorney General of the State of California,

*Defendant-Appellant*.

---

Appeal from United States District Court
for the Southern District of California
Civil Case No. 3:17-cv-01017-BEN-JLB
The Honorable Roger T. Benitez, Judge

---

**BRIEF OF AMICUS CURIAE FIREARM POLICY COALITION, INC.
IN SUPPORT OF PLAINTIFFS-APPELLEES AND AFFIRMANCE**

---

December 28, 2023

David H. Thompson
Peter A. Patterson
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C.  20036
(202) 220-9600
dthompson@cooperkirk.com

*Counsel for Amicus Curiae*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, *Amicus* Firearms Policy Coalition, Inc. states that it is a nonprofit organization incorporated under the laws of Delaware, that it has no parent corporation, and that no publicly held corporation owns 10% or more of its stock.

Dated: December 28, 2023

Respectfully submitted,

/s/ David H. Thompson
David H. Thompson

*Counsel for Amicus Curiae*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................ii

STATEMENT OF INTEREST ...............................................................1

SUMMARY OF THE ARGUMENT ........................................................2

ARGUMENT .......................................................................................2

I.   This Case Involves a Straightforward Application of Supreme Court Precedent.................................................................................2

    A. *Heller* Held That Firearms In Common Use May Not Be Banned. .....3

    B. *Bruen* Reaffirmed *Heller*'s Approach and Holding. ............................7

II. Law Abiding Citizens Have a Right to Possess the Banned Magazines Under The Common Use Test.......................................................................8

    A. The Ban on Commonly Owned Magazines Infringes the Right to Keep and Bear Arms Within the Meaning of the Plain Text................8

    B. The Ban on Commonly Owned Magazines Cannot Be Justified By Reference to History. ........................................................................11

CONCLUSION ....................................................................................15

i

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                 <u>Page</u>

*Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Att'y Gen. N.J.*,
    910 F.3d 106 (3d Cir. 2018) .................................................. 10, 14

*Bevis v. City of Naperville*,
    85 F.4th 1175 (7th Cir. 2023) ........................................ 5, 11, 12

*District of Columbia v. Heller*,
    554 U.S. 570 (2008) .............................. 2, 3, 4, 5, 6, 7, 8, 9, 11, 12

*Duncan v. Bonta*,
    19 F.4th 1087 (9th Cir. 2021) ........................................................ 5

*Duncan v. Bonta*,
    49 F.4th 1228 (9th Cir. 2022) ........................................................ 5

*Duncan v. Bonta*,
    No. 17-cv-1017-BEN (JLB), 2023 WL 6180472
    (S.D. Cal. Sept. 22, 2023) ............................................................ 9

*Fitz v. Rosenblum*,
    No. 23-35478 (9th Cir. July 17, 2023) ........................................ 1

*Fyock v. Sunnyvale*,
    779 F.3d 991 (9th Cir. 2015) ........................................... 10, 11, 14

*Heller v. District of Columbia*,
    670 F.3d 1244 (D.C. Cir. 2011) ................................................. 14

*Jackson v. City & Cnty. Of S.F.*,
    746 F.3d 953 (9th Cir. 2014) ........................................................ 9

*Luis v. United States*,
    578 U.S. 5 (2016) ....................................................................... 10

*Md. Shall Issue, Inc. v. Moore*,
    86 F.4th 1038 (4th Cir. 2023) ..................................................... 8

*N.Y. State Rifle & Pistol Ass'n, Inc. v. Cuomo*,
    804 F.3d 242 (2d Cir. 2015) ....................................................... 14

*New York State Rifle & Pistol Association, Inc. v. Bruen*,
    597 U.S. 1 (2022) ....................................... 2, 3, 7, 8, 9, 10, 11, 14

*Nunn v. State*,
    1 Ga. 243 (1846) ...................................................................... 8, 9

ii

*Teter v. Lopez*,
    76 F.4th 938 (9th Cir. 2023) ................................................................ 11, 12


**Constitutional Provision**

U.S. Const. amend. II ................................................................................. 8

**Other Authorities**

David B. Kopel, *The History of Firearm Magazines and Magazine Prohibitions*,
    78 ALB. L. REV. 849 (2015) ........................................................... 13

