**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| VIRGINIA DUNCAN; PATRICK LOVETTE; DAVID MARGUGLIO; CHRISTOPHER WADDELL; CALIFORNIA RIFLE & PISTOL ASSOCIATION, INC., a California corporation, | No. 23-55805 <br><br> D.C. No. 3:17-cv-01017-BEN-JLB |
| *Plaintiffs-Appellees*, | ORDER |
| v. | |
| ROB BONTA, in his official capacity as Attorney General of the State of California, | |
| *Defendant-Appellant*. | |

Filed March 20, 2025

Before:  Mary H. Murguia, Chief Judge, and Sidney R. Thomas, Susan P. Graber, Kim McLane Wardlaw, Richard A. Paez, Marsha S. Berzon, Sandra S. Ikuta, Andrew D. Hurwitz, Ryan D. Nelson, Patrick J. Bumatay and Lawrence VanDyke, Circuit Judges.

Per Curiam Order;
Concurrence by Judge S.R. Thomas;
Special Concurrence by Judge Ikuta;

Dissent by Judge R. Nelson;
Dissent by Judge Bumatay

---

## SUMMARY[*]

---

### En Banc Procedures / Second Amendment

The en banc court held that it had statutory authority under 28 U.S.C. § 46(c)—which authorizes courts of appeals to decide cases and controversies en banc, and prescribes the composition of the en banc court in resolving cases and controversies—to decide this appeal.

A majority of active judges voted in 2021 to rehear this case or controversy en banc, and the en banc court issued an initial substantive ruling, but then remanded the case to the district court following the Supreme Court's vacatur of that judgment. After the district court issued its latest opinion on remand and the Attorney General appealed again, the Clerk issued a new appellate case number and—consistent with General Order 3.6(b)—consulted the en banc court about whether it would retain the case or refer it to a three-judge panel. The en banc court decided to keep the case as a comeback rather than refer it to the three-judge panel.

The en banc court held that it retains statutory authority to decide this case, and the facts that this is a new appeal with a new appellate case number and that several judges on the en banc court have assumed senior status since the en

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

banc court was first constituted have no bearing on the en banc court's statutory authority. All eleven judges on the en banc court were "in regular active service" in 2021 when the court voted to hear the case en banc and when the en banc court was constituted. Congress' use of the terms "case," "controversy," "cases and controversies," and "case or controversy" in section 46(c) authorizes the en banc court to decide the entire case, not merely a discrete step in the overall suit. This appeal asks the en banc court to resolve the same legal issue, between the same parties, arising from the same district court action and the same facts. This appeal is plainly part of the same case or controversy.

The en banc court's decision to retain jurisdiction was a prudential exercise of its discretion in these particular circumstances. Nothing in this order requires future en banc courts, facing different circumstances, to exercise discretion in the same manner.

Concurring, Judge S.R. Thomas, joined by Chief Judge Murguia and Judges Wardlaw, Paez, Berzon and Hurwitz, wrote separately to underscore that this Circuit has consistently followed the en banc procedures that the General Orders provide, both in terms of how en banc courts have treated cases or controversies returning to them after remand, and how senior judges participate. These en banc procedures are consistent with the governing statute, 28 U.S.C. § 46(c), and in accord with those employed by other circuits.

Specially concurring, Judge Ikuta wrote that General Order 3.6 is a strained interpretation of 28 U.S.C. § 46(c), and should be revisited by the Ninth Circuit to ensure better harmony with Congress' language and intent. She

reluctantly concurred in the order because General Order 3.6 is not contrary to the statute.

Dissenting, Judge R. Nelson would hold that this en banc court lacks statutory jurisdiction to proceed without a new en banc vote and a new panel composition that reflects the current active judges of the court. The majority's interpretation of 28 U.S.C. § 46(c)—to allow a limited en banc court to exercise permanent control of a case after it issues a decision, remands to the district court, and issues a mandate—frustrates the purpose of the en banc process by allowing a future appeal to bypass the statutory en banc voting process and proceed to an en banc court not representative of the active judges on the court as it excludes new active judges who joined the court since the prior remand. Every other circuit applies § 46(c) to require a new en banc vote after remand, which is the only interpretation consistent with the statutory requirements that a majority of all active judges vote to take a new appeal en banc and only active judges serve on the en banc court (with exceptions for senior judges not satisfied here).

Dissenting, Judge Bumatay, joined by Judge VanDyke, wrote that Congress was not speaking to the precise issue here when it enacted 28 U.S.C. § 46(c). Congress amended § 46(c) to allow active judges who heard argument in an en banc case and then took senior status after the hearing—but before the decision was issued—to continue participating in that decision. Here, the judges did not go senior in the brief period between an en banc hearing and decision, but rather multiple judges took senior status years before the en banc hearing and decision. Regardless of whether § 46(c) prohibits this odd situation, the court should have used better judgment and reconstituted the en banc panel before issuing this decision.

## COUNSEL

Erin E. Murphy (argued), Paul D. Clement, and Matthew D. Rowen, Clement & Murphy PLLC, Alexandria, Virginia; Anna M. Barvir, Sean A. Brady, and C.D. Michel, Michel & Associates PC, Long Beach, California; for Plaintiffs-Appellees.

Michael J. Mongan (argued), Solicitor General, California Department of Justice, San Francisco, California; Robert L. Meyerhoff, Kevin J. Kelly, John D. Echeverria, and Robert L. Meyerhoff, Deputy Attorneys General; R. Matthew Wise, Supervising Deputy Attorney General; Mica L. Moore, Deputy Solicitor General; Thomas S. Patterson, Senior Assistant Attorney General; Helen H. Hong, Principal Deputy Solicitor General; Rob Bonta, California Attorney General; California Department of Justice, Los Angeles, California; for Defendant-Appellant.

Amanda Hainsworth, Assistant Attorney General; Elizabeth N. Dewar, State Solicitor; Andrea J. Campbell, Massachusetts Attorney General; Office of the Massachusetts Attorney General, Boston, Massachusetts; Angela Cai, Deputy Solicitor General; Jeremy M. Feigenbaum, Solicitor General; Matthew J. Platkin, New Jersey Attorney General; Office of the New Jersey Attorney General, Trenton, New Jersey; Kristin K. Mayes, Arizona Attorney General, Office of the Arizona Attorney General, Phoenix, Arizona; Philip J. Weiser, Colorado Attorney General, Office of the California Attorney General, Denver, Colorado; William Tong, Connecticut Attorney General, Office of the Connecticut Attorney General, Hartford, Connecticut; Kathleen Jennings, Delaware Attorney General, Office of the Delaware Attorney General, Wilmington, Delaware; Brian L. Schwalb, District of the

Columbia Attorney General, Office of the District of
Columbia Attorney General, Washington, D.C.; Anne E.
Lopez, Hawai'i Attorney General, Office of the Hawai'i
Attorney General, Honolulu, Hawai'i; Kwame Raoul,
Illinois Attorney General, Office of the Illinois Attorney
General, Chicago, Illinois; Aaron M. Frey, Maine Attorney
General, Office of the Maine Attorney General, Augusta,
Maine; Anthony G. Brown, Maryland Attorney General,
Office of the Maryland Attorney General, Baltimore,
Maryland; Dana Nessel, Michigan Attorney General, Office
of the Michigan Attorney General, Lansing, Michigan; Keith
Ellison, Minnesota Attorney General, Office of the
Minnesota Attorney General, St. Paul, Minnesota; Letitia
James, New York Attorney General, Office of the New York
Attorney General, New York, New York; Ellen F.
Rosenblum, Oregon Attorney General, Office of the Oregon
Attorney General, Salem, Oregon; Michelle A. Henry,
Pennsylvania Attorney General, Office of the Pennsylvania
Attorney General, Harrisburg, Pennsylvania; Peter F.
Neronha, Rhode Island Attorney General, Office of the
Rhode Island Attorney General, Providence, Rhode Island;
Charity R. Clark, Vermont Attorney General, Office of the
Vermont Attorney General, Montpelier, Vermont; Robert
W. Ferguson, Washington Attorney General, Office of the
Washington Attorney General, Olympia, Washington;
Joshua L. Kaul, Wisconsin Attorney General, Office of the
Wisconsin Attorney General, Madison, Wisconsin; for
Amici Curiae Massachusetts, New Jersey, Arizona,
Colorado, Connecticut, Delaware, The District of Columbia,
Hawai'i, Illinois, Maine, Maryland, Michigan, Minnesota,
New York, Oregon, Pennsylvania, Rhode Island, Vermont,
Washington, and Wisconsin.

Timothy C. Hester, Daniel Weltz, and Priya Leeds, Covington & Burling LLP, Washington, D.C.; Douglas N. Letter and Shira L. Feldman, Brady Center to Prevent Gun Violence, Washington, D.C.; Esther Sanchez-Gomez, Giffords Law Center to Prevent Gun Violence, San Francisco, California; Ciara W. Malone, March for Our Lives, New York, New York; for Amici Curiae Brady Center to Prevent Gun Violence, Giffords Law Center to Prevent Gun Violence, and March for Our Lives.

Priyanka G. Sen, William J. Taylor Jr., and Janet Carter, Everytown Law, New York, New York; Freya Jamison, Everytown Law, Washington, D.C.; for Amicus Curiae Everytown for Gun Safety.

Joseph G.S. Greenlee and Cody J. Wisniewski, FPC Action Foundation, Las Vegas, Nevada, for Amici Curiae FPC Action Foundation, California Gun Rights Foundation, and Center for Human Liberty.

Noel J. Francisco, Anthony J. Dick, and Harry S. Graver, Jones Day, Washington, D.C.; Andrew E. Lelling, Jones Day, Boston, Massachusetts; Matthew R. Modderman, Jones Day, Cleveland, Ohio; Lawrence G. Keane, The National Shooting Sports Foundation Inc., Washington, D.C.; for Amicus Curiae The National Shooting Sports Foundation Inc..

David H. Thompson and Peter A. Patterson, Cooper & Kirk PLLC, Washington, D.C., for Amicus Curiae Firearm Policy Coalition Inc..

Edward A. Paltzik, Meredith Lloyd, and Serge Krimnus, Bochner PLLC, New York, New York, for Amicus Curiae The Second Amendment Foundation.

Peter M. Torstensen Jr., Deputy Solicitor General; Christian B. Corrigan, Solicitor General; Austin Knudsen, Montana Attorney General; Office of the Montana Attorney General, Helena, Montana; Joshua N. Turner, Acting Solicitor General; Raul R. Labrador, Idaho Attorney General; Steve Marshall, Alabama Attorney General; Office of the Alabama Attorney General, Montgomery, Alabama; Treg Taylor, Alaska Attorney General, Office of the Alaska Attorney General, Anchorage, Alaska; Tim Griffin, Arkansas Attorney General, Office of the Arkansas Attorney General, Little Rock, Arkansas; Ashley Moody, Florida Attorney General, Office of the Florida Attorney General, Tallahassee, Florida; Christopher M. Carr, Georgia Attorney General, Office of the Georgia Attorney General, Atlanta, Georgia; Theodore E. Rokita, Indiana Attorney General, Office of the Indiana Attorney General, Indianapolis, Indiana; Brenna Bird, Iowa Attorney General, Office of the Iowa Attorney General, Des Moines, Iowa; Kris Kobach, Kansas Attorney General, Office of the Kansas Attorney General, Topeka, Kansas; Daniel Cameron, Kentucky Attorney General, Office of the Kentucky Attorney General, Frankfort, Kentucky; Jeff Landry, Louisiana Attorney General, Office of the Louisiana Attorney General, Baton Rouge, Louisiana; Lynn Fitch, Mississippi Attorney General, Office of the Mississippi Attorney General, Jackson, Mississippi; Andrew Bailey, Missouri Attorney General, Office of the Missouri Attorney General, Kansas City, Missouri; Michael T. Hilgers, Nebraska Attorney General, Office of the Nebraska Attorney General, Lincoln, Nebraska; John M. Formella, New Hampshire Attorney General, Office of the New Hampshire Attorney General, Concord, New Hampshire; Drew H. Wrigley, North Dakota Attorney General, Office of the North Dakota Attorney

General, Bismark, North Dakota; Dave Yost, Ohio Attorney General, Office of the Ohio Attorney General; Columbus, Ohio; Gentner F. Drummond, Oklahoma Attorney General, Office of the Oklahoma Attorney General, Oklahoma City, Oklahoma; Alan Wilson, South Carolina Attorney General, Office of the South Carolina Attorney General, Columbia, South Carolina; Marty J. Jackley, South Dakota Attorney General, Office of the South Dakota Attorney General, Pierre, South Dakota; Ken Paxton, Texas Attorney General, Office of the Texas Attorney General, Austin, Texas; Jason Miyares, Virginia Attorney General, Office of the Virginia Attorney General, Richmond, Virginia; Patrick Morrisey, West Virginia Attorney General, Office of the West Virginia Attorney General, Charleston, West Virginia; Bridget Hill, Wyoming Attorney General, Office of the Wyoming Attorney General, Cheyenne, Wyoming; for Amici Curiae Montana, Idaho, and 23 Other States.

Jeremiah L. Morgan, William J. Olson, and Robert J. Olson; William J. Olson PC, Vienna, Virginia; John I. Harris III, Schulman, LeRoy & Bennett PC, Nashville, Tennessee; for Amici Curiae Gun Owners of America Inc., Gun Owners Foundation, Gun Owners of California Inc., Heller Foundation, Virginia Citizens Defense League, Tennessee Firearms Association, America's Future Inc., U.S. Constitutional Rights Legal Defense Fund, and Conservative Legal Defense and Education Fund.

John Cutonilli, Garrett Park, Maryland, for Amicus Curiae John Cutonilli.

## ORDER

PER CURIAM:

This action concerns the constitutionality of California's ban on large-capacity magazines. At the request of a member of this en banc court, we ordered the parties to brief the preliminary question of the statutory authority of this en banc court to decide this appeal. That question is separate from, and logically antecedent to, the merits. Just as the Supreme Court and we often resolve questions of recusal in a separate order, e.g., Moore v. United States, 144 S. Ct. 2 (2023) (Alito, J.); Cheney v. U.S. Dist. Ct. for D.C., 541 U.S. 913 (2004) (Scalia, J.); Suever v. Connell, 681 F.3d 1064 (9th Cir. 2012) (D.W. Nelson, J.) (order), we address in this separate order the preliminary question of this en banc court's statutory authority.

Title 28 U.S.C. § 46(c) authorizes courts of appeals to decide cases and controversies en banc, and it prescribes the composition of the en banc court in resolving cases and controversies. The first sentence of § 46(c) grants courts of appeals the power to decide cases en banc:

> Cases and controversies shall be heard and determined by a court or panel of not more than three judges (except that the United States Court of Appeals for the Federal Circuit may sit in panels of more than three judges if its rules so provide), unless a hearing or rehearing before the court in banc is ordered by a majority of the circuit judges

> of the circuit who are in regular active
> service.

28 U.S.C. § 46(c). The second sentence of § 46(c)
prescribes the composition of the en banc court and
authorizes the participation of senior circuit judges in two
circumstances:

> A court in banc shall consist of all circuit
> judges in regular active service, or such
> number of judges as may be prescribed in
> accordance with section 6 of Public Law 95-
> 486 (92 Stat. 1633), except that any senior
> circuit judge of the circuit shall be eligible
> (1) to participate, at his election and upon
> designation and assignment pursuant to
> section 294(c) of this title and the rules of the
> circuit, as a member of an in banc court
> reviewing a decision of a panel of which such
> judge was a member, or (2) to continue to
> participate in the decision of a case or
> controversy that was heard or reheard by the
> court in banc at a time when such judge was
> in regular active service.

Id. Section 6 of Public Law 95-486 authorizes a court of
appeals with more than fifteen active judges to "perform its
en banc function by such number of members of its en banc
courts as may be prescribed by rule of the court of appeals."
Pub. L. No. 95-486, § 6, 92 Stat. 1629, 1633 (1978).

The Supreme Court long ago explained that § 46(c) "is
simply a grant of power to order hearings and rehearings en
banc and to establish the procedure governing the exercise

of that power." W. Pac. R.R. Corp. v. W. Pac. R.R. Co., 345
U.S. 247, 267 (1953). "[T]he statute does not compel the
court to adopt any particular procedure governing the
exercise of the power; but whatever the procedure which is
adopted, it should be clearly explained, so that the members
of the court and litigants in the court may become thoroughly
familiar with it." Id.; see also Shenker v. Balt. & Ohio R.R.
Co., 374 U.S. 1, 4–5 (1963) (reiterating those principles and
approving of a practice by the Third Circuit as "clearly
within the scope of the court's discretion as we spoke of it in
Western Pacific").

Consistent with Congress' instructions and the Supreme
Court's direction, the Ninth Circuit has adopted and
consistently applied several rules and procedures that are
relevant here.[1]  "If a majority of the judges eligible to vote
on the en banc call votes in favor of en banc consideration,
the Chief Judge shall enter an order taking the case en banc
pursuant to Circuit Rule 35-3."  9th Cir. Gen. Order 5.5(d).
Ninth Circuit Rule 35-3, in turn, provides that "[t]he en banc
court, for each case or group of related cases taken en banc,
shall consist of the Chief Judge of this circuit and 10
additional judges to be drawn by lot from the active judges
of the Court."  Once the en banc court has been constituted,
it may decide all matters in the case including, at the en banc
court's option, future appeals in the same case.  General
Order 3.6(b), titled "Matters Arising After Remand By an En
Banc Court," states that, "[w]here a new appeal is taken
following a remand or other decision by an en banc court,

---

[1] This court amended its general orders and rules, effective December 1,
2024.  The amendments do not affect the issue discussed in this order.
For simplicity, we refer to the version of the orders and rules that were
in effect when the en banc court was constituted and when this appeal
was filed.

. . . [t]he en banc court will decide whether to keep the case or to refer it to the three judge panel." 9th Cir. Gen. Order 3.6(b); see also id. 1.12 (defining a comeback case as a "subsequent appeal[] or petition[] from a district court case or agency proceeding involving substantially the same parties and issues from which there previously had been a calendared appeal or petition").

All actions in this case have accorded fully with those directives. A three-judge panel decided the first appeal, of a preliminary injunction, Duncan v. Becerra, 742 F. App'x 218 (9th Cir. 2018) (unpublished), and a different three-judge panel initially decided the second appeal, of a summary judgment, 970 F.3d 1133 (9th Cir. 2020). As authorized by § 46(c), a majority of active judges then voted, in 2021, to rehear this case or controversy en banc. 988 F.3d 1209 (9th Cir. 2021) (order). Pursuant to Ninth Circuit Rule 35-3, the Chief Judge and ten active judges, drawn by lot, comprised the en banc court. We issued an initial substantive ruling, Duncan v. Bonta, 19 F.4th 1087 (9th Cir. 2021) (en banc), but then remanded the case to the district court following the Supreme Court's vacatur of that judgment, 49 F.4th 1228 (9th Cir. 2022) (en banc) (order). After the district court issued its latest opinion on remand and Defendant appealed again, the Clerk assigned the case a new appellate case number as a matter of routine and consulted the en banc court about whether it would retain the case or refer it to a three-judge panel, as provided by General Order 3.6(b). Consistent with this court's rules, the en banc

court decided to keep the case rather than refer it to the three-judge panel. Docket No. 3.**²**

This is a new appeal, with a new appellate case number, and several judges on the en banc court have assumed senior status since the en banc court was first constituted. But those facts have no bearing on the en banc court's statutory authority to decide this ongoing case.

Section 46(c) authorizes the en banc court to hear "[c]ases and controversies" and specifically authorizes senior circuit judges "to continue to participate in the decision of a case or controversy that was heard or reheard by the court in banc at a time when such judge was in regular active service." 28 U.S.C. § 46(c) (emphases added). All eleven judges on the en banc court were "in regular active service" in 2021 when the court voted to hear the case en banc and when the en banc court was constituted. Congress' use of the terms "case," "controversy," "cases and controversies," and "case or controversy" authorizes the en banc court to decide the entire case, not merely a discrete step in the overall suit.

The terms "case" and "controversy," separately or in combination, are commonly understood to apply to litigation as a whole, rather than to a discrete phase of litigation. Dictionary definitions of the terms—both in 1948, when Congress enacted the first sentence of § 46(c), and in 1996, when Congress enacted the relevant part of the second sentence of § 46(c)—all describe them as encompassing an entire suit or action. See Case, Black's Law Dictionary (3d

---

² Following Judge Watford's resignation, Judge Wardlaw was drawn to replace him on the en banc court pursuant to General Order 5.1(b)(1). Docket No. 3 at 1 n.1. No one challenges that replacement.

ed. 1933) ("an action, cause, suit, or controversy, at law or in equity"); Controversy, Id. ("a civil action or suit, either at law or in equity"); Cases and Controversies, Id. ("claims or contentions of litigants" having "a form that the judicial power is capable of acting upon it"); Case, Controversy, and Cases and Controversies, Black's Law Dictionary (6th ed. 1990) (similar to the third edition's definitions); Case, Webster's New Int'l Dictionary (2d ed. 1939) ("a suit or action in law or equity"); Controversy, Id. ("[a] suit in law or equity"); Case, and Controversy, Webster's Third New Int'l Dictionary (3d ed. 1993) (similar to the second edition's definitions).