Lillian Mongeau Hughes, *Oregon Voters Approve Permit-to-Purchase for Guns
    and Ban High-Capacity Magazines*, NPR (Nov. 15, 2022),
    https://n.pr/3QMJCC1 .................................................................... 14

Mark W. Smith, *What Part of "In Common Use" Don't You Understand?: How
    Courts Have Defied* Heller *in Arms-Ban-Cases—Again*, PER CURIAM, HARV.
    J.L. & PUB. POL'Y (Sept. 27, 2023), https://bit.ly/3PWhqwH ...................... 8

*Modern Sporting Rifle Comprehensive Consumer Report*, NSSF (July 14, 2022),
    https://bit.ly/3GLmErS .................................................................. 13

William English, *2021 National Firearms Survey: Updated Analysis Including
    Types of Firearms Owned* (May 13, 2022),
    https://bit.ly/3yPfoHw ............................................................. 12, 13, 14

## STATEMENT OF INTEREST[1]

Firearms Policy Coalition, Inc. is a nonprofit membership organization that works to create a world of maximal human liberty and freedom. FPC works to protect, defend, and advance the People's rights, especially but not limited to the inalienable, fundamental, and individual right to keep and bear arms.

FPC is interested in this case because it raises the important question of whether common firearm magazines, which function as integral parts of many common semiautomatic firearms, are protected "arms" under the Second Amendment. FPC has members throughout the country, including within this Circuit, who own such magazines and use them for self-defense and other lawful purposes. FPC is a plaintiff in a related case to this one, which has been stayed pending the outcome of this case, *see Fitz v. Rosenblum*, No. 23-35478 (9th Cir. July 17, 2023), and has brought its own challenge to the law at issue in another case that is stayed in the district court, *see* Order, *Wiese v. Becerra*, No. 2:17-cv-903 (E.D. Cal. Oct. 18, 2023), Doc. 141. FPC submits this amicus brief to clarify the analysis that ought to control this case and which requires a finding that California's magazine ban is unconstitutional.

---

[1] No party's counsel authored this brief in whole or in part, and no person other than *amici*, their members, and their counsel contributed money intended to fund the preparation or submission of this brief. The parties have been notified of *amici*'s intent to file this brief and have consented to its filing.

1

## SUMMARY OF THE ARGUMENT

Under the Supreme Court's decision in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022), Plaintiffs must prevail in their challenge to California's bans on commonly possessed semiautomatic ammunition magazines. *Bruen* unequivocally reaffirmed what *District of Columbia v. Heller*, 554 U.S. 570 (2008) taught: All instruments that constitute bearable arms are "arms" within the plain text of the Second Amendment. That certainly includes the firearms that can be equipped with magazines banned by California. By artificially limiting how many rounds a firearm can fire without reloading, the State has "infringed"— i.e., hindered—the right to keep and bear arms and so the challenged law is unconstitutional unless the State can prove its regulation is historically justified.

It has not done so. Here again, *Bruen* and *Heller* speak in one voice. As a matter of history, arms in common use for lawful purposes are protected and their possession and use cannot be banned—full stop. There can be no question whatsoever that firearms equipped with magazines holding more than ten rounds are overwhelmingly common. That requires finding in Plaintiffs' favor and affirming the district court's judgment.

## ARGUMENT

## I.   This Case Involves a Straightforward Application of Supreme Court Precedent.

Following *Bruen*, the standard to be applied in this case is clear:

2

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command.

597 U.S. at 24 (internal quotation marks omitted). In some cases applying this standard will require this Court to do original analysis, particularly with respect to the history of firearm regulation in this country; this is not such a case. This case involves a ban on common semiautomatic firearm magazines, and the Supreme Court has already done both the textual and historical work, in *Heller*, of applying the Second Amendment to a ban on an "arm." Far from disturbing any of *Heller*'s analysis, *Bruen* reaffirmed the approach taken in *Heller*, made its implicit methodology explicit, and reiterated that the key historical work of determining what sorts of weapons can be banned consistent with the Second Amendment had been conclusively completed in *Heller*.