Other Congressional enactments reflect that same broad meaning of the terms. The supplemental jurisdiction statute, for example, authorizes district courts to adjudicate state-law claims that "form part of the same case or controversy." 28 U.S.C. § 1367(a) (emphasis added). The Supreme Court has held that, in using that phrase, Congress meant to encompass all claims that "derive from a common nucleus of operative fact." City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 165 (1997) (quoting United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966)).

The same broad meaning is also found in judicial doctrines. For instance, the law of the case doctrine instructs that, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case," Arizona v. California, 460 U.S. 605, 618 (1983) (emphasis added), and "subsequent stages" of the "same case" include later appeals involving the same district court case, e.g., Fikre v. FBI, 35 F.4th 762, 770 (9th Cir. 2022); Jeffries v. Wood, 114 F.3d 1484, 1489 (9th Cir. 1997) (en banc), overruled in part on other grounds by

Gonzalez v. Arizona, 677 F.3d 383, 389 n.4 (9th Cir. 2012) (en banc).

Under any of those definitions, this appeal clearly is part of the same case or controversy that this court confronted in 2021, when the court voted to rehear the case en banc and when this en banc court was constituted. This appeal asks us to resolve the <u>same</u> legal issue, between the <u>same</u> parties, arising from the <u>same</u> district court action and the <u>same</u> facts. The appeal thus is one segment of the overall suit or action, arises from the same common nucleus of facts, and constitutes a subsequent appeal from the same district court case. Indeed, we are not aware of <u>any</u> definition of "case or controversy" that would not encompass this appeal.

In sum, Congress authorized this court to rehear en banc "[c]ases and controversies" and authorized senior circuit judges "to continue to participate in the decision of a case or controversy." 28 U.S.C. § 46(c). This appeal is plainly part of the same case or controversy. Thus, we have statutory authority to decide the appeal—even though some judges have assumed senior status and even though this appeal has a new appellate case number.

Two additional contentions warrant discussion. First, § 46(c) authorizes senior circuit judges to "continue to participate in <u>the decision</u> of a case or controversy." (Emphasis added.) In one view, "the decision" means a single decision solely in the appeal in which the court voted to rehear the case en banc. Of course, even a single appeal often involves many decisions by this court, so the suggestion is that we interpret the statute to authorize the en banc court to issue all decisions in an appeal but only until the mandate issues.

We find no support in the statutory text for that proposed rule. We must consider the words "the decision" in context, not in isolation, and a "crucial part of that context is the other words in the sentence," Diaz v. United States, 602 U.S. 526, 536 (2024). Congress did not choose to authorize senior circuit judges to participate in "the decision" without modification, or in "the decision of the appeal," or in "the decision of the appeal until the mandate issues." Consistent with Congress' authorization of the en banc court to hear "[c]ases and controversies," not single appeals, Congress authorized senior circuit judges "to continue to participate in the decision of a case or controversy," not the decision of a discrete appeal. 28 U.S.C. § 46(c) (emphases added). Congress knows how to grant courts the limited authority to decide "an appeal," as it has done in many other provisions. E.g., 28 U.S.C. §§ 47, 1292(b), 1292(c)(1), 1292(c)(2), 1292(d)(4)(A), 1292(e), 1453(c)(1), 1915(a)(1). Congress chose broader terms when enacting § 46(c), thereby authorizing us to decide the entire case or controversy, including this appeal.

The second contention starts with the observation that, when Defendant filed this appeal, the en banc court, in accordance with General Order 3.6(b), "decide[d] whether to keep the case or to refer it to the three judge panel." The assertion is that our decision to keep the case somehow constituted a new vote on whether to rehear the case en banc and that, accordingly, the "vote" was improper because only a subset of active judges participated in the vote.

That contention is mistaken. This court voted to rehear the case en banc only once, in 2021, thus authorizing us to hear en banc the entire case or controversy, including later appeals. By operation of this court's ordinary procedures, the case returned automatically to the en banc court upon the

filing of a new appeal in 2023, and the en banc court decided whether to <u>keep</u> the case or, alternatively, to <u>refer</u> it to the three-judge panel. No new vote on whether to <u>rehear</u> the case en banc took place. At any point in the life of a case or controversy, sua sponte or by motion of a party, an en banc court may refer part—or all—of the case to the three-judge panel. 9th Cir. Gen. Order 3.6(b). Each such intermediate decision is made by the en banc court hearing that case, as many en banc courts have done. <u>See, e.g.</u>, <u>De La Rosa-Rodriguez v. Garland</u>, No. 20-71923, Docket No. 88 (9th Cir. Apr. 3, 2024) (en banc order referring the entire case to the original three-judge panel, without deciding any substantive issues); <u>Kohn v. State Bar of Cal.</u>, 87 F.4th 1021 (9th Cir. 2023) (en banc) (opinion deciding one issue and remanding the remaining issues to the original three-judge panel); <u>Alam v. Garland</u>, 11 F.4th 1133 (9th Cir. 2021) (en banc) (same). Nothing suggests that those ordinary decisions constitute votes on whether to hear the case en banc. This court voted in 2021 to rehear this case en banc, and § 46(c) and our general orders authorize us to decide the entire case or controversy without calling for additional votes on whether to hear the case en banc.

Judge Ryan Nelson's dissent advocates for a rule that the authority of the en banc court to hear a case or controversy dissolves when the mandate issues after the en banc court first hears a case. For all the reasons described above, that approach contravenes the clear statutory text that authorizes the en banc court to decide the entire case or controversy, not merely one aspect of a case or controversy.

The approach suggested by Judge Nelson's dissent also would have remarkably broad consequences. Because the authority of the en banc court would dissolve when the mandate issues, the formula proposed by Judge Nelson's

dissent would mean that no en banc court ever could accept a comeback appeal—even if the composition of the court had not changed and even if no judge on the en banc court had assumed senior status. In other words, despite the many protestations concerning senior status and the composition of the court, at bottom, those facts would be irrelevant under the rule suggested by Judge Nelson's dissent: because the mandate issued in the first appeal, the authority of the en banc court dissolved, regardless of the composition of the court and regardless of the active or senior status of the judges on the en banc court.

Judge Nelson's dissent also plainly elevates form over substance, as this case demonstrates. Our 2022 remand order also served as the mandate. 49 F.4th at 1231–32. But because the Supreme Court's remand concerned only one claim among several that were at issue—the Second Amendment claim—our remand was effectively a limited one, as the district court's decision made clear. There is thus no meaningful difference between our 2022 remand order and a formally limited remand, which returns an issue to the district court without a mandate. See, e.g., Detrich v. Ryan, No. 08-99001, Docket Nos. 169, 172, 182 (remanding to the district court for further proceedings, without issuing a mandate, in an appeal initiated in 2008, followed by replacement briefing in 2024 after the district court issued a decision on remand). Judge Nelson's dissent appears to agree that, had we issued a formally limited remand, the en banc court would have retained jurisdiction. Dissent by Judge Ryan Nelson at 73 n.6. In other words, the approach suggested by Judge Nelson's dissent would freely allow an en banc court to hear later proceedings in the same case or controversy—even decades later—so long as the en banc court used the proper incantation but would prohibit an en

banc court from deciding a later appeal—even just months later—if the court did not use that procedure. We find no support for the contention that Congress intended an en banc court's authority, or senior judges' participation on en banc courts, to hinge on arbitrary procedural distinctions.

Finally, the approach suggested by Judge Nelson's dissent overlooks Congress' clear intent to promote the efficient use of judicial resources. As § 46(c) reflects, and as courts have recognized, there is nothing inherent in senior status that disqualifies a judge from continuing to participate in a case or controversy once it has gone en banc. Senior judges are fully commissioned Article III judges, and the Supreme Court has expressly held that, upon assuming senior status, a senior judge "does not surrender his commission, but continues to act under it." Booth v. United States, 291 U.S. 339, 350–51 (1934). "Senior circuit judges, of course, normally have great experience in the law of the circuit, and their presence on appellate panels within the circuit is wholly consistent with Congress's purpose of promoting the stability of circuit law." In re Bongiorno, 694 F.2d 917, 918 n.1 (2d Cir. 1982). Indeed, continued participation promotes the statute's obvious purpose of judicial efficiency. See, e.g., Igartúa de la Rosa v. United States, 407 F.3d 30, 32 (1st Cir. 2005) (en banc) (per curiam) (memorandum and order) (holding that the purpose of 46(c) is to "give[] the en banc court the benefit of the knowledge and judgment of all of the judges of th[e] circuit" who have worked on the case); United States v. Hudspeth, 42 F.3d 1013, 1015 (7th Cir. 1994) (en banc) (noting that "the purpose of making the exception for a senior judge who had been on the three-judge panel was that the time the judge had put in on the case should not go to waste"); Allen v. Johnson, 391 F.2d 527, 529–30 (5th Cir. 1968) (en banc) (per curiam)

("[B]ecause [a narrow reading of § 46(c)] would deprive the Court sitting en banc of the work, research, study and deliberation done earlier by the Senior Circuit Judge during the pendency of the case before the panel, it is not reasonable to suppose Congress desired or intended any such wasteful consequences." (duplicate "the" omitted)).    The statute clearly provides that only active judges have authority to decide <u>whether to hear en banc</u> a case or controversy.  28 U.S.C. § 46(c).  But the statute makes equally clear that Congress intended, as relevant here, for now-senior circuit judges to participate in the <u>adjudication</u> of a case taken en banc when those judges already have devoted time and effort to hearing the same case or controversy.

Our holding is narrow:  Congress authorized the en banc court to decide a case or controversy, not a single appeal. Consistent with that statutory authorization, our rules require the en banc court, at the outset of a later appeal, to decide whether it is prudent to retain jurisdiction or to refer the case to the three-judge panel.  The specific legal issue in this appeal is identical to the issue that we addressed at great length in the first appeal; the issue is a question of law; and little time—precisely one year—passed between our remand in September 2022 and the filing of this appeal in September 2023.  Our decision to retain jurisdiction is a prudential exercise of discretion in these particular circumstances. Nothing in this order requires future en banc courts, facing different circumstances, to exercise discretion in the same manner.

In conclusion, we have statutory authority to decide this case.  Accordingly, this en banc court will proceed to resolve the merits.

**IT IS SO ORDERED.**

S.R. THOMAS, Circuit Judge, with whom MURGUIA, Chief Judge, and WARDLAW, PAEZ, BERZON and HURWITZ, Circuit Judges, join, concurring:

I join the majority order in its entirety. I write separately to provide some context to our en banc procedures and to underscore that our Circuit has consistently followed the en banc procedures that our General Orders provide, both in terms of how en banc courts have treated cases or controversies returning to them after remand, and how senior judges participate. Our en banc procedures are consistent with the governing statute, and also in accord with those employed by our sister Circuits.

I

In *Textile Mills Sec. Corp. v. Comm'r*, 314 U.S. 326 (1941), the Supreme Court held that federal courts of appeal had the power to convene themselves en banc. The Court noted that allowing a court to sit en banc "makes for more effective judicial administration," avoids inter-circuit conflicts, and promotes "[f]inality of decision in the circuit courts of appeal." *Id.* at 334-35.

In 1948, Congress codified the *Textile Mills* decision in § 46(c) of the Judicial Code. 28 U.S.C. § 46(c). Following the adoption of § 46(c), the Supreme Court held that the statute was a grant of power to the courts of appeals, and "that the statute does not compel the court to adopt any particular procedure governing the exercise of the power . . . ." *W. Pac. R.R. Corp v. W. Pac R.R. Co.,* 345 U.S. 247, 267 (1953).**[1]** The Court confirmed that, pursuant to

---

[1] The Dissent asserts a different meaning as to the authority granted to § 46(c) but only cites cases involving prior versions of § 46(c), which are not applicable here.

§ 46(c), "each Court of Appeals is vested with a wide latitude of discretion to decide for itself just how that power shall be exercised." *Id.* at 259. At each juncture when the issue has arisen, the Supreme Court has continued to endorse its interpretation of § 46(c) as affording Courts of Appeals the discretion to determine the means by which the en banc process was administered.

As the Supreme Court noted in *United States v. American-Foreign S. S. Corp.*, 363 U.S. 685, 688 (1960), "the procedure to be followed by a Court of Appeals in determining whether a hearing or rehearing en banc is to be ordered" is "largely to be left to intramural determination by each of the Courts of Appeals."

In *Shenker v. Baltimore & O. R. Co.*, 374 U.S. 1, 5 (1963), the Supreme Court upheld the Third Circuit's en banc process, noting that the "procedure is clearly within the scope of the court's discretion as we spoke of it in Western Pacific." It added: "For this Court to hold otherwise would involve it unnecessarily in the internal administration of the Courts of Appeals."

Similarly, in *Moody v. Albemarle Paper Co.*, 417 U.S. 622, 625 (1974), the Court reiterated that the statute left Circuit Court of Appeals "free to devise its own administrative machinery," (*quoting W. Pac. R.R. Corp.,* 345 U.S. at 250), and noted that the delegation of "[t]his discretion has been subsequently confirmed."

In accordance with the Supreme Court guidance, each Circuit has adopted en banc procedures that best fit their Circuit.**[2]**

In the Omnibus Judgeship Act of 1978, Congress granted federal circuit courts consisting of more than fifteen judges the power to delegate en banc authority to a limited en banc court. Pub. L. No. 95-486, § 6, 92 Stat. 1629,1633 (codified at 28 U.S.C. § 41 note).**[3]** The Ninth Circuit is unique in that

---

[2] There are slight differences among the Circuits as to en banc procedures. For example, some Circuits provide that a senior judge continues to participate in an en banc proceeding that was heard or reheard at a time when such judge was in regular active service. *See, e.g.,* Second Circuit Internal Operating Procedure 40.1; Fourth Circuit Local Rule 40(e). However, the Third Circuit provides that any judge participating in the en banc poll as an active judge may continue to participate on the en banc court, even if the judge assumed senior status before the en banc hearing. Third Circuit Internal Operating Rule 9.6.4. In the Ninth Circuit, we determine the eligibility to serve on the court at the time the en banc court is drawn. General Order 5.1(a)(4). In short, within the authority of § 46(c) and *W. Pac. R.R. Corp,* the Circuits have adopted procedures that best suit their Court and culture.

[3] Congress had considered adopting uniform limited en banc courts for all circuits. Congress had created a Commission on the Revision of the Federal Appellate Courts. Public Law 92-489; 86 Stat. 807. The Commission, popularly known as the "Hruska Commission," recommended that "participation in en banc hearings and determinations should be limited to the chief judge and the eight other active judges of the circuit." *Commission on Revision of the Federal Court Appellate System: Recommendations for Change, Part II*, as reprinted in 67 F.R.D. 195, 202. However, Congress ultimately allowed each Circuit larger than fifteen active judges to decide for themselves whether to adopt a limited en banc court system, and left the mechanism for implementing the limited en banc courts to the discretion of each Circuit. *See* Pub. L. No. 95-486, § 6, 92 Stat. 1629,1633 (codified at 28 U.S.C. § 41 note).

it is the only Circuit that has adopted a limited en banc court procedure pursuant to the statute.**[4]**

In 1980, after consultation with statisticians, the bar, and the public, the Ninth Circuit adopted the limited en banc procedure, with the limited en banc court consisting of the Chief Judge and ten additional active judges to be drawn by lot. *See Ninth Circuit Rule* 35-3. The Court also provided a mechanism for a full court en banc in appropriate cases. *Id.*

The goal in establishing the size of the en banc court was to ensure adequate representation, a sound deliberative process, and decisions that would be accepted as authoritative. Over the decades, our en banc process has satisfied those goals. The en banc process is necessary to avoid intra-circuit conflicts, to examine and resolve potential inter-circuit conflicts, and to address cases of exceptional importance. Although rehearing en banc is a relatively rare occurrence, the Ninth Circuit has an extensive history of en banc activity.**[5]**

---

[4] However, pursuant to § 46(c) and our General Orders, only active judges who are not recused or disqualified are eligible to vote on whether the case should be heard or reheard en banc. *See* General Order 5.1.a.3. In this case, a majority of the non-recused active judges voted to rehear the case en banc on February 25, 2021. (Dkt. 117). No senior judge participated in that vote. Thereupon, the en banc court assumed jurisdiction over the case.

[5] Nationally, in calendar year 2024, en banc opinions constituted .016% of terminated cases. In the Ninth Circuit, en banc opinions constituted .012% of cases terminated in 2024. However, we still have a relatively large volume. Since 1996, in our Circuit there have been 991 en banc calls by members of our Court (requests to conduct a vote of the non-recused active members of the Court on whether to hear or rehear a case en banc), and we have granted hearing or rehearing en banc in 460 cases to date. Since I assumed the position of En Banc Coordinator in

Our en banc procedures have been comprehensively described in our Circuit Rules and General Orders.**[6]**  We have modified them numerous times to address specific issues and changing circumstances.  For example, with the advent of electronic communication, we discarded some of the procedures that were designed for a paper-dominant era.  We have also experimented with different processes.  For example, in 2005, we voted to expand our eleven-judge en banc court to fifteen judges for a two year experiment.  The reaction from litigants and judges was not positive, and we returned to an eleven-judge en banc court in 2007.

The en banc court does not conduct appellate review of the three judge panel decision.  The three judge panel decision is neither affirmed or reversed.  Rather, "when a case is heard or reheard *en banc*, the *en banc* panel assumes jurisdiction over the entire case . . . ."  *Summerlin v. Stewart*, 309 F.3d 1193 (9th Cir. 2002);  *see also Kyocera Corp. v. Prudential-Bache Trade Services, Inc.*, 341 F.3d 987, 995 (9th Cir. 2003) (en banc) (same)*.*  In other words, the en banc court is substituted for the three judge panel in considering

_____

December 2000, in our Circuit there have been 794 en banc calls, and we have granted hearing or rehearing en banc in 380 cases to date.

[6] Our General Orders not only comply with the applicable statutory language but mirror it.  *See* General Order 5.1(a)(4) ("Judge eligible to serve on the En Banc Court - means any active or senior judge who is not recused or disqualified and who entered upon active service prior to the date the Court is drawn.  Senior judges shall not serve on an en banc court except: (i) a senior judge who was a member of the three judge panel assigned to the case being heard or reheard en banc may elect to be eligible to be selected as a member of the en banc court" or "(ii) a senior judge who takes senior status while serving as a member of an en banc court may continue to serve until all matters pending before that en banc court, including remands from the Supreme Court, are finally disposed of.").

the case.  The en banc court is not limited to consideration of the "issues that may have caused any member of the Court to vote to hear the case *en banc*."  *Id.*  However, the en banc court may, in its discretion, limit the issues it considers.  *Id*; *see, e.g.*, *Rand v. Rowland*, 154 F.3d 952, 954 n.1 (9th Cir. 1998); *United States v. Perez*, 116 F.3d 840, 843 n.2 (9th Cir. 1997); *Asherman v. Meachum*, 957 F.2d 978, 983-84 (2d Cir. 1992).

Because the en banc court is substituted for the three judge panel in its entirety and assumes jurisdiction over the case, an en banc court may—consistent with the practice before a three judge panel—decide that there are issues worthy of further development in the district court before it issues its decision on the merits.  Very few of the remanded cases return to the Circuit.  However, when they do, in accordance with our General Orders, the en banc court decides how the subsequent appeal should be handled.  *See* General Order 3.6(b).

For example, in *Eyak Native Village v. Daley*, 375 F.3d 1218 (9th Cir. 2004) (en banc) ("*Eyak I*") the en banc court vacated and remanded to the district court to decide whether the plaintiff had aboriginal fishing rights in a given territory. The mandate issued.  After the district court had decided that issue, the plaintiffs appealed, and the case returned to the en banc court.  *Native Village of Eyak v. Blank*, 688 F.3d 619 (9th Cir. 2012) ("*Eyak II*") (en banc) (per curiam). The en banc court initially decided to refer the new appeal to the three judge panel.  *Eyak II*, No. 09-35881, Dkt. No. 33. However, after discussion and closer examination of the prior en banc order, the en banc court decided to retain jurisdiction and to decide the new appeal in the first instance. *Eyak II*, No. 09-35881, Dkt. No. 39.

Likewise, in *Sarei v. Rio Tinto, PLC*, 550 F.3d 822 (9th Cir. 2008) (en banc) ("*Sarei I*"), we set forth standards for determining whether exhaustion was required, and then remanded to the district court to determine in the first instance whether to impose an exhaustion requirement on plaintiffs. *Id.* at 832. After the remand and a district court decision, a new appeal was taken and returned to the original en banc court. *Sarei v. Rio Tinto, PLC*, 671 F.3d 736, 742 (9th Cir. 2011) (en banc) ("*Sarei II*").