### A. *Heller* Held That Firearms In Common Use May Not Be Banned.

In *Heller*, the Supreme Court was tasked with deciding the constitutionality of a District of Columbia law prohibiting the possession of usable handguns in the home. To answer the question, the Court, following the same process made explicit years later in *Bruen*, first set about interpreting the plain text of the Amendment. *See Heller*, 554 U.S. at 576 ("We turn first to the meaning of the Second Amendment."). And with respect to the key question in that case and this one, whether the banned

item is an "arm" that falls within the scope of the Second Amendment's plain text, *Heller* made clear that the term "arm" should be interpreted broadly to cover "all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *Id.* at 582. In short, "[t]he 18th-century meaning is no different from the meaning today…. '[A]rms' [means] 'any thing that a man wears for his defence, or takes into his hands, or useth in wrath to cast at or strike another.'" *Id.* at 581 (quoting 1 A NEW AND COMPLETE LAW DICTIONARY). Furthermore, the definition was not limited to only those weapons "specifically designed for military use" or "employed in a military capacity," but encompassed "all firearms." 554 U.S. at 581.

After interpreting the text, *Heller* proceeded to "address how the Second Amendment was interpreted from immediately after its ratification through the end of the 19th century," as a method of confirming its interpretation of the text by elucidating the public understanding of its meaning in "the period after its enactment or ratification." *Id.* at 605. At the conclusion of this lengthy analysis, the Court explained that it had determined that there was one "important limitation on the right to keep and carry arms" that would permit the government to ban a firearm even though it fell within the plain text meaning of "arms." *Id.* at 627. Specifically, the Court found that the "historical tradition of prohibiting the carrying of 'dangerous and unusual weapons,' " permitted certain arms to be banned but, the Court made

clear, weapons that were "in common use at the time" were "protected" and therefore could not be banned. *Id.* This was, the Court explained, consistent with another historical tradition: as the prefatory clause of the Second Amendment notes, the explicit purpose for which the right to keep and bear arms was included in the Constitution was to ensure the preservation of the militia, and "[t]he traditional militia was formed from a pool of men bringing arms 'in common use at the time' for lawful purposes like self-defense." *Id.* at 624.

This interpretation did have one difficulty, which the Supreme Court confronted directly, noting in a much-misunderstood passage that "[i]t may be objected" that some of the "weapons that are most useful in military service—M-16 rifles and the like" are not in common use today and therefore "may be banned, then the Second Amendment right is completely detached from the prefatory clause." *Id.* at 627. This en banc Court previously suggested in this case that it believed that this language might mean that magazines holding more than ten rounds may not be protected *because* they are useful in military service. *Duncan v. Bonta*, 19 F.4th 1087, 1102 (9th Cir. 2021) (en banc), vacated in light of *Bruen*, 49 F.4th 1228 (9th Cir. 2022). And very recently, the Seventh Circuit held that arms "most useful in military service" are entirely excluded from the *text* of the Second Amendment. *See Bevis v. City of Naperville*, 85 F.4th 1175, 1223 (7th Cir. 2023).

But that position is utterly inconsistent with *Heller*, which held "all firearms" are "arms" under the text, and was merely, in this passage, making the defensive point that there was no contradiction between the fact that there were some weapons that were *in fact* being used by the military that could be banned, and the Amendment's stated purpose. The reason there was no contradiction in its interpretation, the Court explained, was that "the conception of the militia at the time of the Second Amendment's ratification was the body of all citizens capable of military service, who would bring the sorts of lawful weapons that they possessed at home to militia duty"; in other words, they would be armed with those weapons that were "in common use" as opposed to those "that are highly unusual in society at large." *Heller*, 554 U.S. at 627. But that did not, of course, mean that merely because a firearm is used by the military, it could not *also* be in common use for lawful purposes by civilians.

Indeed, the reasons why the Founders valued the militia make nonsensical any argument that an amendment meant to preserve that institution would fail to protect arms *because* they could be useful for military purposes. As *Heller* explains, the militia was "useful in repelling invasions and suppressing insurrections," "render[ed] large standing armies unnecessary," and enabled the people to be "better able to resist tyranny." *Id.* at 597–98. It would be counterintuitive, to say the least,

that an amendment designed to preserve the militia would categorically exclude the types of arms most suited to the militia's purposes.

Applying this "in common use" standard, the ban in *Heller* was struck down, as the Court noted that "the American people have considered the handgun to be the quintessential self-defense weapon," and "[w]hatever the reason, handguns are the most popular weapon chosen by Americans for self-defense in the home." *Id.* at 629.