In *Norse v. City of Santa Cruz*, 629 F.3d 966, 978 (9th Cir. 2010) (en banc) ("*Norse I*"), the en banc court reversed the district court and remanded for further proceedings in the district court. The mandate issued. *See Norse v. City of Santa Cruz*, No. 07-15814, Dkt. 55. After a jury trial, a new appeal was taken, and the clerk's office assigned a new appeal number to the case, No. 13-16432. The new appeal was referred to the prior en banc court. The en banc court accepted the case as a comeback. *See Norse v. City of Santa Cruz*, No. 13-16432, Dkt. 23. Then as authorized by our General Orders, the en banc court *decided* to refer the case to the original three judge panel. *Id.* Our General Orders allow the en banc court to "*decide* whether to keep the case or to refer it to the three judge panel." General Order 3.6(b) (emphasis added); *see also McDaniels v. Kirkland*, 813 F.3d 770, 781 (9th Cir. 2015) (en banc) ("Remand to the original three-judge panel of issues extraneous to an en banc call is at times a useful mechanism to conserve judicial resources and achieve an expeditious resolution of issues on appeal.") In *Norse*, the en banc court decided to refer the case to the original three judge panel, that was within the en banc court's discretion, but was by no means required by our General Orders. The three judge panel subsequently issued

a decision on the new appeal. *Norse v. City of Santa Cruz*, 599 Fed.Appx. 702, 703 (9th Cir. 2015) (unpublished).

In this case, the Supreme Court remanded our decision for reconsideration in light of *New York State Rifle & Pistol Assn., Inc. v. Bruen*, 597 U.S. 1 (2022). The en banc court solicited the views of the parties. California requested a remand to the district court, noting that in light of *Bruen,* "remand would serve the interests of both parties, allowing them a full and fair opportunity to address the new emphasis on historical analogues, and would allow the district court in the first instance to address several important questions about how *Bruen* applies." *Duncan v. Bonta*; no.19-55376; Dkt. 203 at 7. The appellees argued that the en banc court should conduct that inquiry itself without remand. *Id.*; Dkt. 207 at 21-24. After consideration, and consistent with its procedure in prior cases, the en banc court, by majority vote, elected to remand to the district court for proceedings consistent with *Bruen*. *Duncan v. Bonta*, 49 F.4th 1228, 1231 (9th Cir. 2022) (en banc).

There was nothing unusual about the remand. Nor is it unusual for the case to return to the court that remanded the case for further development in the district court—whether that be the three judge panel or the en banc court. Indeed, it would be unusual for a remanded case to be returned to a different court.[7]

---

[7] There is no support for the suggestion that the new appeal should have proceeded to the three judge panel. Such an action would have violated our General Orders and past practice. General Order 3.6(b) specifically states, "[w]here a *new appeal* is taken *following a remand* or other decision by an en banc court, the Clerk's Office shall notify the en banc court that the new appeal is pending . . . The en banc court *will decide whether to keep the case* or to refer it to the three judge panel." (emphasis

With that background in mind, a discussion of our historical en banc court practice is in order.

## II

### A

In accordance with the Supreme Court's direction that en banc procedures "be clearly explained, so that the members of the court and litigants in the court may become thoroughly familiar with [them]," *W. Pac. R.R. Corp.*, 345 U.S. at 267, we adopted Ninth Circuit General Order 3.6(b), which provides that "[w]here a new appeal is taken following a remand or other decision by an en banc court, the Clerk's Office shall notify the en banc court that new appeal is pending, and proceed only after hearing instructions from that en banc court."

The General Orders further provide that, after notification from the Clerk's Office, "[t]he en banc court will decide whether to keep the case or to refer it to the three judge panel." *Id.* The General Orders additionally state that "[i]f the en banc panel so elects, a new en banc court will not be drawn from the eligible pool of judges at the time of future proceedings." *Id.* There is no provision in our General Orders that provides for a new en banc vote, or for

---

added). The General Orders clearly describe the course of action to be taken when a "new appeal" returns to the Court "following a remand." Of course, there may be disagreements with the discretion exercised by the en banc court in deciding whether to retain or refer the case. However, the power and authority is vested in the en banc court. Here, the en banc court decided to keep the case, as it was authorized to do. The decision was within its power, which was granted by § 46(c) and codified in our General Orders.

the new appeal to be heard first by a three judge panel.[8] A court always retains the power to determine its own jurisdiction. *United States v. Ruiz*, 536 U.S. 622, 628 (2002). There is no case, rule, statute, or General Order providing that an en banc court loses jurisdiction of the current or future appeal when it refers all or part of the case to a three judge panel. Such a construction would be contrary to the structure of rehearings en banc, given that the en banc court is empowered by a vote of the majority of nonrecused active judges to exercise jurisdiction over the case.

The relevant en banc General Orders were adopted to codify existing practice and to remove any potential confusion about how remanded cases should be handled in our Court.[9]

We have consistently adhered to these procedures by referring a new appeal to the en banc court that issued the remand order. *See, e.g., Detrich v. Ryan*, No. 08-99001 (2022) (return to en banc court after remand to district court; pending); *Democratic Natl. Comm. v. Hobbs*, 948 F.3d 989 (9th Cir. 2020) (en banc) (new appeal, with new appellate case number, returned to same en banc court following dismissal of prior appeal as moot); *League of United Latin American Citizens v. Wheeler*, 940 F.3d 1126 (9th Cir. 2019)

---

[8] As noted previously, under our General Orders, the en banc court can elect to refer the case to the three judge panel. General Order 3.6(b). If that is done, and the three judge panel issues a new decision, then an en banc vote may be requested as to the new decision. If successful, the case returns to the original en banc court. *Id.* ("If the en banc panel so elects, a new en banc court will not be drawn from the eligible pool of judges at the time of future proceedings.")

[9] We, of course, can alter our General Orders and Circuit Rules pertaining to our en banc procedures. However, to date our adopted procedure has served us well.

(en banc) (new petitions for review after remand to agency returned to en banc court and referred to the original three judge panel); *Fue v. McEwen*, 2018 WL 3391609 (9th Cir. June 20, 2018) (en banc) (unpublished) (request for issuance of certificate of appealability, with new appellate case number, decided by the same en banc court[10] after remand in prior case); *Eyak II* (new opinion by en banc court after remand to district court by en banc court); *Norris I* (new appeal, with new appellate case number, referred to the original en banc court, which referred it to the original three judge panel); *Sarei II* (new opinion by en banc court after remand by en banc court); *United States v. Hovsepian*, 422 F.3d 883 (9th Cir. 2005) (en banc) (new opinion by en banc court after remand by en banc court); *WMX Techs., Inc. v. Miller*, 197 F.3d 367 (9th Cir. 1999) (en banc) (opinion by en banc court on new appeal, with new appellate case number, after dismissal and remand to district court by en banc court).

The underlying guiding philosophy for these provisions is consistency in judicial administration—that when a case returned to a court of appeals after remand, the case should be heard by the same panel, and our General Orders so provide. General Order 3.6.

B

Our court has also been consistent in allowing judges who have assumed senior status after remand to the district court or agency, or upon certification to a state court, to

---

[10] The en banc court remained the same with the exception of Judge Kozinski, who participated in the initial en banc decision, but had fully retired before the second decision was filed.

remain on the en banc court upon a new appeal or petition, as provided in the General Orders.

As originally adopted, § 46(c) provided that the en banc court would "consist of all active circuit judges of the circuit." 28 U.S.C. § 46(c) (1948).  In *American-Foreign S. S. Corp.*, 363 U.S. at 690-91, the Supreme Court held that only active judges could participate in en banc proceedings, although it noted that it would be desirable to allow senior judges who had participated on the three judge panel and senior judges who were active when the case was heard en banc to participate on the en banc court.  In 1963, in response to that decision, Congress amended 28 U.S.C. § 46(c) to clarify that "[a] circuit judge of the circuit who has retired from regular active service shall also be competent to sit as a judge of the court in banc in the rehearing of a case or controversy if he sat in the court or division at the original hearing thereof."

In 1996, following a circuit split[11] regarding whether senior judges could continue to participate in en banc proceedings after taking senior status, Congress clarified that senior judges could in fact continue to participate in en banc proceedings.  This clarification is codified in the current verison of § 46(c), which makes clear that "any senior circuit judge of the circuit shall be eligible (1) to participate . . . as a member of an in banc court reviewing a decision of a panel of which such judge was a member, or (2) to continue to

---

[11] The Fifth Circuit held in 1968 that a senior judge may continue to participate in en banc proceedings. *United States v. Cocke*, 399 F.2d 433, 435 n. a1 (5th Cir. 1968) (en banc). On the other hand, the Seventh Circuit held in 1994 that a senior judge could not continue to participate in an en banc proceeding. *United States v. Hudspeth*, 42 F.3d 1013 (7th Cir. 1994) (en banc).

participate in the decision of a case or controversy that was heard or reheard by the court in banc at a time when such judge was in regular active service."

The "case or controversy" language is important, because it makes clear that senior judge participation is not limited to "a specific appeal." Rather, senior judge participation is retained as to the "case or controversy," which applies to the entire course of the litigation. As the Supreme Court has explained, in using the phrase "case or controversy," Congress intended to encompass all claims that "derive from a common nucleus of operative fact." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 165 (1997) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)). Under this standard, the Supreme Court has clarified that a single "case or controversy" may include claims by other litigants, *see Exxon Mobil Corp. v. Allapattah Services*, *Inc.*, 545 U.S. 546, 558-59 (2005), and may endure even after the original claims are severed or dismissed, *Osborn v. Haley,* 549 U.S. 225, 245 (2007). In this statutory context, the phrase "case or controversy" clearly encompasses the full duration of a civil action beyond individual decision points, including the resolution of discrete legal questions on appeal.

We also presume "that statutory language is not superfluous." *McDonnell v. United States*, 579 U.S. 550, 569 (2016) (quoting *Arlington Central School Dist. Bd. of Ed. v. Murphy*, 548 U.S. 291, 299, n.1 (2006). The Supreme Court has also emphasized the importance of the use of the disjunctive "or," as signaling that "the words it connects are to be given separate meanings." *Loughrin v. United States*, 573 U.S. 351, 357 (2014). Thus, the phrase "case or controversy" cannot be read simply to mean "case." To hold

otherwise, would be to write "or controversy" out of the statute.

Even leaving the phrase "or controversy" aside, as the majority order points out, the interpretation of a "case" as including subsequent appeals is consistent with other doctrinal rules, such as the law-of-the case doctrine, that treat subsequent appeals as part of the same "case." *See Pepper v. United States*, 562 U.S. 476, 506 (2011) (noting that law of the case applies to subsequent stages of the same case). Indeed, subsequent stages may include subsequent appeals, collateral attacks, *United States v. Jingles*, 702 F.3d 494, 499-500 (9th Cir. 2012), or "decisions of a coordinate court," *Christianson v. Colt Industries Operating Corp*., 486 U.S. 800, 816 (1988). Here, our Court is considering the same case that was presented all along. There was no new complaint filed or opened, the case that is returned to us is the same case we remanded.

Consistent with the governing statute and these principles, we adopted General Order 5.1(a)(4), which provides for senior judges who participated in the three judge panel decision to be eligible to be drawn for the en banc court, and also provides that "a senior judge who takes senior status while serving as a member of an en banc court may continue to serve until all matters pending before that en banc court, including remands from the Supreme Court, are finally disposed of." *Id.*

Thus, pursuant to the General Orders, a judge assuming senior status while a member of the en banc court continues to serve on the en banc court through all subsequent proceedings, including appeals considered after remand to the district court or agency, remands from the Supreme Court, and certifications to state courts. Maintaining the

composition of the en banc court through all proceedings assures consistency in judicial administration of the case. It is also consistent with the underlying en banc theory that the en banc court is substituted for the three judge panel. We do not, nor does any other Circuit, deem a judge on a three judge panel disqualified from sitting on the panel upon the assumption of senior status. We have consistently followed this procedure in practice. Examination of a few examples illustrates the point.

In *Murray v. BEJ Minerals, LLC*, 962 F.3d 485 (9th Cir. 2020) (en banc), the case returned to the en banc court after the Supreme Court of Montana decided the certified question. In the interim, Judge Bybee had taken senior status, but remained on the en banc court and participated in the ultimate opinion issued in the case.

In *Fue v. Biter*, 842 F.3d 650 (9th Cir. 2016) (en banc), the en banc court reversed the district court's judgment that a habeas petition was untimely. *Id.* at 657. In 2018, the same petitioner subsequently sought a certificate of appealability. The COA request received a new docket number, *Fue v. McEwen*, No. 18-55040, and the COA request was referred to the original en banc court. *See Fue v. McEwen*, No. 18-55040, Dkt. No. 5. In the interim, Judges Tallman and Clifton had assumed senior status. They remained on the en banc court, and participated in the decision as senior judges. *See* 2018 WL 3391609 (9th Cir. June 20, 2018) (en banc) (unpublished).

In *Feldman v. Az. Sec'y of State*, No. 16-16698, we voted to hear a preliminary injunction appeal en banc.**[12]** The

---

[12] On November 17, 2016, Judge N.R. Smith became unavailable to hear the case, and Judge Graber was drawn in his place.

DUNCAN V. BONTA 37

district court subsequently granted a final injunction, rendering the appeal moot. *See Feldman v. Az. Sec'y of State*, No. 16-16698, Dkt. No. 97. Thus, the en banc court dismissed the appeal, and the mandate issued. *See id.*; *see also Feldman v. Az. Sec'y of State*, No. 16-16698, Dkt. No. 99. After final judgment was entered, a new appeal was filed, which was given a new docket number, No. 18-15845. The new appeal was referred to the prior en banc court. *See Democratic Natl. Comm. v. Hobbs,* No. 18-15845, Dkt. No. 18; *see also Feldman v. Az. Sec'y of State*, No. 16-16698, Internal Docket Citation (Nov. 2, 2016). The Defendants filed a motion to refer the new appeal to the original three judge panel. *See Democratic Natl. Comm. v. Hobbs,* No. 18-15845, Dkt. No. 12. The en banc court elected to refer the new appeal to the original three judge panel, but the en banc court retained jurisdiction over any subsequent en banc hearing. *See Democratic Natl. Comm. v. Hobbs,* No. 18-15845, Dkt. No. 18.

The original three judge panel issued a new opinion affirming the district court's ruling. *See Democratic Nat'l Comm. v. Reagan*, 904 F.3d 686, 732 (9th Cir. 2018). The new opinion was subject to a successful en banc call, and was argued and submitted in March 2019 before the original en banc court. *See Democratic Natl. Comm. v. Hobbs,* No. 18-15845, Dkt. Nos. 68, Internal Docket Citation (Jan. 2, 2019), 104,; *see also Feldman v. Az. Sec'y of State*, No. 16-16698, Internal Docket Citation (Nov. 2, 2016).**[13]** Judges O'Scannlain and Clifton assumed senior status after the initial en banc draw, but before the new appeal was filed.

---

[13] Pursuant to General Order 5.1(b)(1), Judge Berzon was drawn to replace Judge Graber. *See Democratic Natl. Comm. v. Hobbs,* No. 18-15845, Dkt. No. 114.

*See Feldman v. Az. Sec'y of State*, No. 16-16698, Internal Docket Citation (Nov. 2, 2016); *Democratic Natl. Comm. v. Hobbs*, No. 18-15845, Dkt. No. 1. Judge Bybee assumed senior status after the new appeal was argued and submitted, but before the decision was issued. *See Democratic Natl. Comm. v. Hobbs*, No. 18-15845, Dkt. Nos. 104, 123. All three judges remained on the en banc court and participated in the new en banc decision. *Hobbs*, 948 F.3d at 989.

In *Sarei I*, the case was remanded to the district court. 550 F.3d at 852. A new appeal was taken after the district court acted. *See Sarei v. Rio Tinto PLC*, 650 F.Supp. 2d 1004 (C.D. Cal. 2009); *see also Sarei II*, 671 F.3d at 743. A new number was assigned to the new appeal.[14] *See Sarei v. Rio Tinto PLC*, No. 09-56381, Dkt., No.1. The case was returned to the en banc court, and a new opinion was issued. *Sarei II*, 671 F.3d at 742. In the interim, Judge Kleinfeld had assumed senior status, but remained on the en banc court.

In *Lombardo v. Warner*, 391 F.3d 1008 (9th Cir. 2004) (en banc), the en banc court certified a question to the Oregon Supreme Court. Judge Ferguson, who assumed senior status in 1986, was eligible to be drawn for the en banc court as a member of the three judge panel who heard the case, and was drawn to serve on the en banc court. *Lombardo v. Warner*, 353 F.3d 774 (9th Cir. 2003). Judge Tashima was eligible to be drawn for the en banc court, not as a senior circuit judge serving on the three judge panel, but as an active judge, and he was drawn for service on that basis. After the court voted to take the case en banc, but prior to argument, Judge Tashima assumed senior status. *Lombardo v. Warner*, No. 02-35269, Dkt. Nos. 49, 59.

---

[14] The *Sarei I* and *Sarei II* were subsequently consolidated. *See Sarei II*, No. 9-56381, Dkt. No. 10; *see also Sarei I*, No.02-56256, Dkt. No. 253.

Along with Judge Ferguson, Judge Tashima remained on the en banc panel through the issuance of the order regarding certification, and also remained on the en banc panel when the case returned from the Oregon Supreme Court. *See Lombardo v. Warner*, 391 F.3d 1008 (9th Cir. 2004) (en banc); *see also Lombardo v. Warner*, 481 F.3d 1135 (9th Cir. 2007) (en banc).

In *Eyak I*, the en banc court remanded the case to the district court, and the mandate issued. *Eyak I*, 375 F.3d, at 1219; *Eyak I*, No. 02-36155, Dkt. No. 66. The plaintiffs appealed the new district court decision. *Eyak II*, 688 F. 3d at 622. The new appeal was assigned a new docket number, but assigned to the original en banc court. *Eyak II*, No. 09-35881, Internal Docket Citation (June 21, 2011); *see also Eyak I*, No. 02-36155, Dkt. No. 44.[15] As noted previously, the en banc court initially decided to refer the new appeal to the three judge panel. *Eyak II*, No. 09-35881, Dkt. No. 33. However, after discussion and closer examination of the prior en banc order, the en banc court decided to retain jurisdiction and to decide the new appeal in the first instance. *Eyak II*, No. 09-35881, Dkt. No. 39. In between the mandate issuing in *Eyak I* and argument in *Eyak II*, Judge Kleinfeld assumed senior status. *Eyak II*, No. 09-35881, Dkt. No. 51; *see also Eyak I*, No. 02-36155, Dkt. No. 66. Judge Kleinfeld remained on the en banc court and participated in the decision. *Eyak II*, 688 F. 3d at 622.

In *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc), the en banc court dismissed an appeal for want of jurisdiction because the district court had not issued a final judgment. *Id*. at 1136–37. The order directing that

---

[15] Judge O'Scannlain was replaced by Judge Pregerson after Judge O'Scannlain was recused due to a change in counsel.

the case be reheard en banc was issued on September 26, 1996. *WMX Techs., Inc. v. Miller*, No. 93-55917, Dkt. No. 40. After the case was argued but before the decision was issued, Judge Noonan assumed senior status, but remained on the en banc court. *WMX Techs., Inc. v. Miller*, No. 93-55917, Dkt. Nos. 53, 58. Following the issuance of the mandate and remand to the district court, Judge Leavy took senior status. *See WMX Techs., Inc. v. Miller*, No. 93-55917 Dkt. No. 60. After the district court issued a final judgment on remand, the plaintiff again appealed. *See WMX Techs., Inc. v. Miller,* No. 97-55336, Dkt. No. 3. The new appeal was assigned a new docket number. *Id.* The original en banc court heard the new appeal, with senior Judges Noonan and Leavy participating in the new decision. *See WMX v. Miller*, 197 F.3d 367 (9th Cir. 1999) (en banc); *see also WMX Techs., Inc. v. Miller,* No. 97-55336, Dkt. No. 8.[16]

In *Detrich v. Ryan*, 740 F.3d 1237 (9th Cir. 2013) (en banc), the en banc court remanded the case to the district court. Once the district court proceedings concluded, the case returned to the same en banc court. *See Detrich v. Ryan*, No. 08-99001, Internal Docket Citation (Sept. 19, 2022).[17]

---

[16] The dissent asserts the *Fue*, *Miller*, and *Hobbs* are distinguishable from the facts here because the votes of the senior judges did not change the outcome of the appeal. The Rules and General Orders of our Circuit do not function in this outcome determinative fashion. We follow our established rules and procedures regardless of the outcome.