## B. *Bruen* Reaffirmed *Heller*'s Approach and Holding.

*Bruen* did not alter *Heller*'s conclusion in any way. Rather, it made *Heller*'s text-and-history standard explicit, explaining that it was applying the same "test that we set forth in *Heller*." 597 U.S. at 26. In directing lower courts how to analyze the text of the Second Amendment, *Bruen* noted that in some cases they will need to account for "technological changes," and explained that *Heller* demonstrated "at least one way in which the Second Amendment's historically fixed meaning applies to new circumstances: Its reference to 'arms' does not apply 'only [to] those arms in existence in the 18th century.'" *Id.* at 28 (quoting *Heller*, 554 U.S. at 582). Instead, the Second Amendment's "general definition" of "arms" "covers modern instruments that facilitate armed self-defense." *Bruen*, 597 U.S. at 28.

And in characterizing the historical analysis, *Bruen* once again pointed to *Heller*, noting that *Heller* used the "historical understanding of the Amendment to demark the limits on the exercise of [the] right," and it was on this basis that it had

found that "the Second Amendment protects the possession and use of weapons that are 'in common use at the time.' " *Id.* at 21 (quoting *Heller*, 554 U.S. at 627).

In short, *Bruen* reaffirmed that *Heller*'s analysis is the analysis this Court must apply today and furthermore, that *Heller*'s historical holding—that arms in common use cannot be banned—remains good law that should control any case involving a ban on a type of bearable arm. *See* Mark W. Smith, *What Part of "In Common Use" Don't You Understand?: How Courts Have Defied* Heller *in Arms-Ban-Cases— Again*, PER CURIAM, HARV. J.L. & PUB. POL'Y (Sept. 27, 2023), https://bit.ly/3PWhqwH.

## II. Law Abiding Citizens Have a Right to Possess the Banned Magazines Under The Common Use Test.

### A. The Ban on Commonly Owned Magazines Infringes the Right to Keep and Bear Arms Within the Meaning of the Plain Text.

Applying this text-and-history standard in this case is straightforward. As to the text, California has banned certain firearm magazines based on capacity. The text covers "all firearms," *Heller*, 554 U.S. at 581, and the Amendment commands that the right to keep and bear them "shall not be infringed." U.S. Const. amend. II. The same Founding-era sources the Supreme Court has used to interpret the other words in the Second Amendment make clear that anything that in any way hinders the exercise of the Second Amendment right, "infringe[s]" that right. *See Md. Shall Issue, Inc. v. Moore*, 86 F.4th 1038, 1044 n.8 (4th Cir. 2023); *see also Nunn v. State*,

1 Ga. 243, 251 (1846) ("The right of the whole people . . . to keep and bear *arms* . . . shall not be *infringed*, curtailed, or broken in upon, in the smallest degree." (emphasis in original)); *Heller*, 554 U.S. at 612–13 (citing *Nunn* approvingly). Therefore, by artificially limiting the magazine capacity of semiautomatic firearms, the challenged law here necessarily "infringes" the Second Amendment right and is presumptively unlawful under *Bruen*.

Indeed, as the district court found, because the ammunition magazine determines how many rounds a firearm can fire without reloading, any distinction between the firearm itself and the magazine is artificial. Limiting magazine capacity to a certain size effectively bans firearms capable of firing more rounds than the limit without reloading. *See Duncan v. Bonta*, No. 17-cv-1017-BEN (JLB), 2023 WL 6180472, at *8 (S.D. Cal. Sept. 22, 2023) ("[W]hether thought of as a firearm able to fire a certain number of rounds because of its inserted magazine, or as a separate ammunition feeding component, magazines are usable 'arms' within the meaning of the Second Amendment."). And it is not the gun, but bullets *fed by the magazine*, that "strike another." *See Heller*, 554 U.S. at 581. Citizens carry firearms equipped with magazines and other ammunition feeding devices for the same reason they carry firearms loaded with ammunition: "[W]ithout bullets, the right to bear arms would be meaningless." *Jackson v. City & Cnty. of S.F.*, 746 F.3d 953, 967 (9th Cir. 2014), *abrogated on other grounds by Bruen*, 597 U.S. 1 (2022). A magazine is, in fact, a