[17] On September 16, 2022, Chief Judge Murguia, in accordance with General Order 5.1(b)(1), instructed the calendar unit to draw replacements for Judges Pregerson and Reinhardt, who had died in the interim, and Judge Kozinski, who had fully retired. Judges S.R. Thomas, Owens, and Bade were drawn as replacements. On January 25, 2023, Judge Lee replaced Judge Watford after Judge Watford resigned from the Court. *See Detrich v. Thornell*, No. 08-99001, Internal Docket Citation (Jan. 25, 2023). This procedure was consistent with, and

In between the case being remanded to the district court and the amended notice of appeal being filed, Judges Graber, W. Fletcher, and Bea assumed senior status. *See Detrich v. Ryan*, No. 08-99001, Dkt. Nos. 177, 180. Judge S. R. Thomas assumed senior status after the new notice of appeal was filed. *See Detrich v. Ryan*, No. 08-99001, Dkt. No. 180. The appeal remains pending.

We have also retained judges on the en banc court when the judge assumed senior status after the en banc draw, a practice consistent with the governing statute and our General Orders. *See, e.g.*, *Price v. Stevedoring Services of America*, *Inc.*, 697 F.3d 820 (9th Cir. 2012) (en banc) (Judge Schroeder assumed senior status between the oral argument before the en banc court and the issuance of the opinion); *Lacey v. Maricopa Cnty.*, 693 F.3d 896 (9th Cir. 2012) (en banc) (Judge Schroeder assumed senior status between the oral argument before the en banc court and the issuance of the opinion); *Young v. Holder*, 697 F.3d 976 (9th Cir. 2012) (en banc) (Judge Schroeder assumed senior status between the oral argument before the en banc court and the issuance of the opinion); *Veterans for Common Sense v. Shinseki*, 678 F.3d 1013 (9th Cir. 2012) (en banc) (Judge Schroeder assumed senior status between the oral argument before the en banc court and the issuance of the opinion); *Ibrahim v.*

---

dictated by, our General Orders and Circuit Rules. *See* General Order 5.1(b)(1) ("If a judge becomes unavailable to sit on the en banc court by reason of death, disability, recusal, or retirement from the Court, a replacement judge shall be selected."); *see also* Circuit Rule 35-3 ("If a judge whose name is drawn for a particular en banc Court is disqualified, recused, or knows that he or she will be unable to sit at the time and place designated for the en banc case or cases, the judge will immediately notify the Chief Judge who will direct the Clerk to draw a replacement judge by lot.").

*Dep't of Homeland Sec.*, 912 F.3d 1147 (9th Cir. 2019) (en banc) (Judge N. R. Smith assumed senior status between the oral argument before the en banc court and the issuance of the opinion); *In re Sunnyslope Housing Limited Partnership*, 859 F.3d 637 (9th Cir. 2017) (en banc) (after the court voted to take the case en banc, but prior to argument, Judge O'Scannlain assumed senior status but remained on the en banc court through the decision); *Lowery v. City of San Diego*, 858 F.3d 1248 (9th Cir. 2017) (en banc) (after the court voted to take the case en banc, but prior to argument, Judge O'Scannlain assumed senior status but remained on the en banc court through the decision); *United States v. Ressam*, 679 F.3d 1069 (9th Cir. 2012) (en banc) (Judge Schroeder was drawn as an active judge, but assumed senior status after oral argument and prior to the decision being issued).

C

In addition, our General Orders provide that "[m]atters on remand from the United States Supreme Court will be referred to the last panel that previously heard the matter before the writ of certiorari was granted." Ninth Circuit General Order 3.6(a). Thus, we have followed the consistent practice of retaining judges on the en banc court who have assumed senior status after the filing of the writ of certiorari. *See, e.g.*, *Young v. Hawaii*, 45 F.4th 1087 (9th Cir. 2022) (en banc) (senior Judges O'Scannlain, W. Fletcher, Clifton, and Bybee participated on en banc court after Supreme Court remand);[18] Democratic National Committee v. Hobbs, 9 F.4th 1218 (9th Cir. 2021) (en banc) (senior Judges

---

[18] Judges O'Scannlain and Clifton had already assumed senior status when the en banc panel was drawn, but were members of the original three judge panel. *See Young v. Hawaii,* No. 12-17808, Dkt. 128.

O'Scannlain, Clifton, and Bybee participated on en banc court after remand); *Marinelarena v. Garland*, 992 F.3d 1143 (9th Cir. 2021) (en banc) (senior Judges Tashima and Bybee participated on the en banc court following remand);[19] *Rizo v. Yovino*, 950 F.3d 1217 (9th Cir. 2020) (en banc) (senior Judges Tallman and Bea participated on en banc court after remand);[20] *Sarei v. Rio Tinto, PLC*, 722 F.3d 1109, 1110 (9th Cir. 2013) (en banc) (senior Judges Schroeder and Kleinfeld remained on the en banc court after Supreme Court remand).[21]

## D

In addition, in accordance with the comeback provisions of the General Orders, Chief Judges have remained on subsequent en banc courts after their term as Chief has ended. This practice is consistent with, and dictated by, our General Orders. Our General Orders make clear that when matters return to our Circuit from either a remand from United States Supreme Court or where a new appeal is taken following a remand, the matter must return to the *same* en banc panel. Removing a former-Chief Judge from the panel would change the composition of the en banc panel and directly contradict our Circuit's General Orders. *See*

---

[19] Judge Tashima had already assumed senior status when the en banc panel was drawn, but was a member of the original three judge panel. *See Marinelarena v. Garland*, No. 14-72003, Dkt. 55.

[20] Judge Tallman assumed senior status before the initial en banc decision was issued. *See Rizo v. Yovino*, No. 16-15372, Dkt. No. 89. Judge Bea assumed senior status after the remand, but before the new decision was filed. *See Rizo v. Yovino*, 950 F.3d 1217 (9th Cir. 2020) (en banc).

[21] Judge Kleinfeld assumed senior status before the initial en banc decision was issued. *See Sarei II*.

General Order 3.6(a) ("Matters on remand from the United States Supreme Court will be referred to the *last panel* that previously heard the matter before the writ of certiorari was granted.") (emphasis added); *see also* General Order 3.6(b) ("Where a new appeal is taken following a remand or other decision by an en banc court, the Clerk's Office shall notify the en banc court that the new appeal is pending, and proceed only after hearing instructions from *that en banc court*.") (emphasis added).**22** *See e.g. McKinney v. Ryan*, 813 F.3d 798 (9th Cir. 2015) (en banc) (former Chief Judge Kozinski remained on en banc court after his term expired);**23** *Henry v. Ryan*, 775 F.3d 1112 (9th Cir. 2014) (en banc) (former Chief Judge Kozinski remained on en banc court after his term expired);**24** *U.S. v. Zepeda*, 792 F.3d 1103 (9th Cir. 2015) (en banc) (former Chief Judge Kozinski remained on en banc court after his term expired);**25** *Big Lagoon Rancheria v. California*, 789 F.3d 947 (9th Cir. 2015) (en banc) (former Chief Judge Kozinski remained on en banc court after his term expired);**26** *Maldonado v. Lynch*, 786

---

[22] It is also consistent with General Order 3.3.e, which provides that once a case has been assigned to a panel, "that panel shall have responsibility for all further proceedings in the case, unless it directs otherwise."

[23] Former Chief Judge Kozinski's term as Chief ended in between the vote to take the case en banc and the issuance of the opinion. *See McKinney v. Ryan,* No.9-99018, Dkt. Nos. 57, 114.

[24] Former Chief Judge Kozinski's term as Chief ended after the en banc panel was drawn, but before oral argument. *See Henry v. Ryan*, No. 09-99007, Dkt. Nos. 111,119.

[25] Former Chief Judge Kozinski's term as Chief ended between oral argument in front of the en banc court and the issuance of the opinion. *See United States v. Zepeda,* No.10-10131, Dkt. Nos. 145, 173.

[26] Former Chief Judge Kozinski's term as Chief ended between oral argument in front of the en banc court and the issuance of the opinion.

F.3d 1155 (9th Cir. 2015) (en banc) (former Chief Judge Kozinski remained on en banc court after his term expired);[27] *United States v. Bonds*, 784 F.3d 582 (9th Cir. 2015) (en banc) (per curiam)(former Chief Judge Kozinski remained on en banc court after his term expired);[28] *Arizona v. ASARCO LLC*, 773 F.3d 1050 (9th Cir. 2014) (en banc) (former Chief Judge Kozinski remained on en banc court after his term expired);[29] *Sarei II* (former Chief Judge Schroeder remained on en banc court after her term expired);[30] *Anderson v. Terhune*, 516 F.3d 781 (9th Cir. 2008) (en banc) (former Chief Judge Schroeder remained on en banc court after her term expired);[31] *Frantz v. Hazey*, 533 F.3d 724 (9th Cir. 2008) (en banc) (former Chief Judge Schroeder remained on en banc court after her term

---

*See Big Lagoon Rancheria v. California,* No.10-17803*,* Dkt. Nos. 111, 112.

[27] Former Chief Judge Kozinski's term as Chief ended between oral argument in front of the en banc court and the issuance of the opinion. *See Maldonado v. Lynch,* No. 09-71491*,* Dkt. Nos. 72, 76.

[28] Former Chief Judge Kozinski's term as Chief ended between oral argument in front of the en banc court and the issuance of the opinion. *See United States v. Bonds,* No. 11-10669*,* Dkt. Nos. 69, 74.

[29] Former Chief Judge Kozinski's term as Chief ended between oral argument in front of the en banc court and the issuance of the opinion. *See Arizona v. ASARCO LLC,* No. 11-17484*,* Dkt. Nos. 81, 82.

[30] Former Chief Judge Schroeder's term as Chief ended between oral argument in front of the en banc court and the issuance of the opinion. *See Sarei v. Rio Tinto,* No.02-56256*,* Dkt. Nos. 239, 247.

[31] Former Chief Judge Schroeder's term as Chief ended between oral argument in front of the en banc court and the issuance of the opinion. *See Anderson v. Terhune*, No.04-17237*,* Dkt. Nos. 91, 97.

expired);**32** *Bates v. United Parcel Service, Inc.*, 511 F.3d 974 (9th Cir. 2007) (en banc) (former Chief Judge Schroeder remained on en banc court after her term expired);**33** *Robinson v. Solano Cnty.*, 278 F.3d 1007 (9th Cir. 2002) (en banc) (former Chief Judge Hug remained on en banc court after his term expired);**34** *Idaho v. Horiuchi*, 253 F.3d 359 (9th Cir. 2001) (en banc) (former Chief Judge Hug remained on en banc court after his term expired);**35** *Lipscomb By and Through DeFehr v. Simmons*, 962 F.2d 1374 (9th Cir. 1992) (en banc) (former Chief Judge Goodwin remained on en banc court after his term expired);**36** *Redman v. Cnty. of San Diego*, 942 F.2d 1435 (9th Cir. 1991) (en banc) (former Chief Judge Goodwin remained on en banc court after his term expired);**37** *United States v. Anderson*, 942 F.2d 606 (9th Cir. 1991) (en banc) (former Chief Judge Goodwin

---

[32] Former Chief Judge Schroeder's term as Chief ended between oral argument before the en banc court and the issuance of the opinion. *See Frantz v. Hazey,* No. 05-16024*,* Dkt. Nos. 54, 59.

[33] Former Chief Judge Schroeder's term as Chief ended between oral argument before the en banc court and the issuance of the opinion. *See Bates v. United Parcel Service, Inc,* No. 04-17295*,* Dkt. Nos. 129, 136.

[34] Former Chief Judge Hug's term as Chief ended after the en banc panel was drawn, but before oral argument. *See Robinson v. Solano Cnty,* No. 99-15225*,* Dkt. No. 40, 53.

[35] Former Chief Judge Hug's term as Chief ended after the en banc panel was drawn, but before oral argument. *See Idaho v. Horiuchi,* No. 98-30149*,* Dkt. Nos. 79, 99.

[36] Former Chief Judge Goodwin's term as Chief ended between oral argument before the en banc panel, but before the issuance of the opinion.

[37] Former Chief Judge Goodwin's term as Chief ended between oral argument before the en banc panel, but before the issuance of the opinion.

DUNCAN V. BONTA                47

remained on en banc court after his term expired);**38** and
*Collazo v. Estelle*, 940 F.2d 411 (9th Cir. 1991) (en
banc) (former Chief Judge Goodwin remained on en banc
court after his term expired).**39**

III

Our procedures are consistent with the practices of other
circuits.**40** Our General Orders and Local Rules mirror those
adopted by our sister Circuits.**41** And those procedures have
been observed in practice.

---

[38] Former Chief Judge Goodwin's term as Chief ended after oral
argument before the en banc panel, but before the issuance of the
opinion.

[39] Former Chief Goodwin's term as Chief ended after oral argument
before the en banc panel, but before the issuance of the opinion.

[40] The Dissent asserts otherwise, but fails to cite a single case or rule
supporting that claim. The Dissent appears to rely exclusively on the fact
that our General Orders do not use the phrase "decision of a case or
controversy." As discussed in Section II.B, we agree that the "case or
controversy" language is important given it makes clear § 46(c) was
meant to encompass the full duration of a civil action beyond individual
decision points, including the resolution of discrete legal questions on
appeal. We drafted General Order 5.1(a)(4) consistent with § 46(c) and
these principles. Therefore, although the exact "case of controversy"
language may not appear in the General Orders, General Order 5.1(a)(4)
is consistent with the governing statute.

[41] *See*, *e.g.*, First Circuit Local Rule 40.0 (senior judges continue to
participate in the decision of a case or controversy that was heard or
reheard by the court en banc at a time when such judge was in regular
active service); Second Circuit Internal Operating Procedure 40.1
(same); Third Circuit Rule Internal Operating Procedure 9.6.4 ("Any
judge participating in an en banc poll, hearing, or rehearing while in
regular active service who subsequently takes senior status may elect to
continue participating in the final resolution of the case."); Fourth Circuit
Local Rule 40(e) (senior judges participate in the decision of a case or

Consistent with our procedure, the Seventh Circuit reheard en banc appellate case number 08-3770, and the en banc court decided the appeal. *United States v. Skoien*, 614 F.3d 638 (7th Cir. 2010) (en banc). After the en banc court had ruled and after the mandate had issued, the district court issued a new ruling, and the defendant filed a new appeal, which was given a new appellate case number, number 10-3023. The original en banc court, including Senior Judge Bauer,[42] accepted and decided the new appeal. *United States v. Skoien*, No. 10-3023, Dkt. No. 75 (7th Cir. Sept. 1, 2010) (order). The Seventh Circuit's practice, like ours, recognizes that Congress authorized senior judges to continue to serve on the en banc court in a comeback case, even though the mandate issued in the original appeal and a new appellate case number was assigned. *See United States v. Skoien*, No. 08-3770, Dkt. No. 38; *see also United States v. Skoien*, No. 10-3023, Dkt. No. 1.[43]

---

controversy that was heard or reheard by the en banc court at a time when the judge was in regular active service); Fifth Circuit Local Rule 40.2.6 (same); Eleventh Circuit Local Rule 40-10 (same); Federal Circuit Internal Operating Procedure 14.7 (same).

[42] Judge Bauer was on the original three judge panel. *See United States v. Skoien*, No. 08-3770, Dkt. No. 8.

[43] The Dissent asserts that according to the Seventh Circuit's Operating Procedures, successive appeals are automatically assigned to the three judge panel that heard the earlier appeal. However, the procedures, like ours, state "[b]riefs in a subsequent appeal in a case in which the court has heard an earlier appeal *will be sent to the panel that heard the prior appeal*." 7th Cir. Operating Procedures 6(b) (emphasis added); *see also* General Order 3.6(b) ("Where a new appeal is taken following a remand or other decision by an en banc court, the Clerk's Office shall notify the en banc court that the new appeal is pending, and proceed only after hearing instructions from *that en banc court*.") (emphasis added). The Seventh Circuit, however, further clarifies that "[c]ases that have been

In *United States v. Herrold*, 941 F.3d 173 (5th Cir. 2019) (en banc), the Fifth Circuit reheard a case en banc that had previously been decided en banc and remanded by the Supreme Court. *See United States v. Herrold*, 883 F.3d 517 (5th Cir. 2018) (en banc), vacated and remanded, 139 S. Ct. 2712 (2019). Senior Judge Clement, assumed senior status following the first en banc decision but prior to the remand. *Id.* Senior Judge Jolly assumed senior status after the oral argument but before the decision of the first en banc panel. *See United States v. Herrold*, No. 14-11317, Dkt. Nos. 220, 235. Both Judges remained on the en banc court and continued to participate in the case following remand. *See United States v. Herrold*, 883 F.3d 517 (5th Cir. 2018) (en banc).

In *United States v. Gonzalez-Longoria*, 893 F.3d 339 (5th Cir. 2018) (en banc), the Fifth Circuit ordered rehearing en banc of a case that was previously heard en banc and vacated by the Supreme Court. *See United States v. Gonzalez-Longoria*, 831 F.3d 670 (5th Cir. 2016) (en banc), vacated and remanded, 585 U.S. 1001 (2018). Senior Judges Davis, Jolly, and Clement, who were all members of the original en banc court and assumed senior status before the remand, continued to participate in the case following remand. *United States v. Gonzalez-Longoria*, 894 F.3d 1274 (5th Cir. 2018) (en banc).

In *Hernandez v. Mesa*, 885 F.3d 811 (5th Cir. 2018) (en banc), the Fifth Circuit en banc court reheard the case en

---

*heard by the court en banc are outside the scope of this procedure*, and *successive appeals* will be assigned at random *unless the en banc court directs otherwise*." *Id* (emphasis added). Therefore, the Seventh Circuit's Operating Procedures, like our own General Orders, allow for the en banc court to determine how to proceed following a successive appeal.

banc after remand from the Supreme Court. *See Hernandez v. United States*, 785 F.3d 117 (5th Cir. 2015) (en banc), vacated and remanded sub nom. *Hernandez v. Mesa*, 582 U.S. 548 (2017). In the interim, Judge Davis assumed senior status, but continued on the en banc court as a senior judge.

In *United States v. Unknown (In re Unknown)*, 754 F.3d 296 (5th Cir. 2014) (en banc) (per curiam), the Fifth Circuit reheard the case en banc after remand from the Supreme Court. *In re Amy Unknown*, 701 F.3d 749 (5th Cir. 2012) (en banc), vacated and remanded sub nom. *Paroline v. United States*, 572 U.S. 434 (2014), and cert. granted, judgment vacated sub nom. *Wright v. United States*, 572 U.S. 1083 (2014). Judge King assumed senior status prior to the remand. *Id.* Judge Garza assumed senior status after oral argument before the en banc court, but before the initial en banc decision was issued. *United States v. Unknown (In re Unknown)*, No. 09–41238, Dk. Nos. 310, 334. Both Judges continued to participate in the case before the en banc court as senior judges.

In *Carcieri v. Kempthorne*, 497 F.3d 15 (1st Cir. 2007) (en banc), Judge Selya assumed senior status while the en banc case was pending, and remained on the en banc court as a senior judge. *See Carcieri v. Kempthorne*, No. 03-2647, Dkt. (Dec. 05, 2006); Dkt. (Jan. 09, 2007). The Supreme Court reversed. *Carcieri v. Salazar*, 555 U.S. 379 (2009). On remand from the Supreme Court, senior Judge Selya participated in the subsequent en banc proceedings. *See* No. 03-2647, Dkt. (April 1, 2009) (judgment).

In *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359 (Fed. Cir. 2003) (en banc), the Federal Circuit reheard a case en banc that it had previously heard en banc, but had been vacated by the Supreme Court. *Festo*

*Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 234 F.3d 558 (Fed. Cir. 2000) (en banc), vacated, 535 U.S. 722 (2002). In the interim, Judge Plager had assumed senior status in 2000, but remained on the en banc court. *Id.*

In *Hoffman Plastic Compounds, Inc. v. N.L.R.B.*, 237 F.3d 639, 640 (D.C. Cir. 2001) (en banc), Judge Silberman assumed senior status, November 1, 2000, during the pendency of the initial en banc proceedings. Judge Williams assumed senior status on September 30, 2001. The Supreme Court reversed. *Hoffman Plastic Compounds, Inc. v. N.L.R.B.*, 535 U.S. 137 (2002). Senior Judges Silberman and Williams continued to participate in the post-remand en banc proceedings. *See Hoffman Plastic Compounds, Inc. v. N.L.R.B.*, 2002 WL 1974028 (D.C. Cir. Aug. 27, 2002) (en banc) (unpublished).

In *Consolidated Gas Co. v. City Gas Co.*, 931 F.2d 710 (11th Cir. 1991) (en banc), the Eleventh Circuit reheard a case vacated by the Supreme Court. *Consolidated Gas Co. v. City Gas Co.*, 912 F.2d 1262 (11th Cir. 1990) (en banc), cert. granted, judgment vacated, 499 U.S. 915 (1991). Judges Roney and Morgan had participated in the earlier en banc proceedings as members of the three judge panel. *See Consol. Gas Co. of Fla. v. City Gas Co. of Fla.*, 880 F.2d 297 (11th Cir. 1989). Judge Morgan was already senior status when he served on the three judge panel. Judge Roney was Chief when he served on the three judge panel and assumed senior status before the first en banc decision was issued. Both Judges continued to participate in the remanded case.