part of the firearm to which it is equipped, and just as the First Amendment would not permit the government to ban the ink used to print newspapers, the Second Amendment would be a dead letter if it protected "arms" but permitted the government to ban parts like triggers, barrels, sights, or magazines. As the Third Circuit recognized before *Bruen*: "magazines feed ammunition into certain guns, and ammunition is necessary for such a gun to function as intended, [so] magazines are 'arms' within the meaning of the Second Amendment." *Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Att'y Gen. N.J.*, 910 F.3d 106, 116 (3d Cir. 2018) ("*ANJRPC*") (quoting *Jackson*, 746 F.3d at 967), *abrogated on other grounds by Bruen*, 597 U.S. 1 (2022). Because they affect the functionality of a firearm, the State's "magazine ban," should really be considered a ban on "arms" that are capable of firing more than ten times without reloading. Such a law obviously implicates the text of the Second Amendment.

As a final alternative, the magazines banned by the State are protected by necessary implication of the constitutional text. Constitutional rights "implicitly protect those closely related acts necessary to their exercise." *Luis v. United States*, 578 U.S. 5, 26 (2016) (Thomas, J., concurring in the judgment). As this Court previously recognized, "caselaw supports the conclusion that there must also be some corollary, albeit not unfettered, right to possess the magazines necessary to

10

render those firearms operable." *Fyock v. Sunnyvale*, 779 F.3d 991, 998 (9th Cir. 2015), *abrogated on other grounds by Bruen*, 597 U.S. 1 (2022).

### B. The Ban on Commonly Owned Magazines Cannot Be Justified By Reference to History.

Because the plain text is implicated, if California's magazine ban is to survive, the State must prove that it is "consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 17. A law by definition *will not* fit into that tradition if it bans "possession and use of weapons that are 'in common use at the time.'" *Id.* at 21; *see also Heller*, 554 U.S. at 627.

Some Courts have, following *Bruen*, treated whether a firearm is "in common use" as part of the *textual* inquiry. *See, e.g.*, *Bevis*, 85 F.4th at 1193. This is an error. As explained above, both *Heller* and *Bruen* treat common use as an *historical* rule of decision based on the tradition of banning "dangerous and unusual weapons." A panel of this Court recently correctly reached this conclusion. *See Teter v. Lopez*, 76 F.4th 938, 949–50 (9th Cir. 2023). In *Teter* the panel:

> reject[ed] Hawaii's argument that the purported 'dangerous and unusual' nature of butterfly knives means they are not 'arms' as that term is used in the Second Amendment. *Heller* itself stated that the relevance of a weapon's dangerous and unusual character lies in '*the historical tradition* of prohibiting the carrying of dangerous and unusual weapons.' It did not say that dangerous and unusual weapons are not arms.

*Id.* (quoting *Heller*, 554 U.S. at 627). *Teter* also held that if a " 'weapon is commonly possessed by law-abiding citizens for lawful purposes' " it cannot be "dangerous and

11

unusual." 76 F.4th at 950 (quoting *Fyock*, 779 F.3d at 997). This was a faithful application of *Heller*, wherein the "historical tradition of prohibiting the carrying of 'dangerous and unusual weapons,' " was the Court's *justification* for interpreting the Second Amendment to protect arms "in common use." *Heller*, 554 U.S. at 627.

Furthermore, in this critical passage, *Teter* got another thing exactly right. Whereas the Seventh Circuit in *Bevis* wrongly asked whether the firearms in question were "in common use for self-defense," 85 F.4th at 1192, *Teter* correctly explained that the issue is whether a firearm is " 'commonly possessed by law-abiding citizens for lawful purposes,' " 76 F.4th at 950 (quoting *Fyock*, 779 F.3d at 997). *Heller* did not say that the only firearms that were protected were those that were useful for self-defense, rather, it said that the types of arms used by those in the Revolutionary-era militia were those "in common use at the time for lawful purposes *like* self-defense." 554 U.S. at 624 (quotation marks omitted) (emphasis added). *Bevis* made the critical mistake of elevating what was an illustrative example in *Heller* to the only relevant lawful purpose.