## IV

In sum, the majority is entirely correct that 18 U.S.C. § 46(c) authorizes courts of appeals to hear cases and

controversies en banc, and further authorizes a judge who assumes senior status after the en banc court is composed to continue to participate on the en banc court—as part of the continuing case or controversy—on a new appeal after remand to the district court or agency, or upon remand from the Supreme Court. It is telling that the Dissent fails to cite any authority that would lead to contrary conclusion: not one case; not a single rule.

The Supreme Court has underscored that § 46(c) is a grant of power to the courts of appeals, and "that the statute does not compel the court to adopt any particular procedure governing the exercise of the power . . . ." *W. Pac. R.R. Corp*, 345 U.S. at 267. Our procedure follows the Supreme Court dictate to provide an en banc process that "makes for more effective judicial administration," avoids inter-circuit conflicts, and promotes "[f]inality of decision in the circuit courts of appeal." *Textile Mills Sec. Corp.*, 314 U.S. at 334-35. A contrary rule would sow inconsistency in appellate decision-making and thwart the purpose of rehearing en banc in order that a Circuit "secure uniformity and continuity in its decisions." *American-Foreign S.S. Corp.*, 363 U.S. at 690.

The clear grant of authority in the current version of § 46(c), coupled with the Supreme Court's directive that each Circuit develop its own procedures to implement the en banc process, should end the discussion. Our consistent practice of applying the applicable rules in accordance with the governing statute, over many decades and countless cases, bolsters that conclusion.

IKUTA, Circuit Judge, specially concurring:

Our General Order 3.6 is a strained interpretation of 28 U.S.C. § 46(c), and should be revisited by the Ninth Circuit to ensure better harmony with Congress's language and intent. But because General Order 3.6 is not contrary to the statute, I reluctantly concur in today's order.

The question whether an en banc panel of this court can include judges who have taken senior status can be best determined by viewing § 46(c) historically. In 1960, § 46(c) provided that:

> Cases and controversies shall be heard and determined by a court or division of not more than three judges, unless a hearing or rehearing before the court in banc is ordered by a majority of the circuit judges of the circuit who are in active service. A court in banc shall consist of all active circuit judges of the circuit.

28 U.S.C. § 46(c) (1958); *United States v. Am.-Foreign S. S. Corp.*, 363 U.S. 685, 685 (1960) (quoting same).

The Supreme Court determined that a judge who took senior status under 28 U.S.C. § 371(b) (referred to as "retired" throughout the opinion) was ineligible to participate in an en banc decision. *Am.-Foreign*, 363 U.S. at 691. "The view that a retired circuit judge is eligible to participate in an en banc decision thus finds support neither in the language of the controlling statute nor in the circumstances of its enactment." *Id.* at 689. Rather, en banc courts are "convened only when extraordinary circumstances exist that call for authoritative consideration

and decision by those charged with the administration and development of the law of the circuit." *Id.* According to the Court, "the evident policy of [§ 46(c)] was to provide 'that the active circuit judges shall determine the major doctrinal trends of the future for their court.'" *Id.* at 690 (quoting *Am.-Foreign S.S. Corp. v. United States*, 265 F.2d 136, 155 (2d Cir. 1958) (statement of C.J. Clark), *vacated sub nom. United States* v. *Am.-Foreign S. S. Corp.*, 363 U.S. 685 (1960)).

Notwithstanding this conclusion, the Court added that "[p]ersuasive arguments could be advanced that an exception should be made to permit a retired circuit judge to participate in en banc determination of cases" in certain unique situations, such as where a senior judge "took part in the original three-judge hearing, or where, as here, he had not yet retired when the en banc hearing was originally ordered." *Id.* The Court further noted that "the Judicial Conference of the United States has approved suggested legislative changes that would provide such an exception, and a bill to amend the statute has been introduced in the Congress." *Id.*

In 1963, Congress adopted the Supreme Court's and the Judicial Conference's approach, Act of Nov. 13, 1963, Pub. L. No. 88-176, 77 Stat. 331, which is still present in the statute before us. After further amendment, § 46(c) now states that:

> A court in banc shall consist of all circuit judges in regular active service . . . except that any senior circuit judge of the circuit shall be eligible (1) to participate, at his election and upon designation and assignment . . . as a member of an in banc

DUNCAN V. BONTA                55

> court reviewing a decision of a panel of
> which such judge was a member, or (2) to
> continue to participate in the decision of a
> case or controversy that was heard or reheard
> by the court in banc at a time when such judge
> was in regular active service.

28 U.S.C. § 46(c).

Given that Congress added this language in the wake of *American-Foreign*, we can readily infer that Congress intended to allow senior judges to participate on en banc panels in only limited circumstances, specifically when the senior judge "took part in the original three-judge hearing," or where the senior judge had been active "when the en banc hearing was originally ordered" and then participated in the decision of the case. *Am.-Foreign S.S. Corp.*, 363 U.S. at 690. Any broader reading of § 46(c) would be in tension with the Court's concern that an en banc opinion should show the "authoritative consideration and decision by those charged with the administration and development of the law of the circuit," and that active circuit judges would "determine the major doctrinal trends of the future for their court," *id.* at 689, 690 (internal quotation omitted).

But the Ninth Circuit has interpreted § 46(c) broadly. Our General Orders hold that "[w]here a new appeal is taken following a remand or other decision by an en banc court," the en banc court may keep the case, and may retain "jurisdiction over any future en banc proceedings." 9th Cir. Gen. Ord. 3.6(b). Therefore, "[i]f the en banc panel so elects, a new en banc court will not be drawn from the eligible pool of judges at the time of future proceedings." *Id.* By adopting this strained interpretation of § 46(c), the Ninth Circuit allows the en banc panel that was originally formed at the

time the then-active circuit judges took a vote to retain control of any new appeal. This grandfathered en banc panel can thus avoid any vote by a majority of the active judges as to whether the new appeal should be heard en banc. It also means that the grandfathered en banc panel—which may be composed of any number of senior judges—may decide the appeal of a new opinion issued by a district court, long after the original decision of the en banc panel has been vacated.

That is the situation in this case. A vote to rehear the original three-judge panel decision took place in 2021. *Duncan v. Becerra*, 988 F.3d 1209 (9th Cir. 2021). After a decision issued, *Duncan v. Bonta*, 19 F.4th 1087 (9th Cir. 2021) (en banc), the Supreme Court vacated the judgment in 2022 and returned it to the Ninth Circuit. *Duncan v. Bonta*, 142 S. Ct. 2895 (2022). The en banc panel then remanded the case to the district court and issued our mandate. *Duncan v. Bonta*, 49 F.4th 1228 (9th Cir. 2022) (en banc). The district court issued a new opinion. *Duncan v. Bonta*, 695 F. Supp. 3d 1206 (S.D. Cal. 2023). On appeal of the district court opinion, the en banc panel (now with five senior judges) sidestepped the normal assignment to a three-judge panel, and took the new decision as an en banc case, without a vote, in October 2023. *Duncan v. Bonta*, 83 F.4th 803, 807 (9th Cir. 2023) (en banc). Thus, without a vote of active judges to take the district court decision en banc, the 2021 en banc panel—with five senior judges—decided to "determine the major doctrinal trends of the future for their court." *Am.-Foreign*, 363 U.S. at 690 (internal quotation omitted). Even if these procedural steps fall within the language of General Order 3.6(b), they stray far from the spirit of § 46(c), as detailed in *American-Foreign*.

Even if § 46(c) is susceptible to the interpretation provided in our General Orders, we should agree it is not the

best interpretation of this statute, in light of the history and purpose of an en banc consideration. Under a narrower reading, the text of § 46(c) can reasonably be construed as allowing a judge who takes senior status during deliberations by the en banc panel to continue participating in a decision issued by the en banc panel. But such judge may no longer participate after the decision is published (or the mandate has issued), regardless whether the decision is subsequently vacated by the Supreme Court or remanded to the district court. Under a reasonable construction of § 46(c), the senior judge is no longer "continu[ing] to participate" in the same decision, 28 U.S.C. § 46(c), and active judges should be taking the lead in securing "uniformity and continuity" in the Ninth Circuit's case law. *Am.-Foreign*, 363 U.S. at 690.

Our en banc panels should reflect the decisions of active judges who are tasked with the administration and development of the law of the circuit, and it is the active judges who should "determine the major doctrinal trends of the future for their court," *Am.-Foreign*, 363 U.S. at 690 (internal quotation omitted). With that goal in mind, I would revisit and revise our current General Order 3.6 to make it more consistent with congressional intent.[1]

---

[1] The dispute about our past procedures, *see generally* S. Thomas Concurrence, R. Nelson Dissent, further supports taking a fresh look at § 46(c) and revising our General Orders.

R. NELSON, Circuit Judge, dissenting:

The majority erroneously interprets 28 U.S.C. § 46(c) to allow a limited en banc court to exercise permanent control of a case after it issues "the decision," remands to the district court, and issues the mandate. The Ninth Circuit stands alone in this strained interpretation. Every other circuit applies § 46(c) to require a new en banc vote after remand. And for good reason. That is the only interpretation of § 46(c) consistent with the statutory requirements that a majority of all active judges vote to take a new appeal en banc and only active judges serve on the en banc court (with exceptions for senior judges not satisfied here).

The majority's interpretation frustrates the purpose of the en banc process. It allows a future appeal to bypass the statutory en banc voting process and proceed to an en banc court not representative of the active judges on the court as it excludes new active judges who joined the court since the prior remand. No other court has ever allowed this to happen. Our limited en banc process, as authorized by Congress, does not permit this perverse result. To be sure, Congress has allowed senior judges in limited circumstances to sit en banc *in addition* to the court's active judges. But the majority's interpretation turns Congress's statutory exception on its head and injects senior judges *in lieu* of active judges. That is plainly contrary to the statutory language.

Judge S.R. Thomas argues that our procedure here is permissible because the Supreme Court has vested us with "discretion to determine the means by which the en banc process [is] administered." S.R. Thomas Concurrence at 23. But it should go without saying that we lack discretion to

violate a statute.  The cases he cites make this clear.**[1]**  In *Moody v. Albemarle Paper Co.*, the Supreme Court struck a Fourth Circuit procedure allowing senior judges who were members of the original three-judge panel to vote on whether to hear the case en banc.  417 U.S. 622, 623–24 (1974) (per curiam).  Why?  Because that procedure violated § 46(c).  *Id.* at 627.  In *Shenker v. Baltimore & Ohio Railroad Co.*, the Court blessed a Third Circuit rule requiring an absolute majority vote of the active judges to take a case en banc.  374 U.S. 1, 4–5 (1963).  That common practice is expressly required by § 46(c).  And in 1994, the Seventh Circuit held that certain senior judges could not participate in an en banc case because it was barred under § 46(c).  *United States v. Hudspeth*, 42 F.3d 1013, 1014–15 (7th Cir. 1994) (en banc).  In response, Congress amended § 46(c) in 1996 to clarify senior judge participation in situations not applicable here.

Thus, Judge S.R. Thomas's suggestion that the Supreme Court has blessed our improper application of § 46(c) is wrong.  The Supreme Court has never endorsed, and § 46(c) does not permit, the several statutory violations we committed here: (1) allowing less than the full court to vote to rehear a new appeal en banc; (2) allowing senior judges to vote to rehear a new appeal en banc; and (3) allowing senior judges at the time of the new appeal to participate in the new appeal.

Indeed, as Judge S.R. Thomas's comprehensive research makes clear, no other court has ever applied § 46(c) in this way.  Of the 460 en banc cases since 1996, Judge S.R.

---

[1] Judge S.R. Thomas asserts that I "only cite[] cases involving prior versions of § 46(c), which are not applicable here."  S.R. Thomas Concurrence at 22 n.1.  He then bizarrely relies on the *same* cases to convey half-truths about how the Supreme Court has interpreted § 46(c).

Thomas can point to only five (just one percent) where the Ninth Circuit has previously violated some aspect of § 46(c). *See* S.R. Thomas Concurrence at 25 n.5. Those five cases are all distinguishable and far less egregious than the violations here. In one of them, the en banc court did not proceed to decide the new appeal after the mandate issued and a new appeal was filed. In the other cases, the procedural error was harmless because the decision to proceed en banc was not outcome determinative of the case. So any insinuation that our procedure here is either authorized by § 46(c) or consistent with our court's prior practice is false and misleading.

What's more, the majority's decision is not even supported by a majority of active judges on the panel. And it is the active judges—or those senior judges who were on the three-judge panel—who are empowered by statute to make en banc decisions for the court. This en banc court lacks statutory jurisdiction to proceed without a new en banc vote and a new panel composition that reflects the current active judges of the court. I dissent.

I

In 2017, Plaintiffs filed a complaint alleging that California's "large-capacity magazine" ban violated their rights under the Second Amendment and the Takings Clause. *See* Cal. Penal Code § 32310. Shortly before the ban was to take effect, Plaintiffs sought a preliminary injunction to maintain the status quo and prevent California from enforcing the law. *Duncan v. Becerra*, 265 F. Supp. 3d 1106, 1112–13 (S.D. Cal. 2017). The district court enjoined § 32310, holding that Plaintiffs were likely to succeed on the merits. *Id.* at 1115–36.

California took an interlocutory appeal. That appeal was assigned to an initial three-judge panel, which affirmed.[2] *Duncan v. Becerra*, 742 F. App'x 218, 220 (9th Cir. 2018).

Later, the district court granted summary judgment to Plaintiffs and permanently enjoined enforcement of California's law. *Duncan v. Becerra*, 366 F. Supp. 3d 1131 (S.D. Cal. 2019), *aff'd*, 970 F.3d 1133 (9th Cir. 2020), *reh'g en banc granted*, *vacated*, 988 F.3d 1209 (9th Cir. 2021). California again appealed, and a different three-judge panel affirmed.[3] *Duncan v. Becerra*, 970 F.3d 1133, 1169 (9th Cir. 2020). California petitioned for rehearing by the en banc court.

Title 28 U.S.C. § 46 governs what happens next. For a case to be "heard or reheard" en banc, a majority of the court's active judges must agree. 28 U.S.C. § 46(c); *see* 9th Cir. Gen. Order 5.5(d). When California first sought rehearing in 2020, a majority of the then-active judges voted to take this case en banc.

An en banc court typically "consist[s] of all circuit judges in regular active service." 28 U.S.C. § 46(c). But the Ninth Circuit is different. Congress has allowed any court with 15 or more active judges to choose a smaller en banc panel. *See* Pub. L. No. 95-486, § 6, 92 Stat. 1629, 1633 (1978). Because our court has 29 active judges, we use an 11-member limited en banc court consisting of the Chief Judge and ten other judges drawn at random. 9th Cir. R. 40-3. The Clerk's Office drew a limited en banc panel including then-Chief Judge S.R. Thomas and ten randomly chosen

---

[2] None of the judges on that first panel served on the en banc court.

[3] Again, none of the judges on this second panel served on the en banc court.

judges—all active judges at the time. In a decision that generated six opinions, the divided en banc court reversed and remanded for entry of judgment for California. *Duncan v. Bonta*, 19 F.4th 1087, 1113 (9th Cir. 2021) (en banc).

Plaintiffs sought certiorari. While the petition was pending, the Supreme Court decided *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022). In *Bruen*, the Court announced a new framework for evaluating Second Amendment claims, one that "is consistent with the Nation's historical tradition of firearm regulation." 597 U.S. at 24. Soon after, the Supreme Court granted Plaintiffs' petition, vacated our en banc decision, and remanded for additional consideration under *Bruen*. *Duncan v. Bonta*, 142 S. Ct. 2895 (2022). The en banc court, in turn, remanded the case to the district court for further proceedings consistent with *Bruen*. *Duncan v. Bonta*, 49 F.4th 1228, 1231 (9th Cir. 2022) (en banc). That "order constitute[d] the mandate of this court." *Id.* at 1232.

After remand, the district court again enjoined § 32310. *Duncan v. Bonta*, 695 F. Supp. 3d 1206, 1255 (S.D. Cal. 2023). And again, California appealed.

Here is where things go wrong. Rather than allow the new appeal to proceed to the three-judge panel, the en banc court from the first appeal voted to reclaim jurisdiction under General Order 3.6(b). That internal rule says that "[w]here a new appeal is taken following a remand or other decision by an en banc court, . . . [t]he en banc court will decide whether to keep the case or to refer it to the three judge panel." 9th Cir. Gen. Order 3.6(b). By the time the en banc court voted to keep the case, the status of its members had changed dramatically. The en banc court was no longer comprised of eleven active judges. Before this new appeal

was filed, five active judges on the prior en banc court took senior status.**[4]** Thus, the decision to "hear[] or rehear[]" this new appeal en banc was made by senior judges who are statutorily prohibited from voting on that decision. *See* 28 U.S.C. § 46(c).

The court's active judges were not permitted to vote on that decision, as § 46(c) and our rules require. *See id.* ("hearing or rehearing" before the en banc court may only be "ordered by a majority of the circuit judges of the circuit who are in regular active service"); 9th Cir. Gen. Order 5.1(a)(3) (similar). Worse, seven new active judges had joined the Ninth Circuit since we took the prior appeal en banc.**[5]** Those active judges—who are set to serve for decades—were given no say in the matter.

The en banc court then, by a vote of 7-4, stayed the district court's injunction. *Duncan v. Bonta*, 83 F.4th 803, 807 (9th Cir. 2023) (en banc). Judge Bumatay, joined by three other judges, dissented on the merits. *Id.* at 808–23 (Bumatay, J., dissenting). I also dissented, finding that the en banc court likely lacked statutory jurisdiction over this new appeal. *Id.* at 807–08 (R. Nelson, J., dissenting).

We asked the parties to brief whether the en banc court has jurisdiction under § 46(c). California argued that § 46(c) and our General Orders permit the process here. Plaintiffs instead argued that § 46(c) and Supreme Court precedent

---

[4] Senior Judge Paez assumed senior status on December 13, 2021; Senior Judge Graber assumed senior status on December 15, 2021; Senior Judge Berzon assumed senior status on January 23, 2022; Senior Judge Hurwitz assumed senior status on October 3, 2022; and Senior Judge S.R. Thomas assumed senior status on May 4, 2023.

[5] They include Judge Koh, Judge Sung, Judge Sanchez, Judge H.A. Thomas, Judge Mendoza, Judge Desai, and Judge Johnstone.

"make clear that this en banc panel lacks statutory authority to decide this case." Plaintiffs explained that § 46(c) places the gatekeeping function of the en banc process with the court's active judges, which requires that a vote of all active judges be held before an appeal can proceed en banc. Amicus curiae Gun Owners of America, Inc., joined by several other gun rights organizations, agreed, concluding that "[i]t was error to have the en banc panel of the prior appeal [] vote to determine whether the new appeal [] should be heard initially en banc."

The en banc court now reverses the district court's injunction and enters judgment instead for California. Maj. Op. at 13. It does so despite lacking statutory jurisdiction over this case. No new vote by the active judges of the court was taken when the appeal was filed—thus disenfranchising seven new active judges. That decision was unprecedented. But the problem was only exacerbated. The en banc court now includes five senior judges who are not eligible to participate in the new appeal. All five of these judges were in senior status after our en banc court's prior decision, remand, and mandate. They were thus senior judges when this new appeal was filed and none served on either prior three-judge panel. As a result, the majority's decision excludes seven of our new active judge colleagues and ignores the statutory justifications for en banc review.

II

Congress has the power to define the jurisdiction of federal courts. *Patchak v. Zinke*, 583 U.S. 244, 252 (2018). This includes the process by which federal courts may rule on the merits of a case. *See, e.g.*, *Ankenbrandt v. Richards*, 504 U.S. 689, 697–98 (1992) (Congress has the "sole power" to confer jurisdiction on federal courts "in the exact degrees

and character which to Congress may seem proper for the public good" (citation omitted)).  Statutory limitations on our jurisdiction "must be neither disregarded nor evaded," because if we lack power to hear a case, any decision issued is invalid.  *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978).

In *Textile Mills Securities Corp. v. Commissioner of Internal Revenue*, the Supreme Court held for the first time that federal courts of appeals have the power to convene themselves en banc.  314 U.S. 326, 334–35 (1941).  Section 46(c)—enacted in 1948—is a "legislative ratification" of that decision.  *W. Pac. R.R. Corp. v. W. Pac. R.R. Co.*, 345 U.S. 247, 250 (1953).  It is a "grant of power to order hearings and rehearings en banc."  *Id.* at 267.  Thus, courts lack power over en banc proceedings outside § 46(c)'s parameters.