On that front, there can be absolutely no dispute that firearms equipped with the banned magazines are commonly possessed for lawful purposes—including self-defense. Again, under *Teter* and *Bruen*, the State bears the burden to show that they are not, and that is a frankly impossible task. According to the 2021 National Firearms Survey, 48% of gun owners have owned magazines that hold more than 10

rounds. William English, *2021 National Firearms Survey: Updated Analysis Including Types of Firearms Owned* at 22 (May 13, 2022), https://bit.ly/3yPfoHw. Given the survey's estimate that 81.4 million Americans own firearms, approximately 39 million Americans have owned at least one magazine that holds more than 10 rounds. *Id* at 23. And that is a conservative estimate since only current gun owners were polled. Those individuals frequently owned more than one such magazine. And even limiting the review to rifle magazines holding more than ten rounds the numbers are staggering: Professor English found American gun owners have owned as many as *273 million* such rifle magazines. *Id.* at 24–25. There is nothing surprising about that result. Many of the most popular semi-automatic rifles are manufactured with standard magazines holding more than ten rounds. *See, e.g.*, David B. Kopel, *The History of Firearm Magazines and Magazine Prohibitions*, 78 ALB. L. REV. 849, 859 (2015) ("The most popular rifle in American history is the AR-15 platform, a semiautomatic rifle with standard magazines of twenty or thirty rounds."). Indeed, over *three quarters* of modern semiautomatic rifle magazines in the country have a capacity of more than 10 rounds. *See Modern Sporting Rifle Comprehensive Consumer Report*, at 31, NSSF (July 14, 2022), https://bit.ly/3GLmErS.

These magazines are commonly possessed for lawful purposes. According to the National Firearms Survey, the most common reasons cited for owning magazines

13

holding more than ten rounds are target shooting (64.3% of owners), home defense (62.4%), hunting (47%), and defense outside the home (41.7%). English, *supra* at 23. And such magazines may be lawfully owned in the vast majority of states. *See* Lillian Mongeau Hughes, *Oregon Voters Approve Permit-to-Purchase for Guns and Ban High-Capacity Magazines*, NPR (Nov. 15, 2022), https://n.pr/3QMJCC1.

These statistics conclusively demonstrate that firearms equipped with these magazines are commonly owned and overwhelmingly used by law-abiding Americans for lawful purposes. *See Fyock*, 779 F.3d at 998 ("[W]e cannot say that the district court abused its discretion by inferring from the evidence of record that, at a minimum, [large-capacity] magazines are in common use."); *ANJRPC*, 910 F.3d at 116–17 (3d Cir. 2018) ("The record shows that millions of magazines are owned, often come factory standard with semi-automatic weapons, are typically possessed by law-abiding citizens for hunting, pest-control, and occasionally self-defense, and there is no longstanding history of [large capacity magazine] regulation.") (internal citations omitted); *N.Y. State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242, 255 (2d Cir. 2015), *abrogated on other grounds by Bruen*, 597 U.S. 1 (2022) ("Even accepting the most conservative estimates cited by the parties and by amici, the . . . large-capacity magazines at issue are 'in common use' as that term was used in *Heller*."); *Heller v. District of Columbia*, 670 F.3d 1244, 1261 (D.C. Cir. 2011), *abrogated on other grounds by Bruen*, 597 U.S. 1 (2022) ("There may well be some

capacity above which magazines are not in common use but, if so . . . that capacity surely is . . . not ten."). As a result, under *Bruen* and *Heller*, California's magazine ban is unconstitutional and no further historical analysis needs to be done.

## CONCLUSION

The Court should affirm the district court.


Dated: December 28, 2023          Respectfully submitted,

                                  /s/ David H. Thompson
                                  David H. Thompson
                                  Peter A. Patterson
                                  COOPER & KIRK, PLLC
                                  1523 New Hampshire Avenue, N.W.
                                  Washington, D.C.  20036
                                  (202) 220-9600
                                  dthompson@cooperkirk.com

                                  *Counsel for Amicus Curiae*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 23-55805

I am the attorney or self-represented party.

**This brief contains** | 3,584 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

○ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

● is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated [          ].

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | /s David H. Thompson | **Date** | December 28, 2023
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**                                   *Rev. 12/01/22*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on December 28, 2023. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: December 28, 2023             s/ David H. Thompson
                                        David H. Thompson

                                        *Counsel for Amicus Curiae*