Originally, § 46 limited en banc panels to all "active circuit judges."  28 U.S.C. § 46 (1948).  Senior judges were categorically excluded.  More, all active judges *had* to participate; a circuit court could not choose a limited en banc.  Today's version of § 46 stems from two amendments—one in 1963 and another in 1996.  Each amendment answered a different question about the composition of the en banc court.  A brief history is critical to understand the modern version of § 46.

A

The first question concerned when senior judges could participate in en banc proceedings, if at all.  In 1960, the Supreme Court held that the original version of § 46 barred senior judges from participating in an en banc case the moment they took senior status.  *United States v. Am.-Foreign S. S. Corp.*, 363 U.S. 685, 685–86 (1960),

*superseded by statute* 28 U.S.C. § 46(c) (1963). "Congress may well have thought that it would frustrate a basic purpose of the legislation not to confine the power of en banc decision to the permanent active membership of a Court of Appeals." *Id.* at 689. After all, "[e]n banc courts are the exception, not the rule." *Id.* The Court acknowledged that there may be "[p]ersuasive arguments" for why senior judges should participate on some en banc panels, such as when they "took part in the original three-judge hearing." *Id.* at 690. But the Court declined to expand § 46's meaning based on policy. Any revisions, the Court explained, must be left to Congress. *Id.* at 690–91.

Congress answered that call in 1963 by amending § 46 to allow senior judges to sit on the en banc court in one limited instance: if they served on the original three-judge panel. 28 U.S.C. § 46 (1963). The 1963 amendment allowed senior judges to participate *in addition* to all the active judges. *See id.* (a senior judge "shall *also* be competent to sit as a judge of the court in banc in the rehearing of a case or controversy if he sat in the court or division at the original hearing thereof" (emphasis added)). It did not allow senior judges to participate in lieu of other active judges. That exception does not apply here since none of the senior judges on the en banc court served on either three-judge panel.

### B

The second question concerned a circuit split on whether a judge who took senior status after hearing the en banc argument could still participate in the en banc decision. In *United States v. Cocke*, the Fifth Circuit held in a footnote that § 46(c) allows a judge to participate in an en banc decision even if they took senior status after oral argument.

399 F.2d 433, 435 n.a1 (5th Cir. 1968) (en banc). The court relied on a previous decision that underscored "the work, research, study and deliberation done earlier by the Senior Circuit Judge." *Allen v. Johnson*, 391 F.2d 527, 529 (5th Cir. 1968) (en banc). Excluding senior judges from en banc decisions, the court reasoned, would have "wasteful consequences." *Id.* at 530.

The Seventh Circuit took a different approach in *United States v. Hudspeth*. As in *Cocke*, a judge who was active when the case was heard en banc took senior status before the en banc decision. The *Hudspeth* court acknowledged *Cocke* but concluded that "[t]he statute is crystal clear in confining en banc participation by senior judges to participants in the [original] panel decision." 42 F.3d at 1015. Put differently, the then-governing version of § 46 did not allow a judge who was active during the en banc argument (and who did not sit on the original three-judge panel) to remain on the en banc court after assuming senior status. The Seventh Circuit recognized, however, that the plain text undercut the purported justifications for permitting senior judge participation on the en banc court. *Id.* ("[W]e cannot think of any rationale . . . for the disqualification of a judge who has taken senior status between the argument and decision of a case en banc."). But because "judges should be reluctant to exempt themselves from plain statutory commands," the court left any "corrective legislation" to "the appropriate committees of Congress." *Id.*

Two years later, in 1996, Congress resolved the circuit split by amending § 46(c) to its current form. In response to *Hudspeth*, Congress enacted the limited exception at the heart of this dispute: senior judges can "continue to participate in the decision of a case or controversy that was

heard or reheard by the court in banc at a time when such judge was in regular active service." 28 U.S.C. § 46(c).

### C

Congress also addressed the size of the en banc court. Under the original language, every en banc court consisted of all active judges on the circuit. 28 U.S.C. § 46 (1948). Circuits could not compose an en banc court of fewer than all active judges, even if it were more efficient. Only Congress could permit a limited en banc court, and in the original statute, it did not.

Then Congress enacted the Omnibus Judgeship Act of 1978. Pub. L. No. 95-486, § 6, 92 Stat. 1629. That law allows circuits with more than 15 authorized judgeships to "perform its en banc function by such number of [judges] as may be prescribed by rule of the court of appeals." *Id.* at 1633. Congress incorporated this grant of power into § 46(c), which now reads, "[a] court in banc shall consist of all circuit judges in regular active service, or such number of judges as may be prescribed in accordance with [the Omnibus Judgeship Act]." Courts authorized to conduct limited en banc proceedings include the Ninth, Fifth, and Sixth Circuits.

In 1980, the Ninth Circuit adopted a limited en banc procedure. Our rules say that "[t]he en banc Court . . . shall consist of the Chief Judge of this circuit and 10 additional judges to be drawn by lot from the active judges and any eligible senior judges of the Court." 9th Cir. R. 40-3. Although a case can be reheard en banc by the full 29-member court, we have never voted to do so. *See id.*

DUNCAN V. BONTA                                69

* * *

In short, although all active, non-recused judges on the Ninth Circuit vote on whether to take a case en banc, only eleven currently will serve on the en banc court. Section 46(c) makes clear that en banc cases "shall be heard and determined" by a court consisting entirely of active judges, unless one of two narrow exceptions applies. First, a senior judge may sit on the en banc court if they are "reviewing a decision of a panel of which such judge was a member." 28 U.S.C. § 46(c). Or, second, if they are "continu[ing] to participate in the decision of a case or controversy that was heard or reheard by the court in banc at a time when such judge was in regular active service." *Id.*

### III

The majority's decision to bypass a new en banc vote in this new appeal and instead keep the prior en banc court violates § 46(c). We "heard and determined" this case when we issued "the decision" remanding for post-*Bruen* deliberations in an order that "constitute[d] the mandate of this court." 28 U.S.C. § 46(c); *Duncan*, 49 F.4th at 1232. At that moment, the en banc court's jurisdiction—which the Supreme Court has recognized as the "exception"— terminated. *See Am.-Foreign*, 363 U.S. at 689. The active judges needed to conduct a new vote before hearing this new appeal en banc. And that vote needed to include the seven active judges who joined our court in the interim. That is the normal process in every other circuit. And it tracks § 46(c). That did not happen.

Instead, the en banc court plowed ahead with five senior judges who cannot sit on this en banc court to hear the new appeal. The two narrow exceptions in § 46(c) do not apply: none of the five senior judges on the en banc court sat on

either three-judge panel, nor could they "continue to participate" in a "decision" that had already occurred. The result? Five of the seven judges in the majority—nearly a majority of the en banc court—are ineligible to hear this case.

Yet the majority insists that we still have jurisdiction over this appeal. That conclusion departs from Supreme Court precedent, the text and history of § 46(c), and the statutory purpose of the en banc process.

A

All "[c]ases and controversies shall be heard and determined" by either a three-judge panel or an en banc court. 28 U.S.C. § 46(c). "A case or controversy is 'determined' when it is decided." *Am.-Foreign*, 363 U.S. at 688. We decided this case when we issued "the decision" remanding to the district court. That decision— accompanied by a mandate—severed the en banc court's jurisdiction.

The Supreme Court reinforced that a case is "determined" when it is "decided" in *Yovino v. Rizo*, 586 U.S. 181 (2019) (per curiam). There, the Court considered whether Judge Reinhardt's vote could be counted toward an en banc decision filed eleven days after he passed away. *Id.* at 182–83. The Ninth Circuit included Judge Reinhardt's vote, which was outcome determinative, because "the votes and opinions in the en banc case were inalterably fixed at least 12 days prior to the date on which the decision was 'filed,' entered on the docket, and released to the public." *Id.* at 184. The Supreme Court disagreed, rejecting that view as "inconsistent with well-established judicial practice, federal statutory law, and judicial precedent." *Id.* The Court reiterated *American-Foreign*'s pronouncement that "[a] case

DUNCAN V. BONTA                    71

or controversy is 'determined' when it is decided," meaning the time of "public release," and so Judge Reinhardt's vote could not be counted. *Id.* at 184–85 (quoting *Am.-Foreign*, 363 U.S. at 688).

Other clues confirm that a case is "determined" when it is "decided." First, senior judges may only "continue to participate in *the decision* of a case or controversy." 28 U.S.C. § 46(c) (emphasis added). Second, Congress added the disputed language in § 46(c) to solve a circuit split on a different question: whether a judge who takes senior status after en banc argument can participate in deciding *the same appeal*. Third, § 46(c) only allows a senior judge to participate in "the decision" if it "was *heard or reheard* by the court in banc *at a time when such judge was in regular active service*." *Id.* (emphasis added).

1

The term "the decision" in § 46(c) is undefined. So we start with its common-law meaning. *See United States v. Castleman*, 572 U.S. 157, 162 (2014) ("It is a settled principle of interpretation that, absent other indication, Congress intends to incorporate the well-settled meaning of the common-law terms it uses." (cleaned up)). The common-law meaning of "decision" in the late 1990s, when Congress enacted the disputed portion of § 46(c), was a "ruling, order, or judgment pronounced by a court when considering or disposing of a case." *Decision*, Black's Law Dictionary (7th ed. 1999). "Decision," then, most naturally refers to a court's singular, specific decision. That is only reinforced by Congress's use of the article "the" and the singular form of decision.

To hear the majority tell it, the relevant language is not "the decision," but "case or controversy." Maj. Order at 14–

17.  No question "case or controversy" is a term of art referring to the broader legal dispute.  And if that were the only language in the statute, the majority's reasoning may have some force.  But that is not the full statutory language.  Congress chose to modify "case or controversy" with another phrase—"the decision."  That is unique.  When Congress uses "case or controversy" to confer jurisdiction on the federal courts, it often uses that phrase alone.  *E.g.*, 16 U.S.C. § 2440 ("The district courts of the United States shall have exclusive jurisdiction over any case or controversy arising under the provisions of this chapter . . . ."); 30 U.S.C. § 1467 (same).  The Supreme Court has said time and again that we "must give effect, if possible, to every clause and word of a statute." *Loughrin v. United States*, 573 U.S. 351, 358 (2014) (citation omitted).  Without interpreting "the decision," we cannot make sense of § 46(c).

Granted, a single appeal involves many decisions.  *See* Maj. Order at 16.  A court may, for example, decide to issue orders requesting supplemental briefing or granting a party's motion.  But "the decision of a case or controversy" does not extend beyond judgment, which occurs when the mandate issues. *E.g.*, *Carver v. Lehman*, 558 F.3d 869, 878 (9th Cir. 2009) ("No opinion of this circuit becomes final until the mandate issues . . . .").  Once the mandate issues, a court's jurisdiction ends. *United States v. Foumai*, 910 F.2d 617, 620 (9th Cir. 1990).

Section 46(c) incorporates that common procedure.  Congress's use of the phrase "continue to participate" implies that "the decision" must be outstanding.  28 U.S.C. § 46(c).  When the mandate issues and "the decision" becomes final, there is nothing to "continue" on with.  So, properly understood, § 46(c) only permits senior judges to

"continue to participate in the decision of a case or controversy" until the mandate issues.**[6]**

Let's apply that understanding to the facts here. The en banc court issued its first substantive decision in 2021. The Supreme Court vacated that decision. The en banc court retained jurisdiction when the case returned—even though three judges had taken senior status—because vacatur wipes away a decision as if it never existed. *See Camreta v. Greene*, 563 U.S. 692, 713 (2011).**[7]** The en banc court then exercised its jurisdiction by remanding to the district court to apply the new *Bruen* framework. The en banc court issued

---

[6] The majority labels the decision to issue the mandate as an "arbitrary" procedural choice. Maj. Order at 20. In its view, there is "no meaningful difference" between the 2022 remand order and a limited remand order, which does not come with a mandate. *Id.* Our case law, however, is not so cavalier. *See United States v. Washington*, 172 F.3d 1116, 1119–21 (9th Cir. 1999) (B. Fletcher, J., dissenting) (explaining the difference between a remand and a limited remand). A limited remand requires "clear evidence" that the court of appeals meant to narrow the scope of the remand. *United States v. Caterino*, 29 F.3d 1390, 1395 (9th Cir. 1994), *overruled on other grounds by Witte v. United States*, 515 U.S. 389 (1995). The normal practice—including in en banc cases—is to include an express statement that the remand order has limited scope. *See, e.g.*, *United States v. Montoya*, 82 F.4th 640, 656 (9th Cir. 2023) (en banc) ("[W]e exercise our discretion to remand to the district court for the *limited purpose* of reconsidering the supervised release conditions we have vacated herein." (cleaned up)). The 2022 remand order included no such express limitation. *Compare id.*, *with Duncan*, 49 F.4th at 1231 ("[T]his case is remanded to the district court for further proceedings consistent with [*Bruen*].").

[7] The Supreme Court's reversal of an en banc court's decision would have the same effect, because reversal "annuls [a decision] to all intents and purposes." *Harrison v. Nixon*, 34 U.S. 483, 506 (1835).

its mandate simultaneously.  C.A. 9, 19-55376, Dkt. 215.  At that moment, our jurisdiction terminated.[8]

When California filed this new post-*Bruen* appeal (No. 23-55805) in 2023, a new "decision" was in order.  By then two additional judges in the majority had taken senior status, bringing the total to five.  Those five senior judges could no longer "continue to participate" in the new "decision" because this new decision was not "heard or reheard by the court in banc at a time when such judge[s] [were] in regular active service."  28 U.S.C. § 46(c).  There lies the problem.

To be clear, a majority of all active non-recused judges still had the power to order this case en banc in the first instance.  *See id.*  And given the stakes, we likely would have voted to take this dispute en banc once again—we have yet to allow a three-judge panel decision invalidating a law under the Second Amendment to stand without en banc review.  But the judges entitled to make that call were those in active status when the new appeal was taken of the district court's post-*Bruen* final order, not the senior judges who were no longer statutorily authorized to vote to take a case en banc or sit on the en banc court.

2

The history of the 1996 amendment to § 46(c) underscores the majority's error.  Recall that Congress added the disputed exception permitting senior judge participation

---

[8] The majority faults this reasoning for precluding an en banc court from accepting a comeback appeal after the mandate issues.  Maj. Order at 18–19.  But why is that such a surprise?  En banc cases are the "exception," not the rule.  *Am.-Foreign*, 363 U.S. at 689.  That is why every other circuit, except the Ninth, allows comeback cases for three-judge panels, but not for en banc courts without an intervening vote by a majority of active judges.

on the en banc court to remedy a specific circuit split: whether a judge who took senior status after the en banc argument could participate in the decision in the *same* appeal.**9** *See Cocke*, 399 F.2d at 435 n.a1; *Hudspeth*, 42 F.3d at 1015. Answering the Seventh Circuit's clear invitation in *Hudspeth*, Congress allowed senior judges to "continue to participate" in decisions that were "heard or reheard" en banc when the judge was still in active status. 28 U.S.C. § 46(c) (1996); *see Hudspeth*, 42 F.3d at 1015 ("We believe that the omission of Congress to provide for this case was probably an oversight, and that corrective legislation would be warranted."). In other words, Congress added the second exception in § 46(c) only to address the question presented in the circuit split, and nothing more.

Unlike *Hudspeth* or *Cocke*, this case involves a *new* appeal. Appellants conceded as much at oral argument. *See* Oral Arg. at 13:28–13:30. The 1996 amendment did not address this issue, nor was it ever meant to authorize a roving en banc court with indefinite authority over a given dispute. That reading of § 46(c) would be odd given that the life cycle of an en banc appeal can last for several years, if not a decade or more. *See United States v. Hardesty*, 958 F.2d 910, 917 (9th Cir. 1992) (Alarcón, J., concurring and dissenting) ("[E]n banc review may add months or even years to the shelf-life of a matter before this court.").

3

Finally, to participate in "the decision," § 46(c) says that a senior judge must have been active at the time the case was

---

[9] The circuit split also concerned whether a senior judge could serve in addition to a court's active judges. Because of our limited en banc process, that is not implicated here.

"heard or reheard." That phrase refers to the court's power to go en banc initially or after a three-judge panel has first considered the case. "Ordinarily . . . cases are to be heard by divisions of three." *W. Pac. R.R. Corp.*, 345 U.S. at 258.**[10]** But because "§ 46(c) treats 'hearings' and 'rehearings' with equality," *id.* at 259, the statute gives the court two distinct options. Thus, we can entrust the en banc court to "hear" a case in lieu of a three-judge panel, *but only by a majority vote of active judges. See id.* That makes sense—after all, "the statute commits the en banc power to the majority of active circuit judges." *Id.* at 261.

It does not matter that some of the now-senior judges on the en banc court were active when we "heard" briefing or arguments in the first appeal. "[D]ecision" refers to a single act—a "ruling, order, or judgment." *Decision*, Black's Law Dictionary (7th ed. 1999). We often conduct hearings or rehearings on briefing related to a particular stage of a case. And our work before, during, and after a particular hearing or rehearing is specific to that stage of the case. So, by any definition, none of the five senior judges were active at the time of the new "hearing or rehearing" of this appeal.

B

The majority's procedural blunder had troubling consequences. It disenfranchised seven of our colleagues— nearly a quarter of the active judges on our court. It barred the active judges from their proper role of shaping the future of this court and its precedents. And it undermined public

---

[10] This interpretation of § 46(c) would not prohibit a common practice among all circuit courts, including the Ninth Circuit, of allowing three-judge panels to take a comeback appeal of the same case. Section 46(c) does not limit a three-judge panel's ability to rehear any case—it only applies to en banc courts.

DUNCAN V. BONTA 77

confidence in this decision, perhaps the most consequential Second Amendment case in our circuit post-*Bruen*.

1

Section 46(c) places the gatekeeping function for the en banc process with the court's active judges. It allows us "to devise [our] own administrative machinery to provide the means whereby a majority may order [an en banc] hearing." *W. Pac. R.R. Corp.*, 345 U.S. at 250. But it limits "who" that majority may be.

The Supreme Court addressed that point in *Moody*. There, the question was whether a senior judge "may vote to determine whether [a] case should be reheard [e]n banc" if she was on the panel that "originally decided that appeal." *Id.* at 622 n.1, 624. The Court definitively answered: No. "The language of [§ 46(c)] confines the power to order a rehearing in banc to those circuit judges who are in 'regular active service.'" *Id.* at 626. And although courts have leeway in constructing their en banc process, the decision to hear or rehear a matter en banc "can be reached only by voting." *Id.*; *see In re Watts*, 298 F.3d 1077, 1084 n.3 (9th Cir. 2002) (O'Scannlain, J., concurring in the judgment) ("[T]he decision to *convene* the en banc court is made by a majority of the court's active, nonrecused circuit judges, as the governing statute mandates."). Put simply, "senior judges have not been authorized by implication to participate in ordering a hearing or rehearing in banc." *Moody*, 417 U.S. at 626.

Yet that is exactly what happened here. Most of the original 11-judge en banc panel—including five senior judges—voted to hear this new appeal en banc. The other active judges (22 in all) were never asked to vote. And because several active judges were not on the court when we

drew the original panel, they lost their sole opportunity to hear this dispute on the en banc court. Worse, the senior judges who voted to hear the case en banc account for the majority of judges who did so. Without them there would not have been a majority—even of the panel—to hear this new appeal en banc. This en banc proceeding was not initiated by "a majority of the circuit judges . . . who are in regular active service," § 46(c), but by a majority consisting mainly of senior judges—over the dissent of a majority of the (very few) active judges allowed to vote. None of this fits with § 46(c) or *Moody*.

The majority counters that the en banc court's decision to keep this new appeal was not a new "vote" on whether to hear the case en banc. Maj. Order at 17–18. That is hard to believe, as each member of the en banc court voted on whether to treat this as a comeback case for the en banc court under General Order 3.6(b). And as I explained, the en banc court's jurisdiction terminated when we issued the mandate in the first appeal. The original vote in 2021 did not authorize the en banc panel to exercise indefinite authority over this dispute after its jurisdiction was terminated.

The majority claims this interpretation makes little practical sense considering that the en banc court could have chosen to retain jurisdiction on remand from the Supreme Court. *See* Maj. Order at 21; *see also supra*, at 73–74. But the considerations for retaining jurisdiction and remanding are starkly different and justify § 46(c) treating those situations differently. If the en banc court retains jurisdiction on remand from the Supreme Court, it faces the same decision and can proceed expeditiously. If the en banc court remands to the district court, as it did here, it is an acknowledgment that more proceedings are necessary below, resulting in a new decision to review. And that

process is far longer and can take several years. That further counsels against retaining jurisdiction because the active judges on the court are far more likely to change. Indeed, only three judges on the en banc panel were senior on remand from the Supreme Court. Another two were senior for the new appeal.

It thus makes sense why Congress terminated an en banc court's jurisdiction once it remands to the district court and issues the mandate. Section 46(c) requires a new vote of the active judges before a new appeal from a new decision can be heard en banc. And that vote better reflects the court's current views by soliciting the input of active judges who may have joined the court in the years-long gap between the first en banc vote and the new appeal.

2

Disenfranchising active judges undermines the statutory purpose of the en banc process. En banc rehearing "is normally reserved for questions of exceptional importance." *Moody*, 417 U.S. at 626; *see* Fed. R. App. P. 35(a). By preventing "[c]onflicts within a circuit," the en banc process "enable[s] the court to maintain its integrity as an institution by making it possible for a majority of its judges always to control and thereby to secure uniformity and continuity in its decisions." *Am.-Foreign*, 363 U.S. at 689–90. Section 46(c) achieves this by empowering the active judges to "'determine the major doctrinal trends of the future' for a particular Circuit." *Moody*, 417 U.S. at 626 (quoting *Am.-Foreign*, 363 U.S. at 690).

Section 46(c) ensures that active judges are fulfilling their role in the en banc process by limiting the participation of senior judges. This is not because senior judges do not play a valuable role in our court's work. Indeed, "[s]enior

judges provide a judicial resource of extraordinary value by their willingness to undertake important assignments 'without economic incentive of any kind.'" *Id.* at 627 (quoting *Am.-Foreign*, 363 U.S. at 688 n.4). So the majority's focus on judicial efficiency is a red herring. *See* Maj. Order at 20–21. What statutorily matters is that the en banc court is designed to minimize long-term friction within a circuit by vesting the determination of major doctrinal trends with active judges who will serve the longest. When it comes to tension between generalized efficiency and active judge involvement in the en banc process, Congress has spoken: efficiency must yield by statute.

With that in mind, the exclusion of our newest active judge colleagues is even more disturbing. They are likely to serve on the court for decades. Omitting them from this important case raises the chances that our Second Amendment jurisprudence will stay jumbled and erratic. The next time a Second Amendment case goes en banc, the composition of that panel will be dramatically different. Section 46(c) is meant to encourage continuity in our circuit precedent. The majority's view does the opposite.

C

Judge S.R. Thomas writes separately to paint the majority's procedural maneuver as just the latest application of our long-standing en banc rules. But as he did at oral argument, Judge S.R. Thomas spars with a strawman. *See* Oral Arg. at 1:00:11–1:01:59. Judge S.R. Thomas's research, comprehensive as it is, only proves my point—no other circuit interprets § 46(c) as we do. And our prior practice does not support the majority's action here.

1

Nearly every case cited in Judge S.R. Thomas's compilation of his greatest hits as En Banc Coordinator is distinguishable. And those few with any relevance do not justify the majority's weaponization of our General Orders. In the end, I would have preferred not to air publicly what was previously an internal discussion about our en banc procedures and whether they have indeed "served us well." *See* S.R. Thomas Concurrence at 31 n.9. Yet the concurrence's attempt to muddy the water with irrelevant string cites requires a response. And perhaps a public view will make clear what we have dealt with behind the scenes. There should be no false impression that what happened here was our normal practice.

Start with the cases where, following remand, the en banc court retained jurisdiction over a new appeal without an intervening vote of the active judges. In most of those cases, the mandate did not issue between the original en banc decision and the new appeal, meaning the court did not issue "the decision" as that term is used in § 46(c).[11] In *Sarei v. Rio Tinto, PLC*, the en banc court issued a limited remand

---

[11] *Norse v. City of Santa Cruz* is the lone exception. *See* 629 F.3d 966, 978 (9th Cir. 2010) (en banc). There, the en banc court reversed the district court and remanded for further proceedings. It also issued the mandate, and thus "the decision" under § 46(c). C.A. 9, 07-15814, Dkt. 55. The same en banc court later reclaimed jurisdiction over a new, post-remand appeal. C.A. 9, 13-16432, Dkt. 23. But rather than adjudicate the new appeal, the en banc court did what our Order authorizes and what we should have done here—referred the new appeal to the original three-judge panel. *Id.* The panel resolved the appeal in a memorandum disposition. *Norse v. City of Santa Cruz*, 599 F. App'x 702 (9th Cir. 2015). So while the procedure in *Norse* was improper, it did not lead to the same en banc court deciding the new appeal in violation of § 46(c).

for the district court to address an exhaustion requirement under the Alien Tort Statute. 550 F.3d 822, 832 & n.10 (9th Cir. 2008) (en banc). The mandate was initially issued in error, but quickly recalled. C.A. 9, 02-56256, Dkt. 245, 246. When the case returned following remand, the en banc court—with one judge who had taken senior status in the interim—chose to keep the case under our General Orders. *See Sarei v. Rio Tinto, PLC*, 671 F.3d 736, 742 (9th Cir. 2011) (en banc); C.A. 9, 02-56256, Dkt. 253. It was only after the en banc court rendered a decision in the new appeal that the mandate issued, thus terminating the court's jurisdiction under § 46(c). C.A. 9, 02-56256, Dkt. 393, 394.

Same with *League of United Latin American Citizens v. Wheeler*, 922 F.3d 443 (9th Cir. 2019) (en banc). The en banc court granted a petition for a writ of mandamus, sent the case back to the district court, and purported to "retain jurisdiction over this and any related cases." 922 F.3d at 445. But it did not issue the mandate. The petitioners later returned to the Ninth Circuit, and a majority of the en banc court at first voted to accept petitioners' cases as comebacks under General Order 3.6(b). *See League of United Latin Am. Citizens v. Wheeler*, 940 F.3d 1126, 1126–27 (9th Cir. 2019) (en banc); *see also id.* at 1130 (Bea, J., dissenting) ("[W]e should decline to accept the new petitions as comeback cases. The new petitions should be assigned to a random three-judge panel through the normal process."). Only after the en banc court referred the case to the original three-judge panel did the mandate issue. *See id.* at 1127; C.A. 9, 17-71636, Dkt. 191. That constituted "the decision" of the en banc court. And the en banc court explained that it "will retain jurisdiction over any subsequent en banc hearing arising out of any decision of the three-judge panel." 940 F.3d at 1127. So the en banc court implicitly recognized that

DUNCAN V. BONTA                              83

a new en banc vote had to occur.  The same process should have been followed here and was not.

Also consider *United States v. Hovsepian*, 359 F.3d 1144 (9th Cir. 2004) (en banc).  There, the en banc court issued an initial decision reversing and remanding to the district court for further proceedings.  359 F.3d at 1169.  And there, unlike the other cases, the en banc court *did* issue the mandate—at least at first.  C.A. 9, 99-50041, Dkt. 161.  When the United States filed a new appeal, the en banc court recalled the mandate, set the case for argument, and issued a new decision.  *United States v. Hovsepian*, 422 F.3d 883 (9th Cir. 2005) (en banc); C.A. 9, 99-50041, Dkt. 186, 188, 198.  So while the en banc court's statutory authority terminated when it issued its original decision and mandate, it was able to "[re]assume jurisdiction" by recalling the mandate upon the filing of the new appeal.  *Williams v. Calderon*, 83 F.3d 281, 289 (9th Cir. 1996).  Because the recall wiped away "the decision," the procedure employed in *Hovsepian*— while unusual—did not violate § 46(c).

Finally, the reliance on *Detrich v. Ryan* is (to put it mildly) odd.  *Detrich* only reinforces the absurdity of the majority's approach.  *Detrich*, a habeas case, was initially sent to an en banc panel in 2012.  *See Detrich v. Ryan*, 696 F.3d 1265 (9th Cir. 2012) (en banc).  That panel had seven judges who are now retired, deceased, or have taken senior status.[12]   Only four of the original eleven are still active

---

[12] The en banc court included Judge Kozinski (now retired), Judge Pregerson (now deceased), Judge Reinhardt (now deceased), Judge Graber (now senior status), Judge W. Fletcher (now senior status), Judge Bea (now senior status), now-Chief Judge Murguia, Judge Gould, Judge Christen, Judge Nguyen, and Judge Watford (since resigned).  C.A. 9, 08-99001, Dkt. 160.

judges on this court. That en banc panel issued a limited remand in 2013 and "retain[ed] jurisdiction over any subsequent appeal." *Detrich v. Ryan*, 740 F.3d 1237, 1259 (9th Cir. 2013) (en banc). The mandate was issued in error, and three years later, the en banc court recalled the mandate while expanding the scope of the limited remand. C.A. 9, 08-99001, Dkt. 177, 178. The *Detrich* en banc court lay dormant until 2022, when the case was finally returned to the eleven-judge panel. It has since begun to hear this new appeal. C.A. 9, 08-99001, Dkt. 193, 202. But, because of our rules, the now-active judges did not vote to order the case en banc. Nor was the en banc court redrawn. Now the en banc court consists of a hodge podge of senior judges—none of whom retain any institutional knowledge about the case— and new active judges who were picked, without following the correct process, to replace those judges no longer available to serve. *Detrich* explains even better than this case why our General Order bears no authority from § 46(c). Proceeding en banc ten years later with a new cast of players undermines, rather than furthers, "consistency in judicial administration." S.R. Thomas Concurrence at 32, 36. Judicial efficiency would have been better served by sending *Detrich* to a new three-judge panel.

Next, the concurrence shifts its focus to senior judge participation on the en banc court. Again, its cited cases are nothing like the five-senior-judge power play at issue. In *Murray v. BEJ Minerals, LLC*, the en banc court certified a question to the Montana Supreme Court. 924 F.3d 1070, 1074 (9th Cir. 2019) (en banc). It did not issue the mandate. While the case was pending in the state supreme court, Judge Bybee took senior status. He continued to participate in the final decision once the case returned to the en banc court. *See Murray v. BEJ Minerals, LLC*, 962 F.3d 485 (9th Cir.

DUNCAN V. BONTA                    85

2020) (en banc). And he had every right to do so. Section 46(c) allowed Judge Bybee to "continue to participate in the decision" of *Murray*, which was "heard or reheard by the court in banc at a time when [he] was in regular active service." 28 U.S.C. § 46(c). The mandate only issued after the en banc court's post-certification disposition, so there was no intervening "decision" barring Judge Bybee from serving on the en banc court. C.A. 9, 16-35506, Dkt. 70.

The concurrence's explanation of *Lombardo v. Warner* also falls flat. *See* 391 F.3d 1008 (9th Cir. 2004) (en banc); S.R. Thomas Concurrence at 38–39. Two senior judges participated in the decision of the case, which occurred following certification to the Supreme Court of Oregon. The concurrence notes that Judge Ferguson could hear the case en banc as a member of the original three-judge panel. Judge Tashima—who also served on the three-judge panel—remained on the en banc court after taking senior status and after the certified question was resolved. He too could participate in the post-certification en banc proceedings, despite having taken senior status after the en banc draw, because the en banc court had not yet rendered its "decision" by issuing the mandate. So § 46(c) expressly authorized both judges' participation on the en banc court, no matter when they took senior status.

Somewhat puzzlingly, the concurrence highlights cases where judges kept their spot on the en banc court despite taking senior status after the en banc draw or en banc argument.**[13]** *See* S.R. Thomas Concurrence at 41–42. As

---

[13] *See, e.g.*, *Price v. Stevedoring Servs. of Am., Inc.*, 697 F.3d 820 (9th Cir. 2012) (en banc); *Lacey v. Maricopa County*, 693 F.3d 896 (9th Cir. 2012) (en banc); *Young v. Holder*, 697 F.3d 976 (9th Cir. 2012) (en banc); *Veterans for Common Sense v. Shinseki*, 678 F.3d 1013 (9th Cir.

Judge Bumatay and I explain, that situation—and *only* that situation—is what Congress approved when it resolved a circuit split on the issue with the 1996 amendment to § 46(c). *See supra*, at 74–75; Bumatay Dissent to Order at 99.  By invoking cases that comport with § 46(c), the concurrence only highlights what is clear: the degree of senior judge participation in this en banc case is unprecedented.

The concurrence points to only four cases from the last 26 years where an en banc court, invoking our General Orders, violated § 46(c) by allowing subsequently-senior judges to participate after the mandate issued in the original appeal.  *See Democratic Nat'l Comm. v. Hobbs*, 948 F.3d 989 (9th Cir. 2020) (en banc); *Fue v. McEwen*, No. 18-55040, 2018 WL 3391609 (9th Cir. June 20, 2018) (en banc); *Native Vill. of Eyak v. Blank*, 688 F.3d 619 (9th Cir. 2012) (en banc); *WMX Techs., Inc. v. Miller*, 197 F.3d 367 (9th Cir. 1999) (en banc).  Those errors pale in comparison to the one here.  In *Fue* and *Miller*, no active judge joined the court between the first en banc vote and the later decision to retain the en banc court for a new appeal.  Not one active judge was disenfranchised.  And because there were no noted dissents, the senior judge votes—three in *Fue* and two in *Miller*—did not make a difference in the outcome of the case.**[14]**  Compare that to this situation.  The majority cut

---

2012) (en banc); *Ibrahim v. U.S. Dep't of Homeland Sec.*, 912 F.3d 1147 (9th Cir. 2019) (en banc); *In re Sunnyslope Hous. Ltd. P'ship*, 859 F.3d 637 (9th Cir. 2017) (en banc); *Lowry v. City of San Diego*, 858 F.3d 1248 (9th Cir. 2017) (en banc); *United States v. Ressam*, 679 F.3d 1069 (9th Cir. 2012) (en banc).

[14] Judge S.R. Thomas counters that we "follow our established rules and procedures regardless of the outcome."  S.R. Thomas Concurrence at 40 n.16.  But once again, he fails to grasp the point: *Fue* and *Miller* highlight

*seven* new active judges out of this en banc process. Plus, the five senior judges on this panel cast dispositive votes—without them, there would not have been a majority to decide this new appeal en banc or to reverse the district court on the merits. There is simply no history of General Order 3.6(b) being used this way.

Now consider *Democratic National Committee v. Hobbs*. In 2016, we drew an en banc panel to review an interlocutory appeal from the district court's denial of a preliminary injunction. *See Feldman v. Ariz. Sec'y of State's Off.*, 843 F.3d 366, 367 (9th Cir. 2016) (en banc). The en banc court scheduled oral argument and granted an injunction pending appeal. *Id.* It did not issue a mandate at that time.

On May 8, 2018, the district court entered final judgment during the pendency of the en banc proceedings. C.A. 9, 16-16698, Dkt. 93. Two days later, the appellants filed a new appeal (No. 18-15845) of the district court's order on the merits. C.A. 9, 18-15845, Dkt. 1. Only after the new appeal was filed did the en banc court dismiss the original appeal (No. 16-16698) as moot and issue the mandate. C.A. 9, 16-16698, Dkt. 97, 99. The *same day* that the mandate issued in the preliminary injunction appeal, the en banc court referred the merits appeal to a three-judge panel, while retaining jurisdiction over any subsequent en banc hearing. C.A. 9, 18-15845, Dkt. 18; C.A. 9, 16-16698, Dkt. 99. The back and forth in *Hobbs*—meant in part to "preserv[e] the status quo" for the 2016 election—does not support a

---

how unprecedented it is to have a five-senior-judge voting bloc assert control over an en banc case.

consistent practice under our General Orders.  C.A. 9, 16-16698, Dkt. 70.

And the subsequent history only proves my point: our practice required a new en banc vote with the new appeal. After the three-judge panel decision in the merits appeal, the active nonrecused judges voted again to take the case en banc.  *See Democratic Nat'l Comm. v. Reagan*, 911 F.3d 942 (9th Cir. 2019) (en banc).  We failed to follow our procedure in *Reagan* here.

The en banc court retained the prior panel.  So active judges who joined the court between the en banc draw and the second en banc vote never had an opportunity to serve on the en banc panel.  And by the second en banc vote, Judge O'Scannlain and Judge Clifton—both members of the original en banc court—had assumed senior status.[15]  But like in *Fue* and *Miller*, their two dissenting votes did not change the outcome of the new appeal.  *See Hobbs*, 948 F.3d at 997; *see also id.* at 1046 (O'Scannlain, J., joined by Clifton, Bybee & Callahan, JJ., dissenting).  Despite the erroneous application of § 46(c), *Reagan* supports that our prior procedure requires a new en banc vote in a new appeal—which we failed to do here.

*Native Village of Eyak v. Blank* is also distinguishable. There, an initial en banc panel issued a limited remand while retaining jurisdiction over all future proceedings in the matter.  *See Eyak Native Vill. v. Daley*, 375 F.3d 1218, 1219 (9th Cir. 2004) (en banc).  The *Eyak* appellants later filed a new appeal—just as Plaintiffs did here.  The en banc panel

---

[15] Judge Bybee took senior status after the new appeal was argued, but before the decision was issued.  Again, Judge Bybee's participation on the en banc court was consistent with § 46(c).

first voted not to retain jurisdiction over the new appeal, despite having previously reserved that right. C.A. 9, 09-35881, Dkt. 33. That only proves that contrary to the concurrence's assertion, the practice has not been consistent to retain the en banc court in a new appeal. *See also Norse*, *supra*, at 28 n.11. Then four months later it reversed course and reasserted jurisdiction over the case. C.A. 9, 09-35881, Dkt. 39. With one exception, the composition of the en banc panel remained the same.[16]

By the time a decision was issued in the new appeal, three judges on the en banc court had taken senior status. Judge Schroeder took senior status after oral argument, so her participation followed what Congress was trying to achieve with the 1996 amendment to § 46(c). *See supra*, at 74–75; Bumatay Dissent to Order at 99. Things are different with Judge Kleinfeld and Judge Hawkins—they both took senior status before the decision to treat the new appeal as a comeback case. Thus, their continued participation on the en banc court violated § 46(c). But like the senior judge participation in *Fue* and *Miller*, their votes did not make a difference in the outcome. Excluding Judge Kleinfeld and Judge Hawkins, there remained a 5-4 majority vote of the active judges on every issue in the case. And besides, one stray example from a case that is procedurally distinct hardly establishes a common practice. That is particularly true when there is no evidence § 46(c) was considered in that case. *See Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 144 (2011) ("When a potential jurisdictional defect is neither noted nor discussed in a federal decision, the decision does not stand for the proposition that no defect existed.").

---

[16] Judge Pregerson replaced Judge O'Scannlain on the en banc court.

2

Struggling to defend our past practice, the concurrence turns to our sister circuits for help. It first suggests that our procedures "mirror" those of other courts, citing the local rules of seven circuits. S.R. Thomas Concurrence at 47 & n.41. Unlike our General Order, most of those examples simply quote § 46(c). *E.g.*, 1st Cir. R. 40.0; 4th Cir. R. 40(e); 5th Cir. R. 40.2.6; Fed. Cir. I.O.P. 14.7; *see also* 11th Cir. R. 40-10 (senior circuit judges "may continue to participate in the decision of a case that was heard or reheard by the court en banc at a time when such judge was in regular active service"). One permits senior judge participation on the en banc court until the "final resolution of the case." 3d Cir. I.O.P. 9.6.4. Another allows a judge who "took senior status after a case was heard or reheard en banc [to] participate in the en banc decision." 2d Cir. I.O.P. 40.1. But none of these examples "mirror" our General Order, which omits the statutory phrase "decision of a case or controversy" and permits senior judge participation until "all matters" pending before the en banc court "are finally disposed of."[17] 9th Cir. Gen. Order 5.1(a)(4); *see* 9th Cir. R. 40-3. The concurrence's confusing attempt to remake our General Order in no way suggests that "[o]ur procedures are consistent with the practices of other circuits." S.R. Thomas Concurrence at 47.

Next, the concurrence only points to one illustrative case from twelve other circuits over nearly 30 years remotely relevant. *See* S.R. Thomas Concurrence at 48. In *United States v. Skoien*, the en banc Seventh Circuit, including

---

[17] For the same reasons, it is wrong to say that "[o]ur General Orders not only comply with the applicable statutory language but mirror it." S.R. Thomas Concurrence at 26 n.6.

Senior Judge Bauer, retained jurisdiction over a new appeal after the mandate issued in the original appeal. Order, No. 10-3023 (7th Cir. Sept. 1, 2010) (en banc), Dkt. 75. Judge Bauer took senior status in 1994, well before the first en banc decision in *Skoien*. *See United States v. Skoien*, 614 F.3d 638 (7th Cir. 2010) (en banc). Judge Bauer was on the en banc court, consistent with § 46(c), because he served on the original three-judge panel. *See United States v. Skoien*, 587 F.3d 803 (7th Cir. 2009), *reh'g en banc granted*, *vacated*, No. 08-3770, 2010 WL 1267262 (7th Cir. Feb. 22, 2010). That key fact makes all the difference: because § 46(c) independently authorizes a senior judge to serve on an en banc court "reviewing a decision of a panel of which such judge was a member," *Skoien* does not implicate the disputed language permitting a senior judge to "continue to participate in the decision of a case or controversy" heard en banc while such judge was in active service. *See* 28 U.S.C. § 46(c).

The concurrence also invokes *Skoien* for the proposition that other circuits allow an en banc court to hear a comeback case, even after the mandate issues in the original appeal, and without an intervening vote of the active judges. *See* S.R. Thomas Concurrence at 48. First, *Skoien* is hardly a typical comeback case. The new, post-mandate appeal in *Skoien* involved a district court order requiring the defendant to return to prison after the en banc court affirmed his conviction in the original appeal. *See Skoien*, 614 F.3d at 645; C.A. 7, 10-3023, Dkt. 1. The defendant immediately filed an emergency motion asking the Seventh Circuit to order that he be released from prison pending the filing of a cert petition in the Supreme Court. C.A. 7, 10-3023, Dkt. 3. The en banc court denied the defendant's motion in a short, unpublished order. Order, No. 10-3023 (7th Cir. Sept. 1,

2010) (en banc), Dkt. 75.  This rare procedural posture—
which involved a decision on a motion rather than a new
substantive    appeal—offers    little    support    for    the
concurrence's position.

Second, *Skoien* does not support any practice by other
courts not to hold an intervening en banc vote in a
subsequent appeal.   In the Seventh Circuit, successive
appeals are automatically assigned to the three-judge panel
that heard the earlier appeal.  7th Cir. Operating Procedures
6(b).  And barring some limited exceptions, the default rule
is that the panel will decide the new appeal on the merits.  *Id.*
But "[c]ases that have been heard by the court en banc are
outside the scope of this procedure, and *successive appeals
will be assigned at random unless the en banc court directs
otherwise*."   *Id.* (emphasis added).   In other words, the
Seventh Circuit does not permit comeback en banc cases,
unless the en banc court votes to retain the case.   And
because the en banc court includes all active judges, every
active, nonrecused Seventh Circuit judge votes on whether
to take a comeback case en banc after the mandate issues in
the original appeal.  Indeed, there were no new active judges
between the first and second en banc decisions in *Skoien*.
The  Seventh  Circuit  practice  is  exactly  what  § 46(c)
requires, and we did not follow that.

The concurrence's rejoinder misses the point.  It notes
that the Seventh Circuit's procedures, like ours, permit an en
banc court to decide whether to retain jurisdiction over a
comeback appeal.  S.R. Thomas Concurrence at 48 n.43.
But as I explained, the key difference is that the en banc
Seventh Circuit includes every active judge on the court.
Our en banc court does not.  Thus, if this exact same situation
arose in the Seventh Circuit, every active, nonrecused judge
would vote on whether to take the new, post-remand appeal

en banc.  Not true here.**[18]**  And that highlights our General Order's deviation from § 46(c).   Our General Order improperly delegates the en banc gatekeeping function to just 11 judges—and in this case five senior judges who are statutorily barred from voting to rehear a case en banc.  And while Judge S.R. Thomas claims that nothing we did here violated our General Orders, that ignores that our Orders are inconsistent with § 46(c).

Putting *Skoien* aside, the concurrence invokes several out-of-circuit en banc cases reheard by senior judges after those decisions were vacated and remanded (or reversed) by the Supreme Court.**[19]**  S.R. Thomas Concurrence at 49–51. These examples are beside the point.  As noted, vacatur and reversal wipe away a lower court opinion, "stripping the decision below of its binding effect and clearing the path for future relitigation." *See Camreta*, 563 U.S. at 713 (cleaned up); *supra*, at 73–74; *see also Harrison*, 34 U.S. at 506 ("[R]eversal annuls [a decision] to all intents and purposes . . . .").  So there is no "decision" on the books, and

---

[18] Judge S.R. Thomas says that I failed "to cite a single case or rule" supporting the view that our en banc procedures are inconsistent with those of other circuits.  S.R. Thomas Concurrence at 47 n.40.  But no other circuit has applied § 46(c) consistent with our General Orders.  And the preceding discussion of *Skoien* and the Seventh Circuit's Operating Procedures makes clear why.

[19] *See, e.g.*, *United States v. Herrold*, 941 F.3d 173 (5th Cir. 2019) (en banc); *Hernandez v. Mesa*, 885 F.3d 811 (5th Cir. 2018) (en banc); *United States v. Gonzalez-Longoria*, 894 F.3d 1274 (5th Cir. 2018) (en banc); *In re Unknown*, 754 F.3d 296 (5th Cir. 2014) (en banc); *Carcieri v. Kempthorne*, 497 F.3d 15 (1st Cir. 2007) (en banc); *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359 (Fed. Cir. 2003) (en banc); *Hoffman Plastic Compound, Inc. v. NLRB*, No. 98-1570, 2002 WL 1974028 (D.C. Cir. Aug. 27, 2002) (en banc); *Consol. Gas Co. v. City Gas Co.*, 931 F.2d 710 (11th Cir. 1991) (en banc).

the prior en banc panel—even with now-senior judges—can retain jurisdiction to issue a new "decision" when the case returns from the Supreme Court. But once that "decision" is issued, along with a mandate, the en banc court's jurisdiction ends.

The concurrence is right that we have consistently allowed senior judges to participate in en banc proceedings on remand from the Supreme Court.[20]    S.R. Thomas Concurrence at 42–43; *see* 9th Cir. Gen. Order 3.6(a) ("Matters on remand from the United States Supreme Court will be referred to the last panel that previously heard the matter before the writ of certiorari was granted."). We even did so here. When the Supreme Court vacated and remanded our prior decision in light of *Bruen*, the en banc court—then with three senior judges—exercised its jurisdiction by remanding the case to the district court in an order that "constitute[d] the mandate of this court." *Duncan*, 49 F.4th at 1232. At that moment, we terminated the en banc court's jurisdiction by issuing "the decision" under § 46(c).

3

All that nuance aside, Judge S.R. Thomas thinks the majority's authority to keep this case boils down to a simple truth: "§ 46(c) is a grant of power to the courts of appeals," and that "clear grant of authority . . . coupled with the Supreme Court's directive that each Circuit develop its own procedures to implement the en banc process, should end the discussion." S.R. Thomas Concurrence at 52 (citing *W. Pac.*

---

[20] *See, e.g.*, *Young v. Hawaii*, 45 F.4th 1087 (9th Cir. 2022) (en banc); *Democratic Nat'l Comm. v. Hobbs*, 9 F.4th 1218 (9th Cir. 2021) (en banc); *Marinelarena v. Garland*, 992 F.3d 1143 (9th Cir. 2021) (en banc); *Rizo v. Yovino*, 950 F.3d 1217 (9th Cir. 2020) (en banc); *Sarei v. Rio Tinto, PLC*, 722 F.3d 1109 (9th Cir. 2013) (en banc).

DUNCAN V. BONTA                                    95

*R.R. Corp.*, 345 U.S. at 267). Tell that to the Supreme Court. If § 46(c) were a blank check, then why did the Court hold that the original version of § 46 barred circuit courts from permitting senior judge participation on the en banc court? *See Am.-Foreign*, 363 U.S. at 685–86. And why did the Court reject as inconsistent with § 46(c) a Fourth Circuit practice that allowed certain senior judges to vote on whether to rehear a case en banc? *See Moody*, 417 U.S. at 623–24.

The *Moody* Court relied on the same cases as the concurrence—it even went so far as to "confirm[]" each circuit's "discretion" to fashion its en banc procedures. *Id.* at 624–25 (citing *Shenker*, 374 U.S. at 5; *Am.-Foreign*, 363 U.S. at 688; *W. Pac. R.R. Corp.*, 345 U.S. at 250). But Judge S.R. Thomas omits what the Court said next: "Although, as the Court has held, [the active] judges are largely free to devise whatever procedures they choose to initiate the process of decision to order [en banc] rehearing, and to decide who may participate in those preliminary procedures, neither the Court nor Congress has suggested that any other than a regular active service judge is eligible to participate in the making of the decision whether to hear or rehear a case in banc." *Id.* at 626 (internal citation omitted). As "the decisional and statutory evolution of the institution of the in banc court" reveals, the "eligibility of senior judges for participation therein has been the exception, not the rule." *Id.* Thus, the Court concluded that it was "not at liberty to engraft upon [§ 46(c)] a meaning inconsistent with its historical limitations." *Id.*

*Moody* cuts the concurrence off at the knees. Like Judge S.R. Thomas, *Moody* pointed to the discretion afforded to courts of appeals under cases like *Western Pacific Railroad*, *Shenker*, and *American-Foreign*. But *Moody* still held that

the exercise of that discretion—particularly when it comes to senior judge participation—must comply with § 46(c). At no point has the Supreme Court given courts of appeals unfettered discretion to construct their en banc procedures.

Indeed, the Fourth Circuit in *Moody* did not understand § 46(c) as Judge S.R. Thomas does. Faced with uncertainty, every active and senior judge certified to the Supreme Court the question of how to interpret the statute's application to senior judges. *Moody*, 417 U.S. at 624; *see also* 28 U.S.C. § 1254(2); Sup. Ct. R. 19. That little-known procedure would have been an option here. *See United States v. Seale*, 558 U.S. 985, 985 (2009) (Stevens, J., joined by Scalia, J., respecting the dismissal of the certified question). But we will never know. Any threats to the majority's control over this case are quickly squashed.

More to the point, Judge S.R. Thomas's assertions about § 46(c) reveal a misunderstanding about how the law works. For example, he cites *Western Pacific Railroad* for the view that § 46(c) is "a grant of power to the courts of appeals, and 'that the statute does not compel the court to adopt any particular procedure governing the exercise of the [en banc] power.'" S.R. Thomas Concurrence at 22, 52 (quoting *W. Pac. R.R. Corp.*, 345 U.S. at 267). While § 46(c) grants courts of appeals significant leeway in structuring their en banc procedures, those procedures must still comply with the statute. *Sibbach v. Wilson & Co.*, 312 U.S. 1, 9–10 (1941). Or otherwise said, just because our internal rules authorize a particular procedure does not mean they are faithful to the statutory text.[21]

---

[21] It is not clear that we even complied with our Rules. Again, our en banc court consists of the Chief Judge plus ten additional judges drawn

One final note.  Judge S.R. Thomas suggests that our limited en banc procedure is entitled to special treatment.  He asserts that each court of appeals can adopt procedures "that best suit their Court and culture," and that our en banc process routinely "ensure[s] adequate representation, a sound deliberative process, and decisions that would be accepted as authoritative."  S.R. Thomas Concurrence at 24 n.2, 25.  How does this case possibly fit that mold?  What Judge S.R. Thomas's revisionist history ignores is that nothing about the limited en banc procedure exempts our court from § 46(c)'s commands.  Congress's limited en banc procedure addresses how many judges can serve on the en banc court.  But § 46(c) still requires the votes of a majority of all active judges before proceeding en banc, and the limited en banc procedures do not alter that.**[22]**  While an en

---

at random.  *See* 9th Cir. R. 40-3.  We complied with that procedure when we first composed an en banc court in 2021.  Between the first and second appeal, a colleague who was randomly drawn to serve on the en banc court became Chief Judge.  Yet former Chief Judge S.R. Thomas remains on this en banc panel, even though he was not chosen at random to serve.  His response?  This is how we have always done it.  *See* S.R. Thomas Concurrence at 43–47.  But it is not how our Rule is written. *See* 9th Cir. R. 40-3.  Whether such a practice exists, it has not been formalized.  True, our General Orders—invalid as they are—permit a case to return to the same en banc court, even when the Chief Judge initially assigned to the en banc court is no longer serving in that role. *See* S.R. Thomas Concurrence at 43–44.  But if we have proceeded without the current Chief Judge on the en banc court, then perhaps it is time to reconsider why our Rules guarantee the Chief Judge a seat on the limited en banc court.

[22] Judge S.R. Thomas asserts that I have not offered a single case or rule to support my position.  *See* S.R. Thomas Concurrence at 52.  The weight of authority proves otherwise.  But until now, we did not need a specific rule to confirm what § 46(c) makes clear.  Just like how we did not need

banc court assumes jurisdiction over an entire case, § 46(c) limits that jurisdiction, no matter what our General Order says. *Cf.* S.R. Thomas Concurrence at 26 (quoting *Summerlin v. Stewart*, 309 F.3d 1193, 1193 (9th Cir. 2002)). Judges—even by General Order—may not alter a statute's meaning. *See, e.g.*, *Colautti v. Franklin*, 439 U.S. 379, 392 (1979). In sum, allowing General Order 3.6(b) to be applied as the majority wishes does not comply with § 46(c), our past practice, or the procedures of other circuits.

IV

This en banc court lacks statutory authority under § 46(c). Congress adopted two narrow exceptions permitting senior judge participation on the en banc court. Neither apply here. And despite the majority's insistence that all is well, our General Orders—which have never been applied like this—cannot amend § 46(c). "[I]f the statute is to be changed, it is for Congress, not for us, to change it." *Am.-Foreign*, 363 U.S. at 690–91.

I respectfully dissent.

---

a rule clarifying that dead judges cannot vote. *See Yovino*, 586 U.S. at 186.

DUNCAN V. BONTA                    99

BUMATAY, Circuit Judge, with whom VANDYKE, Circuit Judge, joins dissenting:

Plaintiffs-Appellees and Judge Nelson raise important questions about the scope of 28 U.S.C. § 46(c)—the statute that governs our use of en banc panels. Congress wasn't speaking to the precise issue here when it enacted § 46(c). It tried to do something different. Congress amended § 46(c) in response to a narrow question. It addressed a circuit split over whether active judges who heard argument in an en banc case and then took senior status after the hearing—but before the decision was issued—could continue to participate in that decision. Section 46(c) said *yes*—there's no need to reconstitute the en banc panel under those limited circumstances. But we face a very different and far more complex procedural posture today. Here, the judges didn't go senior in the brief period between an en banc hearing and decision. Instead, multiple judges took senior status *years before* the en banc hearing and decision. Regardless of whether § 46(c) prohibits this odd situation, we should have used better judgment and reconstituted our en banc panel before issuing the decision in this important case.

Before diving into the history of this case, it helps to look at how appellate decisions are normally handled. First, a three-judge panel decides appeals from a district court decision in the first instance—only after the decision of a three-judge panel will our court take the extraordinary step of reviewing the case en banc. This isn't always the case, but it's the norm. And there's good reason for this default rule. The three-judge panel conserves judicial resources and allows circuit judges to focus their attention and energy on a manageable part of our court's docket. That focus allows for better collaboration between judges on difficult issues and

helps us to get the law right. Usually, three-judge panels can resolve thorny issues on their own. To the extent further review is required, three-judge panels help clarify questions for an en banc panel. Indeed, after seeing how a case is decided, the full court can then make a more informed choice on whether to rehear the case en banc. After all, "[e]n banc courts are the exception, not the rule." *United States v. Am.-Foreign S. S. Corp.*, 363 U.S. 685, 689 (1960). And that norm protects against gamesmanship. Initial review by three-judge panels ensures that en banc panels don't try to engineer certain outcomes. And an en banc vote after a three-judge panel decision guarantees that all active judges get to participate. We shouldn't have a years-long standing committee of eleven judges on a certain area of the court's jurisprudence—especially to the exclusion of newer judges of the court.

Second, en banc panels usually consist of only active judges of the court. Again, this isn't always the case, but it's the norm. Allowing only active judges to serve on en banc panels ensures that "the active circuit judges . . . determine the major doctrinal trends of the future for their court." *Id.* at 690 (simplified). This promotes uniformity and continuity in the circuit's law, as all active judges have an equal chance to decide these important issues. Though senior judges serve a vital role on our court, by assuming senior status, they pass the torch to others to set this court's jurisprudence in the exceptional cases requiring en banc review.

The tortuous path of this case challenges these norms. A three-judge panel first decided the case in August 2020. *Duncan v. Becerra*, 970 F.3d 1133 (9th Cir. 2020). Over the dissent of a visiting judge, two active judges upheld the district court's injunction of California Penal Code § 32310, which banned the possession of so-called "large capacity

magazines." *Id.* at 1140. This prompted the one and only en banc vote in this case back in February 2021. *See Duncan v. Becerra*, 988 F.3d 1209 (9th Cir. 2021). At the time, a majority of active judges voted to vacate and rehear the three-judge panel decision. An en banc panel of eleven active judges was drawn. The en banc majority issued its opinion along with a dissent joined by four judges of the panel. *Duncan v. Bonta*, 19 F.4th 1087 (9th Cir. 2021) (en banc). So far so good.

Things went awry after the Supreme Court vacated our en banc panel decision in light of *N.Y. State Rifle & Pistol Assoc., Inc. v. Bruen*, 597 U.S. 1 (2022). *See Duncan v. Bonta*, 142 S. Ct. 2895 (2022). By that point in June 2022, our court's composition had changed dramatically. Three judges on the en banc panel had taken senior status and four new judges were appointed to the Ninth Circuit.

Rather than decide the case based on the clear commands of *Bruen*, the en banc panel remanded the case to the district court. *See Duncan v. Bonta*, 49 F.4th 1228 (9th Cir. 2022) (en banc). It didn't have to be this way. Although several of the en banc judges had gone senior, § 46(c) would have permitted those senior judges to decide the merits of the case post-*Bruen.* That's because the Supreme Court vacated our prior en banc decision and senior judges may "continue to participate in the decision of a case or controversy that was heard or reheard by the court in banc at a time when such judge was in regular active service." 28 U.S.C. § 46(c). So the en banc panel, even with the three senior judges, could have resolved the merits of this case then and there. Judge VanDyke and I dissented from that decision because we thought remanding to the district court simply kicked the can down the road. But the majority of the en banc panel disagreed. Not only did the majority remand the case to the

district court, but it issued a mandate with its decision. *See Duncan v. Bonta*, 49 F.4th 1228 (9th Cir. 2022). Issuance of the mandate returns the case to the district court to implement our decision—generally ending our involvement in the matter unless a party appeals the case anew. *See Calderon v. Thompson*, 523 U.S. 538, 550 (1998).

After remand, in September 2023, the district court once again enjoined California Penal Code § 32310—this time under *Bruen*. *See Duncan v. Bonta*, 695 F. Supp. 3d 1206 (S.D. Cal. 2023). But by late 2023, two more members of the en banc panel had assumed senior status and four more judges were appointed to the Ninth Circuit. To recap, that means that five out of the eleven judges on the en banc panel had taken senior status. And eight new judges joined the Ninth Circuit since the February 2021 en banc vote.

By giving up authority over the case, we should have returned to regular order and followed the norms of appellate review. With a new district court decision under new Supreme Court precedent, eight new judges, and now five senior judges on the en banc panel, we should have let a regular three-judge panel take a crack at deciding the case. If the full court disagreed with the three-judge panel's resolution, we could have taken a new en banc vote and then reconstituted the en banc panel with only active judges. Under this straightforward approach, all active judges would have participated in the en banc vote and would have been eligible to be drawn on the en banc panel. But that is not what happened.

When California filed its emergency motion to stay the injunction, the en banc panel voted to take possession of the case immediately. *See Duncan v. Bonta*, No. 23-55805, 2023 U.S. App. LEXIS 25723\* (9th Cir. Sept. 28, 2023)

(unpublished) (granting administrative stay over appeal). This power grab was without precedent. For the first time in our court's history, an en banc panel decided an emergency appellate motion in the first instance. Four active judges dissented from the en banc majority's unorthodox move. The en banc majority—with only two active judges —then stayed the district court's injunction. *See Duncan v. Bonta*, 83 F.4th 803 (9th Cir. 2023). And it did all this without ever consulting our full court or benefiting from a three-judge panel's review of the case. Once again, four active judges dissented from the merits of the en banc majority's decision. Judge Nelson dissented to raise his concerns that we are violating § 46(c). *Id.* at 807 (Nelson, J., dissenting).

Now, the en banc majority's overreach achieves its end result: five senior judges with two active judges tagging along craft and shape an en banc opinion in a divisive area of constitutional law years after assuming senior status. Over the objection of four active judges, the en banc majority cements the Second Amendment ruling for our court. But because of the lack of any en banc vote since 2021, this ruling stands despite six active judges ruling the other way and only two active judges supporting the en banc majority. Whether § 46(c) or our rules permit this, it was unwise to do so. As Judge Nelson persuasively shows, our actions in this case are unprecedented and once again make us an outlier among circuit courts. *See* R. Nelson Dissent 80–98 (establishing that the history of en bancs in the Ninth Circuit and other circuits does not support the majority's decision to proceed en banc here). Although I appreciate my colleagues' new-found interest in history and tradition, Judge Nelson shows that our uniquely odd maneuvering here is the first of its kind.

We should have chosen to conduct ourselves differently. We should have returned to regular order. If a three-judge panel decided the case in the first instance, then an en banc vote could have been taken, and all active judges would have had the opportunity to be drawn for our en banc panel. At the very least, this would have assured the parties and the public that we handled this case under our usual norms. It would have guarded against impressions of an entrenched en banc majority trying to maintain a certain result. And it would have advanced respect for our process and our court. Too bad we didn't take this easy path.

I thus respectfully dissent from the majority's order.